**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BOSTON SCIENTIFIC CORPORATION )
and BOSTON SCIENTIFIC SCIMED, )
INC., )
                           )
        Plaintiffs, )
                           )
    v. )       Civil Action No. 18-1869-CFC-CJB
                           )
MICRO-TECH ENDOSCOPY USA INC., )
MICRO-TECH (NANJING) CO., LTD. )
and HENRY SCHEIN INC., )
                           )
        Defendants. )

## REPORT AND RECOMMENDATION

In this patent infringement action filed by Plaintiffs Boston Scientific Corp. and Boston

Scientific Scimed, Inc. ("Plaintiffs") against Defendants Micro-Tech (Nanjing) Co., Ltd.

("Micro-Tech Nanjing") Micro-Tech Endoscopy USA Inc. ("Micro-Tech USA"), and Henry

Schein Inc. ("Henry Schein") (collectively, "Defendants"), pending is a motion in which: (1)

Micro-Tech Nanjing moves for dismissal due to lack of personal jurisdiction, pursuant to Federal

Rule of Civil Procedure 12(b)(2); and (2) Defendants each move for dismissal of the operative

complaint due to failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6)

(the "Motion"). (D.I. 9) For the reasons set forth below, the Court recommends that the Motion

be DENIED.

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs develop and manufacture medical devices, including endoscopic products for

the treatment of diseases of the digestive system. (D.I. 1 at ¶¶ 2-3) Among the medical devices

that Plaintiffs have developed and sold are the Resolution™ and Resolution 360™ hemostatic clips, which are used to stop bleeding in the gastrointestinal tract. (*Id.* at ¶ 13)

Defendants are also in the business of producing and selling hemostatic clips, and compete with Plaintiffs by selling the allegedly infringing SureClip™, Sure Clip™ MINI and SureClip™ PLUS Hemostasis Clips (the "SureClip Hemostasis Clip products" or the "accused products"). (*Id.* at ¶ 17) The three Defendants include one foreign and two domestic companies.

The foreign company Defendant—Micro-Tech Nanjing—is a corporation organized under the laws of Jiangsu Province, China; it also has its principal place of business located there. (*Id.* at ¶ 5) Micro-Tech Nanjing allegedly manufactures, imports and distributes medical devices, including endoscopic instruments. (*Id.* at ¶¶ 5, 11, 17) Plaintiffs' Complaint asserts that Micro-Tech Nanjing manufactures the accused products so that they may later be sold in the United States. (*Id.* at ¶ 11)

With regard to Micro-Tech Nanjing's business, Defendants put forward the sworn declaration of Jie Yin (the "Yin Declaration"), who is described as a "General Manager Assistant" of that company. (D.I. 11 at ¶ 1) The Yin Declaration does not rebut the Complaint's allegation that Micro-Tech Nanjing manufactures the accused products. And it confirms that Micro-Tech Nanjing "sell[s] certain of these products to Micro-Tech USA," though it explains that Micro-Tech Nanjing does so "in the country of manufacture or in international waters, not in the United States [such that] Micro-Tech USA takes title to the products outside the United States." (*Id.* at ¶ 11) The Yin Declaration thus asserts that Micro-Tech Nanjing "does not import those products into the United States, either now or in the past." (*Id.*) The Yin Declaration also states that Micro-Tech Nanjing has no direct connection to Delaware. That is,

2

the Yin Declaration explains that Micro-Tech Nanjing has no real or personal property in Delaware, no officers or employees in Delaware, does not regularly solicit business in or derive revenue from activities in Delaware, and does not sell any of its products in Delaware. (*Id.* at ¶¶ 3-4, 6-7) Further, according to the Yin Declaration, it is not possible for Delaware residents to place orders for the accused products through Micro-Tech Nanjing's website. (*Id.* at ¶ 9).

The two domestic Defendants—Micro-Tech USA and Henry Schein—are Delaware corporations with principal places of business respectively located in Ann Arbor, Michigan and Melville, New York. (D.I. 1 at ¶¶ 4, 6) Micro-Tech USA and Henry Schein distribute Micro-Tech Nanjing's devices in the United States. (*Id.* at ¶¶ 4, 6, 17, exs. D-E)

Additional information regarding Micro-Tech Nanjing, its relationship with the other two Defendants and the personal jurisdiction issues discussed herein will be set out in Section III.A.

### B.    Procedural Background

Plaintiffs filed their Complaint on November 26, 2018. (D.I. 1) While Micro-Tech USA and Henry Schein accepted service of process, (D.I. 5; D.I. 6), Micro-Tech Nanjing filed a waiver of service on December 14, 2018. (D.I. 7)

In their Complaint, Plaintiffs assert that Defendants infringe three patents: United States Patent Nos. 9,980,725 ("the '725 patent"), 7,094,245 ("the '245 patent") and 8,974,371 ("the '371 patent") (collectively, "the patents-in-suit"). (D.I. 1 at ¶ 1) The '725 and '371 patents cover an apparatus for applying hemostatic clips to tissue. (*Id.* at ¶¶ 23-29, 52-58) The '245 patent covers an apparatus for causing the hemostasis of a blood vessel for use through an endoscope, (*id.* at ¶¶ 37-44), as well as a method for using such an apparatus, ('245 patent, cols. 17:26-18:26).[1]

---

[1]       The patents-in-suit are attached as exhibits to the Complaint. (D.I. 1, exs. A-C)

Plaintiffs allege that Defendants infringe all three patents by making, using, selling, offering to sell and/or importing into the United States for sale the accused products. (D.I. 1 at ¶¶ 17, 22, 35, 51) Additionally, Plaintiffs allege that Defendants induce customers and end-users of the accused products to infringe the method of the '245 patent. (*Id.* at ¶ 36)

Defendants filed the instant Motion on March 13, 2019. (D.I. 9) The Motion was fully briefed by April 3, 2019. (D.I. 20)

On July 30, 2019, this case was referred to the Court to hear and resolve all pretrial matters up to and including expert discovery matters. (D.I. 22) Thereafter, the Court held a Case Management Conference and issued a Scheduling Order. (Docket Entry, Sept. 9, 2019; D.I. 29; D.I. 30 (hereinafter "Tr."))

Before the Court could issue a decision on the instant Motion, however, on September 23, 2019, Plaintiffs filed a motion seeking leave to file a supplemental brief relating to the Motion (the "motion for leave"). With the motion for leave, Plaintiffs sought leave to address their view as to how Federal Rule of Civil Procedure 4(k)(2) applies to the Motion, based in significant part on assertions made by Defendants' counsel during the Case Management Conference. (D.I. 32) After considering Defendants' opposition to the motion for leave, (D.I. 33; D.I. 34), the Court granted the motion, accepted Plaintiffs' opening supplemental brief, and set a schedule for the parties to file supplemental answering and reply briefs, (D.I. 38).[2] This supplemental briefing was completed on October 18, 2019. (D.I. 43)

---

[2]    Defendants challenged Plaintiffs' attempt to make an argument pursuant to Rule 4(k)(2), arguing that Plaintiffs "belatedly [sought] . . . to present a new argument that could have (and should have . . .) been presented when it opposed the Motion in March [2019]." (D.I. 34 at 1) The Court, however, denied Defendants' challenge and allowed supplemental briefing, (D.I. 38), noting in part that the United States Court of Appeals for the Federal Circuit has stated that

## II.   STANDARD OF REVIEW

### A.   Personal Jurisdiction, Rule 12(b)(2) and Rule 4(k)(2)

Rule 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017).  When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction; in a situation like this, where no evidentiary hearing has been held, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists.  *See Nespresso*, 263 F. Supp. 3d at 502; *Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *5 (D. Del. Oct. 14, 2014) (citing cases); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008).  To make out this *prima facie* showing, the plaintiff must "'establish[] with reasonable particularity sufficient contacts between the defendant and the forum state.'"  *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F. 2d 1217, 1223 (3d Cir. 1992) (citations omitted); *see also bioMérieux, S.A. v. Hologic, Inc.*, Civil Action No. 18-21-LPS, 2018 WL 4647483, at *2 (D. Del. Sept. 26, 2018).  In reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider the pleadings, affidavits, declarations and exhibits, and must construe all disputed facts in the plaintiff's favor.  *Round Rock Research LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 972 (D. Del. 2013); *Power Integrations*, 547 F. Supp. 2d at 369; *see also Hardwire*, 2014 WL 5144610, at *5.

---

"[their] precedent holds that Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012).

The Supreme Court of the United States has recognized two classifications of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citations omitted). The Supreme Court distinguished between these concepts in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which remains the "'canonical opinion'" in the area of personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citation omitted). "Specific jurisdiction" encompasses causes of action that "'aris[e] out of or relate[] to the defendant's contacts with the forum.'" *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "General jurisdiction" encompasses complaints arising from dealings that are distinct from the defendant's activities in the state. *Id.* at 924 (citing *Int'l Shoe*, 326 U.S. at 318); *see also Daimler*, 571 U.S. at 127. A court may exercise "general jurisdiction over foreign (sister-state or foreign-country) corporations" only when the corporation's "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919).

In order to establish personal jurisdiction, a plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Hardwire*, 2014 WL 5144610, at *6. In the typical analysis of the statutory prong, courts consider whether the defendant's actions fall within the scope of a state's long-arm statute. *Id.* at *6; *Power Integrations*, 547 F. Supp. 2d at 369. In analyzing the constitutional prong, courts determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Hardwire*, 2014 WL 5144610, at *6; *Power Integrations*, 547 F. Supp. 2d at 369 (citing *Int'l Shoe*, 326 U.S. at 316). Due process

is satisfied if the Court finds the existence of "'minimum contacts' between the non-resident defendant and the forum state, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Power Integrations*, 547 F. Supp. 2d at 369 (quoting *Int'l Shoe.*, 326 U.S. at 316).

However, certain disputes over personal jurisdiction implicate Rule 4(k)(2), which "serves as a federal long-arm statute[.]" *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018). Rule 4(k)(2) allows "'a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process.'" *Id.* (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1300 (Fed. Cir. 2009)). "'The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits.'" *Id.* (quoting *Synthes*, 563 F.3d at 1295). Rule 4(k)(2) was enacted by the 1993 amendments to the Federal Rules in order to "close[] a loophole" that existed when a foreign defendant had sufficient contacts with the United States to justify the exercise of jurisdiction, but lacked sufficient contacts with any single state to satisfy a state long-arm statute or the due process constraints of the Fourteenth Amendment. *Synthes*, 563 F.3d at 1296 (citing the 1993 advisory committee notes to Rule 4(k)(2)). The Rule is thus meant to allow a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process. *M-I Drilling*, 890 F.3d at 999.

In assessing a personal jurisdiction question in a patent case, authority from the United States Court of Appeals for the Federal Circuit is controlling. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Boston Sci. Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 364 (D. Del. 2009). With regard to the typical way in which the statutory prong is analyzed (i.e., by looking to a state's long-arm statute), the Federal Circuit defers to the law of the relevant state courts and federal courts; thereafter, in assessing the constitutional prong, the Federal Circuit follows its own law. *Round Rock Research*, 967 F. Supp. 2d at 973; *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 324 (D. Del. 2013). If Rule 4(k)(2) is applicable, the Federal Circuit applies its own law to the entirety of the analysis. *Synthes*, 563 F.3d at 1293.

**B.**     **Rule 12(b)(6)**

With regard to a motion in a patent case that challenges the sufficiency of infringement allegations pursuant to Rule 12(b)(6), the Court engages in a familiar two-part analysis. *See Raindance Techs., Inc. v. 10x Genomics, Inc.*, Civil Action No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016); *see also North Star Innovations, Inc. v. Micron Tech., Inc.*, Civil Action No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the Court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with

its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

With regard to allegations of direct patent infringement, in order to sufficiently state a claim, a plaintiff must plead facts plausibly indicating that a defendant's accused product reads on each of the limitations of the relevant asserted claim(s). *See Raindance Techs., Inc.*, 2016 WL 927143, at *2-3; *see also North Star Innovations, Inc.*, 2017 WL 5501489, at *1. After all, if after reading the Complaint, the Court cannot conclude that it is plausible that the accused infringer's product reads on a limitation of one of the claims in the patent-in-suit, then it cannot be plausible that the accused infringer actually infringes that patent claim. *Modern Telecom Sys., LLC v. TCL Corp.*, Civil Action No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) (citing cases).

## III.    DISCUSSION

As was noted above, Defendants assert two different grounds for dismissal at this stage. First, they argue that pursuant to Rule 12(b)(2), Micro-Tech Nanjing should be dismissed for lack of personal jurisdiction. Second, they argue that pursuant to Rule 12(b)(6), the Complaint should be dismissed as to all Defendants for lack of sufficient pleading. The Court will analyze these two arguments in turn.

## A.    Personal Jurisdiction

In asserting that they have made a *prima facie* showing of personal jurisdiction here, Plaintiffs argue that they have done so in four distinct ways: (1) they have sufficiently pleaded a basis for specific personal jurisdiction, on the ground that Delaware's long-arm statute is satisfied due to the concept of "dual jurisdiction," 10 Del. C. § 3104(c)(1) & (c)(4), (D.I. 18 at 4-6); (2) they have sufficiently pleaded a basis for general personal jurisdiction under the Delaware long-arm statute, 10 Del. C. § 3104(c)(4), (*id.* at 6-8); (3) they have sufficiently pleaded a basis for specific personal jurisdiction over Micro-Tech Nanjing through its purported agent Micro-Tech USA, 10 Del. C. § 3104(c)(1) & (c)(3), (*id.* at 9-10), and (4) they have sufficiently demonstrated that the requirements of Rule (4)(k)(2) are satisfied, (D.I. 32, ex. 1; D.I. 43). The Court need only address Plaintiffs' Rule 4(k)(2) argument, and based on that, will recommend denial of the Motion as to the personal jurisdiction issue.

As was set out in Section II.A, there are three prongs to the Rule 4(k)(2) analysis. The parties do not dispute that the first prong (which asks whether the plaintiff's claim arises under federal law) is met here, where Plaintiffs assert a cause of action for patent infringement. (D.I. 32, ex. 1 at 2) But they have conflicting views as to whether the second and third prongs are satisfied, which the Court will take up below.

### 1.    Second Prong:  Is Micro-Tech Nanjing Subject to Jurisdiction in any State's Courts of General Jurisdiction?

As to the second prong of the Rule 4(k)(2) analysis—i.e., whether Micro-Tech Nanjing is subject to jurisdiction in any state's courts of general jurisdiction—Plaintiffs assert that the record supports their argument for jurisdiction. In support, they rely on the following assertions made by Defendants' counsel during the Case Management Conference:

10

> [W]e don't think there is jurisdiction for this kind of a claim anywhere in the United States. The sales transactions here all take place in China, and its importer and distributor in the United States is the Micro-Tech U.S. entity.

(Tr. at 16 (cited in D.I. 32, ex. 1 at 2); *see also id.* at 17 ("[M]y belief is fairly firm but not 100 percent sure, there is nowhere [Micro-Tech Nanjing] can be sued in the United States. If they could, it would have to be on some general jurisdiction basis that I'm not aware of, but would be surprised by it.")) In their supplemental briefing, Defendants counter that "[c]ounsel's statements [during the Case Management Conference] merely confirmed that there is no basis for asserting *specific* personal jurisdiction over [Micro-Tech] Nanjing anywhere in the United States, based on sales of the accused products." (D.I. 41 at 2 (emphasis in original)) But Defendants go on to note that the facts here would also never support the theory that Micro-Tech Nanjing is subject to *general* personal jurisdiction in any state, since Micro-Tech Nanjing is "not incorporated in the U.S. and does not make, sell, offer to sell, or import products into the U.S.[.]" (*Id.* at 2 n.1.)

This record is thus sufficient for the Court to find that the second prong of the Rule 4(k)(2) analysis favors Plaintiffs. As to this prong, the Federal Circuit has adopted a burden-shifting mechanism, such that "if the [foreign] defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Merial Ltd.*, 681 F.3d at 1294 (internal quotation marks and citation omitted).[3] And here, Micro-Tech Nanjing has not satisfied this burden. It has contended

---

[3]    Although the burden of establishing personal jurisdiction ordinarily falls on the plaintiff, the Federal Circuit has explained that shifting the burden here to the defendant makes sense in the Rule 4(k)(2) context, as to do otherwise would "saddle the plaintiff with an extraordinary challenge in 'proving a negative many times over,' that is, demonstrating that the

that it cannot be sued in the forum state (Delaware). And it has refused to identify any other state where suit is possible. Indeed, it has affirmatively asserted that there is no such state in which personal jurisdiction exists as to it. As such, this prong has been satisfied. *See bioMérieux, S.A.*, 2018 WL 4647483, at *3.

### 2. Third Prong: Does the Exercise of Jurisdiction Satisfy Due Process?

Next, the Court turns to the third prong of the Rule 4(k)(2) analysis, which analyzes a foreign defendant's contacts with the United States at large, and whether the exercise of jurisdiction comports with due process. Here, the parties focus on a specific jurisdiction-type analysis, which (in the Rule 4(k)(2) context) asks whether: (1) the defendant purposefully directed its activities at residents of the United States, (2) the claim arises out of or relates to the defendant's activities with the United States, and (3) assertion of personal jurisdiction is reasonable and fair. *Synthes*, 563 F.3d at 1297-99. Under this three-element test, a court may properly assert specific jurisdiction, even if the defendant's contacts are isolated and sporadic, so long as the cause of action arises out of these contacts; indeed even a "'substantial connection' with a forum arising out of a 'single act can support jurisdiction.'" *Id.* at 1297 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)). For the reasons set forth below, the Court agrees that a *prima facie* showing of jurisdiction has been made as to this third prong.

First, there is evidence that Micro-Tech Nanjing purposefully directed its activities at residents of the United States. Plaintiffs alleged in their Complaint that Micro-Tech Nanjing

---

defendant is *not* subject to jurisdiction in each of the fifty states." *Merial Ltd.*, 681 F.3d at 1294 (emphasis in original) (citation omitted).

12

manufactures its products, including the accused products "for sale in the United States[.]" (D.I.

1 at ¶ 11)  They also point to record evidence showing that Micro-Tech Nanjing:

> (1)  Deliberately targets United States-based customers for a
> substantial number of its foreign product shipments, (D.I. 19, ex. 3
> (Micro-Tech Nanjing webpage stating that it has "sold products" to
> the United States via "direct marketing or OEM/ODM" and that
> the United States was the top country it "supplied" with its
> products, as 23.2% of its product shipments are sent to the United
> States));
>
> (2)  In 2015 established "entry into the U.S. market" via the launch
> of Defendant Micro-Tech USA, which would distribute Micro-
> Tech Nanjing's "GI endoscopy disposable products[,]" including
> hemoclips, in the United States, (*id.*, ex. 7); and
>
> (3)  Has attended trade shows in various cities in the United States
> between 2014 and 2019 to promote its products, (*id.*, ex. 4).

*See Synthes*, 563 F.3d at 1297-98 (concluding, as part of its specific jurisdiction analysis as to

prong three of the Rule 4(k)(2) inquiry, that the plaintiff had sufficiently demonstrated that a

defendant had purposefully directed its activities at the United States, where the defendant's

employee had brought defendant's allegedly infringing products to a trade show in California as

part of defendant's international sales efforts); *see also Enzo Life Scis., Inc. v. Hologic Inc.*, Civil

Action No. 16-894-LPS-CJB, 2018 WL 4660355, at *3 n.6, *6 (D. Del. Sept. 26, 2018) (finding

minimum contacts established for prong three of the Rule 4(k)(2) analysis, where a foreign

defendant (the parent of a U.S. subsidiary) advertised that it was "marketing the [accused

products] worldwide" and that it was "continu[ing] to make strides in the U.S. market, which is

both relevant and very much a consolidated market") (emphasis omitted).

Second, Plaintiffs have sufficiently explained why the instant claims of patent

infringement arise out of or relate to Micro-Tech Nanjing's activities with the United States.

Plaintiffs' infringement claims are premised on, *inter alia*, the importation and sale in the United States of accused products—accused products that Micro-Tech Nanjing allegedly (a) manufactures overseas and (b) then makes efforts to ensure are ultimately sold in the United States by entities in its distribution network, including the other two Defendants. *See Enzo Life Scis., Inc.*, 2018 WL 4660355, at *3[4]

---

[4]     In arguing that the third prong of the Rule 4(k)(2) analysis is not satisfied, Defendants frame Plaintiffs' allegations as simply amounting to a showing that Micro-Tech Nanjing "creat[ed] a Delaware corporate sales subsidiary" (i.e., Micro-Tech USA) or that it simply "[e]stablish[ed] a U.S. corporation as a subsidiary, which in turn sells accused products in the United States." (D.I. 41 at 3-4) And Defendants go on to cite three cases in support of the proposition that such a showing is insufficient for Plaintiffs to meet their burden as to the third prong of the Rule 4(k)(2) analysis. (*Id.*)

Importantly, however, Plaintiffs' showing as to Micro-Tech Nanjing is much more robust than Defendants suggest. Indeed, here the record can support the conclusion that not only did Micro-Tech Nanjing create a U.S.-based subsidiary, but also that Micro-Tech Nanjing *manufactured the accused products* and then *made intentional, multi-faceted efforts to introduce those products to United States customers*, in part through its work with that U.S.-based subsidiary. As a result, Defendants' three cited cases are distinguishable, in that the defendants at issue in those cases did not share these same characteristics. *See Univ. of Mass. Med. Sch. v. L'Oréal S.A.*, Civil Action No. 17-868-CFC-SRF, 2018 WL 5919745, at *10 (D. Del. Nov. 13, 2018) (finding that, for purposes of an analysis under Rule 4(k)(1), personal jurisdiction did not exist as to a foreign parent defendant, because that defendant had not played any "role in the design, manufacture, marketing, or sale of the Accused Products" and there was no evidence that the defendant was in any way responsible for introducing the accused products into the United States); *Nespresso*, 263 F. Supp. 3d at 503-04, 506 (concluding that where the record showed that a foreign parent defendant "mere[ly] own[ed]" a domestic subsidiary defendant, but had no role in designing, making, distributing or selling the accused products, did not engage in any sales activities as to such products in the United States, and did not introduce the accused products into the United States, Rule 4(k)(2) was not satisfied as to the foreign parent); *Telcordia Techs., Inc. v. Alcatel S.A.*, Civil Action No. 04-874-GMS, 2005 WL 1268061, at *4, *6-7 (D. Del. May 27, 2005) (finding that personal jurisdiction did not lie over a foreign defendant company, including for purposes of Rule 4(k)(2), where that defendant was "merely a holding company that [did] not manufacture, sell, or advertise in the United States, or anywhere in the world").

Third, in light of the record set out above, Defendants have not sufficiently demonstrated that assertion of personal jurisdiction over Micro-Tech Nanjing would be anything other than reasonable and fair.[5]  Courts consider five due process factors in making this determination:  (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *M-I Drilling*, 890 F.3d at 1002. In their supplemental answering brief on the Rule 4(k)(2) issue, Defendants did not address this "reasonable and fair" analysis. (D.I. 41)  And the Court fails to see how the exercise of personal jurisdiction would be unreasonable or unfair here.

As to due process factor one, although the burden on a foreign defendant like Micro-Tech Nanjing in litigating in the United States can sometimes be "significant," Defendants have not attempted to specify the nature of any such burden here.  Perhaps this is because Micro-Tech Nanjing's fellow Defendant and wholly-owned subsidiary Micro-Tech USA is a Delaware corporation, (D.I. 18 at 13), or perhaps it is because "'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.'" *Synthes*, 563 F.3d at 1299 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)).  Moreover, as to due process factors two and three, any such burden would seem to be outweighed by Plaintiffs' interest in obtaining effective and convenient relief, as well as by

_____

[5]    Once a plaintiff sufficiently establishes that a foreign defendant's activities were purposefully directed to the United States and that the claim of patent infringement arises out of those contacts, the burden then shifts to the defendant to show a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *M-I Drilling*, 890 F.3d at 1001-02 (internal quotation marks and citation omitted).

the United States' "substantial interest" in enforcing federal patent laws. *Id.*; *see also M-I Drilling*, 890 F.3d at 1002. And with regard to factors four and five, Defendants have not elucidated why, if Micro-Tech Nanjing were required to face suit here, this would cause a potential "clash of substantive social policies between competing fora" or lead to an inefficient resolution to this controversy. *Synthes*, 563 F.3d at 1300. In short, "this is not one of those 'rare cases' in which minimum requirements inherent in the concept of 'fair play and substantial justice' [] defeat the reasonableness of [personal] jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Id.* (certain internal quotation marks and citation omitted).

### 3. Conclusion

For all of these reasons, the Court recommends that the Motion be denied to the extent it argues that there is no personal jurisdiction as to Micro-Tech Nanjing.

### B. Sufficient Allegations of Infringement and Rule 12(b)(6)

Defendants also argue that Plaintiffs' Complaint does not plausibly state a claim of patent infringement. In doing so, Defendants make three main arguments, which the Court will address in turn.

First, Defendants assert that the Complaint is deficient because it fails to adequately allege why it is plausible that the accused products have a "separable yoke," "yoke arms" or a "connecting member"—all elements that are required if a product is to directly infringe claim 1 of the '725 patent. (D.I. 10 at 15-16)[6] That claim recites:

---

[6] In their opening brief, Defendants also appeared to make a broader assertion that in various other ways, the Complaint's allegations were deficient because they parroted back language from the claims "without providing factual support." (D.I. 10 at 16) And then

16

**1.** An apparatus for applying clips to tissue, comprising:

a flexible sheath extending from a proximal end which, in an operative configuration, extends into a living body to a target portion of tissue to be clipped;

a capsule comprising a proximal end and a distal end;

a clip assembly provided in the capsule and configured to be operably movable between a closed configuration in which first and second arms of the clip assembly are drawn toward one another and an expanded configuration in which the first and second arms are separated from one another to receive target tissue therebetween; and

a control member[,] a distal end of which is releasably coupled to the clip assembly via a *separable yoke* to transmit to the clip assembly forces applied thereto to move the clip assembly between the closed and expanded configurations;

wherein the *separable yoke* includes first and second *yoke arms* extending distally from the control member on opposite sides of the clip assembly and the clip assembly includes a *connecting member* extending between the first and second *yoke arms* coupling the yoke to the clip assembly, the first and second *yoke arms* being configured to be separated from the *connecting*

---

Defendants stated, without more, that "[m]any examples" of such deficiencies are "discussed in Section 3 of the Factual Background [section of their brief] above." (*Id.*) If a party wants the Court, in reviewing a motion to dismiss, to analyze whether a Complaint adequately alleges infringement as to certain accused products, then this type of approach is not sufficient. Instead, the party is required to clearly make out the substance of each of its arguments for dismissal *in the "Argument" section of its brief* and explain with particularly therein why the pleading is deficient in certain respects. *Cf. In re Horsehead Holding Corp. Secs. Litig.*, Civil Action No. 16-292-LPS-CJB, 2018 WL 4838234, at *17 (D. Del. Oct. 4, 2018) (citing cases), *report and recommendation adopted by* 2019 WL 1409454 (D. Del. Mar. 28, 2019). The "Argument" section of a party's opening brief, after all, is the place where legal arguments supporting a motion are supposed to be located. *Id.* It is the place where a plaintiff is supposed to look to figure out exactly why the Complaint is supposedly subject to dismissal and to know what it absolutely has to respond to in its answering brief. *Id.* Thus, to the extent Defendants were here expecting the Court to engage in further analysis of the Complaint—i.e., as to whether the Complaint sufficiently alleged the presence of other claim elements in the accused products—for the above reason, the Court declines to do so.

> *member* when subjected to a predetermined force by the control
> member to uncouple the control member from the clip assembly.

('725 patent, col. 17:26-53 (emphasis added))

Although the issue is a close one, in the Court's view, the Complaint does enough to plead that the accused products plausibly contain these three elements. With regard to the "separable yoke" and "yoke arms" elements, paragraph 29 of the Complaint alleges that:

> The SureClip™ Hemostasis clip products contain *a pair of J hooks*
> *that extend distally from the distal end of the control wire*; the J
> hooks are releasably connected to the clip assembly, such that the
> application of a sufficient predetermined force will release the J
> hooks, and thus the control wire, from the clip assembly.

(D.I. 1 at ¶ 29 (emphasis added)) It seems clear that Plaintiffs here are alleging that the "pair of J hooks" are the "yoke arms" recited in the claim and that those J hooks together help comprise a "separable yoke." (*See* D.I. 18 at 16) And as for the existence of a "connecting member," in paragraph 29 of the Complaint, Plaintiffs attach representative pictures of the accused products, which they assert demonstrate how "when a 'sufficient predetermined force' is applied to the control member, the separable yoke's arms release from the clip assembly's connecting member[,]" (*id.* (citing D.I. 1 at ¶ 29)):



Fig.9



Fig.10

Candidly, the Court cannot tell from these pictures *exactly* what portion of the "clip assembly" feature depicted in the left-most-portion of these images is asserted by Plaintiffs to make up this "connecting member." Plaintiffs did not, for example, highlight or otherwise annotate these pictures to better identify the particular relevant physical portion of the clip assembly that is at issue. But the Court's analysis here is simply whether it is at least *plausible* that the clip assembly depicted herein in fact contains an element that has the features described in the claim for a "connecting member." *Cf. Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (concluding that with regard to a case involving relatively "simple technology[,]" and where the complaint identified the accused products by name and attached relevant photos of the accused product as exhibits, the plaintiff had met its pleading burden, as

19

the reviewing court could determine the plausibility of the allegations of infringement). And this does seem at least plausible to the Court.[7]

Second, Defendants note that at times, the Complaint suggests it is accusing products "includ[ing], but [] not limited to" the SureClip Hemostasis Clip products; they argue that to the extent that Plaintiffs thus intend to accuse *other* products beyond the specifically-identified SureClip Hemostasis Clip products, then the Complaint's allegations are deficient. (D.I. 10 at 17 (citing *Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*, Civil Action No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018)) But in their answering brief, Plaintiffs clarified that the specifically-named SureClip Hemostasis Clip products are the only products they intend to accuse at this stage. (D.I. 18 at 19; D.I. 20 at 10) So this argument for dismissal is moot.

Third, Defendants argue that the Complaint directs its allegations of infringement to "'Defendants' collectively[,]" and that it thus fails to identify the specific infringing acts of the individual Defendants. (D.I. 10 at 18-19 (citing *Promos Techs.*, 2018 WL 5630585, at *3)) That is, Defendants argue that Plaintiffs never specify which individual Defendant commits which

---

[7]     Here, the Court disagrees with Defendants' suggestion that Plaintiffs' pleading fails because the images of the accused products depicted in paragraph 29 were "unannotated images." (D.I. 10 at 16) As noted above, it surely is true that the "connecting member" in these images is not annotated. And if Plaintiffs *had* provided such annotation here, (e.g., if they had drawn an arrow to the particular portion of the clip assembly at issue, highlighted it and included the words "connecting member" at the other end of that arrow), then that likely would have helped them more easily stave off Defendants' pleading challenge. But every case is different, and here the Court's analysis is simply whether, even without such an explicit road map, is it plausible that the products contain a "connecting member" that extends between two yoke arms and that can be separated from those yoke arms when subjected to a predetermined force. And from the Court's review of the accused products in the pictures set out in paragraph 29, it does seem plausible from a physical perspective that the "clip assembly" element depicted therein could contain a "connecting member" portion like this.

infringing act—i.e., "'making, using, selling, offering to sell, and/or importing into the United States[.]" (*Id.* (quoting D.I. 1 at ¶ 17))

However, as Plaintiffs note in response, (D.I. 18 at 20), there is enough in the Complaint to plausibly allege that each of the Defendants commits at least one type of infringing act. Micro-Tech Nanjing is alleged to have "manufactur[ed the accused products] for sale in the United States[,]" (D.I. 1 at ¶ 11; *see also id.*, ex. D at 10), and in context with other allegations in the pleading and the exhibits attached thereto, (D.I. 1 at ¶¶ 11, 17; *see also id.* exs. D at 10 & E at 5), it is thus plausible that it is at least "selling" the products in this country.[8] And Micro-Tech USA and Harry Schein are alleged to be distributors of the accused products, and corroborating evidence of this is attached to the Complaint. (*Id.* at ¶ 17 & exs. D & E)) So, it follows that there are at least plausible allegations that these Defendants are liable for infringing sales. For these reasons, this last argument for dismissal is also without support.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

---

[8]     Keep in mind that in resolving this Rule 12(b)(6) dispute, the Court must limit its consideration only to the allegations in the Complaint, exhibits attached thereto, and documents integral thereto. *In re Burlington Coat Factory Secs. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997). And it is a fact-intensive inquiry as to whether a transaction between Micro-Tech Nanjing and Micro-Tech USA (or other entities), which later results in the purchase of the accused products in the United States, constitutes a U.S.-based infringing "sale" by Micro-Tech Nanjing. *See Semcon IP Inc. v. Kyocera Corp.*, CIVIL ACTION NO. 2:18-CV-00197-JRG, 2019 WL 1979930, at *2 (E.D. Tex. May 3, 2019) (citing *Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008)). Here, enough is pleaded to make it plausible that Micro-Tech Nanjing is selling the accused products in the United States.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 15, 2020

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE