# SCHEDULE 1

SCHEDULE 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC.,<br><br>                    Defendants. | CA. No. 18-1869-SB/CJB |

# STATEMENT OF THE FACTS
# <u>WHICH ARE ADMITTED AND REQUIRE NO PROOF</u>

SCHEDULE 1

## TABLE OF CONTENTS

I.   THE PARTIES.......................................................................................1

II.  PATENT CLAIMS ASSERTED BY BOSTON SCIENTIFIC ...................2

SCHEDULE 1

## I.    THE PARTIES

1.    Plaintiff Boston Scientific Corporation ("BSC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Marlborough, Massachusetts. BSC is a developer, manufacturer, and marketer of medical devices, including endoscopic devices used in the gastrointestinal tract.

2.    Plaintiff Boston Scientific SciMed, Inc. ("BSSI") is a subsidiary of BSC that is organized and existing under the laws of the State of Minnesota with its principal place of business in Maple Grove, Minnesota. BSSI is the owner by assignment of the '725, '245, and '371 Patents.

3.    Plaintiffs BSC and BSSI are referred to collectively herein as "Plaintiffs" or "Boston Scientific."

4.    Defendant Micro-Tech Endoscopy USA Inc. ("Micro-Tech USA") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Ann Arbor, Michigan. Micro-Tech USA is in the business of, among other things, distributing medical instruments and devices, including endoscopic devices used in the gastrointestinal tract.

5.    Defendant Micro-Tech (Nanjing) Co., Ltd. ("Micro-Tech Nanjing") is a corporation organized and existing under the laws of China, with its principal place of business in Nanjing, China. Micro-Tech Nanjing is in the business of,

SCHEDULE 1

among other things, manufacturing and distributing medical devices, including endoscopic devices used in the gastrointestinal tract.

6.    Defendants Micro-Tech USA and Micro-Tech Nanjing are referred to collectively herein as "Micro-Tech."

7.    Defendant Henry Schein is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Melville, New York. Henry Schein is in the business of, among other things, distributing medical devices.

8.    Defendants Micro-Tech USA, Micro-Tech Nanjing, and Henry Schein are referred to collectively herein as "Defendants."

## II.    PATENT CLAIMS ASSERTED BY BOSTON SCIENTIFIC

9.    On August 22, 2006, the USPTO issued U.S. Patent No. 7,094,245 ("the '245 patent"), which lists on its face Mark L. Adams, Russell F. Durgin, Vincent Turturro, Justin Grant, Norman May, and Roy H. Sullivan, III as inventors.

10.    The application that resulted in the '245 patent was filed on October 5, 2001, as U.S. Application No. 09/971,488 (the "'488 Application").

11.    On March 10, 2015, the UPSTO issued U.S. Patent No. 8,974,371 ("the '371 patent"), which lists on its face Russell F. Durgin, William C. Mers Kelly, Lance Alan Wolf, Brian Keith Wells, Vasiliy P. Abramov, and Gregory R. Furnish as inventors.

2

SCHEDULE 1

12.     The application that led to the '371 patent was filed on December 16, 2011, as U.S. Application No. 13/328,171 (the "'171 Application").

13.     On May 29, 2018, the U.S. Patent and Trademark Office ("USPTO") issued U.S. Patent No. 9,980,725 ("the '725 patent"), which lists on its face Russell F. Durgin, William C. Mers Kelly, Lance Alan Wolf, Brian Keith Wells, Vasiliy P. Abramov, and Gregory R. Furnish as inventors.

14.     The application that resulted in the '725 patent was filed on May 19, 2016, as U.S. Application No. 15/159,512 (the "'512 Application").

15.     The Asserted Claims of the '245 patent are Claims 1, 3, 7, 13, and 15.

16.     The Asserted Claims of the '371 patent are Claims 8 and 9.

17.     The Asserted Claims of the '725 patent are Claims 1, 2, 3, 6, and 8-12.

# SCHEDULE 2

SCHEDULE 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

                Plaintiffs,

      v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

                Defendants.

CA. No. 18-1869-SB/CJB

## **PLAINTIFFS' STATEMENT OF CONTESTED ISSUES OF FACT**

SCHEDULE 2

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    TECHNOLOGY BACKGROUND ........................................................2

III.   PERSON OF ORDINARY SKILL IN THE ART...................................2

IV.   THE ACCUSED DEVICES ..................................................................2

       A.    SureClip Hook and Buckle Devices and ConMed DuraClip Devices..2

       B.    LOCKADO Devices ...................................................................4

V.    THE ASSERTED PATENTS.................................................................4

VI.   INFRINGEMENT .................................................................................6

       A.    The '245 Patent ........................................................................7

       B.    The '371 Patent ........................................................................9

       C.    The '725 Patent ......................................................................11

VII.  WILLFUL INFRINGEMENT ..............................................................16

VIII. RELIEF...............................................................................................16

IX.   VALIDITY..........................................................................................17

X.    ENFORCEABILITY............................................................................18

XI.   NO PATENT MISUSE........................................................................19

SCHEDULE 2

## I.   INTRODUCTION

Boston Scientific presents the following statement of contested issues of fact that remain to be litigated. This statement is based on the current status of the case and the Court's rulings to date.   Boston Scientific reserves the right to modify or supplement this statement in response to subsequent Court rulings and/or Defendants' attempts to introduce different or additional facts. The following statement of issues of fact is not exhaustive, and Boston Scientific reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports.   Boston Scientific intends to offer evidence as to the issues of fact and issues of law identified in this Joint [Proposed] Pretrial Order. Boston Scientific further intends to offer evidence to rebut evidence offered by Defendants.   Should the Court determine that any issue identified here is more appropriately considered an issue of law, Boston Scientific incorporates such issues by reference into its Statement of Issues of Law That Remain to Be Litigated.   To the extent that Boston Scientific's Statement of Issues of Law That Remain to Be Litigated contains issues that the Court deems to be issues of fact, those issues are incorporated herein by reference.   Boston Scientific reserves its right to revise this statement.

SCHEDULE 2

## II.   TECHNOLOGY BACKGROUND

1.      Hemostatic clips are used to stop internal bleeding by clamping together the edges of a wound. They are often delivered by an endoscopist through an endoscope to the location of the bleeding. These clips can be used for various indications, including ulcers, Mallory-Weiss tears (tears in the membrane where the esophagus meets the stomach), diverticular bleeding (when pouches (diverticula) have developed in the colon that bleed), and bleeding polypectomy sites (bleeding caused by removal of colorectal polyps) in both the United States and internationally.

## III.   PERSON OF ORDINARY SKILL IN THE ART

2.      A person of ordinary skill in the art ("POSA") as of the priority date of the '245, '371 and '725 patents would be a person with a bachelor's degree in mechanical engineering or equivalent and at least three years of experience designing medical devices.

## IV.   THE ACCUSED DEVICES

### A.   SureClip Hook and Buckle Devices and ConMed DuraClip Devices

3.      Micro-Tech Nanjing manufactures devices under the SureClip name, including at least the SureClip™, SureClip™ MINI, SureClip™ PLUS, and SureClip™ MAX Hemostasis Clips (the "SureClip" devices). Micro-Tech USA and Henry Schein use, sell, offer for sale, and/or import into the United States for

SCHEDULE 2

subsequent sale or use, the SureClip devices. The SureClip devices have competed and are presently competing with products marketed by Boston Scientific.

4.      The SureClip devices have been sold with two different "attachment configurations": the "hook" attachment configuration as originally sold in the United States ("Accused Original Devices," alternatively referred to as "Accused Original (Micro-Tech) Devices") and a later version referred to as the "Buckle" configuration (the "Accused Buckle Devices").

5.      Aside from the difference in attachment configuration, there are no differences between the Accused Original Devices and Accused Buckle Devices.

6.      Micro-Tech Nanjing manufactures and imports the DuraClip™ Hemostasis Clip line of products, which is sold by a third party, ConMed. The DuraClip™ Hemostasis Clip line of products are included in the definition of "Accused Original Devices," and are alternatively referred to as the "Accused Original (ConMed) Devices."  The Accused Original (ConMed) Devices have competed and are presently competing with products marketed by Boston Scientific.

7.      There are no meaningful differences between the Accused Original Devices and the Accused Original (ConMed) Devices.

SCHEDULE 2

**B.     LOCKADO Devices**

8.      Micro-Tech Nanjing manufactures devices under the Lockado name. Micro-Tech USA and Henry Schein use, sell, offer for sale, and/or import into the United States for subsequent sale or use, the Lockado devices. The Lockado Clips have competed and are presently competing with products marketed by Boston Scientific.

## V.     THE ASSERTED PATENTS

9.      The '245 patent was filed on October 5, 2001, as U.S. Application No. 09/971,488 (the "'488 Application"), and does not claim priority to any earlier-filed application.

10.     On March 10, 2015, the USPTO issued U.S. Patent No. 8,974,371 ("the '371 patent") and the face of the '371 patent lists Russell F. Durgin, William C. Mers Kelly, Lance Alan Wolf, Brian Keith Wells, Vasiliy P. Abramov, and Gregory R. Furnish as inventors.

11.     The '371 patent was filed on December 16, 2011, as U.S. Application No. 13/328,171 (the "'171 Application"). The '171 Application is a continuation of U.S. Application No. 12/252,630 (the "'630 Application"), filed on October 16, 2008. The '630 Application is a division of U.S. Application No. 10/955,624 (the "'624 Application"), filed on September 30, 2004. The '624 Application is a

SCHEDULE 2

continuation-in-part of U.S. Application No. 10/674,512 (the "'512 Application"), filed on September 30, 2003.

12.    On May 29, 2018, the USPTO issued U.S. Patent No. 9,980,725 ("the '725 patent") and the face of the '725 patent lists Russell F. Durgin, William C. Mers Kelly, Lance Alan Wolf, Brian Keith Wells, Vasiliy P. Abramov, and Gregory R. Furnish as inventors.

13.    The '725 patent was filed on May 19, 2016, as U.S. Application No. 15/159,512 (the "'512 Application"). The '512 Application is a continuation of the U.S. Application No. 14/642,159 (the "'159 Application"), which is a continuation of the '171 Application.

14.    BSSI is the assignee and owner of the '245, '371, and '725 patents (collectively, "the Asserted Patents").

15.    Boston Scientific is the exclusive licensee of the Asserted Patents.

16.    At the time of the launch of the Resolution™ Clips in 2004, Boston Scientific made the decision that BSC would be the exclusive/sole distributor of its hemostatic clips in the U.S.

17.    That decision came along with the corporate intent and agreement that:

    a.  No other Boston Scientific affiliate would have the right to sell hemostatic clips to unaffiliated third-parties in the U.S.;

5

SCHEDULE 2

    b. BSC would have the right to exclude any unaffiliated third-parties from practicing the patents in the U.S.;

    c. BSC would have the right to control enforcement of the patents against any infringer in the U.S.; and

    d. SciMed would not extend any license under the patents without BSC's consent.

This is how Boston Scientific and its affiliates have, in fact, operated at all times.

18.    BSC has, in fact, been the only seller in the U.S. of Resolution™ Clips. BSC sought regulatory clearance to sell the clips in the US and at all times has been the only entity with 510(k) clearance to market the Resolution™ Clips in the United States. BSC has, in fact, made the decisions to enforce the patents-in-suit against Defendants and Cook. BSC controls all decisions as to who within Boston Scientific can and will perform manufacturing and distribution of the clips. BSC controls decisions regarding licensing of relevant IP to third parties.

## VI.   INFRINGEMENT

19.    Whether the Accused Devices infringe the '245, '371, and '725 patents.

20.    Whether Defendants have induced infringement of the '245, '371, and '725 patents.

SCHEDULE 2

21.     Whether Defendants have willfully infringed the '245, '371, and '725 patents.

**A.     The '245 Patent**

22.     Whether the Accused Devices infringe Claims 1, 3, 7, 13, and 15 of the '245 patent.

**i.     Claim 1**

23.     Whether the Accused Devices include a "clip" under the Court's construction—i.e., a "multi-legged grasping device."

24.     Whether the Accused Devices include a "control wire reversibly operable both to open the at least two clip legs and to close the at least two clip legs when the control wire is coupled to the clip" under the Court's construction— i.e., that "when the control wire is coupled to the clip, the control wire can be both pushed and pulled to open and close the clip legs."

25.     Whether the Accused Devices include an axially rigid sheath enclosing the control wire, the sheath able to communicate a first force opposing a second force of the control wire.

26.     Whether the Accused Devices include a handle coupled to the axially rigid sheath.

27.     Whether the Accused Devices include an actuator coupled to the control wire, the control wire engageable by the actuator to open the at least two

7

SCHEDULE 2

clip legs, to close the at least two clip legs, and to uncouple the control wire from the clip.

28.     Whether the Accused Devices include a "a breakable link adapted to couple a control wire to the clip and adapted to be broken by a first predetermined tensile force applied by the control wire" under the Court's construction—i.e., "a component of the device designed to mechanically fail by fracturing at a predetermined tensile load."

29.     Whether, in the Accused Devices, when the breakable link is broken, the control wire uncouples from the clip.

### ii.   Claim 3

30.     Whether the control wire in the Accused Devices is coupled to the clip by a j-hook or the equivalent of a j-hook.

31.     Whether, in the Accused Devices, the j-hook or its equivalent is able to be straightened by the first predetermined tensile force.

32.     Whether, in the Accused Devices, when the j-hook or its equivalent is straightened, the control wire uncouples from the clip.

### iii.   Claim 7

33.     Whether the Accused Devices include a lock arrangement for locking the at least two clip legs in a closed position.

8

SCHEDULE 2

### iv.    Claim 15

34.     In addition to the questions of identified above with respect to claim 1, whether Defendants induce infringement of the asserted method of treatment of Claim 15 of the '245 patent.

### B.    The '371 Patent

35.     Whether the Accused Devices infringe Claims 8 and 9 of the '371 patent.

### i.    Claim 1[1]

36.     Whether the Accused Devices include a flexible sheath extending from a proximal end which, in an operative configuration, extends into a living body to a target portion of tissue to be clipped, where "sheath," under the Court's construction, means "one or more components of the delivery device that enclose the control wire."

37.     Whether the Accused Devices include a capsule extending from a proximal to a distal end and having an opening formed in a proximal end thereof.

38.     Whether the Accused Devices include a clip assembly provided in the capsule and configured to be operably movable between a closed configuration in which first and second arms of the clip assembly are drawn toward one another and

---

[1] Boston Scientific does not independently assert Claim 1, but includes it here as Claims 8 and 9 depend from Claim 1.

SCHEDULE 2

an expanded configuration in which the first and second arms are separated from one another to receive target tissue therebetween, where, under the Court's construction. a "clip assembly provided in the capsule" means, "an assembly having a clip, i.e., a multi-legged grasping device, provided in the capsule," and "closed configuration" means "the configuration of the clip assembly when its clip arms are closed."

39.     Whether the Accused Devices include a bushing extending between a proximal end coupled to the sheath and a distal end releasably coupled to the capsule via a tab on the distal end of the bushing engaging the opening of the capsule, where "coupled to the sheath" means, under the Court's construction, "linked together, connected, or joined, but not slidable within the sheath."

40.     Whether the Accused Devices include a control member a distal end of which is releasably coupled to the clip assembly to transmit to the clip assembly forces applied thereto to move the clip assembly between the insertion and expanded configurations, where "control member" means, under the Court's construction, a "wire or other force transmission member."

**ii.    Claim 8**

41.     Whether the proximal end of the capsule of each of the Accused Devices includes a keyed portion that aligns the capsule in a desired rotational orientation with respect to the bushing.

SCHEDULE 2

### iii.    Claim 9

42.     Whether the distal end of the bushing in each of the Accused Devices comprises a feature configured to mate with the keyed portion of the capsule.

### C.    The '725 Patent

43.     Whether the Accused Devices infringe Claims 1-3, 6, and 8-12 of the '725 patent.

### i.    Claim 1

44.     Whether the Accused Devices include a flexible sheath extending from a proximal end which, in an operative configuration, extends into a living body to a target portion of tissue to be clipped, where "sheath," under the Court's construction, means "one or more components of the delivery device that enclose the control wire."

45.     Whether the Accused Devices each include a capsule comprising a proximal end and a distal end.

46.     Whether the Accused Devices include a clip assembly provided in the capsule and configured to be operably movable between a closed configuration in which first and second arms of the clip assembly are drawn toward one another and an expanded configuration in which the first and second arms are separated from one another to receive target tissue therebetween, where, under the Court's construction, a "clip assembly provided in the capsule" means, "an assembly

SCHEDULE 2

having a clip, i.e., a multi-legged grasping device, provided in the capsule," and "closed configuration" means "the configuration of the clip assembly when its clip arms are closed."

47.     Whether the Accused Devices include a control member a distal end of which is releasably coupled to the clip assembly via a separable yoke to transmit to the clip assembly forces applied thereto to move the clip assembly between the closed and expanded configurations, where, under the Court's construction, "control member" means "wire or other force transmission member" and "separable yoke" means "a separable component that holds two parts in position."

48.     Whether, in the Accused Devices, the separable yoke includes first and second yoke arms extending distally from the control member on opposite sides of the clip assembly and the clip assembly includes a connecting member or its equivalent extending between the first and second yoke arms coupling the yoke to the clip assembly, the first and second yoke arms being configured to be separated from the connecting member when subjected to a predetermined force by the control member to uncouple the control member from the clip assembly, where the "connecting member" means, under the Court's construction, a "tension member that connects the clip arms to the yoke and biases the clip arms to an open configuration."

12

SCHEDULE 2

### ii.   Claim 2

49.     Whether the Accused Devices include a bushing coupled between the flexible sheath and the capsule that is releasably coupled to the proximal end of the capsule and fixed to the distal end of the sheath.

### iii.   Claim 3

50.     Whether the Accused Original/Buckle Devices include a flexible sheath that is formed as a wire coil as well as a bushing that is a substantially cylindrical member extending distally therefrom with a distal portion of the bushing being received within the capsule.

### iv.   Claim 6

51.     Whether, in the Accused Devices, the first and second yoke arms extend distally past proximal ends of the clip arms while the control member is coupled to the clip assembly.

### v.   Claim 8

52.     Whether, in the Accused Devices, a proximal end of the first arm of the clip assembly includes a projection positioned to mechanically lock with a locking feature of the capsule when the clip assembly is deployed to lock the clip assembly in the closed configuration.

SCHEDULE 2

### vi.   Claim 9

53.   Whether, in the Accused Devices, the projection at the proximal end of the first arm of the clip assembly is formed as a hook that mechanically interacts with the locking feature of the capsule to prevent the clip assembly from moving distally relative to the capsule.

### vii.   Claim 10

54.   Whether, in the Accused Devices, a proximal end of the second arm of the clip assembly includes a projection positioned to mechanically lock with a locking feature of the capsule when the clip assembly is deployed to lock the first and second arms of the clip assembly in the closed configuration.

### viii.  Claim 11

55.   Whether, in the Accused Devices, the clip assembly is configured so that, as the clip assembly is moved distally relative to the capsule, the first and second arms of the clip assembly are moved to the expanded configuration as the first and second arms of the clip assembly project further distally from the capsule and the first and second arms of the clip assembly are drawn into the closed configuration as the clip assembly is withdrawn proximally into the capsule.

### ix.  Claim 12

56.   Whether the Accused Devices include a capsule defining a lumen therein and including openings in proximal and distal ends thereof.

SCHEDULE 2

57.    Whether the Accused Devices include a clip assembly received within the lumen of the capsule for movement between a closed configuration in which first and second arms of the clip assembly are drawn toward one another and an expanded configuration in which the first and second arms are separated from one another to receive target tissue therebetween.

58.    Whether the Accused Devices include a control member a distal end of which is releasably coupled to the clip assembly to transmit to the clip assembly forces applied to a proximal end of the control member to move the clip assembly between the closed and expanded configurations by moving the first and second arms of the clip assembly distally out of and proximally into the capsule.

59.    Whether the Accused Devices include a separable yoke or its equivalent connecting the control member to the clip assembly, the yoke including first and second yoke arms extending distally from the control member within the capsule on opposite sides of the clip assembly, the clip assembly including a connecting member or its equivalent extending between the first and second yoke arms coupling the yoke to the clip assembly, the first and second yoke arms being configured to be separated from the connecting member when subjected to a predetermined force by the control member to uncouple the control member from the clip assembly.

## VII.  WILLFUL INFRINGEMENT

60.     Whether Defendants have continued to infringe the Asserted Patents with knowledge of the Patents and knowledge that their conduct would infringe the Patents.

61.     Whether Defendants' infringement of the Asserted Patents has been willful.

## VIII.  RELIEF

62.     Whether Boston Scientific is entitled to past damages in the form of lost profits due to lost sales relating to Defendants' infringement of the Asserted Patents.

63.     The amount of damages to which Boston Scientific is entitled to compensate it for Defendants' infringement of the Asserted Patents.

64.     The amount of pre- and post-judgment interest to which Boston Scientific is entitled to receive on the damages it is awarded.

65.     The amount of costs and attorneys' fees which Boston Scientific is entitled to receive.

66.     Whether this is an exceptional case entitling Boston Scientific to recover enhanced damages.

67.     The amount of enhanced damages Boston Scientific is entitled to recover.

SCHEDULE 2

68.     Whether Boston Scientific is entitled to permanent injunctive relief barring Defendants from making, selling, offering to sell, and/or importing Accused Devices into the United States.

**IX.   VALIDITY**

69.     Whether the '371 Patent is entitled to a priority date of September 30, 2003.

70.     Whether the '725 Patent is entitled to a priority date of September 30, 2003.

71.     Whether any prior art reference asserted by Defendants anticipates any asserted claim of the '245 Patent.

72.     Whether any prior art reference asserted by Defendants anticipates any asserted claim of the '371 Patent.

73.     Whether any prior art reference asserted by Defendants anticipates any asserted claim of the '725 Patent.

74.     Whether any prior art reference or combination of references asserted by Defendants renders obvious any asserted claim of the '245 Patent.

75.     Whether any prior art reference or combination of references asserted by Defendants renders obvious any asserted claim of the '371 Patent.

76.     Whether any prior art reference or combination of references asserted by Defendants renders obvious any asserted claim of the '725 Patent.

SCHEDULE 2

77.     Whether Defendants can demonstrate that claim 3 of the '245 Patent is invalid as indefinite.

78.     Whether Defendants can demonstrate that any asserted claim of the '371 Patent is invalid as indefinite.

79.     Whether Defendants can demonstrate that any asserted claim of the '725 Patent is invalid as indefinite.

80.     Whether Defendants can demonstrate that any asserted claim of the '371 Patent is invalid as lacking written description.

81.     Whether Defendants can demonstrate that any asserted claim of the '725 Patent is invalid as lacking written description.

82.     Whether Defendants can demonstrate that any asserted claim of the '371 Patent is invalid as not enabled.

83.     Whether Defendants can demonstrate that any asserted claim of the '725 Patent is invalid as not enabled.

## X.     ENFORCEABILITY

84.     Whether Defendants can demonstrate that any individual with a duty of candor to the USPTO made any affirmative misrepresentation of but-for material fact, failed to disclose but-for material information, or submitted false material information with the specific intent to deceive the USPTO in connection with the prosecution of the '245 Patent.

18

SCHEDULE 2

85.     Whether Defendants can demonstrate that any individual with a duty of candor to the USPTO made any affirmative misrepresentation of but-for material fact, failed to disclose but-for material information, or submitted false material information with the specific intent to deceive the USPTO in connection with the prosecution of the '371 Patent.

86.     Whether Defendants can demonstrate that any individual with a duty of candor to the USPTO made any affirmative misrepresentation of but-for material fact, failed to disclose but-for material information, or submitted false material information with the specific intent to deceive the USPTO in connection with the prosecution of the '725 Patent.

## XI.   NO PATENT MISUSE

87.     Whether Defendants can demonstrate that Boston Scientific has pursued this litigation in the interest of impermissibly restraining trade or by pursuing infringement for patent claims that it knows or reasonably should know are not infringed and/or are invalid or unenforceable, or by seeking damages or other relief beyond what is supported by law.  Defendants cannot so demonstrate, particularly in light of Boston Scientific's victories against Micro-Tech in numerous European venues including Germany and the European Patent Office, demonstrating the validity of similar patents in those venues, and demonstrating Micro-Tech's infringement of similar patents in those venues.

# SCHEDULE 3

SCHEDULE 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

Plaintiffs,

v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

Defendants.

CA. No. 18-1869-SB/CJB

## DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF FACT

SCHEDULE 3

# TABLE OF CONTENTS

CONTESTED ISSUES OF FACT ................................................................1

    A.    Level of Ordinary Skill ....................................................1

    B.    Alleged Infringement .......................................................2

    C.    Invalidity .........................................................................4

    D.    Unenforceability..............................................................6

    E.    Patent Misuse ..................................................................7

    F.    Alleged Damages / Relief / Willful Infringement.................8

Defendants identify the following issues of fact to be litigated. If the Court concludes that any issue of law listed in Schedule 5 should be considered an issue of fact, then Defendants incorporate such issues in this Schedule. If the Court concludes that any issue identified in this Schedule should be considered an issue of law, then Defendants incorporate such issues into Schedule 5. The facts that remain to be litigated, as listed below, are subject to and modified by the admitted facts set forth in the parties' Statement of Admitted Facts in Schedule 1.

Defendants further reserve the right to supplement or amend this Statement, including in response to Court rulings on pending motions and Plaintiffs' further pretrial disclosures, and to offer additional proof in response to evidence or argument presented at trial. Nothing in this statement is intended to admit or suggest the existence of any genuine issue of material fact that might preclude summary judgment or any other ruling by the Court as a matter of law. Defendants further address herein certain issues reserved for resolution by the Court, if necessary, in post-trial proceedings, including issues under 35 U.S.C. § 285 and relating to injunctive relief.

## CONTESTED ISSUES OF FACT

### A.     Level of Ordinary Skill

1.     Whether the level of ordinary skill in the field, at the relevant time (circa 2001-2003, the years in which the earliest patent application to which the

SCHEDULE 3

Asserted Patents claim priority was filed) would be the knowledge and skill known by an engineer or similar professional with at least a bachelor's degree in engineering, or a physician having experience with designing medical devices, and would also include an understanding of engineering or medical device design principles.

**B.    Alleged Infringement**

2.    Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 1, 3, 7, and 13 of the '245 Patent by Defendants making, using, offering for sale, selling, or importing Original Devices either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

3.    Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 1, 3, 7, and 13 of the '245 Patent by Defendants making, using, offering for sale, selling, or importing Buckle Devices either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

4.    Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 1, 3, 7, and 13 of the '245 Patent by Defendants making, using, offering for sale, selling, or importing Lockado Devices

SCHEDULE 3

either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

5.      Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 8 or 9 of the '371 Patent by Defendants making, using, offering for sale, selling, or importing Original Devices either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

6.      Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 8 or 9 of the '371 Patent by Defendants making, using, offering for sale, selling, or importing Buckle Devices either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

7.      Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 8 or 9 of the '371 Patent by Defendants making, using, offering for sale, selling, or importing Lockado Devices either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

8.      Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 1-3, 6, and 8-12 of the '725 Patent by Defendants by making, using, offering for sale, selling, or importing Original

SCHEDULE 3

Devices either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

9.      Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 1-3, 6, and 8-12 of the '725 Patent by Defendants by making, using, offering for sale, selling, or importing Buckle Devices either literally or under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

10.      Whether Plaintiffs can prove by a preponderance of the evidence any acts of direct infringement of any of claims 1-2, 6, and 8-12 of the '725 Patent by Defendants by making, using, offering for sale, selling, or importing Lockado Devices under the doctrine of equivalents (where asserted and not precluded by the Court) under 35 U.S.C. § 271(a).

11.      Whether Plaintiffs can prove by a preponderance of the evidence that Defendants knowingly and intentionally induced acts of direct infringement by others of claim 15 of the '245 Patent, with knowledge that such acts constituted direct infringement, under 35 U.S.C. § 271(b).

**C.      Invalidity**

12.      Whether Plaintiffs can prove that the asserted claims of the '371 Patent are entitled to a priority date earlier than December 16, 2011.

SCHEDULE 3

13.     Whether Plaintiffs can prove that the asserted claims of the '725 Patent are entitled to a priority date earlier than May 19, 2016.

14.     Whether each asserted claim of the '245 Patent is invalid as anticipated.

15.     Whether each asserted claim of the '371 Patent is invalid as anticipated.

16.     Whether each asserted claim of the '725 Patent is invalid as anticipated.

17.     Whether each asserted claim of the '245 Patent is invalid as obvious, including any contested issues of fact regarding the scope and content of the prior art, the level of ordinary skill in the art, the differences between the claimed inventions and the prior art, and secondary considerations of obviousness or nonobviousness (to the extent Plaintiffs produce any evidence of secondary considerations of nonobviousness).

18.     Whether each asserted claim of the '371 Patent is invalid as obvious, including any contested issues of fact regarding the scope and content of the prior art, the level of ordinary skill in the art, the differences between the claimed inventions and the prior art, and secondary considerations of obviousness or nonobviousness (to the extent Plaintiffs produce any evidence of secondary considerations of nonobviousness).

19.     Whether each asserted claim of the '725 Patent is invalid as obvious, including any contested issues of fact regarding the scope and content of the prior art, the level of ordinary skill in the art, the differences between the claimed

inventions and the prior art, and secondary considerations of obviousness or nonobviousness (to the extent Plaintiffs produce any evidence of secondary considerations of nonobviousness).

20.     Whether claim 3 of the '245 patent is invalid as indefinite.

21.     Whether the asserted claims of the '371 patent are invalid as indefinite.

22.     Whether the asserted claims of the '725 patent are invalid as indefinite.

23.     Whether the asserted claims of the '371 patent are invalid as lacking written description.

24.     Whether the asserted claims of the '725 patent are invalid as lacking written description.

25.     Whether the asserted claims of the '371 patent are invalid as not enabled.

26.     Whether the asserted claims of the '725 patent are invalid as not enabled.

**D.     Unenforceability**

27.     Whether individuals subject to the duty to disclose in connection with the prosecution of the '245 patent made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information to the U.S. Patent Office.

SCHEDULE 3

28.     Whether individuals subject to the duty to disclose in connection with the prosecution of the '245 patent intended to deceive the U.S. Patent Office.

29.     Whether individuals subject to the duty to disclose in connection with the prosecution of the '371 patent made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information to the U.S. Patent Office.

30.     Whether individuals subject to the duty to disclose in connection with the prosecution of the '371 patent intended to deceive the U.S. Patent Office.

31.     Whether individuals subject to the duty to disclose in connection with the prosecution of the '725 patent made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information to the U.S. Patent Office.

32.     Whether individuals subject to the duty to disclose in connection with the prosecution of the '725 patent intended to deceive the U.S. Patent Office.

**E.     Patent Misuse**

Whether Plaintiffs have sought to exclude Defendants from the U.S. hemoclip market as a means of impermissibly restraining trade by asserting against Defendants and other competitors patent claims that Plaintiffs know or reasonably should know are not infringed and/or are invalid or enforceable and by seeking damages and other relief beyond what is supported by law.

7

SCHEDULE 3

**F.      Alleged Damages / Relief / Willful Infringement**

33.     Whether Plaintiffs can prove that Plaintiff Boston Scientific Corporation is an exclusive licensee.

34.     To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, whether Plaintiffs can prove that Plaintiff Boston Scientific Scimed Inc. can seek damages in the form of lost profits.

35.     To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, whether Plaintiffs can prove by a preponderance of the evidence that they are entitled to lost profits damages under 35 U.S.C. § 284 for some or all of the period of time after the date Plaintiffs filed this action (November 26, 2018), and if so, the appropriate amount of damages.

36.     To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, whether Plaintiffs can prove by a preponderance of the evidence that they are entitled reasonable royalty damages under 35 U.S.C. § 284 for some or all of the period of time after the date Plaintiffs filed this action (November 26, 2018), and if so, the appropriate amount of damages and the appropriate form of damages.

37.     To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, whether Plaintiffs can prove that any

SCHEDULE 3

of Defendants' infringement has been willful after the date Plaintiffs filed this action (November 26, 2018).

38.    To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, whether the circumstances can justify increasing the amount of damages found or assessed.

39.    To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, whether Plaintiffs can meet all the requirements for the Court to grant an injunction, and if so, whether the Court should grant an injunction and the terms of the injunction.

40.    To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, whether Plaintiffs can prove that they are entitled to pre- or post-judgment interest and, if so, the amount of interest.

41.    Whether this case is an exceptional case for which the Court may award Plaintiffs attorneys' fees, and if so, the amount of attorneys' fees and other relief that should be awarded to Plaintiffs.

42.    Whether this case is an exceptional case for which the Court may award Defendants attorneys' fees, and if so, the amount of attorneys' fees and other relief that should be awarded to Defendants.

43.    The amount of costs due to either Plaintiffs or Defendants.

# SCHEDULE 4

SCHEDULE 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

               Plaintiffs,

     v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

              Defendants.

CA. No. 18-1869-SB/CJB

## PLAINTIFFS' STATEMENT OF CONTESTED ISSUES OF LAW

SCHEDULE 4

# TABLE OF CONTENTS

I. **INFRINGEMENT**..................................................................**1**

    A.    Literal Infringement .................................................2

    B.    Doctrine of Equivalents ...........................................3

    C.    Ensnarement ..........................................................4

    D.    Prosecution History Estoppel....................................5

    E.    Indirect Infringement...............................................6

II. **WILLFULNESS** ..................................................**7**

III. **COSTS/EXCEPTIONAL CASE** ...............................**8**

IV. **VALIDITY** ...........................................................**9**

    A.    Prior Art ................................................................9

    B.    Priority................................................................11

    C.    Anticipation .........................................................12

    D.    Obviousness.........................................................14

    E.    Collateral Estoppel................................................19

    F.    Indefiniteness ......................................................20

    G.    Enablement ..........................................................21

    H.    Written Description ...............................................22

V. **ENFORCEABILITY**................................................**24**

VI. **PATENT MISUSE** .................................................**27**

VII. **STANDING/OWNERSHIP** .....................................**27**

    A.    Assignee...............................................................27

    B.    Exclusive Licensee ................................................28

SCHEDULE 4

**VIII.**      **DAMAGES**...............................................................................**30**

    A.   Lost Profits ..................................................................... 31

    B.   Reasonable Royalty.......................................................... 36

**IX.**      **INJUNCTION** ........................................................................**38**

SCHEDULE 4

Plaintiffs identify the following issues of law that remain to be litigated and the authorities that Plaintiffs rely on.[1]

Plaintiffs base this statement on the arguments that Plaintiffs expect to present and their understanding of the arguments Defendants are likely to present, based on the status of the case and the Court's rulings to date.  If Defendants seek to introduce different legal arguments, Plaintiffs reserve the right to supplement this statement.

Plaintiffs reserve the right to modify or supplement this statement in response to subsequent Court rulings and/or Defendants' attempts to introduce different or additional legal arguments.

## I.     INFRINGEMENT

1.     Under 35 U.S.C. § 271(a), an accused infringer is liable for direct infringement if, without authorization from the patentee, the accused infringer "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a).

2.     Analyzing infringement involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370

---

[1] These authorities are not exhaustive; Plaintiffs may rely on authority not cited in this statement.

1

SCHEDULE 4

(1996). The first step is to construe the disputed terms of the patent consistently with how those terms would be understood by a person of ordinary skill in the art. *Id.; Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). This Court construed the disputed terms in an Order dated July 1, 2020. D.I. 140. The second step is to determine whether the accused product infringes the patent, which is done by comparing the accused product to the properly construed claims. *Markman*, 52 F.3d at 976.

### A.   Literal Infringement

3.     Direct infringement is a strict-liability offense. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). "[I]ntent is not an element of direct infringement." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (en banc), *rev'd on other grounds*, 520 U.S. 17 (1997).

4.     Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device. *Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1374 (Fed. Cir. 2009).

5.     For method claims, direct infringement occurs when "all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).

SCHEDULE 4

B.    **Doctrine of Equivalents**

6.    An accused device infringes under the doctrine of equivalents when it contains an "insubstantial" change from the claimed invention. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 610 (1950). Whether equivalency exists may be determined based on either the "insubstantial differences" test or on the "function-way-result" test (i.e., whether the element of the accused device "performs substantially the same function in substantially the same way to obtain the same result"). *Id.* at 607-08.

7.    A patentee asserting the doctrine of equivalents is not limited to equivalents disclosed in the patent itself. *Warner Jenkinson, Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997).

8.    The Federal Circuit has "never held that a patent must spell out a claim element's function, way, and result in order for the doctrine of equivalents to apply as to that element." *Intendis GMBH v. Glenmark Pharm, Inc., USA*, 822 F.3d 1355, 1362 (Fed. Cir. 2016).  Rather, by way of example, "[w]hen the claims and specification of a patent are silent as to the result of a claim limitation . . . [the court] should turn to the ordinary skilled artisan." *Id.*

3

SCHEDULE 4

### C.   Ensnarement

9.      "[E]nsnarement is a question of law for the court, not the jury, to decide." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009).

10.     "[I]n the ensnarement context, a district court may hear expert testimony and consider other extrinsic evidence regarding: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009).

11.     "The hypothetical claim analysis is not the only method in which a district court can assess whether a doctrine of equivalents theory ensnares the prior art." *Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1285 & n.4 (Fed. Cir. 2017). Indeed, "[h]ypothetical claim analysis is an optional way of evaluating whether prior art limits the application of the doctrine of equivalents." *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993).

12.     In the absence of a hypothetical claim, courts evaluate the parties' expert testimony to determine whether the asserted range of equivalents would ensnare the prior art. *See Agrofresh Inc. v. Essentiv LLC*, No. 16-662-MN, 2020 WL 7024867, at *14-15 (D. Del. Nov. 30, 2020).

SCHEDULE 4

### D.    Prosecution History Estoppel

13.    Defendants may argue that certain of Plaintiffs' expert opinions are barred by prosecution history estoppel.  Even if prosecution history estoppel presumptively applies, it can be rebutted in the three ways that follow. The patentee can show that "[(1)] [t]he equivalent may have been unforeseeable at the time of the application; [(2)] the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or [(3] there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006).

14.    Argument-based prosecution history estoppel only applies "by surrendering claim scope through argument to the patent examiner." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006).  Moreover, "the prosecution history must evince a clear and unmistakable surrender of subject matter." *Id.* at 1364. In contrast to amendment-based estoppel, the Federal Circuit "do[es] not presume a patentee's arguments to surrender an entire field of equivalents through simple arguments and explanations to the patent examiner. Though arguments to the examiner may have the same effect, they do not always evidence the same clear disavowal of scope that a formal amendment to the claim

5

SCHEDULE 4

would have." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006).

15.    "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006).

### E.    Indirect Infringement

16.    "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aid[ed] and abett[ed] another's direct infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (internal quotation marks omitted).

17.    Proof of intent can consist of evidence of active steps taken to encourage direct infringement such as advertising an infringing use or instructing how to engage in an infringing use. *See Vanda Pharms. Inc. v. West-Ward-Pharms. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018); *Takeda Pharms. U.S.A. Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

18.    "Willful blindness can satisfy the knowledge requirement for active inducement." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed.

SCHEDULE 4

Cir. 2016). Deliberate indifference can also satisfy the knowledge requirement. *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1350, 1376-78 (Fed. Cir. 2010).

19.    While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006); *see also Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 645 (Fed. Cir. 2017). Indeed, the "requisite intent to induce infringement may be inferred from all of the circumstances." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016).

## II.    WILLFULNESS

20.    Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, or flagrant" may justify the award of enhanced patent damages, in accordance with 35 U.S.C. § 284, of up to three times what the jury awards. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. An example of subjective willfulness is a defendant who acted despite a risk of infringement that was "either known or so obvious that it should have been known to the accused infringer." *Id.* at 1930 (citation omitted).

21.    "[T]he district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable. Rather, the

7

entire willfulness determination is to be decided by the jury." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018).

## III.   COSTS/EXCEPTIONAL CASE

22.   Section 285 of the Patent Act authorizes a district court to award "reasonable attorney fees to the prevailing party" if a case is found to be "exceptional." 35 U.S.C. § 285.  The Supreme Court has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

23.   "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. The grant of fees does not require the Court to find "litigation-related misconduct of an independently sanctionable magnitude." *Id*. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. at 1757.

24.   A movant need only establish their right to fees by a preponderance of the evidence. *Id*. at 1758. The court may award interest on the attorneys' fees. *See*

SCHEDULE 4

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010).

## IV.  VALIDITY

25.     Issued patent claims are presumed by statute to be valid. 35 U.S.C. § 282.

26.     The presumption that an issued patent claim is valid can be overturned only with clear and convincing evidence of invalidity. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2240-41 (2011).

### A.    Prior Art

27.     "Whether a reference is prior art is a question of law based on underlying factual questions." *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd.*, 932 F.3d 1364, 1367 (Fed. Cir. 2019).

28.     To demonstrate that an asserted reference is prior art to the asserted patent, the patent challenger "must prove, by clear and convincing evidence, that it predates the critical date." *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd.*, 932 F.3d 1364, 1368 (Fed. Cir. 2019).

29.     A patent claim is invalid as anticipated under Section 102(a) if "the invention was known or used by others in this country, or patented or described in a

SCHEDULE 4

printed publication in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a) (pre-AIA).[2]

30.    A patent claim is invalid as anticipated under Section 102(b) if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b).

31.    A patent claim is invalid as anticipated under Section 102(e) if the invention was described in "an application for patent . . . by another filed in the United States before the invention by the applicant for patent" or "a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent." 35 U.S.C. § 102(e) (pre-AIA).

32.    A patent claim is invalid as anticipated under Section 102(g)(2) if "before such person's invention thereof, the invention was not made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g)(2) (pre-AIA).

---

[2] The America Invents Act ("AIA"), Pub. L. No. 112–29, became effective as of March 16, 2013. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1357 n.3 (Fed. Cir. 2019). The pre-AIA version of 35 U.S.C. § 102 applies to patent applications that were filed before that effective date, and to patents that claim priority to any such application. *Id.*

SCHEDULE 4

33. "[S]ection 102(g) does not address the role of patents and patents applications as prior art: That task is assigned to section 102(e)." *See Sonos, Inc. v. D&M Holdings Inc.*, No. 14-1330-WCB, 2017 WL 4969330, *6 (D. Del. Nov. 11, 2017)

### B. Priority

34. "Priority and its constituent issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings." *Eaton v. Evans*, 204 F.3d 1094, 1097 (Fed. Cir. 2000).

35. A patent can claim the benefit of the filing date of an earlier-filed patent application if, among other things, "it contains or is amended to contain a specific reference to the earlier filed application." 35 U.S.C. § 120. A patent applicant can satisfy this requirement by including the priority claim in an application data sheet filed with the application. See 37 CFR § 1.76(b)(5); *see also* Manual of Patent Examining Procedure ("MPEP") § 211.02 (9th ed., rev. Jan. 2018).

36. The Federal Circuit has rejected the idea that "the patentee has the burden of persuasion to prove it was entitled to the earlier filing date." *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1328-29 (Fed. Cir. 2008). Rather, "it is a long-standing rule of patent law that, because an issued patent is by statute presumed valid, a challenger has the burden of persuasion to show by clear and

11

SCHEDULE 4

convincing evidence that the contrary is true. That ultimate burden never shifts[.]" *Id.*

37.     Patentees bear the burden only of producing evidence to rebut a challenger's prima facie invalidity case. *Id.*; *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008).

38.     The Federal Circuit has rejected the theory that the priority date determination requires "review[ing] the new disclosure added to the continuation-in-part application and determin[ing] whether that content corresponds to the particular claim limitations in dispute." *Nintendo of Am. Inc. v. iLife Techs., Inc.*, 717 F. App'x 996, 1001 (Fed. Cir. 2017).

### C.    Anticipation

39.     "In order to anticipate the claimed invention, a prior art reference must 'disclose all elements of the claim within the four corners of the document,' and it must 'disclose those elements 'arranged as in the claim.'" *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1063 (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008)); 35 U.S.C. § 102.

40.     There "must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576

12

SCHEDULE 4

(Fed. Cir. 1991), *clarified on denial of reconsideration by* 1991 WL 523489 (Fed. Cir. Apr. 30, 1991).

41.     To prove anticipation by a prior art product, "the party with the burden of proof must show that 'the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention.'" *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737 (Fed Cir. 2002) (quoting *Scaltech Inc. v. Retec/Tetra, LLC*, 178 F.3d 1378, 1383 (Fed. Cir. 1999)) (reversing a jury verdict of anticipation by a prior art device because the record lacked evidence "regarding at least one limitation of each asserted claim").

42.     In order to prove inherent anticipation, the patent challenger must prove by clear and convincing evidence that the missing element or elements are necessarily present in the allegedly anticipating disclosure. *See Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991); *see also Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002). Inherency "may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (quoting *Continental Can*, 948 F.2d at 1269).

SCHEDULE 4

43.     "In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without undue experimentation." *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008)).

### D.     Obviousness

44.     The ultimate determination of obviousness is a question of law based on underlying factual findings, including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art; and (4) such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

45.     Obviousness is determined from the perspective of the POSA at the time of the invention. 35 U.S.C. § 103(a).

46.     A patent claim is obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art in the art to which said subject matter pertains." 35

SCHEDULE 4

U.S.C. § 103(a); *see also In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986) (to

determine obviousness, prior art must be considered as a whole).

47.   "Generally, a party seeking to invalidate a patent as obvious must

demonstrate by clear and convincing evidence that a skilled artisan would have had

reason to combine the teaching of the prior art references to achieve the claimed

invention, and that the skilled artisan would have had a reasonable expectation of

success from doing so." *In re Cyclobenzaprine*, 676 F.3d 1063, 1068-69 (Fed. Cir.

2012) (internal quotations and citations omitted).

48.   The party challenging the patent bears the burden of persuasion with

respect to the issue of obviousness and must present evidence sufficient to establish

a rational reason to select and combine teachings of the prior art to produce the

claimed invention with a reasonable expectation of success. *Procter & Gamble Co.

v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).

49.   A finding of obviousness cannot be based upon hindsight selection of

elements of the claimed invention from among the disclosures of the prior art.

*Otsuka Pharm. Co. v. Sandoz, Inc.,* 678 F.3d 1280, 1296 (Fed. Cir. 2012) ("The

inventor's own path itself never leads to a conclusion of obviousness; that is

hindsight."); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir.

2008) (It is impermissible to use "hindsight reconstruction of references to reach

the claimed invention without any explanation as to how or why the references

SCHEDULE 4

would be combined to produce the claimed invention."); *In re Hedges*, 783 F.2d at 1041 ("It is impermissible within the framework of section 103 to pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art." (internal citations omitted)).

50.     Reasoning that simply retraces the path of the inventor with hindsight, and discounts the number and complexity of available alternatives, is always inappropriate. *See Ortho-McNeil Pharm. Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008); *In re Wesslau*, 353 F.2d 238, 241 (C.C.P.A. 1965); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902, 907 (Fed. Cir. 1988) ("Care must be taken to avoid hindsight reconstruction by using the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit." (internal citations omitted)).

51.     "[A] patent composed of several elements is not proved obvious merely be demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 401; *see also Unigene Labs., Inc. v. Apotex Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) ("Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination.").

SCHEDULE 4

52.     It is important that the record supply a reason, available within the

knowledge of a POSA, to take particular steps or make particular modifications to

achieve the claimed invention. *See KSR*, 550 U.S. at 418 ("it can be important to

identify a reason that would have prompted a person of ordinary skill in the relevant

field to combine the elements in the way the claimed new invention does"); *Eli Lilly*

*& Co. v. Teva Pharms. USA, Inc.*, 619 F.3d 1329, 1336-37 (Fed. Cir. 2010)

(methods of using compound known to have low bioavailability were not obvious

where there was "no evidence from before the time of the invention that would

teach, suggest, or motivate or supply any common sense reason for a person of

ordinary skill in the art to reject the bioavailability concerns and routinely, simply,

or easily arrive at the inventive result").

53.     Merely stating that there is a "general motivation" to develop an

invention is insufficient proof of a motivation to combine particular references. *See*

*Innogenetics*, 512 F.3d at 1373 ("[K]nowledge of a problem and motivation to solve

it are entirely different from motivation to combine particular references to reach

the particular claimed [invention]."); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341,

1352 (Fed. Cir. 2008); *Corning Inc. v. SRU Biosystems*, 400 F. Supp. 2d 653, 670-

71 (D. Del. 2005) (criticizing expert's analysis where expert relied only on

references selected by counsel, used the claims of the patent-in-suit to select and

focus on particular disclosures of those references, and referred only to "general

17

SCHEDULE 4

motivations" to combine references); *Personal Web Techs. LLC v. Apple Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017) ("not enough" to simply "say . . . that a skilled artisan, once presented with the two references, would have understood that they ***could be*** combined. . . . [I]t does not imply a motivation to pick out those two references and combine them to arrive at the claimed invention") (emphasis original).

54.    Consideration of whether the prior art contains a teaching, suggestion, or motivation to make the claimed invention can guard against hindsight analysis. *See Ortho-McNeil*, 520 F.3d at 1364-65 (explaining that *KSR* approved the "teaching, suggestion, or motivation" test for guarding against hindsight).

55.    The Court must look to the hypothetical POSA to determine whether such a person would have had a reasonable expectation of success in achieving the claimed invention. *See Eli Lilly*, 619 F.3d at 1340; *Amgen Inc. v. F. Hoffmann-La Roche Ltd.*, 580 F.3d 1340, 1363 (Fed. Cir. 2009).

56.    An invention claimed in a patent is not obvious unless a person of ordinary skill in the art could reasonably have predicted that the invention would succeed in solving the problem. *In re Cyclobenzaprine*, 676 F.3d at 1070-73; *Abbott Labs.*, 544 F.3d at 1351-52.

57.    Objective indicia, such as long felt-but unmet need, failure of others, and licensing of the patents can serve as probative evidence of nonobviousness.

SCHEDULE 4

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *see, e.g., Impax Labs., Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1377 (Fed. Cir. 2018).

58.     Objective indicia evidence is not meant to shift the burden of persuasion from the party challenging the patent to the patentee, but rather it gives the patentee an opportunity to produce additional evidence that can be used in the Court's analysis on the issue of obviousness. *See In re Cyclobenzaprine*, 676 F.3d at 1075-76.

### E.     Collateral Estoppel

59.     Collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d. Cir. 2006).

60.     The first requirement is satisfied when "the issues in the case are indeed identical." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 153 (2015). Further, "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *Id*. at 154.

SCHEDULE 4

61.    Collateral estoppel does not apply when "the adversary has a significantly heavier burden than he had in the first action." Restatement (Second) of Judgments §28(4) (1982).

62.    A prior decision invalidating patent claims does not collaterally estop a party from asserting claims that are different in a "patentably significant" way. *Amax, Inc. v. ACCO Brands Corp.*, 268 F. Supp. 3d 301, 305 (D. Mass. 2017).

**F.    Indefiniteness**

63.    Indefiniteness is a question of law.  *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009). "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co., Ltd v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

64.    "Whether a claim is invalid for indefiniteness requires a determination whether those skilled in the art would understand what is claimed when the claim is read in light of the specification."  *Takeda Pharm. Co. Ltd. v. Zydus Pharm. USA, Inc.*, 743 F.3d 1359, 1366 (Fed. Cir. 2014).

65.    Claim terms that have "sufficiently objective meaning in the art" are not indefinite.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014).

66.    Claims are not indefinite when the intrinsic evidence provides "a general guideline and examples sufficient to enable a person of ordinary skill in the

SCHEDULE 4

art to determine" the scope of the claim. *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009).

67.     "A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

68.     "A patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Sonix Tech. Co., Ltd v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

**G.    Enablement**

69.    A patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to perform undue experimentation. 35 U.S.C. § 112 ¶ 1; *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986).

70.    Factors considered in determining whether experimentation is undue or excessive include: (1) the scope of the claimed invention; (2) the amount of guidance presented in the patent; (3) the amount of experimentation necessary; (4) the time and cost of any necessary experimentation; (5) how routine any necessary experimentation is in the applicable field; (6) whether the patent discloses specific

SCHEDULE 4

working examples of the claimed invention; (7) the nature and predictability of the field; and (8) the level of ordinary skill in the field. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

71.     Even a considerable amount of routine experimentation required to practice a claimed invention does not violate the enablement requirement. *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013); *PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1565 (Fed. Cir. 1996).

72.     The specification preferably omits information that would already be known to a POSA. *Streck v. Res. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012).

73.     It is irrelevant whether the specification contains data proving that embodiments within the scope of the claims are operable, and the burden is on the party alleging invalidity to prove a significant number of inoperable embodiments. *Alcon Res. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188-90 (Fed. Cir. 2014; *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1576-77 (Fed. Cir. 1984). There is no lack of enablement where a POSA would recognize compositions that must be excluded from the inoperative embodiment inquiry. *Senju Pharm. Co. v. Apotex Inc.*, 717 F. Supp. 2d 404, 428-29 (D. Del. 2010).

**H.     Written Description**

SCHEDULE 4

74.     The written description requirement is met if the specification and the existing knowledge in the art reasonably convey "to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1355 (Fed. Cir. 2010). The test for reasonably conveying possession of an invention is a flexible one, "requir[ing] an objective inquiry into the four corners of the specification from the perspective of a [POSA]." *Id.*

75.     A failure to "specifically mention a limitation that later appears in the claims is not a fatal one when one skilled in the art would recognize upon reading the specification that the new language reflects what the specification shows has been invented." *All Dental Prodx, LLC v. Advantage Dentals Prods, Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002).

76.     A specification implicitly satisfies the written description requirement if a POSA would find it "reasonably clear what the invention is and that the patent specification conveys that meaning." *All Dental Prodx.*, 309 F.3d at 779. That is, the "reasonably conveys" standard does not require the disclosure and claims to match exactly. *Ariad Pharm.*, 598 F.3d at 1352 ("the [written] description requirement does not demand any particular form of disclosure or that the specification recite the claimed invention *in haec verba*").

23

SCHEDULE 4

77.     Nor will a claim be invalidated simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language. *See Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1575-76 (Fed. Cir. 1985).

## V.     ENFORCEABILITY

78.     Inequitable conduct is an equitable defense to patent infringement that, if proven, may preclude enforcement of a patent. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287-90 (Fed. Cir. 2011).

79.     To prove inequitable conduct, a challenger must demonstrate both that a person having a duty of candor and good faith to the PTO withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and that this individual or individuals acted with the specific intent to deceive or mislead the PTO. *Id.*; *see also Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012).

80.     Materiality and intent to deceive are separate requirements that must each be proven by clear and convincing evidence. *Therasense*, 649 F.3d at 1287. If the accused infringer meets this burden, the district court must weigh

the equities to determine whether the applicant's conduct before the PTO warrants rendering the entire patent unenforceable. *Id.*

81.　In its seminal *en banc Therasense* decision, the Federal Circuit noted that the doctrine originated from a line of Supreme Court cases, each dealing with "particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence." *Id.* Subsequent lower court cases broadening the doctrine had "numerous unforeseen and unintended consequences," including, "[m]ost prominently," that the defense "has become a significant litigation strategy." *Id.* at 1288. The Court decried the fact that litigants have flooded the courts with inequitable conduct allegations "routinely brought on 'the slenderest grounds,'" finding that this "has plagued not only the courts but also the entire patent system." *Id.* at 1289 (citation omitted).

82.　In an effort to stem that tide, the *en banc* Court "now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290.

83.　"[T]he specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. . . . [W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91 (internal citation omitted).

25

SCHEDULE 4

84.     There can be no inference of intent to deceive based solely on materiality. There must be a deliberate and conscious decision to withhold or misrepresent the information. *See id.* at 1290 ("A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa.").

85.     Moreover, "[a] finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* at 1290.

86.     "[T]he materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291. "But-for" materiality requires "proof that the patentee withheld or misrepresented information that, in the absence of the withholding or misrepresentation, would have prevented a patent claim from issuing." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1345 (Fed. Cir. 2013) (citing *Therasense*, 649 F.3d at 1291). This is a reflection of "basic fairness"—a patent should only be rendered unenforceable "in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim." *Therasense*, 649 F.3d at 1292.

26

SCHEDULE 4

87.     "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Therasense*, 649 F.3d at 1292 (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)).

## VI.   PATENT MISUSE

88.     The doctrine of patent misuse has a "narrow scope." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010).

89.     To establish patent misuse, the accused infringer must show that the patentee has committed wrongful conduct "in one of the specific ways that have been held to be outside the otherwise broad scope of the patent grant." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010); *see also Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) ("[I]n application, the doctrine [of patent misuse] has largely been confined to a handful of specific practices by which the patentee seemed to be trying to 'extend' his patent grant beyond its statutory limits.").

## VII.   STANDING/OWNERSHIP

90.     "[W]hether a party has standing to sue in federal court is a question of federal law." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003).

### A.   Assignee

27

SCHEDULE 4

91.    "An assignee may bring an action to redress any violations of the exclusive rights conferred by the patent." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). "A grant of all substantial rights in a patent amounts to an assignment—that is, a transfer of title in the patent—which confers constitutional standing on the assignee to sue another for patent infringement in its own name." *Intellectual Prop. Dev., Inc. v. TCl Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001).

## B.    Exclusive Licensee

92.    "Because the legally protected interests in a patent are the exclusionary rights created by the Patent Act, a party holding one or more of those exclusionary rights—such as an exclusive licensee—suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue." *WiAV Sols. v. Motorola, Inc.*, 631 F.3d 1257, 1264-65 (Fed. Cir 2010).

93.    "[A]n exclusive licensee does not lack constitutional standing to assert its rights under the licensed patent merely because its license is subject not only to rights in existence at the time of the license but also to future licenses that may be granted only to parties other than the accused." *WiAV Sols. v. Motorola, Inc.*, 631 F.3d 1257, 1267 (Fed. Cir 2010).

SCHEDULE 4

94.    "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc).

95.    "Whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235-36 (Fed. Cir. 2019)

96.    "[I]n determining patent and license rights in complex transfers, the standard is whether the evidence as a whole convinces the trier of fact of mutual intent to transfer and vest exclusive rights." *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc.*, 748 F.3d 1354, 1364 (Fed. Cir. 2014).

97.    Exclusive distributors have standing to collect lost profits as a co-plaintiff with patentee if evidence shows that "an oral contract existed between [patentee] and [distributor], under which [distributor] had an exclusive right to sell as sole distributor in the United States." *Weinar v. Rollform*, 744 F.2d 797 (Fed. Cir. 1984).

98.    A multinational company's decision and agreement that one corporate affiliate will exclusively hold FDA authorization to sell products covered by another affiliate's patents, for example through ownership of a New Drug

SCHEDULE 4

Application, supports a finding that the one affiliate is an exclusive licensee of the relevant patents. *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc.*, 748 F.3d 1354, 1363–65 (Fed. Cir. 2014).

99.    Parent corporations have an implied exclusive license to their subsidiary's patent when (1) the "decision to bring [a] lawsuit [is] made within [the parent]"; (2) the parent "sets the licensing policy for [the subsidiary's] intellectual property," including the patent in suit; and (3) witnesses testify in support of the exclusive license. *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-cv-2027, 2014 WL 2989975, at *5-6 (S.D.N.Y. June 30, 2014).

100.    Parent corporations have an exclusive license to their subsidiary's patent when the patent owner is the wholly-owned subsidiary of the parent, and the parent "always ha[s] the implicit right to make, use and sell the patented invention and to control enforcement of the patent rights." *Atmel Corp. v. Authentec, Inc.*, 490 F. Supp. 2d 1052, 1055 (N.D. Cal. 2007)

## VIII.  DAMAGES

101.    When determining damages, the factfinder must ask "how much had the Patent Holder and Licensee suffered by the infringement"—in other words, "had the Infringer not infringed, what would the Patentee Holder–Licensee have made?" *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 653 (1964).

SCHEDULE 4

102.    When damages "cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer." *Lam, Inc. v. Johns-Mansville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

103.    The calculation of damages is fact and case specific, involving "mixed considerations of logic, common sense, justice, policy and precedent." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

104.    The Federal Circuit has expressed skepticism about using transfer pricing in a damages analysis. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1377 (Fed. Cir. 2015).

105.    Damages are computed before taxes. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 503 (1968); *Kalman v. Berwyn Corp.*, 914 F.3d 1473, 1483 (Fed. Cir. 1990).

A.    **Lost Profits**

106.    To recover lost profits, "the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

107.    The patentee "need not negate every possibility that the purchaser might not have purchased a product other than its own," but rather "need only show that there was a reasonable probability that the sales would have been made

SCHEDULE 4

'but for' the infringement." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

108.   A patentee proves entitlement to lost profits damages by establishing the four *Panduit* factors: "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

109.   The first factor—"demand for the patented product"—"simply asks whether demand existed for the 'patented product,' i.e., a product that is covered by the patent in suit or that directly competes with the infringing device." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009). Further, "the focus on particular features corresponding to individual claim limitations is unnecessary when considering whether demand exists for a patented product." *Id.* And "the *Panduit* factors place no qualitative requirement on the level of demand necessary to show lost profits." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013).

110.   "The substantial number of sales by [the accused infringer] of infringing products containing the patented features itself is compelling evidence of the demand for the product." *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

SCHEDULE 4

111.   To prove the second factor—"absence of acceptable non-infringing substitutes"—"the patent owner must show either that: 1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages; or 2) the specific purchasers of the infringing product purchased on that basis." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).

112.   "[T]o be an acceptable non-infringing substitute, the product or process must have been available *or* on the market at the time of infringement." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).

113.   "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time . . . [a]cceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).

114.   For this factor, "[t]he critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, i.e., the 'accounting period.'" *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).

SCHEDULE 4

115.   "Evidence that a patented device filled a long-felt need of its users and enjoyed commercial success indicates a lack of an acceptable noninfringing substitute." *Micro Motion, Inc. v. Exac Corp.*, 761 F. Supp. 1420, 1424 (N.D. Cal. 1991) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1162 (6th Cir. 1978)).

116.   Further, "the mere existence of a competing device does not necessarily make that device an acceptable substitute." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).

117.   Willful infringement can undermine an accused infringer's identification of acceptable non-infringing substitutes. *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 n.3 (Fed. Cir. 1996)

118.   To prove the absence of acceptable non-infringing substitutes, the law requires exclusion not only of proven infringers, but also of "likely infringers." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

119.   The third factor—capacity—can be met by showing that the patent owner "had the capacity to manufacture and sell" enough of the product to meet the added demand. *See Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997).

120.   A patentee's ability to sell its market share of an accused infringer's infringing sales can be inferred from a finding that the patentee "had sufficient

SCHEDULE 4

marketing and manufacturing capabilities to meet its market share of the demand."

*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

121.  "[P]ast business practices and relationships are probative of the ability

to meet demand." *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 790

(Fed. Cir. 2019).

122.  For establishing the fourth factor—amount of profit—a "well

established and appropriate" approach is to award the patentee its "incremental

profit" that "reflect[s] the percentage of sales revenue [patentee] lost because of

[defendant's] infringement that would have been its profit." *State Indus., Inc. v.

Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579-80 (Fed. Cir. 1989).  Thus, a court acts

"well within its discretion when it award[s] damages for [the defendant's]

infringement based on [patentee's] share of the market." *Id.* at 1580.  However,

"choosing between reasonable alternative accounting methods for determining

profit margin" is a discretionary decision for the Court and is reviewed under the

abuse of discretion standard. *Minnesota Mining & Mfg. Co. v. Johnson and

Johnson Orthopaedics, Inc.*, 976 F.3d 1559, 1577 (Fed. Cir. 1992).

123.  The proper approach to allocating costs is to use cost-accounting

principles, which provide for the deduction of variable costs associated with a sale.

*See Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed.

Cir. 1984).

35

SCHEDULE 4

## B.    Reasonable Royalty

124.    "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.

125.    In determining a reasonable royalty, factfinders consider the following factors: "(1) The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty; (2) The rates paid by the licensee for the use of other patents comparable to the patent in suit; (3) The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold; (4) The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly; (5) The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter; (6) The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales; (7) The duration of the patent and the

SCHEDULE 4

term of the license; (8) The established profitability of the product made under the patent; its commercial success; and its current popularity; (9) The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results; (10) The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention; (11) The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use; (12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; (13) The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer; (14) The opinion testimony of qualified experts; (15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have

SCHEDULE 4

been acceptable by a prudent patentee who was willing to grant a license."

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21

(S.D.N.Y. 1970).

## IX.   INJUNCTION

126.    A plaintiff seeking a permanent injunction must demonstrate "(1) that

it has suffered an irreparable injury; (2) that remedies available at law, such as

monetary damages, are inadequate to compensate for that injury; (3) that,

considering the balance of hardships between the plaintiff and defendant, a remedy

in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

(2006).

127.    Money damages cannot compensate for "lost market share, lost

business opportunities, and price erosion."  *Robert Bosch LLC v. Pylon Mfg. Corp.*,

659 F.3d 1142, 1155 (Fed. Cir. 2011).  Therefore, "[i]rreparable injury

encompasses different types of losses that are often difficult to quantify, including

lost sales and erosion in reputation and brand distinction."  *Douglas Dynamics,*

*LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013).

128.    A patentee suffers irreparable harm when it is "forced to compete

against products that incorporate and infringe its own patented inventions."

38

SCHEDULE 4

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).

129.    The balance of the hardships favors a patentee when "requiring [patentee] to compete against its own patented invention . . . places a substantial hardship on [patentee]." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011).

130.    In considering the public interest, the Federal Circuit has "long acknowledged the importance of the patent system in encouraging innovation," and that "encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006).

131.    The "detrimental effect" of inhibiting innovation, "coupled with the public's general interest in the judicial protection of property rights in inventive technology, outweighs any interest the public has in purchasing cheaper infringing products." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).

# SCHEDULE 5

SCHEDULE 5

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-1869-SB/CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF LAW</u>

SCHEDULE 5

# INTRODUCTION

Defendants identify the following issues of law to be litigated. This statement is based on the parties' pleadings, documentary and testimony evidence, and Defendants' current understanding of Plaintiffs' claims. As the parties are still finalizing and exchanging the evidence each intends to present at trial, Defendants reserve the rights to supplement this statement to rebut or otherwise address the issues of law raised or otherwise identified by Plaintiffs. Defendants further reserve the right to supplement this statement to incorporate legal issues raised by Plaintiffs' proposed jury instructions.

If the Court concludes that any issues of fact listed in Schedule 3 of the Joint Pretrial Order should be considered as issues of law, then Defendants incorporate those issues in this Schedule. If the Court concludes that any issues identified in this Schedule should be considered as issues of fact, then Defendants incorporate those issues into Schedule 3 of the Joint Pretrial Order. Defendants' issues of law to be litigated may also change based on the Court's rulings on pending motions and other pretrial rulings. Defendants reserve the right to present issues of law set forth in the pending motions, if they have not been resolved by the Court before trial. Defendants further reserve their rights to appeal any issues, whether legal holdings or factual findings. The authorities cited herein are not exhaustive; Defendants may rely upon authorities not cited in this statement.

SCHEDULE 5

## I.    INFRINGEMENT

Defendants incorporate by reference their pending motions for summary

judgment of non-infringement.  (D.I. 246, 248, 251, 252, 254, and 255).

### A.    Infringement Generally

1.    Plaintiffs bear the burden of proving by a preponderance of evidence

whether Defendants infringed.  *Advanced Cardiovascular Sys., Inc. v. Scimed Life

Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).

2.    A party infringes a patent when it, without authority, "makes, uses,

offers to sell, or sells any patented invention, within the United States or imports

into the United States any patented invention during the term of the patent."  35

U.S.C. § 271(a).

3.    Determining infringement of a patent claim requires two steps: first,

interpreting the language of the claim to determine its meaning and scope, and

second, comparing the construed claim to the accused device to determine whether

all of the claim elements or their equivalents are present.  *See Moore U.S.A., Inc. v.

Standard Register Co.*, 229 F.3d 1091, 1105 (Fed. Cir. 2000); *Rexnord Corp. v.

Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001).  Claim construction is a

matter of law to be decided by the Court.  *Markman v. Westview Instruments, Inc.*,

52 F.3d 967, 979-81 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

Whether claims, as construed by the Court, are infringed is a question of fact to be

SCHEDULE 5

determined by the jury.  *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003).

4.      "Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009); *see also EMC Corp. v. Pure Storage Inc.*, 154 F. Supp. 3d 81, 108-10 (D. Del. 2016); *accord, e.g., Integra Lifesciences Corp. v. HyperBranch Med. Tech., Inc.*, No. 15-819-LPS-CJB, 2018 WL 1785033, at *4-5 (D. Del. Apr. 4, 2018); *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017).

5.      "To prove [patent] infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents."  *PSC Comput. Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004).

**B.      Literal Infringement**

6.      "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  For method claims, direct infringement occurs only when an accused method or product performs all of the steps of the claimed process.  *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773

SCHEDULE 5

(Fed. Cir. 1993) ("[A] method or process claim is directly infringed only when the process is performed."); *Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000) ("Infringement of process inventions is subject to the 'all-elements rule' whereby each of the claimed steps of a patented process must be performed in an infringing process…."). If an accused infringer does not infringe an independent claim, then the claims that depend on it are also not infringed as a matter of law. *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (en banc).

7.      In the situation where a party does not perform or use each and every step or element of the patent claim, to prove direct infringement the patentee must allege a joint infringer theory in which "the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (per curiam). To show that the performance of method steps is attributable to a single entity, the patentee must prove that a party (1) directed or controlled a third party to carry out or use certain steps or elements of the patented method or product, or (2) the party and the third party constitute "a joint enterprise." *See, e.g.*, *Akamai Techs.*, 797 F.3d at 1022-23. "Direction or control" arises when the third party performs the steps of the patented process or uses the elements of the patented product by virtue of a contractual obligation or other relationship that gives rise to

SCHEDULE 5

vicarious liability. *See id.* Liability "can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1023. "Whether a single actor directed or controlled the acts of one or more third parties is a question of fact…." *Id.*

### C.    Doctrine of Equivalents

8.    The doctrine of equivalents is not "simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims." *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1029 (Fed. Cir. 2019). As discussed below, a plaintiff must plead and support a claim of infringement under the doctrine of equivalence by affirmatively showing, *inter alia*, that its claim does not attempt to recapture subject matter surrendered during prosecution by a narrowing amendment or "ensnare" the prior art.

9.    If sufficiently alleged and supported (which Plaintiffs' DOE claims are not), infringement under the doctrine of equivalents is generally a question of fact. *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1258 (Fed. Cir. 2000). The jury must determine whether the differences between the accused products and the claim elements are insubstantial. *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 38-39 (1997).

SCHEDULE 5

10.     Infringement under the doctrine of equivalents requires that equivalency be proven by particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

11.     "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1373-74, 111 U.S.P.Q.2d  (Fed. Cir. 2014); *see also Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1340–41, 85 USPQ2d 1865, 1872 (Fed. Cir. 2008); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

12.     Evidence of infringement under the doctrine of equivalents must be presented on a limitation-by-limitation basis, and not based on the invention as a whole. *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1383 (Fed. Cir. 2007); *Freedom Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citing *Warner-Jenkinson*, 520 U.S. at 29).  Thus, infringement under the doctrine of equivalents requires the patentee to show that for every element of the claim that is not literally present in the accused method or product, the accused method or product contains a substitute element that is only an

SCHEDULE 5

insubstantial difference from the claimed element.  *See AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

13.     One test often applied by courts to evaluate whether a difference is insubstantial is whether the element in the accused product performs the substantially same function in substantially the same way with substantially the same result as the corresponding claim limitation.  *Id.*

14.     However, the patentee may not use the doctrine of equivalents to vitiate a claim limitation entirely.  *See Warner-Jenkinson*, 520 U.S. at 39 n.8; *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009).  Whether a theory of equivalence would vitiate a claim limitation entirely is a legal question for the Court to decide.  *Id.*

**D.     Prosecution History Estoppel**

15.     The doctrine of prosecution history estoppel prevents a patentee from using the doctrine of equivalents to recapture subject matter that was relinquished during prosecution of the patent.  *Id.*  Although the defense of prosecution history estoppel involves underlying factual issues that may be submitted to the jury, it is ultimately a legal question for the Court to decide.  *DePuy Spine*, 567 F.3d at 1323-24.

16.     When "the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue

SCHEDULE 5

that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002). A narrowing amendment that adds an additional claim limitation to a patent claim creates a presumptive surrender of equivalents. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141 (Fed. Cir. 2004) (en banc). The burden is on the patentee to establish that the reason for the amendment was not related to patentability. *Festo*, 535 U.S. at 739-40 (citing *Warner-Jenkinson*, 520 U.S. at 33).

17. Once the presumption of estoppel applies, the presumption of surrender may be rebutted only if the patentee can demonstrate that: (1) the alleged equivalent would have been unforeseeable at the time the narrowing amendment was made; (2) the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent at issue; or (3) there was some other reason suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent. *Honeywell*, 370 F.3d at 1140, 1144.

18. In addition to narrowing amendments, a clear and unmistakable surrender of claim territory in argument to the examiner of record can also estop the patentee from arguing for a broader claim scope in litigation. *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003). Thus, "[c]lear assertions made during prosecution in

support of patentability, whether or not actually required to secure allowance of the claim, may also create an estoppel." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1583 (Fed. Cir. 1995).  Any argument-based estoppel affecting a limitation in one claim extends to all claims in which that limitation appears.  *Id.* at 1584 ("Once an argument is made regarding a claim term so as to create an estoppel, the estoppel will apply to that term in other claims.").

### E.    Ensnarement

19.    Ensnarement is another "limitation on the reach of the doctrine" of equivalents, which specifies that a doctrine-of-equivalents infringement theory cannot "ensnare" the prior art.  *Jang v. Bos. Sci. Corp.*, 872 F.3d 1275, 1284-85, 1287-88 (Fed. Cir. 2017); *DePuy Spine*, 567 F.3d at 1322-23; *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990), *overruled in part on other grounds by Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993).  It is rooted in the well-established principle that a "patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d 1567, 1570 (Fed. Cir. 1991) (citation omitted). Thus, "even if a jury has found equivalence as to each claim element," ensnarement "limits the scope of equivalency that a patentee is allowed to assert." *DePuy Spine*, 567 F.3d at 1323; *see also Jang*, 872 F.3d at 1286.  Although the

SCHEDULE 5

defense of ensnarement involves underlying factual issues that may be submitted to the jury, it is ultimately a legal question for the Court to decide. *Id.* at 1323-24.

20. To determine whether an asserted equivalence is permissible a patentee first "construct[s] a hypothetical claim that literally covers the accused device" and then the Court can "determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *Jang*, 872 F.3d at 1285 (quoting *Intendis GmbH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1363-64 (Fed. Cir. 2016)). This hypothetical claim "may not add any narrowing limitations." *Jang*, 872 F.3d at 1286. If the patentee "fail[s] to submit a proper hypothetical claim for consideration," the patentee has not met "his burden of proving that his doctrine of equivalents theory did not ensnare the prior art." *Id.* at 1287. And if the patentee cannot prove that his claim would not ensnare the prior art, "then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents." *Wilson Sporting Goods*, 904 F.2d at 684; *Jang*, 872 F.3d at 1285.

**F. Indirect Infringement—Active Inducement**

21. Plaintiffs bear the burden to prove indirect infringement by establishing whether Defendants induced infringement. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).

SCHEDULE 5

22.     Inducement is a specific-intent tort.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).  To establish liability for inducement under 35 U.S.C. § 271(b), a patentee must prove by a preponderance of the evidence that "once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement."  *Id.* (citation and internal quotations omitted); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 764-66 (2011); *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007).

23.     Knowledge of the existence of the patent that is alleged to be infringed and knowledge that the induced acts constitute patent infringement are required to prove inducement.  *Global-Tech Appliances, Inc.*, 563 U.S at 765-66. However, mere "knowledge of the acts alleged to constitute infringement" or of the possibility of infringement is insufficient.  *DSU Med. Corp.*, 471 F.3d at 1305; *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-64 (Fed. Cir. 2003). Rather, "proof of actual intent to cause the" infringing acts "is a necessary prerequisite to finding active inducement."  *Warner-Lambert Co.*, 316 F.3d at 1363 (citations and internal quotations omitted).

24.     The patent holder must also prove that direct infringement by a third party has occurred in order to establish a claim for indirect infringement.  *See Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.* 279 F.3d 1022, 1033 (Fed. Cir.

SCHEDULE 5

2002); *see also Dynacore*, 363 F.3d at 1272 ("Indirect infringement, whether

inducement to infringe or contributory infringement, can only arise in the presence

of direct infringement, though the direct infringer is typically someone other than

the defendant accused of indirect infringement."); *Joy Techs.*, 6 F.3d at 774

("Liability for either active inducement of infringement or for contributory

infringement is dependent upon the existence of direct infringement.").

## II.    WILLFUL INFRINGEMENT

25.    Plaintiffs bear the burden to prove by a preponderance of the evidence

that Defendants willfully infringed the asserted patents.  *Halo Elecs., Inc. v. Pulse*

*Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016); *Bayer Healthcare LLC v. Baxalta Inc.*,

989 F.3d 964, 987 (Fed. Cir. 2021).

26.    To establish willful infringement, the patentee must show that the

alleged infringer's conduct was subjectively willful.  *See Halo*, 136 S. Ct. at 1933.

A finding of subjective willfulness requires the patentee to "show the accused

infringer had a specific intent to infringe at the time of the challenged conduct."

*Bayer*, 989 F.3d at 987; *see also Halo*, 136 S. Ct. at 1933 ("[C]ulpability is

generally measured against the knowledge of the actor at the time of the challenged

conduct.").  "Knowledge of the asserted patent and evidence of infringement is

necessary, but not sufficient, for a finding of willfulness."  *Bayer*, 989 F.3d at 988.

27.     The type of behavior typifying subjective willfulness is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 136 S. Ct. at 1932.  As such, a finding of willful infringement is reserved for only the most egregious behavior. *Id.*

28.     Even a finding of this sort of egregious infringing behavior does not mandate enhanced damages. *See id.* at 1933.  Instead, in assessing whether the conduct warrants enhanced damages, a court should "take into account the particular circumstances of each case." *Id.*

29.     "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent."  35 U.S.C. § 298.

## III.   COSTS AND FEES

### A.   Costs

30.     Federal Rule of Civil Procedure 54 states "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Section 1920 of Title 28 of the United States Code includes the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing

SCHEDULE 5

and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation serves under 28 U.S.C. § 1828.  28 U.S.C. § 1923; *see also* D. Del. L.R. 54.1.

31.    "Whenever a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid.  The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent and Trademark Office before the commencement of the suit."  35 U.S.C. § 288.

### B.    Exceptional Case

32.    Section 285 of Title 35 of the United States Code state that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.

33.    The party seeking attorneys' fees has the burden of proving entitlement to fees under § 285 by a preponderance of evidence.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014).

34.    An exception case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the

SCHEDULE 5

governing law and the facts of the case) or the unreasonable manner in which the case was litigated" and "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 1756.  Relevant considerations in assessing whether a case is exceptional including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.  *Id.* at 1756 n.6.

35.    A patentee's conduct may be objectively unreasonable, and thus support a finding of an exceptional case, when it presses claims of infringement that were based on claim construction positions rejected by the Court as being contrary to the specification and statements made by the patentee outside of litigation.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916-18 (Fed. Cir. 2012)

36.    A patentee's conduct may be objectively unreasonable when its continuation of the litigation after proffering a weak claim construction position is "nothing more than an effort to keep a legitimate competitor out of the market on flimsy-to-nonexistent grounds."  *Astrazeneca AB v. Dr. Reddy's Laboratories, Ltd.*, 2010 WL 1375176, *9 (S.D. N.Y. 2010).

## IV.    VALIDITY

SCHEDULE 5

**A.     Prior Art**

37.     A patent claim is invalid under 35 U.S.C. § 102(a)[1] if the invention defined by the claim was known or used by others in the United States or was patented or described in a printed publication. 35 U.S.C. § 102(a). A U.S. patent constitutes prior art to a claimed invention under 35 U.S.C. § 102(a) if the date of issuance of the patent is before the date of invention. 35 U.S.C. § 102(a).

38.     A patent claim is invalid under 35 U.S.C. § 102(b) if the invention defined by the claim was patented or described in a printed publication anywhere in the world or was in public use or on sale in the United States more than one year before the effective filing date of the patent in the United States. 35 U.S.C. § 102(b). In other words, a U.S. or foreign patent constitutes prior art to a claimed invention under 35 U.S.C. § 102(b) if the date of issuance of the patent is more than one year before the effective filing date of a patent application claiming the invention. A printed publication constitutes prior art to a claimed invention under 35 U.S.C. § 102(b) if the publication takes place more than one year before the filing date of a patent application claiming the invention. *Id*.

39.     A patent claim is invalid under 35 U.S.C. § 102(e) if the invention defined by the claim was described in a patent by another inventor that was filed in

---

[1] Citations to 35 U.S.C. § 102 are to the pre-America Invents Act (2011) version of the statute.

SCHEDULE 5

the United States before the applicants' invention date.  35 U.S.C. § 102(e).  A U.S.

patent constitutes prior art to a claimed invention under 35 U.S.C. § 102(e) if the

patent issues from an application that was filed before the invention by the

applicants.  *Id*.

40.    A patent claim is invalid under 35 U.S.C. § 102(g) if the invention

defined by the claim was made in this country by another inventor who had not

abandoned, suppressed, or concealed it before the applicants' invention date.  35

U.S.C. § 102(g).  A device constitutes prior art under 35 U.S.C. § 102(g)(2) if it

was conceived and reduced to practice in the United States before the filing date of

the patent. 35 U.S.C. § 102(g)(2) ("before such person's invention thereof, the

invention was made in this country by another inventor who had not abandoned,

suppressed, or concealed it").

## B.    Priority of Invention

41.    Plaintiffs bear the burden of proving that it is entitled to a priority date

that predates the patent's filing date.  *Tech. Licensing Corp. v. Videotek, Inc.*, 545

F.3d 1316, 1327-29 (Fed. Cir. 2008).

42.    "Priority of invention and its constituent issues of conception and

reduction to practice are questions of law predicated on subsidiary factual

findings."  *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 958 (Fed. Cir.

2016) (citation omitted).

SCHEDULE 5

43.     An application may receive the benefit of the filing date of an earlier application only "if it contains or is amended to contain a specific reference to the earlier filed application." 35 U.S.C. § 120 (pre-AIA). "No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application…" *Id.*

44.     "[W]hen a dispute arises concerning whether a CIP [continuation-in-part] patent is entitled to priority to the date of the original application … the burden of proof ordinarily should rest with the party claiming priority to the date of the original application." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1303 (Fed. Cir. 2008)

45.     Prior inventorship under 35 U.S.C. § 102(g)(2) can be proven in two ways: "(1) [the prior inventor] reduced its invention first …, or (2) it was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Mycogen Plant Sci. v. Monsanto Co*., 243 F.3d 1316, 1332 (Fed. Cir. 2001).

46.     "To have conceived of an invention, an inventor must have formed in his or her mind a definite and permanent idea of the complete and operative invention." *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1577 (Fed. Cir. 1996) (internal quotations and citations omitted).

SCHEDULE 5

47.     "Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Burroughs Wellcome Co. v. Barr Labs., Inc*., 40 F.3d 1223, 1228 (Fed. Cir. 1994).  Conception "must be proven by evidence showing what the inventor has disclosed to others and what that disclosure means to one of ordinary skill in the art." *Cordance Corp. v. Amazon.com, Inc*., 658 F.3d 1330, 1334 (Fed. Cir. 2001) (citation omitted).

48.     "Reduction to practice follows conception." *Muhurkar*, 79 F.3d at 1578.  In order to establish an actual reduction to practice, the inventor must prove: "(1) construct[ion of] an embodiment or perform[ance] of a process that met all the limitations of the interference count; … (2) … determine[ation] that the invention would work for its intended purpose, and (3) the existence of sufficient evidence to corroborate inventor testimony regarding these events." *Medichem, S.A. v. Rolabo, S.L*, 437 F.3d 1157, 1169 (Fed. Cir. 2006) (citations omitted).  Proof of actual reduction to practice requires "more than theoretical capability; it requires showing that the apparatus of the count actually existed and worked for its intended purpose." *Newkirk v. Lulejian*, 825 F.2d 1581, 1583 (Fed. Cir. 1987). "[C]onstructive reduction to practice occurs when a patent application on the claimed invention is filed." *Hybritech Inc. v. Monoclonal Antibodies, Inc*., 802 F.2d 1367, 1376 (Fed. Cir. 1986).

SCHEDULE 5

49.     Where a party is first to conceive but second to reduce to practice, that party must demonstrate reasonable diligence toward reduction to practice from a date just prior to the other party's conception to its reduction to practice.  *Mycogen Plant Sci.*, 261 F.3d at 1363-64.

### C.     Anticipation

50.     "Anticipation is a question of fact."  *IPXL Holding, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005).

51.     "A reference is anticipatory under § 102(b) when it satisfies particular requirements.  First, the reference must disclose each and every element of the claimed invention, whether it does so explicitly or inherently.  While those elements must be 'arranged or combined in the same way as in the claim,' the reference need not satisfy an *ipsissimis verbis* test.  Second, the reference must 'enable one or ordinary skill in the art to make the invention without undue experimentation.'  As long as the reference discloses all of the claim limitations and enables the 'subject matter that falls within the scope of the claims at issue; the reference anticipates – no 'actual creation or reduction to practice' is required.  This is so despite the fact that the description provided in the anticipating reference might not otherwise entitle its author to a patent."  *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (internal citations omitted).

SCHEDULE 5

52.     Even if a prior art reference was considered by the Patent Office, anticipation arguments can be raised before the district court.  *IPXL Holdings*, 430 F.3d at 1381.  Further, "reliance on extrinsic evidence is proper" in demonstrating "what is 'necessarily present' in a prior art's teaching."  *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1345 (Fed. Cir. 2018).

### D.     Obviousness

53.     35 U.S.C. § 103 provides that a patent claim is obvious "if the differences between subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  Obviousness is a question of law that relies on factual determinations.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).  The trier of fact must consider: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) evidence of relevant secondary considerations. *Western Union Co. v. MoneyGram Payment Sys. Inc.*, 626 F.3d 1361, 1369 (Fed. Cir. 2010) (*citing Graham v. John Deere Co. of Kansas City*, 38 U.S. 1, 17 (1966)). The showing requires "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."  *KSR*, 550 U.S. at 415-418.

SCHEDULE 5

54.     Exemplary rationales that may support a conclusion of obviousness include:

(i) combining prior art elements according to known methods to yield predictable results;

(ii) simple substitution of one known element for another to obtain predictable results;

(iii) use of known technique to improve similar devices (methods, or products) in the same way;

(iv) applying a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(v) choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success ("obvious to try");

(vi) known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations are predictable to one of ordinary skill in the art;

(vii) some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention.

*See generally KSR*, 550 U.S. at 415-419.

SCHEDULE 5

55.     Where "there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a personal of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense … the fact that a combination was obvious to try might show that it was obvious under § 103." *KSR*, 550 U.S. at 421.

### E.     Secondary Considerations

56.     Once a prima facie case of obviousness has been established, the patentee has the burden of coming forward with rebuttal evidence regarding secondary considerations of non-obviousness.  *Prometheus Labs., Inc. v. Roxane Labs., Inc*., 805 F.3d 1092, 1101 (Fed. Cir. 2015) (quotation omitted).  Secondary considerations must be taken into account, but "do not necessarily control the obviousness conclusion." *Pfizer*, 480 F.3d at 1372.  Some of the factors to be considered as secondary considerations are: (i) copying; (ii) long felt but unresolved need; (iii) failure of others to develop the invention; (iv) licenses showing industry respect for the invention; (v) commercial success; (vi) unexpected results created by the claimed invention; (vii) whether the claimed invention was praised by others in the field; and (vii) skepticism of skilled artisans before the invention.  *Cheese Sys. Inc*., 725 F.3d at 1352-53.

SCHEDULE 5

57.     For secondary considerations such as commercial success, long felt but unresolved need, and industry praise, "evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success … Thus, if the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant. So too if the feature that creates the commercial success was known in the prior art, the success is not pertinent." *Ormco Corp. v. Align Tech., Inc*., 463 F.3d 1299, 1311-12 (Fed. Cir. 2006).

58.     Additionally, for copying, "[n]ot every competing product that arguably falls within the scope of a patent is evidence of copying … [r]ather, copying requires the replication of a specific product.  This may be demonstrated either through internal documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a virtually identical replica." *Iron Grip Barbell Co., Inc. v. USA Sports, Inc*., 392 F.3d 1317, 1325 (Fed. Cir. 2004).

## F.     Invalidity Based On Collateral Estoppel

59.     Collateral estoppel prevents a party from relitigating an issue when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment."

SCHEDULE 5

*Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007). Whether collateral estoppel applies is a question of law. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

60.    Collateral estoppel "appl[ies] in a court case even though the first 'action' was before an administrative agency if the agency proceeding meets certain standards." *Papst Licensing GMBH & Co. v. Samsung Elecs. Am.*, 924 F.3d 1243, 1250-51 (Fed. Cir. 2019) (citing *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015)). Proceedings before the PTAB meet the standards for collateral estoppel to apply in district court cases. *E.g., id.*

61.    "[C]ollateral estoppel is not limited 'to patent claims that are identical. Rather it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.'" *Ohio Willow Wood Co. v. Alps S. LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).  A difference in claim scope does not preclude the application of collateral estoppel "[i]f the differences between the unadjudicated patent claims and adjudicated patents claims do not materially alter the question of invalidity." *Soverain Software*, 778 F.3d at 1319. District courts thus have applied collateral estoppel when "the routine incorporation of known technology into a dependent claim does not change the analysis." *Kimberly-Clark Worldwide Inc. v. First Quality Baby Prods. LLC*, 135 F. Supp. 3d 850, 856-57 (E.D. Wis. 2015).

G.    **Indefiniteness**

SCHEDULE 5

62.     Whether a claim satisfies the definiteness requirement of 35 U.S.C. § 112 is a question of law.  *In re Packard*, 751 F.3d 1307, 1311 (Fed. Cir. 2014).

63.     "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014).  "[A] patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'  Otherwise there would be '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.'"  *Id*.  "The definiteness requirement … mandates clarity, while recognizing that absolute precision is unattainable."  *Id*.  "Notably, a claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions.'" *Media Rights Techs., Inc. v. Capital One Financial Corp*., 800 F.3d 1366, 1371 (Fed. Cir. 2015).

### H.     Enablement

64.     Enablement is a question of law based on underlying facts.  *Wyeth and Cordis Corp. v. Abbott Labs*., 720 F.3d 1380, 1384 (Fed. Cir. 2013).

65.      "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without

undue experimentation." *Trs. of Boston Univ. v. Everlight Elecs. Co*., 896 F.3d 1357, 1362 (Fed. Cir. 2018) (quotation omitted).  Courts apply the *Wands* factors to determine whether "undue experimentation" would be necessary, namely "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

## I.     Written Description

66.     The written description requirement is a question of fact.  *Ariad Pharms., Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010).  The written description inquiry "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art" and a patent claim is invalid for lack of written description if it does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id*.

## V.     ENFORCEABILITY

67.     "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1285 (Fed. Cir. 2011).  "Unlike validity defenses,

SCHEDULE 5

which are claim specific, inequitable conduct regarding a single claim renders the entire patent unenforceable." *Renegeron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017).

68.     "To prevail on a claim of inequitable conduct in a patent case, the accused infringer must prove by clear and convincing evidence that the patentee: (1) 'knew of the reference' or prior commercial sale; (2) 'knew that it was material'; and (3) 'made a deliberate decision to withhold it.'" *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1324 (Fed. Cir. 2020) (*citing Therasense*, 649 F.3d at 1290).

## VI.   STANDING/OWNERSHIP

69.     "Standing to sue is a threshold requirement in every federal action." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005).  "The party bringing the action bears the burden of establishing that it has standing." *Id.* at 976.

70.     "There are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits: those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).

SCHEDULE 5

### A.      Patentees and Assignees

71.      "[P]laintiffs that hold all legal rights to [a] patent as the patentee or assignee of all patent rights" are "entitled to sue for infringement in [their] own name[s]."  *Id.* at 1339-40.  "Additionally, if a patentee transfers all substantial rights to the patent, this amounts to an assignment or a transfer of title, which confers constitutional standing on the assignee to sue for infringement in its own name alone."  *Id.* at 1340 (citation and internal quotations omitted).

### B.      Exclusive Licensees

72.      Plaintiffs that do not have all substantial rights to a patent but have exclusionary rights in the patent are exclusive licensees.  *Id.*  "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well."  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc).  Exclusive licensees have constitutional standing to sue but must join the patentee or assignee when commencing a patent infringement suit.  *Morrow*, 499 F.3d at 1340.

73.      "[A]n exclusive licensee lacks standing to sue a party who has the ability to obtain [a license under a patent] from another party with the right to grant it."  *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010).

SCHEDULE 5

While an exclusive license need not be in writing for the exclusive licensee to have standing to sue as a co-plaintiff, "courts will not imply an exclusive license when there is no indication that the licensor granted its licensee any of the exclusionary rights in a patent." *Id.*

74.     Where there is no evidence of a patentee subsidiary's express or implied promise to exclude other entities from practicing a patent, an "understanding," based on how two related corporate entities are organized and operate, that the subsidiary is the patentee while the corporate parent is the only entity practicing the patent is insufficient evidence that the parent corporation is an implied exclusive licensee.  *See Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-18 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs.*, 136 S. Ct. 1923 (2016) (finding that, where "there [wa]s no agreement, either oral or written, between [patent owner] and [its sister corporation] with respect to the…patent," but rather "an 'understanding' ... within the [corporate family] that [the sister corporation] has the exclusive right to practice the…patent," the sister corporation, did not have exclusive licensee standing).

75.     "Whether express or implied, a license is a contract governed by ordinary principles of state contract law."  *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (internal citation and quotation omitted).  Thus,

SCHEDULE 5

while federal patent law may permit an oral license, aspects of state contract law, such as the statute of frauds, may not. *See, e.g.*, *Quiedan Co. v. Cent. Valley Builders Supply Co.*, at *1 (N.D. Cal. Oct. 28, 1993), *aff'd* 31 F.3d 1178 (Fed. Cir. 1994) (ruling that plaintiff lacked standing to sue as an exclusive licensee where an alleged oral agreement granting plaintiff an exclusive license to the patent failed to meet the requirements of the California Statute of Frauds).

76.     "[A] parent corporation does not have de facto standing to assert claims for monetary relief for infringement of a wholly-owned subsidiary's patent." *Alarm.com, Inc. v. SecureNet Techs. LLC*, 345 F. Supp. 3d 544, 550-51 (D. Del. 2018).  The parent must still prove "that it has an exclusive license in the asserted patents" for standing.  *Id.* at 551; *see also Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-18 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs.*, 136 S. Ct. 1923 (2016).

## C.    Non-Exclusive Licensees

77.     "If [a] party has not received an express or implied promise of exclusivity under [a] patent, *i.e.*, the right to exclude others from making, using, or selling the patented invention," the party is a non-exclusive licensee.  *Rite-Hite*, 56 F.3d at 1552.  Non-exclusive licensees have no constitutional standing "to bring suit or even to join a suit with the patentee."  *Sicom*, 427 F.3d at 976; *see also Morrow*, 499 F.3d at 1340-41.

SCHEDULE 5

78.     A "[non-exclusive] license to sell an invention in a specified territory, even if it is the only license granted by the patentee, does not provide standing without the grant of a right to exclude others." *Rite-Hite*, 56 F.3d at 1553.

79.     A patent holder may not claim its non-exclusive licensee's lost profits for the licensee's sales of products practicing the invention of the asserted patent. *See Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310-12 (Fed. Cir. 2004).

## VII.   DAMAGES

80.     Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.

81.     Plaintiffs must prove the amount of damages by a preponderance of the evidence.  *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).  "When a patentee seeks lost profits as the measure of damages, the patent holder bears the burden of proving the amount of the award." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) (internal citation and quotation omitted).

82.     To properly carry their burden of proving the amount of damages, Plaintiffs must persuade the Court using "reliable" and "legally sufficient evidence

SCHEDULE 5

regarding an appropriate reasonable royalty." *ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860, 872 (Fed. Cir. 2010).  The claim for damages cannot be
speculative—there must be a reasonable certainty as to the amount of damages
being claimed.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335, 1340
(Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Oiness v.
Walgreen Co.*, 88 F.3d 1025, 1029-30 (Fed. Cir. 1996).  Plaintiffs "must show
[their] damages by evidence." *Promega Corp.*, 875 F.3d at 660.  "Damages 'must
not be left to conjecture by the jury.  They must be proved, and not guessed at.'"
*Id.*  (citation omitted).

83.     A damages theory must be based on "sound economic and factual
predicates." *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir.
2002).  "Any evidence unrelated to the claimed invention does not support
compensation for infringement but punishes beyond the state of the statute."
*ResQNet*, 594 F.3d at 869.  If the patentee fails to tie the theory to the facts of the
case, the testimony must be excluded.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632
F.3d 1292, 1315 (Fed. Cir. 2011).

**A.     Reasonable Royalty**

84.     "A reasonable royalty is the predominant measure of damages in
patent infringement cases." *Uniloc.*, 632 F.3d at 1312.

SCHEDULE 5

85.    "The methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound of the district court." *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 798 (Fed. Cir. 1988).  Deciding the amount of the reasonable royalty is a question of fact.  *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995).

86.    One approach for calculating a reasonable royalty is through a hypothetical negotiation analysis.  *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996) ("Lacking evidence of royalties in the marketplace, this court accepts evidence about hypothetical results of hypothetical negotiations between the patentee and infringer (both hypothetically willing) at the time infringement began.").  The aim of the hypothetical negotiation approach is to capture what the infringer, acting as a prudent licensee, would have been willing to pay as a royalty and yet be able to make a reasonable profit, and what amount would have been acceptable to the patent holder, acting as a prudent patentee who was willing to grant a license.  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121-22 (S.D.N.Y. 1970).  Thus, to determine a reasonable royalty under this approach, a jury must find the royalty that would have been agreed to in a hypothetical negotiation between a willing licensee and willing licensor.  *Lucent*, 580 F.3d at 1324-25.

SCHEDULE 5

87.     A determination of the reasonable royalty under the hypothetical negotiation approach is usually made by assessing factors such as those set forth in *Georgia-Pacific*.  *Rite-Hite*, 56 F.3d at 1554-55. These factors include:

i)      The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

ii)     The rates paid by the licensee for the use of other patents comparable to the patent in suit.

iii)    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

iv)     The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

v)      The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

vi)     The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

vii)    The duration of the patent and the term of the license.

viii)   The established profitability of the product made under the patent; its commercial success; and its current popularity.

ix)     The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

x)      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

xi)     The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

xii)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

xiii)   The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the

SCHEDULE 5

> manufacturing process, business risks, or significant features or improvements added by the infringer.
>
> xiv)   The opinion testimony of qualified experts.
>
> xv)   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific*, 318 F. Supp. at 1120.

88.   The Federal Circuit has explained that "[t]he correct determination of [the hypothetical negotiation date] is essential for properly assessing damages." *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003), *vacated and remanded on other grounds*, 545 U.S. 193 (2005).  Generally, "the date of the hypothetical negotiation is the date that the infringement began." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).

89.   "[T]he patent holder should only be compensated for the approximate incremental benefit derived from his invention."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014).  The patent holder must accordingly "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features…."  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).  The Federal Circuit has held that

SCHEDULE 5

"a reasonable royalty analysis requires a court to hypothesize, not to speculate….

[T]the trial court must carefully tie proof of damages to the claimed invention's

footprint in the market place." *ResQNet*, 594 F.3d at 869; *see also Exmark Mfg.*

*Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1350-51 (Fed.

Cir. 2018).

### B.    Lost Profits

90.    Plaintiffs have the "burden to prove lost profits by a preponderance of

evidence." *Oiness*, 88 F.3d at 1031.  Plaintiffs cannot "meet [their] burden of

proof with mere speculation and guess work."  *Id.*; *see also BIC Leisure Prods.,*

*Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("An award of

lost profits may not be speculative.").

91.    "To recover lost profits as actual damages, a patent holder must

demonstrate that there was a reasonable probability that, but for the infringement,

it would have made the infringer's sales."  *Id.* at 1029.  "The 'but for' inquiry

therefore requires a reconstruction of the market, as it would have developed

absent the infringing product…."  *Grain Processing Corp. v. Am. Maize-Prods.*

*Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999).  In reconstructing the market, Plaintiffs

must provide "sound economic proof of the nature of the market and likely

outcomes with infringement factored out of the economic picture."  *Id.*  "Thus, an

accurate reconstruction of the hypothetical 'but for' market takes into account any

SCHEDULE 5

alternatives available to the infringer." *Id.* at 1351.  "Market sales of an acceptable

noninfringing substitute often suffice alone to defeat a case for lost profits." *Id.* at

1352.

92.    The "but for" inquiry, and thus lost profits, "can be proven using the

test given in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th

Cir. 1978)." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d

1369, 1380 (Fed. Cir. 2017).  "The four-factor Panduit test requires the patentee to

show: (1) demand for the patented product; (2) an absence of acceptable,

noninfringing substitutes; (3) manufacturing and marketing capability to exploit

the demand; and (4) the amount of profit that would have been made." *Id.* (citing

*Panduit*, 575 F.2d at 1156).  "[A] patentee is not entitled to lost profits if the

patentee fails to establish any of the above requirements." *SmithKline*, 926 F.2d at

1165.  Thus, courts have denied lost profits where a patentee failed to provide

evidence to establish the absence of acceptable, noninfringing substitutes in the

*Panduit* inquiry.  *See Presidio*, 875 F.3d at 1380-81; *Slimfold Mfg. Co. v. Kinkead

Indus.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991); *SmithKline*, 926 F.2d at 1165-66.

93.    Consideration of non-infringing alternative products must account for

both acceptable non-infringing alternative products available in the marketplace, as

well as alternative designs available to the infringer which could have been

SCHEDULE 5

implemented to provide an acceptable alternative to customers.  *Grain Processing*, 185 F.3d 1341.

94.     "[I]f the customer would have bought the infringing product without the patented feature or with a different, non-infringing alternative to the patented feature, then the patentee cannot establish entitlement to lost profits for that particular sale." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017).

95.     "[A] patent owner may satisfy the second *Panduit* element by substituting proof of its market share for proof of the absence of acceptable substitutes." *BIC Leisure*, 1 F.3d at 1219.  However, "similarity of [the patent owner's, infringer's, and other manufacturers'] products is necessary in order for market share proof to show correctly satisfaction of *Panduit*'s second factor."  *Id.*

96.     A patent holder may not claim its non-exclusive licensee's lost profits for the licensee's sales of products practicing the invention of the asserted patent. *See Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310-12 (Fed. Cir. 2004).

## VIII.  INJUNCTION

97.     Plaintiffs have the burden to prove it is entitled to a permanent injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "[I]njunctions 'may' issue 'in accordance with the principles of equity.'"  *Id.* at

SCHEDULE 5

392 (citation omitted). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 165 (2010). Rather, "if the plaintiff's injury can be adequately redressed with a less severe remedy, 'recourse to the additional and extraordinary relief of an injunction' is not warranted." *Riverbed Tech., Inc. v. Silver Peak Sys., Inc*., No. CV 110-484-RGA, 2014 WL 4695765, at *3 (D. Del. Sep. 12, 2014) (citation omitted).

98.     To obtain a permanent injunction, a plaintiff must demonstrate all of the following: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. "[E]very injunctive case must be considered according to its unique facts." *ActiveVideo Networks, Inc. v. Verizon Communs., Inc*., 694 F.3d 1312, 1338 n.6 (Fed. Cir. 2012). Plaintiff must meet all four elements of the eBay test. Failure to meet any of those factors means that the court may not grant an injunction. *Nichia Corp. v. Everlight Americas, Inc*., 855 F.3d 1328, 1341-44 (Fed. Cir. 2017); *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1380-81 (Fed. Cir. 2017).

99.     To satisfy the first *eBay* factor, "the patentee must show that it is irreparably harmed by the infringement.  This requires proof that a 'causal nexus relates the alleged harm to the alleged infringement.'"  *Apple Inc. v. Samsung Elecs. Co*., 809 F.3d 633, 639 (Fed. Cir. 2015) (*citing Apple Inc. v. Samsung Elecs. Co*., 695 F.3d 1370, 1374 (Fed. Cir. 2012).  The causal nexus requirement "ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason.  For example, it ensures that an injunction is not entered on account of 'irreparable harm caused by otherwise lawful competition.'"  *Apple*, 809 F.3d at 641.

100.    The absence of "meaningful competition" weighs against a finding of irreparable harm.  *Nichia Corp*., 855 F.3d at 1341.  Even when two parties compete in the same market, there may be no meaningful competition when "two companies generally sell to different parties."  *Id*. at 1341.

101.    The patentee's delay in bringing suit and failure to seek a preliminary injunction may be considered in assessing a lack of irreparable injury.  *Genband US LLC v. Metaswitch Networks Corp*., 861 F.3d 1378, 1385 (Fed. Cir. 2017).

102.    The "balance of hardship" factor "accesses the relative effect of granting or denying an injunction on the parties, the district court properly considered several factors in its analysis.  These factors included the parties' sizes, products, and revenue sources."  *i4i Ltd. v. Microsoft Corp*., 598 F.3d 831, 862

SCHEDULE 5

(Fed. Cir. 2010); *see also Bio-Rad Labs, Inc. v. 10X Genomics, Inc.*, 967 F.3d 1353, 1378-80 (Fed. Cir. 2020) (holding that the balance of hardship factor weighs against a permanent injunction when the accused infringer was "a much smaller company").

103.   As to the "public interest" factor, "it was in the public interest to allow competition in the medical device arena." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc*., 670 F.3d 1171, 1192 (Fed. Cir. 2012), *vacated on other grounds*, 476 Fed. Appx. 747 (Fed. Cir. 2012) (affirming the district court's award of ongoing royalty instead of injunction).

# SCHEDULE 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 18-1869-SB-CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) | |
| Defendants. | ) | |

**JOINT TRIAL EXHIBIT LIST (SCHEDULE 6)**

**Schedule 6 – Joint Trial Exhibit List**

| JTX# | PTX # | DTX# | Date | Bates Begin | Bates End | Description | Depo. Exh No. |
|------|-------|------|------|-------------|-----------|-------------|---------------|
| JTX-0001 | PTX-0001 | | 8/22/2006 | BSC-MT-119301 | BSC-MT-119342 | Certified copy of U.S. Patent 7,094,245 | |
| JTX-0002 | PTX-0002 | | 3/10/2015 | BSC-MT-119343 | BSC-MT-119384 | Certified copy of U.S. Patent 8,974,371 | |
| JTX-0003 | PTX-0003 | | 5/29/2018 | BSC-MT-119385 | BSC-MT-119427 | Certified copy of U.S. Patent 9,980,725 | |
| JTX-0004 | PTX-0004 | DTX-0139 | 10/5/2001 | BSC-MT-000119 | BSC-MT-000556 | Certified copy of the file history for U.S. Patent 7,094,245 | |
| JTX-0005 | PTX-0006 | DTX-0140 | 12/16/2011 | BSC-MT-000759 | BSC-MT-001283 | Certified copy of the file history for U.S. Patent 8,974,371 | |
| JTX-0006 | PTX-0008 | DTX-0141 | 5/19/2016 | BSC-MT-001591 | BSC-MT-001788 | Certified copy of the file history for U.S. Patent 9,980,725 | |

# SCHEDULE 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-1869-SB-CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' TRIAL EXHIBIT LIST (SCHEDULE 7)**

**Defendants' Statement**

Pursuant to Rule 26(a)(3)(B) of the Federal Rules of Civil Procedure and D. Del. LR 16.3(d), Defendants Micro-Tech Endoscopy USA, Inc., Micro-Tech (Nanjing) Co. Ltd., and Henry Schein, Inc. (collectively, "Defendants") hereby object to the Exhibit List provided by Plaintiffs. Defendants reserve the right to supplement, revise, correct, clarify, withdraw, or otherwise amend these objections based on new information, new positions taken by the parties, future rulings of the Court, including, but not limited to, rulings on the parties' pending motions for summary judgment, Daubert motions, motions *in limine*, and/or evidentiary objections raised by the parties prior to trial. Defendants make these objections without waiver of, and without prejudice to, any motions, arguments, or evidentiary objections Defendants have presented or may present separately to the Court. Defendants reserve the right to object to documents Plaintiffs may offer in connection with any proposed witness, whether presented live or by deposition. Defendants also incorporate herein their Objections to Plaintiffs' Deposition Designations and Objections to Plaintiffs' Witness List.

The absence of an objection to a particular document is not an admission or concession by Defendants that the document is admissible in the context and/or for the purpose for which Plaintiffs may attempt to offer it. Furthermore, for documents listed in duplicate on the list (e.g., where a document is listed as a deposition exhibit and separately, or where multiple copies of the same document have been listed with different production numbers, or where a document is listed as both a complete copy and excerpts thereof), any objections listed for one version of the document apply equally to all versions of the document. Additionally, unless expressly agreed by Defendants, Defendants object to any document being offered into evidence without a competent sponsoring witness. Unless expressly agreed by Defendants, Defendants also reserve the right to challenge or otherwise question the authenticity of any document or the accuracy of any

2

translation of a foreign-language document. Defendants further object to documents listed on

Plaintiffs' exhibit list that are not in fact admissible documentary or physical evidence.

Defendants also reserve the right to object to any physical or demonstrative exhibits in

accordance with the parties' proposed pretrial order. Defendants specifically reserve the right to

seek to admit into evidence documents that Defendants object to being offered into evidence by

Plaintiffs.

## DEFENDANTS' OBJECTION KEY FOR
## OBJECTIONS TO PLAINTIFFS' EXHIBIT LIST

| CODE | OBJECTION |
|------|-----------|
| 106 | Incomplete.  Fed. R. Evid. 106 |
| 402 | Not relevant. Fed. R. Evid. 401, 402 |
| 403 | Unduly prejudicial, confusing, wasteful, or cumulative.  FRE 403 |
| 701 | Improper lay opinion.  Fed. R. Evid. 701 |
| 702 | Improper expert testimony.  Fed. R. Evid. 702 |
| 802 | Hearsay if offered for the truth of the matter asserted.  FRE 802 |
| 901 | Requires authenticity or identification.  Fed. R. Evid. 901 |
| 1002 | Violates best evidence rule.  Fed. R. Evid. 1002 |
| 1005 | Not a qualifying public record. Fed. R. Evid. 1005 |
| 1006 | Improper summary.  Fed. R. Evid. 1006 |
| F | Lacks foundation or violates Fed. R. Evid. 104, 602, 1003, 1005 |
| CP | Composite; not a single document |
| ILL | Illegible |
| UT | Untimely disclosed/not produced in discovery |
| SJ | Subject to exclusion pending Motion for Summary Judgment |
| Daub | Subject to exclusion pending Daubert Motion |
| MIL | Subject to exclusion pending Motion *in Limine* |
| D | Duplicate |
| DESC | Inadequate, misleading, or improper description |

3

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---------|------|-------------|-----------|-------------|-----------|------------------------|
| PTX-0001 | 8/22/2006 | BSC-MT-119301 | BSC-MT-119342 | Moved to Joint Exhibit List at JTX-0001 | | |
| PTX-0002 | 3/10/2015 | BSC-MT-119343 | BSC-MT-119384 | Moved to Joint Exhibit List at JTX-0002 | | |
| PTX-0003 | 5/29/2018 | BSC-MT-119385 | BSC-MT-119427 | Moved to Joint Exhibit List at JTX-0003 | | |
| PTX-0004 | 10/5/2001 | BSC-MT-000119 | BSC-MT-000556 | Moved to Joint Exhibit List at JTX-0004 | | |
| PTX-0005 | 10/16/2008 | BSC-MT-000557 | BSC-MT-000758 | Certified copy of the file history for U.S. Patent 8,083,668 | | 403 |
| PTX-0006 | 12/16/2011 | BSC-MT-000759 | BSC-MT-001283 | Moved to Joint Exhibit List at JTX-0005 | | |
| PTX-0007 | 3/9/2015 | BSC-MT-001284 | BSC-MT-001590 | Certified copy of the file history for U.S. Patent 9,370,371 | | 403 |
| PTX-0008 | 5/19/2014 | BSC-MT-001591 | BSC-MT-001788 | Moved to Joint Exhibit List at JTX-0006 | | |
| PTX-0009 | 11/6/2006 | BSC-MT-001789 | BSC-MT-001844 | Assignment of patent applications and patents from Scimed Life Systems, Inc. to Boston Scientific Scimed, Inc: Reel 018505_Frame 0868 | | 403, 1005 |
| PTX-0010 | | BSC-MT-001845 | BSC-MT-001845 | Assignment Abstract of Title for  Application 09971488 / U.S. Patent 7,094,245 | | 403, 1005 |
| PTX-0011 | | BSC-MT-001846 | BSC-MT-001846 | Assignment Abstract of Title for Application 13328171 / U.S. Patent 8,974,371 | | 403, 1005 |
| PTX-0012 | 10/5/2001 | BSC-MT-001847 | BSC-MT-001855 | USPTO Assignment Reel 012242_Frame 0759 Patent Application 09/971,488 | | 403, 1005 |
| PTX-0013 | 12/16/2011 | BSC-MT-001856 | BSC-MT-001860 | Assignment Reel_Frame 027512-0901 | | 403, 1005 |
| PTX-0014 | 12/16/2011 | BSC-MT-001861 | BSC-MT-001870 | Assignment Reel_Frame 027532-0727 | | 403, 1005 |
| PTX-0015 | 8/22/2006 | BSC-MT-000001 | BSC-MT-000039 | U.S. Patent No. 7,094,245 (Adams) | | D, 1005 |
| PTX-0016 | 3/10/2015 | BSC-MT-000040 | BSC-MT-000078 | U.S. Patent No. 8,974,371 (Durgin) | | D, 1005 |
| PTX-0017 | 5/29/2018 | BSC-MT-000079 | BSC-MT-000118 | U.S. Patent No. 9,980,725 (Durgin) | | D, 1005 |
| PTX-0018 | 1/1/2015 | BSC-MT-003307 | BSC-MT-003312 | Boston Scientific Resolution Clip Brochure | | 403, 901, 802, F |
| PTX-0019 | 4/29/2014 | BSC-MT-014783 | BSC-MT-015021 | Certified copy of file history U.S. Patent No. 8,709,027 | | 403, 402 |
| PTX-0020 | 3/1/2016 | BSC-MT-015865 | BSC-MT-016223 | Certified copy of file history U.S. Patent No. 9,271,731 | | 403, 402 |
| PTX-0021 | 9/18/2012 | BSC-MT-016301 | BSC-MT-016712 | File history U.S. Patent 7,094,245 | | D, 1005 |
| PTX-0022 | 2/1/2011 | BSC-MT-016750 | BSC-MT-017098 | File history U.S. Patent 7,879,052 | | D, 1005 |
| PTX-0023 | 7/31/2014 | BSC-MT-017136 | BSC-MT-017272 | File history U.S. Patent 8,444,660 | | D, 1005 |
| PTX-0024 | 1/26/2001 | BSC-MT-022409 | BSC-MT-022448 | Boston Scientific Idea Disclosure, Through the Scope Endoscopic Hemostatic Clipping Device, signed by innovators Mark Adams and Russell Durgin | | 403, 802, 901, F, CP |
| PTX-0025 | 7/3/2003 | BSC-MT-022451 | BSC-MT-022494 | BSC Invention Disclosure | | 403, 802, 901, F, CP |
| PTX-0026 | 4/20/2004 | BSC-MT-022497 | BSC-MT-022517 | BSC Invention Disclosure - Update to Through the Scope Tension Member Release Clip Disclosure | | 403, 802, 901, F, CP |
| PTX-0027 | 7/31/2014 | BSC-MT-025132 | BSC-MT-025268 | Letter from USPTO Notice of Withdrawal from Issue, U.S. Patent No. 8,444,660 | | 106, 402, 403, CP, DESC, F, 901 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0028 | 7/22/1996 | BSC-MT-034073 | BSC-MT-034096 | Laboratory Notebook N0119 | | 403, 802, 901, 1002, F, ILL |
| PTX-0029 | 6/1/1998 | BSC-MT-034813 | BSC-MT-034832 | Laboratory Notebook N0261 | | 106, 403, 802, 901, 1002, F |
| PTX-0030 | 4/3/2015 | BSC-MT-088634 | BSC-MT-088634 | Spreadsheet, R&D Financial Template | | 402, 403, 802, 901, F |
| PTX-0031 | | BSC-MT-091962 | BSC-MT-091962 | Spreadsheet, Project View | | 402, 403, 702, 802, 901, 1006, F, Daub |
| PTX-0032 | | BSC-MT-116680 | BSC-MT-116680 | Spreadsheet, Global Endoscopy Profit and Loss 2011-2017 | | 402, 403, 802, 901, 1006, F, Daub |
| PTX-0033 | | BSC-MT-116681 | BSC-MT-116681 | Spreadsheet, Sales and Costs 2004-2016 | | 402, 403, 802, 901, 1006, F, Daub |
| PTX-0034 | | BSC-MT-117941 | BSC-MT-117941 | Spreadsheet, 2016 Endoscopy Market Model European Roll-Up | | 402, 403, 802, 901, 1006, F, Daub |
| PTX-0035 | | BSC-MT-117942 | BSC-MT-117942 | Spreadsheet, European Market Model Rollup; Competitors - Unit Volume by Company | | 402, 403, 802, 901, 1006, F, Daub |
| PTX-0036 | | BSC-MT-117943 | BSC-MT-117943 | Spreadsheet, European Market Model Rollup; Competitors - Unit Volume by Company | | 402, 403, 802, 901, 1006, D, F, Daub |
| PTX-0037 | | BSC-MT-117944 | BSC-MT-117944 | Spreadsheet, 2015 Endoscopy Market Model European Roll-Up; Competitors - Unit Volume by Company | | 402, 403, 802, 901, 1006, F, Daub |
| PTX-0038 | | BSC-MT-117945 | BSC-MT-117945 | Spreadsheet, Market Model 2013 - Country Totals | | 402, 403, 802, 901, 1006, F, Daub |
| PTX-0039 | | BSC-MT-117946 | BSC-MT-117946 | Spreadsheet, Material (UPN) 2012-2017 | | 402, 403, 802, 901,  F, Daub |
| PTX-0040 | 4/11/2017 | BSC-MT-127303 | BSC-MT-127415 | Transcript from the deposition of Vincent Turturro, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB (D.Del.) | | 403, 701, 802 |
| PTX-0041 | | BSC-MT-131425 | BSC-MT-131443 | Presentation, Resolution Clip Marketing Plan | | 402, 403, 802, 901 1006, F |
| PTX-0042 | | BSC-MT-131455 | BSC-MT-131480 | Presentation, Welcome to the Resolution Clip Device Training | | 402, 403, 802, 901, F |
| PTX-0043 | | HS00000046 | HS00000046 | Micro-Tech Endoscopy Product Catalog | | 106, 403 |
| PTX-0044 | | HS00000377 | HS00000377 | Spreadsheet, Purchase Order Data | | 403 |
| PTX-0045 | | HS00000378 | HS00000378 | Spreadsheet, Purchase Order Data | | 403 |
| PTX-0046 | | HS00000379 | HS00000379 | Spreadsheet, Records Retention data by department | | 403 |
| PTX-0047 | | HS00000391 | HS00000391 | Spreadsheet, ConMed Sales 2018 and 2019 | | 403 |
| PTX-0048 | | HS00000394 | HS00000394 | Spreadsheet, 2016-2020 Net Sales by item | | 403 |
| PTX-0049 | | HS00000395 | HS00000395 | Spreadsheet, Purchase Order Data | | 403 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---------|------|-------------|-----------|-------------|-----------|------------------------|
| PTX-0050 | | MT00005723 | MT00005723 | Spreadsheet, Purchase Summary 2016-2019 | | 403 |
| PTX-0051 | | MT00005724 | MT00005724 | Spreadsheet, 2016-2019 Revenue and COGS | | 403 |
| PTX-0052 | | MT00005901 | MT00005911 | SureClip Repositionable Hemostasis Clip Value Analysis Presentation | | 403 |
| PTX-0053 | | MT00005927 | MT00005927 | Brochure, Micro-Tech Endoscopy Introduces the SURE CLIP | | 403 |
| PTX-0054 | 11/xx/2016 | MT00011879 | MT00012458 | US Market Report Suite for Gastrointestinal Devices by iData Research | | 402, 403 |
| PTX-0055 | | MT00012498 | MT00012498 | Spreadsheet, SureClip Purchase Summary and Detail | | 403 |
| PTX-0056 | 1/1/2005 | BSC-MT-116614 | BSC-MT-116626 | Distributorship Agreement between Boston Scientific Scimed, Inc. and Boston Scientific Corporation, effective January 1, 2005 | | 402, 403, 802, 901, 1002, F, Daubert |
| PTX-0057 | 1/1/1998 | BSC-MT-116639 | BSC-MT-116649 | Agreement for Sharing Research and Development Costs, between Scimed Life Systems, Inc., and Boston Scientific Limited, effective January 1, 1998 | | 402, 403, 802, 901, 1002, F, Daub |
| PTX-0058 | 1/1/1998 | BSC-MT-116650 | BSC-MT-116662 | Amended and Restated Agreement for Sharing Research and Development Costs between Scimed Life Systems, Inc., and Boston Scientific Limited, effective January 1, 1998 | | 402, 403, 802, 901, 1002, F, Daub |
| PTX-0059 | 1/5/2009 | BSC-MT-116663 | BSC-MT-116679 | Second Amended and Restated Agreement for Sharing Intangible Development Costs between Boston Scientific Scimed, Inc., and Boston Scientific Limited, amended and restated effective January 5, | | 402, 403, 802, 901, 1002, F, Daub |
| PTX-0060 | 12/31/2013 | BSC-MT-140092 | BSC-MT-140110 | Third Amended and Restated Agreement for Sharing Intangible Development Costs between Boston Scientific Scimed, Inc., and Boston Scientific Limited, amended and restated effective December | | 402, 403, 802, 901, 1002, F, Daub |
| PTX-0061 | 12/31/2019 | BSC-MT-140116 | BSC-MT-140123 | Intellectual Property Transfer Agreement between Boston Scientific Limited and Boston Scientific Medical Device Limited, effective December 31, 2019 | | 402, 403, 802, 901, 1002, F, Daub |
| PTX-0062 | 1/1/2005 | BSC-MT-140065 | BSC-MT-140073 | International Distributorship Agreement between Boston Scientific Limited and Boston Scientific Corporation, effective as of January 1, 2005 | | 402, 403, 802, 901, 1002, F, Daub |
| PTX-0063 | 10/23/2020 | | | Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094245, 8,974,371, and 9,980,725 | | 402, 403, 702, 802, Daub, SJ, |
| PTX-0064 | | | | Opening Expert Report of Karl R. Leinsing Exhibit A - Curriculum Vitae | | 402, 403, 702, 802, Daub, SJ, |
| PTX-0065 | | | | Opening Expert Report of Karl R. Leinsing Exhibit B - Materials Considered | | 402, 403, 702, 802, Daub, SJ, |
| PTX-0066 | | | | Opening Expert Report of Karl R. Leinsing Exhibit C - Pictures of BSC Resolution Clips | | 402, 403, 702, 802 901, 1002, F, CP |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0067 | | | | Opening Expert Report of Karl R. Leinsing Exhibit D - Pictures of BSC Resolution 360 Clips | | 402, 403, 702, 802, 901, 1002, F, CP |
| PTX-0068 | | | | Opening Expert Report of Karl R. Leinsing Exhibit E - Pictures of Accused Original (Micro-Tech) Devices | | 402, 403, 702, 802, 901, 1002, F, CP |
| PTX-0069 | | | | Opening Expert Report of Karl R. Leinsing Exhibit F - Pictures of Accused Original (ConMed) Devices | | 402, 403, 702, 802, 901, 1002, F, CP |
| PTX-0070 | | | | Opening Expert Report of Karl R. Leinsing Exhibit G - Pictures of Accused Buckle Devices | | 402, 403, 702, 802, 901, 1002, Daub, SJ, F, CP |
| PTX-0071 | | | | Opening Expert Report of Karl R. Leinsing Exhibit H - Pictures of Accused Lockado Devices | | 402, 403, 702, 802, 901, 1002, Daub, SJ, F, CP |
| PTX-0072 | | | | Opening Expert Report of Karl R. Leinsing Exhibit I - Videos of firing Accused Original (Micro-Tech) Devices | | 402, 403, 702, 802. 901, 1002, F, CP, ILL |
| PTX-0073 | | | | Opening Expert Report of Karl R. Leinsing Exhibit J - Videos of firing Accused Original (ConMed) Devices | | 402, 403, 702, 802, 901, 1002, F, CP |
| PTX-0074 | | | | Opening Expert Report of Karl R. Leinsing Exhibit K - Hemoclip Device Inventory | | 402, 403, 702, 802, 901, F, |
| PTX-0075 | | | | Opening Expert Report of Karl R. Leinsing Exhibit L - SEM Pictures of Accused Original (Micro-Tech) Devices | | 402, 403, 702, 802, 901, 1002, Daub, SJ, F, CP |
| PTX-0076 | | | | Opening Expert Report of Karl R. Leinsing Exhibit M - SEM Pictures of Accused Original (ConMed) Devices | | 402, 403, 702, 802, 901, 1002, Daub, SJ, F, CP |
| PTX-0077 | | | | Opening Expert Report of Karl R. Leinsing Exhibit N - SEM Pictures of Accused Buckle Devices | | 402, 403, 702, 802, 901, 1002, Daub, SJ, F, CP |
| PTX-0078 | | | | Opening Expert Report of Karl R. Leinsing Exhibit O - SEM Pictures of Accused Lockado Devices | | 402, 403, 702, 802, 901, 1002, Daub, SJ, F, CP |
| PTX-0079 | | | | Opening Expert Report of Karl R. Leinsing Exhibit P - SEM Picture of Sample 1 of Original, Buckle, Lockado | | 402, 403, 702, 802, 901, 1002, F |
| PTX-0080 | 1/1/2005 | | | Fracture Mechanics, by T.L. Anderson, 3rd Edition, CRC Press 2005 by Taylor & Francis Group, LLC, ISBN: 13: 978-1-4200-5821-5 | | 402, 403, 702, 802, 901, F, Daub, SJ |

4

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0081 | 12/1/2002 | | | "Stress-Strain Curve for 17-7 PH, a Precipitation-hardening stainless steel, including information regarding Deformation, Tensile, High temperature, Chemical composition," from Atlas of Stress-Strain Curves, Second Edition (ASM International), available at https://www.asminternational.org/web/hts/search/-/journal_content/56/10192/SSTR244/PUBLICATION;jsessionid=18093BBCB7B87FD7 55194E53E26BE4A8?p_p_id=webcontentresults_WAR_webcontentsearchportlet_INST ANCE_2UAoyxtTX6d6&p_p_lifecycle=0&p_p_state=normal&p_p_mode=view&p_p_col_id=column-2&p_p_col_count=1 | | 106, 402, 403, 702, 802, 901, F, Daub, SJ |
| PTX-0082 | 1/22/2004 | BSC-MT-110175 | BSC-MT-110293 | Resolution Hemostasis Clipping Device Traditional 510(k): K040148 | | 106, 403, 802, 901 |
| PTX-0083 | 6/30/2015 | BSC-MT-111487 | BSC-MT-111725 | Resolution 360 Clip Traditional 510(k): K151802 | | 403, 802, 901 |
| PTX-0084 | 2/12/2020 | BSC-MT-139793 | BSC-MT-139848 | Boston Scientific - Fracture Analysis of Deployed SureClip Hemostasis Clips | | 402, 403, 701, 802, 901, F |
| PTX-0085 | 11/27/2019 | BSC-MT-139849 | BSC-MT-139856 | Boston Scientific - Micro-Tech Clip Deployment Analysis - Collin Murray Affidavit | | 402, 403, 701, 802, 901, F, ILL |
| PTX-0086 | 4/9/2019 | BSC-MT-139857 | BSC-MT-139873 | Micro-Tech Test Report | | 403, 901, ILL |
| PTX-0087 | | CMD 0527 | CMD 0534 | DuraClip Repositionable Hemostasis Clip Instructions for Use | | 403, 901 |
| PTX-0088 | | | | "Fracture",  Definition of Fracture by Merriam-Webster | | 402, 403, 901, F |
| PTX-0089 | | | | Fracture Mechanics, by E.E. Gdoutos, Published by Springer 2005, ISBN 1-4020-3153-X (e-book). | | 402, 403, 802, 901, F, Daub, SJ |
| PTX-0090 | 2/15/2008 | | | Hanson, M., "On Adhesion and Galling in Metal Forming," Acta Universitatis Upsaliensis, Digital Comprehensive Summaries of Uppsala Dissertations from the Faculty of Science and Technology (2008) 388, ISBN 978-91-554-7072-2 | | 402, 403, 702, 802, 901, F, Daub, SJ |
| PTX-0091 | | | | Metals Handbook, ASM International Handbook 1987, Vol. 12, ISBN 0-87170-007-7 (Vol. 1). | | 402, 403, 702, 802, 901, F,  Daub, SJ |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0092 | 8/27/2020 | | | Micro-Tech Endoscopy Products webpage, Hemostasis clips, available at http://Micro-Techmedical.com/products/sup_11.html. | | 403, 901, F |
| PTX-0093 | 4/30/2020 | | | MT First Supplemental Responses to First Set of Common Interrogatories | | 403 |
| PTX-0094 | | MT00000020 | MT00000020 | Video, Animation of clip | | 403 |
| PTX-0095 | | MT00000021 | MT00000021 | Video, Animation of clip | | 403 |
| PTX-0096 | 5/12/2015 | MT00000035 | MT00000046 | Product Performance Specification for Sterile Repositionable Hemostasis Clipping Device | | 403 |
| PTX-0097 | | MT00000093 | MT00000104 | SureClip Repositionable Hemostasis Clip Instructions for use | | 403 |
| PTX-0098 | | MT00000149 | MT00000149 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0099 | | MT00000154 | MT00000154 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0100 | 5/12/2013 | MT00000157 | MT00000157 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0101 | 5/12/2013 | MT00000166 | MT00000166 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0102 | 9/14/2015 | MT00000169 | MT00000169 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0103 | | MT00000246 | MT00000264 | 510(K) Micro-Tech Submission - Device Description | | 106, 403, 402, MIL |
| PTX-0104 | 7/20/2016 | MT00000693 | MT00000693 | 510(K) Micro-Tech Submission Cover Letter | | 106, 403, 402, MIL |
| PTX-0105 | | MT00000819 | MT00000823 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | | 106, 403, 402, MIL |
| PTX-0106 | | MT00005879 | MT00005880 | Micro-Tech USA SureClip Hemostasis Clip Data Sheet | | 403 |
| PTX-0107 | 4/24/2019 | MT00011117 | MT00011131 | SureClip Repositionable Hemostasis Clip Instructions for Use | | 403 |
| PTX-0108 | 4/12/2019 | MT00011132 | MT00011132 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0109 | 4/12/2019 | MT00011133 | MT00011133 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0110 | 5/14/2019 | MT00011134 | MT00011134 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0111 | 6/12/2019 | MT00011253 | MT00011253 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0112 | 3/4/2019 | MT00011450 | MT00011450 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0113 | 7/12/2019 | MT00011451 | MT00011451 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0114 | 10/10/2017 | MT00011803 | MT00011810 | Series of Micro-Tech diagrams in Japanese | | 403, DESC, CP |
| PTX-0115 | 12/23/2019 | MT00012532 | MT00012532 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0116 | 12/23/2019 | MT00012534 | MT00012534 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0117 | 12/23/2019 | MT00012536 | MT00012536 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0118 | 12/23/2019 | MT00012537 | MT00012537 | Micro-Tech Diagram in Japanese, | | 403, DESC |
| PTX-0119 | 9/24/2019 | | | New Technique to Improve Ductility of Ceramics Material for Missiles and Engines.pdf, By Purdue University, 2019 | | 402, 403, 802, 901, Daub, SJ, F |
| PTX-0120 | 7/31/2020 | | | Plaintiffs Final Infringement Contentions with exhibits. | | 403, 701, 802, 901, F, SJ |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0121 | | | | Shigley, Joseph Edward, and Larry D Mitchell. "2-9 Normal Stresses in Bending." Mechanical Engineering Design, Fourth ed., McGraw-Hill Book Company, 1983. | | 106, 402, 403,  802, 901, F, Daub, SJ |
| PTX-0122 | | | | SureClip Lockado Repositionable Hemostasis Clip Instructions for Use, available at https://www.mtendoscopy.com/wp-content/uploads/2020/09/D000008502-%EF%BC%881-0010546%EF%BC%8CREV-5-%EF%BC%89-IFUlockado-added.pdf | | 403, 802, 901, 1002, F |
| PTX-0123 | 10/22/2019 | | | Team Bone webpage, Excellence in Bone Research, available at https://teambone.com/education-basic/shear-resistance-priority-hypothesis/ | | 402, 403, 702, 802, 901, Daub, SJ, UT, F |
| PTX-0124 | 8/22/2006 | | | United States Patent 7094245 (Certified copy) | | 403, D |
| PTX-0125 | 3/10/2015 | | | United States Patent 8974371 (Certified copy) | | 403, D |
| PTX-0126 | 5/29/2018 | | | United States Patent 9980725 (Certified copy) | | 403, D |
| PTX-0127 | 12/28/2020 | | | Micro-Tech webpage, Hemostasis, micro-tech-medical.com_products_productClass14 | | 403, 802, 901, F |
| PTX-0128 | 12/16/2020 | | | Reply Expert Report of Karl R. Leinsing, MSME, PE Regarding Infringement of U.S. Patent Nos. 7,094,245; 8,974,371; and 9,980,725 | | 402, 403, 702, 802, Daub, SJ, |
| PTX-0129 | | | | Reply Expert Report of Karl R. Leinsing - Exhibit A - SEM Sample Packaging | | 402, 403, 702, 802, 901, 1002, CP, F, DESC |
| PTX-0130 | | | | Reply Expert Report of Karl R. Leinsing - Exhibit B - Handle Coupled to Sheath | | 402, 403, 702, 802, 901, 1002, CP, F, DESC |
| PTX-0131 | | | | Reply Expert Report of Karl R. Leinsing - Exhibit C - Actuator Coupled to Control Wire | | 402, 403, 702, 802, 901, 1002, CP, F, DESC |
| PTX-0132 | 12/28/2020 | | | Analytical Lab Boston - How to Package Samples, available at https://analyticalanswersinc.com/contact-us/how-to-package-samples/ | | 402, 403, 802, 901, F, UT |
| PTX-0133 | 1/1/2010 | | | ASM Handbook Volume 22B Glossary of Terms (2010) | | 106, 402, 403, 802, 901, F, UT |
| PTX-0134 | 12/14/2020 | | | Compression Testing of Homogeneous Materials and Composites, ASTM Special Technical Publication, Richard Chait and Ralph Papirno, Editors | | 402, 403, 802, 901, F, UT |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0135 | 2/1/1997 | | | Size Effect in Compression Fracture: Splitting Crack Band Propagation by Zdenek P. Bazant and Yuyin Xiang ( Journal of Engineering Mechanics Vol. 123, No. 2, Feb. 1997) | | 402, 403, 802, 901, UT |
| PTX-0136 | | BSC-MT-004751 | BSC-MT-004751 | Video, Operation of Micro-Tech v. Resolution 360 | | 402, 403, 701, 802, 901, 1002, F |
| PTX-0137 | 7/11/2021 | BSC-MT-006228 | BSC-MT-006238 | Competitive Analysis of Diversatek RePlay Hemostasis Clip | | 106, 402, 403, 701, 802, 901, 1002, F, |
| PTX-0138 | xx/xx/2016 | BSC-MT-006712 | BSC-MT-006728 | Report, Evaluation of Tissue Manipulation with Resolution 360 Clips in Ex Vivo Porcine Model | | 106, 402, 403, 701, 802, 901, 1006, F |
| PTX-0139 | 6/25/2014 | BSC-MT-011021 | BSC-MT-011043 | Presentation, Boston Scientific Rotatable Resolution Clip Technical Review | | 402, 403, 701, 802, 901, 1006, F |
| PTX-0140 | 4/1/2015 | BSC-MT-118046 | BSC-MT-118095 | Boston Scientific Resolution Clip Competitive Handling Tool | | 402, 403, 802, 901, 1006, F |
| PTX-0141 | 8/11/2017 | BSC-MT-126649 | BSC-MT-127160 | Rebuttal Expert Report of Karl R. Leinsing, served in Boston Scientific v. Cook, Civil Action No. 15-980 | | 402, 403, 702, 802, Daub |
| PTX-0142 | | | | Failure Analysis of Engineering Materials - Glossary | | 106, 402, 403, 802, 901, F, DESC, UT |
| PTX-0143 | | | | Fracture, Definition of Fracture by Merriam-Webster | | 402, 403,  802, 901, F, D, UT |
| PTX-0144 | 7/27/2020 | | | Deposition of Christopher Li | | 403 |
| PTX-0145 | 6/24/2020 | | | Markman hearing transcript | | 403 |
| PTX-0146 | 4/30/2020 | | | MT First Supplemental Responses to First Set of Common Interrogatories | | 403, D |
| PTX-0147 | | MT00000770 | MT00000786 | 510(K) Micro-Tech Submission - Micro-Tech Device Description | | 106, 402, 403, MIL |
| PTX-0148 | 12/11/2005 | | | Herwig Peterlik, et al., From brittle to ductile fracture of bone, Nature Materials Vol. 5 (January 2006) | | 402, 403, 802, 901, UT |
| PTX-0149 | 1/1/1999 | | | Glossary of Terms, ASM Materials Engineering Dictionary | | 106, 402, 403, 802, 901, DESC, F, UT |
| PTX-0150 | | | | SureClip Lockado Clip Instructions for Use_IFU-lockado-added | | 403, 802, 901, 1002, F, D, UT |
| PTX-0151 | | | | SureClip Micro-Tech  YouTube Video link | | 402, 403, 901, UT, F |
| PTX-0152 | 6/9/2016 | | | US Patent Pub 2016_0161382 | | 402, 403, UT, F, 901, 1005 |
| PTX-0153 | 2/19/2019 | | | Huajun Wang, Three-Point Bending Fracture Properties of Multilayer Metal Hot Forging Die Specimen, IOP Conference Series: Materials Science and Engineering 472 (2019) | | 402, 403, 802, UT, F, 901 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0154 | 2/23/2020 | | | Hui Wang, A mechanistic cutting force model based on ductile and brittle fracture material removal modes for edge surface grinding of CFRP composites using near ultrasonic machining, International Journal of Mechanical Sciences 176 (2020) | | 402, 403, 802, UT, F, 901 |
| PTX-0155 | 2/1/2020 | | | Peter Zioupos, et al., Ageing bone fractures: the case of a ductile to brittle transition that shifts with age, Bone Volume 131 (February 2020) | | 402, 403, 802, UT, F, 901 |
| PTX-0156 | 12/4/2020 | | | Rebuttal Expert Report of Karl R. Leinsing, MSME, PE Regarding Validity of U.S. Patent Nos. 7,094,245; 8,974,371; and 9,980,725 | | 402, 403, 702, 802, DAUB |
| PTX-0157 | | | | Exhibit A to Leinsing Rebuttal Expert Report - Curriculum Vitae | | 402, 403, 702, 802, DAUB |
| PTX-0158 | | | | Exhibit B to Leinsing Rebuttal Expert Report - Materials Considered | | 402, 403, 702, 802, DAUB |
| PTX-0159 | | | | Exhibit C to Leinsing Rebuttal Expert Report - Chart Mapping Resolution Clips to the Asserted Claims | | 402, 403, 702, 802, DAUB |
| PTX-0160 | 12/xx/2006 | BSC-MT-022347 | BSC-MT-022352 | Jensen, D. et al., Randomized Controlled Study of 3 different types of hemoclips for hemostasis of bleeding canine acute gastric ulcers, GASTROINTESTINAL ENDOSCOPY, Vol. 64, No. 5 (Dec. 2006). | | 402, 403, 802, F, 901 |
| PTX-0161 | 10/xx/2010 | BSC-MT-044914 | BSC-MT-044918 | Swellengrebel, H., et al., Evaluating long-term attachment of two different endoclips in the human gastrointestinal tract, WORLD J. GASTROINTEST. ENDOSC. 2010 October 16: 2(10): 344-48. | | 402, 403, 802, F, 901 |
| PTX-0162 | 10/23/2020 | | | Expert Report of John R. Bone, CPA, CFF | | 402, 403, 702, 802, DAUB |
| PTX-0163 | | | | Expert Report of John R. Bone - Tab 1 Curriculum Vitae | | 402, 403, 702, 802, DAUB |
| PTX-0164 | | | | Expert Report of John R. Bone  - Tab 2 Documents Reviewed | | 402, 403, 702, 802, DAUB |
| PTX-0165 | | | | Expert Report of John R. Bone - Exhibits 1 to 26.1 | | 402, 403, 702, 802, DAUB, CP |
| PTX-0166 | | BSC-MT-003066 | BSC-MT-003111 | Presentation slides, Protecting Your Business | Moscato 50 | 402, 403, 802, 901 |
| PTX-0167 | | BSC-MT-003380 | BSC-MT-003388 | Product Brochure, Resolution 360 Clip | | 402, 403, 901 |
| PTX-0168 | 3/xx/2016 | BSC-MT-003721 | BSC-MT-003728 | Presentation, Micro-Tech Clip battling | Moscato 46 | 402, 403, 802 |
| PTX-0169 | | BSC-MT-003745 | BSC-MT-003751 | Presentation, Operation Steel Curtain 2019 US Micro-Tech Competititve Response Plan | | 402, 403, 802, 901 |
| PTX-0170 | 4/23/2019 | BSC-MT-003752 | BSC-MT-003764 | Presentation, Project Freight Train: Kickoff Meeting | Moscato 52 | 402, 403, 802, 901 |
| PTX-0171 | | BSC-MT-003799 | BSC-MT-003845 | Presentation, Resolution 360 MAX Clip - Market Overview | | 402, 403, 802, 901 |
| PTX-0172 | | BSC-MT-017284 | BSC-MT-017449 | Presentation, Hemostasis Update AGW 2013 | | 402, 403, 802, 901 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0173 | 10/24/2008 | BSC-MT-023246 | BSC-MT-023260 | Presentation, Resolution Clip Global Forecast | | 402, 403, 802, 901 |
| PTX-0174 | | BSC-MT-024723 | BSC-MT-024742 | Presentation, Resolution Clip Marketing Plan | | 402, 403, 802, 901, D |
| PTX-0175 | | BSC-MT-024754 | BSC-MT-024775 | Presentation, Resolution Clip Marketing Plan | | 402, 403, 802, 901, D |
| PTX-0176 | | BSC-MT-038006 | BSC-MT-038007 | Product Brochure, TriClip Endoscopic Clipping Device | | 402, 403, 802, 901, F |
| PTX-0177 | 11/xx/2002 | BSC-MT-041095 | BSC-MT-041114 | Presentation, Olympus Optical Co., Ltd. Competitive Profile | | 402, 403, 802, 901, F |
| PTX-0178 | | BSC-MT-045865 | BSC-MT-045872 | Gastrointestinal Endoscopy, Volume 75, No. 1: 2012, "Prospective, randomized comparison of 3 different hemoclips for the treatment of acute upper GI hemorrhage in an established experimental setting," Masayuki Kato, MD, PhD, et al | | 402, 403, 802, 901, F |
| PTX-0179 | | BSC-MT-079941 | BSC-MT-079962 | Presentation - Hemostasis Resolution Clip and Core Hemo Market Trends and Revenue Summary | | 402, 403, 802, 901 |
| PTX-0180 | | BSC-MT-082417 | BSC-MT-082417 | Chart, 2013 Resolution Demand/Capacity (per forecast dated 5/3/13) | | 402, 403, 802, 901 |
| PTX-0181 | 12/6/2013 | BSC-MT-082784 | BSC-MT-082784 | Email from C. Davis to C. Lafferty and others re: US Clip Market Share Analysis - Cook Impact | | 402, 403, 802, 901, F |
| PTX-0182 | | BSC-MT-112651 | BSC-MT-112704 | Presentation, Resolution 360 Clip Commercialization Plan | | 402, 403, 802, 901 |
| PTX-0183 | 1/1/2005 | BSC-MT-116599 | BSC-MT-116604 | Contract Manufacturing Agreement, effective January 1, 2005, between Boston Scientific Scimed, Inc., and Boston Scientific | | 402, 403, 901, F, D |
| PTX-0184 | | BSC-MT-116682 | BSC-MT-116693 | Graphs, 1Q 2011 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0185 | | BSC-MT-116702 | BSC-MT-116713 | Graphs, 4Q 2010 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0186 | | BSC-MT-116714 | BSC-MT-116725 | Graphs, 2Q 2010 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0187 | | BSC-MT-116726 | BSC-MT-116737 | Graphs, 2Q 2011 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0188 | | BSC-MT-116738 | BSC-MT-116749 | Graphs, 4Q 2007 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0189 | | BSC-MT-116750 | BSC-MT-116761 | Graphs, 3Q 2010 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0190 | | BSC-MT-116762 | BSC-MT-116773 | Graphs, 3Q 2011 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0191 | | BSC-MT-116774 | BSC-MT-116785 | Graphs, 1Q 2012 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0192 | | BSC-MT-116786 | BSC-MT-116797 | Graphs, 4Q 2011 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0193 | | BSC-MT-116798 | BSC-MT-116809 | Graphs, 3Q 2012 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0194 | | BSC-MT-116810 | BSC-MT-116821 | Graphs, 2Q 2012 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0195 | | BSC-MT-116822 | BSC-MT-116833 | Graphs, 3Q 2013 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0196 | | BSC-MT-116834 | BSC-MT-116845 | Graphs, 4Q 2012 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0197 | | BSC-MT-116846 | BSC-MT-116857 | Graphs, 4Q 2013 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0198 | | BSC-MT-116858 | BSC-MT-116869 | Graphs, 1Q 2013 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0199 | | BSC-MT-116870 | BSC-MT-116881 | Graphs, 2Q 2013 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0200 | | BSC-MT-116882 | BSC-MT-116893 | Graphs, 4Q 2014 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0201 | | BSC-MT-116894 | BSC-MT-116905 | Graphs, 2Q 2014 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0202 | | BSC-MT-116906 | BSC-MT-116917 | Graphs, 1Q 2015 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0203 | | BSC-MT-116918 | BSC-MT-116929 | Graphs, 1Q 2008 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0204 | | BSC-MT-116930 | BSC-MT-116941 | Graphs, 2Q 2015 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0205 | | BSC-MT-116942 | BSC-MT-116953 | Graphs, 4Q 2015 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0206 | | BSC-MT-116954 | BSC-MT-116965 | Graphs, 2Q 2008 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0207 | | BSC-MT-116966 | BSC-MT-116977 | Graphs, 2Q 2016 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0208 | | BSC-MT-116978 | BSC-MT-116989 | Graphs, 1Q 2009 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0209 | | BSC-MT-116990 | BSC-MT-117001 | Graphs, 3Q 2009 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0210 | | BSC-MT-117002 | BSC-MT-117013 | Graphs, 4Q 2009 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0211 | | BSC-MT-117014 | BSC-MT-117025 | Graphs, 4Q 2009 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0212 | | BSC-MT-117026 | BSC-MT-117037 | Graphs, Hemo Clip Percent Market Share 2005-2007 | | 402, 403, 802, 901, F |
| PTX-0213 | | BSC-MT-117038 | BSC-MT-117049 | Graphs, 4Q 2009 Hemo Clip Percent Market Share | | 402, 403, 802, 901, F |
| PTX-0214 | 4/6/2012 | BSC-MT-118154 | BSC-MT-118194 | Presentation, Clipping VOC Quantitative Findings | | 402, 403, 802, 901, F, D |
| PTX-0215 | | BSC-MT-118547 | BSC-MT-118591 | Presentation, Resolution 360 Clip Commercialization Plan | | 402, 403, 802, 901, F |
| PTX-0216 | 5/18/2012 | BSC-MT-118592 | BSC-MT-118611 | Presentation, Endoscopic Hemoclip Update - DDW 2012 A/P Council Meeting | | 403, 802, 901, F |
| PTX-0217 | 5/9/2017 | BSC-MT-122195 | BSC-MT-122293 | Transcript from the deposition of Matthew Sprague, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 403, 701, 802, F |
| PTX-0218 | 6/13/2017 | BSC-MT-122354 | BSC-MT-122415 | Transcript from the deposition of Michael Lynn, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0219 | 4/18/2017 | BSC-MT-122433 | BSC-MT-122522 | Transcript from the deposition of Kevin Wilcox, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0220 | 4/25/2017 | BSC-MT-123034 | BSC-MT-123162 | Transcript from the deposition of Christopher Davis, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0221 | 4/19/2017 | BSC-MT-123300 | BSC-MT-123418 | Transcript from the deposition of Demetrios Petrou, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0222 | 4/26/2017 | BSC-MT-123651 | BSC-MT-123735 | Transcript from the deposition of Marcia Nardone, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0223 | 3/21/2017 | BSC-MT-124111 | BSC-MT-124324 | Transcript from the deposition of Mark Adams, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0224 | 6/23/2017 | BSC-MT-127267 | BSC-MT-127302 | Redacted Expert Report of Dr. Oleh Haluszka, served in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB (D.Del.) | | 106, 402, 403, 702, 802 |
| PTX-0225 | 1/xx/2020 | BSC-MT-129478 | BSC-MT-129520 | Presentation, Clips Market Research | | 402, 403, 802, 901, F, |
| PTX-0226 | 1/xx/2020 | BSC-MT-129559 | BSC-MT-129601 | Presentation, Clips Market Research | | 402, 403, 802, 901, F |
| PTX-0227 | 1/xx/2018 | BSC-MT-129640 | BSC-MT-129675 | Presentation, ESC Hemoclip Brand Perception Study | | 403, 802, 901, F, |
| PTX-0228 | 6/23/2016 | BSC-MT-129682 | BSC-MT-129739 | Presentation, Final Report: Micro-Tech Competitive Analysis | | 402, 403, 802, 901, F |
| PTX-0229 | | BSC-MT-132913 | BSC-MT-132956 | Presentation, Clipping VOC Quantitative Findings | | 402, 403, 802, 901, F |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0230 | | BSC-MT-140058 | BSC-MT-140058 | Spreadsheet, BSC Sales & Margin | | 402, 403, 802, 901, F, 1006, Daub |
| PTX-0231 | | BSC-MT-140059 | BSC-MT-140059 | Spreadsheet, Restructuring and OCOGS | | 402, 403, 901, F, 1006, Daub |
| PTX-0232 | | BSC-MT-140062 | BSC-MT-140062 | Spreadsheet, Resolution Clip Revenue | | 402, 403, 901, F, 1006, Daub |
| PTX-0233 | | BSC-MT-140063 | BSC-MT-140063 | Spreadsheet, HQ Endoscopy P&L 2011-2018 | | 402, 403, 901, F, 1006, Daub |
| PTX-0234 | | BSC-MT-140064 | BSC-MT-140064 | Spreadsheet, Legacy and Res 360 Sales 2013-2020 (Jan-June) | | 402, 403, 901, F, 1006, Daub |
| PTX-0235 | 8/17/2015 | CMD 0614 | CMD 0619 | Micro-Tech Hemoclip Meeting Minutes | | 402, 403, 802, 901 |
| PTX-0236 | 3/9/2017 | CMD 2254 | CMD 2258 | OEM Product Release Checklist,                           Duraclip 16mm Repositional Hemostasis Clip | | 402, 403, 802, 901 |
| PTX-0237 | | CMD 2639 | CMD 2653 | Value Analysis Presentation 11mm & 16mm DuraClip Repositionable Hemostasis Clip | | 402, 403, 802, 901 |
| PTX-0238 | | CMD 2823 | | Spreadsheet, DuraClip Revenue summary and projections 2017-2021 | | 402, 403, 802, 901 |
| PTX-0239 | 6/3/2019 | CMD 4004 | CMD 4012 | Email from A. Carmichael re ConMed 16mm clip | | 402, 403, 802, 901 |
| PTX-0240 | | CMD 4017 | CMD 4021 | Presentation, Hemostatic Clips for GI Overview and Clinical Use | | 402, 403, 802, 901 |
| PTX-0241 | 2/xx/2016 | CMD 4233 | CMD 4266 | Presentation, ConMed Global Sales Meeting | | 402, 403, 802, 901 |
| PTX-0242 | | CMD 5094 | CMD 5111 | Redacted Presentation, Global Endoscopic Market | | 106, 402, 403, 802, 901 |
| PTX-0243 | 6/23/2017 | COOK3P_BSCvMT-DE000303 | COOK3P_BSCvMT-DE000573 | Redacted Expert Report of John R. Bone, CPA, served in Boston Scientific Corporation and Boston Scientific SciMed, Inc. v. Cook Group Incorporated and Cook Medical LLC, Civil Action No. 15-980-LPS-CJB | | 106, 402, 403, 702, 802, F, CP, Daub |
| PTX-0244 | | HS00000002 | HS00000003 | Henry Schein GI Brochure | | 403 |
| PTX-0245 | 5/18/2016 | HS00000008 | HS00000011 | Question/Answers, Micro-Tech Launch May 18, 2016 - Dallas TX | HS-2 | 402, 403 |
| PTX-0246 | | HS00000046 | HS00000069 | Micro-Tech Endoscopy Product Catalog | HS-5 | 403 |
| PTX-0247 | 12/2/2015 | HS00000276 | HS00000302 | Presentation, MT Expanding the Scope of Endoscopy Partnership Presentation | | 403 |
| PTX-0248 | | HS00000392 | HS00000392 | Spreadsheet, SureClip Sales Detail | | 403 |
| PTX-0249 | | MT00000246 | MT00000264 | 510(K) Micro-Tech Submission - Device Description | MT-38 | 106, 402, 403, MIL, D |
| PTX-0250 | 7/10/2015 | MT00000693 | MT00000693 | 510(K) Micro-Tech Submission Cover Letter | MT-32 | 106, 402, 403, MIL, D |
| PTX-0251 | | MT00000819 | MT00000823 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | MT-34 | 106, 402, 403, MIL, D |
| PTX-0252 | | MT00012499 | MT00012499 | Spreadsheet, COGS Details through 2019 | | 403 |
| PTX-0253 | | MT00004210 | MT00004212 | Joseph Romagnuolo, Endoscopic clips: Past, present and future Can J. Gastroenterol Vol. 23 No. 3 March 2009 | | 403 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0254 | | MT00005927 | MT00005927 | Brochure, Micro-Tech Endoscopy Introduces the SURE CLIP | MT-6 | 403 |
| PTX-0255 | 10/31/2015 | MT00005936 | MT00005938 | SureClip by Micro-Tech - Excellent Performance, winning oversea users "heart" | | 402, 403 |
| PTX-0256 | | MT00005939 | MT00005948 | Micro-Tech Product Brief - Hemostasis Clip | | 402, 403 |
| PTX-0257 | | MT00011649 | MT00011649 | Spreadsheet, Sales Data Micro-Tech SureClips | | 403 |
| PTX-0258 | | MT00012459 | MT00012459 | Spreadsheet, Quarterly Profit and Loss Statement 2016 to 2019 | | 403 |
| PTX-0259 | | MT00012460 | MT00012460 | Spreadsheet, SureClip Revenue and COGS Summary | | 403 |
| PTX-0260 | 5/14/2017 | MT00012474 | MT00012497 | Distribution and Supply Agreement, effective May 14, 2017 between Micro-Tech Endoscopy USA and Henry Schein, Inc. | | 402, 403 |
| PTX-0261 | 12/21/2015 | MT00012502 | MT00012506 | Regulatory Agreement, effective December 21, 2015 between Conmed Corporation and Micro-Tech (Nanjing) Co. Ltd. | | 402, 403 |
| PTX-0262 | 9/23/2016 | MT00012513 | MT00012528 | Supply Agreement between ConMed Corporation and Micro-Tech Endoscopy USA, Inc., effective September 23, 2016 | | 402, 403 |
| PTX-0263 | 7/10/2020 | | | Plaintiffs Amended Complaint | | |
| PTX-0264 | | | | S&P Capital IQ Boston Scientific SciMed, Inc. Private Company Profile | | 402, 403, 802, 901, F, UT |
| PTX-0265 | | | | Micro Tech webpage, About Us (http://www.micro-tech.com.cn/en/web/about/about_us_1.html) | | 402, 403 |
| PTX-0266 | | | | Micro Tech webpage, About Us - Milestones (http://www.micro-tech.com.cn/en/web/about/about_us_3.html) | | 402, 403 |
| PTX-0267 | | | | Micro Tech webpage, Product Center - Gastrointestinal (http://www.micro-tech.com.cn/en/web/product/product-center_107.html_ | | 402, 403 |
| PTX-0268 | | | | Micro Tech webpage, Product Center - Biliary (http://www.micro-tech.com.cn/en/web/product/product-center_106.html) | | 402, 403 |
| PTX-0269 | | | | Micro Tech webpage, Product Center - Pulmonary (http://www.micro-tech.com.cn/en/web/product/product-center_105.html ) | | 402, 403 |
| PTX-0270 | | | | Micro Tech webpage, Product Center - Accessories (http://www.micro-tech.com.cn/en/web/product/product-center_104.html ) | | 402, 403 |
| PTX-0271 | | | | Micro Tech Endoscopy webpage, Products (https://www.mtendoscopy.com/products/) | | 402, 403 |
| PTX-0272 | | | | Henry Schein webpage, About Henry Schein (http://investor.henryschein.com/aboutus?hsi_domain=www.henryschein.com&hsi_locale=us-en) | | 402, 403 |
| PTX-0273 | | | | Complaint filed in Boston Scientific Corporation and Boston Scientific SciMed, Inc. v. Cook Group Incorporated and Cook Medical LLC, Civil Action No. 15-980-LPS-CJB | | 402, 403, F |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0274 | | | | Defendant Micro-Tech Endoscopy USA Inc.'s Second Supplemental Responses to Plaintiffs' First Set of Common Interrogatories, July 21, 2020 | | 403 |
| PTX-0275 | 11/26/2018 | | | Complaint for patent infringement | | D |
| PTX-0276 | | | | "Endoscopy," UK National Health Serivvce, (http://www.nhs.uk/conditions/Endoscopy/Pages/Introduction.aspx) | | 403, 802, F |
| PTX-0277 | | | | Boston Scientific Hemostasis Solutions Overview, (https://www.bostonscientific.com/content/dam/bostonscientific/endo/portfoliogroup/ Gold%20Probe/hemostasis_solutions_overview.pdf) | | 402, 403, 802 |
| PTX-0278 | | | | Endoscopic Closure Devices, (https://www.asge.org/docs/default-source/education/Technology_Reviews/doc71b1f624-8039-486a-8fae-3886b9745e15.pdf?sfvrsn=6) | | 402, 403, F |
| PTX-0279 | | | | The History of Clips in Endoscopy, Cook Medical, https://www.cookmedical.com/endoscopy/the-history-of-clips-in-endoscopy/ | | 402, 403, F |
| PTX-0280 | | | | Boston Scientific webpage, Resolution 360 Clip, (http://www.bostonscientific.com/en-US/products/clips/Resolution-360-Clip.html) | | 402, 403, 802 |
| PTX-0281 | | | | Role of Clips in Therapeutic Endoscopy: A Review, Journal of Gastroenterology and Hepatology Research, (http://www.ghrnet.org/index.php/joghr/article/view/605/651) | | 402, 403, 802, F |
| PTX-0282 | | | | Olympus Launches New Reloadable Hemostasis Clip for GI Endoscopy, (https://www.prnewswire.com/news-releases/olympus-launches-new-reloadable-hemostasis-clip-for-gi-endoscopy-301098925.html) | | 402, 403, F |
| PTX-0283 | | | | Quick Clip Brochure, (http://www.olympusamerica.com/presspass/press_pass_cut/documents/QuickClip2%20Long%20brochure.pdf) | | 402, 403,  F |
| PTX-0284 | 10/25/2013 | | | 510(k) Summary K132809 | | 402, 403 |
| PTX-0285 | 9/8/2014 | | | Olympus Launches New Hemostasis Clip with Advanced Control for GI Endoscopy, (https://medical.olympusamerica.com/articles/olympus-launches-new-hemostasis-clip-advanced-control-gi-endoscopy) | | 402,403, F |
| PTX-0286 | | | | RePlay hemoclip Brochure, Diversatek Healthcare, (https://www.diversatekhealthcare.com/replay-hemostasis-clip) | | 403,  F |
| PTX-0287 | | | | Boston Scientific 10-K, 2014 | | 402, 403, 802, F |
| PTX-0288 | | | | Boston Scientific 10-K, 2016 | | 402, 403, 802, F |

14

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---------|------|-------------|-----------|-------------|------------|------------------------|
| PTX-0289 | | | | Boston Scientific 10-K, 2018 | | 402, 403, 802, F |
| PTX-0290 | | | | Boston Scientific 10-K, 2019 | | 402, 403, 802, F |
| PTX-0291 | 5/11/2017 | BSC-MT-123529 | BSC-MT-123568 | Transcript from the deposition of Peter Gafner, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0292 | 4/21/2017 | BSC-MT-123419 | BSC-MT-123473 | Transcript from the deposition of Javier Jimenez, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0293 | 4/27/2017 | BSC-MT-123783 | BSC-MT-123884 | Transcript from the deposition of William Lafferty, taken in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB | | 402, 403, 701, 802, F |
| PTX-0294 | 12/16/2020 | | | Reply Expert Report of John R. Bone, CPA, CFF | | 402, 403, 702, 802, DAUB |
| PTX-0295 | 12/16/2020 | | | Reply Expert Report of John R. Bone  - Tab 1 Curriculum Vitae | | 402, 403, 702, 802, DAUB |
| PTX-0296 | 12/16/2020 | | | Reply Expert Report of John R. Bone  - Tab 2 Documents Reviewed | | 402, 403, 702, 802, DAUB |
| PTX-0297 | 12/16/2020 | | | Reply Expert Report of John R. Bone - Reply Exhibits 1 to 5 | | 402, 403, 702, 802, 1006, DAUB, CP |
| PTX-0298 | 12/16/2020 | | | Reply Expert Report of John R. Bone - Amended Exhibit 8 | | 402, 403, 702, 802, 1006, DAUB |
| PTX-0299 | 12/16/2020 | | | Reply Expert Report of John R. Bone - Amended Exhibit 8.3 | | 402, 403, 702, 802, 1006, DAUB |
| PTX-0300 | 12/16/2020 | | | Reply Expert Report of John R. Bone - Amended Exhibit 10 | | 402, 403, 702, 802, 1006, DAUB |
| PTX-0301 | 12/16/2020 | | | Reply Expert Report of John R. Bone - Amended Exhibit 22 | | 402, 403, 702, 802, 1006, DAUB |
| PTX-0302 | 12/16/2020 | | | Reply Expert Report of John R. Bone - Amended Exhibit 22.1 | | 402, 403, 702, 802, 1006, Daub |
| PTX-0303 | | | | Webpage, https://www.bostonscientific.com/en-US/products/clips/resolution-clip.html | | 402, 403,802 |
| PTX-0304 | 5/31/2016 | BSC-MT-118488 | BSC-MT-118515 | Presentation, Resolution 360 WIDE | | 402, 403, 802 |
| PTX-0305 | | BSC-MT-004637 | BSC-MT-004657 | Presentation, Micro-Tech Hemoclips Competitive Overview | | 402, 403, 802, 1006, F |
| PTX-0306 | | HS00000393 | HS00000393 | Spreadsheet, SureClip Sales detail | | 403 |
| PTX-0307 | | HS00000396 | HS00000396 | Spreadsheet,  Micro-Tech Endoscopy USA P&L | | 403 |
| PTX-0308 | 9/11/2000 | BSC-MT-043935 | BSC-MT-043978 | Hemostasis Clipping Device Integrated Business Plan, Development Phase Review | | 402, 403, 802, 901, F |
| PTX-0309 | 10/23/2020 | | | Expert Report of Dr. Oleh Haluszka, M.D. | | 402, 403, 702, 802 |
| PTX-0310 | 10/23/2020 | | | Exhibit A to the Expert Report of Dr. Oleh Haluszka - Curriculum Vitae | | 402, 403, 702, 901, F |
| PTX-0311 | 10/23/2020 | | | Exhibit B to the Expert Report of Dr. Oleh Haluszka - Materials Consiered | | 402, 403, 702 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---------|------|-------------|-----------|-------------|------------|------------------------|
| PTX-0312 | 6/23/2017 | BSC-MT-127267 | BSC-MT-127302 | Redacted Expert Report of Dr. Oleh Haluszka, served in Boston Scientific v. Cook Group, Civil Action No. 15-980-LPS-CJB (D.Del.) | | 106, 402, 403, 702, 802, F |
| PTX-0313 | | | | SureClip Marketing Brochure, available at https://www.mtendoscopy.com/wpcontent/uploads/2019/10/SureClip_MPW30000R_Rev5.pdf | | 403, 901 |
| PTX-0314 | | | | Lockado Marketing Brochure, available at https://www.mtendoscopy.com/wpcontent/uploads/2020/08/Lockado_MPW30800A-Rev-2-FNL.pdf | | 403, 901 |
| PTX-0315 | | | | SureClip Instructions for Use, available at https://www.mtendoscopy.com/wp-content/uploads/2020/09/D000008502-%EF%BC%881-0010546%EF%BC%8CREV-5-%EF%BC%89-IFUlockado-added.pdf | | 403,901 |
| PTX-0316 | | | | MAUDE - Manufacturer and User Facility Device Experience, FDA, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/results.cfm?start_search=1&searchyear=&productcode=PKL&productproblem=1261&devicename=&knumber=k&pmanumber=p&manufacturer=&brandname=&eventtype=&reportdatefrom=01/1/2014&reportdateto=&pagenum=10 | | 106, 402, 403, 901, F |
| PTX-0317 | 12/16/2020 | | | Reply Expert Report of Dr. Oleh Haluszka, M.D. | | 402, 403, 702, 802 |
| PTX-0318 | | | | Thomas J. Wang, "Choosing the right through-the-scope clip:  a rigorous comparison of rotatability, whip, open/close precision, and closure strength," Gastrointestinal Endoscopy Volume 89, No. 1 (2019) 77-86 | | 402, 403, 802, 901, F |
| PTX-0319 | | | | Micro-Tech USA SureClip Hemostasis Clip Data Sheet | | 402, 403, 901, F |
| PTX-0320 | 5/12/2015 | MT00000035 | MT00000046 | Product Performance Specification for Sterile Repositionable Hemostasis Clipping Device | | 403 |
| PTX-0321 | | MT00000093 | MT00000104 | SureClip Repositionable Hemostasis Clip Instructions for use | | 403, F |
| PTX-0322 | | MT00000020 | MT00000020 | Video, Animation of clip | | 403, D |
| PTX-0323 | | | | SureClip Repositionable Hemostasis Clip Instructions for Use | | 403, 901, F, D |
| PTX-0324 | | | | Claim Construction Order, DI 140 | | |
| PTX-0325 | | BSC-MT-018337 | BSC-MT-018338 | Instinct Endoscopic Hemoclip brochure, Cook Medical | | 402, 403, 802, 901, F |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0326 | 10/23/2020 | | | Excerpts, Expert Report of John R. Bone, CPA, CFF, dated October 23, 2020 | | 106, 402, 403, 702, 802, Daub |
| PTX-0327 | 10/22/2020 | | | Excerpts, Expert Report of Dr. Oleh Haluszka, M.D., dated October 22, 2020 | | 106, 402, 403, 702, 802 |
| PTX-0328 | 12/16/2020 | | | Excerpts, Reply Expert Report of Dr. Oleh Haluszka, M.D., dated December 16, 2020 | | 106, 402, 403, 702, 802 |
| PTX-0329 | 12/16/2020 | | | Excerpts, Reply Expert Report of John R. Bone, CPA, CFF, dated December 16, 2020. | | 106, 402, 403, 702, 802, Daub |
| PTX-0330 | 12/16/2020 | | | Excerpts, Reply Expert Report Of Karl R. Leinsing, MSME, PE, Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, And 9,980,725, Boston Sci. | | 106, 402, 403, 702, 802, Daub |
| PTX-0331 | 1/6/2021 | | | Excerpts, Deposition of Michael Plishka, January 6, 2021, In The Matter Of Boston Scientific Corp. v. Micro Tech Endoscopy, dated January 6, 2021 | | 106, 402, 403, DESC |
| PTX-0332 | | | | Glossary of Metallurgical and Metalworking Terms, Metals Handbook Desk Edition, Second Ed., 1998 | Plishka 27 | 106, 402, 403, 802, 901, F, UT |
| PTX-0333 | 12/29/2020 | | | Excerpts, Deposition of Karl Leinsing, December 29, 2020, In The Matter Of Boston Scientific Corp. v. Micro Tech Endoscopy, dated December 29, 2020 | | 106, 402, 403, 702, 802, Daub, D, DESC |
| PTX-0334 | 10/23/2020 | | | Excerpts, Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, And 9,980,725, Boston Sci. Corp. v. Micro-Tech Endoscopy et al., dated October 23, 2020. | | 106, 402, 403, 702, 802, D, Daub |
| PTX-0335 | | BSC-MT-000001 | BSC-MT-000039 | U.S. Patent 7,094,245 | | 403, 1005, D |
| PTX-0336 | | BSC-MT-000040 | BSC-MT-000078 | U.S. Patent 8,974,371 | | 403, 1005, D |
| PTX-0337 | | BSC-MT-000079 | BSC-MT-000118 | U.S. Patent 9,980,725 | | 403, 1005, D |
| PTX-0338 | | MT00011117 | MT00011131 | SureClip Repositionable Hemostasis Clip Instructions for Use | | 403, F, D |
| PTX-0339 | 12/4/2020 | | | Excerpts of the Rebuttal Expert Report of Karl R. Leinsing, MSME, PE Regarding Validity of U.S. Patent Nos. 7,094,245, 8,974,371, and 9,980,725 dated December 4, 2020 | | 106, 402, 403, 702, 802, Daub |
| PTX-0340 | 10/23/2020 | | | Excerpts from Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, And 9,980,725, Boston Sci. Corp. v. Micro-Tech Endoscopy et al., dated October 23, 2020 | | 106, 402, 403, 702, 802, Daub |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0341 | 12/16/2020 | | | Excerpts from Reply Expert Report Of Karl R. Leinsing, MSME, PE, Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, And 9,980,725, Boston Sci. Corp. v. Micro-Tech Endoscopy et al., dated December 16, 2020 | | 106, 402, 403, 702, 802, 901, F,  Daub |
| PTX-0342 | | | | Certified copy of U.S. Patent No. 8,974,371 | | 403, D |
| PTX-0343 | | | | Excerpts of the Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, and 9,980,725 dated October 23, 2020 | | 106, 402, 403, 702, 802, Daub, DESC |
| PTX-0344 | | | | Excerpts of the Reply Expert Report of Karl R. Leinsing, MSME, PE Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, and 9,980,725 dated December 16, 2020 | | 106, 402, 403, 702, 802, Daub, DESC |
| PTX-0345 | | | | Excerpts of the Rebuttal Expert Report of Karl R. Leinsing, MSME, PE Regarding Validity of U.S. Patent Nos. 7,094,245, 8,974,371, and 9,980,725 dated December 4, 2020 | | 106, 402, 403, 702, 802, Daub |
| PTX-0346 | | | | Excerpts from the Day 1 transcript of the deposition of Karl R. Leinsing, dated December 29, 2020 | | 106, 402, 403, 702, 802, Daub, |
| PTX-0347 | | | | Excerpt from the New Oxford American Dictionary, 2001 ed., for the word "tab." | | 402, 403, 802, 901, F, DESC |
| PTX-0348 | | | | Excerpts of Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc.'s Third Supplemental Responses and Objections to Defendants' Third Set of Interrogatories (Nos. 11, 13) | | 106, 402, 403, 802 |
| PTX-0349 | | | | Excerpts of the deposition transcript of Michael Plishka, dated January 6, 2021 | | 106, 402, 403 |
| PTX-0350 | | | | Excerpts of the Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, and 9,980,725 dated October 23, 2020. | | 106, 402, 403, 702, 802, Daub |
| PTX-0351 | | | | Excerpts of the Reply Expert Report of Karl R. Leinsing, MSME, PE Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, and 9,980,725 dated December 16, 2020. | | 106, 402, 403, 702, 802, Daub |
| PTX-0352 | | | | Exhibit 138 to the deposition of Karl R. Leinsing. | | D, 403, 901, F,702 |
| PTX-0353 | | | | Excerpts of the deposition transcript of Michael Plishka, dated January 6, 2021 | | 106, 402, 403 |
| PTX-0354 | | | | Glossary of Metallurgical and Metalworking Terms, Metals Handbook Desk Edition, Second Ed., 1998 | Plishka 27 | 106, 402, 403, 802, 901, F, UT, D |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0355 | | | | Excerpts from the Day 1 transcript of the deposition of Karl R. Leinsing, dated December 29, 2020. | | 106, 402, 403, 702, 802, Daub, D, DESC |
| PTX-0356 | | | | Certified copy of U.S. Patent No. 7,094,245. | | 403,  D |
| PTX-0357 | | | | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | Plishka 11 | 106, 402, 403, MIL, |
| PTX-0358 | | MT00011461 | MT00011481 | Excerpts of "Sterile Repositionable Hemostasis Clipping Device" | | 106, 402, 403, 802 |
| PTX-0359 | | | | Excerpts of the Rebuttal Expert Report of Michael Plishka Regarding Noninfringement | | 106, 403, D |
| PTX-0360 | | | | Excerpt of Deposition Transcript of Karl Leinsing dated December 29, 2020 | | 106, 402, 403, 702, 802, Daub |
| PTX-0361 | | | | Excerpts of the Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245; 8,974,371; and 9,980,725 dated October 23, 2020 | | 106, 402, 403, 702, 802, Daub |
| PTX-0362 | | | | Excerpts of the Reply Expert Report of Karl R. Leinsing, MSME, PE Regarding Infringement of U.S. Patent Nos. 7,094,245; 8,974,371; and 9,980,725 dated December 16, 2020 | | 106, 402, 403, 702, 802, Daub |
| PTX-0363 | | BSC-MT-001591 | BSC-MT-001788 | Certified copy of File History for U.S. Patent No. 9,980,725 | | 403, D |
| PTX-0364 | | | | Excerpt of Markman Hearing Transcript dated June 24, 2020 | | 106 |
| PTX-0365 | | BSC-MT-000040 | BSC-MT-000078 | United States Patent No. 8,974,371 ("'371 patent") | | 403, 1005, D |
| PTX-0366 | | BSC-MT-000079 | BSC-MT-000118 | United States Patent No. 9,980,725 ("'725 patent") | | 403, 1005, D |
| PTX-0367 | | | | Excerpts of Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245; 8,974,371, and 9,980,725 ("Leinsing Opening Infringement Report") | | 106, 402, 403, 702, 802, Daub |
| PTX-0368 | | | | Excerpts of Rebuttal Expert Report of Karl R. Leinsing, MSME, PE Regarding Validity of U.S. Patent Nos. 7,094,245; 8,974,371; and 9,980,725. | | 106, 402, 403, 702, 802, Daub |
| PTX-0369 | 12/2/2015 | HS00000276 | HS00000302 | Micro-Tech Partnership Presentation, Expanding the Scope of Endoscopy | HS-1 | 402, 403 |
| PTX-0370 | 5/18/2016 | HS00000008 | HS00000011 | Micro-Tech Launch Product Category Overview Questions and Answers | HS-2 | 402, 403 |
| PTX-0371 | | HS00000004 | HS00000007 | Henry Schein Medical Brochure,  One Source Henry Schein Medical has teamed up with Micro-Tech Endoscopy to deliver your GI Endoscopy needs from one source. | HS-4 | 403 |
| PTX-0372 | | HS00000046 | HS00000069 | Micro-Tech Endoscopy Product Catalog | HS-5 | 403 |
| PTX-0373 | 9/1/2019 | HS00000154 | HS00000257 | Henry Schein Medical Featured Product Guide July-September 2019 | HS-6 | 403 |
| PTX-0374 | | HS00000264 | HS00000264 | GI Course & Model Summary ASC Focus FSC Curriculum, Course #2 | HS-7 | 402, 403 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0375 | | HS00000271 | HS00000275 | ASC Curriculum Script Module 5 Script | HS-8 | 402, 403 |
| PTX-0376 | | HS00000039 | HS00000039 | Micro-tech Sales Success Stories | HS-9 | 403 |
| PTX-0377 | 7/15/2020 | HS00000393 | HS00000393 | Spreadsheet, List of Customer Information | HS-10 | 403 |
| PTX-0378 | 7/15/2020 | HS00000394 | HS00000394 | Spreadsheet, 2016-2020 Net Sales by Item | HS-11 | 403 |
| PTX-0379 | 7/15/2020 | HS00000395 | HS00000395 | Spreadsheet, Purchase Order Data | HS-12 | 403 |
| PTX-0380 | 7/15/2020 | HS00000396 | HS00000396 | Spreadsheet, 2016-1Q2020, Profit and Loss Statement | HS-13 | 403 |
| PTX-0381 | 11/20/2016 | MT00011879 | MT00012458 | US Market Report Suite for Gastrointestinal Devices by iData Research | MT-4 | 402, 403 |
| PTX-0382 | | MT00005901 | MT00005911 | SureClip Repositional Hemostasis Clip, Value Analysis Presentation | MT-5 | 403 |
| PTX-0383 | | MT00005927 | MT00005927 | Brochure, Micro-Tech Endoscopy Introduces the SURE CLIP | MT-6 | 403 |
| PTX-0384 | | MT00005939 | MT00005948 | Micro-Tech Endoscopy Product Brief: Hemostasis Clip | MT-7 | 402, 403 |
| PTX-0385 | | | | SureClip Brochure, Clip With Confidence | MT-8 | 402, 403, 901 |
| PTX-0386 | | MT00012460 | MT00012460 | Spreadsheet, SureClip Revenue and COGS 2016-2019 | MT-9 | 403 |
| PTX-0387 | | | | Webpage, Product Cross Reference Tool, Product Code ConMed: DC0165; Comparable Micro-Tech Product: RC30445 | MT-10 | 402, 403 |
| PTX-0388 | | | | Webpage, Product Cross Reference Tool, Product Code ConMed DC0235, Comparable Micro-Tech Product: RC30445 | MT-11 | 402, 403 |
| PTX-0389 | 7/22/2020 | MT00012499 | MT00012499 | Spreadsheet, 2016-2019 Revenue and COGS | MT-12 | 403 |
| PTX-0390 | 7/22/2020 | MT00000084 | MT00000084 | Spreadsheet, SureClip Revenue and COGS Summary 2016-2019 | MT-13 | 403 |
| PTX-0391 | 7/22/2020 | MT00012498 | MT00012498 | Spreadsheet, Purchase Summary 2016-2019 | MT-14 | 403 |
| PTX-0392 | 7/22/2020 | MT00012459 | MT00012459 | Spreadsheet, Profit and Loss Statement 2016-2019 | MT-15 | 403 |
| PTX-0393 | | | | Image, J-Hook configuration | MT-22 | 402, 403, DESC, F, 901 |
| PTX-0394 | | | | Image, Components of buckle configuration | MT-23 | 402, 403, DESC, F, 901 |
| PTX-0395 | | | | Image, Components of buckle configuration | MT-24 | 402, 403, DESC, F, 901 |
| PTX-0396 | | | | Image, Components of buckle configuration | MT-25 | 402, 403, DESC, F, 901 |
| PTX-0397 | | | | Image, Components of the Lockado design | MT-26 | 402, 403, DESC, F, 901 |
| PTX-0398 | | | | Image, Components of the Lockado design | MT-27 | 402, 403, DESC, F, 901 |
| PTX-0399 | | | | Image, Components of the Lockado design | MT-28 | 402, 403, DESC, F, 901 |
| PTX-0400 | | | | Image, Components of the Lockado design | MT-29 | 402, 403, DESC, F, 901 |
| PTX-0401 | | | | Image, Components of the Lockado design | MT-30 | 402, 403, DESC, F, 901 |
| PTX-0402 | 7/27/2020 | MT00011649 | MT00011649 | Spreadsheet, Sales Data Micro-Tech SureClips | MT-31 | 402, 403, DESC |
| PTX-0403 | 7/10/2015 | MT00000693 | MT00000693 | 510(K) Micro-Tech Submission Cover Letter | MT-32 | 106, 402, 403, MIL, D |
| PTX-0404 | | MT00000770 | MT00000786 | 510(K) Micro-Tech Submission - Micro-Tech Device Description | MT-33 | 106, 402, 403, DESC, D, MIL |
| PTX-0405 | | MT00000819 | MT00000823 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | MT-34 | 106, 402, 403, DESC, MIL, D |

20

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0406 | 1/4/2017 | MT00001185 | MT00001209 | 510(K) Submission - Device Descriptions Updated | MT-35 | 106, 402, 403, DESC, D, MIL |
| PTX-0407 | 5/23/2016 | MT00001159 | MT00001159 | 510(K) Submission Cover Letter dated 5/23/2016 | MT-36 | 106, 402, 403, MIL |
| PTX-0408 | | MT00001276 | MT00001280 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | MT-37 | 106, 402, 403, DESC, MIL |
| PTX-0409 | | MT00000246 | MT00000264 | 510(K) Micro-Tech Submission - Device Description | MT-38 | 106, 402, 403, DESC, D, MIL |
| PTX-0410 | 9/3/2018 | MT00001944 | MT00001944 | 510(K) Micro-Tech Submission - Cover Letter | MT-39 | 106, 402, 403, MIL |
| PTX-0411 | 11/15/2018 | MT00000446 | MT00000451 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | MT-40 | 106, 402, 403, DESC, D, MIL |
| PTX-0412 | 1/4/2017 | MT00000923 | MT00000925 | 510(K) Micro-Tech Submission - Response to K161463/S001 Deficiencies | MT-41 | 106, 402, 403, DESC, D, MIL |
| PTX-0413 | | BSC-MT-110282 | BSC-MT-110287 | Quick Clip (Excerpted from BSCs 510K) | J 0006 | 106 |
| PTX-0414 | | MT00018424 | MT00018424 | Video of Olympus Quick Clip | J 0007 | 403 |
| PTX-0415 | | | | MT00018424 Screenshots, Video of Olympus Quick Clip | J 0008 | 403 |
| PTX-0416 | | | | MT00018424 Screenshots2, Video of Olympus Quick Clip | J 0009 | 403 |
| PTX-0417 | | | | MT00018424 Screenshots3, Video of Olympus Quick Clip | J 0010 | 403 |
| PTX-0418 | | | | MT00018424 Screenshots4, Video of Olympus Quick Clip | J 0011 | 403 |
| PTX-0419 | | MT00014279 | MT00014279 | Video | J 0019 | |
| PTX-0420 | | MT00000770 | MT00000786 | 510(K) Micro-Tech Submission - Micro-Tech Device Description | Plishka 8 MT-33 | 106, 402, 403, D, MIL |
| PTX-0421 | | MT00000819 | MT00000823 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | Plishka 9 MT-34 | 106, 402, 403, D, MIL |
| PTX-0422 | 1/4/2017 | MT00001185 | MT00001209 | 510(K) Submission - Device Descriptions Updated | Plishka 10 MT-35 | 106, 402, 403, D, MIL |
| PTX-0423 | 11/15/2018 | MT00000446 | MT00000451 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | Plishka 11 MT-40 | 106, 402, 403, D, MIL |
| PTX-0424 | 1/4/2017 | MT00000923 | MT00000925 | 510(K) Micro-Tech Submission - Response to K161463/S001 Deficiencies | Plishka 12 MT-41 | 106, 402, 403, D, MIL |
| PTX-0425 | | MT00000246 | MT00000264 | 510(K) Micro-Tech Submission - Device Description | Plishka 13 MT-38 | 106, 402, 403, D, MIL |
| PTX-0426 | | | | Video, Clip Animation | Plishka 14 | 901 |
| PTX-0427 | 11/16/2020 | | | Video, Impact of Distal Pin | Plishka 15 | 901 |
| PTX-0428 | | | | Test Video | Plishka 16 | 403, 901 |
| PTX-0429 | | | | Test Video | Plishka 17 | 403, 901 |
| PTX-0430 | 11/11/2020 | | | Buckle Test Report | Plishka 18 | 403, 901 |
| PTX-0431 | 11/11/2020 | | | J-Hook Test Report | Plishka 19 | 403, 901 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0432 | 11/11/2020 | | | Lockado Test Report | Plishka 20 | 403, 901 |
| PTX-0433 | 1/21/2020 | | | Declaration of Michael Plishka, Becton Exhibit 2002, Baxter International v. Becton Dickson IPR2020-00024 (U.S. Patent No. 8,740,864) | Plishka 21 | 402, 403 |
| PTX-0434 | 11/1/2017 | | | Declaration of Michael Plishka, Nevro Corp. Ex. 1003, Nevro Corp. v. Boston Scientific Neuromodulation Corp, IPR2018-00143 (U.S. Patent No. 7,891,085) | Plishka 22 | 402, 403 |
| PTX-0435 | 10/28/2004 | | | US Patent Application Publication US 2004/0215300 A1, Nevro Corp Ex. 1007, Nevro Corp. v. Boston Scientific Neuromodulation Corp., IPR2018-00143 (U.S. Patent No. 7,891,085) | Plishka 23 | 402, 403 |
| PTX-0436 | 4/1/2008 | | | World Intellectual Property WO 03/022337 | Plishka 24 | 402, 403, F, CP, DESC, 901, 1005 |
| PTX-0437 | | | | Figure 3 and Figure 4 | Plishka 25 | 106, 402, 403, 802, 901, F, DESC |
| PTX-0438 | 1/1/2010 | | | Glossary of Terms, ASM Handbook, Volume 22B, Metals Process Simulation (2010) | Plishka 26 | 106, 402, 403, 802, 901, F, UT, D |
| PTX-0439 | xx/xx/1998 | | | Glossary of Metallurgical and Metalworking Terms, Metals Handbook Desk Edition, Second Ed., 1998 | Plishka 27 | 106, 402, 403, 802, 901, F, UT, D |
| PTX-0440 | | | | Fracture Mechanics, by E.E. Gdoutos, Published by Springer 2005, ISBN 1-4020-3153-X (e-book). | Plishka 28 | 106, 402, 403, 802, 901, F, Daub, SJ, DESC |
| PTX-0441 | 11/15/2018 | MT00000446 | MT00000451 | 510(K) Micro-Tech Submission - Substantially Equivalent Discussions | Plishka 29 MT-40 | 106, 402, 403, D, MIL |
| PTX-0442 | 11/1/1997 | | | ASM Handbook Volume 19, Fatigue and Fracture | Plishka 30 | 402, 403, 901 |
| PTX-0443 | | MT00001503 | MT00001510 | Instructions for Use of Sterile of Repositionable Hemostasis Clipping Device | Plishka 31 | 402, 403 |
| PTX-0444 | 1/1/2018 | BSC-MT-129640 | BSC-MT-129675 | Presentation ESC Hemoclip Brand Perception Study January 2018 | Milani 3 | 402, 403, 802, 901, F |
| PTX-0445 | 12/4/2020 | | | Expert Report of Gary Reiss, MD | Reiss 1 | |
| PTX-0446 | 11/26/2018 | | | Complaint for Patent Infringement | | D |
| PTX-0447 | 2/19/2020 | | | Answer and Affirmative Defenses to Plaintiffs' Complaint for Patent Infringement | | |
| PTX-0448 | 3/9/2020 | | | First Amended Answer and Affirmative Defenses to Plaintiffs' Complaint for Patent Infringement | | |
| PTX-0449 | 4/14/2020 | | | Second Amended Answer and Affirmative Defenses to Plaintiffs' Complaint for Patent Infringement | | |
| PTX-0450 | 7/10/2020 | | | Plaintiffs' Amended Complaint | | |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0451 | 7/24/2020 | | | Answer and Affirmative Defenses to Plaintiffs' Amended Complaint for Patent Infringement | | |
| PTX-0452 | 10/9/2019 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed Inc.'s Initial Disclosures Pursuant to Paragraph 3 of the District of Delaware Default Standard for Discovery | | 402, 403, 802 |
| PTX-0453 | 9/27/2019 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed Inc.'s Initial Disclosures Pursuant to Federal Civil Procedure 26(a)(1) | | 402, 403, 802 |
| PTX-0454 | 8/31/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed Inc.'s Supplemental Initial Disclosures Pursuant to Federal Civil Procedure 26(a)(1) | | 402, 403, 802 |
| PTX-0455 | 10/2/2019 | | | Plaintiffs' Disclosures of Accused Products, Damages Model, Infringed Patents and File Histories | | 402, 403, 802 |
| PTX-0456 | 9/27/2019 | | | Initial Disclosures of Defendants Micro-Tech Endoscopy USA Inc. and Henry Schein Inc. | | |
| PTX-0457 | 2/14/2020 | | | Initial Disclosures of Defendant Micro-Tech (Nanjing) Co., Ltd. | | |
| PTX-0458 | 7/1/2020 | | | Claim Construction Order, D.I. 140 | | |
| PTX-0459 | 8/27/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, Micro-Tech (Nanjing) Co., Ltd., and Henry Schein Inc.'s First Set of Requests for Admission (Nos. 1-5) | | 402, 403, 802 |
| PTX-0460 | 9/11/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, Micro-Tech (Nanjing) Co., Ltd., and Henry Schein Inc.'s Second Set of Requests for Admission (Nos. 6-20) | | 402, 403, 802 |
| PTX-0461 | 10/16/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Supplemental Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, Micro-Tech (Nanjing) Co., Ltd., and Henry Schein Inc.'s Second Set of Requests for Admission (Nos. 9, 12, 14, 16, 17) | | 402, 403, 802 |
| PTX-0462 | 9/27/2019 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, and Henry Schein Inc.'s First Set of Interrogatories (Nos. 1-8) | | 402, 403, 802 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0463 | 12/26/2019 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, and Henry Schein Inc.'s Second Set of Interrogatories (No. 9) | | 402, 403, 802 |
| PTX-0464 | 2/3/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s First Supplemental Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, and Henry Schein Inc.'s First Set of Interrogatories (No. 3) | | 402, 403, 802 |
| PTX-0465 | 3/24/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s First Supplemental Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s First Set of Interrogatories (Nos. 2 and 5) | | 402, 403, 802 |
| PTX-0466 | 4/9/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, Micro-Tech (Nanjing) Co., Ltd., and Henry Schein Inc.'s Third Set of Interrogatories (Nos. 10-13) | | 402, 403, 802 |
| PTX-0467 | 8/3/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Third Supplemental Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, and Henry Schein Inc.'s Interrogatories (Nos. 2, 4, 7, and 9) | | 402, 403, 802 |
| PTX-0468 | 8/3/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Supplemental Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, Micro-Tech (Nanjing) Co., Ltd., and Henry Schein Inc.'s Third Set of Interrogatories (No. 12) | | 402, 403, 802 |
| PTX-0469 | 8/28/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Supplemental Responses and Objections to Defendants' Third Set of Interrogatories (No. 11) | | 402, 403, 802 |
| PTX-0470 | 9/8/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Fourth Supplemental Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, and Henry Schein Inc.'s Interrogatories (No. 5) | | 402, 403, 802 |
| PTX-0471 | 9/11/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Fifth Supplemental Responses and Objections to Defendants Micro-Tech Endoscopy USA Inc.'s, and Henry Schein Inc.'s Interrogatories (No. 4) | | 402, 403, 802 |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PTX-0472 | 9/11/2020 | | | Plaintiffs Boston Scientific Corporation's and Boston Scientific Scimed, Inc.'s Third Supplemental Responses and Objections to Defendants' Third Set of Interrogatories (No. 11, 13) | | 402, 403, 802 |
| PTX-0473 | | BSC-MT-137075 | BSC-MT-137075 | Research and Development Financial Model, Rotatable Clip | | 402, 403, 901, 1006, F |
| PTX-0474 | | BSC-MT-137078 | BSC-MT-137078 | Research and Development Financial Model, Rotatable Clip | | 402, 403, 901, 1006, F |
| PTX-0475 | | BSC-MT-137092 | BSC-MT-137092 | Research and Development Financial Model, Rotatable Clip August 15 PIB | | 402, 403, 901, 1006, F |
| PTX-0476 | | BSC-MT-137096 | BSC-MT-137096 | Research and Development Financial Model, Rotatable Clip Feb 16 Update | | 402, 403, 901, 1006, F |
| PTX-0477 | | BSC-MT-137677 | BSC-MT-137677 | Research and Development Financial Model, Rotatable Clip | | 402, 403, 901, 1006, F |
| PTX-0478 | | BSC-MT-140061 | BSC-MT-140061 | Research and Development Financial Model, New assumptions only | | 402, 403, 901, 1006, F |
| PTX-0479 | | BSC-MT-003056 | BSC-MT-003065 | Presentation, Mastering the Competition | | 402, 403, 901, F |
| PTX-0480 | 5/28/2019 | BSC-MT-132385 | BSC-MT-132397 | Presentation, Target Margins - Hemo Draft | | 402, 403, 901, F |
| PTX-0481 | | BSC-MT-140705 | BSC-MT-140705 | Spreadsheet, SCRAPS Financials Update 2012-2020 | | 402, 403, 901, F, 1006 |
| PTX-0482 | | BSC-MT-140706 | BSC-MT-140706 | Spreadsheet, Market Share Data Update 2012-2019 | | 402, 403, 901, F, 1006 |
| PTX-0483 | | BSC-MT-140707 | BSC-MT-140707 | Spreadsheet, 2004-2021 Sales Update | | 402, 403, 901, F, 1006 |
| PTX-0484 | | BSC-MT-140708 | BSC-MT-140708 | Spreadsheet, US Global Profit and Loss, 2011-2020 | | 402, 403, 901, F, 1006 |
| PTX-0485 | | BSC-MT-140709 | BSC-MT-140709 | Spreadsheet, OPEX Detail with SG&A Expenses, 2011-2020 | | 402, 403, 901, F, 1006 |
| PTX-0486 | | MT00005912 | MT00005912 | Sureclip Poster, Procedural Steps for Hemostatic Clip | | 402, 403 |
| PTX-0487 | | MT00018425 | MT00018425 | Spreadsheet, Product Purchase Summary and Details 2020 | | 402, 403 |
| PTX-0488 | | MT00018426 | MT00018426 | Spreadsheet, COGS Details from 2015-2020 | | 402, 403 |
| PTX-0489 | | MT00018427 | MT00018427 | Spreadsheet, COGS Summary from 2015-2020 | | 402, 403 |
| PTX-0490 | | MT00018428 | MT00018428 | Spreadsheet, Quarterly Profit and Loss Statement 2019 to 2020 | | 402, 403 |
| PTX-0491 | | MT00018429 | MT00018429 | Spreadsheet, Quarterly Profit and Loss Statement 2019 to 2020 Expanded version | | 402, 403 |
| PTX-0492 | 4/29/2021 | BSC-MT-140710 | BSC-MT-140757 | English translation of Micro-Tech Europe GmbH v. Boston Scientific Limited, Decision of Düsseldorf Higher Regional Court | | 402, 403, 901, F, MIL, UT |
| PTX-0493 | 4/29/2021 | BSC-MT-140758 | BSC-MT-140805 | Micro-Tech Europe GmbH v. Boston Scientific Limited, Decision of Düsseldorf Higher Regional Court | | 402, 403, 901, 1005, F, MIL, UT |
| PTX-0494 | | BSC-MT-140806 | BSC-MT-140806 | Spreadsheet, Clips Market Share Q1 2021 | | 402, 403, 901, 1006, F, UT |
| PTX-0495 | 4/27/2021 | BSC-MT-140807 | BSC-MT-140815 | Transcript, Minutes of the public hearing of the Court in Boston Scientific Limited v. Micro-Tech Gmbh | | 402, 403, 901, 802, 1005, F, MIL, UT |
| PTX-0496 | | BSC-MT-140816 | BSC-MT-140816 | Video, Animation of Resolution 360 Clip | | 402, 403, 901, F, UT |
| PTX-0497 | | BSC-MT-140817 | BSC-MT-140817 | Video, Resolution 360 Clip | | 402, 403, 901, F, UT |
| PTX-0498 | 5/4/2020 | | | Micro-Tech Nanjing et al. v. Boston Scientific Scimed IPR2020-00185 Paper No. 11 Decision Denying Institution of Inter Partes Review" | | 402, 403, MIL, Late |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---------|------|-------------|-----------|-------------|------------|------------------------|
| PPX-001 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-002 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-003 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-004 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-005 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-006 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-007 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |

Schedule 7 - Plaintiffs' Trial Exhibit List

| PTX No. | Date | Bates Begin | Bates End | Description | Depo Ex. # | Defendants' Objections |
|---|---|---|---|---|---|---|
| PPX-008 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-009 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |
| PPX-010 | | | | Placeholders for Plaintiffs' Physical Exhibits | | Defendants reserve the right to object to each of Plaintiffs' Physical Exhibits in accordance with the Pretrial Order |

# SCHEDULE 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION )
and BOSTON SCIENTIFIC SCIMED, INC., )
)
             Plaintiffs, )
)   C.A. No. 18-1869-SB-CJB
     v. )
)
MICRO-TECH ENDOSCOPY USA INC., )
MICRO-TECH (NANJING) CO., LTD., and )
HENRY SCHEIN INC., )
)
             Defendants. )

## **DEFENDANTS' TRIAL EXHIBIT LIST (SCHEDULE 8)**

## SCHEDULE 8

### Boston Scientific's Statement

Pursuant to Rule 26(a)(3)(B) of the Federal Rules of Civil Procedure and D. Del. L.R.

16.3(d), Boston Scientific hereby objects to Defendants' Exhibit List and provides its objections.

Boston Scientific objects to the unreasonable volume of trial exhibits as creating an unduly and

unnecessary burden to specifically object to each of Defendants' exhibits and Boston Scientific

reserves its right to provide further specific objections when Defendants have fairly narrowed

their exhibits to a reasonable number for a one-week jury trial.

| Objection Key | |
|---|---|
| Code | Objection |
| 106 | partial document/lacks context (FRE 106) |
| 401/402 | lacks relevance (FRE 401/402) |
| 403 | unduly prejudicial/confusing/waste of time (FRE 403) |
| 501/502 | Privilege/Work Product (FRE 501/502) |
| 602/LOF | lacks foundation/speculative (FRE 602) |
| 701/702 | improper opinion (FRE 701/702) |
| 801-802 | hearsay (FRE 802) |
| 901/902 | lacks authenticity (FRE 901/902) |
| 1002 | original document required (FRE 1002) |
| 1003 | incomplete/illegible (FRE 1003) |
| 1006 | improper summary (FRE 1006) |
| ID | insufficient/incorrect description |
| L | late/not produced |
| AA | attorney argument improperly offered as evidence; contains counsel colloquy or objections |
| C | compound |
| Legal | calls for a legal conclusion |
| Leading | leading question of a non-hostile witness |
| MC | Mischaracterizes/misstates witness's testimony |
| NR | nonresponsive |
| PMIL | Subject of pending motion in limine |
| P | privilege |
| OS | beyond the scope |
| V | Vague and/or ambiguous |

Schedule 8 - Defendants' Trial Exhibit List

| DTX No. | Bates Begin | Bates End | Description | Deposition Exhibit No. | Plaintiffs' Objections |
|---|---|---|---|---|---|
| DTX-0001 | BSC-MT-000001 | BSC-MT-000039 | U.S. Patent No. 7,094,245 by Adams et al. | Murray Deposition Ex. 4 | |
| DTX-0002 | BSC-MT-000040 | BSC-MT-000078 | U.S. Patent No. 8,974,371 by Durgin et al. | Murray Deposition Ex. 5 | |
| DTX-0003 | BSC-MT-000079 | BSC-MT-000118 | U.S. Patent No. 9,980,725 by Durgin et al. | Murray Deposition Ex. 6 | |
| DTX-0004 | | | Rebuttal Expert Report of Michael Plishka Regarding Noninfringement | Plishka Deposition Ex. 1 | 701/702, 801/802, 901/902, PMIL |
| DTX-0005 | | | Curriculum Vitae for M. Plishka | Plishka Deposition Ex. 2 | |
| DTX-0006 | | | Exhibit 2 to Plishka Report – Materials Considered List | Plishka Deposition Ex. 3 | 401/402, 403, 801/802 |
| DTX-0007 | | | Certified Copy of U.S. Patent No. 7,094,245 by Adams et al. | Plishka Deposition Ex. 4 | |
| DTX-0008 | | | Certified Copy of U.S. Patent No. 8,974,371 by Durgin et al. | Plishka Deposition Ex. 5 | |
| DTX-0009 | | | Certified Copy of U.S. Patent No. 9,980,725 by Durgin et al. | Plishka Deposition Ex. 6 | |
| DTX-0010 | | | Claim Construction Order | Plishka Deposition Ex. 7 | Legal |
| DTX-0011 | MT00000770 | MT00000786 | Micro-Tech Device Description | Plishka Deposition Ex. 8 | 401/402, 403, 801/802, 901/902 |
| DTX-0012 | MT00000819 | MT00000823 | Micro-Tech Substantially Equivalent Discussion | Plishka Deposition Ex. 9 | 401/402, 403, 801/802, 901/902 |
| DTX-0013 | MT00001185 | MT00001209 | Micro-Tech Device Description | Plishka Deposition Ex. 10 | 401/402, 403, 801/802, 901/902 |
| DTX-0014 | MT00000446 | MT00000451 | Micro-Tech Substantially Equivalent Discussion | Plishka Deposition Ex. 11 | 401/402, 403, 801/802, 901/902 |
| DTX-0015 | MT00000923 | MT00000925 | Micro-Tech Response to K161463/S001 Deficiencies | Plishka Deposition Ex. 12 | 401/402, 403, 801/802, 901/902 |
| DTX-0016 | MT00000246 | MT00000264 | Micro-Tech Device Description | Plishka Deposition Ex. 13 | 401/402, 403, 801/802, 901/902 |
| DTX-0017 | | | Video | Plishka Deposition Ex. 14 | 401/402, 403, 801/802, 901/902 |
| DTX-0018 | | | Video | Plishka Deposition Ex. 15 | 401/402, 403, 801/802, 901/902 |
| DTX-0019 | | | Video | Plishka Deposition Ex. 16 | 401/402, 403, 801/802, 901/902 |
| DTX-0020 | | | Video | Plishka Deposition Ex. 17 | 401/402, 403, 801/802, 901/902 |
| DTX-0021 | | | Micro-Tech Testing Report | Plishka Deposition Ex. 18 | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0022 | | | Micro-Tech Testing Report | Plishka Deposition Ex. 19 | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0023 | | | Micro-Tech Testing Report | Plishka Deposition Ex. 20 | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0024 | | | Declaration of M. Plishka for IPR 2020-0024 | Plishka Deposition Ex. 21 | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0025 | | | Declaration of M. Plishka for IPR 2018-00143 | Plishka Deposition Ex. 22 | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0026 | | | U.S. Patent App. Publication 2004/0215300 by Verness | Plishka Deposition Ex. 23 | 401/402, 403, 801/802 |
| DTX-0027 | | | Canadian Patent No. 2,429,357 | Plishka Deposition Ex. 24 | 401/402, 403, 801/802 |
| DTX-0028 | | | Figures 3 and 4 | Plishka Deposition Ex. 25 | 401/402, 403, 801/802 |
| DTX-0029 | | | ASM Handbook – Glossary of Terms | Plishka Deposition Ex. 26 | 401/402, 403, 701/702, 801/802 |
| DTX-0030 | | | Metals Handbook Desk Edition – Glossary of Terms and Engineering Data | Plishka Deposition Ex. 27 | 401/402, 403, 701/702, 801/802 |
| DTX-0031 | | | Fracture Mechanics – An Introduction (Second Edition) | Plishka Deposition Ex. 28 | 401/402, 403, 701/702, 801/802 |
| DTX-0032 | MT00000446 | MT00000451 | Micro-Tech Substantially Equivalent Discussion | Plishka Deposition Ex. 29 | 401/402, 403, 701/702, 801/802 |
| DTX-0033 | | | ASM Handbook – Fatigue and Fracture (Vol. 19), Todd Gross, "Micromechanisms of Monotonic and Cyclic Crack Growth" | Plishka Deposition Ex. 30 | 401/402, 403, 701/702, 801/802 |
| DTX-0034 | MT00001503 | MT00001510 | Micro-tech Instructions for Use of Sterile Repositionable Hemostasis Clipping Device | Plishka Deposition Ex. 31 | 401/402, 403, 801/802 |
| DTX-0035 | | | Curriculum Vitae of Michael Plishka | | |
| DTX-0036 | | | List of Materials Considered for Plishka Rebuttal Report | | 401/402, 403, 801/802 |
| DTX-0037 | MT00014378 | MT00015185 | Atlas of Stress-Strain Curves, Second Edition (ASM International) (2002) | | 401/402, 403, 801/802 |
| DTX-0038 | MT00017856 | MT00017867 | Merriam Webster Online Dictionary Definition of Fracture | | 401/402, 403, 801/802 |
| DTX-0039 | MT00018403 | MT00018423 | Elements of Metallurgy and Engineering Alloys, ASM International, Chapter 13 Fracture (2008) | | 401/402, 403, 801/802 |
| DTX-0040 | MT00018382 | MT00018402 | Excerpt from ASM Handbook, Volume 19 Fatigue and Fracture, ASM International, 1996 | | 401/402, 403, 801/802 |
| DTX-0041 | MT00017827 | MT00017845 | U.S. Naval Academy, EN380 Naval Materials Science and Engineering Course Notes, Chapter 11 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0042 | MT00014361 | MT00014375 | Excerpt from Fracture Mechanics, by T.L. Anderson, 3rd Edition (2005) | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0043 | MT00017868 | MT00018258 | Fracture Mechanics, by E.E. Gdoutos, 2nd Edition (2005) | | 401/402, 403, 801/802 |
| DTX-0044 | MT00018316 | MT00018345 | On the Mechanistic Origins of Toughness in Bone, M.E. Launey, et al. (2010) | | 401/402, 403, 801/802 |
| DTX-0045 | MT00018259 | MT00018312 | M. Hanson, On Adhesion and Galling in Metal Forming (2008) | | 401/402, 403, 801/802 |
| DTX-0046 | | | New Technique to Improve Ductility of Ceramics Materials for Missiles and Engines, ScienceDaily | | 401/402, 403, 801/802 |
| DTX-0047 | MT00017846 | MT00017855 | Li, et al, Nanoscale stacking fault-assisted room temperature plasticity in flash-sintered TiO2 | | 401/402, 403, 801/802 |
| DTX-0048 | | | Boston Scientific Resolution Clip Device Video | | 401/402, 403, 801/802 |
| DTX-0049 | MT00017825 | MT00017825 | bandicam 2020-11-12 23-45-32-723 | | 401/402, 403, 701/702, 801/802 |
| DTX-0050 | MT00018313 | MT00018313 | Impact of Distal Pin | | 401/402, 403, 701/702, 801/802 |
| DTX-0051 | MT00017826 | MT00017826 | BUCKLE-Test report_HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY | | 401/402, 403, 701/702, 801/802 |
| DTX-0052 | MT00018314 | MT00018314 | JHOOK-Test report_HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY | | 401/402, 403, 701/702, 801/802 |
| DTX-0053 | MT00018315 | MT00018315 | LOCKADO-Test report_HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY | | 401/402, 403, 701/702, 801/802 |
| DTX-0054 | MT00018346 | MT00018346 | Test Video-1  HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY | | 401/402, 403, 701/702, 801/802 |
| DTX-0055 | MT00018347 | MT00018347 | Test video-2  HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY | | 401/402, 403, 701/702, 801/802 |
| DTX-0056 | MT00018349 | MT00018349 | Buckle-1-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0057 | MT00018350 | MT00018350 | Buckle-1-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0058 | MT00018348 | MT00018348 | Buckle-1-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0059 | MT00018352 | MT00018352 | Buckle-2-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0060 | MT00018353 | MT00018353 | Buckle-2-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0061 | MT00018351 | MT00018351 | Buckle-2-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0062 | MT00018355 | MT00018355 | Buckle-3-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0063 | MT00018356 | MT00018356 | Buckle-3-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0064 | MT00018354 | MT00018354 | Buckle-3-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0065 | MT00018358 | MT00018358 | Buckle-4-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0066 | MT00018359 | MT00018359 | Buckle-4-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0067 | MT00018357 | MT00018357 | Buckle-4-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0068 | MT00018361 | MT00018361 | Buckle-5-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0069 | MT00018362 | MT00018362 | Buckle-5-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0070 | MT00018360 | MT00018360 | Buckle-5-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0071 | MT00015197 | MT00015197 | S01-BUCKLE-X250 | | 401/402, 403, 701/702, 801/802 |
| DTX-0072 | MT00015199 | MT00015199 | S01-BUCKLE-X300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0073 | MT00015200 | MT00015200 | S01-BUCKLE-X500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0074 | MT00015195 | MT00015195 | S01-BUCKLE-X1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0075 | MT00015196 | MT00015196 | S01-BUCKLE-X2000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0076 | MT00015198 | MT00015198 | S01-BUCKLE-X2500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0077 | MT00015216 | MT00015216 | S02-BUCKLE-X250 | | 401/402, 403, 701/702, 801/802 |
| DTX-0078 | MT00015218 | MT00015218 | S02-BUCKLE-X300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0079 | MT00015219 | MT00015219 | S02-BUCKLE-X500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0080 | MT00015214 | MT00015214 | S02-BUCKLE-X1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0081 | MT00015215 | MT00015215 | S02-BUCKLE-X2000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0082 | MT00015217 | MT00015217 | S02-BUCKLE-X2500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0083 | MT00018364 | MT00018364 | J-hook-1-300 | | 401/402, 403, 701/702, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0084 | MT00018365 | MT00018365 | J-hook-1-500 | | 401/402, 403, 701/702, 801/802 |
|----------|------------|------------|--------------|--|--------------------------------|
| DTX-0085 | MT00018363 | MT00018363 | J-hook-1-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0086 | MT00018367 | MT00018367 | J-hook-2-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0087 | MT00018368 | MT00018368 | J-hook-2-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0088 | MT00018366 | MT00018366 | J-hook-2-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0089 | MT00018370 | MT00018370 | J-hook-3-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0090 | MT00018371 | MT00018371 | J-hook-3-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0091 | MT00018369 | MT00018369 | J-hook-3-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0092 | MT00018373 | MT00018373 | J-hook-4-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0093 | MT00018374 | MT00018374 | J-hook-4-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0094 | MT00018372 | MT00018372 | J-hook-4-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0095 | MT00018376 | MT00018376 | J-hook-5-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0096 | MT00018377 | MT00018377 | J-hook-5-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0097 | MT00018375 | MT00018375 | J-hook-5-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0098 | MT00015203 | MT00015203 | S01-J-HOOK-X250 | | 401/402, 403, 701/702, 801/802 |
| DTX-0099 | MT00015205 | MT00015205 | S01-J-HOOK-X300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0100 | MT00015206 | MT00015206 | S01-J-HOOK-X500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0101 | MT00015201 | MT00015201 | S01-J-HOOK-X1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0102 | MT00015202 | MT00015202 | S01-J-HOOK-X2000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0103 | MT00015204 | MT00015204 | S01-J-HOOK-X2500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0104 | MT00015221 | MT00015221 | S02-J-HOOK-X250 | | 401/402, 403, 701/702, 801/802 |
| DTX-0105 | MT00015223 | MT00015223 | S02-J-HOOK-X300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0106 | MT00015224 | MT00015224 | S02-J-HOOK-X500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0107 | MT00015220 | MT00015220 | S02-J-HOOK-X1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0108 | MT00015225 | MT00015225 | S02-JHOOK-X2000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0109 | MT00015222 | MT00015222 | S02-J-HOOK-X2500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0110 | MT00018379 | MT00018379 | Lockado-1-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0111 | MT00018380 | MT00018380 | Lockado-1-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0112 | MT00018378 | MT00018378 | Lockado-1-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0113 | MT00014376 | MT00014376 | Lockado-2-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0114 | MT00014377 | MT00014377 | Lockado-2-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0115 | MT00018381 | MT00018381 | Lockado-2-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0116 | MT00015187 | MT00015187 | Lockado-3-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0117 | MT00015188 | MT00015188 | Lockado-3-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0118 | MT00015186 | MT00015186 | Lockado-3-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0119 | MT00015190 | MT00015190 | Lockado-4-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0120 | MT00015191 | MT00015191 | Lockado-4-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0121 | MT00015189 | MT00015189 | Lockado-4-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0122 | MT00015193 | MT00015193 | Lockado-5-300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0123 | MT00015194 | MT00015194 | Lockado-5-500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0124 | MT00015192 | MT00015192 | Lockado-5-1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0125 | MT00015210 | MT00015210 | S01-LOCKADO-X250 | | 401/402, 403, 701/702, 801/802 |
| DTX-0126 | MT00015212 | MT00015212 | S01-LOCKADO-X300 | | 401/402, 403, 701/702, 801/802 |
| DTX-0127 | MT00015213 | MT00015213 | S01-LOCKADO-X500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0128 | MT00015207 | MT00015207 | S01-LOCKADO-X1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0129 | MT00015208 | MT00015208 | S01-LOCKADO-X1500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0130 | MT00015209 | MT00015209 | S01-LOCKADO-X2000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0131 | MT00015211 | MT00015211 | S01-LOCKADO-X2500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0132 | MT00015229 | MT00015229 | S02-LOCKADO-X250 | | 401/402, 403, 701/702, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0133 | MT00015231 | MT00015231 | S02-LOCKADO-X300 | | 401/402, 403, 701/702, 801/802 |
|---|---|---|---|---|---|
| DTX-0134 | MT00015232 | MT00015232 | S02-LOCKADO-X500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0135 | MT00015226 | MT00015226 | S02-LOCKADO-X1000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0136 | MT00015227 | MT00015227 | S02-LOCKADO-X1500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0137 | MT00015228 | MT00015228 | S02-LOCKADO-X2000 | | 401/402, 403, 701/702, 801/802 |
| DTX-0138 | MT00015230 | MT00015230 | S02-LOCKADO-X2500 | | 401/402, 403, 701/702, 801/802 |
| DTX-0139 | BSC-MT-000119 | BSC-MT-000556 | Moved to Joint Exhibit List at JTX-0004 | | 401/402, 403 |
| DTX-0140 | BSC-MT-000759 | BSC-MT-001283 | Moved to Joint Exhibit List at JTX-0005 | | 401/402, 403 |
| DTX-0141 | BSC-MT-001591 | BSC-MT-001788 | Moved to Joint Exhibit List at JTX-0006 | | 401/402, 403 |
| DTX-0142 | BSC-MT-003846 | BSC-MT-003861 | Rotatable Resolution Clip Product Specification - Resolution 360™ Clip | | 401/402, 403, 701/702 |
| DTX-0143 | BSC-MT-004731 | BSC-MT-004731 | Video | | 401/402, 403, 701/702, 801/802 |
| DTX-0144 | BSC-MT-004751 | BSC-MT-004751 | Video | | 401/402, 403, 701/702, 801/802 |
| DTX-0145 | BSC-MT-006163 | BSC-MT-006178 | Tab Beding Test with Welded Capsule Report | | 401/402, 403, 701/702, 801/802 |
| DTX-0146 | BSC-MT-006351 | BSC-MT-006395 | Presentation: Boston Scientific - NG 360 Clip TDP - Q1 2019 TDP Update | | 401/402, 403, 701/702, 801/802 |
| DTX-0147 | BSC-MT-006712 | BSC-MT-006728 | DDW & UEGW 2016 Res 360 Report: Evaluation of Tissue Manipulation with Resolution 360 Clips in Ex vivo Porcine Model | | 401/402, 403, 701/702, 801/802 |
| DTX-0148 | BSC-MT-007794 | BSC-MT-007805 | Resolution Clip Exploratory Cycle Test Work Instructions | | 401/402, 403, 701/702, 801/802 |
| DTX-0149 | BSC-MT-008310 | BSC-MT-008312 | Manual Termination Design Freeze Test Flow Diagrams | | 401/402, 403, 701/702, 801/802 |
| DTX-0150 | BSC-MT-011662 | BSC-MT-011662 | Excel Spreadsheet, Res_360_Deployment Testing - ALT 11 3 15 (KJW) | | 401/402, 403, 701/702, 801/802 |
| DTX-0151 | BSC-MT-012485 | BSC-MT-012511 | Device Dimension and Deployment Forces Test | | 401/402, 403, 701/702, 801/802 |
| DTX-0152 | BSC-MT-020287 | BSC-MT-020294 | HCD Clip Deployment and Clamping Force Test | | 401/402, 403, 701/702, 801/802 |
| DTX-0153 | BSC-MT-031779 | BSC-MT-031789 | Boston Scientific Memorandum Re Olympus Clip Deployment Testing | | 401/402, 403, 701/702, 801/802 |
| DTX-0154 | BSC-MT-115971 | BSC-MT-115991 | Nova Light Systems Hemoclip - Competitive Testing | | 401/402, 403, 701/702, 801/802 |
| DTX-0155 | BSC-MT-126649 | BSC-MT-127160 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Rebuttal Expert Report of Karl R. Leinsing | | 401/402, 403 |
| DTX-0156 | BSC-MT-137027 | BSC-MT-137027 | Excel Spreadsheet, Fishbone for Open  Close  MASTER 16NOV | | 401/402, 403, 701/702, 801/802 |
| DTX-0157 | BSC-MT-139857 | BSC-MT-139873 | Micro-Tech Test Report | | 401/402, 403, 701/702, 801/802 |
| DTX-0158 | MT00008284 | MT00008636 | File History for U.S. Patent No. 9,445,821 | | 401/402, 403 |
| DTX-0159 | MT00008970 | MT00011116 | File History for EP 02775909 | | 401/402, 403 |
| DTX-0160 | MT00014022 | MT00014041 | Presentation: Micro-Tech - Hemostasis Clips | | 401/402, 403, 701/702, 801/802 |
| DTX-0161 | MT00005805 | MT00005832 | Micro-Tech Product Catalog | | 401/402, 403, 801/802 |
| DTX-0162 | | | Plaintiff's Objections and Responses to First Set of Interrogatories Nos. 1-8 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0163 | | | Plaintiff's Objections and Responses to Second Set of  Interrogatories No. 9 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0164 | | | Plaintiff's First Supplemental Responses and Objections to First Set of Interrogatories No. 3 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0165 | | | Plaintiff's First Supplemental Responses and Objections to First Set of Interrogatories Nos. 2 and 5 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0166 | | | Plaintiff's Objections and Responses to Third Set of Interrogatories Nos. 10-13 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0167 | | | Plaintiff's First Supplemental Responses and Objections to Third Set of Interrogatories No. 12 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0168 | | | Plaintiff's Third Supplemental Responses and Objections to  Interrogatories Nos. 2, 4, 7 and 9 | | 401/402, 403, 801/802, AA, Legal |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | |
|---|---|---|---|---|
| DTX-0169 | | | Plaintiff's Responses and Objections to First Set of Requests for Admission Nos. 1-5 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0170 | | | Plaintiff's Supplemental Responses and Objections to Third Set of Interrogatories No. 11 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0171 | | | Plaintiff's Fourth Supplemental Responses and Objections to Interrogatories No. 5 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0172 | | | Plaintiff's Fifth Supplemental Responses and Objections to Interrogatories No. 4 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0173 | | | Plaintiff's Responses and Objections to Second Set of Requests for Admission Nos. 6-20 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0174 | | | Plaintiff's Third Supplemental Responses and Objections to Third Set of Interrogatories Nos. 11 and 13 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0175 | | | Plaintiff's Supplemental Responses and Objections to Second Set of Requests for Admission Nos. 9, 12, 14, 16 and 17 | | 401/402, 403, 801/802, AA, Legal |
| DTX-0176 | | | Initial Expert Report of Morten O. Jensen Regarding Invalidity of United States Patents Nos. 7,094,245; 8,974,371; and 9,980,725 | Jensen Deposition Ex.1 | 701/702, 801/802, 901/902, 1006, PMIL |
| DTX-0177 | | | Reply Expert Report of Morten O. Jensen Regarding Invalidity of United States Patents Nos. 7,094,245; 8,974,371; and 9,980,725 | Jensen Deposition Ex. 2 | 701/702, 801/802, 901/902, 1006 |
| DTX-0178 | | | Curriculum Vitae of Morten O. Jensen | Jensen Deposition Ex. 3 | |
| DTX-0179 | BSC-MT-024914 | BSC-MT-024952 | U.S. Patent 7,094,245 by Adams et al. | Jensen Deposition Ex. 4 | |
| DTX-0180 | BSC-MT-000079 | BSC-MT-000118 | U.S. Patent 9,980,725 by Durgin et al. | Jensen Deposition Ex. 5 | |
| DTX-0181 | BSC-MT-110282 | BSC-MT-110287 | Quick Clip – Olympus – Disposable Clip Fixing Device | Jensen Deposition Ex. 6 | 401/402, 403, 701/702, 801/802 |
| DTX-0182 | | | Video File | Jensen Deposition Ex. 7 | 401/402, 403, 701/702, 801/802, ID |
| DTX-0183 | | | Printout of Video | Jensen Deposition Ex. 8 | |
| DTX-0184 | | | Printout of Video at 4 Seconds | Jensen Deposition Ex. 9 | |
| DTX-0185 | | | Printout of Video at 6 Seconds | Jensen Deposition Ex. 10 | |
| DTX-0186 | | | Printout of Video at 12 Seconds | Jensen Deposition Ex. 11 | |
| DTX-0187 | MT00004213 | MT00004221 | Article: Seitz et al., "The Use of Endoscopic Clips in Nonvariceal Gastrointestinal Bleeding" | Jensen Deposition Ex. 12 | 401/402, 403, 801/802 |
| DTX-0188 | MT00002420 | MT00002424 | Article: Ciopolletta et al., "Endoclips versus heater probe in preventing early recurrent bleeding from peptic ulcer – a prospective and randomized trial" | Jensen Deposition Ex. 13 | 401/402, 403, 801/802 |
| DTX-0189 | MT00005265 | MT00005280 | U.S. Patent No. 6,808,491 by Kortenbach e t al. | Jensen Deposition Ex. 14 | 401/402, 403, 801/802 |
| DTX-0190 | MT00005205 | MT00005215 | U.S. Patent No. 6,569,085 by Kortenbach et al. | Jensen Deposition Ex. 15 | 401/402, 403, 801/802 |
| DTX-0191 | MT00004440 | MT00004464 | U.S. Patent No. 5,755,184 by Matsuno et al. | Jensen Deposition Ex. 16 | 401/402, 403, 801/802 |
| DTX-0192 | MT00004477 | MT00004488 | U.S. Patent No. 5,766,189 by Matsuno et al. | Jensen Deposition Ex. 17 | 401/402, 403, 801/802 |
| DTX-0193 | MT00004539 | MT00004584 | U.S. Patent App. Publication 2002/0045909 by Kimura et al. | Jensen Deposition Ex. 18 | 401/402, 403, 801/802 |
| DTX-0194 | | | Video File | Jensen Deposition Ex. 19 | 401/402, 403, 801/802, ID |
| DTX-0195 | MT00013661 | MT00013666 | Japanese Patent Publication No. S60-103946 | Jensen Deposition Ex. 20 | 401/402, 403, 801/802 |
| DTX-0196 | BSC-MT-000040 | BSC-MT-000078 | U.S. Patent No. 8,974,371 by Durgin et al. | Jensen Deposition Ex. 21 | |
| DTX-0197 | | | Curriculum vitae for M. Jensen | | |
| DTX-0198 | | | List of Material Considered | | |
| DTX-0199 | BSC-MT-034833 | BSC-MT-034854 | Laboratory Notebook No. N0358 for Vince Turturro | | 401/402, 403, 801/802 |
| DTX-0200 | BSC-MT-037058 | BSC-MT-037066 | Boston Scientific - Hemo Clip Device Market Specification | | 401/402, 403, 801/802 |
| DTX-0201 | BSC-MT-037129 | BSC-MT-037135 | Boston Scientific - Product Specifications for the HCD TTS Clip | | 401/402, 403, 801/802 |
| DTX-0202 | BSC-MT-037507 | BSC-MT-037521 | Market Requirement Document - HCD Project | | 401/402, 403, 801/802 |
| DTX-0203 | BSC-MT-037561 | BSC-MT-037562 | Olympus Product Information- QuickClip™ | | 401/402, 403, 801/802 |
| DTX-0204 | BSC-MT-054391 | BSC-MT-054602 | Laboratory Notebook | | 401/402, 403, 701/702, 801/802, ID |
| DTX-0205 | BSC-MT-075636 | BSC-MT-075636 | Excel Spreadsheet, Olympus Clip Analysis 8-26-02 | | 401/402, 403, 701/702, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0206 | BSC-MT-075637 | BSC-MT-075637 | Email Re Olympus Hemo Clip IMS Q2 02 | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0207 | BSC-MT-076055 | BSC-MT-076074 | Presentation - Boston Scientific - Resolution™ Clip Marketing Plan | | 401/402, 403, 801/802 |
| DTX-0208 | BSC-MT-120227 | BSC-MT-120235 | U.S. Patent No. 3,958,576 by Komiya | | 401/402, 403, 801/802 |
| DTX-0209 | BSC-MT-120236 | BSC-MT-120282 | U.S. Patent No. 5,626,607 by Malecki et al. | | 401/402, 403, 801/802 |
| DTX-0210 | BSC-MT-120817 | BSC-MT-120824 | U.S. Patent No. 5,275,615 by Rose | | 401/402, 403, 801/802 |
| DTX-0211 | BSC-MT-120850 | BSC-MT-120860 | U.S. Patent No. 5,373,854 by Kolozsi | | 401/402, 403, 801/802 |
| DTX-0212 | BSC-MT-120861 | BSC-MT-120876 | U.S. Patent No. 5,423,857 by Rosenman et al. | | 401/402, 403, 801/802 |
| DTX-0213 | BSC-MT-123783 | BSC-MT-123884 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of William Lafferty | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-0214 | BSC-MT-124111 | BSC-MT-124324 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of Mark Adams | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-0215 | BSC-MT-125731 | BSC-MT-126364 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Corrected Opening Expert Report of Mark Nicosia | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-0216 | BSC-MT-127303 | BSC-MT-127415 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript for Vincent Turturro | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-0217 | MT00002284 | MT00002287 | Article: Binmoeller et al., "Endoscopic Hemoclip Treatment for Gastrointestinal Bleeding" | | 401/402, 403, 801/802 |
| DTX-0218 | MT00002396 | MT00002413 | German Register No. 29505619 | | 401/402, 403, 801/802, 901/902 |
| DTX-0219 | MT00002414 | MT00002416 | Article: Devereaux et al., "Endoclip - Closing the Surgical Gap" | | 401/402, 403, 801/802 |
| DTX-0220 | MT00002425 | MT00002428 | Olympus Product Information | | 401/402, 403, 801/802 |
| DTX-0221 | MT00002485 | MT00002488 | Olympus Enoscopic Mucosal Resection Devices | | 401/402, 403, 801/802 |
| DTX-0222 | MT00002489 | MT00002496 | Article: Goelder et al., "Endoscopic Hemostasis State of the Art - Nonvariceal Bleeding" | | 401/402, 403, 801/802 |
| DTX-0223 | MT00002506 | MT00002511 | Article: Hachisu et al., "Endoscopic Clip-Marking of Lesions Using the Newly Developed HX-3L Clip" | | 401/402, 403, 801/802 |
| DTX-0224 | MT00002569 | MT00002579 | Article: Wang et al., "Choosing the Right Through-the Scope Clip - A Rigorous Comparison of Rotability, Whip, Open/Close Precision, and Closure Strength" | | 401/402, 403, 801/802 |
| DTX-0225 | MT00002764 | MT00002770 | Article: Gastroenterological Endoscopy Vol. 17(1), pp. 92-101 (Feb. 1975) | | 401/402, 403, 801/802 |
| DTX-0226 | MT00002784 | MT00002793 | U.S. Patent No. 4,733,664 by Kirsch et al. | | 401/402, 403, 801/802 |
| DTX-0227 | MT00003220 | MT00003223 | Japanese Patent No. 60-103946 | | 401/402, 403, 801/802, 901/902 |
| DTX-0228 | MT00003288 | MT00003291 | Japanese Patent No. 63-267345 | | 401/402, 403, 801/802, 901/902 |
| DTX-0229 | MT00003399 | MT00003422 | U.S. Patent No. 5,304,183 by Gourlay et al. | | 401/402, 403, 801/802 |
| DTX-0230 | MT00004037 | MT00004053 | U.S. Patent No. 5,542,432 by Slater et al. | | 401/402, 403, 801/802 |
| DTX-0231 | MT00004054 | MT00004075 | U.S. Patent No. 5,569,274 by Rapacki et al. | | 401/402, 403, 801/802 |
| DTX-0232 | MT00004134 | MT00004157 | U.S. Patent No. 5,645,075 by Palmer et al. | | 401/402, 403, 801/802 |
| DTX-0233 | MT00004186 | MT00004188 | Article:Gottumukkala, "Hemoclips - Clips to Clasp the Bleeder" | | 401/402, 403, 801/802 |
| DTX-0234 | MT00004210 | MT00004212 | Article: Romagnuolo, "Endoscopic Clips - Past, Present and Future" | | 401/402, 403, 801/802 |
| DTX-0235 | MT00004222 | MT00004240 | U.S. Patent No. 5,749,881 by Sackler et al. | | 401/402, 403, 801/802 |
| DTX-0236 | MT00004501 | MT00004519 | U.S. Patent No. 5,776,075 by Palmer | | 401/402, 403, 801/802 |
| DTX-0237 | MT00004751 | MT00004781 | U.S. Patent Application Publication 2002/0151916 by Muramatsu et al. | | 401/402, 403, 801/802 |
| DTX-0238 | MT00004782 | MT00004795 | U.S. Patent No. 5,843,000 by Nishioka et al. | | 401/402, 403, 801/802 |
| DTX-0239 | MT00004821 | MT00004905 | U.S. Patent Application Publication 2002/0177861 by Sugiyama et al. | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0240 | MT00004968 | MT00005006 | U.S. Patent Application Publication 2003/0069592 | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0241 | MT00005007 | MT00005020 | U.S. Patent No. 5,967,997 by Turturro et al. | | 401/402, 403, 801/802 |
| DTX-0242 | MT00005090 | MT00005109 | U.S. Patent Application Publication 2004/0176784 by Okada | | 401/402, 403, 801/802 |
| DTX-0243 | MT00005447 | MT00005530 | U.S. Patent No. 6,991,634 by Sugiyama et al. | | 401/402, 403, 801/802 |
| DTX-0244 | MT00005698 | MT00005699 | Article: Goldstein et al., "Curved Biopsy Forceps" | | 401/402, 403, 801/802 |
| DTX-0245 | MT00005700 | MT00005705 | U.S. Patent No. 5,133,727 by Bales et al. | | 401/402, 403, 801/802 |
| DTX-0246 | MT00005706 | MT00005713 | U.S. Patent No. 5,507,296 by Bales et al. | | 401/402, 403, 801/802 |
| DTX-0247 | MT00005714 | MT00005722 | U.S. Patent No. 5,636,639 by Turturro et al. | | 401/402, 403, 801/802 |
| DTX-0248 | MT00006368 | MT00006374 | Complaint File Summary | | 401/402, 403, 801/802, ID |
| DTX-0249 | MT00012733 | MT00012733 | Video | | 401/402, 403, 801/802, ID |
| DTX-0250 | MT00012734 | MT00012734 | Video | | 401/402, 403, 801/802, ID |
| DTX-0251 | MT00013121 | MT00013655 | 510(k) Summary for the Olympus HX-5/6-1 Endoscopic Clipping Device, K963160 | | 401/402, 403, 801/802 |
| DTX-0252 | MT00013667 | MT00013672 | Japanese Patent Publication No. S63-267345 (English Translation) | | 401/402, 403, 801/802 |
| DTX-0253 | MT00013687 | MT00013687 | Photo of QuickClip Device | | 401/402, 403, 701/702, 801/802 |
| DTX-0254 | MT00013688 | MT00013688 | Photo of QuickClip Packaging Information | | 401/402, 403, 701/702, 801/802 |
| DTX-0255 | MT00013689 | MT00013689 | Photo of QuickClip Packaging Information | | 401/402, 403, 701/702, 801/802 |
| DTX-0256 | MT00013695 | MT00013714 | German Register No. 29505619 (English Translation) | | 401/402, 403, 801/802 |
| DTX-0257 | MT00013715 | MT00013715 | Photo of Quickclip Product Insert Information | | 401/402, 403, 701/702, 801/802 |
| DTX-0258 | MT00013716 | MT00013716 | Photo of QuickClip Packaging with Bubble Wrap | | 401/402, 403, 701/702, 801/802 |
| DTX-0259 | MT00013717 | MT00013843 | 510(k) Summary – K013066 | | 401/402, 403, 801/802 |
| DTX-0260 | MT00013844 | MT00013993 | 510(k) Summary - K990687 | | 401/402, 403, 801/802 |
| DTX-0261 | MT00013994 | MT00013994 | Endocorp USA Packaging Invoice | | 401/402, 403, 801/802 |
| DTX-0262 | MT00014259 | MT00014263 | Article: Fantin et al., "Diagnostic Quality of Biopsy Specimens - Comparison between a Conventional Biopsy Forceps and Mult bite Forceps" | | 401/402, 403, 801/802 |
| DTX-0263 | MT00014264 | MT00014264 | Quick Clip Image | | 401/402, 403, 801/802, ID |
| DTX-0264 | MT00014265 | MT00014265 | Quick Clip Image | | 401/402, 403, 801/802, ID |
| DTX-0265 | MT00014266 | MT00014267 | Article: Altorjay, "Value of Endoscopic Marking of the Z-Line for Detecting Short Esophagus Before Repeat Surgery for Recurrent Paraesophageal Hernias" | | 401/402, 403, 801/802 |
| DTX-0266 | MT00014268 | MT00014278 | U.S. Patent No. 5,222,973 by Sharpe et al. | | 401/402, 403, 801/802 |
| DTX-0267 | MT00014279 | MT00014279 | Video | | 401/402, 403, 801/802, ID |
| DTX-0268 | MT00014280 | MT00014311 | U.S. Patent No. 6,299,630 by Yamamoto | | 401/402, 403, 801/802 |
| DTX-0269 | MT00014312 | MT00014346 | U.S. Patent No. 6,139,508 by Simpson et al. | | 401/402, 403, 801/802 |
| DTX-0270 | MT00014347 | MT00014355 | Article: Kirkup, "The History and Evolution of Surgical Instruments" | | 401/402, 403, 801/802 |
| DTX-0271 | MT00014356 | MT00014356 | J-Hook Image | | 401/402, 403, 801/802, ID |
| DTX-0272 | MT00014357 | MT00014357 | Photo of Clipping Device | | 401/402, 403, 801/802, ID |
| DTX-0273 | MT00014358 | MT00014358 | Video | | 401/402, 403, 801/802, ID |
| DTX-0274 | MT00014359 | MT00014359 | Quick Clip Handle Image | | 401/402, 403, 801/802 |
| DTX-0275 | MT00014360 | MT00014360 | Quick Clip Handle Image | | 401/402, 403, 801/802 |
| DTX-0276 | OAI000001 | OAI000096 | Olympus Endoscopy  - Instructions - Rotatable Clip Fixing Devices | | 401/402, 403, 801/802 |
| DTX-0277 | OAI000097 | OAI000104 | Olympus - Rotatable Clip Fixing Device Product Information | | 401/402, 403, 801/802 |
| DTX-0278 | OAI000105 | OAI000289 | 510(k) Summary – K013066 | | 401/402, 403, 801/802, PMIL |
| DTX-0279 | | | IPR 2017-00135: Final Written Decision | | 401/402, 403, 801/802, AA, Legal, PMIL |
| DTX-0280 | | | Plaintiff's Initial Infringement Contentions | | 401/402, 403, 801/802, AA, Legal |
| DTX-0281 | | | Defendant's Final Invalidty Contentions | | 401/402, 403, 801/802, AA, Legal |
| DTX-0282 | | | Notice of Deposition of C. Li. | Li Deposition Ex. 20 | 401/402, 403, 801/802, AA, Legal |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | |
|---|---|---|---|---|
| DTX-0283 | | | Defendants First Suppl. Responses to Plaintiffs' First Set of Common Interrogatories No. 1-10 | Li Deposition Ex. 21 | 401/402, 403, 801/802, AA, Legal |
| DTX-0284 | | | Photograph of Physical Exhibit | Li Deposition Ex. 22 | ID |
| DTX-0285 | | | Photograph of Physical Exhibit | Li Deposition Ex. 23 | ID |
| DTX-0286 | | | Photograph of Physical Exhibit | Li Deposition Ex. 24 | ID |
| DTX-0287 | | | Photograph of Physical Exhibit | Li Deposition Ex. 25 | ID |
| DTX-0288 | | | Photograph of Physical Exhibit | Li Deposition Ex. 26 | ID |
| DTX-0289 | | | Photograph of Physical Exhibit | Li Deposition Ex. 27 | ID |
| DTX-0290 | | | Photograph of Physical Exhibit | Li Deposition Ex. 28 | ID |
| DTX-0291 | | | Photograph of Physical Exhibit | Li Deposition Ex. 29 | ID |
| DTX-0292 | | | Photograph of Physical Exhibit | Li Deposition Ex. 30 | ID |
| DTX-0293 | MT00011649 | MT00011649 | Excel Spreadsheet, 2015à¹'-2019à¹' æ˜´å¬è¿¿å¼½å¬è¿¿å¾µ¤æ''éå®æ°æ©20200304 | Li Deposition Ex. 31 | 401/402, 403, 801/802 |
| DTX-0294 | MT00000693 | MT00000693 | 510K Submission Cover Letter | Li Deposition Ex. 32 | 401/402, 403, 801/802 |
| DTX-0295 | MT00000770 | MT00000786 | Micro-Tech Device Description | Li Deposition Ex. 33 | 401/402, 403, 801/802, 901/902 |
| DTX-0296 | MT00000819 | MT00000823 | Micro-Tech Substantially Equivalent Discussions | Li Deposition Ex. 34 | 401/402, 403, 801/802, 901/902 |
| DTX-0297 | MT00001185 | MT00001209 | Micro-Tech Device Description (Updated 2017-01-04) | Li Deposition Ex. 35 | 401/402, 403, 801/802, 901/902 |
| DTX-0298 | MT00001159 | MT00001159 | Micro-Tech 510K Submission Cover Letter | Li Deposition Ex. 36 | 401/402, 403, 801/802, 901/902 |
| DTX-0299 | MT00001276 | MT00001280 | Micro-Tech: Substantially Equivalent Discussions | Li Deposition Ex. 37 | 401/402, 403, 801/802, 901/902 |
| DTX-0300 | MT00002246 | MT00002264 | Micro-Tech Device Description | Li Deposition Ex. 38 | 401/402, 403, 801/802, 901/902 |
| DTX-0301 | MT00001944 | MT00001944 | Micro-Tech 510K Submission Cover Letter | Li Deposition Ex. 39 | 401/402, 403, 801/802, 901/902 |
| DTX-0302 | MT00000446 | MT00000451 | Micro-Tech Substantially Equivalent Discussions (Updated 2018-11-15) | Li Deposition Ex. 40 | 401/402, 403, 801/802, 901/902 |
| DTX-0303 | MT00000923 | MT00000925 | Micro-Tech Response to K161463/S001 Deficiencies | Li Deposition Ex. 41 | 401/402, 403, 801/802, 901/902 |
| DTX-0304 | CMD 0082 | CMD 0083 | Email Re IP Insurance | Li Deposition Ex. 42 | |
| DTX-0305 | | | Plaintiffs Notice of Deposition of R. Perry | Perry Deposition Ex. 1 | 401/402, 403, 801/802, AA, Legal |
| DTX-0306 | | | Plaintiffs Notice of 30(B)(6) Deposition of Defendants | Perry Deposition Ex. 2 | 401/402, 403, 801/802, AA, Legal |
| DTX-0308 | | | Plaintiffs Second Notice of 30(B)(6) Deposition of Defendants | Perry Deposition Ex. 3 | 401/402, 403, 801/802, AA, Legal |
| DTX-0308 | MT00011879 | MT00012458 | U.S. Market Report Suite for Gastrointestinal Devices | Perry Deposition Ex. 4 | |
| DTX-0309 | MT00005902 | MT00005911 | Micro-Tech – Presentation – SureClip Repositionable Hemostasis Clip | Perry Deposition Ex. 5 | 401/402, 403, 701/702, 801/802 |
| DTX-0310 | MT00005927 | MT00005927 | SureClip Advertisement/Product Info | Perry Deposition Ex. 6 | 401/402, 403, 801/802 |
| DTX-0311 | MT00005939 | MT00005948 | Micro-Tech – Product Brief – Hemostasis Clip | Perry Deposition Ex. 7 | 401/402, 403, 801/802 |
| DTX-0312 | | | SureClip Product Information | Perry Deposition Ex. 8 | 401/402, 403, 801/802 |
| DTX-0313 | MT00012460 | MT00012460 | Excel Spreadsheet, Rev & COGS Summary through 2019 year end | Perry Deposition Ex. 9 | 401/402, 403, 801/802 |
| DTX-0314 | | | SureClip Product Info/Order Form | Perry Deposition Ex. 10 | 401/402, 403, 801/802 |
| DTX-0315 | | | SureClip Product Info/Order Form | Perry Deposition Ex. 11 | 401/402, 403, 801/802 |
| DTX-0316 | MT00012499 | MT00012499 | Excel Spreadsheet, Rev COGS Details through 2019 year end | Perry Deposition Ex. 12 | 401/402, 403, 801/802 |
| DTX-0317 | MT00000084 | MT00000084 | Excel Spreadsheet, Rev & COGS Summary from 2015 - 2019 Sep | Perry Deposition Ex. 13 | 401/402, 403, 801/802 |
| DTX-0318 | MT00012498 | MT00012498 | Excel Spreadsheet, Product Purchase Summary and Details through 2019 year end | Perry Deposition Ex. 14 | 401/402, 403, 801/802 |
| DTX-0319 | MT00012459 | MT00012459 | Excel Spreadsheet, Quarterly Profit and Loss Stmt 2016 to 2019 | Perry Deposition Ex. 15 | 401/402, 403, 801/802 |
| DTX-0320 | MT00000001 | MT00000001 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0321 | MT00000002 | MT00000002 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0322 | MT00000003 | MT00000003 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0323 | MT00000004 | MT00000004 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0324 | MT00000005 | MT00000005 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0325 | MT00000006 | MT00000006 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0326 | MT00000007 | MT00000007 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0327 | MT00000008 | MT00000008 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0328 | MT00000009 | MT00000009 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
|---|---|---|---|---|---|
| DTX-0329 | MT00000010 | MT00000010 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0330 | MT00000011 | MT00000011 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0331 | MT00000012 | MT00000012 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0332 | MT00000013 | MT00000013 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0333 | MT00000014 | MT00000014 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0334 | MT00000015 | MT00000015 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0335 | MT00000016 | MT00000016 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0336 | MT00000017 | MT00000017 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0337 | MT00000018 | MT00000018 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0338 | MT00000019 | MT00000019 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0339 | MT00000020 | MT00000020 | Micro-Tech Video | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0340 | MT00000021 | MT00000021 | Micro-Tech Video | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0341 | MT00000022 | MT00000022 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0342 | MT00000023 | MT00000023 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0343 | MT00000024 | MT00000024 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0344 | MT00000025 | MT00000025 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0345 | MT00000026 | MT00000026 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0346 | MT00000027 | MT00000027 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0347 | MT00000028 | MT00000028 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0348 | MT00000029 | MT00000029 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0349 | MT00000030 | MT00000030 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0350 | MT00000031 | MT00000031 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0351 | MT00000032 | MT00000032 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0352 | MT00000033 | MT00000033 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0353 | MT00000034 | MT00000034 | Micro-Tech Drawings | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0354 | MT00000035 | MT00000046 | Product Performance Specification for Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802, 901/902 |
| DTX-0355 | MT00000047 | MT00000058 | | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0356 | MT00000059 | MT00000066 | | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0357 | MT00000067 | MT00000071 | | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0358 | MT00000072 | MT00000083 | | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0359 | MT00000084 | MT00000084 | Excel Spreadsheet, Rev & COGS Summary from 2015 - 2019 Sep | | 401/402, 403, 801/802, 901/902 |
| DTX-0360 | MT00000085 | MT00000085 | Device Master Record - SureClip - Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0361 | MT00000086 | MT00000086 | Device Master Record - SureClip - Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0362 | MT00000087 | MT00000087 | Device Master Record - SureClip - Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0363 | MT00000088 | MT00000088 | Device Master Record - SureClip - Max Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0364 | MT00000089 | MT00000089 | Device Master Record - SureClip - Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0365 | MT00000090 | MT00000090 | Device Master Record - SureClip - Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0366 | MT00000091 | MT00000091 | Device Master Record - SureClip - Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0367 | MT00000092 | MT00000092 | Device Master Record - SureClip - Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0368 | MT00000093 | MT00000104 | Micro-Tech - SureClip - Instructions for Use | | 401/402, 403, 801/802, 901/902 |
| DTX-0369 | MT00000105 | MT00000108 | Micro-Tech - Test Report | | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0370 | MT00000109 | MT00000123 | Micro-Tech - Test Report | | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0371 | MT00000124 | MT00000130 | Micro-Tech - Test Report | | 401/402, 403, 701/702, 801/802, 901/902 |
| DTX-0372 | MT00000131 | MT00000131 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0373 | MT00000132 | MT00000132 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0374 | MT00000133 | MT00000133 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0375 | MT00000134 | MT00000134 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0376 | MT00000135 | MT00000135 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
|---|---|---|---|---|---|
| DTX-0377 | MT00000136 | MT00000136 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0378 | MT00000137 | MT00000137 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0379 | MT00000138 | MT00000138 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0380 | MT00000139 | MT00000139 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0381 | MT00000140 | MT00000146 | Micro-Tech Schematics | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0382 | MT00000147 | MT00000147 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0383 | MT00000148 | MT00000148 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0384 | MT00000149 | MT00000149 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0385 | MT00000150 | MT00000150 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0386 | MT00001151 | MT00000151 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0387 | MT00000152 | MT00000152 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0388 | MT00000153 | MT00000153 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0389 | MT00000154 | MT00000154 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0390 | MT00000155 | MT00000155 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0391 | MT00000156 | MT00000156 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0392 | MT00000157 | MT00000157 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0393 | MT00000158 | MT00000158 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0394 | MT00000159 | MT00000159 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0395 | MT00000160 | MT00000160 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0396 | MT00000161 | MT00000161 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0397 | MT00000162 | MT00000162 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0398 | MT00000163 | MT00000163 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0399 | MT00000164 | MT00000164 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0400 | MT00000165 | MT00000165 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0401 | MT00000166 | MT00000166 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0402 | MT00000167 | MT00000167 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0403 | MT00000168 | MT00000168 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0404 | MT00000169 | MT00000169 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0405 | MT00000170 | MT00000170 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0406 | MT00000171 | MT00000171 | Device Master Record HemoClip 165cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0407 | MT00000172 | MT00000172 | Device Master Record HemoClip 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0408 | MT00000173 | MT00000173 | Device Master Record HemoClip 165cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0409 | MT00000174 | MT00000174 | Device Master Record HemoClip 165cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0410 | MT00000175 | MT00000175 | Device Master Record HemoClip 165cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0411 | MT00000176 | MT00000177 | Device Master Record HemoClip 165cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0412 | MT00000178 | MT00000178 | Device Master Record HemoClip 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0413 | MT00000179 | MT00000179 | Device Master Record HemoClip 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0414 | MT00000180 | MT00000181 | Device Master Record HemoClip 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0415 | MT00000182 | MT00000182 | Device Master Record SureClip Maxi Repositionable 235cm | | 401/402, 403, 801/802, 901/902 |
| DTX-0416 | MT00002221 | MT00002225 | Micro-Tech 510(k) Summary | | 401/402, 403, 801/802 |
| DTX-0417 | MT00000418 | MT00000429 | CDRH Premarket Review Submission | | 401/402, 403, 801/802 |
| DTX-0418 | MT00000735 | MT00000740 | Micro-Tech Performance Testing | | 401/402, 403, 701/702, 801/802 |
| DTX-0419 | MT00000831 | MT00000838 | Micro-Tech Biocompatibilty Evaluation Report | | 401/402, 403, 701/702, 801/802 |
| DTX-0420 | MT00000948 | MT00000961 | CDRH Premarket Review Submission | | 401/402, 403, 801/802 |
| DTX-0421 | MT00001951 | MT00001955 | Micro-Tech Clip Open and Close Force Test Report of Predicate Device | | 401/402, 403, 701/702, 801/802 |
| DTX-0422 | MT00005723 | MT00005723 | Excel Spreadsheet, Product Purchase Summary and Details | | 401/402, 403, 801/802 |
| DTX-0423 | MT00005724 | MT00005724 | Excel Spreadsheet, Rev & COGS Details  from 2015 - 2019 Sep | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-0424 | MT00005733 | MT00005752 | Micro-Tech Endoscopy Product Catalog | | 401/402, 403, 801/802 |
| DTX-0425 | MT00005753 | MT00005780 | Micro-Tech Endoscopy Product Catalog | | 401/402, 403, 801/802 |
| DTX-0426 | MT00005781 | MT00005804 | Micro-Tech Endoscopy Product Catalog | | 401/402, 403, 801/802 |
| DTX-0427 | MT00005866 | MT00005866 | Micro-Tech SureClip C-N Evaluation Form | | 401/402, 403, 801/802 |
| DTX-0428 | MT00005881 | MT00005884 | Micro-Tech SureClip Product Information | | 401/402, 403, 801/802 |
| DTX-0429 | MT00005929 | MT00005929 | Micro-Tech SureClip C-N Evaluation Form | | 401/402, 403, 801/802 |
| DTX-0430 | MT00005930 | MT00005930 | Micro-Tech SureClip Max Evaluation Form | | 401/402, 403, 801/802 |
| DTX-0431 | MT00005931 | MT00005931 | Micro-Tech SureClip Max Evaluation Form | | 401/402, 403, 801/802 |
| DTX-0432 | MT00005932 | MT00005932 | Micro-Tech SureClip C-N Evaluation Form | | 401/402, 403, 801/802 |
| DTX-0433 | MT00005933 | MT00005934 | Micro-Tech Multiple Product Evaluation Form | | 401/402, 403, 801/802 |
| DTX-0434 | MT00005936 | MT00005938 | "SureClip by Micro-Tech - Excellent Performance, Winning Oversea Useres Heart" | | 401/402, 403, 801/802 |
| DTX-0435 | MT00006636 | MT00006645 | | | 401/402, 403, 801/802, ID |
| DTX-0436 | MT00006646 | MT00006651 | | | 401/402, 403, 801/802, ID |
| DTX-0437 | MT00006652 | MT00006659 | Micro-Tech Product Performance Monitoring Plan for SureClip Repositionable Hemostasis Clip | | 401/402, 403, 801/802 |
| DTX-0438 | MT00006660 | MT00006665 | Micro-Tech Product Performance Monitoring Plan for Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |
| DTX-0439 | MT00006666 | MT00006681 | | | 401/402, 403, 801/802, ID |
| DTX-0440 | MT00006682 | MT00006692 | | | 401/402, 403, 801/802, ID |
| DTX-0441 | MT00006693 | MT00006712 | | | 401/402, 403, 801/802, ID |
| DTX-0442 | MT00006713 | MT00006726 | | | 401/402, 403, 801/802, ID |
| DTX-0443 | MT00006727 | MT00006739 | | | 401/402, 403, 801/802, ID |
| DTX-0444 | MT00006740 | MT00006764 | | | 401/402, 403, 801/802, ID |
| DTX-0445 | MT00006765 | MT00006775 | | | 401/402, 403, 801/802, ID |
| DTX-0446 | MT00006776 | MT00006790 | | | 401/402, 403, 801/802, ID |
| DTX-0447 | MT00006791 | MT00006791 | Micro-Tech Nanjing | | 401/402, 403, 801/802, ID |
| DTX-0448 | MT00006792 | MT00006793 | Micro-Tech Nanjing | | 401/402, 403, 801/802, ID |
| DTX-0449 | MT00006794 | MT00006801 | Micro-Tech Application of Usability Engineering for Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |
| DTX-0450 | MT00006802 | MT00006817 | | | 401/402, 403, 801/802, ID |
| DTX-0451 | MT00006818 | MT00006833 | Micro-Tech DV Protocol of Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |
| DTX-0452 | MT00006834 | MT00006849 | Micro-Tech DV Protocol of Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |
| DTX-0453 | MT00006850 | MT00006862 | | | 401/402, 403, 801/802, ID |
| DTX-0454 | MT00006863 | MT00006887 | Micro-Tech DV Protocol of Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |
| DTX-0455 | MT00006888 | MT00006895 | | | 401/402, 403, 801/802, ID |
| DTX-0456 | MT00006896 | MT00006931 | Micro-Tech Risk Management Report for Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |
| DTX-0457 | MT00006932 | MT00006932 | C PCT/CN2014/081316 | | 401/402, 403, 801/802 |
| DTX-0458 | MT00006933 | MT00006942 | Chinese Patent 103989500 | | 401/402, 403, 801/802 |
| DTX-0459 | MT00006943 | MT00006953 | Japanese Patent 62-08894 | | 401/402, 403, 801/802 |
| DTX-0460 | MT00006954 | MT00006966 | EP 3081174 B1 | | 401/402, 403, 801/802 |
| DTX-0461 | MT00006967 | MT00006985 | Specification for AU Appl. No. 2014394922 | | 401/402, 403, 801/802 |
| DTX-0462 | MT00006986 | MT00006995 | U.S. Patent No. 9,795,390 by Jin et al. | | 401/402, 403, 801/802 |
| DTX-0463 | MT00011271 | MT00011285 | Micro-Tech DV Protocol of Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0464 | MT00011308 | MT00011332 | Micro-Tech DV Protocol of Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0465 | MT00011450 | MT00011450 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0466 | MT00011451 | MT00011451 | Micro-Tech Schematic | | 401/402, 403, 801/802, 901/902, ID |
| DTX-0467 | MT00011452 | MT00011460 | Micro-Tech Test Report | | 401/402, 403, 701/702, 801/802 |
| DTX-0468 | MT00011461 | MT00011481 | Micro-Tech Sterile Repositionable Hemostasis Clipping Device DV Protocol | | 401/402, 403, 801/802 |
| DTX-0469 | MT00011482 | MT00011517 | Micro-Tech Sterile Repositionable Hemostasis Clipping Device DV Report | | 401/402, 403, 801/802 |
| DTX-0470 | MT00011518 | MT00011540 | Micro-Tech Sterile Repositionable Hemostasis Clipping Device DV Protocol | | 401/402, 403, 801/802 |
| DTX-0471 | MT00011541 | MT00011581 | Micro-Tech Sterile Repositionable Hemostasis Clipping Device DV Report | | 401/402, 403, 801/802 |
| DTX-0472 | MT00011582 | MT00011600 | Micro-Tech Safety Effectiveness Evaluation Report of Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 701/702, 801/802 |
| DTX-0473 | MT00011601 | MT00011625 | Micro-Tech Safety Effectiveness Evaluation Report of Sterile Repositionable Hemostasis Clipping Device | | 401/402, 403, 701/702, 801/802 |
| DTX-0474 | MT00011649 | MT00011649 | Excel Spreadsheet, Sales Statistics & Cost Details 2015 to 2019 | | 401/402, 403, 801/802 |
| DTX-0475 | MT00012459 | MT00012459 | Excel Spreadsheet, Quarterly Profit and Loss Stmt 2016 to 2019 | | 401/402, 403, 801/802 |
| DTX-0476 | MT00012460 | MT00012460 | Excel Spreadsheet, Rev & COGS Summary through 2019 year end | | 401/402, 403, 801/802 |
| DTX-0477 | MT00012461 | MT00012464 | Second Amendment to Distr bution and Supply Agreement between Henry Schein and Micro-Tech | | 401/402, 403, 801/802 |
| DTX-0478 | MT00012465 | MT00012466 | Draft First Amendment to Distribution and Supply Agreement between Henry Schein and Micro-Tech | | 401/402, 403, 801/802 |
| DTX-0479 | MT00012467 | MT00012473 | Quality Agreement between Micro-Tech and Henry Schein | | 401/402, 403, 801/802 |
| DTX-0480 | MT00012474 | MT00012474-1249 | Distribution and Supply Agreement between Henry Schein and Micro-Tech | | 401/402, 403, 801/802 |
| DTX-0481 | MT00012498 | MT00012498 | Excel Spreadsheet, Product Purchase Summary and Details through 2019 year end | | 401/402, 403, 801/802 |
| DTX-0482 | MT00012499 | MT00012499 | Excel Spreadsheet, Rev COGS Details through 2019 year end | | 401/402, 403, 801/802 |
| DTX-0483 | MT00012502 | MT00012506 | Regulatory Agreement between ConMed and Micro-Tech | | 401/402, 403, 801/802 |
| DTX-0484 | MT00012513 | MT00012528 | Supply Agreement between ConMed and Micro-Tech | | 401/402, 403, 801/802 |
| DTX-0485 | MT00013995 | MT00013995 | Product Purchase Summary & Details | | 401/402, 403, 801/802 |
| DTX-0486 | MT00013996 | MT00013996 | Quarterly P&L Statement Expanded | | 401/402, 403, 801/802 |
| DTX-0487 | MT00013997 | MT00013997 | Quarterly P&L Condensed | | 401/402, 403, 801/802 |
| DTX-0488 | MT00013998 | MT00013998 | Rev & COGS Summary | | 401/402, 403, 801/802 |
| DTX-0489 | MT00013999 | MT00013999 | Rev & COGS Detail | | 401/402, 403, 801/802 |
| DTX-0490 | MT00014000 | MT00014000 | Excel Spreadsheet, Sales Statistics & Cost Details  2015 to July 2020 | | 401/402, 403, 801/802 |
| DTX-0491 | MT00014001 | MT00014002 | Micro-Tech Lockado Production Information | | 401/402, 403, 801/802 |
| DTX-0492 | MT00014013 | MT00014014 | Micro-Tech Lockado Brochure | | 401/402, 403, 801/802 |
| DTX-0493 | MT00014015 | MT00014016 | Micro-Tech Lockado Marketing Material | | 401/402, 403, 801/802 |
| DTX-0494 | MT00014022 | MT00014041 | Micro-Tech Lockado Training Slides | | 401/402, 403, 801/802 |
| DTX-0495 | MT00014047 | MT00014058 | Micro-Tech Lockado IFU | | 401/402, 403, 801/802 |
| DTX-0496 | MT00014059 | MT00014133 | Certificate of Accuracy and Translation for MT00014000 | | 401/402, 403, 801/802 |
| DTX-0497 | MT00014134 | MT00014258 | Certificate of Accuracy and Translation for MT00011649 | | 401/402, 403, 801/802 |
| DTX-0498 | MT00018424 | MT00018424 | Video | | 401/402, 403, 801/802, ID |
| DTX-0499 | MT00018425 | MT00018425 | Product Purchase and Summary Details 2020 | | 401/402, 403, 801/802 |
| DTX-0500 | MT00018426 | MT00018426 | Rev & COGS Details 2015-2020 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0501 | MT00018427 | MT00018427 | Rev & COGS Summary 2015-2020 | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0502 | MT00018428 | MT00018428 | Quarterly P&L Condensed | | 401/402, 403, 801/802 |
| DTX-0503 | MT00018429 | MT00018429 | Quarterly P&L Detailed | | 401/402, 403, 801/802 |
| DTX-0504 | HS00000276 | HS00000302 | Micro-Tech – Presentation – Expanding the Scope of Endoscopy | Jackson Deposition Ex. 1 | 401/402, 403, 801/802 |
| DTX-0505 | HS00000008 | HS00000011 | Henry Schein – Micro-Tech Launch – May 18, 2016 | Jackson Deposition Ex. 2 | 401/402, 403, 801/802 |
| DTX-0506 | | | Plaintiffs Notice of 30(B)(6) Deposition of Henry Schein | Jackson Deposition Ex. 3 | 401/402, 403, 801/802 |
| DTX-0507 | HS00000004 | HS00000007 | Henry Schein Company and Product Information | Jackson Deposition Ex. 4 | 401/402, 403, 801/802 |
| DTX-0508 | HS00000046 | HS00000069 | Micro-Tech Endoscopy – Product Catalog | Jackson Deposition Ex. 5 | 401/402, 403, 801/802 |
| DTX-0509 | HS00000154 | HS00000257 | Henry Schein – Featured Product Guide (July-Sept. 2019) | Jackson Deposition Ex. 6 | 401/402, 403, 801/802 |
| DTX-0510 | HS00000264 | HS00000264 | GI Course & Module Summaries – ASC Focus FSC Curriculum | Jackson Deposition Ex. 7 | 401/402, 403, 801/802 |
| DTX-0511 | HSC00000271 | HSC00000275 | Micro-Tech Endoscopy – ASC Curriculum Script – Module 5 | Jackson Deposition Ex. 8 | 401/402, 403, 801/802 |
| DTX-0512 | HS000000039 | HS000000039 | Micro-Tech Sales Success Stories | Jackson Deposition Ex. 9 | 401/402, 403, 801/802 |
| DTX-0513 | HS00000393 | HS00000393 | Excel Spreadsheet, Customer & GP info 2016-YTD2020_REV | Jackson Deposition Ex. 10 | 401/402, 403, 801/802 |
| DTX-0514 | HS00000394 | HS00000394 | Excel Spreadsheet, Micro Tech By Items | Jackson Deposition Ex. 11 | 401/402, 403, 801/802 |
| DTX-0515 | HS00000395 | HS00000395 | Excel Spreadsheet,                 Purchases | Jackson Deposition Ex. 12 | 401/402, 403, 801/802 |
| DTX-0516 | HS00000396 | HS00000396 | Excel Spreadsheet, P&L Statement | Jackson Deposition Ex. 13 | 401/402, 403, 801/802 |
| DTX-0517 | HS00000001 | HS00000001 | Excel Spreadsheet, Sales Division Summary | | 401/402, 403, 801/802 |
| DTX-0518 | HS00000002 | HS00000003 | GI Brochure | | 401/402, 403, 801/802 |
| DTX-0519 | HS00000004 | HS00000004 | Micro-Tech Brochure | | 401/402, 403, 801/802 |
| DTX-0520 | HS00000040 | HS00000045 | GI Brochure | | 401/402, 403, 801/802 |
| DTX-0521 | HS00000098 | HS00000153 | ASC Spotlight | | 401/402, 403, 801/802 |
| DTX-0522 | HS00000377 | HS00000377 | Excel Spreadsheet, Micro-Tech Sure Clip - Item List (007) | | 401/402, 403, 801/802 |
| DTX-0523 | HS00000378 | HS00000378 | Excel Spreadsheet, Micro-Tech Sure Clip - Item List | | 401/402, 403, 801/802 |
| DTX-0524 | HS00000379 | HS00000379 | Henry Schein - Records Retention Schedule | | 401/402, 403, 801/802 |
| DTX-0525 | HS00000391 | HS00000391 | Excel Spreadsheet, ConMed Sales | | 401/402, 403, 801/802 |
| DTX-0526 | HS00000392 | HS00000392 | Excel Spreadsheet, SureClip Sales Detail | | 401/402, 403, 801/802 |
| DTX-0527 | HS00000397 | HS00000397 | Henry Schein Press Release | | 401/402, 403, 801/802 |
| DTX-0528 | HS00000398 | HS00000398 | Henry Schein Press Release | | 401/402, 403, 801/802 |
| DTX-0529 | HS00000399 | HS00000400 | Henry Schein Press Release | | 401/402, 403, 801/802 |
| DTX-0530 | HS00000401 | HS00000402 | Henry Schein Press Release | | 401/402, 403, 801/802 |
| DTX-0531 | HS00000403 | HS00000404 | Henry Schein Press Release | | 401/402, 403, 801/802 |
| DTX-0532 | HS00000405 | HS00000406 | Henry Schein Press Release | | 401/402, 403, 801/802 |
| DTX-0533 | HS00000407 | HS00000408 | Henry Schein Press Release | | 401/402, 403, 801/802 |
| DTX-0534 | | | Defendants Notice of 30(B)(6) Deposition to Boston Scientific Scimed | Murray Deposition Ex. 1 | 401/402, 403, 801/802, AA, Legal |
| DTX-0535 | | | Defendants Notice of 30(B)(6) Deposition to Boston Scientific Corp. | Murray Deposition Ex. 2 | 401/402, 403, 801/802, AA, Legal |
| DTX-0536 | | | Notice of Deposition of C. Murray | Murray Deposition Ex. 3 | 401/402, 403, 801/802, AA, Legal |
| DTX-0537 | BSC-MT-011645 | BSC-MT-011654 | MedVenture: Resolution 360 – Product Performance Qualification Protocol | Murray Deposition Ex. 7 | 401/402, 403, 801/802 |
| DTX-0538 | | | FDA: Class 2 Device Recall – Boston Scientific Clipping Device – Resolution Clip | Murray Deposition Ex. 8 | 401/402, 403, 801/802 |
| DTX-0539 | BSC-MT-0067211 | BSC-MT-0067242 | Presentation: FDA & Boston Scientific Endoscopy & Urology Meeting | Murray Deposition Ex. 9 | 401/402, 403, 801/802 |
| DTX-0540 | BSC-MT-110175 | BSC-MT-110292 | Boston Scientific - ResolutionTM Hemostasis Clipping Device - Traditional 510(k): K040148 | Murray Deposition Ex. 10 | 401/402, 403, 801/802, PMIL |
| DTX-0541 | BSC-MT-004624 | BSC-MT-004624 | Video Clip | Murray Deposition Ex. 11 | 401/402, 403, 801/802, ID |
| DTX-0542 | BSC-MT-139849 | BSC-MT-139856 | Boston Scientific: Micro-Tech Clip Deployment Analysis - Murray Affidavit | Murray Deposition Ex. 12 | 401/402, 403, 801/802 |
| DTX-0543 | | | Elements of Metallurgy and Engineering Alloys, Chapter 13: Fracture (2008) | Murray Deposition Ex. 13 | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0544 | | | ASM Handbook – Fatigue and Fracture, "Micromechanisms of Monotonic and Cyclic Crack Growth" | Murray Deposition Ex. 14 | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0545 | BSC-MT-139793 | BSC-MT-139848 | Exponent: Boston Scientific – Fracture Analysis of Deployed SureClip Hemostasis Clip | Murray Deposition Ex. 15 | 401/402, 403, 801/802 |
| DTX-0546 | BSC-MT-006106 | BSC-MT-006106 | Boston Scientific: E0630 – Clip end Effectors TDP | Murray Deposition Ex. 16 | 401/402, 403, 801/802 |
| DTX-0547 | BSC-MT-006228 | BSC-MT-006238 | Resolution 360 Clip – Competitive Analysis of Diversatek RePlay Hemostasis Clip | Murray Deposition Ex. 17 | 401/402, 403, 801/802 |
| DTX-0548 | BSC-MT-118046 | BSC-MT-118095 | Boston Scientific: Resolution Clip – Competitive Handling Tool | Murray Deposition Ex. 18 | 401/402, 403, 801/802 |
| DTX-0549 | BSC-MT-011021 | BSC-MT-011043 | Presentation: Rotatable Resolution Clip Technical Review | Murray Deposition Ex. 19 | 401/402, 403, 801/802 |
| DTX-0550 | BSC-MT-029392 | BSC-MT-029401 | Boston Scientific – Microvasive - Memo Re Hemoclip Prototype Testing | Murray Deposition Ex. 20 | 401/402, 403, 801/802 |
| DTX-0551 | | | Plaintiffs' Objections and Responses to Defendants Third Set of Interrogatories Nos. 10-13 | Murray Deposition Ex. 21 | 401/402, 403, 801/802 |
| DTX-0552 | BSC-MT-054392 | BSC-MT-054602 | Lab Notebook No. N0261 for M. Adams | Murray Deposition Ex. 22 | 401/402, 403, 701/702, 801/802 |
| DTX-0553 | BSC-MT-022451 | BSC-MT-022494 | BSC Invention Disclosure: 03-D0683 | Murray Deposition Ex. 23 | 401/402, 403, 801/802 |
| DTX-0554 | BSC-MT-022497 | BSC-MT-022517 | BSC Invention Disclosure: 04-D0297 | Murray Deposition Ex. 24 | 401/402, 403, 801/802 |
| DTX-0555 | BSC-MT-034073 | BSC-MT-034096 | Lab Notebook No. N0119 for Russ Durgin | Murray Deposition Ex. 25 | 401/402, 403, 701/702, 801/802 |
| DTX-0556 | | | Plaintiffs' Objections and Responses to Defendants First Set of Interrogatories Nos. 1-8 | Murray Deposition Ex. 26 | 401/402, 403, 801/802 |
| DTX-0557 | BSC-MT-109272 | BSC-MT-109292 | Boston Scientific: Advancing Science for Life – Micro-Tech HemoClips – Competitive Overview | Murray Deposition Ex. 27 | 401/402, 403, 801/802 |
| DTX-0558 | BSC-MT-003786 | BSC-MT-003788 | Res 360 Key Account Research Interviews – April-May 2019 | Murray Deposition Ex. 28 | 401/402, 403, 801/802 |
| DTX-0559 | BSC-MT-075619 | BSC-MT-075619 | Answers for Hemo Clip Forecasting | Murray Deposition Ex. 29 | 401/402, 403, 801/802 |
| DTX-0560 | BSC-MT-037251 | BSC-MT-037251 | Excel Spreadsheet, Clinical requirement & positioning | Murray Deposition Ex. 30 | 401/402, 403, 801/802 |
| DTX-0561 | BSC-MT-075981 | BSC-MT-075981 | Excel Spreadsheet, Hemo Clip Feedback US Customers | Murray Deposition Ex. 31 | 401/402, 403, 801/802 |
| DTX-0562 | BSC-MT-037129 | | Boston Scientific – MicroVasive – Product Specifications for the HCD TTS Clip | Murray Deposition Ex. 32 | 401/402, 403, 801/802 |
| DTX-0563 | BSC-MT-020296 | BSC-MT-020353 | Boston Scientific – Preclinical Study Report – Resolution II | Murray Deposition Ex. 33 | 401/402, 403, 801/802 |
| DTX-0564 | BSC-MT-108862 | BSC-MT-108902 | Boston Scientific – Preclinical Protocol – A Non-GLP Chronic Study to Access Retention of Resolution Clips in Canine | Murray Deposition Ex. 34 | 401/402, 403, 801/802 |
| DTX-0565 | BSC-MT-003799 | BSC-MT-003845 | Boston Scientific: Resolution 360 – NPCE #1 – July 2019 | Moscato Deposition Ex. 34 | 401/402, 403, 801/802 |
| DTX-0566 | BSC-MT-003146 | BSC-MT-003156 | Article: Wang et al., "Choosing the right through the scope clip: a rigorous comparison of rotatability, whip, open/close precision and closure strength" | Moscato Deposition Ex. 35 | 401/402, 403, 801/802 |
| DTX-0567 | BSC-MT-093269 | BSC-MT-093323 | Boston Scientific – Presentation – Resolution 360 Clip – Commercialization Plan | Moscato Deposition Ex. 36 | 401/402, 403, 801/802 |
| DTX-0568 | BSC-MT-129640 | BSC-MT-129675 | Presentation: ESC Hemoclip Brand Perception Study – January 2018 | Moscato Deposition Ex. 37 | 401/402, 403, 801/802 |
| DTX-0569 | BSC-MT-129478 | BSC-MT-129520 | Presentation: Clips Market Research – January 2020 | Moscato Deposition Ex. 38 | 401/402, 403, 801/802 |
| DTX-0570 | BSC-MT-139987 | BSC-MT-140054 | Purchasing Agreement between HealthTrust and Boston Scientific Corp. | Moscato Deposition Ex. 39 | 401/402, 403, 801/802 |
| DTX-0571 | BSC-MT-116614 | BSC-MT-116626 | Distribution Agreement between BSSI and BSC | Moscato Deposition Ex. 40 | 401/402, 403, 801/802 |
| DTX-0572 | BSC-MT-129682 | BSC-MT-129739 | IPSOS Business Consulting – Final Report – Micro-Tech Competitive Analysis | Moscato Deposition Ex. 41 | 401/402, 403, 801/802 |
| DTX-0573 | BSC-MT-003789 | BSC-MT-003789 | Boston Scientific – Res 360 Customer research | Moscato Deposition Ex. 42 | 401/402, 403, 801/802 |
| DTX-0574 | BSC-MT-003720 | BSC-MT-003720 | Document re: Pricing/Sales Program | Moscato Deposition Ex. 43 | 401/402, 403, 801/802 |
| DTX-0575 | BSC-MT-003743 | BSC-MT-003744 | Document re Lower Costs/Pricing Programs | Moscato Deposition Ex. 44 | 401/402, 403, 801/802 |
| DTX-0576 | BSC-MT-132385 | BSC-MT-132397 | Boston Scientific – Presentation – Target Margins Hemo Draft | Moscato Deposition Ex. 45 | 401/402, 403, 801/802 |
| DTX-0577 | BSC-MT-003721 | BSC-MT-003728 | Boston Scientific – Micro-Tech Clip Battling | Moscato Deposition Ex. 46 | 401/402, 403, 801/802 |
| DTX-0578 | BSC-MT-101455 | BSC-MT-101456 | Email Re Clip Pricing Strategy | Moscato Deposition Ex. 47 | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0579 | BSC-MT-003021 | BSC-MT-003038 | Boston Scientific – Presentation- Competitive Comparison | Moscato Deposition Ex. 48 | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0580 | BSC-MT-004690 | BSC-MT-004706 | Boston Scientific – Going on the Offensive 3.2 – Micro-Tech Update and Strategy | Moscato Deposition Ex. 49 | 401/402, 403, 801/802 |
| DTX-0581 | BSC-MT-003066 | BSC-MT-003111 | Boston Scientific – Presentation – Protecting Your Business | Moscato Deposition Ex. 50 | 401/402, 403, 801/802 |
| DTX-0582 | BSC-MT-003782 | BSC-MT-003783 | Project Freight Train – Kick Off – Meeting Minutes | Moscato Deposition Ex. 51 | 401/402, 403, 801/802 |
| DTX-0583 | BSC-MT-003752 | BSC-MT-003764 | Boston Scientific – Presentation - Project Freight Train – Kick Off | Moscato Deposition Ex. 52 | 401/402, 403, 801/802 |
| DTX-0584 | BSC-MT-003784 | BSC-MT-003785 | Document re Project Freight Train | Moscato Deposition Ex. 53 | 401/402, 403, 801/802 |
| DTX-0585 | BSC-MT-003766 | BSC-MT-003780 | Boston Scientific – Presentation – Project Freight Train | Moscato Deposition Ex. 54 | 401/402, 403, 801/802 |
| DTX-0586 | BSC-MT-003745 | BSC-MT-003751 | Boston Scientific – Presentation – Operation Steel Curtain | Moscato Deposition Ex. 55 | 401/402, 403, 801/802 |
| DTX-0587 | BSC-MT-117026 | BSC-MT-117037 | Hemo Clip Percent Market Share | Moscato Deposition Ex. 56 | 401/402, 403, 801/802 |
| DTX-0588 | BSC-MT-116918 | BSC-MT-116929 | 1Q 2008 Hemo Clip Percent Market Share | Moscato Deposition Ex. 57 | 401/402, 403, 801/802 |
| DTX-0589 | BSC-MT-117014 | BSC-MT-117025 | 4Q 2008 Hemo Clip Percent Market Share | Moscato Deposition Ex. 58 | 401/402, 403, 801/802 |
| DTX-0590 | BSC-MT-117002 | BSC-MT-117013 | 2Q 2008 Hemo Clip Percent Market Share | Moscato Deposition Ex. 59 | 401/402, 403, 801/802 |
| DTX-0591 | BSC-MT-117038 | BSC-MT-117049 | 4Q 2008 Hemo Clip Percent Market Share | Moscato Deposition Ex. 60 | 401/402, 403, 801/802 |
| DTX-0592 | BSC-MT-116822 | BSC-MT-116833 | 3Q 2013 Hemo Clip Percent Market Share | Moscato Deposition Ex. 61 | 401/402, 403, 801/802 |
| DTX-0593 | BSC-MT-00116894 | BSC-MT-00116905 | 2Q 2014 Hemo Clip Percent Market Share | Moscato Deposition Ex. 62 | 401/402, 403, 801/802 |
| DTX-0594 | BSC-MT-116882 | BSC-MT-116893 | 4Q 2014 Hemo Clip Percent Market Share | Moscato Deposition Ex. 63 | 401/402, 403, 801/802 |
| DTX-0595 | BSC-MT-116906 | BSC-MT-116917 | 1Q 2015 Hemo Clip Percent Market Share | Moscato Deposition Ex. 64 | 401/402, 403, 801/802 |
| DTX-0596 | BSC-MT-116930 | BSC-MT-116941 | 2Q 2015 Hemo Clip Percent Market Share | Moscato Deposition Ex. 65 | 401/402, 403, 801/802 |
| DTX-0597 | BSC-MT-132652 | BSC-MT-132704 | Boston Scientific – Clipping VOC - Quantitative Findings | Moscato Deposition Ex. 66 | 401/402, 403, 801/802 |
| DTX-0598 | BSC-MT-002930 | BSC-MT-002939 | Boston Scientific – Presentation - Cook Instinct – Clip Competitive Response Plan – April 2012 | Moscato Deposition Ex. 67 | 401/402, 403, 801/802 |
| DTX-0599 | BSC-MT-002834 | BSC-MT-002868 | Resolution Clip Competitive Response | Moscato Deposition Ex. 68 | 401/402, 403, 801/802 |
| DTX-0600 | BSC-MT-117983 | BSC-MT-118045 | Presentation - Resolution II Clip – Next Generation Mechanical Clip Device – Global Commercialization Plan | Moscato Deposition Ex. 69 | 401/402, 403, 801/802 |
| DTX-0601 | BSC-MT-111909 | BSC-MT-111937 | Boston Scientific – Presentation – E0455 – Rotatable Res Clip Plan Phase Exit | Moscato Deposition Ex. 70 | 401/402, 403, 801/802 |
| DTX-0602 | BSC-MT-092350 | BSC-MT-92368 | Boston Scientific – Presentation - Hemostasis | Moscato Deposition Ex. 71 | 401/402, 403, 801/802 |
| DTX-0603 | BSC-MT-092708 | BSC-MT-092744 | Boston Scientific – Presentation - Hemostasis | Moscato Deposition Ex. 72 | 401/402, 403, 801/802 |
| DTX-0604 | BSC-MT-140059 | BSC-MT-140059 | Excel Spreadsheet, Clips Insource Project Cost | Schulz Deposition Ex. 73 | 401/402, 403, 801/802 |
| DTX-0605 | BSC-MT-140062 | BSC-MT-140062 | Excel Spreadsheet, Sales Data for 2004 to 2020 | Schulz Deposition Ex. 74 | 401/402, 403, 801/802 |
| DTX-0606 | BSC-MT-140063 | BSC-MT-140063 | Excel Spreadsheet, US  Global PL 2011 to 2020 (8.11.2020) | Schulz Deposition Ex. 75 | 401/402, 403, 801/802 |
| DTX-0607 | BSC-MT-006045 | BSC-MT-006045 | Excel Spreadsheet, US  Global PL 2011 to 2018 (9.25.2019) | Schulz Deposition Ex. 76 | 401/402, 403, 801/802 |
| DTX-0608 | BSC-MT-140064 | BSC-MT-140064 | Excel Spreadsheet, Scrap Res Clips 2012-2020Vf | Schulz Deposition Ex. 77 | 401/402, 403, 801/802 |
| DTX-0609 | BSC-MT-140060 | BSC-MT-140060 | Excel Spreadsheet, R&D Costs | Schulz Deposition Ex. 78 | 401/402, 403, 801/802 |
| DTX-0610 | BSC-MT-140058 | BSC-MT-140058 | Excel Spreadsheet, BSC Sales in Margin, Market Share | Schulz Deposition Ex. 79 | 401/402, 403, 801/802 |
| DTX-0611 | BSC-MT-091976 | BSC-MT-091976 | Excel Spreadsheet, Endoscopy Master Price List 2016 10-16 | Schulz Deposition Ex. 80 | 401/402, 403, 801/802 |
| DTX-0612 | BSC-MT-006045 | BSC-MT-006045 | Excel Spreadsheet, US  Global PL 2011 to 2018 (9.25.2019) | Schulz Deposition Ex. 81 | 401/402, 403, 801/802 |
| DTX-0613 | BSC-MT-069558 | BSC-MT-069561 | 510(k) Summary – K040148 | Hennessey Deposition Ex. 83 | 401/402, 403, 801/802 |
| DTX-0614 | BSC-MT-110175 | BSC-MT-110293 | Boston Scientific Corp. Submission to FDA: Resolution II Hemostasis Clipping Device | Hennessey Deposition Ex. 84 | 401/402, 403, 801/802 |
| DTX-0615 | BSC-MT-026996 | BSC-MT-027007 | Hazard Analysis – Resolution I Hemostatic Clipping Device | Hennessey Deposition Ex. 85 | 401/402, 403, 801/802 |
| DTX-0616 | | | FDA: Class 2 Device Recall Boston Scientific Clipping Device, Resolution Clip | Hennessey Deposition Ex. 86 | 401/402, 403, 801/802 |
| DTX-0617 | | | Section 6 – 510(k) Summary – K102764 | Hennessey Deposition Ex. 87 | 401/402, 403, 801/802 |
| DTX-0618 | BSC-MT-131280 | BSC-MT-131340 | Resolution II Clip Clinical Risk/Benefit Analysis | Hennessey Deposition Ex. 88 | 401/402, 403, 801/802 |
| DTX-0619 | BSC-MT-055106 | BSC-MT-055201 | Resolution II Clip Device – Clinical Experience Summary | Hennessey Deposition Ex. 89 | 401/402, 403, 801/802 |
| DTX-0620 | | | FDA: Class 2 Device Recall Resolution II Clip | Hennessey Deposition Ex. 90 | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0621 | | | Federal Institute for Drugs and Medical Devices – Recall for the Resolution II Clip, Boston Scientific | Hennessey Deposition Ex. 91 | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0622 | | | Defective Devices, Destroyed Lives | Hennessey Deposition Ex. 92 | 401/402, 403, 801/802 |
| DTX-0623 | BSC-MT-006636 | BSC-MT-006711 | Boston Scientific – Presentation - Rotatable Res Clip Project E0455 | Hennessey Deposition Ex. 93 | 401/402, 403, 801/802 |
| DTX-0624 | BSC-MT-032812 | BSC-MT-032817 | Letter from FDA | Hennessey Deposition Ex. 94 | 401/402, 403, 801/802 |
| DTX-0625 | BSC-MT-064003 | BSC-MT-064067 | Boston Scientific – Resolution Clip Commercial Strategy | Hennessey Deposition Ex. 95 | 401/402, 403, 801/802 |
| DTX-0626 | BSC-MT-136831 | BSC-MT-136912 | Boston Scientific – Presentation – Resolution 360 Clip – Human Use – Commercial Release Design Review | Hennessey Deposition Ex. 96 | 401/402, 403, 801/802 |
| DTX-0627 | BSC-MT-109454 | BSC-MT-109498 | Boston Scientific – Presentation – Resolution 360 Commercialization Review | Hennessey Deposition Ex. 97 | 401/402, 403, 801/802 |
| DTX-0628 | BSC-MT-138945 | BSC-MT-139792 | Appendix A. Acceptance Checklist for Traditional 510(k)s | Hennessey Deposition Ex. 98 | 401/402, 403, 801/802 |
| DTX-0629 | BSC-MT-138894 | BSC-MT-138901 | Email Re K193424 | Hennessey Deposition Ex. 99 | 401/402, 403, 801/802 |
| DTX-0630 | BSC-MT- | BSC-MT-138943 | Response to K193242 10 Day Hold Letter Call – Resolution 360 Ultra Clip | Hennessey Deposition Ex. 100 | 401/402, 403, 801/802, ID |
| DTX-0631 | | | Notice of Deposition of D. Bogartz | Bogartz Deposition Ex. 111 | 401/402, 403, 801/802 |
| DTX-0632 | BSC-MT-140183 | BSC-MT-140195 | Elevate Program Agreement – January 2020 | Bogartz Deposition Ex. 112 | 401/402, 403, 801/802 |
| DTX-0633 | BSC-MT-140204 | BSC-MT-140208 | Sample Flex Program Agreement | Bogartz Deposition Ex. 113 | 401/402, 403, 801/802 |
| DTX-0634 | BSC-MT-140196 | BSC-MT-140203 | Sample ASCentials Program Participation Agreement – 2015 Pricing | Bogartz Deposition Ex. 114 | 401/402, 403, 801/802 |
| DTX-0635 | BSC-MT-140209 | BSC-MT-140212 | Sample ASC Sole Flex Program Agreement | Bogartz Deposition Ex. 115 | 401/402, 403, 801/802 |
| DTX-0636 | BSC-MT-140143 | BSC-MT-140144 | Boston Scientific – Discount Pricing Agreement | Bogartz Deposition Ex. 116 | 401/402, 403, 801/802 |
| DTX-0637 | BSC-MT-140145 | BSC-MT-140150 | Boston Scientific - Sample Confidential Letter Agreement Re Earned Pricing Program | Bogartz Deposition Ex. 117 | 401/402, 403, 801/802 |
| DTX-0638 | BSC-MT-140151 | BSC-MT-140155 | Sample Inventory Solutions Program Agreement | Bogartz Deposition Ex. 118 | 401/402, 403, 801/802 |
| DTX-0639 | BSC-MT-140156 | BSC-MT-140157 | Boston Scientific – Presentation – Demo and Sample Program | Bogartz Deposition Ex. 119 | 401/402, 403, 801/802 |
| DTX-0640 | BSC-MT-140158 | BSC-MT-140163 | Sample Account Volume Discount/Rebate Growth Program | Bogartz Deposition Ex. 120 | 401/402, 403, 801/802 |
| DTX-0641 | BSC-MT-140164 | BSC-MT-140169 | Sample Account Volume Discount/Rebate Growth Program | Bogartz Deposition Ex. 121 | 401/402, 403, 801/802 |
| DTX-0642 | BSC-MT-080159 | BSC-MT-80161 | Instinct Conference Call Re Cook Clip | Bogartz Deposition Ex. 122 | 401/402, 403, 801/802 |
| DTX-0643 | BSC-MT-078253 | BSC-MT-78255 | Email re Olympic Task Force Update | Bogartz Deposition Ex. 123 | 401/402, 403, 801/802 |
| DTX-0644 | BSC-MT-043935 | BSC-MT-043978 | Hemostasis Clipping Device – Integrated Business Plan – Development Phase Review | Bogartz Deposition Ex. 124 | 401/402, 403, 801/802 |
| DTX-0645 | BSC-MT-064003 | BSC-MT-064067 | Boston Scientific – Presentation - Resolution Clip Commercial Strategy – September 23, 2015 | Bogartz Deposition Ex. 125 | 401/402, 403, 801/802 |
| DTX-0646 | BSC-MT-101455 | BSC-MT-101456 | Email re Clip Pricing Strategy | Bogartz Deposition Ex. 126 | 401/402, 403, 801/802 |
| DTX-0647 | | | Plaintiff BSC and BSSI Supplemental Initial Disclosures | Andersson Deposition Ex. 127 | 401/402, 403, 801/802 |
| DTX-0648 | BSC-MT-078796 | BSC-MT-078797 | Email Re Product Name for Next Generation Rotatable Resolution Clip | Andersson Deposition Ex. 128 | 401/402, 403, 801/802 |
| DTX-0649 | BSC-MT-101994 | BSC-MT-102050 | Presentation: Boston Scientific – Financial Model Overview | Andersson Deposition Ex. 129 | 401/402, 403, 801/802 |
| DTX-0650 | BSC-MT-088302 | BSC-MT-088303 | Email Re Mucin Labs Follow-Up | Andersson Deposition Ex. 130 | 401/402, 403, 801/802 |
| DTX-0651 | | | Defendants Notice of Deposition for S. Radestorf | Radestorf Deposition Ex. 1 | 401/402, 403, 801/802 |
| DTX-0652 | BSC-MT-003720 | BSC-MT-003720 | Document re Pricing/Sales | Radestorf Deposition Ex. 2 | 401/402, 403, 801/802 |
| DTX-0653 | BSC-MT-003743 | BSC-MT-003744 | Document re Lower Costs/Pricing Program | Radestorf Deposition Ex. 3 | 401/402, 403, 801/802 |
| DTX-0654 | BSC-MT-003729 | BSC-MT-003739 | Presentation: Boston Scientific - Micro-Tech Clip Battling | Radestorf Deposition Ex. 4 | 401/402, 403, 801/802 |
| DTX-0655 | BSC-MT-003066 | BSC-MT-003111 | Boston Scientific – Presentation – Protecting Your Business | Radestorf Deposition Ex. 5 | 401/402, 403, 801/802 |
| DTX-0656 | BSC-MT-003766 | BSC-MT-003780 | Boston Scientific – Presentation – Project Freight Train | Radestorf Deposition Ex. 6 | 401/402, 403, 801/802 |
| DTX-0657 | BSC-MT-003786-3788 | BSC-MT-003788 | Res 360 Key Account Research Interviews – April-May 2019 | Radestorf Deposition Ex. 7 | 401/402, 403, 801/802 |
| DTX-0658 | BSC-MT-018811 | BSC-MT-018811 | Excel Spreadsheet, Cook Clip At Risk Accounts - March 2012 | Radestorf Deposition Ex. 8 | 401/402, 403, 801/802 |
| DTX-0659 | BSC-MT-118273 | BSC-MT-118311 | Boston Scientific – Presentation - Hemostasis | Radestorf Deposition Ex. 9 | 401/402, 403, 801/802 |
| DTX-0660 | | | Expert Report of Michael K. Milani dated December 4, 2020 | Milani Deposition Ex. 1 | 701/702, 801/802, 901/902 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0661 | | | Errata to Expert Report of Michael K. Milani dated December 4, 2020 | Milani Deposition Ex. 2 | 401/402, 403, 701/702, 801/802, 901/902 |
|---|---|---|---|---|---|
| DTX-0662 | BSC-MT-129640 | BSC-MT-129675 | Presentation: ESC Hemoclip – Brand Perception Study – January 2018 | Milani Deposition Ex. 3 | 401/402, 403, 801/802 |
| DTX-0663 | | | Expert Report of Michael K. Milani dated December 4, 2020 | | 701/702, 801/802, 901/902 |
| DTX-0664 | | | Curriculum Vitae for M. Milani | | |
| DTX-0665 | | | List of Materials Considered for Milani Expert Report | | |
| DTX-0666 | | | COMPARISON OF COMPETITOR PRICING - 2016-2019 ASP PRICING MATRIX | | 401/402, 403, 701/702, 801/802 |
| DTX-0667 | | | COMPETITOR PRICING ANALYSIS - 2016-2019 COMPARISON OF ASP | | 401/402, 403, 701/702, 801/802 |
| DTX-0668 | | | APPORTIONMENT METRICS APPLIED TO DEFENDANTS' WEIGHTED AVERAGE INCREMENTAL PROFIT | | 401/402, 403, 701/702, 801/802 |
| DTX-0669 | | | APPORTIONMENT METRICS BASED ON HCD BUSINESS PLAN | | 401/402, 403, 701/702, 801/802 |
| DTX-0670 | | | SUMMARY OF J-HOOK & BUCKLE ACCUSED UNITS DURING LICENSE PERIOD - NOVEMBER 26, 2018 - DECEMBER 31, 2019 | | 401/402, 403, 701/702, 801/802 |
| DTX-0671 | | | SUMMARY OF BUCKLE ACCUSED UNITS AND ROYALTY CALCULATION DURING LICENSE PERIOD - NOVEMBER 26, 2018 - DECEMBER 31, 2019 [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0672 | | | SUMMARY OF J-HOOK ACCUSED UNITS AND ROYALTY CALCULATION DURING LICENSE PERIOD - NOVEMBER 26, 2018 - DECEMBER 31, 2019 [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0673 | | | PERCENTAGE OF ACCUSED WIDE-JAW UNITS DURING LICENSE PERIOD - NOVEMBER 26, 2018 - DECEMBER 31, 2019 [1] [2] | | 401/402, 403, 701/702, 801/802 |
| DTX-0674 | | | SUMMARY OF ACCUSED PRODUCT UNITS DURING LICENSE PERIOD - NOVEMBER 26, 2018 - DECEMBER 31, 2019 [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0675 | | | SUMMARY OF INCREMENTAL PROFITABILITY BY DISTRIBUTION CHANNEL | | 401/402, 403, 701/702, 801/802 |
| DTX-0676 | | | SUMMARY OF INCREMENTAL PROFITABILITY BY SALES ENTITY 2016-2019 | | 401/402, 403, 701/702, 801/802 |
| DTX-0677 | | | CALCULATION OF HENRY SCHEIN'S INCREMENTAL PROFIT: PER UNIT | | 401/402, 403, 701/702, 801/802 |
| DTX-0678 | | | CALCULATION OF HENRY SCHEIN'S INCREMENTAL PROFIT [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0679 | | | CALCULATION OF HENRY SCHEIN'S INCREMENTAL PROFIT: SUMMARY OF UNITS SOLD BY HENRY SCHEIN [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0680 | | | CALCULATION OF HENRY SCHEIN'S INCREMENTAL PROFIT: ADJUSTMENT OF UNITS SOLD BY HENRY SCHEIN [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0681 | | | CALCULATION OF HENRY SCHEIN'S INCREMENTAL PROFIT: INCREMENTAL EXPENSE AS A PERCENTAGE OF REVENUE [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0682 | | | CALCULATION OF MT USA INCREMENTAL PROFIT (ALL ACCUSED CLIP SALES): PER UNIT | | 401/402, 403, 701/702, 801/802 |
| DTX-0683 | | | CALCULATION OF MT USA INCREMENTAL PROFIT (ALL ACCUSED CLIP SALES) | | 401/402, 403, 701/702, 801/802 |
| DTX-0684 | | | MT USA CLIP SALES & AVERAGE SELLING PRICES [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0685 | | | ALL MT USA ACCUSED PRODUCT SALES BY DISTRIBUTION CHANNEL [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0686 | | | ALL MICRO-TECH USA ACCUSED PRODUCT SALES BY JAW SIZE CATEGORY [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0687 | | | ACCUSED AND PRACTICING PRODUCT UNIT SUMMARY | | 401/402, 403, 701/702, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0688 | | | CALCULATION OF MT USA DURACLIP INCREMENTAL PROFIT (SALES TO CONMED): PER UNIT | | 401/402, 403, 701/702, 801/802 |
|---|---|---|---|---|---|
| DTX-0689 | | | CALCULATION OF MT USA DURACLIP INCREMENTAL PROFIT (SALES TO CONMED) | | 401/402, 403, 701/702, 801/802 |
| DTX-0690 | | | CALCULATION OF MT USA DURACLIP INCREMENTAL PROFIT (SALES TO CONMED): NET REVENUE | | 401/402, 403, 701/702, 801/802 |
| DTX-0691 | | | MT USA DURACLIP SALES BY JAW SIZE CATEGORY - SALES TO CONMED [1] [2] | | 401/402, 403, 701/702, 801/802 |
| DTX-0692 | | | MT USA DURACLIP SALES BY UPN - SALES TO CONMED [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0693 | | | CALCULATION OF MT USA SURECLIP INCREMENTAL PROFIT (SALES TO HENRY SCHEIN): PER UNIT | | 401/402, 403, 701/702, 801/802 |
| DTX-0694 | | | CALCULATION OF MT USA SURECLIP INCREMENTAL PROFIT (SALES TO HENRY SCHEIN) | | 401/402, 403, 701/702, 801/802 |
| DTX-0695 | | | CALCULATION OF MT USA SURECLIP INCREMENTAL PROFIT (SALES TO HENRY SCHEIN): NET REVENUE | | 401/402, 403, 701/702, 801/802 |
| DTX-0696 | | | MT USA SURECLIP SALES BY JAW SIZE CATEGORY - SALES TO HENRY SCHEIN [1] [2] | | 401/402, 403, 701/702, 801/802 |
| DTX-0697 | | | MT USA SURECLIP SALES BY UPN - SALES TO HENRY SCHEIN [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0698 | | | CALCULATION OF MT USA SURECLIP INCREMENTAL PROFIT (DIRECT SALES): PER UNIT | | 401/402, 403, 701/702, 801/802 |
| DTX-0699 | | | CALCULATION OF MT USA SURECLIP INCREMENTAL PROFIT (DIRECT SALES) | | 401/402, 403, 701/702, 801/802 |
| DTX-0700 | | | CALCULATION OF MT USA SURECLIP INCREMENTAL PROFIT (DIRECT SALES): NET REVENUE | | 401/402, 403, 701/702, 801/802 |
| DTX-0701 | | | MT USA SURECLIP SALES BY JAW SIZE CATEGORY - DIRECT SALES [1] [2] | | 401/402, 403, 701/702, 801/802 |
| DTX-0702 | | | MT USA SURECLIP SALES BY UPN - DIRECT SALES [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0703 | | | CALCULATION OF MT USA INCREMENTAL COST: ADDITIONAL COST OF GOODS SOLD [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0704 | | | CALCULATION OF MT USA INCREMENTAL COST: DISCOUNT PERCENTAGE [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0705 | | | CALCULATION OF MT USA INCREMENTAL OPERATING EXPENSES [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0706 | | | CALCULATION OF MT USA INCREMENTAL COST: OPERATING EXPENSES PRIOR TO INCREMENTAL ADJUSTMENT [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0707 | | | ANALYSIS SUPPORTING MT USA INCREMENTAL COST CALCULATION - SUMMARY [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0708 | | | ANALYSIS SUPPORTING MT USA INCREMENTAL COST CALCULATION - DETAILED [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0709 | | | MICRO-TECH USA COMPANYWIDE INCOME STATEMENT [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0710 | | | ACCUSED PRODUCT JAW SIZES | | 401/402, 403, 701/702, 801/802 |
| DTX-0711 | | | SUMMARY OF MICRO-TECH SALES BY CUSTOMER IN IDENTIFICATION OF MARKET SEGMENT[1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0712 | | | MT NANJING CALCULATION OF GROSS PROFIT FROM MT ACCUSED PRODUCTS [1] | | 401/402, 403, 701/702, 801/802 |
| DTX-0713 | | | MT NANJING CONVERSION OF COST OF GOODS SOLD FROM RMB TO USD | | 401/402, 403, 701/702, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | |
|---|---|---|---|---|
| DTX-0714 | | | MT NANJING CALCULATION OF YEARLY AVERAGE RMB TO USD CONVERSION RATE | 401/402, 403, 701/702, 801/802 |
| DTX-0715 | | | BOSTON SCIENTIFIC PRACTICING PRODUCT SALES JANUARY 1, 2004 - AUGUST 31, 2020 [1] | 401/402, 403, 701/702, 801/802 |
| DTX-0716 | | | BOSTON SCIENTIFIC ENDOSCOPY DIVISION OPERATING PROFIT - U.S. [1] | 401/402, 403, 701/702, 801/802 |
| DTX-0717 | | | BOSTON SCIENTIFIC ENDOSCOPY DIVISION OPERATING PROFIT - WORLDWIDE [1] | 401/402, 403, 701/702, 801/802 |
| DTX-0718 | | | BOSTON SCIENTIFIC COMPANY-WIDE INCOME STATEMENT | 401/402, 403, 701/702, 801/802 |
| DTX-0719 | | | 2018 U.S. MARKET REVENUE FOR HEMOSTASIS DEVICES [1] | 401/402, 403, 701/702, 801/802 |
| DTX-0720 | | | BSC EXPECTED MARKET SHARE (NO LAUNCH OF RESOLUTION 360) [1] | 401/402, 403, 701/702, 801/802 |
| DTX-0721 | | | THIRD PARTY MARKET SHARE DATA - QUARTERLY AS PRESENTED [1] | 401/402, 403, 701/702, 801/802 |
| DTX-0722 | | | THIRD PARTY MARKET SHARE DATA - YEARLY AS PRESENTED [1] | 401/402, 403, 701/702, 801/802 |
| DTX-0723 | | | SUMMARY OF THE PATENTS ASSERTED AGAINST MICRO-TECH ("PATENTS-IN-SUIT") | 401/402, 403, 701/702, 801/802 |
| DTX-0724 | | | SUMMARY OF THE PATENTS ASSERTED AGAINST MICRO-TECH ("PATENTS-IN-SUIT") | 401/402, 403, 701/702, 801/802 |
| DTX-0725 | | | REBUTTAL TO BONE: MT USA DIRECT INCREMENTAL PROFIT ATTRIBUTABLE TO CLAIMED FEATURES | 401/402, 403, 701/702, 801/802 |
| DTX-0726 | | | REBUTTAL TO BONE: CORRECTED PROFIT ATTRIBUTABLE TO OPEN/CLOSE | 401/402, 403, 701/702, 801/802 |
| DTX-0727 | | | REBUTTAL TO BONE: CORRECTED OPEN/CLOSE TO WIDE-JAW RATIOS | 401/402, 403, 701/702, 801/802 |
| DTX-0728 | | | NON-INFRINGING ALTERNATIVE HEMOCLIPS APPROVED FOR SALE IN THE U.S | 401/402, 403, 701/702, 801/802 |
| DTX-0729 | BSC-MT-000557 | BSC-MT-000758 | File History for U.S. Patent No. 8,803,668 | 401/402, 403 |
| DTX-0730 | BSC-MT-001284 | BSC-MT-001590 | File History for U.S. Patent No. 9,370,371 | 401/402, 403 |
| DTX-0731 | BSC-MT-002832 | BSC-MT-002833 | Email Re Resolution Clips Exceeds 1 Million Units Sold in 2013 | 401/402, 403, 801/802 |
| DTX-0732 | BSC-MT-002869 | BSC-MT-002898 | Presentation: Boston Scientific - Winning Together - European Sales Meeting | 401/402, 403, 801/802 |
| DTX-0733 | BSC-MT-002899 | BSC-MT-002926 | Presentation: Boston-Scientific - Growing Your Resolution[TM] Clip Business | 401/402, 403, 801/802 |
| DTX-0734 | BSC-MT-002927 | BSC-MT-002929 | Magnetic Resonance (MR) Conventional FAQs for Resolution[TM] Clip | 401/402, 403, 801/802 |
| DTX-0735 | BSC-MT-002940 | BSC-MT-002942 | Magnetic Resonance (MR) Conventional FAQs for ResolutionTM Clip | 401/402, 403, 801/802 |
| DTX-0736 | BSC-MT-002943 | BSC-MT-002957 | Presentation: Boston Scientific - Resolution[TM] Clip Risk Share Program | 401/402, 403, 801/802 |
| DTX-0737 | BSC-MT-002958 | BSC-MT-002974 | Presentation - Boston Scientific - Competitive Comparison | 401/402, 403, 801/802 |
| DTX-0738 | BSC-MT-002975 | BSC-MT-003020 | Presentation: Boston Scientific - Protecting Your Business | 401/402, 403, 801/802 |
| DTX-0739 | BSC-MT-003039 | BSC-MT-003055 | Presentation - Boston Scientific - Competitive Comparison | 401/402, 403, 801/802 |
| DTX-0740 | BSC-MT-003056 | BSC-MT-003065 | Presentation - Boston Scientific- Next Level | 401/402, 403, 801/802 |
| DTX-0741 | BSC-MT-003112 | BSC-MT-003132 | Boston Scientific - Product Information Page | 401/402, 403, 801/802 |
| DTX-0742 | BSC-MT-003133 | BSC-MT-003133 | Boston Scientific Web Page | 401/402, 403, 801/802 |
| DTX-0743 | BSC-MT-003134 | BSC-MT-003138 | Boston Scientific- Product Information Page | 401/402, 403, 801/802 |
| DTX-0744 | BSC-MT-003139 | BSC-MT-003142 | DDW 2019 Social Media Posts | 401/402, 403, 801/802 |
| DTX-0745 | BSC-MT-003143 | BSC-MT-003143 | Boston Scientific Web Page | 401/402, 403, 801/802 |
| DTX-0746 | BSC-MT-003144 | BSC-MT-003144 | Video | 401/402, 403, 801/802, ID |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0747 | BSC-MT-003145 | BSC-MT-003145 | Video | | 401/402, 403, 801/802, ID |
|---|---|---|---|---|---|
| DTX-0748 | BSC-MT-003157 | BSC-MT-003157 | Video | | 401/402, 403, 801/802, ID |
| DTX-0749 | BSC-MT-003158 | BSC-MT-003159 | GI March 2019 Social Posts @bsc_endoscopy | | 401/402, 403, 801/802 |
| DTX-0750 | BSC-MT-003160 | BSC-MT-003164 | GI June 2019 Twitter Posts @bsc_endoscopy | | 401/402, 403, 801/802 |
| DTX-0751 | BSC-MT-003165 | BSC-MT-003167 | Article: Kamboj et al., "Diagnosing Cholangiocarcinoma Using Cholangioscopy  and Treating Duodenal Ulcer with Physician Controlled Clip Rotation" | | 401/402, 403, 801/802 |
| DTX-0752 | BSC-MT-003168 | BSC-MT-003168 | Resolution™ Clip Product Information | | 401/402, 403, 801/802 |
| DTX-0753 | BSC-MT-003169 | BSC-MT-003170 | Resolution™ Clip Risk Share Program Essentials | | 401/402, 403, 801/802 |
| DTX-0754 | BSC-MT-003171 | BSC-MT-003175 | Harper Design Studio Presentation for Boston Scientific Project SGG2019 | | 401/402, 403, 801/802 |
| DTX-0755 | BSC-MT-003176 | BSC-MT-003179 | Social Posts August @bsc_endoscopy Twitter Feed | | 401/402, 403, 801/802 |
| DTX-0756 | BSC-MT-003180 | BSC-MT-003184 | Display: Geo-Fencing - Hyperlocal ACG | | 401/402, 403, 801/802 |
| DTX-0757 | BSC-MT-003185 | BSC-MT-003244 | Presentation: Boston Scientific- Protecting Your Business | | 401/402, 403, 801/802 |
| DTX-0758 | BSC-MT-003231 | BSC-MT-003244 | Boston Scientific Web Page | | 401/402, 403, 801/802 |
| DTX-0759 | BSC-MT-003245 | BSC-MT-003251 | Boston Scientific Web Page - Surgical Endoscopy | | 401/402, 403, 801/802 |
| DTX-0760 | BSC-MT-003252 | BSC-MT-003253 | Resolution™ Clip Device Product Information | | 401/402, 403, 801/802 |
| DTX-0761 | BSC-MT-003254 | BSC-MT-003257 | Article: Sachdev, "Endoscopic Mucosal Resection for Large Polyp Removal" | | 401/402, 403, 801/802 |
| DTX-0762 | BSC-MT-003258 | BSC-MT-003258 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802 |
| DTX-0763 | BSC-MT-003259 | BSC-MT-003260 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802 |
| DTX-0764 | BSC-MT-003261 | BSC-MT-003262 | Boston Scientific Web Page - Resolution™ Clip | | 401/402, 403, 801/802 |
| DTX-0765 | BSC-MT-003263 | BSC-MT-003263 | Resolution™ Clip Product Information | | 401/402, 403, 801/802 |
| DTX-0766 | BSC-MT-003264 | BSC-MT-003275 | Resolution™ Clip Instructions for Use | | 401/402, 403, 801/802 |
| DTX-0767 | BSC-MT-003276 | BSC-MT-003280 | Resolution™ Clip Banner Advertisements | | 401/402, 403, 801/802 |
| DTX-0768 | BSC-MT-003281 | BSC-MT-003282 | Resolution™ Clip Evaluation Form | | 401/402, 403, 801/802 |
| DTX-0769 | BSC-MT-003283 | BSC-MT-003292 | Resolution™ Clip Instructions for Use | | 401/402, 403, 801/802 |
| DTX-0770 | BSC-MT-003293 | BSC-MT-003296 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802 |
| DTX-0771 | BSC-MT-003297 | BSC-MT-003298 | Article: "Resolution Clip - Playing an Important Role in the Practice of Hemostasis" | | 401/402, 403, 801/802 |
| DTX-0772 | BSC-MT-003299 | BSC-MT-003300 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0773 | BSC-MT-003301 | BSC-MT-003306 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0774 | BSC-MT-003307 | BSC-MT-003312 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0775 | BSC-MT-003313 | BSC-MT-003313 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0776 | BSC-MT-003315 | BSC-MT-003317 | Boston Scientific Product Information | | 401/402, 403, 801/802, ID |
| DTX-0777 | BSC-MT-003318 | BSC-MT-003354 | Resolution™ Clip Product Information | | 401/402, 403, 801/802, ID |
| DTX-0778 | BSC-MT-003355 | BSC-MT-003358 | Resolution™ Clip Product Information | | 401/402, 403, 801/802, ID |
| DTX-0779 | BSC-MT-003359 | BSC-MT-003359 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0780 | BSC-MT-003360 | BSC-MT-003360 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0781 | BSC-MT-003361 | BSC-MT-003361 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0782 | BSC-MT-003362 | BSC-MT-003362 | Article: "Resolution Clip is First Hemostasis Clip to Receive Clearance for Prophylactic Clipping" | | 401/402, 403, 801/802 |
| DTX-0783 | BSC-MT-003363 | BSC-MT-003367 | Boston Scientific Product Information | | 401/402, 403, 801/802 |
| DTX-0784 | BSC-MT-003368 | BSC-MT-003368 | Boston Scientific Letter Re Resolution™ Clip | | 401/402, 403, 801/802 |
| DTX-0785 | BSC-MT-003369 | BSC-MT-003369 | Resolution™ Clip Product Information | | 401/402, 403, 801/802 |
| DTX-0786 | BSC-MT-003370 | BSC-MT-003370 | Boston Scientific Web Page - Expanded Indication: Prophylactic Clipping | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0787 | BSC-MT-003371 | BSC-MT-003372 | Resolution™ Clip Product Information | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0788 | BSC-MT-003373 | BSC-MT-003374 | Boston Scientific Web Page - Expanded Indication: Prophylactic Clipping | | 401/402, 403, 801/802 |
| DTX-0789 | BSC-MT-003375 | BSC-MT-003375 | Video | | 401/402, 403, 801/802, ID |
| DTX-0790 | BSC-MT-003376 | BSC-MT-003376 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802, ID |
| DTX-0791 | BSC-MT-003377 | BSC-MT-003379 | Resolution™ Clip Product Information | | 401/402, 403, 801/802, ID |
| DTX-0792 | BSC-MT-003380 | BSC-MT-003388 | Resolution™ Clip Product Information | | 401/402, 403, 801/802, ID |
| DTX-0793 | BSC-MT-003389 | BSC-MT-003390 | Resolution™ Clip Product Information | | 401/402, 403, 801/802, ID |
| DTX-0794 | BSC-MT-003391 | BSC-MT-003392 | Resolution™ Clip Evaluation Form | | 401/402, 403, 801/802, ID |
| DTX-0795 | BSC-MT-003393 | BSC-MT-003400 | Resolution™ Clip Technique Spotlights | | 401/402, 403, 801/802, ID |
| DTX-0796 | BSC-MT-003401 | BSC-MT-003402 | Resolution™ Clip Use During Medical Case | | 401/402, 403, 801/802, ID |
| DTX-0797 | BSC-MT-003403 | BSC-MT-003404 | Resolution™ Clip Clinical Summary | | 401/402, 403, 801/802, ID |
| DTX-0798 | BSC-MT-003405 | BSC-MT-003405 | Produced in Native Format | | 401/402, 403, 801/802, ID |
| DTX-0799 | BSC-MT-003406 | BSC-MT-003407 | Resolution™ Clip Clinical Summary | | 401/402, 403, 801/802, ID |
| DTX-0800 | BSC-MT-003408 | BSC-MT-003408 | Resolution™ Clip Device Set-Up | | 401/402, 403, 801/802, ID |
| DTX-0801 | BSC-MT-003409 | BSC-MT-003411 | Resolution™ Clip Use During Medical Case | | 401/402, 403, 801/802, ID |
| DTX-0802 | BSC-MT-003412 | BSC-MT-003415 | Resolution™ Clip Product Information | | 401/402, 403, 801/802, ID |
| DTX-0803 | BSC-MT-003416 | BSC-MT-003416 | Resolution™ Clip Procedural Steps | | 401/402, 403, 801/802, ID |
| DTX-0804 | BSC-MT-003417 | BSC-MT-003461 | Resolution™ Clip Clinical Performance | | 401/402, 403, 801/802, ID |
| DTX-0805 | BSC-MT-003462 | BSC-MT-003462 | Video | | 401/402, 403, 801/802, ID |
| DTX-0806 | BSC-MT-003463 | BSC-MT-003463 | MRI Conditional Hospital Letter | | 401/402, 403, 801/802 |
| DTX-0807 | BSC-MT-003465 | BSC-MT-003472 | Boston Scientific - Competitive Hemostasis Clip Analysis | | 401/402, 403, 801/802 |
| DTX-0808 | BSC-MT-003542 | BSC-MT-003597 | Boston Scientific - Resolution 360™ Clip Directions For Use | | 401/402, 403, 801/802 |
| DTX-0809 | BSC-MT-003598 | BSC-MT-003653 | Boston Scientific - Resolution 360™ Clip Directions For Use | | 401/402, 403, 801/802 |
| DTX-0810 | BSC-MT-003654 | BSC-MT-003664 | Boston Scientific - Resolution 360™ Clip Directions For Use | | 401/402, 403, 801/802 |
| DTX-0811 | BSC-MT-003665 | BSC-MT-003679 | Boston Scientific - Resolution Clip Market Specification | | 401/402, 403, 801/802 |
| DTX-0812 | BSC-MT-003707 | BSC-MT-003707 | Hook Photo | | 401/402, 403, 801/802 |
| DTX-0813 | BSC-MT-003729 | BSC-MT-003739 | Presentation: Boston Scientific - Micro-Tech Clip Battling | | 401/402, 403, 801/802 |
| DTX-0814 | BSC-MT-003740 | BSC-MT-003740 | Excel Spreadsheet, Microsoft_Excel_Worksheet | | 401/402, 403, 801/802 |
| DTX-0815 | BSC-MT-003741 | BSC-MT-003741 | Excel Spreadsheet, Copy of Competitive Key Technology Hit List - 2019 Blended Version #2 | | 401/402, 403, 801/802 |
| DTX-0816 | BSC-MT-003742 | BSC-MT-003742 | Excel Spreadsheet, Copy of Divisional Hit List - Updated 03.12.19 | | 401/402, 403, 801/802 |
| DTX-0817 | BSC-MT-003765 | BSC-MT-003765 | Excel Spreadsheet, Microsoft_Excel_Worksheet | | 401/402, 403, 801/802 |
| DTX-0818 | BSC-MT-003781 | BSC-MT-003781 | Video | | 401/402, 403, 801/802 |
| DTX-0819 | BSC-MT-003790 | BSC-MT-003790 | Article: "Lower Paper Costs are not always what's best for your specialty or your lab" | | 401/402, 403, 801/802 |
| DTX-0820 | BSC-MT-003791 | BSC-MT-003791 | Article: "Lower Paper Costs are not always what's best for your specialty or your lab" | | 401/402, 403, 801/802 |
| DTX-0821 | BSC-MT-003798 | BSC-MT-003798 | Micro-Tech SureClip tif | | 401/402, 403, 801/802 |
| DTX-0822 | BSC-MT-004550 | BSC-MT-004571 | Boston Scientific - Resolution Clip Market Specification | | 401/402, 403, 801/802 |
| DTX-0823 | BSC-MT-004574 | BSC-MT-004601 | Presentation - Boston Scientific - Clip Images | | 401/402, 403, 801/802 |
| DTX-0824 | BSC-MT-004602 | BSC-MT-004623 | Boston Scientific - Competitive Analysis of Micro-Tech Clip | | 401/402, 403, 701/702, 801/802 |
| DTX-0825 | BSC-MT-004625 | BSC-MT-004625 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0826 | BSC-MT-004626 | BSC-MT-004626 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0827 | BSC-MT-004627 | BSC-MT-004627 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0828 | BSC-MT-004628 | BSC-MT-004628 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0829 | BSC-MT-004629 | BSC-MT-004629 | Photo of Device | | 401/402, 403, 801/802, ID |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0830 | BSC-MT-004630 | BSC-MT-004630 | Photo of Device | | 401/402, 403, 801/802, ID |
|---|---|---|---|---|---|
| DTX-0831 | BSC-MT-004631 | BSC-MT-004631 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0832 | BSC-MT-004632 | BSC-MT-004632 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0833 | BSC-MT-004633 | BSC-MT-004633 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0834 | BSC-MT-004634 | BSC-MT-004634 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0835 | BSC-MT-004635 | BSC-MT-004635 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0836 | BSC-MT-004636 | BSC-MT-004636 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0837 | BSC-MT-004637 | BSC-MT-004657 | Presentation: Boston Scientific - Micro-Tech Hemoclips | | 401/402, 403, 701/702, 801/802 |
| DTX-0838 | BSC-MT-004658 | BSC-MT-004658 | Video | | 401/402, 403, 801/802, ID |
| DTX-0839 | BSC-MT-004662 | BSC-MT-004662 | Excel Spreadsheet, Microsoft Excel Worksheet3 | | 401/402, 403, 801/802, ID |
| DTX-0840 | BSC-MT-004663 | BSC-MT-004663 | Excel Spreadsheet, Microsoft Excel Worksheet4 | | 401/402, 403, 801/802, ID |
| DTX-0841 | BSC-MT-004664 | BSC-MT-004664 | Excel Spreadsheet, Microsoft Excel Worksheet1 | | 401/402, 403, 801/802, ID |
| DTX-0842 | BSC-MT-004665 | BSC-MT-004665 | Excel Spreadsheet, Microsoft Excel Worksheet2 | | 401/402, 403, 801/802, ID |
| DTX-0843 | BSC-MT-004666 | BSC-MT-004670 | Boston Scientific - Cross Section and Optical for Micro-Tech Clip | | 401/402, 403, 701/702, 801/802 |
| DTX-0844 | BSC-MT-004671 | BSC-MT-004676 | Boston Scientic - X-Ray Micro-TechClip | | 401/402, 403, 801/802 |
| DTX-0845 | BSC-MT-004688 | BSC-MT-004689 | Boston Scientific - Clip Deployment Testing on Silicone | | 401/402, 403, 701/702, 801/802 |
| DTX-0846 | BSC-MT-004708 | BSC-MT-004708 | Excel Spreadsheet, Microsoft Excel Worksheet1 | | 401/402, 403, 801/802 |
| DTX-0847 | BSC-MT-004709 | BSC-MT-004729 | Presentation: Boston Scientific - Micro-Tech Hemoclips | | 401/402, 403, 701/702, 801/802 |
| DTX-0848 | BSC-MT-004732 | BSC-MT-004732 | Video | | 401/402, 403, 801/802, ID |
| DTX-0849 | BSC-MT-004733 | BSC-MT-004733 | Video | | 401/402, 403, 801/802, ID |
| DTX-0850 | BSC-MT-004734 | BSC-MT-004734 | Excel Spreadsheet, Microsoft Excel Worksheet3 | | 401/402, 403, 801/802, ID |
| DTX-0851 | BSC-MT-004735 | BSC-MT-004735 | Excel Spreadsheet, Microsoft Excel Worksheet4 | | 401/402, 403, 801/802, ID |
| DTX-0852 | BSC-MT-004737 | BSC-MT-004737 | Excel Spreadsheet, Microsoft Excel Worksheet2 | | 401/402, 403, 801/802, ID |
| DTX-0853 | BSC-MT-004741 | BSC-MT-004744 | Presentation: Boston Scientific - Micro-Tech Capsule Bushing Attachment | | 401/402, 403, 701/702, 801/802 |
| DTX-0854 | BSC-MT-004745 | BSC-MT-004750 | Presentation: Boston Scientific - Micro-Tech Clip Internal Design | | 401/402, 403, 701/702, 801/802 |
| DTX-0855 | BSC-MT-004751 | BSC-MT-004751 | Video | | 401/402, 403, 801/802, ID |
| DTX-0856 | BSC-MT-004752 | BSC-MT-004752 | Video | | 401/402, 403, 801/802, ID |
| DTX-0857 | BSC-MT-004753 | BSC-MT-004764 | Presentation: Boston Scientific - Micro-Tech Clip Update | | 401/402, 403, 801/802, ID |
| DTX-0858 | BSC-MT-004765 | BSC-MT-004768 | Article: Gwynne, "Photo Analysis of Micro-Tech Bare Coil Clip" | | 401/402, 403, 801/802, ID |
| DTX-0859 | BSC-MT-004769 | BSC-MT-004769 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0860 | BSC-MT-004770 | BSC-MT-004770 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0861 | BSC-MT-004771 | BSC-MT-004771 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0862 | BSC-MT-004772 | BSC-MT-004772 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0863 | BSC-MT-004773 | BSC-MT-004773 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0864 | BSC-MT-004774 | BSC-MT-004774 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0865 | BSC-MT-004775 | BSC-MT-004775 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0866 | BSC-MT-004776 | BSC-MT-004776 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0867 | BSC-MT-004777 | BSC-MT-004777 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0868 | BSC-MT-004778 | BSC-MT-004778 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0869 | BSC-MT-004779 | BSC-MT-004779 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0870 | BSC-MT-004780 | BSC-MT-004780 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0871 | BSC-MT-004781 | BSC-MT-004781 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0872 | BSC-MT-004903 | BSC-MT-004903 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0873 | BSC-MT-004941 | BSC-MT-004941 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0874 | BSC-MT-004942 | BSC-MT-004942 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0875 | BSC-MT-004943 | BSC-MT-004943 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0876 | BSC-MT-004963 | BSC-MT-004963 | Photo of Device | | 401/402, 403, 801/802, ID |
| DTX-0877 | BSC-MT-004964 | BSC-MT-004964 | Photo of Device | | 401/402, 403, 801/802, ID |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0878 | BSC-MT-004965 | BSC-MT-004965 | Photo of Device | | 401/402, 403, 801/802, ID |
|---|---|---|---|---|---|
| DTX-0879 | BSC-MT-004989 | BSC-MT-005664 | iData Research - U.S. Market Report Suite for Gastrointestinal Endoscopic Devices | | 401/402, 403, 801/802 |
| DTX-0880 | BSC-MT-005665 | BSC-MT-005666 | Boston Scientific - Value Analysis Brief - Resolution™ Clip and Resolution 360™ Clip | | 401/402, 403, 801/802 |
| DTX-0881 | BSC-MT-005684 | BSC-MT-005691 | Boston Scientific - Resolution™ 360 Clip - Clip Competitive Anlysis | | 401/402, 403, 801/802 |
| DTX-0882 | BSC-MT-005694 | BSC-MT-005718 | Presentation: Boston Scientific - Clip Images | | 401/402, 403, 801/802 |
| DTX-0883 | BSC-MT-005719 | BSC-MT-005720 | Boston Scientific Memorandum Re Terminology for Competitive Clip Comparisons | | 401/402, 403, 801/802 |
| DTX-0884 | BSC-MT-006017 | BSC-MT-006032 | Resolution 360™ Clip - Innovation in Design and Manufacturing | | 401/402, 403, 801/802 |
| DTX-0885 | BSC-MT-006033 | BSC-MT-006043 | Article: Wang et al., "Choosing the right through the scope clip: a rigorous comparison of rotatability, whip, open/close precision and closure strength" | | 401/402, 403, 801/802 |
| DTX-0886 | BSC-MT-006044 | BSC-MT-006044 | Excel Spreadsheet, Scrap Res Clips 2012-2017 | | 401/402, 403, 801/802 |
| DTX-0887 | BSC-MT-006107 | BSC-MT-006107 | Boston Scientific - E0630 Clip End Effectors TDP | | 401/402, 403, 801/802 |
| DTX-0888 | BSC-MT-006108 | BSC-MT-006108 | Boston Scientific - E0630 Clip End Effectors TDP | | 401/402, 403, 801/802 |
| DTX-0889 | BSC-MT-006109 | BSC-MT-006109 | Boston Scientific - E0630 NG 360 Clip TDP | | 401/402, 403, 801/802 |
| DTX-0890 | BSC-MT-006110 | BSC-MT-006110 | Boston Scientific - E0630 NG 360 Clip TDP | | 401/402, 403, 801/802 |
| DTX-0891 | BSC-MT-006111 | BSC-MT-006111 | Boston Scientific - E0630 NG 360 Clip TDP | | 401/402, 403, 801/802 |
| DTX-0892 | BSC-MT-006112 | BSC-MT-006112 | Boston Scientific - E0630 NG 360 Clip TDP | | 401/402, 403, 801/802 |
| DTX-0893 | BSC-MT-006113 | BSC-MT-006113 | Boston Scientific - E0630 NG 360 Clip TDP | | 401/402, 403, 801/802 |
| DTX-0894 | BSC-MT-006194 | BSC-MT-006203 | Boston Scientific - Competitive Analysis of Diversatek RePlay Hemostasis Clip | | 401/402, 403, 801/802 |
| DTX-0895 | BSC-MT-006204 | BSC-MT-006204 | Excel Spreadsheet, Actuals 2019 Clips Std cost 2019-05-30 | | 401/402, 403, 801/802 |
| DTX-0896 | BSC-MT-006239 | BSC-MT-006260 | Boston Scientific - Competitive Analysis of Micro-Tech Clip | | 401/402, 403, 701/702, 801/802 |
| DTX-0897 | BSC-MT-006261 | BSC-MT-006261 | Excel Spreadsheet, Copy of Sim-Use Comparison  10.30.2017 | | 401/402, 403, 801/802 |
| DTX-0898 | BSC-MT-006262 | BSC-MT-006274 | European Patent Specification EP 3081174 B1 | | 401/402, 403, 801/802 |
| DTX-0899 | BSC-MT-006275 | BSC-MT-006278 | Micro-Tech Capsule Bushing Attachment | | 401/402, 403, 801/802 |
| DTX-0900 | BSC-MT-006294 | BSC-MT-006294 | Passability Test Plan Report | | 401/402, 403, 801/802 |
| DTX-0901 | BSC-MT-006302 | BSC-MT-006302 | Excel Spreadsheet, Clip Lengths Chart | | 401/402, 403, 801/802 |
| DTX-0902 | BSC-MT-006303 | BSC-MT-006303 | Excel Spreadsheet, Microtech Clip Dimensions | | 401/402, 403, 801/802 |
| DTX-0903 | BSC-MT-006304 | BSC-MT-006304 | Excel Spreadsheet, Microtech Clips | | 401/402, 403, 801/802 |
| DTX-0904 | BSC-MT-006337 | BSC-MT-006342 | NG Res 360 Ex-Vivo | | 401/402, 403, 801/802 |
| DTX-0905 | BSC-MT-006343 | BSC-MT-006343 | Ex-Vivo Requirements | | 401/402, 403, 801/802 |
| DTX-0906 | BSC-MT-006344 | BSC-MT-006345 | Clip Placement/Model Prep; Lab Flow/Goals | | 401/402, 403, 801/802 |
| DTX-0907 | BSC-MT-006348 | BSC-MT-006350 | Boston Scientific - Clip Size Matrix | | 401/402, 403, 801/802 |
| DTX-0908 | BSC-MT-006442 | BSC-MT-006489 | Boston Scientific - Clip End Effectors (Formerly NG Clip) Q3 2019 TDP Update | | 401/402, 403, 801/802 |
| DTX-0909 | BSC-MT-006490 | BSC-MT-006490 | Excel Spreadsheet, Microsoft_Excel_Worksheet1 | | 401/402, 403, 801/802 |
| DTX-0910 | BSC-MT-006491 | BSC-MT-006491 | Excel Spreadsheet, Microsoft_Excel_Worksheet | | 401/402, 403, 801/802 |
| DTX-0911 | BSC-MT-006492 | BSC-MT-006492 | Excel Spreadsheet, Microsoft_Excel_Worksheet2 | | 401/402, 403, 801/802 |
| DTX-0912 | BSC-MT-006493 | BSC-MT-006493 | Excel Spreadsheet, Microsoft_Excel_Worksheet7 | | 401/402, 403, 801/802 |
| DTX-0913 | BSC-MT-006494 | BSC-MT-006494 | Excel Spreadsheet, Microsoft_Excel_Worksheet5 | | 401/402, 403, 801/802 |
| DTX-0914 | BSC-MT-006495 | BSC-MT-006495 | Excel Spreadsheet, Microsoft_Excel_Worksheet4 | | 401/402, 403, 801/802 |
| DTX-0915 | BSC-MT-006496 | BSC-MT-006496 | Excel Spreadsheet, Microsoft_Excel_Worksheet3 | | 401/402, 403, 801/802 |
| DTX-0916 | BSC-MT-006497 | BSC-MT-006497 | Excel Spreadsheet, Microsoft_Excel_Worksheet6 | | 401/402, 403, 801/802 |
| DTX-0917 | BSC-MT-006498 | BSC-MT-006543 | Boston Scientific - Clip End Effectors (Formerly NG Clip) Q3 2019 TDP Update | | 401/402, 403, 801/802 |
| DTX-0918 | BSC-MT-006544 | BSC-MT-006544 | Excel Spreadsheet, Microsoft_Excel_Worksheet1 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-0919 | BSC-MT-006545 | BSC-MT-006545 | Excel Spreadsheet, Microsoft_Excel_Worksheet | | 401/402, 403, 801/802 |
| DTX-0920 | BSC-MT-006546 | BSC-MT-006546 | Excel Spreadsheet, Microsoft_Excel_Worksheet6 | | 401/402, 403, 801/802 |
| DTX-0921 | BSC-MT-006547 | BSC-MT-006547 | Excel Spreadsheet, Microsoft_Excel_Worksheet5 | | 401/402, 403, 801/802 |
| DTX-0922 | BSC-MT-006548 | BSC-MT-006548 | Excel Spreadsheet, Microsoft_Excel_Worksheet4 | | 401/402, 403, 801/802 |
| DTX-0923 | BSC-MT-006549 | BSC-MT-006549 | Excel Spreadsheet, Microsoft_Excel_Worksheet2 | | 401/402, 403, 801/802 |
| DTX-0924 | BSC-MT-006550 | BSC-MT-006550 | Excel Spreadsheet, Microsoft_Excel_Worksheet3 | | 401/402, 403, 801/802 |
| DTX-0925 | BSC-MT-006615 | BSC-MT-006618 | Project: Clip End Effectors E0630 | | 401/402, 403, 801/802 |
| DTX-0926 | BSC-MT-006619 | BSC-MT-006622 | Project: Clip End Effectors E0630 | | 401/402, 403, 801/802 |
| DTX-0927 | BSC-MT-006623 | BSC-MT-006626 | Project: Clip End Effectors E0630 | | 401/402, 403, 801/802 |
| DTX-0928 | BSC-MT-006627 | BSC-MT-006629 | Project: NG 360 Clip E0630 | | 401/402, 403, 801/802 |
| DTX-0929 | BSC-MT-006630 | BSC-MT-006632 | Project: Short Stem Clip E0630 | | 401/402, 403, 801/802 |
| DTX-0930 | BSC-MT-006633 | BSC-MT-006635 | Project: Short Stem Clip E0630 | | 401/402, 403, 801/802 |
| DTX-0931 | BSC-MT-006730 | BSC-MT-006730 | Excel Spreadsheet, NYSGE Dr Aihara Data | | 401/402, 403, 801/802 |
| DTX-0932 | BSC-MT-006731 | BSC-MT-006731 | Data Sheet for Pre Clinical Study | | 401/402, 403, 801/802 |
| DTX-0933 | BSC-MT-006732 | BSC-MT-006732 | Data Sheet for Pre Clinical Study | | 401/402, 403, 801/802 |
| DTX-0934 | BSC-MT-006733 | BSC-MT-006733 | Data Sheet for Pre Clinical Study | | 401/402, 403, 801/802 |
| DTX-0935 | BSC-MT-007473 | BSC-MT-007486 | Boston Scientific - Rotatable Resolution/Resolution 360™ Clip D&D Plan | | 401/402, 403, 801/802 |
| DTX-0936 | BSC-MT-007501 | BSC-MT-007504 | Boston Scientific Endoscopy Memorandum Re May 3rd Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0937 | BSC-MT-007509 | BSC-MT-007512 | Boston Scientific Endoscopy Memorandum Re September 13th Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0938 | BSC-MT-007513 | BSC-MT-007515 | Boston Scientific Endoscopy Memorandum Re August 18th Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0939 | BSC-MT-007523 | BSC-MT-007525 | Boston Scientific Endoscopy Memorandum Re September 20th Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0940 | BSC-MT-007526 | BSC-MT-007528 | Boston Scientific Endoscopy Memorandum Re August 23rd Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0941 | BSC-MT-007532 | BSC-MT-007535 | Boston Scientific Endoscopy Memorandum Re August 31st Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0942 | BSC-MT-007536 | BSC-MT-007539 | Boston Scientific Endoscopy Memorandum Re August 31st Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0943 | BSC-MT-007540 | BSC-MT-007542 | Boston Scientific Endoscopy Memorandum Re September 30th Resolution 360 Clip Team Update and Action Items | | 401/402, 403, 801/802 |
| DTX-0944 | BSC-MT-007543 | BSC-MT-007546 | Boston Scientific Endoscopy Memorandum Re August 23rd Resolution 360 Clip Team Meeting Minutes and Action Items | | 401/402, 403, 801/802 |
| DTX-0945 | BSC-MT-007840 | BSC-MT-007843 | Boston Scientific Memorandum Re Preclinical Tag-On Opportunity Prior to Design Feeze | | 401/402, 403, 801/802 |
| DTX-0946 | BSC-MT-007862 | BSC-MT-007869 | Boston Scientific - Final Protocol - Digestive Disease Week (DDW) and Societ of Gastroenterology Nurses and Associates (SGNA) Demonstrations | | 401/402, 403, 801/802 |
| DTX-0947 | BSC-MT-008026 | BSC-MT-008042 | Presentation: Boston Scientific - Resolution™ 360 | | 401/402, 403, 801/802 |
| DTX-0948 | BSC-MT-008043 | BSC-MT-008058 | Presentation: Boston Scientific - ResolutionTM 360 | | 401/402, 403, 801/802 |
| DTX-0949 | BSC-MT-008059 | BSC-MT-008074 | Presentation: Boston Scientific - ResolutionTM 360 | | 401/402, 403, 801/802 |
| DTX-0950 | BSC-MT-008075 | BSC-MT-008091 | Presentation: Boston Scientific - ResolutionTM 360 | | 401/402, 403, 801/802 |
| DTX-0951 | BSC-MT-008092 | BSC-MT-008108 | Presentation: Boston Scientific - ResolutionTM 360 | | 401/402, 403, 801/802 |
| DTX-0952 | BSC-MT-008109 | BSC-MT-008125 | Presentation: Boston Scientific - ResolutionTM 360 | | 401/402, 403, 801/802 |
| DTX-0953 | BSC-MT-008126 | BSC-MT-008142 | Presentation: Boston Scientific - ResolutionTM 360 | | 401/402, 403, 801/802 |
| DTX-0954 | BSC-MT-008143 | BSC-MT-008159 | Presentation: Boston Scientific - ResolutionTM 360 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0955 | BSC-MT-010194 | BSC-MT-010198 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Controllability Rationale | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-0956 | BSC-MT-010199 | BSC-MT-010203 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Controllability Rationale | | 401/402, 403, 801/802 |
| DTX-0957 | BSC-MT-010204 | BSC-MT-010208 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Controllability Rationale | | 401/402, 403, 801/802 |
| DTX-0958 | BSC-MT-010209 | BSC-MT-010223 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Fixture Setup Rationale | | 401/402, 403, 801/802 |
| DTX-0959 | BSC-MT-010224 | BSC-MT-010234 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Fixture Setup Rationale | | 401/402, 403, 801/802 |
| DTX-0960 | BSC-MT-010235 | BSC-MT-010248 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Fixture Setup Rationale | | 401/402, 403, 801/802 |
| DTX-0961 | BSC-MT-010598 | BSC-MT-010602 | Boston Scientific- Next Generation Resolution Clip Rotation Controlability Rationale | | 401/402, 403, 801/802 |
| DTX-0962 | BSC-MT-010603 | BSC-MT-010607 | Boston Scientific- Next Generation Resolution Clip Rotation Controlability Rationale | | 401/402, 403, 801/802 |
| DTX-0963 | BSC-MT-010608 | BSC-MT-010612 | Boston Scientific- Next Generation Resolution Clip Rotation Controlability Rationale | | 401/402, 403, 801/802 |
| DTX-0964 | BSC-MT-010750 | BSC-MT-010750 | Excel Spreadsheet, Braid Options | | 401/402, 403, 801/802 |
| DTX-0965 | BSC-MT-010920 | BSC-MT-010933 | Boston Scientific - Market Specification - Hemostatic Clipping Device (HCD) | | 401/402, 403, 801/802 |
| DTX-0966 | BSC-MT-011903 | BSC-MT-011950 | Presentation: Boston Scientific - E0432 Next Generation Clip Rotation | | 401/402, 403, 801/802 |
| DTX-0967 | BSC-MT-012333 | BSC-MT-012337 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Controllability Rationale | | 401/402, 403, 801/802 |
| DTX-0968 | BSC-MT-012338 | BSC-MT-012342 | Boston Scientific- Next Generation Resolution Clip Rotation Controllability Rationale | | 401/402, 403, 801/802 |
| DTX-0969 | BSC-MT-012343 | BSC-MT-012347 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Controllability Rationale | | 401/402, 403, 801/802 |
| DTX-0970 | BSC-MT-012348 | BSC-MT-012357 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Fixture Setup Rationale | | 401/402, 403, 801/802 |
| DTX-0971 | BSC-MT-012358 | BSC-MT-012367 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Fixture Setup Rationale | | 401/402, 403, 801/802 |
| DTX-0972 | BSC-MT-012368 | BSC-MT-012377 | Boston Scientific- Next Generation (Rotatable) Resolution Clip Rotation Fixture Setup Rationale | | 401/402, 403, 801/802 |
| DTX-0973 | BSC-MT-013909 | BSC-MT-013927 | Presentation: Boston Scientific - Vendors | | 401/402, 403, 801/802 |
| DTX-0974 | BSC-MT-014783 | BSC-MT-015021 | File History for U.S. Patent No. 8,709,027 | | 401/402, 403 |
| DTX-0975 | BSC-MT-015865 | BSC-MT-016223 | File History for U.S. Patent No. 9,271,731 | | 401/402, 403 |
| DTX-0976 | BSC-MT-016750 | BSC-MT-017098 | File History for U.S. Patent No. 7,879,052 | | 401/402, 403 |
| DTX-0977 | BSC-MT-017136 | BSC-MT-017272 | File Wrapper for U.S. Patent Application 13/009,094 | | 401/402, 403 |
| DTX-0978 | BSC-MT-017284 | BSC-MT-017449 | Presentation: Boston Scientific - Henostasis Update AGW 2012 | | 401/402, 403, 701/702, 801/802 |
| DTX-0979 | BSC-MT-017450 | BSC-MT-017532 | Presentation: Make an Impact - Endoscopy National Sales Meeting 2012 | | 401/402, 403, 701/702, 801/802 |
| DTX-0980 | BSC-MT-019367 | BSC-MT-019425 | Presentation: Boston Scientific - Clipping Strategy Session | | 401/402, 403, 701/702, 801/802 |
| DTX-0981 | BSC-MT-019427 | BSC-MT-019484 | Presentation: Boston Scientific - Clipping Strategy Session | | 401/402, 403, 701/702, 801/802 |
| DTX-0982 | BSC-MT-019495 | BSC-MT-019546 | Presentation: Boston Scientific - Clipping Strategy Session | | 401/402, 403, 701/702, 801/802 |
| DTX-0983 | BSC-MT-019614 | BSC-MT-019692 | Presentation: Make an Impact - Endoscopy National Sales Meeting 2012 | | 401/402, 403, 701/702, 801/802 |
| DTX-0984 | BSC-MT-019794 | BSC-MT-019797 | Cook Competitive Response Best Practice - Demonstrating Resolution$^{TM}$ Clip | | 401/402, 403, 701/702, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-0985 | BSC-MT-019798 | BSC-MT-019800 | Cook Competitive Response Best Practice - Demonstrating Resolution™ Clip | | 401/402, 403, 701/702, 801/802 |
|---|---|---|---|---|---|
| DTX-0986 | BSC-MT-019801 | BSC-MT-019803 | Cook Competitive Response Best Practice - Demonstrating Resolution™ Clip | | 401/402, 403, 701/702, 801/802 |
| DTX-0987 | BSC-MT-019804 | BSC-MT-019806 | Boston Scientific - Competitive Clip Success Story | | 401/402, 403, 801/802 |
| DTX-0988 | BSC-MT-019807 | BSC-MT-019807 | Excel Spreadsheet, Rocky Mtn Clip at risk | | 401/402, 403, 801/802 |
| DTX-0989 | BSC-MT-020650 | BSC-MT-020653 | Email Re New Cook Clip Update | | 401/402, 403, 801/802 |
| DTX-0990 | BSC-MT-020889 | BSC-MT-020891 | Email Re Cook Clip | | 401/402, 403, 801/802 |
| DTX-0991 | BSC-MT-022323 | BSC-MT-022323 | Boston Scientific Letter Re Resolution Clip Clearance for MR Conditional Claim | | 401/402, 403, 801/802 |
| DTX-0992 | BSC-MT-022355 | BSC-MT-022358 | Resolution™ Clip Product Information | | 401/402, 403, 801/802 |
| DTX-0993 | BSC-MT-022409 | BSC-MT-022448 | Boston Scientific - Idea Disclosure | | 401/402, 403, 801/802 |
| DTX-0994 | BSC-MT-022449 | BSC-MT-022450 | Draft Boston Scientific Letter | | 401/402, 403, 801/802 |
| DTX-0995 | BSC-MT-022495 | BSC-MT-022496 | BSC Invention Disclosure 03-D1076 | | 401/402, 403, 801/802 |
| DTX-0996 | BSC-MT-022518 | BSC-MT-022522 | Letter Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-0997 | BSC-MT-022523 | BSC-MT-022525 | Confidentiality Agreement between Target Therapeutics and BSC | | 401/402, 403, 801/802 |
| DTX-0998 | BSC-MT-022526 | BSC-MT-022528 | Confidentiality Agreement between Boston Scientific Scimed and MedVenture | | 401/402, 403, 801/802 |
| DTX-0999 | BSC-MT-022529 | BSC-MT-022531 | Confidentiality Disclosure Agreement between Target Therapeutics and MedVenture | | 401/402, 403, 801/802 |
| DTX-1000 | BSC-MT-022532 | BSC-MT-022535 | Draft Boston Scientific Letter | | 401/402, 403, 801/802 |
| DTX-1001 | BSC-MT-022536 | BSC-MT-022538 | Amendment No. 1 to Development and Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1002 | BSC-MT-022539 | BSC-MT-022593 | Development and Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1003 | BSC-MT-022594 | BSC-MT-022596 | Boston Scientific Memorandum Re MedVenture HCD Contract | | 401/402, 403, 801/802 |
| DTX-1004 | BSC-MT-022597 | BSC-MT-022597 | Amendment No. 1 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1005 | BSC-MT-022598 | BSC-MT-022602 | Letter Re Amendment to Development and Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1006 | BSC-MT-022603 | BSC-MT-022650 | Development and Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1007 | BSC-MT-022651 | BSC-MT-022659 | Amendment No. 2 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1008 | BSC-MT-022660 | BSC-MT-022660 | Amendment No. 3 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1009 | BSC-MT-022661 | BSC-MT-022662 | Amendment to Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1010 | BSC-MT-022663 | BSC-MT-022666 | Amendment No. 4 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1011 | BSC-MT-022667 | BSC-MT-022694 | Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1012 | BSC-MT-022695 | BSC-MT-022695 | Amendment No. 3 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1013 | BSC-MT-022696 | BSC-MT-022697 | Amendment No.7 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1014 | BSC-MT-022698 | BSC-MT-022702 | Amendment No.8 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1015 | BSC-MT-022703 | BSC-MT-022710 | Amendment No.6 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1016 | BSC-MT-022711 | BSC-MT-022714 | Amendment No.11 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1017 | BSC-MT-022715 | BSC-MT-022716 | Amendment No.12 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1018 | BSC-MT-022717 | BSC-MT-022722 | Amendment No.5 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1019 | BSC-MT-022723 | BSC-MT-022724 | Amendment No.14 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1020 | BSC-MT-022725 | BSC-MT-022736 | Master Design/Development Service Agreement between BSC and MedVenture | | 401/402, 403, 801/802 |
| DTX-1021 | BSC-MT-022737 | BSC-MT-022741 | Amendment No.13 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1022 | BSC-MT-022742 | BSC-MT-022750 | Amendment No.10 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1023 | BSC-MT-022751 | BSC-MT-022760 | Amendment No.18 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1024 | BSC-MT-022761 | BSC-MT-022762 | Amendment No.16 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1025 | BSC-MT-022763 | BSC-MT-022777 | Master Services Agreement between BSC and MedVenture | | 401/402, 403, 801/802 |
| DTX-1026 | BSC-MT-022778 | BSC-MT-022778 | Letter of Understanding between BSC and MedVenture | | 401/402, 403, 801/802 |
| DTX-1027 | BSC-MT-022779 | BSC-MT-022783 | Amendment No.15 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1028 | BSC-MT-022784 | BSC-MT-022787 | Attachment A1 - Endoscopic Rotatable Clip | | 401/402, 403, 801/802 |
| DTX-1029 | BSC-MT-022788 | BSC-MT-022793 | Amendment No.19 to Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1030 | BSC-MT-022794 | BSC-MT-022799 | Attachment A3 - Endoscopic Rotatable Clip | | 401/402, 403, 801/802 |
| DTX-1031 | BSC-MT-022800 | BSC-MT-022804 | Attachment A3B - Endoscopic Rotatable Clip | | 401/402, 403, 801/802 |
| DTX-1032 | BSC-MT-022805 | BSC-MT-022847 | Letter Re Design Services Agreement between BSC and MedVenture | | 401/402, 403, 801/802 |
| DTX-1033 | BSC-MT-022848 | BSC-MT-022851 | Attachment A2 - Endoscopic Rotatable Clip | | 401/402, 403, 801/802 |
| DTX-1034 | BSC-MT-022852 | BSC-MT-022854 | Email Re MedVenture Contract | | 401/402, 403, 801/802 |
| DTX-1035 | BSC-MT-022855 | BSC-MT-022878 | Draft Development and Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
| DTX-1036 | BSC-MT-022985 | BSC-MT-023053 | Presentation: Boston Scientific - MSC/MTC Meeting - Marketing Update | | 401/402, 403, 801/802 |
| DTX-1037 | BSC-MT-023246 | BSC-MT-023260 | Presentation: Boston Scientific - Resolution<sup>TM</sup> Clip | | 401/402, 403, 801/802 |
| DTX-1038 | BSC-MT-024723 | BSC-MT-024742 | Presentation: Boston Scientific - Resolution<sup>TM</sup> Clip Marketing Plan | | 401/402, 403, 801/802 |
| DTX-1039 | BSC-MT-024743 | BSC-MT-024743 | Diagram: Hemostasis Non Varicael Treatment Evolution | | 401/402, 403, 801/802 |
| DTX-1040 | BSC-MT-024744 | BSC-MT-024744 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.10 | | 401/402, 403, 801/802 |
| DTX-1041 | BSC-MT-024746 | BSC-MT-024746 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.2 | | 401/402, 403, 801/802 |
| DTX-1042 | BSC-MT-024747 | BSC-MT-024747 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.3 | | 401/402, 403, 801/802 |
| DTX-1043 | BSC-MT-024748 | BSC-MT-024748 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.4 | | 401/402, 403, 801/802 |
| DTX-1044 | BSC-MT-024749 | BSC-MT-024749 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.5 | | 401/402, 403, 801/802 |
| DTX-1045 | BSC-MT-024750 | BSC-MT-024750 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.6 | | 401/402, 403, 801/802 |
| DTX-1046 | BSC-MT-024751 | BSC-MT-024751 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.7 | | 401/402, 403, 801/802 |
| DTX-1047 | BSC-MT-024752 | BSC-MT-024752 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.8 | | 401/402, 403, 801/802 |
| DTX-1048 | BSC-MT-024753 | BSC-MT-024753 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004.9 | | 401/402, 403, 801/802 |
| DTX-1049 | BSC-MT-024754 | BSC-MT-024775 | Presentation: Boston Scientific - Resolution<sup>TM</sup> Clip Marketing Plan | | 401/402, 403, 801/802 |
| DTX-1050 | BSC-MT-024776 | BSC-MT-024776 | Diagram: Hemostasis Non Varicael Treatment Evolution | | 401/402, 403, 801/802 |
| DTX-1051 | BSC-MT-024777 | BSC-MT-024777 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
| DTX-1052 | BSC-MT-024778 | BSC-MT-024778 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
| DTX-1053 | BSC-MT-024779 | BSC-MT-024779 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1054 | BSC-MT-024780 | BSC-MT-024780 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1055 | BSC-MT-024781 | BSC-MT-024781 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
| DTX-1056 | BSC-MT-024782 | BSC-MT-024782 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
| DTX-1057 | BSC-MT-024783 | BSC-MT-024783 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
| DTX-1058 | BSC-MT-024784 | BSC-MT-024784 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
| DTX-1059 | BSC-MT-024785 | BSC-MT-024785 | Excel Spreadsheet, embedded.Clip Marketing Plan 2004 | | 401/402, 403, 801/802 |
| DTX-1060 | BSC-MT-024786 | BSC-MT-024787 | "T'was the Night Before Clip Mas" | | 401/402, 403, 801/802 |
| DTX-1061 | BSC-MT-024788 | BSC-MT-024788 | Resolution™ Clip Advertisement | | 401/402, 403, 801/802 |
| DTX-1062 | BSC-MT-024789 | BSC-MT-024789 | Placeholder Text | | 401/402, 403, 801/802 |
| DTX-1063 | BSC-MT-024790 | BSC-MT-024790 | Video | | 401/402, 403, 801/802, ID |
| DTX-1064 | BSC-MT-024791 | BSC-MT-024791 | Video | | 401/402, 403, 801/802, ID |
| DTX-1065 | BSC-MT-024792 | BSC-MT-024792 | Resolution™ Clip Product Information | | 401/402, 403, 801/802 |
| DTX-1066 | BSC-MT-024793 | BSC-MT-024795 | Draft Press Release | | 401/402, 403, 801/802 |
| DTX-1067 | BSC-MT-024796 | BSC-MT-024796 | Photo of Clipping Device | | 401/402, 403, 801/802 |
| DTX-1068 | BSC-MT-024797 | BSC-MT-024803 | Corp. SOP - Quality Records | | 401/402, 403, 801/802 |
| DTX-1069 | BSC-MT-024804 | BSC-MT-024814 | Global SOP Records and Information Management | | 401/402, 403, 801/802 |
| DTX-1070 | BSC-MT-032827 | BSC-MT-032874 | Resolution™ Clip Device Product Information | | 401/402, 403, 801/802 |
| DTX-1071 | BSC-MT-033575 | BSC-MT-033575 | Excel Spreadsheet, Res I Insource Model 1-18-12 | | 401/402, 403, 801/802 |
| DTX-1072 | BSC-MT-033580 | BSC-MT-033582 | Boston Scientific - Resolution I Summary | | 401/402, 403, 801/802 |
| DTX-1073 | BSC-MT-033605 | BSC-MT-033954 | Boston Scientific - IMS 2015 Q2 | | 401/402, 403, 801/802 |
| DTX-1074 | BSC-MT-034813 | BSC-MT-034832 | Lab Notebook No. N0261 for M. Adams | | 401/402, 403, 701/702, 801/802 |
| DTX-1075 | BSC-MT-037020 | BSC-MT-037020 | Excel Spreadsheet, Clips Fcst WW Aug 2002 | | 401/402, 403, 801/802 |
| DTX-1076 | BSC-MT-037126 | BSC-MT-037126 | Excel Spreadsheet, Multiclip Model | | 401/402, 403, 801/802 |
| DTX-1077 | BSC-MT-037256 | BSC-MT-037286 | Presentation: Boston Scientific - Hemostasis Clip Device - Pricing Update | | 401/402, 403, 801/802 |
| DTX-1078 | BSC-MT-037435 | BSC-MT-037472 | Charts Re Market Size | | 401/402, 403, 801/802 |
| DTX-1079 | BSC-MT-037941 | BSC-MT-037945 | Boston Scientific -Resolution II Core Meeting Minutes | | 401/402, 403, 801/802 |
| DTX-1080 | BSC-MT-037986 | BSC-MT-037990 | Resolution Clip MDM FSO Reasearch | | 401/402, 403, 801/802 |
| DTX-1081 | BSC-MT-038006 | BSC-MT-038007 | Cook - TriClip Endoscopic Clipping Device | | 401/402, 403, 801/802 |
| DTX-1082 | BSC-MT-038008 | BSC-MT-038011 | Article: Watanabe, "A New Type of Hemoclip Device" | | 401/402, 403, 801/802 |
| DTX-1083 | BSC-MT-038012 | BSC-MT-038015 | Olympus Product Information | | 401/402, 403, 801/802 |
| DTX-1084 | BSC-MT-038016 | BSC-MT-038103 | Conmed Catalog | | 401/402, 403, 801/802 |
| DTX-1085 | BSC-MT-038221 | BSC-MT-038244 | Boston Scientific Integrated Business Plan - Resolution II | | 401/402, 403, 801/802 |
| DTX-1086 | BSC-MT-039366 | BSC-MT-039366 | Chart: Resolution™ Features/Intended Benefits | | 401/402, 403, 801/802 |
| DTX-1087 | BSC-MT-039564 | BSC-MT-039584 | Boston Scientific - Clips Survey - Europe (Draft) | | 401/402, 403, 801/802 |
| DTX-1088 | BSC-MT-040904 | BSC-MT-040904 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II 2-28-05 | | 401/402, 403, 801/802 |
| DTX-1089 | BSC-MT-040905 | BSC-MT-040905 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II 4-5-05 | | 401/402, 403, 801/802 |
| DTX-1090 | BSC-MT-040906 | BSC-MT-040906 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II No Rotation  with Duo 4-7-05DC | | 401/402, 403, 801/802 |
| DTX-1091 | BSC-MT-040907 | BSC-MT-040907 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II with Rotation 2-28-05 | | 401/402, 403, 801/802 |
| DTX-1092 | BSC-MT-040908 | BSC-MT-040908 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II with Rotation 3-10-05 | | 401/402, 403, 801/802 |
| DTX-1093 | BSC-MT-040909 | BSC-MT-040909 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II with Rotation 4-5-05 | | 401/402, 403, 801/802 |
| DTX-1094 | BSC-MT-040910 | BSC-MT-040910 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II with Rotation 4-5-05DC | | 401/402, 403, 801/802 |
| DTX-1095 | BSC-MT-040911 | BSC-MT-040911 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II with Rotation 4-7-05 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1096 | BSC-MT-040912 | BSC-MT-040912 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II with Rotation | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1097 | BSC-MT-040913 | BSC-MT-040913 | Excel Spreadsheet, Final ROI SUMMARY Model Resolution II | | 401/402, 403, 801/802 |
| DTX-1098 | BSC-MT-040915 | BSC-MT-040915 | Excel Spreadsheet, Resolution II Project Financial Model 5-18-05 | | 401/402, 403, 801/802 |
| DTX-1099 | BSC-MT-040916 | BSC-MT-040916 | Excel Spreadsheet, Resolution II Project Financial Model 5-24-05 | | 401/402, 403, 801/802 |
| DTX-1100 | BSC-MT-040917 | BSC-MT-040917 | Excel Spreadsheet, Resolution II Project Financial Model 5-25-05 | | 401/402, 403, 801/802 |
| DTX-1101 | BSC-MT-040918 | BSC-MT-040918 | Excel Spreadsheet, Resolution II Project Financial Model 6-1-05DC | | 401/402, 403, 801/802 |
| DTX-1102 | BSC-MT-041095 | BSC-MT-041114 | Olympus Optical Co., Ltd. Competitive Profile | | 401/402, 403, 801/802 |
| DTX-1103 | BSC-MT-041467 | BSC-MT-041472 | Resolution Clip MDM FSO Research | | 401/402, 403, 801/802 |
| DTX-1104 | BSC-MT-041473 | BSC-MT-041483 | Boston Scientific - Resolution Clip FSO Survey | | 401/402, 403, 801/802 |
| DTX-1105 | BSC-MT-044334 | BSC-MT-044339 | Boston Scientific Competitor Strategies | | 401/402, 403, 801/802 |
| DTX-1106 | BSC-MT-051833 | BSC-MT-051848 | MVE Hemostasis 2002 Marketing Plan | | 401/402, 403, 801/802 |
| DTX-1107 | BSC-MT-051854 | BSC-MT-051871 | 2001 Goals and Objectives US Hemostasis Franchise | | 401/402, 403, 801/802 |
| DTX-1108 | BSC-MT-053043 | BSC-MT-053044 | Email Re Clip Market in Japan | | 401/402, 403, 801/802 |
| DTX-1109 | BSC-MT-053139 | BSC-MT-053185 | Boston Scientific - Clipping VOC - Quantitative Findings | | 401/402, 403, 801/802 |
| DTX-1110 | BSC-MT-064070 | BSC-MT-064124 | Boston Scientific - Resolution 360™ Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1111 | BSC-MT-064142 | BSC-MT-064181 | Boston Scientific - Resolution 360™ Clip | | 401/402, 403, 801/802 |
| DTX-1112 | BSC-MT-064654 | BSC-MT-064697 | Presentation: Boston Scientific - E0455 - Rotatable Resolution - Development Update | | 401/402, 403, 801/802 |
| DTX-1113 | BSC-MT-064806 | BSC-MT-064807 | Boston Scientific - Team Hemo | | 401/402, 403, 801/802 |
| DTX-1114 | BSC-MT-065624 | BSC-MT-065624 | Email Re Resolution II Clip - Global Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1115 | BSC-MT-065874 | BSC-MT-065876 | Email Re Commercial Availability of the Olympus Quc k Clip Pro | | 401/402, 403, 801/802 |
| DTX-1116 | BSC-MT-066547 | BSC-MT-066596 | Presentation: Boston Scientific - Advanced Hemostasis Portfolio | | 401/402, 403, 801/802 |
| DTX-1117 | BSC-MT-066647 | BSC-MT-066668 | Presentation: Boston Scientific - Advanced Hemostasis Portfolio | | 401/402, 403, 801/802 |
| DTX-1118 | BSC-MT-066669 | BSC-MT-066670 | Email Re Resolution/Hemoclip Financials | | 401/402, 403, 801/802 |
| DTX-1119 | BSC-MT-067146 | BSC-MT-067147 | Presentation: Boston Scientific - Resolution II Clip - Account Conversion Plan | | 401/402, 403, 801/802 |
| DTX-1120 | BSC-MT-067162 | BSC-MT-067162 | Excel Spreadsheet, RJ4 Supply Chain Forecast 3-17-06 | | 401/402, 403, 801/802 |
| DTX-1121 | BSC-MT-067251 | BSC-MT-067300 | Presentation: Boston Scientific - Resolution II Clip - Global Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1122 | BSC-MT-067301 | BSC-MT-067350 | Presentation: Boston Scientific - Resolution II Clip - Global Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1123 | BSC-MT-067351 | BSC-MT-067414 | Presentation: Boston Scientific - Resolution II Clip - Global Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1124 | BSC-MT-067415 | BSC-MT-067484 | Presentation: Boston Scientific - Resolution II Clip - Global Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1125 | BSC-MT-067572 | BSC-MT-067588 | Presentation: Boston Scientific - Resolution II Launch Package | | 401/402, 403, 801/802 |
| DTX-1126 | BSC-MT-067595 | BSC-MT-067598 | (Draft) Commercialization Plan for Resolution II Clip - Account Conversion Strategy | | 401/402, 403, 801/802 |
| DTX-1127 | BSC-MT-067599 | BSC-MT-067621 | (Draft) Resolution II - Account Conversion Strategy | | 401/402, 403, 801/802 |
| DTX-1128 | BSC-MT-067622 | BSC-MT-067623 | Boston Scientific - Resolution II - Account Clip Conversion Plan | | 401/402, 403, 801/802 |
| DTX-1129 | BSC-MT-067624 | BSC-MT-067631 | Presentation: Boston Scientific - Resolution II Clip | | 401/402, 403, 801/802 |
| DTX-1130 | BSC-MT-067990 | BSC-MT-068089 | Presentation: Boston Scientific - Resolution II Clip - Global Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1131 | BSC-MT-069534 | BSC-MT-069534 | Excel Spreadsheet, Cole Lafferty Franchise 2013 Education Programs | | 401/402, 403, 801/802 |
| DTX-1132 | BSC-MT-071371 | BSC-MT-071382 | Presentation: Boston Scientific - E0455 - Rotatable Res - COGs Summary | | 401/402, 403, 801/802 |
| DTX-1133 | BSC-MT-071756 | BSC-MT-071758 | Endoscopy R&D - Project Review | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1134 | BSC-MT-071765 | BSC-MT-071765 | Excel Spreadsheet, FourVoicesGuidingQs-v4 - Marketing | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1135 | BSC-MT-074233 | BSC-MT-074236 | Boston Scientific - Clinical Outcomes - Leave Nothing to Chance | | 401/402, 403, 801/802 |
| DTX-1136 | BSC-MT-074832 | BSC-MT-074832 | Excel Spreadsheet, Hemoclip ROI 10-24-03 | | 401/402, 403, 801/802 |
| DTX-1137 | BSC-MT-075312 | BSC-MT-075312 | Excel Spreadsheet, Forecasting Tool Hemo  F3 2014  8.11.14 | | 401/402, 403, 801/802 |
| DTX-1138 | BSC-MT-075359 | BSC-MT-075396 | Presentation: Boston Scientific - Core GI/ Surgical Endoscopy- 2008 Marketing Plan | | 401/402, 403, 801/802 |
| DTX-1139 | BSC-MT-075675 | BSC-MT-075682 | Presentation: Resolution II Design Concept Review | | 401/402, 403, 801/802 |
| DTX-1140 | BSC-MT-075831 | BSC-MT-075832 | Email Re HCD Transfer Price Estimates | | 401/402, 403, 801/802 |
| DTX-1141 | BSC-MT-075983 | BSC-MT-075983 | Chart Re Product Comparisons | | 401/402, 403, 801/802 |
| DTX-1142 | BSC-MT-077650 | BSC-MT-077650 | Boston Scientific - Resolution™ Clip Packaging Information | | 401/402, 403, 801/802 |
| DTX-1143 | BSC-MT-077760 | BSC-MT-077762 | Email Re Resolution Clips Exceeds 1 Million Units Sold in 2013 | | 401/402, 403, 801/802 |
| DTX-1144 | BSC-MT-077767 | BSC-MT-077768 | Email Re Resolution Clip Training/Education Programs | | 401/402, 403, 801/802 |
| DTX-1145 | BSC-MT-077822 | BSC-MT-077823 | Email Re Portfolio Review Action Items | | 401/402, 403, 801/802 |
| DTX-1146 | BSC-MT-077827 | BSC-MT-077827 | Excel Spreadsheet, Copy of Res IIIw.rotationMJApril26.2011 | | 401/402, 403, 801/802 |
| DTX-1147 | BSC-MT-077846 | BSC-MT-077846 | Email Re Cook Clips | | 401/402, 403, 801/802 |
| DTX-1148 | BSC-MT-077850 | BSC-MT-077850 | Email Re Cook's New Clip | | 401/402, 403, 801/802 |
| DTX-1149 | BSC-MT-078061 | BSC-MT-078062 | Email Re Financial Model Preparation for Portfolio Review | | 401/402, 403, 801/802 |
| DTX-1150 | BSC-MT-078107 | BSC-MT-078125 | Chart Re MSpec, Performance Expectation, DIDR Plan etc. | | 401/402, 403, 801/802 |
| DTX-1151 | BSC-MT-078152 | BSC-MT-078152 | Excel Spreadsheet, Dec14 Sales v Plan - Hemo | | 401/402, 403, 801/802 |
| DTX-1152 | BSC-MT-078161 | BSC-MT-078161 | Excel Spreadsheet, embedded.43710  2.3 | | 401/402, 403, 801/802 |
| DTX-1153 | BSC-MT-078168 | BSC-MT-078170 | Email Re AMEA Endoscopy Report October 2015 | | 401/402, 403, 801/802 |
| DTX-1154 | BSC-MT-078171 | BSC-MT-078175 | AMEA Endoscopy Report October 2015 | | 401/402, 403, 801/802 |
| DTX-1155 | BSC-MT-078240 | BSC-MT-078250 | Presentation: Boston Scientific - Olympus Strategy Task Force - EBR Review | | 401/402, 403, 801/802 |
| DTX-1156 | BSC-MT-078278 | BSC-MT-078278 | Excel Spreadsheet, Dec14 Sales v Plan - Hemo | | 401/402, 403, 801/802 |
| DTX-1157 | BSC-MT-078279 | BSC-MT-078280 | Email Re Previous Vanguard Pricing on Instinct | | 401/402, 403, 801/802 |
| DTX-1158 | BSC-MT-078287 | BSC-MT-078288 | Email Re Previous Vanguard Pricing on Instinct | | 401/402, 403, 801/802 |
| DTX-1159 | BSC-MT-078332 | BSC-MT-078334 | Email Re Commercial Availability of the Olympus QuickClipPro | | 401/402, 403, 801/802 |
| DTX-1160 | BSC-MT-078341 | BSC-MT-078343 | Email Re AMEA Endoscopy Report February 2015 | | 401/402, 403, 801/802 |
| DTX-1161 | BSC-MT-078344 | BSC-MT-078347 | AMEA Endoscopy Report February 2015 | | 401/402, 403, 801/802 |
| DTX-1162 | BSC-MT-079329 | BSC-MT-079331 | Email Re Scope - New GIE Guidelines | | 401/402, 403, 801/802 |
| DTX-1163 | BSC-MT-079388 | BSC-MT-079388 | Excel Spreadsheet | | 401/402, 403, 801/802, ID |
| DTX-1164 | BSC-MT-079391 | BSC-MT-079391 | Excel Spreadsheet | | 401/402, 403, 801/802, ID |
| DTX-1165 | BSC-MT-079393 | BSC-MT-079393 | Excel Spreadsheet | | 401/402, 403, 801/802, ID |
| DTX-1166 | BSC-MT-079482 | BSC-MT-079484 | Boston Scientific - 2013 Global Competitive Market Intelligence Report | | 401/402, 403, 801/802 |
| DTX-1167 | BSC-MT-079497 | BSC-MT-079497 | Email Re Resolution/Instinct Retention Study | | 401/402, 403, 801/802 |
| DTX-1168 | BSC-MT-079941 | BSC-MT-079962 | Presentation: Boston Scientific - Hemostasis - Resolution Clip & Core Hemo | | 401/402, 403, 801/802 |
| DTX-1169 | BSC-MT-080118 | BSC-MT-080119 | Email Re Engaging Cook Clip Accounts on Jaw Comparisons and MRI | | 401/402, 403, 801/802 |
| DTX-1170 | BSC-MT-080124 | BSC-MT-080125 | Email Re Engaging Cook Clip Accounts on Jaw Comparisons and MRI | | 401/402, 403, 801/802 |
| DTX-1171 | BSC-MT-080878 | BSC-MT-080880 | Email Re Additional Feedback on Cook Instinct Clip | | 401/402, 403, 801/802 |
| DTX-1172 | BSC-MT-081277 | BSC-MT-081277 | Excel Spreadsheet, NG Clip NPV Model MRI Only - Best Case May '12 | | 401/402, 403, 801/802 |
| DTX-1173 | BSC-MT-081278 | BSC-MT-081278 | Excel Spreadsheet, NG Clip revenue and SOM projections | | 401/402, 403, 801/802 |
| DTX-1174 | BSC-MT-081510 | BSC-MT-081511 | Email Re Cook Instinct Clip Update | | 401/402, 403, 801/802 |
| DTX-1175 | BSC-MT-081538 | BSC-MT-081539 | Email Re Cook Instinct Clip Update | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1176 | BSC-MT-082417 | BSC-MT-082417 | Graph: 2013 Resolution Deman/Capacity | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1177 | BSC-MT-082438 | BSC-MT-082483 | Presentation: Boston Scientific - Hemostatic Clip Overview | | 401/402, 403, 801/802 |
| DTX-1178 | BSC-MT-082558 | BSC-MT-082558 | Email Re Draft FSO Communication on Clip Advertisement | | 401/402, 403, 801/802 |
| DTX-1179 | BSC-MT-082659 | BSC-MT-082660 | Email Re New Cook Clip Competitive Response Materials | | 401/402, 403, 801/802 |
| DTX-1180 | BSC-MT-082746 | BSC-MT-082746 | Email Re New Cook Clip Competitive Response Materials iPad Tool | | 401/402, 403, 801/802 |
| DTX-1181 | BSC-MT-082749 | BSC-MT-082749 | Email Re Cook Instinct Clip Update | | 401/402, 403, 801/802 |
| DTX-1182 | BSC-MT-082784 | BSC-MT-082784 | Email Re US Clip Market Share Analysis - Cook Impact | | 401/402, 403, 801/802 |
| DTX-1183 | BSC-MT-082787 | BSC-MT-082788 | Email Re Booth Walk Through Talking Points | | 401/402, 403, 801/802 |
| DTX-1184 | BSC-MT-082912 | BSC-MT-082914 | Email Re Competitive Clip Update | | 401/402, 403, 801/802 |
| DTX-1185 | BSC-MT-083174 | BSC-MT-083176 | Email Re National Training Conference - Clipping Key Points | | 401/402, 403, 801/802 |
| DTX-1186 | BSC-MT-083225 | BSC-MT-083226 | Email Re Resolution Clip and Cook Instinct Clip DDW/SGNS Update | | 401/402, 403, 801/802 |
| DTX-1187 | BSC-MT-083345 | BSC-MT-083419 | Boston Scientific Endoscopy - 2012 Global Hemoclip Strategy Review | | 401/402, 403, 801/802 |
| DTX-1188 | BSC-MT-083497 | BSC-MT-083534 | Boston Scientific - Clipping Strategy Session | | 401/402, 403, 801/802 |
| DTX-1189 | BSC-MT-083680 | BSC-MT-083717 | Boston Scientific - Clipping Strategy Session | | 401/402, 403, 801/802 |
| DTX-1190 | BSC-MT-083941 | BSC-MT-083942 | Email Re New Cook Instinct Clip Competitive Response iPad Tool | | 401/402, 403, 801/802 |
| DTX-1191 | BSC-MT-084384 | BSC-MT-084384 | Cook Instinct Clip Timeline | | 401/402, 403, 801/802 |
| DTX-1192 | BSC-MT-084716 | BSC-MT-084717 | Email Re Cook Instinct Clip Launch Update | | 401/402, 403, 801/802 |
| DTX-1193 | BSC-MT-084883 | BSC-MT-084885 | Email Re Cook Instinct Clip Launch Update | | 401/402, 403, 801/802 |
| DTX-1194 | BSC-MT-085205 | BSC-MT-085278 | Boston Scientific Endoscopy - 2012 Global Hemoclip Strategy Review | | 401/402, 403, 801/802 |
| DTX-1195 | BSC-MT-085311 | BSC-MT-085312 | Email Re Cook Instinct Clip Launch Update | | 401/402, 403, 801/802 |
| DTX-1196 | BSC-MT-085965 | BSC-MT-085968 | Email Re MDM Competitive Clip Pole Info | | 401/402, 403, 801/802 |
| DTX-1197 | BSC-MT-086278 | BSC-MT-086280 | Email Re Instinct Clip Product Performance - Competitive Update | | 401/402, 403, 801/802 |
| DTX-1198 | BSC-MT-086402 | BSC-MT-086403 | Email Re Instinct Clip Product Performance - Competitive Update | | 401/402, 403, 801/802 |
| DTX-1199 | BSC-MT-086795 | BSC-MT-086797 | Email Re Call | | 401/402, 403, 801/802 |
| DTX-1200 | BSC-MT-086896 | BSC-MT-086897 | Email Re Clip Field Ride - France | | 401/402, 403, 801/802 |
| DTX-1201 | BSC-MT-087369 | BSC-MT-087370 | Email Re Petrou Call | | 401/402, 403, 801/802 |
| DTX-1202 | BSC-MT-087399 | BSC-MT-087401 | Boston Scientific - Global Competitive Market Intelligence Report | | 401/402, 403, 801/802 |
| DTX-1203 | BSC-MT-087541 | BSC-MT-087541 | Excel Spreadsheet, December Master Clips At risk Accounts Monthly Tracker | | 401/402, 403, 801/802 |
| DTX-1204 | BSC-MT-087545 | BSC-MT-087545 | Excel Spreadsheet, December Master Clips At risk Accounts Monthly Tracker | | 401/402, 403, 801/802 |
| DTX-1205 | BSC-MT-087712 | BSC-MT-087713 | Email Re Instinct | | 401/402, 403, 801/802 |
| DTX-1206 | BSC-MT-088424 | BSC-MT-088425 | Email Re Call with Dr. Holm | | 401/402, 403, 801/802 |
| DTX-1207 | BSC-MT-088634 | BSC-MT-088634 | Excel Spreadsheet, embedded.57380_1.6 | | 401/402, 403, 801/802 |
| DTX-1208 | BSC-MT-089663 | BSC-MT-089665 | Email Re Cook Instinct Talking Points | | 401/402, 403, 801/802 |
| DTX-1209 | BSC-MT-089669 | BSC-MT-089670 | Email Re Cook Instinct Talking Points | | 401/402, 403, 801/802 |
| DTX-1210 | BSC-MT-090875 | BSC-MT-090875 | Excel Spreadsheet, embedded.57836_1.1 | | 401/402, 403, 801/802 |
| DTX-1211 | BSC-MT-091384 | BSC-MT-091414 | Biosurgicals for Hemostasis in GI Endoscopy | | 401/402, 403, 801/802 |
| DTX-1212 | BSC-MT-091540 | BSC-MT-091541 | Email Re Risk/Lost Accounts Instinct | | 401/402, 403, 801/802 |
| DTX-1213 | BSC-MT-091962 | BSC-MT-091962 | Excel Spredsheet, Res PPMS Data | | 401/402, 403, 801/802 |
| DTX-1214 | BSC-MT-091965 | BSC-MT-091965 | Excel Spreadsheet, Endoscopy Master Price List 2005 11-05 | | 401/402, 403, 801/802 |
| DTX-1215 | BSC-MT-091966 | BSC-MT-091966 | Excel Spreadsheet, Endoscopy Master Price List 2006 10-06 | | 401/402, 403, 801/802 |
| DTX-1216 | BSC-MT-091967 | BSC-MT-091967 | Excel Spreadsheet, Endoscopy Master Price List 2007 12-07 | | 401/402, 403, 801/802 |
| DTX-1217 | BSC-MT-091968 | BSC-MT-091968 | Excel Spreadsheet, Endoscopy Master Price List 2008 12-08 | | 401/402, 403, 801/802 |
| DTX-1218 | BSC-MT-091969 | BSC-MT-091969 | Excel Spreadsheet, Endoscopy Master Price List 2009 10-09 | | 401/402, 403, 801/802 |
| DTX-1219 | BSC-MT-091970 | BSC-MT-091970 | Excel Spreadsheet, Endoscopy Master Price List 2010 12-10 | | 401/402, 403, 801/802 |
| DTX-1220 | BSC-MT-091971 | BSC-MT-091971 | Excel Spreadsheet, Endoscopy Master Price List 2011 12-11 | | 401/402, 403, 801/802 |
| DTX-1221 | BSC-MT-091972 | BSC-MT-091972 | Excel Spreadsheet, Endoscopy Master Price List 2012 11-12 | | 401/402, 403, 801/802 |
| DTX-1222 | BSC-MT-091973 | BSC-MT-091973 | Excel Spreadsheet, Endoscopy Master Price List 2013 10-13 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1223 | BSC-MT-091974 | BSC-MT-091974 | Excel Spreadsheet, Endoscopy Master Price List 2014 10-14 | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1224 | BSC-MT-091975 | BSC-MT-091975 | Excel Spreadsheet, Endoscopy Master Price List 2015 10-15 | | 401/402, 403, 801/802 |
| DTX-1225 | BSC-MT-091976 | BSC-MT-091976 | Excel Spreadsheet, Endoscopy Master Price List 2016 10-16 | | 401/402, 403, 801/802 |
| DTX-1226 | BSC-MT-091985 | BSC-MT-091985 | Excel Spreadsheet, Resolution Clip Legal Request 2004 - 2016 | | 401/402, 403, 801/802 |
| DTX-1227 | BSC-MT-091999 | BSC-MT-091999 | Excel Spreadsheet, R&D project list | | 401/402, 403, 801/802 |
| DTX-1228 | BSC-MT-092000 | BSC-MT-092000 | Excel Spreadsheet, P&L guide - what to allocate vs direct expenses | | 401/402, 403, 801/802 |
| DTX-1229 | BSC-MT-092001 | BSC-MT-092001 | Excel Spreadsheet, US  Global P&L 2012-2016 | | 401/402, 403, 801/802 |
| DTX-1230 | BSC-MT-092384 | BSC-MT-092390 | 2014 Forecast Summary & Assumptions - Resolution Clip | | 401/402, 403, 801/802 |
| DTX-1231 | BSC-MT-092758 | BSC-MT-092785 | 8th Annual SIES 2015 | | 401/402, 403, 801/802 |
| DTX-1232 | BSC-MT-092968 | BSC-MT-092986 | Boston Scientific - Hemostasis Franchise Technology Review | | 401/402, 403, 801/802 |
| DTX-1233 | BSC-MT-093324 | BSC-MT-093348 | Boston Scientific - Resolution 360$^{TM}$ Clip | | 401/402, 403, 801/802 |
| DTX-1234 | BSC-MT-093392 | BSC-MT-093397 | Boston Scientific - Resolution 360$^{TM}$ Value Story | | 401/402, 403, 801/802 |
| DTX-1235 | BSC-MT-093441 | BSC-MT-093443 | Boston Scientific - 2014 Clip Growth Analysis | | 401/402, 403, 801/802 |
| DTX-1236 | BSC-MT-101217 | BSC-MT-101251 | Presentation: Boston Scientific - Next Generation Clip - Rotation | | 401/402, 403, 801/802 |
| DTX-1237 | BSC-MT-101452 | BSC-MT-101454 | Emal Re AMC Call | | 401/402, 403, 801/802 |
| DTX-1238 | BSC-MT-101507 | BSC-MT-101508 | Email Re AMC Call | | 401/402, 403, 801/802 |
| DTX-1239 | BSC-MT-101597 | BSC-MT-101600 | Email Re Clip Pricing Strategy | | 401/402, 403, 801/802 |
| DTX-1240 | BSC-MT-101603 | BSC-MT-101606 | Email Re Clip Pricing Strategy | | 401/402, 403, 801/802 |
| DTX-1241 | BSC-MT-101614 | BSC-MT-101628 | Email Re Hemostasis Road Trip | | 401/402, 403, 801/802 |
| DTX-1242 | BSC-MT-101669 | BSC-MT-101674 | Email Re Clip Pricing Strategy | | 401/402, 403, 801/802 |
| DTX-1243 | BSC-MT-101716 | BSC-MT-101719 | Emal Re Feedback on Resolution 360 - San Diego Territory | | 401/402, 403, 801/802 |
| DTX-1244 | BSC-MT-101737 | BSC-MT-101976 | B iblography - Endoclip/Hemoclip | | 401/402, 403, 801/802 |
| DTX-1245 | BSC-MT-102272 | BSC-MT-102272 | Boston Scientific - Q3 Mid America Division Strategic Priorities | | 401/402, 403, 801/802 |
| DTX-1246 | BSC-MT-102773 | BSC-MT-102774 | Graph: Clip ADU/ASP Timeline | | 401/402, 403, 801/802 |
| DTX-1247 | BSC-MT-102984 | BSC-MT-102990 | Email Re ISP - Resolution 360 for Cook Instrinct | | 401/402, 403, 801/802 |
| DTX-1248 | BSC-MT-102997 | BSC-MT-103019 | Presentation: Boston Scientific - Pricing Clips in Germany 2017-2018 | | 401/402, 403, 801/802 |
| DTX-1249 | BSC-MT-104096 | BSC-MT-104099 | Email Re Micro-Tech - New Hemoclip in Market | | 401/402, 403, 801/802 |
| DTX-1250 | BSC-MT-104406 | BSC-MT-104410 | Email Re 360 | | 401/402, 403, 801/802 |
| DTX-1251 | BSC-MT-106002 | BSC-MT-106004 | Email Re Micro-Tech Call | | 401/402, 403, 801/802 |
| DTX-1252 | BSC-MT-106005 | BSC-MT-106007 | Email Re Micro-Tech Call | | 401/402, 403, 801/802 |
| DTX-1253 | BSC-MT-106008 | BSC-MT-106010 | Email Re Micro-Tech Call | | 401/402, 403, 801/802 |
| DTX-1254 | BSC-MT-106011 | BSC-MT-106022 | Email Re Literature Request | | 401/402, 403, 801/802 |
| DTX-1255 | BSC-MT-106023 | BSC-MT-106026 | Email Re Res 360 Sales | | 401/402, 403, 801/802 |
| DTX-1256 | BSC-MT-106027 | BSC-MT-106030 | Email Re Res 360 Sales | | 401/402, 403, 801/802 |
| DTX-1257 | BSC-MT-106031 | BSC-MT-106035 | Email Re Res 360 | | 401/402, 403, 801/802 |
| DTX-1258 | BSC-MT-106036 | BSC-MT-106041 | Email Re Res 360 Results from UEGW/DDW | | 401/402, 403, 801/802 |
| DTX-1259 | BSC-MT-106042 | BSC-MT-106047 | Email Re Res 360 Results from UEGW/DDW | | 401/402, 403, 801/802 |
| DTX-1260 | BSC-MT-106048 | BSC-MT-106053 | Email Re Res 360 Results from UEGW/DDW | | 401/402, 403, 801/802 |
| DTX-1261 | BSC-MT-106054 | BSC-MT-106059 | Email Re Res 360 Results from UEGW/DDW | | 401/402, 403, 801/802 |
| DTX-1262 | BSC-MT-106060 | BSC-MT-106062 | Email Re Endoscopy Brothers on Twitter | | 401/402, 403, 801/802 |
| DTX-1263 | BSC-MT-106063 | BSC-MT-106065 | Email Re Endoscopy Brothers on Twitter | | 401/402, 403, 801/802 |
| DTX-1264 | BSC-MT-106066 | BSC-MT-106070 | Email Re 360 Training Points | | 401/402, 403, 801/802 |
| DTX-1265 | BSC-MT-106071 | BSC-MT-106075 | Email Re Res 360 Video | | 401/402, 403, 801/802 |
| DTX-1266 | BSC-MT-106076 | BSC-MT-106080 | Email Re Res 360 Video | | 401/402, 403, 801/802 |
| DTX-1267 | BSC-MT-106081 | BSC-MT-106089 | Email Re 360 Training Points | | 401/402, 403, 801/802 |
| DTX-1268 | BSC-MT-106108 | BSC-MT-106114 | Email Re ISP - Resolution 360 for Cook Instrinct | | 401/402, 403, 801/802 |
| DTX-1269 | BSC-MT-106197 | BSC-MT-106202 | Email Re 2016 Bench Study | | 401/402, 403, 801/802 |
| DTX-1270 | BSC-MT-106828 | BSC-MT-106837 | Presentation: Resolution 360 Limited Launch - Lab In-Service Ideas | | 401/402, 403, 801/802 |
| DTX-1271 | BSC-MT-106879 | BSC-MT-106885 | Email Re ISP - Resolution 360 for Cook Instrinct | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-1272 | BSC-MT-107192 | BSC-MT-107192 | Excel Spreadsheet, embedded.59663_1.2 | | 401/402, 403, 801/802 |
| DTX-1273 | BSC-MT-107454 | BSC-MT-107507 | Presentation: Boston Scientific - Resolution 360™ Clip - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1274 | BSC-MT-109416 | BSC-MT-109417 | Email Re Jan 25th Res 360 Value Meeting | | 401/402, 403, 801/802 |
| DTX-1275 | BSC-MT-109673 | BSC-MT-109674 | Email Re VoV | | 401/402, 403, 801/802 |
| DTX-1276 | BSC-MT-109887 | BSC-MT-109940 | Boston Scientific - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1277 | BSC-MT-109954 | BSC-MT-110003 | Boston Scientific - Commericialization Plan | | 401/402, 403, 801/802 |
| DTX-1278 | BSC-MT-110018 | BSC-MT-110067 | Boston Scientific - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1279 | BSC-MT-110072 | BSC-MT-110072 | Excel Spreadsheet | | 401/402, 403, 801/802 |
| DTX-1280 | BSC-MT-110075 | BSC-MT-110075 | Excel Spreadsheet | | 401/402, 403, 801/802 |
| DTX-1281 | BSC-MT-110076 | BSC-MT-110076 | Excel Spreadsheet | | 401/402, 403, 801/802 |
| DTX-1282 | BSC-MT-110077 | BSC-MT-110077 | Excel Spreadsheet, | | 401/402, 403, 801/802 |
| DTX-1283 | BSC-MT-110078 | BSC-MT-110078 | Excel Spreadsheet | | 401/402, 403, 801/802 |
| DTX-1284 | BSC-MT-111487 | BSC-MT-111725 | Boston Scientific - Resolution 360™ Clip - 510(k) - K151082 | | 401/402, 403, 801/802, PMIL |
| DTX-1285 | BSC-MT-111888 | BSC-MT-111889 | Boston Scientific - Endoscopy R&D Project Review | | 401/402, 403, 801/802 |
| DTX-1286 | BSC-MT-111890 | BSC-MT-111908 | Presentation: Boston Scientific - E0455 - Rotatable Res Clip Progress Review | | 401/402, 403, 801/802 |
| DTX-1287 | BSC-MT-111955 | BSC-MT-111985 | Presentation: Boston Scientific - Hemostatic Clip Overview | | 401/402, 403, 801/802 |
| DTX-1288 | BSC-MT-112193 | BSC-MT-112287 | Presentation: Boston Scientific - GI & Pulmonary Therapies Portfolio Review Introduction | | 401/402, 403, 801/802 |
| DTX-1289 | BSC-MT-112316 | BSC-MT-112389 | Presentation: Boston Scientific - GI Therapies Portfolio Review Introduction | | 401/402, 403, 801/802 |
| DTX-1290 | BSC-MT-112390- | BSC-MT-112407 | Presentation: Boston Scientific Endoscopy - Portfolio Guidance | | 401/402, 403, 801/802 |
| DTX-1291 | BSC-MT-112484 | BSC-MT-112530 | Presentation: Boston Scientific - Resolution 360™ Clip - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1292 | BSC-MT-112574 | BSC-MT-112630 | Presentation: Boston Scientific - Resolution 360™ - Commercialization Review | | 401/402, 403, 801/802 |
| DTX-1293 | BSC-MT-112651 | BSC-MT-112704 | Presentation: Boston Scientific - Resolution 360™ Clip - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1294 | BSC-MT-112705 | BSC-MT-112758 | Presentation: Boston Scientific - Resolution 360™ Clip - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1295 | BSC-MT-112759 | BSC-MT-112808 | Boston Scientific - Hemostats Strategic Plan 2015-2020 | | 401/402, 403, 801/802 |
| DTX-1296 | BSC-MT-112876 | BSC-MT-112918 | Presentation: Boston Scientific - Resolution 360™ Clip - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1297 | BSC-MT-114246 | BSC-MT-114247 | Email Re Clip Competitive Update - New Oympus Clip Has FDA Clearance | | 401/402, 403, 801/802 |
| DTX-1298 | BSC-MT-114595 | BSC-MT-114596 | Olympus Production Information | | 401/402, 403, 801/802 |
| DTX-1299 | BSC-MT-116599 | BSC-MT-116604 | Contract Manufacturing Agreement between BSS and BSC | | 401/402, 403, 801/802 |
| DTX-1300 | BSC-MT-116627 | BSC-MT-116628 | Amendment to Agreement for Contract Research and Development between Scimed and BSC | | 401/402, 403, 801/802 |
| DTX-1301 | BSC-MT-116629 | BSC-MT-116638 | Agreement for Contract Research and Development between Scimed and BSC | | 401/402, 403, 801/802 |
| DTX-1302 | BSC-MT-116680 | BSC-MT-116680 | Excel Spreadsheet, US  Global PL 2012-2016 updated | | 401/402, 403, 801/802 |
| DTX-1303 | BSC-MT-116681 | BSC-MT-116681 | Excel Spreadsheet, Resolution Clip Legal Request 2004 - 2017_updated | | 401/402, 403, 801/802 |
| DTX-1304 | BSC-MT-116682 | BSC-MT-116693 | 1Q 2011 Hemo Clips | | 401/402, 403, 801/802 |
| DTX-1305 | BSC-MT-116694 | BSC-MT-116694 | ASP 2004 Q2 - 2006 Q2 | | 401/402, 403, 801/802 |
| DTX-1306 | BSC-MT-116695 | BSC-MT-116695 | Dollar Market Share 2004 Q2 - 2006 Q2 | | 401/402, 403, 801/802 |
| DTX-1307 | BSC-MT-116696 | BSC-MT-116696 | US Market Share 2004 Q2 - 2006 Q2 | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | |
|---|---|---|---|---|
| DTX-1308 | BSC-MT-116697 | BSC-MT-116697 | Hemostasis Market Share Size | 401/402, 403, 801/802 |
| DTX-1309 | BSC-MT-116698 | BSC-MT-116698 | Hemostasis Market Share Size | 401/402, 403, 801/802 |
| DTX-1310 | BSC-MT-116699 | BSC-MT-116699 | Hemostasis Market Share Size | 401/402, 403, 801/802 |
| DTX-1311 | BSC-MT-116700 | BSC-MT-116700 | Hemostasis Market Share Size | 401/402, 403, 801/802 |
| DTX-1312 | BSC-MT-116701 | BSC-MT-116701 | Excel Spreadsheet, US Markets for Gastrointestinal Endoscopy 2007 | 401/402, 403, 801/802 |
| DTX-1313 | BSC-MT-116702 | BSC-MT-116713 | 4Q 2010 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1314 | BSC-MT-116714 | BSC-MT-116725 | 2Q 2010 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1315 | BSC-MT-116726 | BSC-MT-116737 | 2Q 2011 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1316 | BSC-MT-116738 | BSC-MT-116749 | 4Q 2007 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1317 | BSC-MT-116750 | BSC-MT-116761 | 3Q 2010 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1318 | BSC-MT-116762 | BSC-MT-116773 | 3Q 2011 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1319 | BSC-MT-116774 | BSC-MT-116785 | 1Q 2012 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1320 | BSC-MT-116786 | BSC-MT-116797 | 4Q 2011 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1321 | BSC-MT-116798 | BSC-MT-116809 | 3Q 2011 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1322 | BSC-MT-116810 | BSC-MT-116821 | 2Q 2012 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1323 | BSC-MT-116834 | BSC-MT-116845 | 4Q 2012 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1324 | BSC-MT-116846 | BSC-MT-116857 | 4Q 2013 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1325 | BSC-MT-116858 | BSC-MT-116869 | 1Q 2013 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1326 | BSC-MT-116870 | BSC-MT-116881 | 1Q 2014 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1327 | BSC-MT-116942 | BSC-MT-116953 | 4Q 2015 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1328 | BSC-MT-116954 | BSC-MT-116965 | 2Q 2008 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1329 | BSC-MT-116966 | BSC-MT-116977 | 2Q 2016 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1330 | BSC-MT-116978 | BSC-MT-116989 | 1Q 2009 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1331 | BSC-MT-116990 | BSC-MT-117001 | 3Q 2009 Hemo Clips Percent Market Share | 401/402, 403, 801/802 |
| DTX-1332 | BSC-MT-117050 | BSC-MT-117074 | Boston Scientific - Hemostasis - Rolling 12 Month Market Share | 401/402, 403, 801/802 |
| DTX-1333 | BSC-MT-117075 | BSC-MT-117086 | 2Q 2015 Over the Scope Clips | 401/402, 403, 801/802 |
| DTX-1334 | BSC-MT-117087 | BSC-MT-117098 | 2Q 2016 Over the Scope Clips | 401/402, 403, 801/802 |
| DTX-1335 | BSC-MT-117099 | BSC-MT-117123 | Boston Scientific - 3Q 2006 Hemostasis - Rolling 12 Month Market Share | 401/402, 403, 801/802 |
| DTX-1336 | BSC-MT-117124 | BSC-MT-117163 | 2Q 2007 Hemostasis Percent Market Share | 401/402, 403, 801/802 |
| DTX-1337 | BSC-MT-117164 | BSC-MT-117203 | 1Q 2007 Hemostasis Percent Market Share | 401/402, 403, 801/802 |
| DTX-1338 | BSC-MT-117204 | BSC-MT-117436 | U.S. Markets for Gastrointestinal Devices 2010 | 401/402, 403, 801/802 |
| DTX-1339 | BSC-MT-117437 | BSC-MT-117544 | U.S. Markets for Gastrointestinal Endoscopy Devices 2007 | 401/402, 403, 801/802 |
| DTX-1340 | BSC-MT-117545 | BSC-MT-117675 | U.S. Markets for Gastrointestinal Endoscopy Devices 2005 | 401/402, 403, 801/802 |
| DTX-1341 | BSC-MT-117676 | BSC-MT-117940 | U.S. Markets for Gastrointestinal Endoscopy Devices 2008 | 401/402, 403, 801/802 |
| DTX-1342 | BSC-MT-117941 | BSC-MT-117941 | Excel Spreadsheet, Europe 2017 | 401/402, 403, 801/802 |
| DTX-1343 | BSC-MT-117942 | BSC-MT-117942 | Excel Spreadsheet, Europe Market Model 2014 | 401/402, 403, 801/802 |
| DTX-1344 | BSC-MT-117943 | BSC-MT-117943 | Excel Spreadsheet, Europe Market Model 2015 | 401/402, 403, 801/802 |
| DTX-1345 | BSC-MT-117944 | BSC-MT-117944 | Excel Spreadsheet, Europe2016 | 401/402, 403, 801/802 |
| DTX-1346 | BSC-MT-117945 | BSC-MT-117945 | Excel Spreadsheet, Europe_Market_Model 2013v2 | 401/402, 403, 801/802 |
| DTX-1347 | BSC-MT-117946 | BSC-MT-117946 | Excel Spreadsheet, Scrap Res Clips 2012-2017 | 401/402, 403, 801/802 |
| DTX-1348 | BSC-MT-117947 | BSC-MT-117947 | Boston Scientific- Resolution™ Clip Device Product Information | 401/402, 403, 801/802 |
| DTX-1349 | BSC-MT-117948 | BSC-MT-117957 | Boston Scientific- Resolution™ Clip Device Product Information | 401/402, 403, 801/802 |
| DTX-1350 | BSC-MT-117958 | BSC-MT-117959 | Boston Scientific - Key Insights from Pricing Research | 401/402, 403, 801/802 |
| DTX-1351 | BSC-MT-118097 | BSC-MT-118124 | Presentation: Boston Scientific - Resolution II - Discrete Choice Model | 401/402, 403, 801/802 |
| DTX-1352 | BSC-MT-118125 | BSC-MT-118130 | Presentation: Boston Scientific - Resolution II -Launch Update | 401/402, 403, 801/802 |
| DTX-1353 | BSC-MT-118131 | BSC-MT-118136 | Presentation: Boston Scientific - Senior Management Request | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1354 | BSC-MT-118137 | BSC-MT-118153 | Presentation: Boston Scientific - Resoltion[TM] Clip MR Conditional Claim - Launch Training | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1355 | BSC-MT-118154 | BSC-MT-118194 | Presentation: Boston Scientific - Clipping VOC - Quantitative Findings | | 401/402, 403, 801/802 |
| DTX-1356 | BSC-MT-118195 | BSC-MT-118208 | Presentation: Boston Scientific - Competitive Analysis Summary (Updated) | | 401/402, 403, 801/802 |
| DTX-1357 | BSC-MT-118209 | BSC-MT-118272 | Presentation: Boston Scientific - GI & Pulmonary Therapy | | 401/402, 403, 801/802 |
| DTX-1358 | BSC-MT-118312 | BSC-MT-118320 | Boston Scientific - Resolution 360[TM] Clip Product Information | | 401/402, 403, 801/802 |
| DTX-1359 | BSC-MT-118321 | BSC-MT-118328 | Boston Scientific - Competitive Hemostasis Clip Analysis | | 401/402, 403, 801/802 |
| DTX-1360 | BSC-MT-118337 | BSC-MT-118359 | Presentation: Boston Scientific- Pricing Clips in Germany 2017 & 2018 | | 401/402, 403, 801/802 |
| DTX-1361 | BSC-MT-118362 | BSC-MT-118374 | Presentation: Boston Scientific - Future Frontier for Clips | | 401/402, 403, 801/802 |
| DTX-1362 | BSC-MT-118391 | BSC-MT-118444 | Presentation: Boston Scientific - Resolution 360[TM] Clip - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1363 | BSC-MT-118445 | BSC-MT-118452 | Cook Medical DHC-7-230 Description and Product Investigation | | 401/402, 403, 801/802 |
| DTX-1364 | BSC-MT-118453 | BSC-MT-118477 | Presentation: Boston Scientific - Rotatable Res Clip Project E0455 | | 401/402, 403, 801/802 |
| DTX-1365 | BSC-MT-118478 | BSC-MT-118487 | Presentation: Boston Scientific - Competitive Clip Update | | 401/402, 403, 801/802 |
| DTX-1366 | BSC-MT-118488 | BSC-MT-118515 | Presentation: Boston Scientific - Resolution 360[TM] Wide | | 401/402, 403, 801/802 |
| DTX-1367 | BSC-MT-118516 | BSC-MT-118546 | Presentation: Boston Scientific - Clipping Competitive Environment | | 401/402, 403, 801/802 |
| DTX-1368 | BSC-MT-118547 | BSC-MT-118591 | Presentation: Boston Scientific - Resolution 360[TM] Clip - Commercialization Plan | | 401/402, 403, 801/802 |
| DTX-1369 | BSC-MT-118612 | BSC-MT-118622 | Presentation: Boston Scientific - Clipping Competitive Environment | | 401/402, 403, 801/802 |
| DTX-1370 | BSC-MT-118627 | BSC-MT-118660 | Presentation: Boston Scientific - Cook Hemoclip Competitive Response | | 401/402, 403, 801/802 |
| DTX-1371 | BSC-MT-118794 | BSC-MT-118824 | Presentation: Boston Scientific - Advanced Hemostasis Portfolio | | 401/402, 403, 801/802 |
| DTX-1372 | BSC-MT-119069 | BSC-MT-119075 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Plaintiffs' Second Supplemental Objections and Responses to  Defendants' Interrogatory Nos. 1-2 (Original No. 1) | | 401/402, 403, 801/802 |
| DTX-1373 | BSC-MT--119997 | BSC-MT--120226 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Cook's Final Invalidity Contentions for U.S. Patent No. 8,974,371 | | 401/402, 403, 801/802 |
| DTX-1374 | BSC-MT-120570 | BSC-MT-120600 | U.S. Patent Application Publication US 2002/0128667 A1 | | 401/402, 403 |
| DTX-1375 | BSC-MT-120611 | BSC-MT-120619 | Japanese Patent Publication No. 62-288147 | | 401/402, 403 |
| DTX-1376 | BSC-MT-120620 | BSC-MT-120665 | WO/99/15089 | | 401/402, 403 |
| DTX-1377 | BSC-MT-120666 | BSC-MT-120802 | Olympus Instructions Disposable Clip Fixing Device | | 401/402, 403, 801/802 |
| DTX-1378 | BSC-MT-120803 | BSC-MT-120816 | U.S. Patent No. 5,174,276 by Crockard | | 401/402, 403 |
| DTX-1379 | BSC-MT-122354 | BSC-MT-122415 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of Michael Lynn | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1380 | BSC-MT-123300 | BSC-MT-123418 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of Demetrios Petrou | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1381 | BSC-MT-126365 | BSC-MT-126554 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Rebuttal Expert Report of Vincent Thomas | | 401/402, 403, 801/802 |
| DTX-1382 | BSC-MT-126555 | BSC-MT-126648 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Reply Expert Report of Vincent Thomas | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1383 | BSC-MT-127267 | BSC-MT-127302 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Expert Report of Dr. Oleh Haluszka | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1384 | BSC-MT-128523 | BSC-MT-128551 | Boston Scientific - Resolution II - Market Specification | | 401/402, 403, 801/802 |
| DTX-1385 | BSC-MT-128568 | BSC-MT-128593 | Presentation: Boston Scientific - A Value Based Approach to Global Product Pricing | | 401/402, 403, 801/802 |
| DTX-1386 | BSC-MT-128596 | BSC-MT-128621 | Global Product Pricing Roadmap | | 401/402, 403, 801/802 |
| DTX-1387 | BSC-MT-128624 | BSC-MT-128649 | Global Product Pricing Roadmap | | 401/402, 403, 801/802 |
| DTX-1388 | BSC-MT-128652 | BSC-MT-128674 | Presentation: Boston Scientific - Value Based Product Pricing - Revised Proposal | | 401/402, 403, 801/802 |
| DTX-1389 | BSC-MT-128677 | BSC-MT-128698 | Presentation: Boston Scientific - Value Based Product Pricing - Revised Proposal | | 401/402, 403, 801/802 |
| DTX-1390 | BSC-MT-128701 | BSC-MT-128722 | Presentation: Boston Scientific - Value Based Product Pricing - Revised Proposal | | 401/402, 403, 801/802 |
| DTX-1391 | BSC-MT-128726 | BSC-MT-128747 | Presentation: Boston Scientific - Value Based Product Pricing - Revised Proposal | | 401/402, 403, 801/802 |
| DTX-1392 | BSC-MT-128750 | BSC-MT-128771 | Presentation: Boston Scientific - Value Based Product Pricing - Revised Proposal | | 401/402, 403, 801/802 |
| DTX-1393 | BSC-MT-128774 | BSC-MT--128797 | Presentation: Boston Scientific - A Value Based Approach to Global Product Pricing | | 401/402, 403, 801/802 |
| DTX-1394 | BSC-MT-128942 | BSC-MT-128942 | Quant Survey | | 401/402, 403, 801/802 |
| DTX-1395 | BSC-MT-128977 | BSC-MT-128977 | Excel Spreadsheet, Microsoft_Excel_Worksheet | | 401/402, 403, 801/802 |
| DTX-1396 | BSC-MT-128978 | BSC-MT-128978 | Excel Spreadsheet, Microsoft_Excel_Worksheet1 | | 401/402, 403, 801/802 |
| DTX-1397 | BSC-MT-128980 | BSC-MT-128980 | Excel Spreadsheet, Microsoft_Excel_Worksheet4 | | 401/402, 403, 801/802 |
| DTX-1398 | BSC-MT-128981 | BSC-MT-128981 | Excel Spreadsheet, Microsoft_Excel_Worksheet5 | | 401/402, 403, 801/802 |
| DTX-1399 | BSC-MT-128982 | BSC-MT-128982 | Excel Spreadsheet, Microsoft_Excel_Worksheet6 | | 401/402, 403, 801/802 |
| DTX-1400 | BSC-MT-129559 | BSC-MT-129601 | Presentation: Boston Scientific - Clips Market Research | | 401/402, 403, 801/802 |
| DTX-1401 | BSC-MT-129677 | BSC-MT-129677 | Excel Spreadsheet, data cut v1 | | 401/402, 403, 801/802 |
| DTX-1402 | BSC-MT-129798 | BSC-MT-129798 | Excel Spreadsheet, Microsoft_Excel_97-2003_Worksheet1 | | 401/402, 403, 801/802 |
| DTX-1403 | BSC-MT-129799 | BSC-MT-129799 | Excel Spreadsheet, Microsoft_Excel_97-2003_Worksheet5 | | 401/402, 403, 801/802 |
| DTX-1404 | BSC-MT-129800 | BSC-MT-129800 | Excel Spreadsheet, Microsoft_Excel_97-2003_Worksheet6 | | 401/402, 403, 801/802 |
| DTX-1405 | BSC-MT-129801 | BSC-MT-129801 | Excel Spreadsheet, Microsoft_Excel_97-2003_Worksheet7 | | 401/402, 403, 801/802 |
| DTX-1406 | BSC-MT-129802 | BSC-MT-129802 | Excel Spreadsheet, Microsoft_Excel_97-2003_Worksheet8 | | 401/402, 403, 801/802 |
| DTX-1407 | BSC-MT-129803 | BSC-MT-129803 | Excel Spreadsheet, Microsoft_Excel_97-2003_Worksheet10 | | 401/402, 403, 801/802 |
| DTX-1408 | BSC-MT-129804 | BSC-MT-129804 | Excel Spreadsheet, Microsoft_Excel_97-2003_Worksheet11 | | 401/402, 403, 801/802 |
| DTX-1409 | BSC-MT-129811 | BSC-MT-129850 | Ipsos Business Consulting –Market Assessment Study - Micro-Tech | | 401/402, 403, 801/802 |
| DTX-1410 | BSC-MT-130033 | BSC-MT-130048 | Ipsos Business Consulting –Market Assessment Study - Micro-Tech | | 401/402, 403, 801/802 |
| DTX-1411 | BSC-MT-130093 | BSC-MT-130131 | Presentation: Boston Scientific - Resolution Clip Commercial Strategy | | 401/402, 403, 801/802 |
| DTX-1412 | BSC-MT-130134 | BSC-MT-130134 | Excel Spreadsheet, Microsoft_Excel_Worksheet5 | | 401/402, 403, 801/802 |
| DTX-1413 | BSC-MT-130139 | BSC-MT-130139 | Excel Spreadsheet, Microsoft_Excel_Worksheet8 | | 401/402, 403, 801/802 |
| DTX-1414 | BSC-MT-130140 | BSC-MT-130140 | Excel Spreadsheet, Microsoft_Excel_Worksheet8 | | 401/402, 403, 801/802 |
| DTX-1415 | BSC-MT-130141 | BSC-MT-130141 | Excel Spreadsheet, Microsoft_Excel_Worksheet7 | | 401/402, 403, 801/802 |
| DTX-1416 | BSC-MT-130435 | BSC-MT-130662 | iData Research - Chinese Market for Gastrointestinal Endoscopic Devices | | 401/402, 403, 801/802 |
| DTX-1417 | BSC-MT-131026 | BSC-MT-131043 | Presentation: Boston Scientific - Resolution II E0354 | | 401/402, 403, 801/802 |
| DTX-1418 | BSC-MT-131425 | BSC-MT-131443 | Presentation: Boston Scientific - Resolution™ Clip Marketng Plan | | 401/402, 403, 801/802 |
| DTX-1419 | BSC-MT-131455 | BSC-MT-131480 | Presentation: Boston Scientific - Welcome to the Resolution™ Clip Device Training | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1420 | BSC-MT-131531 | BSC-MT-131540 | Marketing Research Agreement between BSC and Clearstate Medical Market Research | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1421 | BSC-MT-131605 | BSC-MT-131644 | Clearstate - China Customer Insights Proposal | | 401/402, 403, 801/802 |
| DTX-1422 | BSC-MT-131645 | BSC-MT-131805 | IMS Consulting Group - China Endo Market Opportunity Assessment - Final Project Report | | 401/402, 403, 801/802 |
| DTX-1423 | BSC-MT-131896 | BSC-MT-131939 | Presentation: Boston Scientific - China Growth Acceleration 2014-2018 | | 401/402, 403, 801/802 |
| DTX-1424 | BSC-MT-131941 | BSC-MT-132290 | Marketstrat -  Gastrointestinal Endoscopy Device Worldwide - A Market Strategy Report | | 401/402, 403, 801/802 |
| DTX-1425 | BSC-MT-132297 | BSC-MT-132384 | Presentation: Deliver Peak Performance | | 401/402, 403, 801/802 |
| DTX-1426 | BSC-MT-132705 | BSC-MT-132757 | Boston Scientific – Clipping VOC - Quantitative Findings | | 401/402, 403, 801/802 |
| DTX-1427 | BSC-MT-132913 | BSC-MT-132956 | Boston Scientific – Clipping VOC - Quantitative Findings | | 401/402, 403, 801/802 |
| DTX-1428 | BSC-MT-135782 | BSC-MT-135782 | E0455 Resolution 360 Progress Review | | 401/402, 403, 801/802 |
| DTX-1429 | BSC-MT-135783 | BSC-MT-135783 | E0455 Resolution 360 Progress Review | | 401/402, 403, 801/802 |
| DTX-1430 | BSC-MT-135784 | BSC-MT-135784 | E0455 Resolution 360 Progress Review | | 401/402, 403, 801/802 |
| DTX-1431 | BSC-MT-136217 | BSC-MT-136317 | Presentation: Boston Scientific - Resolution 360[TM] Clip Human Use - Commercial Release | | 401/402, 403, 801/802 |
| DTX-1432 | BSC-MT-136962 | BSC-MT-136984 | Presentation: Boston Scientific - Resolution 360[TM] Clip Commercialization Update and Team Recognition | | 401/402, 403, 801/802 |
| DTX-1433 | BSC-MT-137044 | BSC-MT-137044 | Excel Spreadsheet, E0455- Project Management Plan-April 2015 | | 401/402, 403, 801/802 |
| DTX-1434 | BSC-MT-137063 | BSC-MT-137063 | E0455 Res 360 AOP 2016 | | 401/402, 403, 801/802 |
| DTX-1435 | BSC-MT-137075 | BSC-MT-137075 | RD Financial Model | | 401/402, 403, 801/802 |
| DTX-1436 | BSC-MT-137077 | BSC-MT-137077 | RD Financial Model | | 401/402, 403, 801/802 |
| DTX-1437 | BSC-MT-137078 | BSC-MT-137078 | RD Financial Model | | 401/402, 403, 801/802 |
| DTX-1438 | BSC-MT-137079 | BSC-MT-137079 | Excel Spreadsheet, RD Financial Model -  Rotatable Clip-April PIB Jim's baseline V2 | | 401/402, 403, 801/802 |
| DTX-1439 | BSC-MT-137080 | BSC-MT-137080 | Excel Spreadsheet, RD Financial Model -  Rotatable Clip-April PIB V4 - MG Plan | | 401/402, 403, 801/802 |
| DTX-1440 | BSC-MT-137081 | BSC-MT-137081 | Excel Spreadsheet, RD Financial Model -  Rotatable Clip-April PIB V4 - MG Transfer - Sandbox | | 401/402, 403, 801/802 |
| DTX-1441 | BSC-MT-137082 | BSC-MT-137082 | Excel Spreadsheet, RD Financial Model -  Rotatable Clip-April PIB V4 - MG Transfer | | 401/402, 403, 801/802 |
| DTX-1442 | BSC-MT-137083 | BSC-MT-137083 | Excel Spreadsheet, RD Financial Model -  Rotatable Clip-April PIB V4 - MTC Plan | | 401/402, 403, 801/802 |
| DTX-1443 | BSC-MT-137084 | BSC-MT-137084 | Excel Spreadsheet, RD Financial Model -  Rotatable Clip-April PIB V4 | | 401/402, 403, 801/802 |
| DTX-1444 | BSC-MT-137085 | BSC-MT-137085 | Excel Spreadsheet, RD Financial Model -  Rotatable Clip-November PIB (gensight edits) | | 401/402, 403, 801/802 |
| DTX-1445 | BSC-MT-137086 | BSC-MT-137086 | Excel Spreadsheet, Res 360 Fin Model with MG SandBox | | 401/402, 403, 801/802 |
| DTX-1446 | BSC-MT-137087 | BSC-MT-137087 | Excel Spreadsheet, Res 360 Fin Model with MG-MTC transfer - Sandbox | | 401/402, 403, 801/802 |
| DTX-1447 | BSC-MT-137088 | BSC-MT-137088 | Excel Spreadsheet, Res 360 Fin Model with MG-MTC transfer | | 401/402, 403, 801/802 |
| DTX-1448 | BSC-MT-137089 | BSC-MT-137089 | Excel Spreadsheet, Res 360 Fin Model with MG | | 401/402, 403, 801/802 |
| DTX-1449 | BSC-MT-137090 | BSC-MT-137090 | Excel Spreadsheet, Res 360 Fin Model with MTC Plan | | 401/402, 403, 801/802 |
| DTX-1450 | BSC-MT-137091 | BSC-MT-137091 | Excel Spreadsheet, Res 360 Fin Model with MTC Proposal | | 401/402, 403, 801/802 |
| DTX-1451 | BSC-MT-137092 | BSC-MT-137092 | Excel Spreadsheet, Rotatable Clip Aug-15 PIB | | 401/402, 403, 801/802 |
| DTX-1452 | BSC-MT-137093 | BSC-MT-137093 | Excel Spreadsheet, Rotatable Clip Jan-16 PIB Sandbox | | 401/402, 403, 801/802 |
| DTX-1453 | BSC-MT-137094 | BSC-MT-137094 | Excel Spreadsheet, Rotatable Clip Jan-16 PIB V2 | | 401/402, 403, 801/802 |
| DTX-1454 | BSC-MT-137095 | BSC-MT-137095 | Excel Spreadsheet, Rotatable Clip June-15 PIB | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-1455 | BSC-MT-137096 | BSC-MT-137096 | Excel Spreadsheet, Rotatable Clip Feb-16 Update1 - New assumptions EU and US | | 401/402, 403, 801/802 |
| DTX-1456 | BSC-MT-137097 | BSC-MT-137097 | Excel Spreadsheet, Rotatable Clip Feb-16 Update1 - New assumptions EU only | | 401/402, 403, 801/802 |
| DTX-1457 | BSC-MT-137132 | BSC-MT-137136 | KDPD Award | | 401/402, 403, 801/802 |
| DTX-1458 | BSC-MT-137437 | BSC-MT-137464 | Presentation: Boston Scientific - Resolution 360$^{TM}$ Clip Commercialization Update | | 401/402, 403, 801/802 |
| DTX-1459 | BSC-MT-137493 | BSC-MT-137527 | Presentation: Boston Scientific - E0455 Rotatable Resolution Development Updat and Risk Mitigation Strategy | | 401/402, 403, 801/802 |
| DTX-1460 | BSC-MT-137626 | BSC-MT-137626 | Excel Spreadsheet, Microsoft_Excel_Worksheet5 | | 401/402, 403, 801/802 |
| DTX-1461 | BSC-MT-137630 | BSC-MT-137630 | Excel Spreadsheet, Microsoft_Excel_Worksheet6 | | 401/402, 403, 801/802 |
| DTX-1462 | BSC-MT-137631 | BSC-MT-137631 | Excel Spreadsheet, Microsoft_Excel_Worksheet7 | | 401/402, 403, 801/802 |
| DTX-1463 | BSC-MT-137644 | BSC-MT-137672 | Presentation: Boston Scientific - Resolution 360$^{TM}$ Clip Management Update | | 401/402, 403, 801/802 |
| DTX-1464 | BSC-MT-137676 | BSC-MT-137676 | Excel Spreadsheet, Microsoft_Excel_Worksheet5 | | 401/402, 403, 801/802 |
| DTX-1465 | BSC-MT-137677 | BSC-MT-137677 | Excel Spreadsheet, Microsoft_Excel_Worksheet6 | | 401/402, 403, 801/802 |
| DTX-1466 | BSC-MT-137678 | BSC-MT-137678 | Excel Spreadsheet, Microsoft_Excel_Worksheet7 | | 401/402, 403, 801/802 |
| DTX-1467 | BSC-MT-137680 | BSC-MT-137701 | Presentation: Boston Scientific - Resolution 360$^{TM}$ Clip Voice of Value | | 401/402, 403, 801/802 |
| DTX-1468 | BSC-MT-137704 | BSC-MT-137752 | Presentation: Boston Scientific - Rotatable Resolution Clip | | 401/402, 403, 801/802 |
| DTX-1469 | BSC-MT-137773 | BSC-MT-137773 | Presentation: Boston Scientific - Resolution 360$^{TM}$ Clip Voice of Value | | 401/402, 403, 801/802 |
| DTX-1470 | BSC-MT-138175 | BSC-MT-138234 | Presentation: Boston Scientific - Resolution$^{TM}$ II Clip | | 401/402, 403, 801/802 |
| DTX-1471 | BSC-MT-138353 | BSC-MT-138391 | Cook Clip Summary | | 401/402, 403, 801/802 |
| DTX-1472 | BSC-MT-138665 | BSC-MT-138690 | Endoscopy National Training Conference 2013 | | 401/402, 403, 801/802 |
| DTX-1473 | BSC-MT-138693 | BSC-MT-138723 | Endoscopy National Training Conference 2013 | | 401/402, 403, 801/802 |
| DTX-1474 | BSC-MT-139874 | BSC-MT-139930 | Boston Scientific - Micro-Tech Competitive Analysis - Final  Report | | 401/402, 403, 801/802 |
| DTX-1475 | BSC-MT-139931 | BSC-MT-139941 | Boston Scientific - Complaint Summary Report | | 401/402, 403, 801/802 |
| DTX-1476 | BSC-MT-139942 | BSC-MT-139950 | Boston Scientific - Complaint Summary Report | | 401/402, 403, 801/802 |
| DTX-1477 | BSC-MT-139951 | BSC-MT-139959 | Boston Scientific - Complaint Summary Report | | 401/402, 403, 801/802 |
| DTX-1478 | BSC-MT-139960 | BSC-MT-139968 | Boston Scientific - Complaint Summary Report | | 401/402, 403, 801/802 |
| DTX-1479 | BSC-MT-139969 | BSC-MT-139978 | Boston Scientific - Complaint Summary Report | | 401/402, 403, 801/802 |
| DTX-1480 | BSC-MT-139979 | BSC-MT-139986 | Boston Scientific - Complaint Summary Report | | 401/402, 403, 801/802 |
| DTX-1481 | BSC-MT-140058 | BSC-MT-140058 | Spreadsheet 2018-2020 sale data | | 401/402, 403, 801/802 |
| DTX-1482 | BSC-MT-140061 | BSC-MT-140061 | Rotatable Clip Update | | 401/402, 403, 801/802 |
| DTX-1483 | BSC-MT-140062 | BSC-MT-140062 | Sales Data | | 401/402, 403, 801/802 |
| DTX-1484 | BSC-MT-140074 | BSC-MT-140085 | Intangible Property License Agreement between Boston Scientific Ltd. And Boston Scientific de Costa Rica | | 401/402, 403, 801/802 |
| DTX-1485 | BSC-MT-140086 | BSC-MT-140091 | Manufacturing Agreement between Boston Scientific Ltd. And Boston Scientific de Costa Rica | | 401/402, 403, 801/802 |
| DTX-1486 | BSC-MT-140111 | BSC-MT-140115 | Assignment of Intellectual Property between Boston Scientific Ltd. And Boston Scientific de Costa Rica | | 401/402, 403, 801/802 |
| DTX-1487 | BSC-MT-140124 | BSC-MT-140131 | Intangible Property License Agreement between Boston Scientific Ltd. And Boston Scientific de Costa Rica | | 401/402, 403, 801/802 |
| DTX-1488 | BSC-MT-140132 | BSC-MT-140134 | Termination Agreement between Boston Scientific Ltd. And Boston Scientific de Costa Rica | | 401/402, 403, 801/802 |
| DTX-1489 | BSC-MT-140141 | BSC-MT-140142 | Consent Letter | | 401/402, 403, 801/802 |
| DTX-1490 | BSC-MT-140183 | BSC-MT-140195 | Elevate Program Agreement – January 2020 | | 401/402, 403, 801/802 |
| DTX-1491 | BSC-MT-140213 | BSC-MT-140435 | Resolution II Clip Recall - Removal | | 401/402, 403, 801/802 |
| DTX-1492 | BSC-MT-140436 | BSC-MT-140439 | Email Re K193424S001 - Resolution 360 Ultra Clip | | 401/402, 403, 801/802 |
| DTX-1493 | BSC-MT-140440 | BSC-MT-140451 | Resolution 360$^{TM}$ Ultra Clip Product Information | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1494 | BSC-MT-140452 | BSC-MT-140453 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1495 | BSC-MT-140454 | BSC-MT-140455 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
| DTX-1496 | BSC-MT-140456 | BSC-MT-140467 | Resolution 360™ Ultra Clip Directions For Use | | 401/402, 403, 801/802 |
| DTX-1497 | BSC-MT-140468 | BSC-MT-140469 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
| DTX-1498 | BSC-MT-140470 | BSC-MT-140471 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
| DTX-1499 | BSC-MT-140472 | BSC-MT-140511 | NAMSA Test Report | | 401/402, 403, 801/802 |
| DTX-1500 | BSC-MT-140524 | BSC-MT-140525 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
| DTX-1501 | BSC-MT-140526 | BSC-MT-140527 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
| DTX-1502 | BSC-MT-140528 | BSC-MT-140539 | Resolution 360™ Ultra Clip Directions For Use (Update) | | 401/402, 403, 801/802 |
| DTX-1503 | BSC-MT-140540 | BSC-MT-140541 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
| DTX-1504 | BSC-MT-140542 | BSC-MT-140543 | Resolution 360™ Ultra Clip Patient Information Card | | 401/402, 403, 801/802 |
| DTX-1505 | BSC-MT-140544 | BSC-MT-140544 | Email Re K193424S001 Review Complete | | 401/402, 403, 801/802 |
| DTX-1506 | BSC-MT-140545 | BSC-MT-140546 | FDA Letter | | 401/402, 403, 801/802 |
| DTX-1507 | BSC-MT-140547 | BSC-MT-140547 | DHHS Lndications of Use - K193424 | | 401/402, 403, 801/802, PMIL |
| DTX-1508 | BSC-MT-140548 | BSC-MT-140550 | 510(k) Summary for K193424 | | 401/402, 403, 801/802, PMIL |
| DTX-1509 | BSC-MT-140551 | BSC-MT-140551 | Excel Spreadsheet, Res Clip and Res 360 Clip Complaint History - US only | | 401/402, 403, 801/802 |
| DTX-1510 | BSC-MT-140552 | BSC-MT-140651 | 510(K) Number K112039 | | 401/402, 403, 801/802, PMIL |
| DTX-1511 | CMD 0001 | CMD 0076 | ConMed DuraClip Product Information | | 401/402, 403, 801/802 |
| DTX-1512 | CMD 0230 | CMD 0230 | Excel Spreadsheet, Forecast Agreement Hemostasis Clip (DuraClip) | | 401/402, 403, 801/802 |
| DTX-1513 | CMD 0325 | CMD 0330 | Document Re Micro-Tech USA Onsite Visit | | 401/402, 403, 801/802 |
| DTX-1514 | | | Exhibit Intentionally Omitted | | |
| DTX-1515 | CMD 1872 | CMD 1875 | ConMed DuraClip Product Information | | 401/402, 403, 801/802 |
| DTX-1516 | CMD 2044 | CMD 2045 | ConMed DuraClip Hemostasis Clip Presentation | | 401/402, 403, 801/802 |
| DTX-1517 | CMD 2077 | CMD 2077 | ConMed DuraClip Hemostasis Clip Presentation | | 401/402, 403, 801/802 |
| DTX-1518 | CMD 2130 | CMD 2133 | ConMed DuraClip Hemostasis Presentation | | 401/402, 403, 801/802 |
| DTX-1519 | CMD 2254 | CMD 2258 | OEM Product Release Checklist | | 401/402, 403, 801/802 |
| DTX-1520 | CMD 2259 | CMD 2259 | ConMed                   Financial Summary | | 401/402, 403, 801/802 |
| DTX-1521 | CMD 2260 | CMD 2260 | ConMed Financial Summary Assumptions | | 401/402, 403, 801/802 |
| DTX-1522 | CMD 2261 | CMD 2261 | ConMed Financial Summary Assumptions | | 401/402, 403, 801/802 |
| DTX-1523 | CMD 2283 | CMD 2283 | Excel Spreadsheet, Forecast Agreement - DuraClip | | 401/402, 403, 801/802 |
| DTX-1524 | CMD 2654 | CMD 2654 | ConMed DuraClip Advertisement | | 401/402, 403, 801/802 |
| DTX-1525 | CMD 2672 | CMD 2673 | ConMed DuraClip Advertisement | | 401/402, 403, 801/802 |
| DTX-1526 | CMD 2674 | CMD 2675 | ConMed DuraClip Advertisement | | 401/402, 403, 801/802 |
| DTX-1527 | CMD 2755 | CMD 2755 | Excel Spreadsheet, Financial Information re DuraClip HemoClip | | 401/402, 403, 801/802 |
| DTX-1528 | CMD 2768 | CMD 2768 | Excel Spreadsheet, EU Forecast for | | 401/402, 403, 801/802 |
| DTX-1529 | CMD 2769 | CMD 2769 | Excel Spreadsheet, Forecast Agreement Hemostasis Clip | | 401/402, 403, 801/802 |
| DTX-1530 | CMD 3482 | CMD 3482 | DuraClip 16mm Repositionable Hemostasis Clip Cost/Sale Information | | 401/402, 403, 801/802 |
| DTX-1531 | CMD 3483 | CMD 3483 | Excel Spreadsheet, DuraClip 16mm Repositionable Hemostasis Clip | | 401/402, 403, 801/802 |
| DTX-1532 | CMD 4017 | CMD 4021 | Hemostatic Clips for GI - Overview and Clinical Use | | 401/402, 403, 801/802 |
| DTX-1533 | CMD 4071 | CMD 4074 | ConMed Purchase Order | | 401/402, 403, 801/802 |
| DTX-1534 | CMD 4075 | CMD 4076 | ConMed DuraClip Advertisement | | 401/402, 403, 801/802 |
| DTX-1535 | CMD 4077 | CMD 4081 | ConMed Innovative New Products and Hands-On Sessions | | 401/402, 403, 801/802 |
| DTX-1536 | CMD 4082 | CMD 4082 | List of Website Pages for DuraClip | | 401/402, 403, 801/802 |
| DTX-1537 | CMD 4083 | CMD 4086 | ConMed DuraClip Product Information | | 401/402, 403, 801/802 |
| DTX-1538 | CMD 4087 | CMD 4089 | ConMed Product Information | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1539 | CMD 4090 | CMD 4097 | ConMed Innovative New Products and Dynamic Physician Presentations | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1540 | CMD 4098 | CMD 4101 | ConMed Product Advertisement | | 401/402, 403, 801/802 |
| DTX-1541 | CMD 4102 | CMD 4113 | ConMed Innovative New Products and Vendor Program | | 401/402, 403, 801/802 |
| DTX-1542 | CMD 4131 | CMD 4131 | Excel Spreadsheet, Forecast Agreement - Duraclip (10/CS) | | 401/402, 403, 801/802 |
| DTX-1543 | CMD 4233 | CMD 4266 | Presentation: ConMed Global Sales Meeting - February 2016 | | 401/402, 403, 801/802 |
| DTX-1544 | CMD 4304 | CMD 4306 | Excel Spreadsheet, Forecast Agreement - Duraclip (10/CS) | | 401/402, 403, 801/802 |
| DTX-1545 | CMD 4336 | CMD 4344 | ConMed - Support DuraClip Hemostasis Clip Product Launch | | 401/402, 403, 801/802 |
| DTX-1546 | CMD 4516 | CMD 4517 | Graphs Re Market Share | | 401/402, 403, 801/802 |
| DTX-1547 | CMD 4614 | CMD 4615 | Email Re DuraClip Project Background and Available Documentation | | 401/402, 403, 801/802 |
| DTX-1548 | CMD 4616 | CMD 4617 | DuraClip Oracle Entry Hot Sheet | | 401/402, 403, 801/802 |
| DTX-1549 | CMD 4829 | CMD 4830 | Email Re DuraClip Sales Revenue thru June 2017 | | 401/402, 403, 801/802 |
| DTX-1550 | CMD 4831 | CMD 4831 | Excel Spreadsheet, Forecast Agreement - DuraClip | | 401/402, 403, 801/802 |
| DTX-1551 | CMD 4838 | CMD 4850 | ConMed Value Analysis Presentation DuraClip Repositionable Hemostasis Clip | | 401/402, 403, 801/802 |
| DTX-1552 | CMD 4894 | CMD 4895 | Email Re Micro-Tech New EndoClip Meeting | | 401/402, 403, 801/802 |
| DTX-1553 | CMD 4896 | CMD 4896 | Excel Spreadsheet, Forecast Agreement - Hemostasis Clip (DuraClip) | | 401/402, 403, 801/802 |
| DTX-1554 | CMD 5094 | CMD 5111 | Charts Re Global Endoscopic Market | | 401/402, 403, 801/802 |
| DTX-1555 | CMD 5112 | CMD 5112 | Excel Spreadsheet, Forecast Agreement - Duraclip (10/CS) | | 401/402, 403, 801/802 |
| DTX-1556 | CMD 5115 | CMD 5126 | Presentation: Micro-Tech - Expanding the Scope of Endoscopy | | 401/402, 403, 801/802 |
| DTX-1557 | COOK3P_BSCvMT | COOK3P_BSCvMT | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Expert Report of John R. Bone | | 401/402, 403 |
| DTX-1558 | COOK3P_BSCvMT | COOK3P_BSCvMT | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Reply Expert Report of John R. Bone | | 401/402, 403 |
| DTX-1559 | COOK3P_BSCvMT | COOK3P_BSCvMT | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Expert Report of John R. Bone | | 401/402, 403 |
| DTX-1560 | COOK3P_BSCvMT | COOK3P_BSCvMT | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Reply Expert Report of John R. Bone | | 401/402, 403 |
| DTX-1561 | | | Plaintiffs Responses to Defendant's First Set of Requests for Production of Documents and Things  (Nos. 1-45) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1562 | | | Defendants' Responses to Plaintiffs First Set of Common Requests for Production of Documents (Nos. 1-40) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1563 | | | Defendants' Responses to Plaintiffs' First Set of Common Interrogatories (Nos. 1-10) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1564 | | | Plaintiff's Responses to Defendants' Second Set of Requests for Production of Documents and Things | | 401/402, 403, 801/802, AA, Legal |
| DTX-1565 | | | Defendants' Responses to Plaintiffs' Second Sdet of Common Interrogatories (No. 11) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1566 | | | Defendant Micro-Tech (Nanjing) Co. Ltd.'s Responses to Plaintiffs' First Set of Common Requests for Documents and Things (Nos. 1-40) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1567 | | | Defendant Micro-Tech (Nanjing) Co. Ltd.'s Responses to Plaintiffs' First Set of Common Interrogatories (Nos. 1-10) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1568 | | | Plaintiffs' Objections to Defendants' Third Set of Requests for Production of Documents | | 401/402, 403, 801/802, AA, Legal |
| DTX-1569 | | | Plaintiffs' Objections to Defendants' Fourth Set of Requests for Production of Documents | | 401/402, 403, 801/802, AA, Legal |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | |
|---|---|---|---|---|
| DTX-1570 | | Verification of Defendant Micro-Tech (Nanjing) Co. Ltd.'s Supplemental Responses to Plaintiffs' First Set of Common Interrogatories (Nos. 1-10) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1571 | | Defendants' Reponses to Plaintiffs' First Set of Requests for Admission (Nos. 1-5) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1572 | | Defendants' Second Supplemental Responses to Plaintiffs' First Set of Common Interrogatories | | 401/402, 403, 801/802, AA, Legal |
| DTX-1573 | | Verification of Henry Schein's Responses to Plaintiffs' First Set of Common Interrogatories (Nos. 1-10) | | 401/402, 403, 801/802, AA, Legal |
| DTX-1574 | | Defendant Henry Schein's Supplemental Responses to Defendants' First and Second Sets of Common Interrogatories | | 401/402, 403, 801/802, AA, Legal |
| DTX-1575 | | Defendants' Supplemental Responses to Defendants' First and Second Sets of Common Interrogatories | | 401/402, 403, 801/802, AA, Legal |
| DTX-1576 | | U.S. Patent No. 8,685,048 by Adams et al. | | 401/402, 403 |
| DTX-1577 | | U.S. Patent No. 9,138,234 by Li et al. | | 401/402, 403 |
| DTX-1578 | | U.S. Patent No. 10,470,775 by Shi | | 401/402, 403 |
| DTX-1579 | | 510(k) Premarket Notification for Anrei Medical (Hangzhou) Co., FDA, <https://www.accessdata.fda.gov/cdrh docs/pdf20/K201771.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1580 | | 510(k) Premarket Notification for Finemedix Co., Ltd.,FDA, https://www.accessdata.fda.gov/cdrh docs/pdf18/K183021.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1581 | | 510(k) Premarket Notification for Finemedix Co., Ltd, DA, <https://www.accessdata.fda.gov/cdrh docs/pdf20/K200217.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1582 | | 510(k) Premarket Notification for Hangzhou AGS MedTech CO., Ltd, FDA, <https://www.accessdata.fda.gov/cdrh_docs/pdf17/K172727.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1583 | | 510(k) Premarket Notification for Zhejiang Chuangxiang Medical Technology Co, <https://www.accessdata.fda.gov/cdrh_docs/pdf17/K172762.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1584 | | 510(k) Premarket Notification, FDA, <https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1585 | | 510(k) Premarket Notification AGS Hemoclip (K172727), FDA, <https://www.accessdata.fda.gov/cdrh docs/pdf17/K172727.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1586 | | 510(k) Premarket Notification Anrei Single Use Rotatable, FDA, <https://www.accessdata.fda.gov/cdrh docs/pdf20/K200217.pd | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1587 | | 510(k) Premarket Notification Finemedix ClearEndoclip (K200217) <https://www.accessdata.fda.gov/cdrh docs/pdf20/K200217.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1588 | | 510(k) Premarket Notification Olympus (K123601), , <https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?id=K 123601> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1589 | | 510(k) Premarket Notification Single Use Hemoclip (K172762), FDA, March 20, 2018, <https://www.accessdata.fda.gov/cdrh docs/pdf17/K172762.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1590 | | 510(k) Submission Process, FDA, , <https://www.fda.gov/medical-devices/premarket-notification-510k/510k-submission-process>. | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1591 | | 510K Summary (Instinct Endoscopic Hemoclip), FDA, <https://www.accessdata.fda.gov/cdrh docs/pdf13/K132809.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1592 | | | 2016 Hangzhou AGS MedTech Co., Ltd. annual new product promotion, AGS Medtech, <http://www.bioags.com/home.php?s=/articles_334.html&lan=en> | | 401/402, 403, 801/802, 901/902, 1003 |
|---|---|---|---|---|---|
| DTX-1593 | | | About Us, Endo-Therapeutics, <https://endotherapeutics.com/about-us/>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1594 | | | About US, KeySurgical, <https://www.keysurgical.com/about>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1595 | | | About Us, MT Nanjing, <http://www.micro-tech.com.cn/en/web/about/about_us_1.html>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1596 | | | Access GUDID National Institute of Health, <https://accessgudid.nlm.nih.gov/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1597 | | | Access GUDID, National Institute of Health, <https://accessgudid.nlm.nih.gov/devices/00849771039181> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1598 | | | Access GUDID, National Institute of Health, <https://accessgudid.nlm.nih.gov/devices/08809327353088>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1599 | | | AGS Medtech Hemoclip, <http://www.bioags.com/home.php?s=/lists_71.html>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1600 | | | Ambulatory Surgery Center Growth Accelerates Is Medtech Ready, Bain & Company, September 23, 2019, <https://www.bain.com/insights/ambulatory-surgery-center-growth-accelerates-is-medtech-ready/>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1601 | | | Ambulatory Surgery Centers Are High-Quality, Low-Cost Key for Outpatient, Inside Digital Health, <https://www.chiefhealthcareexecutive.com/view/ambulatory-surgery-centers-are-highquality-lowcost-key-for-outpatient-procedures>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1602 | | | ASCs at a Tipping Point: The New Reality of Surgical Services for Health, Health Systems 100 – Leadership Conference, <https://www.healthsystem100.com/application/files/8615/0420/6320/ASCs_at_a_Tipping_Point_-_Whitepaper.pdf>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1603 | | | Benchtop testing and comparisons among three types of through-the-scope, , Division of Digestive Diseases, Department of Medicine, University of Mississippi Medical Center, January 5, 2013, <https://pubmed.ncbi.nlm.nih.gov/23292554/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1604 | | | Class 2 Device Recall Resolution II Clip FDA initiated July 19 2011, FDA, initiated July 19, 2011, <https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=102859> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1605 | | | ClearEndoclip, Finemedix, " Finemedix, <http://www.finemedix.com/en/pf/clearendoclip/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1606 | | | Clip Device, Zhuji Pengtian Medical Equipment Co., Ltd., <https://www.pengtianmed.com/product/jiazizhuangzhi/jiazizhuangzhi/.html>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1607 | | | Clip Fixing Devices, Olympus, <https://medical.olympusamerica.com/products/quickclippro> | | 401/402, 403, 801/802, 901/902, 1003 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-1608 | | | Commercial Insurance Cost Savings in Ambulatory Surgery, SCA – HealthSmart, <https://www.ascassociation.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=829b1dd6-0b5d-9686-e57c-3e2ed4ab42ca>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1609 | | | Company Profile, Micro-Tech (Nanjing) Co., Ltd., <http://www.micro-tech.com.cn/en/web/about/about_us_1.html>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1610 | | | Device for endoscopic hemostasis of nonvariceal GI Bleeding American Society for Gastrointestinal, American Society for Gastrointestinal Endoscopy, Volume 4, No. 7, 2019, <https://www.videogie.org/article/S2468-4481(19)30042-6/pdf>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1611 | | | DuraClip Brochure (U.S. Only) ConMed, , < https://www.conmed.com/-/media/conmed/documents/literature/mcm2016089--duraclip-brochureus-only3lr.ashx > | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1612 | | | DuraClip Brochure ConMed, , <https://www.conmed.com/-/media/conmed/documents/literature/mcm2015188-rev-a-duraclip-product-brochure-rev-lr.ashx> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1613 | | | DuraClip Repositionable Hemostasis Clip, ConMed <https://www.conmed.com/en/medical-specialties/gastroenterology-and-pulmonology/polypectomy/conmed-solutions/duraclip-repositionable-hemostasis-clips> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1614 | | | Endoscopic clip application devices, American Society for Gastrointestinal Endoscopy, 2006, <https://www.asge.org/docs/default-source/education/Technology_Reviews/doc-090e3f1186fe4bc194845c2dbaa48c7e.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1615 | | | Endoscopic clips Past, present, and future, Canadian Journal of Gastroenterology, Canadian Journal of Gastroenterology, <https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2694648/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1616 | | | Endoscopic closure devices A review of technique and application for hemostasis, International Journal of Gastrointestinal Intervention (IJGII), July 31, 2019, <https://www.ijgii.org/journal/view.html?doi=10.18528/ jgii190012#B8>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1617 | | | Frequently Asked Questions, Zhuji Pengtian Medical Equipment Co., Ltd., <https://www.pengtianmed.com/product/jiazizhuangzhi/jiazizhuangzhi/.html > | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1618 | | | Gastrenterology and Pulmonary Product Catalog, ConMed, p. 17, <https://www.conmed.com/-/media/conmed/documents/catalog/20191016_cet_-gastroenterology-and-pulmonary-product-catalog_lr.ashx>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1619 | | | Hawk Clip, Anrei Medical, <http://www.anrei.com.cn/en/prodt.aspx?N_id=927> | | 401/402, 403, 801/802, 901/902, 1003 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-1620 | | | HemoClip Life Partners Europe, May 9, 2016, <https://www.vingmed.se/wp-content/uploads/2013/10/Hemoclip.pdf> (distributed by Life Partners, manufactured by Nova Lightsystems | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1621 | | | Hemostasis Clip, KeySurgical, <https://www.keysurgical.com/products/endoscopy/clinical-products/hemoclips/en10400a-16> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1622 | | | Hemostasis Clip, KeySurgical,<https://www.keysurgical.com/products/endoscopy/clinical-products/hemoclips/en10400a> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1623 | | | Endo-Therapeutics Home Page, <https://endotherapeutics.com/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1624 | | | How ASCs and Endoscopy Centers Can Reduce Costs with Quality Products ConMed, June 2020, <https://www.conmed.com/-/media/conmed.com/-/media/conmed/documents/literature/20191881_cet_ascs_endoscopybrochure.ashx> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1625 | | | Irreparable Injury, Cornell Law School,<https://www.law.cornell.edu/wex/irreparable_injury> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1626 | | | K151802 (Resolution 360 Clip) FDA 510k Approval FDA, August 6, 2015, <https://www.accessdata.fda.gov/cdrh_docs/pdf15/K151802.pdf> | | 401/402, 403, 801/802, 901/902, 1003, PMIL |
| DTX-1627 | | | Lockado Hemostasis Clip, Micro-Tech Endoscopy, <https://www.mtendoscopy.com/products/hemostasis-2/lockado-hemostasis-clip/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1628 | | | Lockado Product Information Sheet, Micro-Tech Endoscopy, <https://www.mtendoscopy.com/wp-content/uploads/2020/08/Lockado_MPW30800A-Rev-2-FNL.pdf>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1629 | | | Management of Surgical Hemostasi Independent Study Guide, Association of periOperative Registered Nurses (AORN), 2013, <https://www.aorn.org/-/media/aorn/guidelines/tool-kits/medication-safety/management-of-surgical-hemostasis-independent-study-guide.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1630 | | | Micro-Tech Endoscopy – About, Micro-Tech, <https://mtendoscopy.com/ambulatory-surgery-centers/about/>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1631 | | | Micro-Tech Endoscopy Product Catalog Micro-Tech, <https://www.mtendoscopy.com/wp-content/uploads/2018/11/MTE_Catalog_MPW001-Rev-5.pdf>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1632 | | | Microtech Endoscopy Unmatched Endoscopy Solutions at an Economical Price, Med Tech Outlook, Med Tech Outlook, <https://endoscopy.medicaltechoutlook.com/vendor/microtech-endoscopy-unmatched-endoscopy-solutions-at-an-economical-price-cid-77-mid-12.html> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1633 | | | Micro-Tech Endoscopy USA, Micro-Tech, <https://mtendoscopy.com/ambulatory-surgery-centers/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1634 | | | Olympus Launches New Hemostasis Clip with Advanced Control for GI Endoscopy, Olympus, <https://medical.olympusamerica.com/articles/olympus-launches-new-hemostasis-clip-advanced-control-gi-endoscopy> | | 401/402, 403, 801/802, 901/902, 1003 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-1635 | | | Providers, Arizona Centers for Digestive Health, <https://azcdh.com/providers/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1636 | | | RePlay Hemostasis Clip Diversatek, <https://www.diversatekhealthcare.com/wp-content/uploads/2019/10/DiversatekHealthcare_RePlay_HemostatisClip_Brochure.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1637 | | | RePlay Hemostasis Clip Instructions for Use Diversatek, September 2018, <http://www.diversatekhealthcare.com/wp-content/uploads/2018/09/063-0055-rev.-B-Website-IFU-RePlay.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1638 | | | RePlay Hemostasis Clips, Diversatek, https://www.diversatekhealthcare.com/replay-hemostasis-clip/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1639 | | | Resolution 360 Ultra Clip, BSC, <https://www.bostonscientific.com/en-EU/products/clips/resolution-360-ultra-clip.html> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1640 | | | Resolution 360 Clip, <https://www.bostonscientific.com/content/gwc/en-US/products/clips/Resolution-360-Clip.html f> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1641 | | | Resolution 360 Clip Product Information, <https://www.bostonscientific.com/content/dam/bostonscientific/endo/portfolio-group/resolution-clip/Resolution-360-Clip/Resolution_360_eBrochure.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1642 | | | Resolution 360 Clip Product Information, <https://www.bostonscientific.com/content/gwc/en-US/products/clips/Resolution-360-Clip.html> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1643 | | | Resolution 360 Clip Brochure, <https://www.bostonscientific.com/content/dam/bostonscientific/endo/portfolio-group/resolution-clip/Resolution-360-Clip/Resolution_360_eBrochure.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1644 | | | Resolution Clip Product Information, <https://www.bostonscientific.com/content/gwc/en-US/products/clips/resolution-clip.html> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1645 | | | SciMed Medical Equipment and Products, Medwrench, <https://www.medwrench.com/manufacturer/2280/scimed>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1646 | | | Services Page - Endo-Therapeutics, Inc., <https://endotherapeutics.com/services/> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1647 | | | Single Use Hemoclip (06970401811212) – K172762, National Institute of Health, <https://accessgudid.nlm.nih.gov/devices/06970401811212> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1648 | | | Single Use Hemoclip Product Information <http://www.med-nova.com/en/product-details.asp?Id=443> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1649 | | | Single Use Hemoclip Product Information <http://www.med-nova.com/en/product-details.asp?Id=443> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1650 | | | Single Use Hemoclip, Anrei Medical, <http://www.medincn.com/sell_offers/180415/Single-Use-Hemoclip.html>. | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1651 | | | Single Use Hemoclip, Mednova Zhejiang Chuangxiang Medical Technology Co., LTD, <http://www.med-nova.com/en/product-details.asp?Id=443> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1652 | | | Micro-Tech Product Information <https://mtendoscopy.com/products/hemostasis-2/sureclip/> | | 401/402, 403, 801/802, 901/902, 1003 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1653 | | | SureClip Product Information <https://mtendoscopy.com/wp-content/uploads/2019/10/SureClip_MPW30000R_Rev5.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
|---|---|---|---|---|---|
| DTX-1654 | | | SureClip Product Information <https://mtendoscopy.com/wp-content/uploads/2019/08/SureClip_MPW30000-Rev.8.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1655 | | | SureClip Hemostasis Clip Brochure<https://mtendoscopy.com/wp-content/uploads/2019/10/SureClip_MPW30000R_Rev5.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1656 | | | SureClip Hemostasis Clip Product Sheet<https://mtendoscopy.com/wp-content/uploads/2019/08/SureClip_MPW30000-Rev.8.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1657 | | | SureClip Hemostatic 11mm 165cm 2  Pk | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1658 | | | SureClip Hemostatic 11mm 165cm 10  Bx | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1659 | | | SureClip Hemostatic 11mm 235cm 2  Pk | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1660 | | | SureClip Hemostatic 11mm 235cm 10  Bx | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1661 | | | The History of Clips in Endoscopy, Cook Medical, <https://www.cookmedical.com/endoscopy/the-history-of-clips-in-endoscopy/ | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1662 | | | Transfer Pricing - Establishing Policy for an MNC, Deloitte, 2015, <https://www.bcasonline.org/files/res_material/resfiles/0602162401EstablishingaTransferPricingpolicyforMNC's2014-7March2015-FINAL.pdf> | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1663 | | | Upper and lower digestive tract diagnosis and treatment series, www.bioags.com/home.php?s=/lists_71.html | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1664 | | | Zhejiang Chuangxiang Medical Technology_Show Chinese Entrepreneurship AND Pursue Excellence, www.med-nova.com/en/news-details.asp?Id=366 | | 401/402, 403, 801/802, 901/902, 1003 |
| DTX-1665 | BSC-MT-122195 | BSC-MT-122293 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of M. Sprague | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1666 | BSC-MT-122433 | BSC-MT-122522 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of Kevin Wilcox | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1667 | BSC-MT-123034 | BSC-MT-123162 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of Christopher Davis | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1668 | BSC-MT-123419 | BSC-MT-123473 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcrpt of Javier Jimenez | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1669 | BSC-MT-123529 | BSC-MT-123568 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of Peter Gafner | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1670 | BSC-MT-123651 | BSC-MT-123735 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition Transcript of Marcia Nardone | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1671 | BSC-MT-123176 | BSC-MT-123251 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Hearing Transcript | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1672 | BSC-MT-118046 | BSC-MT-118095 | Boston Scientific - Resolution Clip - Competitive Handling Tool | | 401/402, 403, 801/802 |
| DTX-1673 | HS00000002 | HS00000003 | Product Information | | 401/402, 403, 801/802 |
| DTX-1674 | | | Expert Report of Gary Reiss | Reiss Deposition Ex. 1 | 701/702, 801/802, 901/902, 1006 |
| DTX-1675 | | | Curriculum vitae of G. Reiss | | |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1676 | | | List of Materials Considered | | |
|---|---|---|---|---|---|
| DTX-1677 | | | 510(K) Summary (2004) | | 401/402, 403, 801/802, PMIL |
| DTX-1678 | | | DuraClip Brochure | | 401/402, 403, 801/802 |
| DTX-1679 | | | Haider, Gastroenterology and Heptology (2010) | | 401/402, 403, 801/802 |
| DTX-1680 | | | Jensen, Gastrointestinal Endoscopy (2009) | | 401/402, 403, 801/802 |
| DTX-1681 | | | Lockado Hemostasis Clip Micro-Tech Endoscopy USA Inc | | 401/402, 403, 801/802 |
| DTX-1682 | | | Lockado Product Information Sheet | | 401/402, 403, 801/802 |
| DTX-1683 | | | Maiss et al., Gastrointestinal Endoscopy (2008) | | 401/402, 403, 801/802 |
| DTX-1684 | | | Maiss, Gastroentestinal Endoscopy (2006) | | 401/402, 403, 801/802 |
| DTX-1685 | | | Raju, Gastroenterology (2002) | | 401/402, 403, 801/802 |
| DTX-1686 | | | Resolution 360 eBrochure | | 401/402, 403, 801/802 |
| DTX-1687 | | | ResolutionClip - Boston Scientific - Boston Scientific | | 401/402, 403, 801/802 |
| DTX-1688 | | | Saxena et al., Saudi Journal Gastroenterology (2014) | | 401/402, 403, 801/802 |
| DTX-1689 | | | SureClip Micro-Tech Endoscopy USA Inc | | 401/402, 403, 801/802 |
| DTX-1690 | | | SureClip_MPW30000R_Rev5 | | 401/402, 403, 801/802 |
| DTX-1691 | | | SureClip_MPW30000-Rev.8 | | 401/402, 403, 801/802 |
| DTX-1692 | | | Tang, Surgical Endoscopy (2013) | | 401/402, 403, 801/802 |
| DTX-1693 | | | Use of Endoclip - Gastroenterology Education and CPD for trainees and specialists | | 401/402, 403, 801/802 |
| DTX-1694 | | | Wellington et al., Endoscopic Closure Devices (2019) | | 401/402, 403, 801/802 |
| DTX-1695 | | | Yeh et al., Techniques in Gastrointestinal Endoscopy (2006) | | 401/402, 403, 801/802 |
| DTX-1696 | BSC-MT-123474 | BSC-MT-123528 | Boston Scientific Corp. and Boston Scientific Scimed, Inc. v. Cook Group Inc. and Cook Medical LLC: Deposition of Jennifer Kimball | | 401/402, 403, 801/802, AA, Legal, MC |
| DTX-1697 | BSC-MT-002207 | BSC-MT-002209 | USPTO Notice of Recordation of Assignment | | 401/402, 403, 801/802 |
| DTX-1698 | BSC-MT-002451 | BSC-MT-002452 | Patent Assignment Cover Sheet | | 401/402, 403, 801/802 |
| DTX-1699 | BSC-MT-002489 | BSC-MT-002489 | USPTO Notice of Recordation of Assignment | | 401/402, 403, 801/802 |
| DTX-1700 | BSC-MT-002719 | BSC-MT-002729 | USPTO Combined Declaration and Assignment | | 401/402, 403, 801/802 |
| DTX-1701 | BSC-MT-021252 | BSC-MT-021256 | Letter Re Consulting  Agreement between CURE Foundation, Dennis Jensen and Boston Scientific Corp. | | 401/402, 403, 801/802 |
| DTX-1702 | BSC-MT-021292 | BSC-MT-021296 | Letter Re Consulting  Agreement between CURE Foundation, Dennis Jensen and Boston Scientific Corp. | | 401/402, 403, 801/802 |
| DTX-1703 | BSC-MT-026949 | BSC-MT-026950 | Boston Scientific Microvasive Memorandum | | 401/402, 403, 801/802 |
| DTX-1704 | BSC-MT-028782 | BSC-MT-028783 | Boston Scientific Microvasive Memorandum | | 401/402, 403, 801/802 |
| DTX-1705 | BSC-MT-033584 | BSC-MT-033586 | Amendment No. 15 to Supply Agreement between MedVenture and Boston Scientific | | 401/402, 403, 801/802 |
| DTX-1706 | BSC-MT-040085 | BSC-MT-040190 | Endoscopic Clipping Systems Investigation | | 401/402, 403, 801/802 |
| DTX-1707 | BSC-MT-046254 | BSC-MT-046347 | Investigator Sponsored Study Agreement | | 401/402, 403, 801/802 |
| DTX-1708 | BSC-MT-075312 | BSC-MT-075312 | Excel Spreadsheet, Forecasting Tool_Hemo_F3 2014_8.11.14 | | 401/402, 403, 801/802 |
| DTX-1709 | BSC-MT-075512 | BSC-MT-075518 | Resolution Design Validation Plan | | 401/402, 403, 801/802 |
| DTX-1710 | BSC-MT-075981 | BSC-MT-075981 | Excel Spreadsheet, Hemo Clip Feedback US Customers | | 401/402, 403, 801/802 |
| DTX-1711 | BSC-MT-091961 | BSC-MT-091961 | Excel Spreadsheet, Freudenburg - Medventure Invoice Details | | 401/402, 403, 801/802 |
| DTX-1712 | BSC-MT-136192 | BSC-MT-136200 | Resolution 360 Product Performance Qualification Protocol | | 401/402, 403, 801/802 |
| DTX-1713 | BSC-MT-137051 | BSC-MT-137056 | Boston Scientific Purchase Requisition | | 401/402, 403, 801/802 |
| DTX-1714 | BSC-MT-137098 | BSC-MT-137109 | Fraunhofer Project Proposal - Flexible Shaft Processing System | | 401/402, 403, 801/802 |
| DTX-1715 | BSC-MT-137110 | BSC-MT-137116 | Fraunhofer Project Proposal - Improvements, Shipping Preparation, Installation and Training for the Shaft Processing System | | 401/402, 403, 801/802 |
| DTX-1716 | BSC-MT-137117 | BSC-MT-137131 | Master Services Agreement between BSC and Fraunhofer USA | | 401/402, 403, 801/802 |
| DTX-1717 | BSC-MT-137138 | BSC-MT-137140 | Boston Scientific - Global Form Supplier Change Impact Assessment | | 401/402, 403, 801/802 |
| DTX-1718 | BSC-MT-137263 | BSC-MT-137277 | Master Services Agreement between BSC and MedVenture | | 401/402, 403, 801/802 |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1719 | BSC-MT-137278 | BSC-MT-137305 | Supply Agreement between MedVenture and BSC | | 401/402, 403, 801/802 |
|---|---|---|---|---|---|
| DTX-1720 | BSC-MT-137306 | BSC-MT-137319 | Quality System Plan - Rotatable Resolution Clip | | 401/402, 403, 801/802 |
| DTX-1721 | BSC-MT-137325 | BSC-MT-137340 | Quality System Plan - Rotatable Resolution Clip | | 401/402, 403, 801/802 |
| DTX-1722 | BSC-MT-137418 | BSC-MT-137434 | Quality System Plan - Resolution 360 Clip | | 401/402, 403, 801/802 |
| DTX-1723 | BSC-MT-140705 | BSC-MT-140705 | Excel Spreadsheet, Copy of Scrap Res Clips 2012-2020 | | 401/402, 403, 801/802 |
| DTX-1724 | BSC-MT-140706 | BSC-MT-140706 | Excel Spreadsheet, Copy of MT Litigation BSC Financials | | 401/402, 403, 801/802 |
| DTX-1725 | BSC-MT-140707 | BSC-MT-140707 | Excel Spreadsheet, 2004 to 2021 Sales | | 401/402, 403, 801/802 |
| DTX-1726 | BSC-MT-140708 | BSC-MT-140708 | Excel Spreadsheet, US  Global PL 2011 to 2020 (3.11.2020) | | 401/402, 403, 801/802 |
| DTX-1727 | | | Exhibit Intentionally Omitted | | |
| DTX-1728 | | | Notice of Deposition of Vance Brown | Brown Deposition Ex. 101 | 401/402, 403, 801/802, AA, Legal |
| DTX-1729 | BSC-MT-116639 | BSC-MT-116649 | Agreement for Sharing Research and Development Costs between Scimed and Bostin Scientific Ltd. | Brown Deposition Ex. 102 | 401/402, 403, 801/802 |
| DTX-1730 | BSC-MT-116650 | BSC-MT-116662 | Amended and Restated Agreement for Sharing Research and Development Costs between Scimed and Bostin Scientific Ltd. | Brown Deposition Ex. 103 | 401/402, 403, 801/802 |
| DTX-1731 | BSC-MT-116663 | BSC-MT-116679 | Second Amended and Restated Agreement for Sharing Research and Development Costs between Scimed and Bostin Scientific Ltd. | Brown Deposition Ex. 104 | 401/402, 403, 801/802 |
| DTX-1732 | BSC-MT-140092 | BSC-MT-140110 | Third Amended and Restated Agreement for Sharing Research and Development Costs between Scimed and Bostin Scientific Ltd. | Brown Deposition Ex. 105 | 401/402, 403, 801/802 |
| DTX-1733 | BSC-MT-140135 | BSC-MT-140140 | Amended and Restated Agreement for Sharing Intangible Development Costs between Boston Scientific Ltd. And Boston Scientific de Costa Rica | Brown Deposition Ex.106 | 401/402, 403, 801/802 |
| DTX-1734 | BSC-MT-140116 | BSC-MT-140123 | Intellectual Property Transfer Agreement between Boston Scientific Ltd. And Boston Scientific Medical Device Ltd. | Brown Deposition Ex.107 | 401/402, 403, 801/802 |
| DTX-1735 | BSC-MT-116614 | BSC-MT-116626 | Distributorship Agreement between BSS and BSC | Brown Deposition Ex. 108 | 401/402, 403, 801/802 |
| DTX-1736 | BSC-MT-116605 | BSC-MT-116613 | Agreement for Contract Research and Development between Scimed and BSC | Brown Deposition Ex. 109 | 401/402, 403, 801/802 |
| DTX-1737 | BSC-MT-140065 | BSC-MT-140073 | International Distribution Agreement between BSL abd BSC | Brown Deposition Ex. 110 | 401/402, 403, 801/802 |
| DTX-1738 | BSC-MT-140696 | BSC-MT-140704 | FDA Letter | | 401/402, 403, 801/802, ID |
| DTX-1739 | BSC-MT-140709 | BSC-MT-140709 | OPEX Detail | | 401/402, 403, 801/802 |
| DTX-1740 | | | Expert Report of John R. Bone, CPA, CFF | Bone Deposition Ex. 1 | |
| DTX-1741 | | | Curriculum Vitae of J. Bone | Bone Deposition Ex. 2 | |
| DTX-1742 | | | List of Documents Considered Re Expert Report | Bone Deposition Ex. 3 | |
| DTX-1743 | | | Exhibits1-26.1 to Expert Report of J. Bone | Bone Deposition Ex. 4 | |
| DTX-1744 | | | Reply Expert Report of John R. Bone, CPA, CFF dated December 16, 2020 | Bone Deposition Ex.5 | |
| DTX-1745 | | | Errata to Expert Report of John R. Bone, CPA, CFF dated October 23, 2020 | Bone Deposition Ex. 6 | |
| DTX-1746 | | | Opening Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, and 9.980.725 | Leinsing Deposition Ex. 131 | |
| DTX-1747 | | | Reply Expert Report of Karl R. Leinsing Regarding Infringement of U.S. Patent Nos. 7,094,245, 8,974,371, and 9.980.725 | Leinsing Deposition Ex. 132 | |
| DTX-1748 | | | Exhibit K - Opening Expert Report of Karl R. Leinsing | Leinsing Deposition Ex. 133 | |
| DTX-1749 | | | Exhibit B – Materials Considered - Opening Expert Report of Karl R. Leinsing | Leinsing Deposition Ex. 134 | |
| DTX-1750 | | | Exhibit Intentionally Omitted | | |
| DTX-1751 | | | Image 1 | Leinsing Deposition Ex. 136 | 401/402, 403, 801/802, MC |
| DTX-1752 | | | Image 2 | Leinsing Deposition Ex. 137 | 401/402, 403, 801/802, MC |
| DTX-1753 | | | Image 3 | Leinsing Deposition Ex. 138 | 401/402, 403, 801/802, MC |
| DTX-1754 | | | Image 4 | Leinsing Deposition Ex. 139 | 401/402, 403, 801/802, MC |

Schedule 8 - Defendants' Trial Exhibit List

| DTX-1755 | | | Image 5 | Leinsing Deposition Ex. 140 | 401/402, 403, 801/802, MC |
|---|---|---|---|---|---|
| DTX-1756 | | | Image 6 | Leinsing Deposition Ex. 141 | 401/402, 403, 801/802, MC |
| DTX-1757 | | | Image 7 | Leinsing Deposition Ex. 142 | 401/402, 403, 801/802, MC |
| DTX-1758 | | | Image 8 | Leinsing Deposition Ex. 143 | 401/402, 403, 801/802, MC |
| DTX-1759 | | | Image 9 | Leinsing Deposition Ex. 144 | 401/402, 403, 801/802, MC |
| DTX-1760 | | | Image 10 | Leinsing Deposition Ex. 145 | 401/402, 403, 801/802, MC |
| DTX-1761 | | | Image 11 | Leinsing Deposition Ex. 146 | 401/402, 403, 801/802, MC |
| DTX-1762 | | | Image 12 | Leinsing Deposition Ex. 147 | 401/402, 403, 801/802, MC |
| DTX-1763 | | | Image 13 | Leinsing Deposition Ex. 148 | 401/402, 403, 801/802, MC |
| DTX-1764 | | | Image 14 | Leinsing Deposition Ex. 149 | 401/402, 403, 801/802, MC |
| DTX-1765 | | | Image 15 | Leinsing Deposition Ex. 150 | 401/402, 403, 801/802, MC |
| DTX-1766 | | | Image 16 | Leinsing Deposition Ex. 151 | 401/402, 403, 801/802, MC |
| DTX-1767 | | | Image 20 | Leinsing Deposition Ex. 152 | 401/402, 403, 801/802, MC |
| DTX-1768 | | | Image 21 | Leinsing Deposition Ex. 153 | 401/402, 403, 801/802, MC |
| DTX-1769 | | | Image 22 | Leinsing Deposition Ex. 154 | 401/402, 403, 801/802, MC |
| DTX-1770 | | | Image 23 | Leinsing Deposition Ex. 155 | 401/402, 403, 801/802, MC |
| DTX-1771 | | | Image 24 | Leinsing Deposition Ex. 156 | 401/402, 403, 801/802, MC |
| DTX-1772 | | | Image 25 | Leinsing Deposition Ex. 157 | 401/402, 403, 801/802, MC |
| DTX-1773 | | | Image 27 | Leinsing Deposition Ex. 158 | 401/402, 403, 801/802, MC |
| DTX-1774 | | | Rebuttal Expert Report of Karl R. Leinsing Regarding Validity of U.S. Patent Nos. 7,094,245; 8,974,371; and 9,980,725 | Leinsing Deposition Ex. 159 | |
| DTX-1775 | OAI000001 | OAI000075 | Olympus EndoTherapy – Instructions – Rotatable Clip Fixing Device | Leinsing Deposition Ex. 160 | 401/402, 403, 801/802 |
| DTX-1776 | | | U.S. Patent App. Publication 2002/0045909 by Kimura et al. | Leinsing Deposition Ex. 161 | 401/402, 403, 801/802 |
| DTX-1777 | | | U.S. Patent App. Publication 2003/0069592 by Adams et al. | Leinsing Deposition Ex. 162 | 401/402, 403, 801/802 |
| DTX-1778 | | | U.S. Patent App. Publication 2002/0177861 by Sugiyama et al. | Leinsing Deposition Ex. 163 | 401/402, 403, 801/802 |
| DTX-1779 | | | Expert Report of Dr. Oleh Haluska dated October 23, 2020 | Haluska Deposition Ex. 164 | |
| DTX-1780 | | | Reply Expert Report of Dr. Oleh Haluska dated December 16, 2020 | Haluska Deposition Ex. 165 | |
| DTX-1781 | | | Excerpts from EPO Opposition Proceeding for EP No. 1328199 | | 401/402, 403, 801/802, PMIL, 1002 |

Schedule 8 - Defendants' Trial Exhibit List

| | | | | | |
|---|---|---|---|---|---|
| DTX-1782 | | | Communication for File History EP No. 1328199 | | 401/402, 403, 801/802, PMIL, 1002 |
| DTX-1783 | | | Exhibit L - Opening Expert Report of Karl R. Leinsing | | |
| DTX-1784 | | | Exhibit N - Opening Expert Report of Karl R. Leinsing | | |
| DTX-1785 | | | Exhibit O - Opening Expert Report of Karl R. Leinsing | | |
| DTX-1786 | | | Plaintiff's Final Infringement Contentions | | 401/402, 403, 801/802, AA, Legal |
| DTX-1787 | | | Exhibit E - Opening Expert Report of Karl R. Leinsing | | |
| DTX-1788 | | | American Heritage College Dictionary (2000), p. 1378 | | 401/402, 403, 801/802 |
| DTX-1789 | | | Webster's II New College Dictionary (2001), p. 1120 | | 401/402, 403, 801/802 |
| DTX-1790 | | | Exhibit M - Opening Expert Report of Karl R. Leinsing | | |
| DTX-1791 | | | Exhibit P - Opening Expert Report of Karl R. Leinsing | | |
| DTX-1792 | | | Impact of Distal Pin (Video) | | 401/402, 403, 701/702, 801/802 |
| DTX-1793 | | | Kimura Inventor Oath and Declaration | | 401/402, 403, 801/802 |
| DTX-1794 | | | Kimura Transmittal of New Application | | 401/402, 403, 801/802 |
| DTX-1795 | | | Defendant's Amended Initial Invalidity Contentions | | 401/402, 403, 801/802, AA, Legal |
| DTX-1796 | | | U.S. Patent Application Publication No. 2004/0106866 by Ookubo et al. | | 401/402, 403, 801/802 |
| DTX-1797 | | | U.S. Patent Application Publication No. 2012/0109162 by Durgin et al. | | 401/402, 403, 801/802 |
| DTX-1798 | | | U.S. Patent Application Publication No. 2005/0070758 by Wells et al. | | 401/402, 403, 801/802 |
| DTX-1799 | | | U.S. Patent No. 7,494,461 by Wells et al. | | 401/402, 403, 801/802 |
| DTX-1800 | | | U.S. Patent No. 7,452,327 by Durgin et al. | | 401/402, 403, 801/802 |
| DTX-1801 | | | U.S. Patent No. 6,966,891 by Ookubo et al. | | 401/402, 403, 801/802 |
| DTX-1802 | | | Supplemental Expert Report of Michael Plishka | | 701/702, 801/802, 901/902, PMIL |
| DTX-1803 | | | Boston Scientific Corp. 10-K (FY 2016) | | 401/402, 403, 801/802 |
| DTX-1804 | | | Boston Scientific Corp. 10-K (FY 2018) | | 401/402, 403, 801/802 |
| DTX-1805 | | | Boston Scientific Corp. 10-K (FY 2019) | | 401/402, 403, 801/802 |
| DTX-1806 | | | Conmed Corp. 10-K (FY 2019) | | 401/402, 403, 801/802 |
| DTX-1807 | | | Henry Schein Inc. 10-K (FY 2016) | | 401/402, 403, 801/802 |
| DTX-1808 | | | Henry Schein Inc. 10-K (FY 2019) | | 401/402, 403, 801/802 |
| DTX-1809 | | | Cook Grp. Inc. v. Bos. Sci. Scimed, Inc., 809 F. App'x 977 (Fed. Cir. 2020) | | 401/402, 403, Legal, PMIL |
| | | | | | |
| | | | | | |
| DPX-xx | | | Physical Exh bits – Micro-Tech SureClip and Lockado hemostasis clips | | Boston Scientific reserves the right to object to each of Defendants' Physical Exhibits in accordance with the Pretrial Order |
| DPX-xx | | | Physical Exh bits – Boston Scientific Resolution and Resolution 360 hemostatis clips | | Boston Scientific reserves the right to object to each of Defendants' Physical Exhibits in accordance with the Pretrial Order |
| DPX-xx | | | Physical Exh bits – Olympus QuickClip hemostasis clips | | Boston Scientific reserves the right to object to each of Defendants' Physical Exhibits in accordance with the Pretrial Order |
| DPX-xx | | | Physical Exh bits – Other physical exhibits to be identified | | Boston Scientific reserves the right to object to each of Defendants' Physical Exhibits in accordance with the Pretrial Order |
| | | | | | |

Boston Scientific objects to each of Defendants' exhibits at least under Fed. R. Evid. 106 and 1002 to the extent that such exhibit improperly contains annotations or highlighting not present in the original document, or removes pages from the original document.

# SCHEDULE 9

SCHEDULE 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

Plaintiffs,

v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

Defendants.

CA. No. 18-1869-SB/CJB

## PLAINTIFFS' WITNESS LIST (SCHEDULE 9)

Pursuant to Local Rule 16.3(c), Plaintiffs expect to call the following

witnesses to testify live or by deposition at trial. Plaintiffs reserve the right to

revise or supplement this list consistent with the Pretrial Order or as otherwise

permitted by the Court. If any witness Plaintiffs intend to call to testify live is

unavailable, Plaintiffs reserve the right to offer deposition testimony from such

witness. Plaintiffs also reserve the right to call live or by deposition anyone

appearing on Defendants' witness list. Plaintiffs further reserve the right to call

live or by deposition any witness to provide foundational testimony should any

party contest the authenticity or admissibility of any material proffered at trial.

Plaintiffs reserve the right to call any witness for impeachment purposes. Finally,

Plaintiffs reserve the right to call live or by deposition any fact witness designated

SCHEDULE 9

by Defendants in their List of Witnesses that Defendants elect not to call at trial.

Plaintiffs are not required to present testimony from any witness on its list of

witnesses.

## WILL CALL LIST

| EXPERT WITNESS | LIVE OR BY DEPOSITION |
|---|---|
| John Bone (CV included as Attachment A hereto) | Live |
| Oleh Haluszka (CV included as Attachment B hereto) | Live |
| Karl Leinsing (CV included as Attachment C hereto) | Live |

## MAY CALL LIST

| WITNESS | LIVE OR BY DEPOSITION |
|---|---|
| Vasily P. Abramov | By deposition |
| Mark Adams | By deposition |
| Niklas Andersson | Live |
| Danielle Bogartz | Live |
| Vance Brown | Live |
| Gregory R. Furnish | By deposition |
| Kurt Geitz | Live |
| Elena Hennessey | Live |
| Scott Jackson | By deposition |
| William C. Mers Kelly | By deposition |

SCHEDULE 9

| Claudia Schulz Kendall | Live |
| Christopher Li | By deposition |
| Lauren Moscato | Live |
| Collin Murray | Live |
| Ronald Perry | By deposition |
| David Pierce | Live |
| Steven Raderstorf | Live |
| Vincent Turturro | By deposition |
| Brian Keith Wells | By deposition |

# Attachment A

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**





**Chicago, IL USA**
**Office:** +1 312.752.3378
**Mobile:** +1 312.451.2844
jbone@stout.com

### Education

M.B.A., Statistics and Finance
University of Chicago
B.B.A., Accounting and Finance
University of Michigan

### Designations

Certified Public Accountant (CPA)
Certified in Financial Forensics (CFF)

### Practice Areas

Complex Business Litigation
Intellectual Property Disputes
Trade Secrets & Restrictive Covenants
Forensic Investigations
Contract Compliance

### Industry Focus

Diversified Industrials
Healthcare & Life Sciences
Technology, Media &
Telecommunications

John Bone is a Managing Director in the Disputes, Compliance, & Investigations group. He has over 30 years of experience serving as either an expert witness or consultant in an array of matters, including commercial contract disputes, franchisor/franchisee disputes, intellectual property disputes including disputes over FRAND encumbered Standard Essential Patents (SEPs) and forensic investigations.   He has testified in federal court, state court, U.S. bankruptcy court and at American Arbitration Association proceedings on a variety of issues, most of which included an analysis and evaluation of economic and financial data for the purpose of determining the extent of damages.

Mr. Bone also has experience with the analysis of accounting, production, and financial data for the purpose of assessing the economic basis for injunctive relief as well as liability and causation.  In performing these analyses, Mr. Bone has applied numerous financial tools and methodologies, such as discounted cash flow analysis, regression models, and incremental cost analysis.

He has worked across a broad number of industries and subsectors, including agriculture, automotive, biotech, chemicals, consumer products, computer software, computer hardware, insurance, industrial equipment, medical products, medical equipment, pharmaceuticals, professional services, publishing, quick serve restaurants, real estate, telecommunications, textiles, transportation, and wireless communications.

Prior to joining Stout, Mr. Bone was a Vice President for Charles River Associates (CRA), where he led their Chicago office.

### Recognition

Mr. Bone has been nationally recognized as a top economic expert witness six consecutive years (2014, 2015, 2016, 2017, 2018, 2019) by the IAM Patent 1000.

### Professional Memberships

- American Institute of Certified Public Accountants
- Illinois CPA Society
- Intellectual Property Owners Association

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



### Testimony Experience: Testimony before Trier of Fact

Trial Testimony—On behalf of Defendants in bioMérieux, S.A., bioMérieux, Inc. v. Hologic, Inc., Grifols, S.A., and Grifols Diagnostic Solutions Inc., U.S. District Court for the District of Delaware

Arbitration Testimony—On behalf of Claimant in Abbott Diabetes Care Inc. v. GSIPC, LLC, as successor in interest to GSI Technologies, LLC, ADR Systems – Commercial Division

Trial Testimony—On behalf of Defendant (Briggs) in Exmark Manufacturing Company, Inc. v. Briggs & Stratton Corporation, U.S. District Court for the District of Nebraska

Trial Testimony—On behalf of Plaintiff in Raymond Cahnman v. Timber Court LLC, David Zazove and Barron Development LLC, Circuit Court of Cook County, Illinois, County Department - Chancery Division

Trial Testimony—On behalf of Plaintiff in Brown & Brown of Kentucky, Inc. v. David Walker and CBI Holdings LLC d/b/a CBI Insurance, Jefferson Circuit Court, Division Ten (10)

Trial Testimony—On behalf of Defendants in Samson Lift Technologies LLC v. Jerr-Dan Corporation and Oshkosh Corporation, Supreme Court of New York County

Trial Testimony—On behalf of Defendants in Sonos, Inc. v. D&M Holdings, Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc. and Denon Electronics (USA), LLC, U.S. District Court for the District of Delaware

Trial Testimony—On  behalf of Plaintiff in Parallel Networks Licensing LLC v. Microsoft Corporation, U.S. District Court for the District of Delaware

Trial Testimony—On behalf of Defendant in Life Plans, Inc. v. Security Life of Denver Insurance Company, U.S. District Court for the Northern District of Illinois, Eastern Division

Trial Testimony—On behalf of Defendants in Zylon Corp. and Alan Zamore v. Medtronic, Inc., Medtronic Vascular, Inc., and Medtronic Vascular Holdings Ltd. f/k/a AVE Galway Ltd., Supreme Court of the State of New York, County of New York

Pre-Trial Hearing and Trial Testimony—On behalf of Defendant in Michael Anthony G. Wilbern and Wilbern Enterprises, LLC v. Culver Franchising System, Inc., U.S. District Court for the Northern District of Illinois, Eastern Division

Trial Testimony—On behalf of Defendant (Briggs) in Exmark Manufacturing Co. Inc., v. Briggs & Stratton Power Products Group, LLC and Schiller Grounds Care, Inc., U.S. District Court for the District of Nebraska

Arbitration Testimony—On behalf of Plaintiff in The Allant Group, Inc., v. Helzberg's Diamond Shops, Inc. d/b/a Helzberg Diamonds, American Arbitration Association – Chicago, IL

Trial Testimony—On behalf of Defendants in Banning Lary, et al. v. Boston Scientific Corporation, et al., U.S. District Court for the Southern District of Florida

Trial Testimony—On behalf of Plaintiffs in Ericsson, Inc., et al. v. D-Link Corporation, et al., U.S. District Court for the Eastern District of Texas, Tyler Division

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

2

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



Trial Testimony—On behalf of Defendant in First Merit Venture, First Merit Realty Services, Inc., and Gary Z. Baxter v. Scott I Canel, Scott I Canel & Associates, Richard Price, Ten South Management, et al., Circuit Court of Cook County, Illinois, County Department, Law Division

Arbitration Testimony—On behalf of Plaintiff in Halliburton Energy Services, Inc. v. BJ Services Company, American Arbitration Association – Houston, TX

Arbitration Testimony—On behalf of Respondent in Jeep Eagle 17. v. Chrysler Group LLC.  American Arbitration Association – Wayne, NJ

Arbitration Testimony—On behalf of Respondent in Arlington Chrysler Jeep Dodge. v. Chrysler Group LLC. American Arbitration Association – Chicago, IL

Arbitration Testimony—On behalf of Respondent in Continental Chrysler Jeep, Inc. v. Chrysler Group LLC. American Arbitration Association – Chicago, IL

Arbitration Testimony—On behalf of Respondent in Montrose Dodge, Inc. v. Chrysler Group LLC.  American Arbitration Association – Washington, D.C.

Trial Testimony—On behalf of Defendants in DNT LLC v. Sprint Spectrum, LP and Nextel Operations, Inc.; Cellco Partnership d/b/a Verizon Wireless; T-Mobile USA, Inc.; Alltel Communication, LLC; and United States Cellular Corporation. U.S. District Court, Eastern District of Virginia, Richmond Division

Arbitration Testimony—On behalf of Defendant in Molten Metal Equipment Innovations, Inc. v. Pyrotek Inc. American Arbitration Association – Cleveland, Ohio

Trial Testimony—On behalf of Defendant in Telecommunication Systems, Inc. v. Mobile 365, Inc. and WiderThan Americas, Inc. U.S. District Court, Eastern District of Virginia, Richmond Division

Trial Testimony—On behalf of Defendant in Ethos Technologies, Inc. v. RealNetworks, Inc. U.S. District Court—District of Massachusetts

Trial Testimony—On behalf of Defendant in InsureOne Independent Insurance Agency, LLC, et al. v. James P. Hallberg, et al. Circuit Court of Cook County, Illinois, County Department, Chancery Division

Arbitration Testimony—On behalf of Plaintiff in Biomet, Inc. and Biomet Orthopedics, Inc. v. Biomet-Ross and B. Keith Ross. American Arbitration Association—Columbus, Ohio

Testimony at Preliminary Injunction Hearing—On behalf of Defendant in Smith Wholesale Company, Inc. v. R.J. Reynolds Tobacco Company. U.S. District Court—Eastern District of Tennessee

Trial Testimony—On behalf of Plaintiff in John Donovan Enterprises v. Allied Plastics and Thermo King. U.S. District Court—Western District of Wisconsin

Trial Testimony—On behalf of Defendant in W.R. Grace & Co.—CONN v. Intercat, Inc. and Conoco, Inc. U.S. District Court—District of Delaware

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

3

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



Trial Testimony—On behalf of Smart Data, Inc. U.S. Bankruptcy Court—Northern District of Illinois, Eastern Division

**Testimony Experience: Deposition Testimony**

On behalf of Defendants/Counter-Plaintiffs in Days Corporation d/b/a/ Equalizer Systems v. Lippert Components, Inc. and Innovative Design Solutions, Inc., U.S. District Court for the Northern District of Indiana, South Bend Division

On behalf of Defendants in ICM Controls Corp. and International Controls and Measurements Corp. v. Honeywell International, Inc. and Resideo Technologies, Inc., U.S. District Court for the Northern District of New York

On behalf of Defendants in Vital Pharmaceuticals, Inc. d/b/a VPX Sports v. Monster Energy Company and Reign Beverage Company, LLC, U.S. District Court, Southern District of Florida

On behalf of Plaintiff in Specialty Earth Sciences, LLC v. Carus Corporation, U.S. District Court for the Northern District of Illinois - Eastern Division

On behalf of Defendants in bioMérieux, S.A., bioMérieux, Inc. v.  Hologic, Inc., Grifols, S.A., and Grifols Diagnostic Solutions Inc., U.S. District Court for the District of Delaware

On behalf of Defendant in Osseo Imaging, LLC v. Planmeca USA Inc., U.S. District Court for the District of Delaware

On behalf of Defendant in Airhawk International, LLC v. Ontel Products Corporation, U.S. District Court, Southern District of California

On behalf of Plaintiff/Counter-Defendant in Guaranteed Rate, Inc. v. Netrix, Inc., Circuit Court of Cook County, Illinois, Chancery Division

On behalf of Plaintiff in Brown & Brown of Kentucky, Inc. v. David Walker and CBI Holdings LLC d/b/a CBI Insurance, Jefferson Circuit Court, Division Ten (10)

On behalf of Defendant in Exmark Manufacturing Co., Inc. v. Briggs & Stratton Power Corporation, U.S. District Court for the District of Nebraska

On behalf of Plaintiffs in Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation v. Nevro Corp., U.S. District Court for the District of Delaware

On behalf of Defendants in Nevro Corp. v. Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation, U.S. District Court for the Northern District of California

On behalf of Defendants in Egan Marine Corporation v. ExxonMobil Oil Corporation, Exxon Mobil Corporation, et al., Circuit Court of Cook County, Illinois, County Department, Law Division

On behalf of Plaintiffs in D&M Holdings, Inc. d/b/a The D+M Group and D&M Holdings U.S. Inc. v. Sonos, Inc., U.S. District Court for the District of Delaware

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

4

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



On behalf of Defendant in Fogg Filler Company v. Closure Systems International, Inc., U.S. District Court for the Western District of Michigan – Southern Division

On behalf of Defendants in Sonos, Inc. v. D&M Holdings, Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc. and Denon Electronics (USA), LLC, U.S. District Court for the District of Delaware

On behalf of Plaintiffs in United States of America, *ex rel*. Michael McGee, and People of the State of Illinois *ex rel*. Michael McGee v.  IBM Corporation, Johnson Controls Incorporated, Wireless Information Technologies Enterprise, LLC, Technology Alternatives, Inc., TechAlt, Inc., Public Safety Communications, Inc., MWOBE Controls, Inc., Services by Designwise, Ltd., I.T. Suite, Inc., et al., U.S. District Court for the Northern District of Illinois, Eastern Division

On behalf of Plaintiff in C.D.S. Inc v. Bradley Zetler, CDS, LLC, Rapid Systems CC, et al., U.S. District Court for the Southern District of New York

On behalf of Defendant in Sauder Manufacturing Company v. J Squared, Inc. d/b/a University Loft Company, U.S. District Court for the Northern District of Ohio, Western Division

On behalf of Plaintiffs in C&C Power and uPower Supplies, LLC v. C&D Technologies, Inc., Diversified Assembly Technologies Corporation, EnXergy, LLC and Gary Gray, Circuit Court of Cook Country, Illinois, County Department, Law Division

On behalf of Defendant (Marquette Bank) in Daniel L. O'Malley, et al. v. William O'Malley, Thomas O'Malley, Joan O'Malley Gross, Frank K. Neidhart, Jr., McCarthy Duffy, LLP, Michael P. Rhodes, Kovitz Shifrin & Nesbit, P.P., Smart & Associates, Con Murphy, FGMK, LLC and Marquette Bank, Circuit Court of Cook County, Illinois, County Department, Law Division

On behalf of Defendants in Enzo Life Sciences, Inc. v. Hologic, Inc., and Enzo Life Sciences, Inc. v. Gen-Probe, Incorporated, U.S. District Court for the District of Delaware

On behalf of Plaintiff in Parallel Networks Licensing LLC v. Microsoft Corporation, U.S. District Court for the District of Delaware

On behalf of Defendants in Dr. Quingsheng Zhu and Dr. Julio Spinelli, acting jointly as the Stockholder Representative Committee for Action Medical, Inc. v. Boston Scientific Corporation and Cardiac Pacemakers, Inc., U.S. District Court for the District of Delaware

On behalf of Plaintiff in Parallel Networks Licensing LLC v. International Business Machines Corporation, U.S. District Court for the District of Delaware

On behalf of Plaintiffs in Kimberly-Clark Worldwide Inc. and Kimberly-Clark Global Sales, LLC v. First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC, U.S. District Court for the Eastern District of Wisconsin

On behalf of Plaintiff in The Viking Corporation v. Victaulic Company,  U.S. District Court for the Western District of Michigan – Southern Division

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

5

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



---

On behalf of Defendant (Phoenix Aromas & Essential Oils) in Victorino Huerta, et al. v. Aldrich Chemical Co., et al, Circuit Court of Cook County, Illinois, County Department, Law Division

On behalf of Plaintiffs in Kangaroo Media, Inc., and Immersion Entertainment LLC, v. Yinzcam, Inc., U.S. District Court for the Western District of Pennsylvania

On behalf of Defendant (Briggs) in Exmark Manufacturing Co. Inc., v. Briggs & Stratton Power Products Group, LLC and Schiller Grounds Care, Inc., U.S. District Court for the District of Nebraska

On behalf of Plaintiff in Verco Decking Inc. v. Consolidated Systems Inc., U.S. District Court for the District of Arizona, Phoenix Division

On behalf of Defendant in Lawrence S. Kirsch, as Shareholders' Representative of Lawrence S. Kirsch, Charles W. Kriete, Michael J. Chase and George Puszka v. Brightstar Corp., U.S. District Court for the Northern District of Illinois, Eastern Division

On behalf of Plaintiff in Nalco Company v. Turner Designs, Inc., U.S. District Court for the Northern District of California

On behalf of Defendants in Banning Lary, et al., v. Boston Scientific Corporation, et al., U.S. District Court for the Southern District of Florida

On behalf of Defendants in Samson Lift Technologies LLC v. Jerr-Dan Corporation and Oshkosh Corporation, Supreme Court of New York County

On behalf of Defendants in Mobile Medical International Corporation v. Advanced Mobile Hospital Systems, Inc., Tractus Medical, Inc. and Does 1-10, U.S. District Court for the District of Vermont

On behalf of Plaintiff in Roll-Rite, LLC v. Shur-Co, LLC, U.S. District Court for the Eastern District of Michigan

On behalf of Plaintiff in Medtronic, Inc. and Medtronic USA, Inc. v. Edwards Lifesciences Corp, et al., U.S. District Court for the District of Minnesota

On behalf of Plaintiff in Medtronic, Inc. v. Edwards Lifesciences Corporation, et al., U.S. District Court for the Central District of California

On behalf of Defendants in Banning Lary, et al., v. Boston Scientific Corporation, et al., U.S. District Court for the Southern District of Florida

On behalf of Defendants in Edwards Lifesciences LLC, et al. v. Medtronic Corevalve LLC, et al., U.S. District Court for the District of Delaware

On behalf of Plaintiffs in Ericsson, Inc., et al. v. D-Link Corporation, et al., U.S. District Court for the Eastern District of Texas, Tyler Division

On behalf of Defendant in Alexsam, Inc. v. Best Buy Stores, L.P., et al., U.S. District Court for the Eastern District of Texas, Marshall Division

---

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

6

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



On behalf of Defendant in Life Plans, Inc. v. Security Life of Denver Insurance Company, U.S. District Court for the Northern District of Illinois, Eastern Division

On behalf of Defendant in Zylon Corp. and Alan Zamore v. Medtronic, Inc., Medtronic Vascular, Inc., and Medtronic Vascular Holdings Ltd. f/k/a AVE Galway Ltd., Supreme Court of the State of New York, County of New York

On behalf of Plaintiff in Halliburton Energy Services, Inc. v. BJ Services Company, American Arbitration Association – Houston, TX

On behalf of Defendant in First Merit Venture, First Merit Realty Services, Inc., and Gary Z. Baxter v. Scott I Canel, Scott I Canel & Associates, Richard Price, Ten South Management, et al., Circuit Court of Cook County, Illinois, County Department, Law Division

On behalf of Defendant in Samson Lift Technologies v. Jerr-Dan Corporation and Oshkosh Corporation, U.S. District Court, Middle District of Pennsylvania

On behalf of Defendant in Synventive Molding Solutions v. Husky Injection Molding Systems, Inc. U.S. District Court for the District of Vermont

On behalf of Defendants in DNT LLC v. Sprint Spectrum, LP and Nextel Operations, Inc.; Cellco Partnership d/b/a Verizon Wireless; T-Mobile USA, Inc.; Alltel Communication, LLC; and United States Cellular Corporation. U.S. District Court, Eastern District of Virginia, Richmond Division

On behalf of Defendant in Molten Metal Equipment Innovations, Inc. v. Pyrotek Inc. American Arbitration Association

On behalf of Defendant in Telecommunication Systems, Inc. v. Mobile 365, Inc. and WiderThan Americas, Inc. U.S. District Court, Eastern District of Virginia, Richmond Division

On behalf of Plaintiff/Counterclaim Defendant in Static Control Components, Inc. v. Lexmark International, Inc. U.S. District Court, Eastern District of Kentucky at Lexington

On behalf of Plaintiff in 7-Eleven, Inc. v. Philip Morris USA, Inc. U.S. District Court, Northern District of Texas, Dallas Division

On behalf of Defendant in Ethos Technologies, Inc. v. RealNetworks, Inc. U.S. District Court—District of Massachusetts

On behalf of Defendant in InsureOne Independent Insurance Agency, LLC, et al. v. James P. Hallberg, et al. Circuit Court of Cook County, Illinois, County Department, Chancery Division

On behalf of Plaintiff in Static Control Components, Inc. v. Intersolution Ventures LTD, et al. U.S. District Court, Middle District of North Carolina, Durham Division

On behalf of Plaintiff in First Midwest Bank, N.A. v. LaSalle National Bank, et al. Circuit Court of Cook County, County Department, Law Division

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

7

## John Bone
Managing Director
**Damages Expert / Forensic Accountant**



On behalf of Defendant in Subhash C. Katial v. Massachusetts Mutual Life Insurance Company. U.S. District Court—Northern District of Illinois, Eastern Division

On behalf of Plaintiff in John Donovan Enterprises v. Allied Plastics and Thermo King. U.S. District Court—Western District of Wisconsin

On behalf of Defendant in W. R. Grace & Co.—CONN v. Intercat, Inc. and Conoco, Inc. U.S. District Court—District of Delaware

On behalf of Defendant in Holder v. USAir, Inc. et al. U.S. District Court—Northern District of Ohio (Cleveland)


### Testimony Experience: Written Testimony

Expert Report—On behalf of Plaintiff in Parkervision, Inc. v Qualcomm Incorporated, Qualcomm Atheros, Inc., HTC Corporation, and HTC America, Inc., U.S. District Court for the Middle District of Florida, Orlando Division

Expert Report—On behalf of Plaintiff in Scrum Alliance, Inc. v. Scrum Inc, Jeff Sutherland and J.J. Sutherland, U.S. District Court for the Eastern District of Texas, Sherman Division

Expert Report—On behalf of Plaintiffs in Cytiva Sweden AB and Global Life Sciences Solutions USA LLC v. Bio-Rad Laboratories, Inc. U.S. District Court for the District of Delaware

Expert Report—On behalf of Defendants in ICM Controls Corp. and International Controls and Measurements Corp. v. Honeywell International, Inc. and Resideo Technologies, Inc., U.S. District Court for the Northern District of New York

Expert Report—On behalf of Defendants/Counter-Plaintiffs in Days Corporation d/b/a/ Equalizer Systems v. Lippert Components, Inc. and Innovative Design Solutions, Inc., U.S. District Court for the Northern District of Indiana, South Bend Division

Expert Report—On behalf of Plaintiff in PSC Industries, Inc. v. David E. Johnson, U.S. District Court for the Middle District of Tennessee - Nashville Division

Rebuttal Expert Report—On behalf of Plaintiff/Counter-Defendant in A&A Coating, Inc. v. Wheelabrator Group, Inc., U.S. District Court for the Eastern District of Texas, Marshall Division

Expert Report—On behalf of Defendants in Vital Pharmaceuticals, Inc. d/b/a VPX Sports v. Monster Energy Company and Reign Beverage Company, LLC, U.S. District Court, Southern District of Florida

Rebuttal Expert Report—On behalf of Defendants in bioMérieux, S.A., bioMérieux, Inc. v.  Hologic, Inc., Grifols, S.A., and Grifols Diagnostic Solutions Inc., U.S. District Court for the District of Delaware

Rebuttal Expert Report—On behalf of Defendant in Osseo Imaging, LLC v. Planmeca USA Inc., U.S. District Court for the District of Delaware

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

8

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



---

Expert Disclosure—On behalf of Claimant in Abbott Diabetes Care Inc. v. GSIPC, LLC, as successor in interest to GSI Technologies, LLC, ADR Systems - Commercial Division

Rebuttal Expert Report—On behalf of Plaintiff/Counter-Defendant in Guaranteed Rate, Inc. v. Netrix, Inc., Circuit Court of Cook County, Illinois, Chancery Division

Expert Report—On behalf of Plaintiffs in HP Tuners, LLC v. Kevin Sykes-Bonnett, Syked Ecu Tuning Incorporated and John Martinson, U.S. District Court, Western District of Washington at Tacoma

Expert Report—On behalf of Plaintiffs in New Flyer Industries Canada ULC and New Flyer of America Inc. v. Rugby Aviation LLC d/b/a San Juan Airlines, U.S. District Court for the Western District of Washington at Seattle

Expert Report—On behalf of Defendant in Airhawk International, LLC v. Ontel Products Corporation, U.S. District Court, Southern District of California

Expert Report—Specialty Earth Sciences, LLC v. Carus Corporation, U.S. District Court for the Northern District of Illinois - Eastern Division

Expert Report—On behalf of Plaintiff in Top Shelf Barber Supplies, LLC d/b/a Top Shelf Brands v. Think Operations, LLC, U.S. District Court for the Western District of Michigan, Southern Division

Expert Report—On behalf of Plaintiff in Guaranteed Rate, Inc. v. Netrix, Inc., Circuit Court of Cook County, Illinois, Chancery Division

Expert Report—On behalf of Plaintiff in Raymond Cahnman v. Timber Court LLC, David Zazove and Barron Development LLC, Circuit Court of Cook County, Illinois, County Department - Chancery Division

Expert Report—On behalf of Plaintiff in Brown & Brown of Kentucky, Inc. v. David Walker and CBI Holdings LLC d/b/a CBI Insurance, Jefferson Circuit Court, Division Ten (10)

Expert Report—On behalf of Defendant in Exmark Manufacturing Co., Inc. v. Briggs & Stratton Corporation, U.S. District Court for the District of Nebraska

Declaration—On behalf of Patent Owner in Nevro Corp. (Petitioner) v. Boston Scientific Neuromodulation Corp. (Patent Owner) *Inter Partes* Review, U.S. Patent and Trademark Office before the Patent Trial and Appeal Board

Expert Report—On behalf of Plaintiffs in Boston Scientific Corp. and Boston Scientific Neuromodulation Corp. v. Nevro Corp., U.S. District Court for the District of Delaware

Expert Report—On behalf of Plaintiffs in Domtar Corporation and Associated Hygienic Products, LLC v. First Quality Retail Services, LLC, U.S. District Court, Eastern District of North Carolina, Western Division

Expert Report—On behalf of Defendants in Nevro Corp. v. Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation, U.S. District Court for the Northern District of California

Expert Report and Surrebuttal Expert Report—On behalf of Defendants in Egan Marine Corporation v. ExxonMobil Oil Corporation, Exxon Mobil Corporation, et al., Circuit Court of Cook County, Illinois, County Department, Law Division

---

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

9

**John Bone**
Managing Director
**Damages Expert / Forensic Accountant**



Rebuttal Expert Report—On behalf of Defendant in CE Resource, Inc. d/b/a CME Resource and Net CE v. Elite Continuing Education, U.S. District Court for the Southern District of Florida

Expert Report—On behalf of Plaintiffs in D&M Holdings Inc. d/b/a The D+M Group, and D&M Holdings U.S. Inc. v. Sonos, Inc., U.S. District Court for the District of Delaware

Rebuttal Expert Report—On behalf of Defendant in Fogg Filler Company v. Closure Systems International, Inc., U.S. District Court for the Western District of Michigan - Southern Division

Expert Report and Rebuttal Expert Report—On behalf of Plaintiffs in United States of America, *ex rel*. Michael McGee, and People of the State of Illinois *ex rel*. Michael McGee v.  IBM Corporation, Johnson Controls Incorporated, Wireless Information Technologies Enterprise, LLC, Technology Alternatives, Inc., TechAlt, Inc., Public Safety Communications, Inc., MWOBE Controls, Inc., Services by Designwise, Ltd., I.T. Suite, Inc., et al., U.S. District Court for the Northern District of Illinois, Eastern Division

Expert Report—On behald of Plaintiffs in Boston Scientific Corporation and Boston Scientific Scimed, Inc. v. Cook Group Incorporated and Cook Medical LLC, United States District Court for the District of Delaware

Supplemental Expert Report—On behalf of Defendants in Sonos, Inc. v. D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC, U.S. District Court for the District of Delaware

Expert Report—On behalf of Plaintiff in C.D.S. Inc v. Bradley Zetler, CDS, LLC, Rapid Systems CC, et al., U.S. District Court for the Southern District of New York

Expert Report—On behalf of Defendant in Sauder Manufacturing Company v. J Squared, Inc. d/b/a University Loft Company, U.S. District Court for the Northern District of Ohio, Western Division

Expert Report—On behalf of Defendant in BlackBerry Limited v. BLU Products, Inc., U.S. District Court for the Southern District of Florida, Miami Division

Rebuttal Expert Report—On behalf of Defendants in Sonos, Inc. v. D&M Holdings, Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc. and Denon Electronics (USA), LLC, U.S. District Court for the District of Delaware

Expert Report—On behalf of Plaintiffs in C&C Power and uPower Supplies, LLC v. C&D Technologies, Inc., Diversified Assembly Technologies Corporation, Enxergy, LLC and Gary Gray, Circuit Court of Cook Country, Illinois, County Department, Law Division

Expert Report—On behalf of Defendants in International Biomedical, Ltd. v. General Electric Company and Datex-Ohmeda, Inc. (d/b/a GE Healthcare), U.S. District Court for the Western District of Texas, Austin Division

Rebuttal Expert Report—On behalf of Defendant in Cornell University, Cornell Research Foundation, Inc., Life Technologies Corporation and Applied Biosystems, LLC. v. Illumina, Inc.,  U.S. District Court for the District of Delaware

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

10

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



---

Rebuttal Expert Report—On behalf of Defendant (Marquette Bank) in Daniel L. O'Malley, et al. v. William O'Malley, Thomas O'Malley, Joan O'Malley Gross, Frank K. Neidhart, Jr., McCarthy Duffy, LLP, Michael P. Rhodes, Kovitz Shifrin & Nesbit, P.P., Smart & Associates, Con Murphy, FGMK, LLC and Marquette Bank, Circuit Court of Cook County, Illinois, County Department, Law Division

Rebuttal Expert Report—On behalf of Defendant in Michael Anthony G. Wilbern and Wilbern Enterprises, LLC v. Culver Franchising System, Inc., U.S. District Court for the Northern District of Illinois, Eastern Division

Expert Report, Rebuttal Report and Reply report—On behalf of Defendant in Enzo Life Sciences, Inc. v. Hologic, Inc., U.S. District Court for the District of Delaware

Expert Report, Rebuttal Report and Reply report—On behalf of Defendant in Enzo Life Sciences, Inc. v. Gen-Probe, Incorporated, U.S. District Court for the District of Delaware

Expert Report—On behalf of Defendant in Ficep Corporation v. Voortman USA Corp., U.S. District Court for the District of Maryland

Expert Report—On behalf of Plaintiffs in Kimberly-Clark Worldwide Inc. and Kimberly-Clark Global Sales, LLC v. First Quality Baby Products, LLC, First Quality Retail Services, LLC, and First Quality Consumer Products, LLC, U.S. District Court for the Eastern District of Wisconsin

Expert Report—On behalf of Plaintiff in Parallel Networks Licensing LLC v. Microsoft Corporation, U.S. District Court for the District of Delaware

Expert Report—On behalf of Defendants in Dr. Quingsheng Zhu and Dr. Julio Spinelli, acting jointly as the Stockholder Representative Committee for Action Medical, Inc. v. Boston Scientific Corporation and Cardiac Pacemakers, Inc., U.S. District Court for the District of Delaware

Expert Report—On behalf of Plaintiff in Parallel Networks Licensing LLC v. International Business Machines Corporation, U.S. District Court for the District of Delaware

Expert Report—On behalf of Defendant (Phoenix Aromas & Essential Oils) in Victorino Huerta, et al. v. Aldrich Chemical Co., et al, Circuit Court of Cook County, Illinois, County Department, Law Division

Reply Expert Report—On behalf of Plaintiffs in Kangaroo Media, Inc., and Immersion Entertainment LLC, v. Yinzcam, Inc., U.S. District Court for the Western District of Pennsylvania

Expert Report—On behalf of Plaintiff in The Viking Corporation v. Victaulic Company, U.S. District Court for the Western District of Michigan – Southern Division

Expert Report—On behalf of Defendant (Briggs) in Exmark Manufacturing Co., Inc. v. Briggs & Stratton Power Products Group, LLC and Schiller Grounds Care, Inc., U.S. District Court for the District of Nebraska (update following removal of stay pending reexamination)

---

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

11

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



Expert Report—On behalf of Plaintiffs in Kangaroo Media, Inc., and Immersion Entertainment LLC, v. Yinzcam, Inc., U.S. District Court for the Western District of Pennsylvania

Expert Report—On behalf of Plaintiff in The Allant Group, Inc., v. Helzberg's Diamond Shops, Inc. d/b/a Helzberg Diamonds, American Arbitration Association – Chicago, IL

Expert Report—On behalf of Defendant in Lawrence S. Kirsch, as Shareholders' Representative of Lawrence S. Kirsch, Charles W. Kriete, Michael J. Chase and George Puszka v. Brightstar Corp., U.S. District Court for the Northern District of Illinois, Eastern Division

Expert Report—On behalf of Plaintiff in Verco Decking Inc. v. Consolidated Systems Inc., U.S. District Court for the District of Arizona, Phoenix Division

Expert Report—On behalf of Plaintiff in Nalco Company v. Turner Designs, Inc., U.S. District Court for the Northern District of California

Expert Report—On behalf of Defendants in Banning Lary, et al., v. Boston Scientific Corporation, et al., U.S. District Court for the Southern District of Florida

Expert Report—On behalf of Defendants in Samson Lift Technologies LLC v. Jerr-Dan Corporation and Oshkosh Corporation, Supreme Court of New York County

Rebuttal Expert Report—On behalf of Plaintiff in Medtronic, Inc. and Medtronic USA, Inc. v. Edwards Lifesciences Corp, et al., U.S. District Court for the District of Minnesota

Expert Report—On behalf of Defendants in Mobile Medical International Corporation v. Advanced Mobile Hospital Systems, Inc., Tractus Medical, Inc. and Does 1-10, U.S. District Court for the District of Vermont

Expert Report—On behalf of Plaintiff in Medtronic, Inc. and Medtronic USA, Inc. v. Edwards Lifesciences Corp, et al., U.S. District Court for the District of Minnesota

Expert Report—On behalf of Plaintiff in Roll-Rite, LLC v. Shur-Co, LLC, U.S. District Court for the Eastern District of Michigan

Expert Report—On behalf of Plaintiff in Medtronic, Inc. v. Edwards Lifesciences Corporation, et al., U.S. District Court for the Central District of California

Expert Report and Response Report —On behalf of Defendants in Banning Lary, et al., v. Boston Scientific Corporation, et al., U.S. District Court for the Southern District of Florida

Expert Report—On behalf of Defendants in Edwards Lifesciences LLC, et al. v. Medtronic Corevalve LLC, et al., U.S. District Court for the District of Delaware

Expert Report—On behalf of Plaintiffs in Ericsson, Inc., et al. v. D-Link Corporation, et al., U.S. District Court for the Eastern District of Texas, Tyler Division

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

12

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



---

Expert Report—On behalf of Defendant in Alexsam, Inc. v. Best Buy Stores, L.P., et al., U.S. District Court for the Eastern District of Texas, Marshall Division

Expert Report—On behalf of Defendant in Life Plans, Inc. v. Security Life of Denver Insurance Company, U.S. District Court for the Northern District of Illinois, Eastern Division

Disclosure—On behalf of Defendant in Zylon Corp. and Alan Zamore v. Medtronic, Inc., Medtronic Vascular, Inc., and Medtronic Vascular Holdings Ltd. f/k/a AVE Galway Ltd., Supreme Court of the State of New York, County of New York

Expert Report—On behalf of Defendant (Briggs) in Exmark Manufacturing Co., Inc. v. Briggs & Stratton Power Products Group, LLC and Schiller Grounds Care, Inc., U.S. District Court for the District of Nebraska

Expert Report—On behalf of Plaintiff in Halliburton Energy Services, Inc. v. BJ Services Company, American Arbitration Association – Houston, TX

Expert Report—On behalf of Defendant in Medversant Technologies, LLC. v. Morrisey Associates, Inc., U.S. District Court for the Southern District of California

Declaration—On behalf of Defendant in Rally Manufacturing, Inc. v. Federal Mogul Corporation, U.S. District Court for the Southern District of Florida

Expert Report—On behalf of Defendant in First Merit Venture, First Merit Realty Services, Inc., and Gary Z. Baxter v. Scott I Canel, Scott I Canel & Associates, Richard Price, Ten South Management, et al., Circuit Court of Cook County, Illinois, County Department, Law Division

Expert Report—On behalf of Defendant in Rally Manufacturing, Inc. v. Federal Mogul Corporation, U.S. District Court for the Southern District of Florida

Disclosure—On behalf of Carrols Corporation in Carrols Corporation v. Cain Restaurants Company, U.S. District Court, Eastern District of Michigan (Detroit)

Expert Report—On behalf of Plaintiff in Osmose, Inc. v. Arch Chemicals, Inc., Arch Wood Protection, Inc., Arch Treatment Technologies, Inc., Cox Industries, Inc., Rocky Top Building Products, Inc., and Madison Wood Preservers. U.S. District Court, Eastern District of Virginia, Norfolk Division

Expert Report—On behalf of Defendants in Samson Lift Technologies v. Jerr-Dan Corporation and Oshkosh Corporation, U.S. District Court, Middle District of Pennsylvania

Disclosure —On behalf of Respondent in Jeep Eagle 17. v. Chrysler Group LLC.  American Arbitration Association – Wayne, NJ

Disclosure —On behalf of Respondent in Arlington Chrysler Jeep Dodge. v. Chrysler Group LLC.  American Arbitration Association – Chicago, IL

Disclosure—On behalf of Respondent in Melchiorre, Inc. D/B/A Warner Chrysler Jeep. v. Chrysler Group LLC. American Arbitration Association – Philadelphia, PA

---

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

13

**John Bone**
Managing Director
**Damages Expert / Forensic Accountant**



Disclosure—On behalf of Respondent in Continental Chrysler Jeep, Inc. v. Chrysler Group LLC. American Arbitration Association – Chicago, IL

Disclosure—On behalf of Respondent in Montrose Dodge, Inc. v. Chrysler Group LLC. American Arbitration Association – Washington, D.C.

Disclosure—On behalf of Respondent in D Patrick, Inc. v. Chrysler Group LLC. American Arbitration Association – Indianapolis, IN.

Declaration—On behalf of Plaintiffs in Kimberly-Clark Worldwide Inc. and Kimberly-Clark Global Sales, LLC v. First Quality Baby Products, LLC and First Quality Retail Services, LLC. U.S. District Court, Eastern District of Wisconsin, Green Bay Division

Expert Report—On behalf of Defendant in Synventive Molding Solutions v. Husky Injecting Molding Systems, Inc. U.S. District Court for the District of Vermont

Expert Report—On behalf of Defendant in Molten Metal Equipment Innovations, Inc. v. Pyrotek Inc. American Arbitration Association

Expert Report—On behalf of Defendants in DNT LLC v. Sprint Spectrum, LP and Nextel Operations, Inc.; Cellco Partnership d/b/a Verizon Wireless; T-Mobile USA, Inc.; Alltel Communication, LLC; and United States Cellular Corporation. U.S. District Court, Eastern District of Virginia, Richmond Division

Expert Report—On behalf of Defendant in Etigra, LLC, et al. v. Bayer CropScience LP, et al. U.S. District Court, Eastern District of North Carolina, Western Division

Expert Report—On behalf of Plaintiff in Bayer CropScience AG, et al. v. NuFarm Americas, Inc. U.S. District Court, Eastern District of Virginia, Richmond Division

Expert Report— On behalf of Defendant in Telecommunication Systems, Inc. v. Mobile 365, Inc. and WiderThan Americas, Inc. U.S. District Court, Eastern District of Virginia, Richmond Division

Expert Report—On behalf of Plaintiff in Patriot Homes, Inc., et al. v. Forest River Housing, Inc., et al. U.S. District Court of Indiana, South Bend Division

Expert Report—On behalf of Plaintiff/Counterclaim Defendant in Static Control Components, Inc. v. Lexmark International, Inc. U.S. District Court, Eastern District of Kentucky at Lexington

Expert Report—On behalf of Plaintiff in 7-Eleven, Inc. v. Philip Morris USA, Inc. U.S. District Court, Northern District of Texas, Dallas Division

Expert Report—On behalf of Defendant in InsureOne Independent Insurance Agency, LLC, et al. v. James P. Hallberg, et al. Circuit Court of Cook County, Illinois, County Department, Chancery Division

Expert Report and Response Report—On behalf of Plaintiff in Static Control Components, Inc. v. Intersolution Ventures LTD, et al. U.S. District Court, Middle District of North Carolina, Durham Division

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

14

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



Expert Report—On behalf of Plaintiff in Mobility Electronics, Inc. v. Formosa Electronic Industries, Inc. U.S. District Court, Eastern District of Texas, Texarkana Division

Expert Reports—On behalf of Defendant in Ethos Technologies, Inc. v. RealNetworks, Inc. U.S. District Court—District of Massachusetts

Expert Report—On behalf of Defendant in Lampi Corporation v. American Power Products, Inc. U.S. District Court—Northern District of Illinois, Eastern Division

Expert Report—On behalf of Plaintiff in Biomet, Inc. and Biomet Orthopedics, Inc. v. Biomet-Ross and B. Keith Ross. American Arbitration Association—Columbus, Ohio

Declaration—On behalf of Defendant in Smith Wholesale Company, Inc. v. R.J. Reynolds Tobacco Company. U.S. District Court—Eastern District of Tennessee

Expert Report—On behalf of Plaintiff in First Midwest Bank, N.A. v. LaSalle National Bank, et al. Circuit Court of Cook County, County Department, Law Division

Expert Report—On behalf of Defendant in Subhash C. Katial v. Massachusetts Mutual Life Insurance Company. U.S. District Court—Northern District of Illinois, Eastern Division

Expert Report—On behalf of Plaintiff in John Donovan Enterprises v. Allied Plastics and Thermo King. U.S. District Court—Western District of Wisconsin

Report on Valuation of IP Assets—Submitted opinion regarding value of intellectual property on behalf of the Estate of Sheldon Silverstein (author of children's books)

## Publications

"'Independent Economic Value' Crucial In Trade Secret Cases," Law360, June 2020

"To Apportion or Not to Apportion?" *The Stout Journal*, Fall/Winter 2017

"Akamai Technologies, Inc.: Federal Circuit Weighs in on a Lost Profits Opinion Involving Head-to-Head Competitors," The SRR Journal, Spring 2016

"VirnetX: Clarity from the Federal Circuit Regarding Reasonable Royalty Determination," The SRR Journal, Spring 2015

"An Interview of Judge Richard A. Posner on Patent Litigation," SRR Journal, Fall 2013

"Interview with Former Chief Judge David Folsom of the U.S. District Court for the Eastern District of Texas," The SRR Journal, Spring 2013

"View from the Federal Circuit: An Interview with Chief Judge Randall R. Rader," The SRR Journal, Fall 2012

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

15

# John Bone
Managing Director
**Damages Expert / Forensic Accountant**



---

"Settling on Settlement Negotiation Production," The SRR Journal, Fall 2012

"Spectralytics, Inc. v. Cordis Corporation and Norman Noble, Inc.," The SRR Journal, Spring 2012

"Federal Circuit Reaffirms Need to Compare Market Segments in Evaluating Lost Profits: Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc." The SRR Journal, Fall 2011

"Damage Approach Found Acceptable to the Court at the Time" The SRR Journal, Spring 2011

"Auditing Self-Reporting Agreements," The SRR Journal, Fall 2010

"Court Once Again Addresses Insufficient Support for Damages Award in a Patent Case," The SRR Journal, Fall 2010

"Court Weighs in on License Agreements Used in Support of Damages Award", The SRR Journal, Spring 2010

"Intersection between Litigation and Business Objectives." With Kathryn Lennox, Esq. Published in connection with IPO Recent Developments, Strategies, and Tactics in IP Damages Law Conference, March 27, 2007

"Recent Developments Concerning IP Damages" With Michael Berta, Esq. Published in connection with presentation at the IP Law & Business Spring Briefing on Innovations in IP Litigation, May 17, 2006

"What Expert Should Fear Most" published in Expert Alert, the newsletter of the Expert Witness Committee of the Section of Litigation, American Bar Association, Volume 1, No. 1, winter 2005

"Court of Appeals Affirms Unprecedented Decision Regarding Patent Infringement Damages, Broadens Definition of Acceptable Non-Infringing Substitute." With Raymond S. Sims and Peter Baldwin. Mealey's Litigation Report—Intellectual Property, November 19, 1999

## Speeches and Seminars

"Patent Damages 2017: A Year in Review," webinar hosted by the American Intellectual Property Law Association, February 15, 2018

Guest Lecturer - Trade Secret Law Class, LLM in Intellectual Property Law Program, John Marshall Law School, November 8, 2017

"Damages in SEP, FRAND and RAND Litigation," panel discussion at the Intellectual Property Owner's Association Patent Damages Summit, Palo Alto, CA, May 24, 2016

"Litigating Reasonable Royalty Damages," panel discussion at the Intellectual Property Owner's Association Damages and Injunctions Committee Conference, Washington DC, May 27, 2015

"Patent Infringement Royalty Damages: Lessons Learned From Recent Federal Circuit Decisions," with Michele Riley and Brian Kacedon. Presented by the Bar Association of the District of Columbia, March 27, 2014

---

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

16

## John Bone
Managing Director
**Damages Expert / Forensic Accountant**



"Leveraging Expert Testimony for Big Wins: Strategies for a Changing Legal Landscape," panel discussion sponsored by The National Law Journal at the Union League Club of Chicago on October 16, 2013

"Understanding Patent Damages - Patent damages theories and recent opinions affecting the quantification of patent damages," Presented at the 2011 Intellectual Property Spring Seminar presented by the Intellectual Property Law Section of the State Bar of Michigan and in cooperation with the Institute of Continuing Legal Education, March 28, 2012

"IP Enforcement: Protecting Your Brand and Content within New Media," Moderated panel discussion at the Inside Counsel's 11th Annual Super Conference, May 23, 2011

"Role and Use of the Expert in Developing Damages Evidence,"   Presented at the Illinois State Bar Association Program entitled "Meet the Labor and Employment Experts"  October 15, 2010

"Patent Damages:  Managing the Risks and Contingent Costs," With Rick Bero.  Presented at the BVR/Morningstar Summit on Best Practices in Intellectual Property Valuation, September 15, 2010

"Intersection between Litigation and Business Objectives," IPO Recent Developments, Strategies, and Tactics in Damages Law Conference, March 27, 2007

"Recent Developments Concerning IP Damages," With Michael Berta, Esq. Presented at the IP Law & Business Spring Briefing on Innovations in IP Litigation, May 17, 2006

"The Expert's Role in the Client's Discovery Efforts," presented at Law Seminars International's two day conference on "Effective Development & Presentation of Expert Testimony" March 20, 2006

"Understanding the Latest Methods and Tools to Better Manage Risks and Opportunities of IP Litigation and Licensing,"  With Jeffrey Snell. Presented at the IP Law and Business Winter Briefing on Corporate Strategies For Leveraging Your Intellectual Property, November 29, 2005

"Litigation Strategies that Strengthen the Business without Breaking the Bank," Panel discussion with Sharon R. Barner, Esq., Andy Horstman, Esq. and J. Bruce Schelkopf, Esq. in connection with the IP Law & Business Spring Briefing on Enterprise Management: Integrating IP & Business, May 4, 2005

"Legal and Economic Issues is Cases Involving Non-Infringing Alternatives, Price Erosion and Convoyed Sales," Panel discussion with James A. Klenk, Esq. and Kristofer K. Swanson. Presented at Law Seminars International's advanced workshop on Calculating & Proving Patent damages, April 20, 2005

"The Use of Experts in Commercial Litigation," With Raymond S. Sims. Presented at the Northwestern University School of Law, Dispute Resolution Class, January 25, 2003

"Damages in Patent Infringement Litigation," With Charles W. Shifley, Esq. Presented at the Licensing Executives Society 2002 Annual Meeting, September 4, 2002

"The Role of Litigation in Intellectual Property Management," With Raymond Sims. Presented to the New York chapter of the Licensing Executives Society, November 11, 1996

Investment Banking | Transaction Advisory | Valuation Advisory | Disputes, Compliance, & Investigations | Management Consulting

stout.com

17

# Attachment B

OLEH HALUSZKA, MD

# CURRICULUM VITAE

### PERSONAL

**HOME ADDRESS:**                6640 North Alvernon Way
Tucson, AZ 85718
CP: 215-292-2055
Email: thescopist@gmail.com

**HOME TELEPHONE:**            (520) 395-0805

**BIRTHPLACE:**                     Perth Amboy, NJ

**CITIZENSHIP STATUS:**        United States

**MILITARY SERVICE:**            General Medical Officer
Naval Station Branch Medical Clinics
San Diego, CA
July 1983 – January 1984

General Medical Office
Emergency Department
US Naval Hospital
Okinawa, Japan
January 1984 – June 1985

Staff Physician
Department of Internal Medicine
US Naval Hospital
San Diego, CA
July1987 – July 1988

Staff Gastroenterologist
Division of Gastroenterology
US Naval Hospital
San Diego, CA
July 1990 – June 1993

Commander (05)/ Director of Endoscopy
Division of Gastroenterology
US Naval Hospital
San Diego, CA
January 1994 – April 1995

Captain, USNR
December 1998 – April 2005

# OLEH HALUSZKA, MD

## _EDUCATION AND TRAINING:_

| UNDERGRADUATE SCHOOL DEGREE/YR/SUBJECT | DATES MONTH/YEAR | |
|---|---|---|
| Dartmouth College Hanover, NH | September 1973 – May 1977 | BA , Biology |

**GRADUATE/PROFESSIONAL SCHOOL**

| | | |
|---|---|---|
| Uniformed Services University of the Health Sciences Bethesda, MD | September 1978 – May 1982 | MD |

**GRADUATE MEDICAL EDUCATION**

| | | |
|---|---|---|
| Internship, Internal Medicine | US Naval Hospital San Diego, CA | July 1982 – June 1983 |
| Residency, Internal Medicine | US Naval Hospital San Diego, CA | July 1985 – June 1987 |
| Fellowship, Gastroenterology | US Naval Hospital | July 1988 – June 1990 |
| Therapeutic Endoscopy Fellowship | Medical College Wisconsin | 1992 |

**LICENSURE**

| | | |
|---|---|---|
| California | 1983-1996 | #GFE51014 |
| Maryland | 1995-2002 | #D47439 |
| Pennsylvania | 2002-2018 | #MD418831 |
| Arizona | 2018-present | #56095 |

## OLEH HALUSZKA, MD

### BOARD CERTIFICATION

| | | |
|---|---|---|
| American Board of Internal Medicine | 1987 | #112066 |
| Subspecialty of Gastroenterology | 1991 | #112066 |
| Recertification in GI | 2011 | #112066 |

### ACADEMIC HONORS AND AWARDS

Alpha Omega Alpha
Uniformed Services
University of the Health Sciences      1982

### *APPOINTMENTS*

**ACADEMIC**

Assistant Professor of Medicine,
University of Maryland                    May 1995 – April 2002
Baltimore, Maryland

Associate Professor                        July 2002-June 2011
Gastroenterology
Fox Chase Cancer Center
Philadelphia, PA

Professor and Chief Gastroenterology      July 2011- June 2016
Temple University
Philadelphia, PA

Professor of Medicine
Gastroenterology and Hepatology
University of Arizona School of Medicine   2016-Present

**HOSPITAL** (include type of appointment, directorships, etc.)

Director, Gastrointestinal Endoscopy
Fox Chase Cancer Center                   June 2002 – June 2011
Philadelphia, PA

Chief of Gastroenterology                 July 2011 – June 2016
Temple Health System
Philadelphia, PA

Chief of Gastroenterology                 August 2016 – June 2018
SAVAHCS, Tucson, AZ

## OLEH HALUSZKA, MD

| | |
|---|---|
| Staff Gastroenterologist | January 2019 – present |
| Banner University Medical Group | |

### MISCELLANEOUS

| | |
|---|---|
| Consultant, White House Medical Unit | August 1996 – July 2000 |
| Washington, DC | |

### ADMINISTRATIVE

| | |
|---|---|
| Reviewer, Gastrointestinal Endoscopy | 1996–2001 |
| Member ASGE Ad Hoc EUS Committee | 1998–1999 |
| Member ASGE Scientific Program Committee | 2003–2006 |
| Member ASGE Scientific Program Committee | 2009– 2013 |
| Board Member DVSGE | 2002–2008 |
| Reviewer: Gastroenterology, Gastrointestinal Endoscopy | 2005– present |
| Reviewer: Digestive Disease and Sciences | 2007– present |
| Pancreatico-Biliary Editor,Current Reports in Gastroenterology 2015–present | |

### MISCELLANEOUS AWARDS:
TOP DOC Gastroenterology Philadelphia 2004-2016
TOP DOC GI Cancer multiple years

## PROFESSIONAL ACTIVITIES

### PRESENTATIONS

January 2011
Internal Medicine Grand Rounds: Endoscopic Ultrasound of the Pancreas
Jeanes Hospital, Philadelphia, PA

September 2010
Gastroenterology Grand Rounds: Thinking Deep: What we have learned from device assisted enteroscopy
Hospital of the University of Pennsylvania
Philadelphia, PA

June 2010
Lectures: Endoluminal Stenting and Device Assisted Enteroscopy
VIth World Conference of Interventional Oncology
Loews Hotel, Philadelphia, PA

June 2010
Lecture: Complications of EMR and Hands on Instructor
ASGE Program Endoscopic Mucosal Resection
Chicago, IL

## OLEH HALUSZKA, MD

March 2010
Speaker and Endoscopist for Live Program:
VIth International Course in Gastroenterology and Digestive Endoscopy
La Paz, Bolivia

September 2009
Speaker and Endoscopist for Live Program:
Third International Congress of Evidence Based Digestive Endoscopy
Bogota, Columbia

March 2009
Evolving Technologies in Gastroenterology:
How they will Impact the Daily Practice of Medicine
Sinai Hospital of Baltimore
Baltimore, MD

August 2008
3rd International Conference on Double Balloon Endoscopy
DBE versus Capsule in the Diagnosis of Tumors
Chicago, IL

May 2008
State of the Art Lecture: Advances in Colonoscopy
Digestive Disease Week,
Chicago, Il

March 2007
NMC Grand Rounds
National Naval Medical Center
Endoscopic Therapies for Barrett's Esophagus
Bethesda, MD

September 2007
Georgia Gastro Society
2007 Regional Postgraduate Course and Annual Meeting
Endoscopic Evaluation of Biliary Strictures
Augusta, Georgia

September 2007
Pennsylvania Society for Gastroenterology
Chronic Pancreatitis
Philadelphia, PA

## OLEH HALUSZKA, MD

September 2007
5th Annual Symposium Gastrointestinal Cancers 2007
Double Balloon Enteroscopy
St. Louis, MO

October 2007
ASGE Enteroscopy in the 21st Century
Instructor Hands-on Course
Chicago, IL

March 2006
American Russian Conference
Endoscopic Management of Pancreatic Cancer
Moscow, Russia

May 2005
Endoscopic Mucosal Resection for Barrett's Esophagus
Department of Surgery Grand Rounds
Temple University Hospital
Philadelphia, PA

January 2005
Biliary Sphincterotomy, Enteral Stenting for Malignant Obstruction
Rocky Mountain Interventional Endoscopy 2005
Denver, CO

November 2004
Screening and Endoscopic Intervention for Colorectal Cancer
Update on the Management of Colorectal Cancer
Harrisburg, PA

September 2003
Therapeutic ERCP: The U.S. Experience
Japan Digestive Disease Week
Osaka, Japan

April 2003
Endoscopic Approaches to GI Malignancies
Medical Staff Grand Rounds
Our Lady of Lourdes Medical Center
Camden, N.J.

October 2002
New Tools to Detect and Manage Early GI Neoplasms
Fox Chase Cancer Center Symposium
Philadelphia, PA

## OLEH HALUSZKA, MD

December 2001
The Argon Plasma Coagulator- A new tool in Therapeutic Endoscopy
Medical Grand Rounds, Dept of Medicine
Marshall University School of Medicine, Huntington, WV

November 2001
Endoscopic Management of Bleeding due to Portal Hypertension
Mercy Hospital Grand Rounds
Baltimore, MD

April 2001
Endoscopic Management of Bleeding Due to Portal Hypertension
Fifth Annual Seminar in Liver Disease
Camden Yards, Baltimore, MD

April 2000
Endoscopic Approaches to the Biliary Tree
Fourth Annual Seminar in Liver Diseases
Camden Yards, Baltimore, MD

November 1999
The Latest Advances in Endoscopic Stenting
Surgical Grand Rounds, Mercy Hospital
Baltimore, MD

October 1999
Beyond Diagnostic ERCP
Invited Lecture and Symposium Panelist
Japan Digestive Disease Week
Hiroshima, Japan

October 1999
CO-Director and Speaker
Advances in Gastroenterology for the Primary Care Physician
University of Maryland sponsored CME
Annapolis, MD

September 1999
Advanced Therapeutic Endoscopy
Medical Grand Rounds, National Naval Medical Center
Bethesda, MD

January 1999
Advances in Endoscopic Therapies
Internal Medicine Grand Rounds, University of Maryland

## OLEH HALUSZKA, MD

October 1998
Developments in Therapeutic Endoscopy
Astra Pharmaceuticals GI Symposium, Baltimore MD

January 1998
Endoscopic Therapy of Pancreatic Disease
Medical Grand Rounds, Mercy Medical Center, Baltimore, MD

December 1997
Advances in Therapeutic Endoscopy
Maryland Chapter meeting of American College of Physicians, Ellicott City, MD

November 1997
Endoscopic Therapy of Esophageal Cancer
Radiation Oncology Grand Rounds/ UMMS

September 1997
Advances in Therapeutic Endoscopy Medical Ground Rounds, UMMS

September 1997
Endoscopic Ultrasound Staging of GI Malignancy
Seminar-Admiral Fell Inn/Greenbaum Cancer Center

September 1997
Advances in Endoscopic Therapy
Medical Grand Rounds, Harbor Hospital Center, Baltimore, MD

April 1997
Advanced Biliary Endoscopy and Endoscopic Ultrasound for Biliary Malignancies
Seminars in Liver Diseases, UMMS, Camden Yards, Baltimore, MD

March 1996
Endoscopic Management of Esophageal and Gastric Varices. - Gastroenterology CME
Tidewater Inn - Easton, MD

The role of ERCP/Surgery for bile duct stones
Updates in Gastrointestinal Diseases for the Primary Care Physician, Course Co-Director,
Division of Gastroenterology CME Course, Towson, MD

February 1996
Acute pancreatitis - Didactic lecture
Pulmonary/Critical Care Conference, University of Maryland Medical Center, Baltimore,
Maryland

## OLEH HALUSZKA, MD

September 1995
ERCP for biliary tract disease -Didactic lecture
Medical Grand Rounds, University of Maryland Medical Center, Baltimore, Maryland

Invited Faculty Live Endoscopy Courses:

ASGE Star Upper and Lower EMR courses 2014
ITT Center, Chicago

Advanced ERCP/ ASGE Hands – On  Endoscopy Series
Cincinnati, Ohio

Hands-On Endoscopic Training for the Practicing Gastroenterologist
Philadelphia, PA

### *PROFESSIONAL ORGANIZATIONS*

| | |
|---|---|
| American College of Physicians | 1985 - 2005 |
| San Diego Gastroenterology Society | 1990 -1994 |
| American Society of Gastrointestinal Endoscopy | 1991- present |
| Maryland Society of Gastrointestinal Endoscopy | 1995- 2002 |
| American College of Gastroenterology | 1996 - present |
| Delaware Valley Society of Gastrointestinal Endoscopy | 2002 – present |

### *PUBLICATIONS*

**PEER REVIEWED ARTICLES**:

1.  Haluszka O, Rabetoy GM, Mosley CA, Duke MS.  Bilateral artery stenosis presenting as a case of scleroderma renal crisis.  Clinical Nephrology 1989;32:262-265.

2.  Person JL, Haluszka O, Grimm IS.  Biliary stent migration.  Gastrointestinal Endoscopy  1991;37:210-211.

3.  Grimm IS, Schindler WR, Haluszka O.  Steatohepatitis and fatal hepatic failure after biliopancreatic diversion.  American Journal of Gastroenterology 1992;87:775-779.

4.  Ove R, Haluszka O, Darwin P, Kennedy A.  Postoperative Endoscopic Retrograde HDR Brachytherapy for Cholangiocarcinoma.  Am J Clin Oncology 2000;23:559-561.

5.  Varanasi R, Fleisher S, Darwin P, King C, Haluszka O.  Colonoscopic sclerotherapy of ileal varices (Case Report).  Gastrointestinal Endoscopy 2000;52:109-111.

6.  Darwin P, Zangara J, Heller T, Haluszka O, Lauren J.  Unsedated Esophagoscopy

for the Diagnosis of Esophageal Varices in Patients with Cirrhosis.  Endoscopy 2000; 32:971-73.

7.  Haluszka O, Campbell A, Horvath K.  Endoscopic Management of Pancreatic Pseudocyst in Children. Gastrointestinal Endoscopy 2002;55:128-31.

8.  Osei-Boateng K, Ravendhran N, Haluszka O, Darwin PE. Endoscopic Treatment of a post-traumatic biliary stricture mimicking a Klatskin tumor. Gastrointestinal Endoscopy 2002;55:274-76.

9.  Greenwald B, Caldwell SH, Hespenheide EE, Patrie JT, Williams J, Binmoeller KF, Woodall L, Haluszka O. N-2-buty cyanoacrilate for bleeding gastric varices: A United States pilot study and cost analysis. American Journal of Gastroenterology 2003; 98:1982-1988.

10. Goldberg E, Titus M, Haluszka O, Darwin P.  Pancreatic duct stenting facilitates difficult common bile duct cannulation.  Gastrointestinal Endoscopy 2005;62(4):592-6.

11. Haluszka O.  Palliative Gastroenterology.  Semin Oncol. 2005; 32:174-178.

12. Haluszka O, Greenwald BD, Tokar J. Endoscopic oncology, Current problems in cancer, 2005;29:40-112

13. Konski A, Doss M, Milestone B, Haluszka O, Hanlon A, Freedman G, Adler L.  The integration of 18-fluoro-deoxy-glucose positron emission tomography and endoscopic ultrasound in the treatment-planning process for esophageal carcinoma. Int J Radiat Oncol Biol Phys. 2005;15:61(4):1123-8.

14. Konski A, Hoffman J, Sigurdson E, Haluszka O, Engstrom P, Cheng JD, Cohen SJ, Watson JC, Eisenberg D, McGarrity E, Freedman G, Meropol NJ.  Can molecular imaging predict response to preoperative chemoradiation in patients with rectal cancer? A Fox Chase Cancer Center prospective experience.  Semin Oncol. 2005;32(6 Suppl 9):S63-7.

15. Tokar JL, Haluszka O, Weinberg DS.  Endoscopic therapy of dysplasia and early-stage cancers of the esophagus.  Semin Radiat Oncol.  2007;17(1):10-21

16. Konski AA, Cheng JD, Goldberg M, Li T, Maurer A, Yu JQ, Haluszka O, Scott W, Meropol NJ, Cohen SJ, Freedman G, Weiner LM.  Correlation of molecular response as measured by 18-FDG positron emission tomography with outcome after chemoradiotherapy in patients with esophageal carcinoma.  Int J Radiat Oncol Biol Phys.  2007;69(2):358-63

17.  Ross A, Mehdizadeh S, Tokar J, Leighton JA, Kamal A, Chen A, Schembre D, Chen G,   Binmoeller K, Kozarek R, Waxman I, Dye C, Gerson L, Harrison ME,

## OLEH HALUSZKA, MD

Haluszka O, Lo    S, Semrad C.  Double Balloon Enteroscopy detects small bowel mass lesions missed by    capsule endoscopy.  Dig Dis Sci, 2008.

18.  Maranki, JL, Haluszka, O.  Developments in the Treatment of Bleeding Gastric Varices.  US Gastroenterology Review, Volume 4, Issue 1, 2008.

19.  Haluszka, O.  Small-Bowel Endoscopy.  Clinical Update ASGE:15(4) 2008.

20. Hegde S, Haluszka O, Tokar JL.  Endoscopic Ultrasound in Gastric Cancer in the Endoscopic Ultrasound.  Clinical Gastroenterology pending publication 2009. Humana Press.

21. Ke E, Patel BB, Liu T, Li XM, Haluszka O, Hoffman J, Ehya H, Young NA, Watson JC, Weinberg D, Nguyen M, Cohen SJ, Meropol NJ, Litwin S, Tokar JL, and Yeung AT. "Proteomic Analyses of Pancreatic Cyst Fluids".  Pancreas 2009; 38(2):233-42.

22. Haley M, Konski A, Li T, Cheng JD, Maurer A, Haluszka O, Scott W, Meropol NJ, Cohen SJ, Freedman G, Influence of Diabetes on the Interpretation Of  PET Scans in Patients with Esophageal Cancer, Gastroinest Cancer Res 2009;3:149-52.

23. Gerson LB, Tokar J, Chiorean M, Lo S, Decker GA, Cave D, Bouhaidar D, Mishkin D, Dye C, Haluszka O, Leighton JA, Zfass A, Semrad C, Complications associated with double balloon enteroscopy at nine US centers, Clinical Gastro Hepatol;2009:11:1177-82.

24. Hegde SE, Iffrig K, Li T, Downey S, Heller SJ, Tokar J, Haluszka O, Double balloon enteroscopy in the elderly: safety, findings, and diagnostic and therapeutic success, Gastrointest Endosc 2010; 71:983-89.

25. Morgan D, Upchurch B, Draganov P, Binmoeller KF, Haluszka O, Jonnalagadda S, Okolo P, Grimm I, Juday J, Tokar J, Chiorean M, Spiral Enteroscopy: Prospective Multicenter U.S. Study in Patients with Small Bowel Disorders, Gastrointest Endosc 2010;72:992-8.

26. Heller SJ, Tokar JL, Nguyen MT, Haluszka O, Weinberg DS, Management of bleeding GI Tumors, Gastrointest Endosc 2010;72:817-24.

27. Chun YS, Milestone BN, Watson JC Cohen SJ, Burtness B, Engstrom PF, Haluszka O, et al, Defining venous involvement in borderline resectable pancreatic cancer, Ann Surg Oncol 2010;17:2832-38.

28. Chen YK, Parsi MA, Binmoeller KF, Hawes RH, Pleskow DK, Slivka A, Haluszka O, et al,Single operator cholangioscopy in patients requiring evaluation of bile duct disease or therapy of bile duct stones, Gastrointest Endosc 2011;74:805-14.

29. Partridge B, Tokar JL, Haluszka O, Heller SJ,  Small Bowel Cancers Diagnosed by

## OLEH HALUSZKA, MD

Device-Assisted Enteroscopy at a U.S. Referral center: A Five Year Experience, Dig Dis Sci 2011;56:2701-5.

30. Sharma NK, Silverman JS, Li T, Cheng K, Yu JQ, Haluszka O, et al, Decreased post treatment SUV on PET scan is associated with improved local control in medically inoperable esophageal cancer, Gastrointest Cancer Res 2011;4:84-9.

31. Konski A, Li T, Christensen M, Cheng J, Yu JQ, Crawford K, Haluszka O, et al, Symptomatic cardiac toxicity is predicted by dosimetric and patient factors rather than changes in F-FDG PET determination of myocardial activity after chemoradiotherapy for esophageal cancer, Radiother Oncol 2012;104:72-7.

32. Keller D Jaffe J, Philip MM, Haluszka O, Khanna A, Should all endoscopically excised rectal polyps be tattooed? A plea for localization, Surg Endosc 2012; 26:3101-5.

33. Siddiqui AA, Chaaya A, Shelton C, Marmion J, Kowalski TE, Loren DE, Heller SJ, Haluszka O, Adler DG, Tokar JL, Use of the short double-balloon enteroscope to perform pancreatico-biliary interventions in patients with surgically altered anatomy in a US multicenter study, Dig Dis Sci 2013;58:858-64.

34. Makipour K, Modiri AN, Ehrlich A, Friedenberg FK, Maranki J, Enestvedt BK, Heller S, Tokar J, Haluszka O, Double balloon enteroscopy: Effective and minimally invasive method for removal of retained video capsules, Dig Endosc 2014;26:646-49.

35. Lewis A, Partridge B, Haluszka O, The role of endoscopy in the management of pancreatic necrosis, Curr Gastroenterol Rep 2014; 406.

36. Dimao CJ,Kolb JN, Benias PC, ShahH, Shah S, Haluszka O, et al., Initial experience with a novel EUS-guided biopsy needle (SharkCore):results of a large North American multicenter study, Endosc Int Open 2016;4:E974-9.

37. Kashab MA, El Zein MH, Sharzehi K, Marson FP, Haluszka O, et al., EUS guided biliary drainage or enteroscopy assisted ERCP in patients with surgical anatomy and biliary obstruction: an international comparative study, Endosc Int Open: 2016;E1322-E1327.

38. Sahar N, Ross A, Lakhtakia S, Cote G, Neuhaus H, Bruno M, Haluszka, O, et.al., Reducing the risk of post-endoscopic retrograde cholangiopancreatography pancreatitis using 4Fr pancreatic plastic stents placed with common-type guidewires: Results from a prospective multinational registry, Dig Endosxc, doi:10.1111/den.13311; 2018

## OLEH HALUSZKA, MD

**ABSTRACTS**

1. <u>Haluszka O</u>, Bohorfoush AG, Arndorfer R, Komorowski R.  A new combination dilation/biopsy catheter provides histology and flow cytometry of bile duct strictures. Gastrointestinal Endoscopy 1994; 40:382.

2. <u>Haluszka O</u>, Bohorfoush AG, Earnest M, Adams M.  Endoscopic management of biliary tract complications following orthotopic liver transplantation. Gastrointestinal Endoscopy 1994; 40:383.

3. Earnest M, Bohorfoush AG, <u>Haluszka O</u>, Carron DA.  AIDS related cholangiopathy: Incidence after the Milwaukee cryptosporidium outbreak.  Gastroenterology 1994; 106:675.

4. Meyer F, Blaas S, Malstrom CE, Fantry GT, Greenwald BD, <u>Haluszka O</u>, James SP. Gastric mucosal T cell anergy in <u>H.pylori</u> gastritis. Gastroenterology 1996, 110:A967.

6. Greenwald BD, <u>Haluszka O</u>, Levine JG, Krasna M, White C, Comparison of Endoscopic Ultrasound and Magnetic resonance Imaging to Thoracoscopy/Laparoscopy  in Staging Esophageal Cancer, Gastrointestinal Endoscopy 1996; 43: 420.

7. Cho E, Flowers JL, Darwin PD, <u>Haluszka O,</u> Endoscopic Decompression for Traumatic Biliary Fistulae, American Journal of Gastroenterology 1997; 92:1632.

8. Bhandare N, Suntharalingam M, <u>Haluszka O</u>, Greenwald BD, Interaction of Radiation and Esophageal self expanding metal stents: effect on dose delivery, Gastrointestinal Endoscopy 1997; 45:A158.

9.  Bohorfoush A, Franco J, Komorowski R, Gardner P, Varma R, <u>Haluszka O</u>, Flow Cytometric Analysis of bile duct epithelium in Primary Sclerosing Cholangitis potentially assists timing of Liver Transplantation, Gastrointestinal Endoscopy 1998;45:  A394.

10. Darwin P, Rosenstein A, <u>Haluszka O</u>, A Prospective Randomized Trial to assess the Usefulness of Glucagon in Training During ERCP, Gastrointestinal Endoscopy 1999;49:A47.

11. Zangara J, Heller T, Laurin J <u>Haluszka O</u>, Darwin P, Peroroal unsedated esophagoscopy to screen for esophageal varices is well tolerate and significantly less expensive than conventional EGD, Gastrointestinal Endoscopy 1999; 49:A173.

12. Shamoun D, Darwin P, Greenwald B, <u>Haluszka O</u>, Treatment of Gastric Antral Vascular Ectasia with Argon Plasma Coagulation, Gastrointestinal Endoscopy 2000; 51:A7156.

13. Johnston MH, Horwhat JD, <u>Haluszka O</u>, Moses FM, Depth of Injury Following Endoscopic Spray Cryotherapy: EUS Assisted Evaluation of Mucosal Ablation and Subsequent Healing in A Swine Model, Gastrointestinal Endoscopy 2000;51:A102513

## OLEH HALUSZKA, MD

14. Ross A, Mehdizadeh S, Tokar J, Leighton J, Kamal A, Chen A, Schembre D, Chen G, Binmoeller K, Gerson L, Kozarek R, Waxman I, Harrison E, Dye C, <u>Haluszka O</u>, Lo S, Semrad C:  "Double Balloon Enteroscopy for the Detection of Small Bowel Mass Lesions Presenting as Obscure Gastrointestinal Bleeding.  Do We Have a New Gold Standard?"  April 2005 (Issue 4, Abstract).

15. Tokar JL, Nguyen M, Downey S, Weinberg DS, <u>Haluszka O</u>:  "Initial Description of Technical Aspects of Double Balloon Enteroscopy in a US Population" Gastrointestinal Endoscopy, April 2005 (Issue 4, Abstract).

16. Tokar JL, Nguyen M, Downey S, Weinberg DS, <u>Haluszka O</u>:  "Findings and Perceived Impact of Double Balloon Enteroscopy in a US Population."  Gastrointestinal Endoscopy. April 2005 (Issue 4, Abstract).

17. Tokar JL, Alnounou A, Nguyen M, Weinberg D, <u>Haluszka O</u>:  "Correlation Between Double Balloon Endoscopy and Capsule Endoscopy in Presumed Small Bowel Bleeding." Gastrointestinal Endoscopy, April 2007;65:AB173.

18.  Tokar JL, Alnounou M, Nguyen M, Weinberg D, <u>Haluszka O</u>:  "Double Balloon Endoscopy for Presumed Small Bowel Bleeding: A Single Center Experience." Gastrointestinal Endoscopy, April 2007;65:AB173.

19. Alnounou M, Tokar JL, <u>Haluszka O</u>:  "Combined Partial Endoscopic Biliary Sphincterotomy and Endoscopic Balloon Sphincteroplasty in the Management of Difficult Bile Duct Stones." Gastrointestinal Endoscopy, April 2007;65:AB220.

20. Sanaka S, Alnounou M, Tokar JL, <u>Haluszka O</u>:  "Correlation Between Molecular Analysis of Aspirates from Cystic Lesions of the Pancreas with Surgical Pathology and Cytology." Gastrointestinal Endoscopy, April 2007;65:AB302.

21. Stevens PD, Chen YK, Pleskow DK, <u>Haluszka O</u>, Peterson B.  "Biliary Stone Extraction (BSE) Guided By Direct Visualization Using the New SpyGlass™ Direct Visualization System."  Gastrointestinal Endoscopy, April 2007;65:AB96.

22. Pleskow D, Parsi MA, Chen YK, Neuhaus H, et al. "Biopsy of Indeterminate Biliary Strictures- Does Direct Visualization Help?". Gastrointest Endosc 2008;67:AB 103

23. Loren D, Kowalski TE, Conn M, Singu B, et al. "Clinical Applications of the Spyglass Direct Visualization System: A Multicenter Experience". Gastrointest Endosc 2008;67:AB 230.

24. Chen YK, Parsi MA, Binmoeller KF, Hawes RH, et al. "Peroral Cholangioscopy (PO) Using a Disposable Steerable Single Operator Catheter for Biliary Stone Therapy and Assessment of Indeterminate Strictures – A Multicenter Experience Using Spyglass". Gastrointest Endosc 2008;67:AB 103.

## OLEH HALUSZKA, MD

25. Abdel Aziz AM, Sherman S, Binmoeller KF, Deviere J, et al. "Spyglass Cholangioscopy-Impact on Patients with Bile Duct Filling Defect(s) of Uncertain Etiology". Gastrointest Endosc 2008;67:AB235.

26. Hegde SR, Iffrig K, Downey S, Heller SJ, et al. "Double Balloon Enteroscopy in the Elderly: Indications, Findings, and Agreement with Video Capsule Endoscopy". Gastrointest Endosc 2009;69:AB197.

27. Hegde SR, Iffrig K, Downey S, Heller SJ, et al. "Safety of Double Balloon Enteroscopy in Patients >Age 75 Years: A Single center One-Year Experience". Gastrointest Endosc 2009;69:AB200.

28. Bachegowda L, Heller SJ, Partridge BJ, Ehya H, Haluszka O, Tokar J, The diagnosis of metastatic cancer to the pancreas by endoscopic ultrasound guided fine needle aspiration, Gastrointestinal Endoscopy 2010; 71: AB293.

29. Partridge BJ, Kalra A, Tokar JL, Heller SJ, Cooper HS, Haluszka O, Endoscopic Management of Granular Cell Tumors of the Esophagus, Gastrointestinal Endoscopy 2010; 71: AB325.

30. Partridge BJ, Heller SJ, Tokar JL, Ramzan Z, Haluszka O, The diagnostic yield of Device-assisted enteroscopy for acute middle gastrointestinal bleeding, Gastrointestinal Endoscopy 2010; 71: AB 372.

31. Partridge BJ, Heller SJ, Tokar JL, Haluszka O, Small bowel cancer diagnosed at a referral center for device assisted enteroscopy: a five year experience, Gastrointestinal Endoscopy 2010; 71: AB 372.

**BOOKS, MONOGRAPHS, CHAPTERS**

Haluszka O, Dieulafoy Lesion.  In Capsule Endoscopy by Case Study, Edited by Raines D, Published by ACG 2011.

# Attachment C

# SCHEDULE 9D

SCHEDULE 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

               Plaintiffs,

    v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

               Defendants.

CA. No. 18-1869-SB/CJB

## **PLAINTIFFS' WITNESS LIST (SCHEDULE 9)**

Pursuant to Local Rule 16.3(c), Plaintiffs expect to call the following

witnesses to testify live or by deposition at trial.  Plaintiffs reserve the right to

revise or supplement this list consistent with the Pretrial Order or as otherwise

permitted by the Court.  If any witness Plaintiffs intend to call to testify live is

unavailable, Plaintiffs reserve the right to offer deposition testimony from such

witness.  Plaintiffs also reserve the right to call live or by deposition anyone

appearing on Defendants' witness list.  Plaintiffs further reserve the right to call

live or by deposition any witness to provide foundational testimony should any

party contest the authenticity or admissibility of any material proffered at trial.

Plaintiffs reserve the right to call any witness for impeachment purposes.  Finally,

Plaintiffs reserve the right to call live or by deposition any fact witness designated

SCHEDULE 9

by Defendants in their List of Witnesses that Defendants elect not to call at trial.

Plaintiffs are not required to present testimony from any witness on its list of witnesses.

## WILL CALL LIST

| EXPERT WITNESS | LIVE OR BY DEPOSITION |
|---|---|
| John Bone (CV included as Attachment A hereto) | Live |
| Oleh Haluszka (CV included as Attachment B hereto) | Live |
| Karl Leinsing (CV included as Attachment C hereto) | Live |

## MAY CALL LIST

| WITNESS | LIVE OR BY DEPOSITION |
|---|---|
| Vasily P. Abramov | By deposition |
| Mark Adams | By deposition |
| Niklas Andersson | Live |
| Danielle Bogartz | Live |
| Vance Brown | Live |
| Gregory R. Furnish | By deposition |
| Kurt Geitz | Live |
| Elena Hennessey | Live |
| Scott Jackson | By deposition |
| William C. Mers Kelly | By deposition |

SCHEDULE 9

| Claudia Schulz Kendall | Live |
| Christopher Li | By deposition |
| Lauren Moscato | Live |
| Collin Murray | Live |
| Ronald Perry | By deposition |
| David Pierce | Live |
| Steven Raderstorf | Live |
| Vincent Turturro | By deposition |
| Brian Keith Wells | By deposition |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION | ) | |
| and BOSTON SCIENTIFIC SCIMED, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 18-1869-CFC-CJB |
| v. | ) | |
| | ) | |
| MICRO-TECH ENDOSCOPY USA INC., | ) | |
| MICRO-TECH (NANJING) CO., LTD., and | ) | |
| HENRY SCHEIN INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OBJECTIONS TO**
**PLAINTIFFS' WITNESS LIST (SCHEDULE 9)**

Pursuant to Rule 26(a)(3)(B) of the Federal Rules of Civil Procedure and D. Del. LR 16.3(d), Defendants Micro-Tech Endoscopy USA, Inc., Micro-Tech (Nanjing) Co. Ltd., and Henry Schein, Inc. (collectively, "Defendants") hereby object to the Witness List provided by Plaintiffs.  Defendants reserve the right to supplement, revise, correct, clarify, withdraw, or otherwise amend these objections based on new information, new positions taken by the parties, future rulings of the Court, including, but not limited to, rulings on the parties' pending motions for summary judgment, Daubert motions, motions *in limine*, and/or evidentiary objections raised by the parties prior to trial. Defendants make these objections without waiver of, and without prejudice to, any motions, arguments, or evidentiary objections Defendants have presented or may present separately to the Court. Defendants reserve the right to object to and/or to move to strike questions, testimony, and/or documents Plaintiffs may offer in connection with any proposed witness, whether presented live or by deposition. Defendants also incorporate herein their Objections to Plaintiffs' Deposition Designations and Objections to Plaintiffs' Exhibit List.

Defendants further object under Fed. R. of Civ. Pro. 32 and Fed. R. of Evid. 804 to Plaintiffs' blanket attempts to (i) reserve the right to offer deposition testimony from witnesses who are unavailable to testify live, and (ii) reserve the right to call live or by deposition any fact witness on Defendants' witness list.   These purported reservations of rights also fail to give adequate notice of witnesses to be called or testimony to be presented at trial in violation of Fed. R. Civ. Pro. 26(a)(3) and Local Rule 16.3(c)(7).

Defendants also specifically object to Plaintiffs' witnesses as follows:

### Objections to Plaintiffs' Will Call List

John Bone (Live):  Defendants object to testimony from Mr. Bone for reasons set forth in Defendants' pending Motion to Exclude Certain Opinions of Plaintiffs' Damages Expert, John R.

Bone (D.I. 257). Defendants further object to Mr. Bone testifying with respect to any matter that is a subject of Defendants' pending (1) Motions for Summary Judgment (D.I. 235, 246, 251, 254); (2) Oppositions to Plaintiffs' Motions for Partial Summary Judgment (D.I. 294, 297); or (3) Opposition to Plaintiffs' Motion to Partially Exclude Testimony of Defendants' Expert Michael Plishka (D.I. 291); or (4) motions *in limine*. To the extent one or more of those motions are resolved by the Court prior to trial and/or remain pending at the time of trial, Defendants' object to Mr. Bone testifying in any matter inconsistent with the Court's rulings and/or potential rulings on the motions.

Oleh Haluszka (Live):  Defendants object to Dr. Haluszka testifying with respect to any matter that is a subject of Defendants' pending (1) Motions for Summary Judgment (D.I. 235, 246, 251, 254); (2) Oppositions to Plaintiffs' Motions for Partial Summary Judgment (D.I. 294, 297); (3) Opposition to Plaintiffs' Motion to Partially Exclude Testimony of Defendants' Expert Michael Plishka (D.I. 291); (4) Motion to Exclude Certain Opinions of Plaintiffs' Damages Expert, John R. Bone (D.I. 257); and/or (5) motions *in limine*.  To the extent one or more of those motions are resolved by the Court prior to trial and/or remain pending at the time of trial, Defendants object to Dr. Haluszka testifying in any matter inconsistent with the Court's rulings and/or potential rulings on the motions.

Karl Leinsing (Live):  Defendants object to Mr. Leinsing testifying with respect to any matter that is a subject of Defendants' pending (1) Motion to Exclude Opinions of Plaintiffs' Expert, Karl Leinsing (D.I. 259); (2) Motions for Summary Judgment (D.I. 235, 246, 251, 254); (3) Oppositions to Plaintiffs' Motions for Partial Summary Judgment (D.I. 294, 297); (4) Defendants' Opposition to Plaintiffs' Motion to Partially Exclude Testimony of Defendants' Expert Michael Plishka (D.I. 291); and/or (5) motions *in limine*.  To the extent one or more of

those motions are resolved by the Court prior to trial and/or remain pending at the time of trial, Defendants' object to Mr. Leinsing testifying in any matter inconsistent with the Court's rulings and/or potential rulings on the motions. Defendants further object to Mr. Leinsing testifying in a manner inconsistent with the Court's rulings during the February 23, 2021 teleconference and Oral Orders (D.I. 280, 281, 303) on Defendants' Motion to Strike (D.I. 226) or inconsistent with the Court's Claim Construction rulings (D.I. 140) or controlling Federal Circuit precedent.

### Objections to Plaintiffs' May Call List

Vasily P. Abramov (Deposition): Defendants object to Plaintiffs' presentation of any deposition testimony of Mr. Abramov because Plaintiffs cannot satisfy the requirements of Fed. R. Civ. Pro. 32 or Fed. R. Evid. 804. Defendants further object to presentation of deposition testimony of Mr. Abramov because Plaintiffs have not complied with 26(a)(3)(A)(ii).

Mark Adams (Deposition): Defendants object to Plaintiffs' presentation of any deposition testimony of Mr. Adams because Plaintiffs cannot satisfy the requirements of Fed. R. Civ. Pro. 32 or Fed. R. Evid. 804. Defendants further object to Plaintiffs' presentation of deposition testimony of Mr. Adams because Plaintiffs have not complied with 26(a)(3)(A)(ii).

Niklas Andersson (Live): No objection.

Danielle Bogartz (Live): No objection.

Vance Brown (Live): No objection.

Gregory R. Furnish (Deposition): Defendants object to Plaintiffs' presentation of any deposition testimony of Mr. Furnish because Plaintiffs cannot satisfy the requirements of Fed. R. Civ. Pro. 32 or Fed. R. Evid. 804. Defendants further object to Plaintiffs' presentation of deposition testimony of Mr. Furnish because Plaintiffs have not complied with 26(a)(3)(A)(ii).

Kurt Geitz (Live): Defendants object to testimony by Mr. Geitz because Plaintiffs failed

to disclose him as required by Fed. R. Civ. Pro. 26(a)(1)(A)(i) or Rule 26(e). As such, any trial testimony from Mr. Geitz is precluded under Fed. R. Civ. Pro. 37(c)(1). In addition, Mr. Geitz was not identified in response to any interrogatory or other discovery request or in any deposition in this litigation as a person with information relevant to this action. Defendants thus have been denied any opportunity to obtain discovery from or about Mr. Geitz, as well as to pursue any follow-on discovery to obtain additional information, including potential impeachment or rebuttal evidence, relating to Mr. Geitz or any possible testimony Plaintiffs may now want him to offer. Accordingly, permitting testimony at trial from Mr. Geitz would be unfair and unduly prejudicial to Defendants. Having failed ever to say a single word about Mr. Geitz or to identify him even as "an individual likely to have discoverable information," Rule 26(a)(1)(A)(i), Plaintiffs should not be permitted to identify him for the first time in the Joint Pretrial Order and to call him as a witness at trial.

Elena Hennessy (Live): No objection.

Scott Jackson (Deposition): Defendants incorporate by reference their objections and counter-designations to Plaintiffs' designation of deposition testimony of Mr. Jackson.

William C. Mers Kelly (Deposition): Defendants object to Plaintiffs' presentation of any deposition testimony of Mr. Mers Kelly because Plaintiffs cannot satisfy the requirements of Fed. R. Civ. Pro. 32 or Fed. R. Evid. 804. Defendants further object to Plaintiffs' presentation of deposition testimony of Mr. Mr. Mers Kelly's because Plaintiffs have not complied with 26(a)(3)(A)(ii).

Claudia Schulz Kendall (Live): No objection.

Chris Li (Deposition): Defendants incorporate by reference their objections and counter-designations to Plaintiffs' designation of testimony of Mr. Li.

<u>Lauren Moscato (Live)</u>: No objection.

<u>Collin Murray (Live)</u>: No objection.

<u>Ron Perry (Deposition)</u>: Defendants incorporate by reference their objections and counter-designations to Plaintiffs' designation of testimony of Mr. Perry.

<u>David Pierce (Live)</u>: Defendants object to testimony by Mr. Pierce because Plaintiffs failed to disclose him as required by Fed. R. Civ. Pro. 26(a)(1)(A)(i) or Rule 26(e). As such, any trial testimony from Mr. Pierce is precluded under Fed. R. Civ. Pro. 37(c)(1). In addition, Mr. Pierce was not identified in response to any interrogatory or other discovery request or in any deposition in this litigation as a person with information relevant to this action. Defendants thus have been denied any opportunity to obtain discovery from or about Mr. Pierce, as well as to pursue any follow-on discovery to obtain additional information, including potential impeachment or rebuttal evidence, relating to Mr. Pierce or any possible testimony Plaintiffs may now want him to offer. Accordingly, permitting testimony at trial from Mr. Pierce would be unfair and unduly prejudicial to Defendants. Having failed ever to say a single word about Mr. Pierce or to identify him even as "an individual likely to have discoverable information," Rule 26(a)(1)(A)(i), Plaintiffs should not be permitted to identify him for the first time in the Joint Pretrial Order and to call him as a witness at trial.

<u>Steven Raderstorf (Live)</u>: No objection.

<u>Vincent Turturro (Deposition)</u>: Defendants object to Plaintiffs' presentation of any deposition testimony of Mr. Turturro because Plaintiffs cannot satisfy the requirements of Fed. R. Civ. Pro. 32 or Fed. R. Evid. 804. Defendants further object to Plaintiffs' presentation of deposition testimony of Mr. Turturro because Plaintiffs have not complied with 26(a)(3)(A)(ii).

<u>Brian Keith Wells (Deposition)</u>: Defendants object to Plaintiffs' presentation of any deposition testimony of Mr. Wells because Plaintiffs cannot satisfy the requirements of Fed. R. Civ. Pro. 32 or Fed. R. Evid. 804. Defendants further object to Plaintiffs' presentation of any deposition testimony of Mr. Wells because Plaintiffs have not complied with 26(a)(3)(A)(ii).

# SCHEDULE 10

SCHEDULE 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION | ) | |
| and BOSTON SCIENTIFIC SCIMED, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 18-1869-CFC-CJB |
| v. | ) | |
| | ) | |
| MICRO-TECH ENDOSCOPY USA INC., | ) | |
| MICRO-TECH (NANJING) CO., LTD., and | ) | |
| HENRY SCHEIN INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' WITNESS LIST (SCHEDULE 10)**

## SCHEDULE 10

Pursuant to Rule 26(a)(3)(A) of the Federal Rules of Civil Procedure and D. Del. LR 16.3(c)(7), Defendants Micro-Tech Endoscopy USA, Inc., Micro-Tech (Nanjing) Co. Ltd., and Henry Schein, Inc. (collectively, "Defendants") hereby identify the following witnesses whom Defendants may call at trial, live or by deposition:

### **Will Call List**

1. Dr. Morten Jensen (Expert CV included as Attachment A)

2. Michael Milani (Expert CV included as Attachment B)

3. Michael Plishka (Expert CV included as Attachment C)

4. Dr. Gary Reiss (Expert CV included as Attachment D)

5. Chris Li

6. Scott Jackson

7. Ron Perry

### **May Call List**

1. Mark Adams (by deposition)

2. Niklas Andersson (by deposition)

3. Danielle Bogartz (by deposition)

4. Vance Brown (by deposition)

5. Christopher Davis (by deposition)

6. Elena Hennessey (by deposition)

7. Javier Jiminez (by deposition)

8. Claudia Schulz Kendall (by deposition)

9. William Lafferty (by deposition)

10. Michael Lynn (by deposition)

**SCHEDULE 10**

11. Lauren Moscato (by deposition)

12. Collin Murray (by deposition)

13. Representatives of Olympus America Inc. (live)

14. Demetrios Petrou (by deposition)

15. Steven Raderstorf (by deposition)

16. Matthew Sprague (by deposition)

17. Zhi (Edgar) Tang (live)

18. Vincent Turturro (by deposition)

19. Kevin Wilcox (by deposition)

The above list is not a commitment that Defendants will call or present testimony of any particular witness at trial, or a representation that any of the witnesses listed are available or will appear for trial. If any witness listed as a person whom Defendants intend to call to testify live is unavailable pursuant to Fed. R. Civ. Pro. 32 and Fed. R. Evid. 804, Defendants reserve the right to offer deposition testimony from such witness in lieu of live examination. Defendants further reserve the right to introduce testimony through deposition or live examination for any witness that Plaintiffs identify on their list, for any expert witness that submitted an expert report on behalf of Plaintiffs, as counter-designations to any deposition testimony designated by Plaintiffs, or as necessary to provide foundational testimony or establish authenticity or admissibility of any trial exhibit if the authenticity or admissibility of the exhibit is challenged by Plaintiffs.

# Attachment A

**Morten Olgaard Jensen, PhD, DrMed**
Department of Biomedical Engineering
University of Arkansas, Fayetteville, AR, USA
Ph.: +1 404 431 1031 / E-mail: mojensen@uark.edu
Civil Status: Married to Hanna Jensen, MD, PhD

**Education:**

- Doctor of Medical Science (DrMed), School of Medicine / Faculty of Health Sciences, The University of Aarhus, Aarhus, Denmark, March 2015
- Doctor of Philosophy (PhD), School of Medicine / Faculty of Health Sciences, The University of Aarhus, Aarhus, Denmark, November 2008
- Master of Science (M.Sc.), Biomedical Engineering (GPA: top 10%), Georgia Institute of Technology / Emory University School of Medicine, Atlanta, GA, USA, May 2000
- Bachelor of Science (B.Sc.) in Engineering with honors, Electrical and Computer Engineering, The Engineering College of Aarhus, Aarhus, Denmark, July 1997

**Professional Experience:**

- Associate Professor of Biomedical Engineering and Arkansas Research Alliance Scholar, Department of Biomedical Engineering, University of Arkansas, Fayetteville, AR, USA *(Aug. '15 – present)*
- Chief Technology Officer, Vivas LLC – Company creates flow model phantoms with synthetic medical gel in partnership with Humimic Medical LLC, sales worldwide *(Nov. '17 – present)*
- Associate Professor, Dept. of Cardiothoracic Surg., The Univ. Hosp. of Aarhus, DK *(Jul. '09 – Dec'13, Adjunct Jan '14 - present)*
- Associate Professor and Director of Research, The Scandinavian School of Cardiovascular Technology *(Oct. '09 – Aug. '15)*
- Research Faculty, Department of Biomedical Engineering, Georgia Tech / Emory, Atlanta, GA, USA *(Feb. '14 – Aug. '15)*
- Honorary Senior Lecturer, Department of Mechanical Engineering, University College London, London, UK *(Apr. '13 – Feb.'14)*
- Honorary Clinical Fellow and Senior Lecturer, Cardiology, The Heart Hospital, University College London, London, UK *(Apr. '13 – Feb.'14)*
- Assistant Professor, Department of Biomedical Engineering, Engineering College of Aarhus, Aarhus, DK *(Oct. '07 – Jul. '09)*
- Consulting Services Unit / Worldwide Business Development Group, National Instruments, Austin, TX, USA *(June '00-Aug. '05)*
- Danish Army Corps of Engineers, Communications Unit, Denmark *(Aug. '92 - Jun. '93)*

**Professional Experience Keywords:**

- Research Leadership; Biofluids & Medical Devices; Biomaterials & Tissue Engineering; Medical Instrumentation; Patient Specific Heart Valve Therapy; TAVR; TMVR; In Vitro, In Vivo; In Silico Modeling; Biomedical Technology and Research; Experimental Cardiac Surgery; Microelectronics-Photonics Program; Innovative Devices for Improved Interventions; Course Development and Teaching; Customer Education; Engineering Leadership Program; International Collaborations and Student Exchange Agreement; Blood Pressure and Flow Measurement; Cardiovascular Fluid Mechanics; Biomechanics; Heart Valve Surgery; Medical Devices; Ultrasound; Nitinol; Minimally Invasive Devices; Pacemakers; Implantable Electronics; Force Measurement in Tissue; Manage Image Acquisition and Motion Control Group; Course Development and Inaugural Execution: Image Acquisition & Processing; Consulting Services; Business Development; Integrated Systems Design; Subsystem Level Proof of Concept; R&D (Research & Development); Certified Professional Instructor: LabVIEW, Data Acquisition (DAQ), Signal Conditioning, IMAQ Machine Vision & Image Processing, Motion Control, Simulation, System Identification, Control Design, TestStand; Marketing Conventions; Show Captain; Medical Device & Manufacturing; Recruiting Manager; Hemodynamic Performance; Design and Improvement of Mechanical and Tissue Engineered Prosthetic Heart Valve Devices: Flow Visualization, Pressure Drop, and other FDA required device testing measurements on both mechanical and bioprosthetic mitral and aortic heart valves, Measurement, Analysis, and Presentation of Turbulent Blood Flow Distal to Artificial Aortic Valves; Medical Imaging Quality Assurance (MRI, CT, X-Ray, Doppler Ultrasound) and Intra-operative Heart Surgery Monitoring Systems; Entrepreneurship; Grant Proposals; Research Funding

**Awards / Nominations**
- American Heart Association Heart Hero, November 2018
- Biomedical Engineering Society / Medtronic Coulter College Design Scholar Award Mentor, August 2018
- Outstanding Mentor, University of Arkansas Office of Nationally Competitive Awards - for Goldwater Scholar "*Nation's most prestigious award for undergraduate students who plan doctoral studies and research careers in the fields of science, mathematics or engineering*" April 2018
- AcademicKeys Who's Who in Engineering Higher Education (WWEHE)
- Excellence in Research Dissemination Award, College of Engineering, University of Arkansas, May 2017
- Outstanding Teaching Award, Department of Biomedical Engineering, University of Arkansas, May 2017
- Southeastern Conference Travel Award 2016
- Arkansas Research Alliance Scholar Award, August 2015
- Honorary Clinical Fellow, Cardiology, The Heart Hospital Specialist Board, UCLH
- Young Investigator Award, Leducq MITRAL Transatlantic Network, May 2010
- The Danish Engineering Service Award, June 2009
- The Danish Engineering Service Award, January 2009
- The Danish Society of Engineers Honorary Award of Excellence (Elektroprisen), May 2008
- Faculty of Health Sciences 1st Prize Award for Excellent Scientific Contribution at the University of Aarhus Graduate School of Health Sciences, January 2008, Aarhus, Denmark
- Paper Competition Finalist, The Bioengineering Division of the American Society of Mechanical Engineers, June 2008, Marco Island, Florida, USA
- C. Walton Lillehei / St. Jude Medical Young Investigators Award Presentation Finalist, Fourth Biennial Meeting of the Society for Heart Valve Disease, June 2007, New York, NY, USA
- 1st Prize, Award Presentation Session, 25th Danish Annual Congress in Biomedical Engineering, September 2007, Brædstrup, Denmark
- 1st Prize for Excellent Scientific Contribution at the University of Aarhus Graduate School of Health Sciences, January 2006, Aarhus, Denmark
- Young Investigators Award 2nd Place: The Scandinavian Society for Research in CardioThoracic Surgery, 16th Annual Meeting, February 2006, Geilo, Norway

**Patents / Patent Application Publications / IP**
- Jensen M, Girardot M: "Venous Valve Bio-prosthesis Prepared from Animal Tissue Optimized for Human Implantation" Provisional Patent Filed.
- Jensen M, Brickey K, Harris N: "Acute Ischemic Stroke Clot Dissolver and Capture Device". Provisional Patent Filed.
- Jensen M, Hestekin J, Maier A, White M: "Inexpensive, Reproducible Vasculature Modeling Process". Trade Secret filed with the University of Arkansas Technology Ventures Office.
- Maigaard, T, Jensen, M: "A device for indicating contamination of the abdominal cavity or the like" Ref. ID# PA2011 702452457DK00. Priority Date May 18th, 2011
- Jensen, Gadgaard, Hoest, Madsen, Rasmussen: "Expandable Diffuser", International Patent Filed on June 25, 2009 under No.: PA 2009 00787, Published Internationally on December 29th, 2010 (WO/2010/149168A1)
- Balent, JS.; Jensen MO: "Signal Analysis Using Image Processing Techniques", U.S. provisional application Serial No. 60/357,691, U.S. utility application Serial No. 10/365,568; U.S. Patent Publications # 2003-0165259 A1, Patents Official Gazette, September 04, 2003

**Board of Directors Memberships, Appointments, Committees**
- National Institutes of Health (NIH) RO1 Bioengineering, Technology and Surgical Sciences Study Section panel member, Center for Scientific Review (CSR)
- Mentor at the 2018 American Heart Association Research Leaders Academy, Salt Lake City, Utah

2

- Department of Defense (DoD) National Defense Science and Engineering Graduate (NDSEG) Fellowships Review Committee
- National Institutes of Health (NIH) F10A Study Section panel member, Center for Scientific Review (CSR) Special Emphasis Panel (SEP) / Fellowship Grant Applications: Physiology and Pathobiology of Cardiovascular and Respiratory Systems (F30, F31, F32, F33)
- National Institutes of Health (NIH) AREA / R15 Study Section panel member, Center for Scientific Review (CSR): Cardiovascular Differentiation and Development (CDD), Electrical Signaling, Ion Transport, and Arrhythmias (ESTA)
- Appointed to the Danish Academy of Engineers
- Member of the Arkansas Research Alliance Academy of Scholars and Fellows
- The Center for Innovative Cardiovascular Technologies (CICT)
- Board of Directors at the Danish Society for Biomedical Engineering (DMTS) (Member 2009-2014, Consultant 2014-present)
- The Danish Accreditation Council
- Board of Advisors for the Danish Cardiovascular Research Academy
- Board of Directors for the Cardiovascular PhD Education, School of Medicine, University of Aarhus
- Academic Assessment Committee, University of Aalborg
- Academic Assessment Committee, University of Aarhus, Faculty of Health

**Editor / Editorial Board**
- K. Dremstrup, S. Rees, M. Ø. Jensen: Editors, Proceedings of the 15th Nordic-Baltic Conference on Biomedical Engineering and Medical Physics, Volume 34, the International Federation for Medical and Biological Engineering, ISBN 1680-0737, Springer DOI 10.1007/978-3-642-21683-1
- Editorial Board of the American Journal of Cardiovascular Disease (PubMed Indexed, www.ajcd.us)

**Reviewer / Journal Referee**
- Circulation Heart Failure (American Heart Association)
- Journal of Heart Valve Disease
- Annals of Thoracic Surgery
- Cardiovascular Engineering and Technology
- Journal of Biomechanics
- Annals of Biomedical Engineering
- Medical Engineering & Research
- Journal of Biological Engineering
- Public Library Of Science (PLOS) ONE
- Biomechanics and Modeling in Mechanobiology
- Experimental Mechanics
- International Journal for Numerical Methods in Biomedical Engineering
- Journal of Biomedical Materials Research
- Journal of Biomechanical Engineering (American Society of Mechanical Engineers)
- Journal of Cardiovascular Translational Research
- IEEE Transactions on Biomedical Engineering
- Journal of NeuroInterventional Surgery
- Heart
- Measurement
- Computer Methods in Biomechanics and Biomedical Engineering
- International Journal of Artificial Organs
- Journal of Surgical Research
- Clinical Physiology and Functional Imaging
- Journal of Computational Biology and Bioinformatics Research
- Medical & Biological Engineering & Computing

- Hult International Business School
- University of Bordeaux, IdEx Post-doctoral Fellowships program – evaluate candidates
- Associate Abstract Referee: Danish Annual Congress in Biomedical Engineering

**Conference Chairman / Moderator**
- Oral Session Chair, Cardiovascular Engineering, Device Technologies and Biomedical Robotics: Vascular Devices and Hemodynamics, Biomedical Engineering Society 2018 Annual Meeting, October 19th, Atlanta, Georgia, USA
- Oral Session Chair, Hemodynamics and Vascular Mechanics, Biomedical Engineering Society 2015 Annual Meeting, October 8th, Tampa, Florida, USA
- Oral Session Moderator, 33rd Annual meeting of the Scandinavian Society of ExtraCorporeal Technology, Aarhus, Denmark August 22nd - 24th, 2013
- Poster Session Moderator, 62nd Annual Meeting of Scandinavian Association for Thoracic Surgery, Aarhus, Denmark August 22nd - 24th, 2013
- Award Presentation Committee Chairman, 31st Danish Annual Congress in Biomedical Engineering, September 18th, 2013, Brædstrup, Denmark
- Award Presentation Committee Chairman, 30th Danish Annual Congress in Biomedical Engineering, September 19th, 2012, Brædstrup, Denmark
- Award Poster Presentation Committee Chairman, 30th Danish Annual Congress in Biomedical Engineering, September 20th, 2012, Brædstrup, Denmark
- Moderator: "Beyond the Limits of Mitral Valve Repair", Mitral Valve Replacement Symposium, September 29th, 2011, Aarhus University Hospital, Denmark
- Session Chairman, 60th Scandinavian Conference in Cardiothoracic Surgery, Tampere, Finland, 18 - 20 Aug 2011
- International Federation for Medical and Biological Engineering (IFMBE) Young Investigator Awards Committee, June 14-17th, 2011, Aalborg, Denmark
- Panel Discussion Member: "Biomedical Engineering Education",15th Nordic – Baltic Conference on Biomedical Engineering and Medical Physics, June 14th - 17th, 2011, Aalborg, Denmark
- Chairman: "Cardiovascular & Pulmonary Engineering",15th Nordic – Baltic Conference on Biomedical Engineering and Medical Physics, June 14 h - 17th, 2011, Aalborg, Denmark
- 29 h National Meeting at the Danish Society for Biomedical Engineering, June 14th - 17th, 2011, Aalborg, Denmark
- Session Chairman, 30th Scandinavian Conference in ExtraCorporeal Technology, Oslo, Norway, 26 - 28 Aug 2010
- Session Chairman, PhD-day, Faculty of Health Sciences, Aarhus University, Denmark, January 15 h, 2010
- Award Presentation Session Committee, 27th Danish Annual Congress in Biomedical Engineering, September 22nd, 2010, Brædstrup, Denmark
- Award Poster Presentation Session Committee, 27th Danish Annual Congress in Biomedical Engineering, September 23rd, 2010, Brædstrup, Denmark
- Session Chairman, 19 h World Congress of the World Society of Cardio-Thoracic Surgeons
- Buenos Aires, Argentina, November 4th – 6th, 2009
- Award Presentation Session Committee, 28th Danish Annual Congress in Biomedical Engineering, September 17th, 2009, Brædstrup, Denmark

**Conference Organizing / Scientific Committee**
- 31st National Meeting at the Danish Society for Biomedical Engineering, September 17th – 19th, 2013, Braedstrup, Denmark
- 30 h National Meeting at the Danish Society for Biomedical Engineering, September 19th – 20th, 2012, Braedstrup, Denmark
- 15 h Nordic – Baltic Conference on Biomedical Engineering and Medical Physics, June 14th - 17th, 2011, Aalborg, Denmark
- 29 h National Meeting at the Danish Society for Biomedical Engineering, June 14th - 17th, 2011, Aalborg, Denmark

4

- 28 h National Meeting at the Danish Society for Biomedical Engineering, September 21st - 23rd , 2010, Braedstrup, Denmark
- 27 h National Meeting at the Danish Society for Biomedical Engineering, September 22nd - 24rd , 2009, Braedstrup, Denmark

**Publications Summary**
- 66 peer reviewed publications (hereof 53 journal papers and 13 refereed conference proceedings)
- 19 magazine articles
- 11 books / book chapters
- 6 conference keynote addresses
- 81 conference oral presentations
- 55 conference poster presentations
- 28 seminars / invited guest speaker
- 6 patents / patent application publications / trade secrets

**Peer Reviewed Paper Publications**

1) Laughlin M, Stephens S, Jensen H, Jensen M, Millett P: "Fluid-Structure Interaction Modeling and Validation of Idealized Left Ventricular Blood Flow" *Proceedings of the American Society of Mechanical Engineers 2020 Fluids Engineering Division Meeting Pages: 1-8*

2) Ilkjaer C, Ropcke DM, Skov SN, Tjornild MJ, Vibaek A, Jensen MO, Nielsen SL: "Functional and biomechanical effects of ring annuloplasty on tissue engineered tricuspid tube-graft" *Interactive CardioVascular and Thoracic Surgery, June 2019 in press*

3) Collins RT; Laughlin M; Lang S; Bolin E; Daily J; Jensen H; Jensen M: "Real-Time Transthoracic Vector Flow Imaging of the Heart in Pediatric Patients" *Progress in Pediatric Cardiology 2019, Volume 53, June 2019, Pages 28-36. DOI:* https://doi.org/10 1016/j ppedcard 2019 02 003

4) Easson G, Laughlin M, Jensen H, Haney K, Girardot M, Jensen M: "Performance Changes of Venous Valves following Tissue Treatment with Novel In Vitro System"; *Phlebology. 2019 Jun;34(5):347-354. doi: 10.1177/0268355518804360.*

5) Patrick C Bonasso; Kevin W Sexton; Steven C Mehl; Michael S Golinko; Morten O Jensen; Jingxian Wu; Samuel D Smith; Jeffrey M Burford; Melvin S Dassinger: "Lessons learned measuring peripheral venous pressure waveforms in an anesthetized pediatric population." *Biomedical Physics & Engineering Express, 28 March 2019, Volume 5, Number 3.* https://doi.org/10.1088/2057-1976/ab0ea8

6) Bonasso PC, Sexton KW, Hayat MA, Wu J, Jensen HK, Jensen MO, Burford JM, Smith SD, Dassinger SM: "Venous physiology predicts dehydration in pediatric patients." *J Surg Res. 2019 Feb 15;238:232-239.*

7) Preut A, Laughlin M, Jensen H, Hestekin J, Jensen M: Novel Method for Emboli Analog Formation Towards Improved Stroke Retrieval Devices" *J Biomech. October 26, 2018 Volume 80, Pages 121–128*

8) Jensen MO, Jensen H, Skov SN, Levine RA, Nygaard H, Hasenkam JM, Nielsen SL: "New Mitral Valve Annuloplasty Concept: Optimizing Annular Dynamics and Force Distribution" *J Heart Valve Dis. 2018 Jan;27(1):38-46.*

5

9) Bonasso, PC; Dassinger, MS; Jensen, MO; Smith, SD; Burford, JM; Sexton, KW: "Optimizing peripheral venous pressure waveforms in an awake pediatric patient by decreasing signal interference", *Journal of Clinical Monitoring and Computing, 2018 Dec;32(6):1149-1153*

10) Stephens SE, Liachenko S, Ingels NB, Wenk JF, Jensen MO (2017) High resolution imaging of the mitral valve in the natural state with 7 Tesla MRI. PLoS ONE 12(8): e0184042. https://doi.org/10.1371/journal.pone.0184042

11) Skov SN, Ropcke DM, Tjornild MJ, Ilkjaer C, Rasmussen J, Nygaard H, Hasenkam JM, Jensen MO, Nielsen SL: "Remodeling Mitral Annuloplasty Ring Concept with Preserved Dynamics of the Annular Height" *J Heart Valve Dis. 2017 May;26(3):295-303*

12) Skov SN, Røpcke DM, Tjørnild MJ, Ilkjær C, Rasmussen J, Nygaard H, Jensen MO, Nielsen SL: "The effect of different mitral annuloplasty rings on valve geometry and annular stress distribution" *Interact CardioVasc Thorac Surg 2017;24:683–90.*

13) Skov SN, Ropcke DM, Tjornild MJ, Ilkjaer C, Rasmussen J, Nygaard H, Jensen MO, Nielsen SL: "Semi-rigid Mitral Annuloplasty Rings Improves Myocardial Stress Adaptation Compared to a Rigid Ring", *European Journal of Cardiothoracic Surgery (EJCTS), 2017 May 1;51(5):836-843*

14) Sasa Grbic, Thomas F. Easley, Tommaso Mansi, Charles H. Bloodworth, Eric L. Pierce, Ingmar Voigt, Dominik Neumann, Julian Krebs, David D. Yuh, Morten O. Jensen, Dorin Comaniciu, Ajit P. Yoganathan: "Personalized Mitral Valve Closure Computation and Uncertainty Analysis from 3D Echocardiography" *Medical Image Analysis Volume 35, January 2017, Pages 238–249*

15) Pantoja JL, Morgan AE, Grossi EA, Jensen MO, Weinsaft JW, Levine RA, Ge L, Ratcliffe MB: "Undersized Mitral Annuloplasty Increases Strain in the Proximal Lateral Left Ventricular Wall". *Cover Article in Ann Thorac Surg. 2016 Oct 5 (8 pages).*

16) Charles H. Bloodworth IV, B.S.; Eric L. Pierce, B.S.; Thomas F. Easley, M.S.; Andrew Drach, Ph.D.; Amir H. Khalighi, M.S.; Milan Toma, Ph.D.; Morten Ø. Jensen, Ph.D., Dr.Med.; Michael S. Sacks, Ph.D., Ajit P. Yoganathan, Ph.D.: "Ex Vivo Methods for Informing Computational Models of the Mitral Valve", *Ann Biomed Eng. 2017 Feb;45(2):496-507. doi: 10.1007/s10439-016-1734-z. Epub 2016 Oct 3.*

17) Eric L. Pierce, Jean Pierre M. Rabbah, Karl Thiele, Qifeng Wei, Brani Vidakovic, Morten O. Jensen, Judy Hung, Ajit P. Yoganathan: "Three-Dimensional Field Optimization Method: Gold-Standard Validation of a Novel Color Doppler Method for Quantifying Mitral Regurgitation" *Journal of the American Society of Echocardiography (JASE) 2016 Oct;29(10):917-925*

18) Søren Nielsen Skov, Diana Mathilde Røpcke, Christine Ilkjær, Jonas Rasmussen, Marcell Juan Tjørnild, Jorge H. Jimenez, Ajit P. Yoganathan, Hans Nygaard, Sten Lyager Nielsen, Morten Olgaard Jensen: "New mitral annular force transducer optimized to distinguish annular segments and multi-plane forces", *Journal of Biomechanics, Volume 49, Issue 5, 21 March 2016, Pages 742–748.*

19) Eric L. Pierce, Andrew W. Siefert, Deborah M. Paul, Sarah K. Wells, Charles H. Bloodworth, IV, Satoshi Takebayashi, Chikashi Aoki, Morten O. Jensen, Matthew J. Gillespie, Robert C. Gorman, Joseph H. Gorman, III, Ajit P. Yoganathan: "How Local Annular Force and Collagen Density Govern Mitral Annuloplasty Ring Dehiscence Risk" *Annals of Thoracic Surgery (ATS), August 2016, Volume 102, Issue 2, Pages 518–526.*

20) DM Ropcke, C Ilkjær, T Hejslet, AV Sørensen, H Jensen, MOJ Jensen, VE Hjortdal, SL Nielsen: "Functional and Biomechanical Performance of Stentless Extracellular Matrix Tricuspid Tube Graft: An Acute Experimental Porcine Evaluation" *The Annals of Thoracic Surgery, 2016 Jan;101(1):125-32.*

21) Toma M, Jensen MØ, Einstein DR, Yoganathan AP, Cochran RP, Kunzelman KS.: "Fluid-Structure Interaction Analysis of Papillary Muscle Forces Using a Comprehensive Mitral Valve Model with 3D Chordal Structure." *Annals of Biomedical Engineering 2016, Apr;44(4):942-53*

22) Robert Levine, Albert Hagege, Daniel Judge, Muralidhar Padala, Jacob Dal-Bianco, Elena Aikawa, Jonathan Beaudoin, Joyce Bischoff, Nabila Bouatia-Naji, Patrick Bruneval, Jonathan Butcher, Alain Carpentier, Miguel Chaput, Adrian Chester, Catherine Clusel, Francesca Nesta Delling, Harry Dietz, Christian Dina, Ronen Durst, Leticia Fernandez, Mark Handschumacher, Morten Jensen, Xavier Jeunemaitre, Hervé Le Marec, Thierry Le Tourneau, R Markwald, Jean Mérot, Emmanuel Messas, David Milan, Tui Neri, Russell Norris, David Peal, Maelle Perrocheau, Vincent Probst, Michael Puceat, Nadia Rosenthal, Jorge Solis-Martin, Jean-Jacques Schott, Ehud Schwammenthal, Susan Slaugenhaupt, Jae-Kwan Song, and Magdi Yacoub: "Unifying Concepts of Mitral Valve Disease: From Morphology to Mechanisms and Beyond" *Nature Reviews Cardiology 2015 Dec; 12(12),689–710*

23) Eric L. Pierce, Charles H. Bloodworth IV, Ajay Naran, Thomas F. Easley, Morten O. Jensen, Ajit P. Yoganathan: "Novel Method to Track Soft Tissue Deformations by Micro-Computed Tomography: Application to the Mitral Valve" *Annals of Biomedical Engineering 2015 Nov 9. 2016 Jul;44(7):2273-81.*

24) Søren N. Skov, Diana M. Røpcke, Kristine Telling, Christine Ilkjær, Marcell J. Tjørnild, Hans Nygaard, Sten L. Nielsen, Morten O. Jensen: "Simultaneous in- and out-of-plane Mitral Valve Annular Force Measurements" *Cardiovascular Engineering and Technology 2015 special issue on Mitral Valve Function, Pathology, and Therapeutic Options, Page 185-192.*

25) Drach A., Khalighi A.H., ter Huurne F.M., Lee C.H., Bloodworth C., Pierce E.L., Jensen M.O., Yoganathan A.P., Sacks M.S.: "Population-Averaged Geometric Model of Mitral Valve from Patient-Specific Imaging Data" *Journal of Medical Devices*, *September 2015, Vol.9, 030952:1-3*

26) Henrik Jensen, Morten O. Jensen, Sten L. Nielsen: "Surgical Treatment of Functional Ischemic Mitral Regurgitation" *Review paper, J. Heart Valve Dis. 2015 Jan;24(1):30-42.*

27) Tommy Bechsgaard, Jesper Langhoff Honge, Hans Nygaard, Morten Olgaard Jensen: "In Vivo Wireless Monitoring System of Cardiovascular Force Data "*Cardiovascular Engineering and Technology Volume 6, Issue 1 (2015), p. 2-7.*

28) Diana M Ropcke, Morten OJ Jensen, Henrik Jensen, Tine Hejslet, Sten L Nielsen: "Papillary Muscle Force Distribution following Total Tricuspid Reconstruction using Porcine Extracellular Matrix" *The Journal of Heart Valve Disease 2014;23:788-794.*

29) Andrew Siefert, Eric Pierce, Madonna Lee, Morten Jensen, Chikashi Aoki, Satoshi Takebayashi, Robert Gorman, Joseph Gorman, Ajit Yoganathan: "Suture Forces in Undersized Mitral Annuloplasty: Novel Device and Measurements" *Ann Thorac Surg 2014;98:305–9.*

30) Morten O. Jensen, Jesper L. Honge, Jon A. Benediktsson, Andrew W. Siefert, Henrik Jensen, Ajit P. Yoganathan, Teresa K. Snow, J. Michael Hasenkam, Hans Nygaard, DMSc, Sten L. Nielsen: "Mitral valve annular downsizing forces: Implications for annuloplasty device development", *J Thorac Cardiovasc Surg. 2014 Jul;148(1):83-9.*

31) Henrik Jensen; Morten O Jensen; Farhad Waziri; Jesper L Honge; Erik Sloth; Morten Fenger-Grøn; Sten L Nielsen: "Transapical Neochord Implantation: Is Tension of Artificial Chordae Tendineae Dependent on Insertion Site?" *J Thorac Cardiovasc Surg. 2014 Jul;148(1):138-43.*

32) Morten O. Jensen, Albert A. Hagège, Yutaka Otsuji, Robert A. Levine: "The Unsaddled Annulus: Biomechanical Culprit in Mitral Valve Prolapse?" *Circulation Editorial, 2013 Feb 19;127(7):766-8*

33) ES Kragsnaes, JL Honge, JB Askov, SL Nielsen, H Nygaard, MO Jensen: "In-plane Tricuspid Valve Force Measurements: Development of Strain Gauge Instrumented Annuloplasty Ring" *Cardiovascular Engineering and Technology, June 2013, Volume 4, Issue 2, pp 131-138.*

34) Rahmani A, Rasmussen AQ, Honge JL, Ostli B, Levine RA, Hagège AA, Nygaard H, Nielsen SL, Jensen MO: "In Vitro Simulation Model Shows Adverse Mitral Valve Mechanics Following Leaflet Patch Augmentation" *The Journal of Heart Valve Disease*, 2013;22:28-35.

35) H Jensen, MO Jensen, S Vind-Kezunovic, R Vestergaard, S Ringgaard, MH Smerup, JL Honge, JM Hasenkam, SL Nielsen: "Surgical Relocation of the Papillary Muscles in Functional Ischemic Mitral Regurgitation - What are the Forces of the Relocation Stitch Acting on the Myocardium?" *The Journal of Heart Valve Disease 2013 Jul;22(4):524-31.*

36) Røpcke DM, Hjortdal VE, Toft GE, Jensen MO, Kristensen SD: "Remote ischemic preconditioning reduces thrombus formation in the rat", *Journal of Thrombosis and Haemostasis, Volume 10, Issue 11, 2013, 2405-2406.*

37) JB Askov, JL Honge, MO Jensen, H Nygaard, JM Hasenkam, SL Nielsen: "Significance of Force Transfer in Mitral Valve - Left Ventricular Interaction: In Vivo Assessment" *The Journal of Thoracic and Cardiovascular Surgery, 2013 Jun;145(6):1635-41.*

38) Morten O. Jensen, Henrik Jensen, Hans Nygaard, J. Michael Hasenkam, Sten L. Nielsen: "External Approach to In Vivo Force Measurement On Mitral Valve Traction Suture", *Journal of Biomechanics, 45, (2012): 908–912.*

39) Ostli B, Vester-Petersen J, Askov JB, Honge JL, Levine RA, Hagege AA, Nielsen SL, Hasenkam JM, Nygaard H, Jensen MO: "In Vitro System for Measuring Chordal Force Changes Following Mitral Valve Patch Repair", Cardiovascular Engineering and Technology: Volume 3, Issue 3 (2012), Page 263-268.

40) Jensen MO, Jensen H, Levine RA, Yoganathan AP, Andersen NT, Nygaard H, Hasenkam JM, Nielsen SL "Saddle-shaped mitral valve annuloplasty rings improve leaflet coaptation geometry", *The Journal of Thoracic and Cardiovascular Surgery 2011 September;142(3):697-703.*

41) Mathieu Granier*, Morten O. Jensen*, Jesper L. Honge, Alain Bel, Philippe Menasché, Sten L. Nielsen, Alain Carpentier, Robert A. Levine, Albert A. Hagège: "Consequences of mitral valve prolapse on chordal tension: Ex vivo and in vivo studies in large animal models" *The Journal of Thoracic and Cardiovascular Surgery, 2011 Dec;142(6):1585-7.*

42) JB Askov, JL Honge, H Nygaard, JM Hasenkam, SL Nielsen, MO Jensen: "Papillary Muscle Force Transducer for Measurement In Vivo", *Cardiovascular Engineering and Technology, September 2011, Volume 2; Issue 3; p196-202.*

43) A Stigo, P Johansen, M Jensen, K Sivesgaard, H Nygaard, E Sloth: An automated in-vitro model for the evaluation of Ultrasound modalities measuring myocardial deformation. *Cardiovasc Ultrasound 2010 Sep 7;8:40.*

8

44) Henrik Jensen, Morten Ølgaard Jensen, Morten H. Smerup, Steffen Ringgaard, Niels Trolle Andersen, Per Wierup, J. Michael Hasenkam, Sten Lyager Nielsen: Does down-sized ring annuloplasty induce papillary muscle relocation in ischemic mitral regurgitation? *J Heart Valve Dis. 2010 Nov;19(6):692-700.*

45) Henrik Jensen, Morten Ølgaard Jensen, Morten H. Smerup, Steffen Ringgaard, Thomas S. Sørensen, Per Wierup, J. Michael Hasenkam, Sten Lyager Nielsen: Three-dimensional Assessment of Papillary Muscle Displacement in Ischemic Mitral Regurgitation in Pigs. *The Journal of Thoracic and Cardiovascular Surgery 2010 Dec;140(6):1312-8.*

46) Henrik Jensen, Morten Ølgaard Jensen, Sten Lyager Nielsen; Morten Smerup; Stefan Vind-Kezunovic; Rikke Vestergaard; Niels Trolle Andersen; Michael Hasenkam; Steffen Ringgaard; Per Nils Johan Fredrik Wierup; "Impact of Papillary Muscle Relocation as Adjunct Procedure to Mitral Ring Annuloplasty in Functional Ischemic Mitral Regurgitation" *Circulation 2009;120:S92-S98.*

47) Jeppe H. Christensen, Mads B. T. Soerensen, Zhong Linghui, Sun Chen, Morten O. Jensen: Pre-diagnostic digital imaging prediction model to discriminate between malignant melanoma and benign pigmented skin lesion, *Skin Research and Technology 2009, Volume 16, Issue 1, Pages 98 – 108*

48) Morten O. Jensen, Henrik Jensen, Morten Smerup, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, J. Michael Hasenkam, Sten L. Nielsen: Saddle-shaped Mitral Valve Annuloplasty Rings Provide Superior Annular Force Distribution Compared with Flat Rings. *Circulation 2008;118(suppl 1):250-255.*

49) Jensen, M. O., Jensen, H., Nielsen, S.L., Smerup, M., Johansen, P., Yoganathan, A. P., Nygaard, H., Hasenkam, J. M.: What Forces Act on a Flat Rigid Mitral Annuloplasty Ring. *J Heart Valve Dis 2008;17:267-275.*

50) Nielsen PF, Funder JA, Jensen MO, Nygaard H: Influence of Venous Reservoir Level on Microbubbles in Cardiopulmonary Bypass, *Perfusion 2008, Vol. 23, No. 6, 347-353.*

51) Henrik Jensen, Morten Ø. Jensen, Steffen Ringgaard, Morten H. Smerup, Thomas S.Sorensen, Won Y. Kim, Erik Sloth, P. Wierup, J. Michael Hasenkam, Sten L. Nielsen "Geometric Determinants of Chronic Functional Ischemic Mitral Regurgitation: Insights from Three-Dimensional Cardiac Magnetic Resonance Imaging" *The Journal of Heart Valve Disease 2008 Jan;17(1):16-22; discussion 23.*

52) Jensen MO, Lemmon JD, Gessaghi VC, Conrad CP, Levine RA, Yoganathan AP.  Harvested porcine mitral xenograft fixation: impact on fluid dynamic performance. *J Heart Valve Dis 2001 Jan;10(1):111-24.*

53) Jensen MO, Fontaine AA, Yoganathan AP.  Improved *in vitro* quantification of the force exerted by the papillary muscle on the left ventricular wall: three dimensional force vector measurement system. *Ann Biomed Eng. 2001 May;29(5):406-13.*

54) He S, Weston MW, Lemmon J, Jensen M, Levine RA, Yoganathan AP. Geometric distribution of chordae  tendineae: an important anatomic feature in mitral valve function. *J Heart Valve Dis. 2000 Jul;9(4):495-501; discussion 502-3.*

55) He S, Lemmon JD Jr, Weston MW, Jensen MO, Levine RA, Yoganathan AP. Mitral valve compensation for annular dilatation: in vitro study into the mechanisms of functional mitral regurgitation with an adjustable annulus model. *J Heart Valve Dis. 1999 May;8(3):294-302.*

9

**Refereed Conference Publications**

56) Bean MJ, Jiang D, Manoharan F, Nowell AE, Uretsky B, Jensen HK, Timmins LH, Jensen MO: "Modeling Percutaneous Intervention of Coronary Artery Bifurcations", *SB3C2020 Summer Biomechanics, Bioengineering and Biotransport Conference, June 17 – 20, 2020: Virtual Conference*

57) Crimmins LD, Henry KR, Hayat MA, Bonasso PC, Wu J, Jensen HK, Sexton KW, Jensen MO: "Dehydration and Anesthesia Influence on The Relationship Between Arterial and Venous Pressure Waveforms", *SB3C2020 Summer Biomechanics, Bioengineering and Biotransport Conference, June 17 – 20, 2020: Virtual Conference*

58) Jiang D, Zimmerman BK, Bean MJ, Maas SA Jensen MO, Ateshian GA, Timmins LH: "Towards the Establishment of Lesion-Specific Stenting Strategies: Validation of a Coupled Balloon-Stent Finite Element Framework for Vascular Stent Deployment", *SB3C2020 Summer Biomechanics, Bioengineering and Biotransport Conference, June 17 – 20, 2020: Virtual Conference*

59) Kaylee R. Henry, Ali Z. Al-Alawi, Md Abul Hayat, Hanna K. Jensen, Jingxian Wu, Patrick C. Bonasso, Kevin W. Sexton, and Morten O. Jensen: "Isoflurane Effect on Peripheral Venous Pressure" SB3C2019 Summer Biomechanics, Bioengineering and Biotransport Conference June 25 -28, Seven Springs, PA, USA

60) Bean MJ, Jiang D, Stephens SE, Laughlin ME, Jensen HK, Uretsky B, Timmins LH, Jensen MO: "Experimental Modeling of Coronary Intervention: Towards Computational Simulation", *Proceedings of the SB3C2019 Summer Biomechanics, Bioengineering and Biotransport Conference, June 25-28, 2019, Seven Springs, PA, USA*

61) Henson JC, Batta-Mpouma J, Chivers C, Sinha A, Jensen H, Kim J, Jensen M, Kim JW: "Nanopatterned Polycaprolactone/Cellulose Nanocrystal Composite Scaffold for Cardiovascular Tissue Engineering"; IEEE NANOMED 2018, December 2-5, Waikiki Beach, Hawaii

62) Easson G, Laughlin M, Jensen H; Haney, K; Girardot M; Jensen MO: "Development of an in Vitro System for Physiological Testing of Native and Prosthetic Venous Valves", *Journal of Phlebology, Volume 32, Issue 2, Dec 2017 p. 33-36*

63) Stephens SE, Liachenko S, Wenk JF, Jensen MO: "In vitro left heart system with 7T MRI provides high resolution mitral valve 3D imaging datasets for computational modeling", *Proceedings of the SB₃C2017 Summer Biomechanics, Bioengineering and Biotransport Conference, June 21-24, 2017, Tucson, Arizona, USA*

64) Wenk JF, Jensen MO: "Finite Element Modeling of Mitral Valve Patch Augmentation and Effects on Chordal Force Distribution", *Proceedings of the SB₃C2017 Summer Biomechanics, Bioengineering and Biotransport Conference, June 21-24, 2017, Tucson, Arizona, USA*

65) Qusay Alfaori, Ashok Saxena, Hanna Jensen and Morten Jensen: "Rupture in Abdominal Aortic Aneurysm", *Proceedings of First Structural Integrity Conference and Exhibition (SICE-2016), Bangalore, India, July 4-6, 2016*

66) Eric L. Pierce, Charles H. Bloodworth IV, Ajay Naran, Thomas F. Easley, Morten O. Jensen, Ajit P. Yoganathan: "Novel Medical Imaging Technique for Soft Tissue Deformation Tracking – Application to The Mitral Valve" *Proceedings of the SB₃C2015 Summer Biomechanics, Bioengineering and Biotransport Conference, June 17-20, 2015, Snowbird Resort, Utah, USA.*

67) Milan Toma, Morten O. Jensen, Daniel R. Einstein, Ajit P. Yoganathan, Richard P. Cochran, Karyn S. Kunzelman: "Fluid-Structure Interaction Analysis of Mitral Valve Forces Using a Comprehensive Model With 3D Chordal Structure: Synergy of Modeling and Experiments" *Proceedings of the SB3C2015 Summer Biomechanics, Bioengineering and Biotransport Conference (Podium Presentation), June 17-20, 2015, Snowbird Resort, Utah, USA.*

68) C. H. Bloodworth IV, E. L. Pierce, T. F. Easley, M. Toma, A. Khalighi, C-H. Lee, M. Sacks, A. W. Siefert, M. Ø. Jensen, A. P. Yoganathan: "Design of an In Vitro Simulation Pipeline for the Development of Computational Mitral Valve Modeling", *Proceedings of the SB3C2015 Summer Biomechanics, Bioengineering and Biotransport Conference, June 17-20, 2015 (Podium), Snowbird Resort, Utah, USA.*

69) Khalighi A.H., Drach A., ter Huurne F.M., Lee C.H., Bloodworth C., Pierce E.L., Jensen M.O., Yoganathan A.P., Sacks M.S.: "A Complete Framework for the Charactrization of Complete Mitral Valve Geometry for the Development of A Population-averaged Model", *8th International Conference on Functional Imaging and Modeling of the Heart, June 25-27, 2015, Maastricht, Netherlands. ISBN: 978-3-319-20308-9 (Print) 978-3-319-20309-6 (Online): page 164-171, 2015.*

70) Andrew Drach, Amir H. Khalighi, Fleur M. ter Huurne, Chung-Hao Lee, Charles Bloodworth, Morten O. Jensen, Ajit P. Yoganathan, Michael S. Sacks: "Population-Averaged Geometric Model of Mitral Valve from Patient-Specific Imaging Data" *Proceedings of the Design of Medical Devices Conference April 13-16, 2015, Minneapolis, MN, Technical Brief in the June 2015 issue of ASME Journal of Medical Devices.*

71) Sasa Grbic, Thomas F. Easley, Tommaso Mansi, Charles H. Bloodworth, Eric L. Pierce, Ingmar Voigt, Dominik Neumann, Julian Krebs, David D. Yuh, Morten O. Jensen, Dorin Comaniciu, and Ajit P. Yoganathan: "Multi-modal Validation Framework of Mitral Valve Geometry and Functional Computational Models" *Proceedings of the Medical Image Computing and Computer Assisted Intervention Society 2014 Annual Meeting.*

72) JB Askov, MO Jensen, JL Honge, H Nygaard, JM Hasenkam, SL Nielsen: "Miniature Transducer for Chordal Force Measurements In Vivo" *Proceedings of the ASME Summer Bioengineering Conference June 16, 2010, Proc. ASME. 44038, ASME ID SBC2010-19181, p 617-618.*

73) Morten O. Jensen, Peter Johansen, Hans Nygaard: Development of an Implantable Heart Valve Force Transducer. *Proceedings of the ASME Summer Bioengineering Conference June 25, 2008, Proc. ASME. 43215, ASME ID SBC2008-192309, p 247-248.*


**Magazine Articles**

74) Megan Laughlin, Jamie Hestekin, Morten Jensen: "Inno-*vein*-tion: How U of A researchers are creating new technology that simulates human blood vessels" *Arkansas Engineer, October 2018*

75) Jensen, Morten; Chittey, Anton: "Measuring forces in a beating heart" *VPG Micro-Measurements Case Study, December 2017*

76) Kim Dremstrup, Morten Jensen: "Forty, Fresh and Ready". *Editorial for the 40-year anniversary of the Danish Biomedical Engineering Society, Medical Technology and Informatics, No. 5, November 2013, p. 4.*

77) Morten Jensen: "Students in Focus". *Editorial, Medical Technology and Informatics, No. 1, March 2012, p. 4.*

78) Naia Bang (Featured Article): "Trækker i trådene, når klappen går ned". *Medical Technology and Informatics, No. 4, August 2011, p. 16.*

79) Besenbacher Bente, Johansen Peter, Jensen Morten: "Health Technology in Aarhus". *Medical Technology and Informatics, No. 2, April 2011, p. 4-6.*

80) Engineers for a Better World: "Help to Heart Patients" *Genius Issue #3, Nov '10* ([www.iha.dk/genius](http://www.iha.dk/genius) and [http://magazine.heyday.dk/iha/genius3/](http://magazine.heyday.dk/iha/genius3/)).

81) Jesper Askov and Morten Jensen: "Materials Science in Analyzing Forces in the Heart." *Medical Technology and Informatics, No. 3, June 2009, p. 10-12.*

82) Morten Jensen: Force balance in the mitral valve annulus: How to interpret the function of annuloplasty devices. *Medical Technology and Informatics supplement for the 25th Danish annual congress in biomedical engineering, 2009.*

83) Mette Stougaard  (Featured Article) "Intelligent Hjertering med Lang Levetid" *Hjertenyt, (Danish Heart Association Magazine), Nov. '08 pg. 12-13.*

84) Morten Jensen: Kraftbalancen i mitralklappen og venstre ventrikel. *Ugeskrift for Læger 2008;170(47):3877.*

85) Jensen, Morten: Collaboration between Engineers and Doctors can save lives. *Medical Technology and Informatics, No. 7, October 2006, p. 38-41.*

86) Ben Black, Morten Jensen, Wayne Book:  Georgia Tech Intelligent Machine Dynamics Laboratory Utilizing National Instruments Platform for Developing Haptic Devices. *National Instruments Academia, Jan 2005.*

87) Morten Jensen: Using National Instruments System Identification, Control Design and Simulation Products for Designing and Testing a Controller for an Unidentified System. *NI Developer Zone, Jan 2005.*

88) Jensen, Morten: SISO Plant Simulator for Evaluating the NI LabVIEW Control Design and Simulation Bundle for Designing and Testing a Controller to an Unidentified System. *NI Developer Zone, May 2005.*

89) Morten Jensen, Ash Prabala, Doug Benson, William Bridson, Joseph Corsi: Automating Fluorescent Imaging Techniques. *National Instruments Online Developer Zone, July 2004.*

90) Guettler RD, Saxena R, Jensen MO. Bacterial Colony and Plaque Picking: An Automated Solution for DNA sample preparation (Cover Article). *Scientific Computing and Instrumentation Sep. 2002 pg. 12-22.*

91) Min J. Yang, Ph.D., Ron Bonner, Ph.D., Morten Jensen: Vision in Mass Spectrometry. *Scientific Computing and Instrumentation Sep. 2002 pg. 18-24.*

92) Jensen, Morten: Calculating Camera Sensor Resolution and Lens Focal Length. *National Instruments Developer Zone, October 2001.*

**Books and Book Chapters**

93) Jensen M, Siefert A, Okafor I, Yoganathan AP: "Measurement technologies for heart valve function", Chapter in "Advances in Heart Valve Biomechanics: Valvular Physiology, Mechanobiology, and Bioengineering", 1st Edition released on February 14, 2019. P 1-Xs ISBN-10: 3030019918

94) Henson J, Jensen H, Balachandran K, Rao R, Kim J-W, Jensen M: "Cues from the Nano-environment: The role of Nanomaterials in Stem Cell Differentiation and Stem Cell Tissue Engineering" *Soft Materials in Nano/Bio Medicine, 2019*

95) Raghav V, Jensen M, Arjunon S, Teoh SH, Yoganathan AP: "Heart Valve Prostheses and Repair Devices", *Materials Science and Materials Engineering - Comprehensive Structural Integrity, 2018(2017), by Editors-in-Chief: I. Milne, R. O. Ritchie, and B. Karihaloo. ISBN: 978-0-08-043749*

96) Alfaori Q, Saxena A, Jensen HA, Jensen MO: "Collagen Degradation Effect on Rupture in Abdominal Aortic Aneurysm", *Advances in Structural Integrity 2017, ISBN 978-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-3*

97) Jensen H, Martin E, Jensen M, Rome F, Di Carlo A, Kim JW, Mehta JL. "Nanotechnology-Based Stem Cell Applications and Imaging". In: "Imaging in Stem Cell Transplant and Cell-based Therapy (In: Stem Cell Biology and Regenerative Medicine)". *Springer Book Series. June 2017, ISBN 978-3-319-51831-2, DOI 10.1007/978-3-319-51833-6*

98) Sasa Grbic, Thomas F. Easley, Tommaso Mansi, Charles H. Bloodworth, Eric L. Pierce, Ingmar Voigt, Dominik Neumann, Julian Krebs, David D. Yuh, Morten O. Jensen, Dorin Comaniciu, Ajit P. Yoganathan: "Multi-modal Validation Framework of Mitral Valve Geometry and Functional Computational Models" *Statistical Atlases and Computational Models of the Heart - Imaging and Modeling Challenges 2015, pp 239-248.*

99) Dremstrup, Kim; Rees, Steve; Jensen, Morten Ølgaard (Eds.): "15th Nordic-Baltic Conference on Biomedical Engineering and Medical Physics", 1st Edition., 2011, XVI, 280 p. 245 illus. (Springer eBook link: http://dx doi org/10 1007/978-3-642-21683-1).

100)      Jensen, Morten: "Ensemble Averaging of Physiologic Signals: A LabVIEW based Software Package Assisting the Analysis of Cyclic Data", *Book Chapter in "Virtual Bio-Instrumentation" by Jon B. Olansen and Eric Rosow, Prentice Hall 2002.*

101)      Jensen Morten: "Stentless Mitral Valve Fixation: Impact on Hemodynamic Performance", *Master's Thesis 2000.*

102)      Jensen Morten: "Mitral Valve Force Balance: The Left Ventricular Tug of War", *PhD Thesis 2008.*

103)      Jensen Morten: "Biomechanical Aspects of Mitral Valve Function and Repair", *DMSc (Dr.Med.) Thesis 2015.*

**Conference Keynote Addresses / Invited Lectures**

1) Jensen, M: "Biomechanical Aspects of FMR". *2019 Annual Meeting of the Heart Valve Society (HVS), Apr 11 - 13, 2019, Sitges, Barcelona, Catalonia, Spain. Mitral Valve Session Discussant Panel with Discussants: Jerry Braun, MD, PhD, Morten O. Jensen, DrMed, PhD, Resham Barauh, MD, Michael Borger, MD, Vinod Thourani, MD, Mark Ratcliffe, MD*

2) Jensen, M (f. Yoganathan, A): "Cardiovascular Devices: From the Bench and Computer to Bedside/Bassinet" *2014, BMES Annual Meeting October 22-25, 2014, San Antonio, Texas*.

3) Morten Jensen, PhD; Jesper Honge, MD: "Cardiac Dynamics", *15th Nordic – Baltic Conference on Biomedical Engineering and Medical Physics, June 14th - 17th, 2011, Aalborg, Denmark*.

4) Morten Jensen: "Inspiration and Recognition of Science and Technology", *(FIRST) LEGO League, Herning, Denmark, October 1st 2010*.

5) Morten Jensen: "Computer based Measurements in Experimental Heart Surgery", *National Instruments Annual Conference, Hørsholm, Denmark, May 6th 2010*.

6) Morten O. Jensen: What Forces Act on Rigid Mitral Annuloplasty Rings?  Implications for Annuloplasty Ring Designs. *Keynote Address at the Robert Levine Symposium on New Frontiers in Mitral Valve Repair*.

7) *Targeting the Natural History of Mitral Valve Regurgitation, Tuesday January 20th, 2009, Aarhus, Denmark*.


**Conference Abstracts: Oral Presentations**

8) Gal DB, Stephens S, MacMillen K, Jensen HK, Bolin E, Daily J, Millett P, Jensen M, Collins  RT: "A Patient-based Computational Model that Predicts Pressure Drop in Supravalvar Aortic Stenosis in Patients with Williams Syndrome", *American Association of Pediatrics, San Diego, CA, Oct. 2-6, 2020*

9) Gal DB, MacMillen K, Jensen M, Jensen H, Bolin E, Daily J, Collins RT: "Percent Change in Diameter from Aortic Annulus to Sinotubular Junction Predicts Supravalvar Aortic Stenosis Gradient in Williams Syndrome" *American Society of Echocardiography, Denver, Colorado, June 19-22, 2020*

10) Megan Laughlin, Sam Stephens, Hanna Jensen, Morten Jensen, Paul Millett: "Fluid-Structure Interaction Modeling and Validation of Idealized Left Ventricular Blood Flow". *American Society of Mechanical Engineers FEDS Meeting, Orlando, FL July 12-16*

11) Joseph Batta-Mpouma, Cody Chivers, Garett Huffstutler, Hanna K. Jensen, Morten O. Jensen, Jangho Kim, and Jin-Woo Kim: "Hybrid Composites of Cellulose Nanocrystal and Polycaprolactone as Scaffold Materials for Cardiomyocyte Regeneration" *13th IEEE International Conference on Nano/Molecular Medicine & Engineering (IEEE-NANOMED 2019), 21-24 November 2019, Gwangju, Korea*.

12) Jensen M, Wenk J: "Optimizing Imaging and Force Validation for Computational Modeling of Cardiac Valve Function and Intervention" *15th U.S. Congress on Computational Mechanics, Minisymposium: Computational Modeling of Cardiac Valve Function and Intervention, Austin, Texas, USA, July 28-August 1, 2019*

13) Bonasso, PC; Sexton, KW; Hayat MA; Al-Alawi A; Jingxian W; Jensen, HK; Jensen, MO**;** Smith SD; Burford, JM; Dassinger, MS: "Venous physiology predicts anesthetic induced hypotension in infants" *American College of Surgeons Clinical Congress, Boston MA, October 2018*

14) Stephens SE, Liachenko S, Wenk JF, Jensen MO: "In vitro left heart system with 7T MRI provides high resolution mitral valve 3D imaging datasets for computational modeling", *SB₃C2017 Summer*

*Biomechanics, Bioengineering and Biotransport Conference, June 21, 2017, Tucson, Arizona, USA*

15) Qusay Alfaori, Ashok Saxena, Hanna Jensen, Morten Jensen: "Rupture Prediction in Abdominal Aortic Aneurysms". *43rd Annual Symposium on Vascular and Endovascular Issues, November 15 - 19, 2015, New York, NY, USA.*

16)  Skov SN, Ropcke DM, Tjornild MJ, Ilkjaer C, Rasmussen J, Nygaard H, Jensen MO, Nielsen SL: **"**Semi-rigid Mitral Annuloplasty Rings Improves Myocardial Stress Adaptation Compared to a Rigid Ring" *30th Annual Meeting of The European Association for Cardio-Thoracic Surgery, October 1-5, 2016, Barcelona, Spain*

17) Qusay Alfaori, Ashok Saxena, Hanna Jensen and Morten Jensen: "Rupture in Abdominal Aortic Aneurysm", *Proceedings of First Structural Integrity Conference and Exhibition (SICE-2016), Bangalore, India, July 4-6, 2016*

18) Pantoja JL, Morgan AE, Ge L, Grossi EA, Weinsaft JW, Jensen MO, Levine RA, Ratcliffe MB: "Undersized Ring Annuloplasty Increases Strain in the Left Ventricle: Finite Element Analysis", *2nd Annual Meeting of the Heart Valve Society, March 17-19, 2016, New York City, NY.*

19) Skov SN, Ropcke DM, Ilkjaer C, Rasmussen J, Tjoernild MJ, Nygaard H, Jensen MO, Nielsen SL: "What are the Remodelling Forces of a Rigid Mitral Annuloplasty Ring – A Potential Risk Factor for Ring Dehiscence in Mitral Valve Repair?", *2nd Annual Meeting of the Heart Valve Society, March 17-19, 2016, New York City, NY.*

20) DM Røpcke, C Ilkjær, T Hejslet, AV Sørensen, H Jensen, MO Jensen, VE Hjortdal, SL Nielsen: "Functional and biomechanical performance of stentless extracellular matrix tricuspid tubegraft in pigs" *26th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 11th –13th, 2016.*

21) SN Skov, DM Røpcke, C Ilkjær, J Rasmussen, MJ Tjørnild, H Nygaard, MO Jensen, SL Nielsen: "What are the remodelling forces of a rigid mitral annuloplasty ring – a potential risk factor in mitral valve repair?"  *26th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 11th –13th, 2016.*

22) C Ilkjær, DM Røpcke, SN Skov, MJ Tjørnild, AV Sørensen, MO Jensen, SL Nielsen: "Functional and biomechanical effects of conventional ring annuloplasty on a novel tissue engineered tricuspid tube graft prosthesis–preliminary results" *26th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 11th –13th, 2016.*

23) Qusay Alfaori, Ashok Saxena, Hanna Jensen, Morten Jensen: "Rupture in Abdominal Aortic Aneurysms". *42nd Annual Symposium on Vascular and Endovascular Issues, November 17 - 21, 2015, New York, NY, USA.*

24) C.H. Lee, C.H. Bloodworth, M.O. Jensen, A.P. Yoganathan, M.S. Sacks: "Effects of leaflet microstructure and constitutive model on the closing behavior of the mitral valve" *Summer Biomechanics, Biongineering and Biotransport Conference (SB3C2015), Snowbird, UT, Jun 17-20, 2015.*

25) Skov, Søren Nielsen; Røpcke, Diana Mathilde; Ilkjær, Christine; Rasmussen, Jonas; Tjørnild, Marcell Juan; Nygaard, Hans; Jensen, Morten Ølgaard Jegstrup; Nielsen, Sten Lyager: "Biomechanical Features of a Rigid Remodeling Versus a Fully Flexible Mitral Annuloplasty Ring" *33rd National Meeting at the Danish Society for Biomedical Engineering, September 17th, 2015, Braedstrup, Denmark.*

26) Amir H. Khalighi, Andrew Drach, Chung-Hao Lee, Charles Bloodworth, Eric L. Pierce, Morten O. Jensen, Robert C. Gorman, Joseph H. Gorman, Ajit P. Yoganathan, and Michael S. Sacks: "Development of a Population-Averaged Model of the Complete Mitral Valve Geometry", *Biomedical Engineering Society 2015 Annual Meeting, October 7-9, Tampa, Florida, USA.*

27) Skov, Søren Nielsen; Røpcke, Diana Mathilde; Ilkjær, Christine; Rasmussen, Jonas; Tjørnild, Marcell Juan; Nygaard, Hans; Jensen, Morten Ølgaard Jegstrup; Nielsen, Sten Lyager: "Rigid Remodelling Versus Fully Flexible Mitral Annuloplasty Rings - A Novel Assessment Tool for Biomechanical Characterization" *29th Annual Meeting of the European Association For Cardio-Thoracic Surgery (EACTS), Amsterdam, The Netherlands, 3 - 7 October 2015.*

28) Milan Toma, Morten O. Jensen, Daniel R. Einstein, Ajit P. Yoganathan, Richard P. Cochran, Karyn S. Kunzelman: "Fluid-Structure Interaction Analysis of Mitral Valve Forces Using a Comprehensive Model With 3D Chordal Structure: Synergy of Modeling and Experiments", *SB3C2015 Summer Biomechanics, Bioengineering and Biotransport Conference June 17-20, 2015, Snowbird Resort, Utah, USA.*

29) Charles H. Bloodworth, Eric L. Pierce, Thomas F. Easley, Milan Toma, Morten O. Jensen, Ajit P. Yoganathan: "Capturing Detailed 3D Mitral Valve Geometry for Computational Valve Modeling" *SB3C2015 Summer Biomechanics, Bioengineering and Biotransport Conference June 17-20, 2015, Snowbird Resort, Utah, USA.*

30) Toma M; Jensen MO; Einstein DR; Yoganathan AP; Cochran RP; Kunzelman KS: "Validating Fluid Structure Interaction in Medical Device Design with Force Measurements", *2015 BMES Frontiers in Medical Devices Conference: Innovations in Modeling and Simulation, May 18-20, 2015, Washington DC.*

31) Chung-Hao Lee, Charles H. Bloodworth, Morten O. Jensen, Ajit P. Yoganathan, Michael S. Sacks: "Predictive Computational Simulations of the Functioning Mitral Valve" *2015 BMES Frontiers in Medical Devices Conference: Innovations in Modeling and Simulation, May 18-20, 2015, Washington DC.*

32) Skov, Søren Nielsen; Røpcke, Diana Mathilde; Ilkjær, Christine; Tjørnild, Marcell Juan; Nygaard, Hans; Jensen, Morten Ølgaard Jegstrup; Nielsen, Sten Lyager: "How to measure the Forces in Mitral Annuloplasty Rings" *3rd Iranian Cardiovascular Joint Congress, 3rd-6th of March 2015, Teheran, Iran.*

33) Skov, Søren Nielsen; Røpcke, Diana Mathilde; Siefert, Andrew W; Ilkjær, Christine; Tjørnild, Marcell Juan; Nygaard, Hans; Nielsen, Sten Lyager; Jensen, Morten Ølgaard Jegstrup: "New concept for quantifying two-dimensional forces acting on an implanted mitral annuloplasty ring" *3rd Iranian Cardiovascular Joint Congress, 3rd-6th of March 2015, Teheran, Iran.*

34) SN Skov, DM Røpcke, AW Siefert, C Ilkjær, MJ Tjørnild, A Yoganathan, H Nygaard, SL Nielsen, M Jensen: "New concept for quantifying two-dimensional forces acting on an implanted mitral annuloplasty ring" *25th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 12th −14th, 2015.*

35) DM Røpcke, C Ilkjær, T Hejslet, AV Sørensen, H Jensen, MOJ Jensen, VE Hjortdal, SL Nielsen: "Functional and biomechanical performance of stentless extracellular matrix tricuspid tubegraft in pigs", *25th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 12th −14th, 2015.*

36) J Grønlund, N Telinius, SN Skov, MO Jensen, VE Hjortdal: "A validation study of near infrared fluorescence imaging of lymphatic vessels in humans", *25th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 12th –14th, 2015.*

37) Sasa Grbic, Thomas Easley, Tommaso Mansi, Dominik Neumann, Eric Pierce, Morten Jensen, Charlie Bloodworth, Andrew W. Siefert, Julian Krebs, David D. Yuho, Ajit P. Yoganathan, Dorin Comaniciu: "Multi-Modal Validation Framework of Mitral Valve Geometry and Biomechanical Models", *2014 BMES Annual Meeting October 22-25, 2014, San Antonio, Texas.*

38) C. H. Bloodworth IV, E. L. Pierce, T. F. Easley, M. Toma, A. Khalighi, C-H. Lee, M. Sacks, A. W. Siefert, M. Ø. Jensen, A. P. Yoganathan: "Design of an In Vitro Simulation Pipeline for the Development of Computational Mitral Valve Modeling", *2014 BMES Annual Meeting October 22-25, 2014, San Antonio, Texas.*

39) DM Ropcke, T Hejslet, AV Sørensen, C Ilkjær, H Jensen, MOJ Jensen, SL Nielsen: "Characterization of Extracellular Matrix Tricuspid Tubegrafts with Comparison to Native Tricuspid Valves in a Porcine Model", *28th EACTS Annual Meeting, Milan, Italy 2014 11-15 October 2014.*

40) Søren N. Skov, Diana M. Røpcke, Andrew W. Siefert, Christine Ilkjær, Marcell J. Tjørnild, Ajit Yoganathan, Hans Nygaard, Sten L. Nielsen, Morten Jensen: " New Concept For Measuring The Forces In Mitral Valve Annuloplasty Rings" *32nd National Meeting at the Danish Society for Biomedical Engineering, September 17th, 2014, Braedstrup, Denmark.*

41) Madonna Lee, Andrew Siefert, Eric Pierce, Chikashi Aoki, Satoshi Takebayashi, Morten Jensen, Robert Gorman, Ajit Yoganathan, Joseph Gorman: "Mitral Annuloplasty Cyclic Suture Forces: True-sized Versus Undersized Rings", *AATS Cardiovascular Valve Symposium, Istanbul, Turkey, September 4-6 2014.*

42) Jensen MO; Siefert AW; Toma M; Gorman RC; Gorman III JH; Yoganathan AP: "Utilizing Computational and Experimental Tools in Tandem for Development and Evaluation of Mitral Valve Devices" *FDA Medical Device and Innovation Consortium Annual Meeting, Washington, DC, June 2014.*

43) SN Skov, K Telling, D Røpcke, C Ilkjær, MJ Tjørnild, H Nygaard, SL Nielsen, MØ Jensen: "Simultaneous in- and out-of-plane Mitral Valve Annular Force Measurements" *24th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 13th –15th, 2014.*

44) C Ilkjær, MO Jensen, JL Honge, ES Kragnæs, SL Nielsen: "Effect of annuloplasty ring implantation on the tricuspid valvular complex dynamics and geometry" *24th annual meeting of the Scandinavian Society for Research in Cardiothoracic Surgery, Geilo, Norway, February 13th –15th, 2014.*

45) H Jensen, MO Jensen, F Waziri, JL Hønge, E Sloth, M Fenger-Gron, SL Nielsen: "Transapical neochord implantation: Is tension of artificial chordae tendineae dependent on insertion site?", *62nd Annual Meeting of Scandinavian Association for Thoracic Surgery, Aarhus, Denmark August 22nd - 24th, 2013.*

46) Diana M. Ropcke, Sten L. Nielsen, Henrik Jensen, Morten Ø. J. Jensen, Jesper L. Hønge, Vibeke E. Hjortdal.: "Total Tricuspid Valve Reconstruction Using Porcine Extracellular Matrix: Functional and Biomechanical Aspects" *7th Biennial Congress of the Society for Heart Valve Disease and the Heart Valve Society of America*, June 25th, 2013, Venice, Italy.

47) CH Ilkjær, JL Hønge, MO Jensen, SL Nielsen: "Effect of ring annuloplasty on tricuspid valvular complex dynamics and geometry" *23rd annual meeting of the Scandinavian Society for Research in Cardiothoracic Surg. ,Saturday, Feb 9th, 2013, Geilo, Norway.*

48) H Jensen, MO Jensen, F Waziri, JL Hønge, E Sloth, M Fenger-Gron, SL Nielsen: "Transapical neochord implantation: Is tension of artificial chordae tendineae dependent on insertion site?" *23rd annual meeting of the Scandinavian Society for Research in Cardiothoracic Surg., Friday, Feb 8th, 2013, Geilo, Norway.*

49) DM Røpcke, VE Hjortdal, GE Toft, MO Jensen, SD Kristensen: "Remote ischemic preconditioning reduces thrombus formation in the rat" *23rd annual meeting of the Scandinavian Society for Research in Cardiothoracic Surg., Friday, Feb 8th, 2013, Geilo, Norway.*

50) Røpcke DM, Hjortdal VE, Toft GE, Jensen MO, Kristensen SD "Remote Ischemic Preconditioning Reduces Thrombus Formation In The Rat", *49th annual Meeting of The Society of Thoracic Surgeons, January 26-30 2013, Los Angeles, California, USA.*

51) TH Jorgensen, IJ Nielsen, JL Honge, H Nygaard, SL Nielsen, MO Jensen: "Mitral Valve Leaflet Patch Augmentation Reduces Regurgitant Orifice Area" *30th National Meeting at the Danish Society for Biomechanics, October 26th, 2012, Aarhus, Denmark.*

52) TH Jorgensen, IJ Nielsen, JL Honge, H Nygaard, SL Nielsen, MO Jensen: "Mitral Valve Leaflet Patch Augmentation Reduces Regurgitant Orifice Area" *30th National Meeting at the Danish Society for Biomedical Engineering, September 19th, 2012, Braedstrup, Denmark.*

53) MO Jensen, JA Benediktsson, JL Honge, H Nygaard, SL Nielsen: "Downsizing the Mitral Valve Annulus: Impact on Tissue Biomechanics" *30th National Meeting at the Danish Society for Biomedical Engineering, September 19th, 2012, Braedstrup, Denmark.*

**54)** Røpcke DM, Hjortdal VE, Toft GE, Jensen MO, Kristensen SD "Remote arterial preconditioning reduces thrombus formation in the rat", *4th Joint Scandinavian Conference in Cardiothoracic Surgery, Vilnius, Lithuania, August 16th-18th 2012.*

55) Henrik Jensen, Morten O. Jensen, Stefan Vind-Kezunovic, Rikke Vestergaard, Steffen Ringgaard, Morten H. Smerup, Jesper L. Hønge, J. Michael Hasenkam, Sten L. Nielsen: "Papillary Muscles Relocation Stitches – What are the Cyclic Tension Alterations Imposed on the Myocardium?" *Fourth Annual Joint Scientific Meeting of the Heart Valve Society of America and Society for Heart Valve Disease*, *April 12th, 2012, New York, NY, USA.*

56) Honge JL, Askov JB, Jensen MOJ, Hasenkam JM, Nielsen SL: "Effect of Mitral Ring Flexibility on Chordal Force balance and Mitral Annular Geometry", *Fourth Annual Joint Scientific Session of the Heart Valve Society of America and Society for Heart Valve Disease, Valves in the Heart of the Big Apple VII, April 12-14, 2012, New York, NY, USA.*

57) A Rahmani, AQ Rasmussen, B Ostli, J Vester-Petersen, JB Askov, JL Honge, RA Levine , A Hagège, SL Nielsen, H Nygaard, MO Jensen: "Mitral valve mechanics following posterior leaflet patch augmentation", *21st meeting of the Scandinavian Society for Research in Cardiothoracic Surg., Thursday, Feb 3rd, 2011, Geilo, Norway.*

58) H Jensen, MO Jensen, MH Smerup, S Ringgaard, NT Andersen, P Wierup, JM Hasenkam, SL Nielsen: "Does down-sized ring annuloplasty induce papillary muscle relocation in ischemic mitral regurgitation?" *21st meeting of the Scandinavian Society for Research in Cardiothoracic Surg., Thursday, Feb 3rd, 2011, Geilo, Norway.*

18

59) JB Askov, JL Honge, MO Jensen, H Nygaard, JM Hasenkam, SL Nielsen: "Novel Papillary Muscle Force Transducer: Tests and Results" *28th National Meeting at the Danish Society for Biomedical Engineering, September 23rd , 2010, Braedstrup, Denmark.*

60) JB Askov, JL Honge, MO Jensen, H Nygaard, JM Hasenkam, SL Nielsen: Novel Papillary Muscle Force Transducer: Initial Tests and Results. *6th World Congress on Biomechanics, Aug. 1-6, 2010, Singapore.*

61) JB Askov, JL Honge, MO Jensen, H Nygaard, JM Hasenkam, SL Nielsen: Novel Papillary Muscle Force Transducer: Initial Tests and Results. *Biomedical Engineering Society 2010 Annual Meeting, October 6-9, Austin, Texas, USA.*

62) Jensen, MO; Nielsen, JVD; Amstrup, M; Jensen, SH; Rasmussen, M: Optimization of Flow Conditions for Aortic Cannulas. *30th Scandinavian Conference in ExtraCorporal Technology, Oslo, Norway, 27th Aug, 2010.*

63) JB Askov, MO Jensen, J Honge, H Nygaard, JM Hasenkam, SL Nielsen: "New Miniature Chordal Force Transducer for Measurements In Vivo", *4th Biennial Heart Valve Biology and Tissue Engineering Meeting, Monday, March 8th, 2010, Hilton Head Island, SC, USA.*

64) Albert Hagege and Morten Jensen: "Surgical Models of Mitral Valve Prolapse", Leducq MITRAL Transatlantic Network of Excellence, Nantes, France, May 2010.

65) MOJ Jensen, H Jensen, RA Levine, AP Yoganathan, H Nygaard, SL Nielsen, JM Hasenkam: "What Forces are Transmitted from the Mitral Valve Apparatus to the Papillary Muscles In Vivo". *19th World Congress of the World Society of Cardio-Thoracic Surgeons, Buenos Aires, Argentina, November 4th, 2009.*

66) JB Askov, MO Jensen, H Nygaard, JM Hasenkam, SL Nielsen: "New Miniature Chordal Force Transducer for In Vivo Measurements" *27th National Meeting at the Danish Society for Biomedical Engineering, September 23rd , 2009, Braedstrup, Denmark.*

67) Nielsen, PF; Funder, JA; Jensen, MO; Nygaard, H: Influence of Venous Reservoir Level on Microbubbles in Cardiopulmonary Bypass, *13th European Congress on Extracorporeal Circulation Technology, June 17th-20th, 2009, Aarhus, Denmark.*

68) Morten Ø. Jensen, Henrik Jensen, Jesper B. Askov, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, Sten L. Nielsen, J. Michael Hasenkam: Flexible Mitral Valve Annuloplasty Rings Provide Superior Annular Dynamics and Force Distribution. *19th Annual Meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 5th – 7th, 2009, Geilo, Norway.*

69) Jesper B. Askov, Morten Ø. Jensen, Lyager, Hasenkam, Nygaard: Impact of Mitral Annuloplasty Ring Flexibility on 3D Geometry and Stress distribution of the Mitral Valve Annulus and Leaflets. *The Robert Levine Symposium on New Frontiers in Mitral Valve* Repair Targeting *the Natural History of Mitral Valve Regurgitation, Tuesday January 20th, 2009, Aarhus, Denmark.*

70) Morten Ø. Jensen, Henrik Jensen, Morten Smerup, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, J. Michael Hasenkam, Sten L. Nielsen: Saddle-shaped Mitral Valve Annuloplasty Rings Provide Superior Annular Force Distribution. *18th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2nd, 2008, Geilo, Norway.*

19

71) Morten Ø. Jensen, Henrik Jensen, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, Sten L. Nielsen, J. M. Hasenkam: Left Ventricular Force Balance. *26th Danish Annual Congress in Biomedical Engineering, September 17, 2008, Brædstrup, Denmark.*

72) Jensen, Henrik; Jensen, Morten Ølgaard Jegstrup; Ringgaard, Steffen; Smerup, Morten Holdgaard; Sørensen, Thomas Sangild; Wierup, Per; Hasenkam, John Michael; Nielsen, Sten Lyager: "Geometric Culprits of Papillary Muscle Displacement in Functional Ischemic Mitral Regurgitation assessed by 3D Magnetic Resonance Imaging" *18th World Conference of the World Society of Cardio-Thoracic Surgeons (WSCTS 2008), May 3rd, 2008, Kos Island, Greece,* Abstract published in Heart Surgery Forum, Vol. 11, Nr. Suppl. 1, 2008, s. 358.

73) Jensen, Morten; Jensen, Henrik; Levine, Robert; Yoganathan, Ajit; Nygaard, Hans; Nielsen, Sten Lyager; Hasenkam, J. Michael: In Vivo Force Measurement on Mitral Valve Traction Suture: Insights to Left Ventricular Force Balance. *18th World Conference of the World Society of Cardio-Thoracic Surgeons (WSCTS 2008), May 3rd, 2008, Kos Island, Greece.*

74) Jensen, Henrik; Jensen, Morten Ølgaard Jegstrup; Ringgaard, Steffen; Smerup, Morten Holdgaard; Sørensen, Thomas Sangild; Wierup, Per; Hasenkam, John Michael; Nielsen, Sten Lyager: "Geometric culprits of papillary muscle displacement in functional ischemic mitral regurgitation assessed by 3D magnetic resonance imaging" *57th Annual Meeting of the Scandinavian Society of Thoracic Surgery and the 28th Annual Meeting of Scandinavian Society of Extra Corporeal Technology, Aug 21-23, 2008, Copenhagen, Denmark.*

75) Henrik Jensen, Morten Ø. Jensen, Steffen Ringgaard, Morten H. Smerup, Thomas S. Sørensen, Per Wierup, J. Michael Hasenkam, Sten Lyager Nielsen: Geometric Culprits of Papillary Muscle Displacement in Functional Ischemic Mitral Regurgitation Assessed by 3D Magnetic Resonance Imaging. *18th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, Feb. 2008, Geilo, Norway.*

76) Morten O. Jensen, Henrik Jensen, Morten Smerup, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, J. Michael Hasenkam, Sten L. Nielsen: Saddle-shaped Mitral Valve Annuloplasty Rings Provide Superior Annular Force Distribution. *American Heart Association Scientific Sessions, Nov. 5, 2007, Orlando, FL, USA.*

77) Morten O. Jensen, Henrik Jensen, Morten Smerup, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, J. Michael Hasenkam, Sten L. Nielsen: Saddle-shaped Mitral Valve Annuloplasty Rings Improve Leaflet Coaptation Geometry. *American Heart Association Scientific Sessions, Nov. 7, 2007, Orlando, FL, USA.*

78) Morten Jensen: Force balance in the mitral valve annulus: How to interpret the function of annuloplasty devices. *25th Danish Annual Congress in Biomedical Engineering, Sept. 19th-20th, 2007, Brædstrup, Denmark.*

79) Morten Ø. Jensen, Henrik Jensen, Sten L. Nielsen, Morten Smerup, Peter Johansen, Ajit P. Yoganathan, Hans Nygaard, J. M. Hasenkam: Force Balance In The Mitral Valve Annulus: How To Interpret The Function Of Annuloplasty Devices. *Fourth Biennial Meeting of the Society for Heart Valve Disease, June 17th 2007, New York, NY, USA.*

80) Henrik Jensen, Morten Ø. Jensen, Morten Smerup, Won Yong Kim, Steffen Ringgaard, J. Michael Hasenkam, Sten Lyager Nielsen: 3d Cardiac MRI Assessment Of Posterior Papillary Muscle Displacement In Chronic Functional Ischemic Mitral Regurgitation. *Fourth Biennial Meeting of the Society for Heart Valve Disease, June 18th 2007, New York, NY, USA.*

81) M. Ø. Jensen, S. L. Nielsen, M. Smerup, P. Johansen, H. Jensen, A. P. Yoganathan, J. M. Hasenkam, H. Nygaard: New Insight into the Mitral Valve Force Balance. *Biomedical Engineering Society Annual Meeting, October 2006, Chicago, Illinois, USA.*

82) Morten Jensen, Jeff Buterbaugh, PhD:  Recent Advancements in Fluorescence Imaging. *PittCon, March 2nd, 2005, Orlando, Florida, USA.*

83) Jensen, Morten:  Using NI Vision and Motion for Automated Inspection of Medical Devices and Pharmaceutical Processes. *PittCon, March 7th 2004, Chicago, IL, USA.*

84) Morten Oelgaard Jensen: Advances in Analytical Techniques for High Throughput Screening Applications. *AOAC INTERNATIONAL Annual Meeting & Exposition, Sept. 19th–23rd, 2004, St. Louis, Missouri, USA.*

85) Yoganathan, A.P. and Jensen, M.,  Harvested Porcine Mitral Xenograft Fixation: Impact on Fluid Dynamic Performance. *4th International Symposium on Stentless Bioprostheses, May 2001, San Diego, CA,USA.*

86) M. Jensen, J. Lemmon, S. He, M. Weston, V. Gessaghi, R. Levine, A. Yoganathan: Bioprosthetic Valve Fixation: Adverse Hemodynamic Impact. *World Congress on Medical Physics and Biomedical Engineering, July 2000, Chicago, Illinois, USA.*

87) Morten O. Jensen, Ajit P. Yoganathan: Bioprosthetic Heart Valve Fixation: Adverse Hemodynamic Impact. *VIII International Symposium Cardiac Bioprostheses, Friday, November 3rd, 2000, Cancun, Mexico.*

88) He S., Lemmon J.D., Weston M.W., Jensen M.O., Levine R.A., and Yoganathan A.P.  Functional Characteristics of the Natural Mitral Valve: An In Vitro Assessment.  *Third International Symposium on Stentless Bioprostheses, May 1999, Grand Cayman Island.*

89) He S., Lemmon J.D., Weston M.W., Jensen M.O., Fontaine A.A., Levine R.A., and Yoganathan A.P.  Mechanism of Persistent Functional Mitral Regurgitation Despite Annuloplasty: In Vitro Studies.  *American Society of Echocardiography 10th Annual Scientific Sessions, June, 1999, Washington, DC, USA.*

90) He S., Lemmon J.D., Weston M.W., Jensen M.O., Yoganathan A.P., Levine R.A.:  Mechanism of Mitral Regurgitation In Patients With Annuloplasty: In Vitro Study. *American Society of Echocardiography 10th Annual Scientific Sessions, June, 1999, Washington, DC, USA.*

91) He S., Lemmon J.D., Weston M.W., Jensen M.O., Fontaine A.A., Levine R.A. and Yoganathan A.P. In Vitro Engineering Study of Mitral Regurgitation. *International Forum on Ischemic Mitral Valve Regurgitation, March 1999, Nice, France.*

**Conference Abstracts: Poster Presentations**

92) Maxwell J. Bean, David Jiang, Sam E. Stephens, Megan E. Laughlin, Hanna K. Jensen, Barry Uretsky, Lucas H. Timmins, Morten O. Jensen. "Experimental Modeling of Coronary Intervention: Towards Computational Simulation". *SB3C2019 Summer Biomechanics, Bioengineering and Biotransport Conference June 25 -28, Seven Springs, PA, USA*

93) Kaylee R. Henry, Ali Z. Al-Alawi, Md Abul Hayat, Hanna K. Jensen, Jingxian Wu, Patrick C. Bonasso, Kevin W. Sexton, and Morten O. Jensen: "Isoflurane Effect on Peripheral Venous Pressure" *SB3C2019 Summer Biomechanics, Bioengineering and Biotransport Conference June 25 -28, Seven Springs, PA, USA*

94) Megan Laughlin, Mohamed Almadi, John Moore II, Jamie Hestekin, Wei-Chiang Lin, Morten Jensen: "Characterization of a New Commercially Available Medical Gel for Phantoms" *Biomedical Engineering Society 2019 Meeting, October 16-19, Philadelphia, PA*

95) Megan Laughlin, Mason Belue, Hanna Jensen, R. Thomas Collins, Elijah Bolin, Joshua Daily, Morten Jensen: "Analysis of Blood Flow in the Pediatric Left Ventricle Using Vector Flow Imaging" *Biomedical Engineering Society 2019 Meeting, October 16-19, Philadelphia, PA*

96) Sam E. Stephens, Marinna R. Tadros, Neil B. Ingels, Jonathan F. Wenk, Morten 0. Jensen: "Bonding Mitral Valve Leaflets in The Closed Configuration for High Resolution Micro-CT Imaging" *2019 Annual Meeting of the Heart Valve Society (HVS), Apr 11 - 13, 2019, Sitges, Barcelona, Catalonia, Spain*

97) Ali AlAlawi, Kaylee Henry, Md Abul Hayat, Hanna K. Jensen, Melvin S. Dassinger, Jeffrey M. Burford, Patrick C. Bonasso, Kevin W. Sexton, Jingxian Wu, Morten O. Jensen: "Propofol affects peripheral venous tone in anesthetized patients" *16th Annual Midsouth Computational Biology & Bioinfomatics Society (MCBIOS) Conference 2019 at Mississippi State University, Starkville, MS.*

98) Collins II RT, Laughlin M, Jensen H, Lang S, Bolin E, Daily J, Jensen M: "Vector Flow Imaging for Cardiovascular Applications in Pediatric Patients and Models", *Biomedical Engineering Society 50th Annual Meeting, Thursday, October 18th, 2018, Atlanta, Georgia*

99) Preut A, Laughlin M, Jensen H, Hestekin J, Jensen M: "Novel Method for Emboli Analog Formation Towards Improved Stroke Retrieval Devices". *Biomedical Engineering Society 50th Annual Meeting, Thursday, October 18th, 2018, Atlanta, Georgia*

100)     Al-Alawi A, Hayat A, Bonasso P, Burford JM, Dassinger MS, Jensen HK, Wu J, Sexton KW, and Jensen MO: "Hydration Level Assessment with Peripheral Venous Pressure Waveform Analysis", *Biomedical Engineering Society 50th Annual Meeting, Thursday, October 18th, 2018, Atlanta, Georgia*

101)     Brazhkina O, Laughlin M, Jensen H, Haney K, Girardot M, Jensen M: "Development of a Model for Accelerated Fatigue Testing of Venous Valves". *Biomedical Engineering Society 50th Annual Meeting, Saturday, October 20th, 2018, Atlanta, Georgia*

102)     Henson J, Kim J-W, Jensen H, Jensen M: "Size, Concentration, And Time Dependent Effects of PEGylated Gold Nanoparticles on Cardiovascular Cell Viability", *Biomedical Engineering Society 50th Annual Meeting, Thursday, October 18th, 2018, Atlanta, Georgia*

103)     Bonasso PC, Sexton KW, Hayat MDA, Al-Alawi A, Wu J, Jensen HK, Jensen MO, Smith SD, Burford JM, Dassinger MS: "Venous physiology predicts anesthetic induced hypotension in infants" *American College of Surgeons, Boston, Massachusetts, October 21-25, 2018. doi: 10.1007/s10877-018-0124-5*

104)     Hayat MD, Wu J, Jensen HK, Jensen MO, Dassinger MS, Burford JM, Bonasso PC, Sexton KW: "Predicting Dehydration in Pediatric Patients with Peripheral Venous Waveforms" *15th Annual Midsouth Computational Biology & Bioinfomatics Society (MCBIOS) Conference 2018 at Mississippi State University, Starkville, MS.*

105)     Wenk JF, Jensen MO: "Finite Element Modeling of Mitral Valve Patch Augmentation and Effects on Chordal Force Distribution", *SB3C2017 Summer Biomechanics, Bioengineering and Biotransport Conference, June 22, 2017, Tucson, Arizona, USA*

106) Easson G, White M; Jensen H, Girardot M, Jensen M: "Development of an In Vitro Model for Physiological Testing Native and Prosthetic Venous Valves" *International Vein Congress, April 20-22, 2017. Miami Beach, FL*

107) Easson G; Laughlin M; Jensen H; Haney K; Girardot M; Jensen M: "New System for Evaluation of Biomechanical Properties and Performance of Glutaraldehyde Fixed Versus Fresh Venous Valves: Towards a Biomechanically Optimal Replacement Device" *2017 Annual Congress of the American College of Phlebology, Austin, TX, Nov. 2nd-5th, 2017*

108) Morten O Jensen, Henrik Jensen, Soren S Nielsen, Robert A Levine, Hans Nygaard, J M Hasenkam, Sten L Nielsen: "New Mitral Valve Annuloplasty Concept: Optimizing Annular Dynamics and Force Distribution" *American Heart Association Scientific Sessions 2016, New Orleans, LA, USA, 12 - 16 NOV., 2016* http://circ ahajournals org/content/134/Suppl_1/A15744

109) Skov SN, Ropcke DM, Tjornild MJ, Ilkjaer C, Rasmussen J, Nygaard H, Hasenkam JM, Jensen MO, Nielsen SL: "Novel Intelligent Mitral Annuloplasty Ring that Preserves the Dynamic Saddle Shaped Annulus while Fixating the Septal-lateral Dimension" *American Heart Association Scientific Sessions 2016, New Orleans, LA, USA, 12 - 16 NOV., 2016* http://circ ahajournals org/content/134/Suppl_1/A19419

110) Skov, Søren Nielsen; Røpcke, Diana Mathilde; Ilkjær, Christine; Rasmussen, Jonas; Tjørnild, Marcell Juan; Nygaard, Hans; Jensen, Morten Ølgaard Jegstrup; Nielsen, Sten Lyager: "Remodelling Forces of a Rigid Mitral Annuloplasty Ring - A Potential Risk Factor for Ring Dehiscence in Mitral Valve Repair? 2nd Annual Meeting, Heart Valve Society, March 17-19, New York, NY, United States.

111) Eric L. Pierce, Charles H. Bloodworth IV, Ajay Naran, Thomas F. Easley, Morten O. Jensen, Ajit P. Yoganathan: "Novel Micro-Computed Tomography Technique for Soft Tissue Deformation Tracking – Application to the Mitral Valve" *SB3C2015 Summer Biomechanics, Bioengineering and Biotransport Conference June 17-20, 2015, Snowbird Resort, Utah, USA.*

112) E. L. Pierce, D. D. Spragan, C. H. Bloodworth, T. Kawamura, T. Takayama, M. O. Jensen, A. W. Siefert, R. C. Gorman, J. H. Gorman, A. P. Yoganathan: "Can Optimized Annuloplasty Ring Size and Shape Mitigate Risk of Dehiscence?" *American Association of Thoracic Surgery Mitral Conclave, NY, NY, USA April 23-24 2015.*

113) Amir H. Khalighi, Andrew Drach, Fleur M. ter Huurne, Chung-Hao Lee, Charles Bloodworth, Eric L. Pierce, Morten O. Jensen, Ajit P. Yoganathan, Michael S. Sacks: "On the Characterization of Mitral Valve Geometry and Development of a Population-Averaged Model", *SB3C2015 Summer Biomechanics, Bioengineering and Biotransport Conference June 17-20, 2015, Snowbird Resort, Utah, USA.*

114) Amir H. Khalighi, Andrew Drach, Fleur M. ter Huurne, Chung-Hao Lee, Charles Bloodworth, Eric L. Pierce, Morten O. Jensen, Ajit P. Yoganathan, and Michael S. Sacks: "Multi-Scale Geometric Framework for Population-Averaging of the Mitral Valve Apparatus", 2015 BMES Frontiers in Medical Devices Conference: Innovations in Modeling and Simulation, May 18-20, 2015, Washington DC.

115)     Eric L. Pierce, Deborah M. Paul, Sarah K. Wells, Charles H. Bloodworth, Morten O. Jensen, Andrew W. Siefert, Robert C. Gorman, Joseph H. Gorman, Ajit P. Yoganathan: "Why is Annuloplasty Ring Dehiscence More Common on the Posterior Mitral Valve Annulus?" Inaugural Meeting of New International Heart Valve Society, 6-9 May, 2015, Grimaldi Forum, Monte Carlo, Monaco.

116)     A. Drach, A.H. Khalighi, C.H. Lee, M.O. Jensen, C.H. Bloodworth, A.P. Yoganathan, M.S. Sacks. "Population-averaged geometric model of mitral valve from patient-specific imaging data"*14th Annual Design of Medical Devices Conference, Minneapolis, MN, Apr 13-16, 2015.*

117)     Røpcke, Diana Mathilde; Jørgensen, Tine Hejslet; Jensen, Morten Ølgaard Jegstrup; Nielsen, Sten Lyager: "Total tricuspid valve reconstruction using porcine extracellular matrix. An in vitro characterization" *2014 Annual meeting of the Danish Society of Thoracic Surgery, Nyborg, Danmark.*

118)     S. Nielsen Skov, D. Mathilde Røpcke, A. W. Siefert, C. Ilkjær, M. Juan Tjørnild, A. Yoganathan, H. Nygaard, S. Lyager Nielsen, and M. Jensen: "New Concept for Measuring the Forces in Mitral Valve Annuloplasty Rings" *2014 BMES Annual Meeting October 22-25, 2014, San Antonio, Texas.*

119)     Jean-Pierre M. Rabbah, Eric Pierce, Qifeng Wei, Karl Thiele, Morten Jensen, Ajit P. Yoganathan: "Validated, Accurate Quantification of Mitral Regurgitation Through 3D Echocardiography Using an Automated Field Optimization Method", *American Society of Echocardiography 25th Annual Scientific Sessions, June 20-24, 2014, Portland, Oregon, USA.*

120)     Claudio Capelli, Claus Rath, Francesco Ruffini, Dario Biscarini, Francesco Migliavacca, Spyros Tzamtzis, Morten Jensen, Gaetano Burriesci, Martin Andreas, Silvia Schievano, Alfred Kocher: "Evaluation of a Novel Aortic Valve Prosthesis: Integration of Clinical Data With Experimental And Computational Tools" *7th World Congress of Biomechanics, July 6-11, 2014, Boston, Massachusetts, USA.*

121)     TH Jorgensen, IJ Nielsen, JL Honge, H Nygaard, SL Nielsen, MO Jensen: "Mitral Valve Posterior Leaflet Patch Augmentation Reduces  Regurgitant Orifice Area", *62nd Annual Meeting of Scandinavian Association for Thoracic Surgery, Aarhus, Denmark August 22nd - 24th, 2013.*

122)     Skov, Søren Nielsen; Jensen, Morten Ølgaard Jegstrup; Jensen, Henrik; Askov, Jesper Brink; Nygaard, Hans; Levine, Robert; Yoganathan, Ajit; Hasenkam, J. Michael" New Mitral Valve Annuloplasty Concept Minimize Out-of-plane Force Distribution" *31st National Meeting at the Danish Society for Biomedical Engineering, September 17th - 19th, 2013, Braedstrup, Denmark.*

123)     C Ilkjaer, JL Honge, MO Jensen, SL Nielsen: "Effect of Annuloplasty Ring Implantation on Tricuspid Valvular Complex Dynamics and Geometry – a Clinical Experiment in Pigs", *62nd Annual Meeting of Scandinavian Association for Thoracic Surgery, Aarhus, Denmark August 22nd - 24th, 2013.*

124)     ES Kragsnaes, JL Honge, JB Askov, SL Nielsen, H Nygaard, MO Jensen: "In-plane Tricuspid Valve Force Measurements: Development of Strain Gauge Instrumented Annuloplasty Ring" *Biomedical Engineering Society 2012 Annual Meeting, October 27th 2012, Georgia World Congress Center, Atlanta, Georgia, USA.*

125)     T Bechsgaard, JL Honge, H Nygaard, MO Jensen: "In Vivo Wireless Transmission of ECG and Force Data" *30th National Meeting at the Danish Society for Biomedical Engineering, September 19th, 2012, Braedstrup, Denmark.*

126)     A Rahmani, AQ Rasmussen, B Ostli, J Vester-Petersen, JB Askov, JL Honge, RA Levine, A Hagège, SL Nielsen, H Nygaard, MO Jensen: "Mitral valve mechanics following posterior leaflet patch augmentation", *5th Biennial Meeting on Heart Valve Biology and Tissue Engineering, May 18th – 20th, 2012, Myconos Island, Greece.*

127)     Jesper B. Askov, Jesper L. Honge, Morten O. Jensen, Hans Nygaard, J. Michael Hasenkam, Sten L. Nielsen: "Mitral Valve Replacement with Total Chordal Preservation Increases Force Transmission to the Papillary Muscle-Left Ventricular Wall Complex", *Society For Heart Valve Disease & Heart Valve Society of America, 6th Biennial Meeting, 25-28 June, 2011, Barcelona, Spain.*

128)     JB Askov, JL Honge, H Nygaard, JM Hasenkam, SL Nielsen, MO Jensen, "Novel Papillary Muscle Force Transducer: Tests and Results", *21st Scientific Meeting of the Scandinavian Society for Research in Cardiothoracic Surgery Geilo, Norway, February 3–5, 2011.*

129)     Henrik Jensen, Morten O. Jensen, Farhad Waziri, Jesper L. Honge, Erik Sloth, Niels T. Andersen, Per Wierup, J. Michael Hasenkam, Sten L. Nielsen, "Is Tension Alterations of Transapical Artificial Chordae Tendineae Potentially Detrimental for Mitral Repair Durability?" American College of Cardiology Scientific Sessions, April 3-5, 2011, New Orleans, Louisiana, USA.

130)     Morten Jensen, Jesper Langhoff Honge, Sten Lyager Nielsen, J. Michael Hasenkam, Robert R. Levine, Mathieu Granier, Albert Hagege: "In Vitro Simulation of Mitral Valve Prolapse and Chordal force balance", *Leducq MITRAL Transatlantic Network Meeting, Nantes, France, May 2010*

131)     J.B. Askov, J.L. Honge, M.O. Jensen, H. Nygaard, J.M. Hasenkam, S.L. Nielsen, "Novel Papillary Muscle Force Transducer: Initial Tests And Results", *University of Aarhus Graduate School of Medicine Annual PhD Day, January 16th 2009, Aarhus, Denmark.*

132)     JB Askov, MO Jensen, JL Honge, SL Nielsen, H Nygaard, JM Hasenkam: "Effect of Mitral Valve Ring Annuloplasty on in vivo Chordal Tension" *19th World Congress of the World Society of Cardio-Thoracic Surgeons November 4th, 2009, Buenos Aires, Argentina.*

133)     A Stigo, K Sivesgaard, P Johansen, M Jensen, H Nygaard, E Sloth: "Reliability of Speckle Tracking Ultrasound for assessment of myocardial strain", *Third International Conference on Mechanics of Biomaterials and Tissues, 13 – 17 December 2009, Clearwater Beach, Florida, USA.*

134)     Morten Ølgaard Jensen, Henrik Jensen, Jesper Brink Askov, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, Sten Lyager Nielsen, J. Michael Hasenkam: "Flexible Mitral Valve Annuloplasty Rings Provide Superior Annular Dynamics And Force Distribution" *Society for Heart Valve Disease, Fifth Biennial Meeting of The Society for Heart Valve Disease, June 27-30, 2009, Berlin, Germany.*

135)     S. Vind-Kezunovic, H. Jensen, A. Rutz, R. Vestergaard, S. Ringgaard, M.Ø. Jensen, M. Smerup, S.L. Nielsen, J.M. Hasenkam: Does papillary muscle relocation surgery affect regional wall motion? *19th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2009, Geilo, Norway.*

136)     Askov, J.B., Jensen, M.O., Nielsen, S.L., Nygaard, H., Hasenkam, J.M.: New Miniature Transducers for in vivo Chordae Tendineae Force Measurements. *University of Aarhus Graduate School of Medicine Annual PhD Day, January 16th 2009, Aarhus, Denmark.*

25

137)     A. Stigo, K. Sivesgaard, M. Ø. Jensen, H. Nygaard, E. Sloth: Reliability of Speckle Tracking and Doppler Tissue Velocity Imaging for Assessment of Myocardial Strain. *19th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2009, Geilo, Norway.*

138)     J.B. Askov, M.O. Jensen, S.L. Nielsen, H. Nygaard, J.M. Hasenkam:  New Miniature Transducers for In Vivo Chordae Tendineae Force Measurements.  *19th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2009, Geilo, Norway.*

139)     E Hansen, JB Askov, H Jensen, MØ Jensen, JA Funder, JM Hasenkam, SL Nielsen: The impact of complete and partial mitral ring annuloplasty on mitral and aortic annular dynamics and interactions. *19th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, Feb. 2009, Geilo, Norway.*

140)     Henrik Jensen, Morten Ø Jensen, Morten H Smerup, Stefan Vind-Kezunovic, Steffen Ringgaard, Rikke Vestergaard, Per Wierup, J Michael Hasenkam, Sten L Nielsen: Impact of Papillary Muscle Relocation as Adjunct Procedure to Mitral Ring Annuloplasty in Functional Ischemic Mitral Regurgitation. *American Heart Association Scientific Sessions, November 10, 2008, New Orleans, Louisiana, USA.*

141)     Morten O. Jensen, Peter Johansen, Hans Nygaard: Development of an Implantable Heart Valve Force Transducer. *ASME 2008 Summer Bioengineering Conference (SBC2008), June 25-29, Marriott Resort, Marco Island, Florida, USA.*

142)     M. Ø. Jensen, H. Jensen, S. Lyager Nielsen, M. Smerup, P. Johansen, A. P. Yoganathan, H. Nygaard, J. M. Hasenkam: Force Balance in the Mitral Valve Annulus: New Results from Novel Modalities and Measurement Techniques. *17th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2007, Geilo, Norway.*

143)     H. Jensen, M. Smerup, M. Jensen, M. Bjerre, J. D. Andersen, E. Sloth, W.Yong Kim, S. Ringgaard, J. M. Hasenkam, S. Lyager Nielsen: Papillary muscle relocation in addition to down-sized ring annuloplasty improves mitral valve coaptation geometry in chronic functional ischemic mitral valve regurgitation. *17th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2007, Geilo, Norway.*

144)     Morten O. Jensen, Henrik Jensen, Morten Smerup, Robert A. Levine, Ajit P. Yoganathan, Hans Nygaard, J.Michael Hasenkam, Sten L. Nielsen: Saddle-shaped Mitral Valve Annuloplasty Rings Improve Leaflet Coaptation Geometry. *American Heart Association Scientific Sessions, Nov. 7th, 2007, Orlando, Florida, USA.*

145)     MO Jensen, H Jensen,  SL Nielsen, M Smerup, P Johansen, AP Yoganathan, H Nygaard, JM Hasenkam: Force Balance in the Mitral Valve Annulus: New Results from Novel Modalities and Measurement Techniques. *17th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2007, Geilo, Norway.*

146)     M. Ø. Jensen, S. L. Nielsen, M. Smerup, P. Johansen, H. Jensen, A. P. Yoganathan, J. M. Hasenkam, H. Nygaard: Stress Distribution and 3D Geometry in Mitral Valve Annuloplasty Rings: Ring Selection Implications. *Advances in Innovative Technologies and Tissue Engineering For the Treatment of Heart Valve Disease, 10th Annual Meeting February, 2006, Hilton Head, South Carolina, USA.*

147)     M. Ø. Jensen, S. L. Nielsen, M. Smerup, P. Johansen, H. Jensen, A. P. Yoganathan, J. M. Hasenkam, H. Nygaard: New Insight into the Mitral Valve Force Balance. *55th Annual Meeting of the Scandinavian Association for Thoracic Surgery and the 26th Annual Meeting of the Scandinavian Society for Extracorporeal Technology, August 2006, Reykjavík, Iceland.*

148)     M. Ø. Jensen, S. L. Nielsen, M. Smerup, P. Johansen, H. Jensen, A. P. Yoganathan, J. M. Hasenkam, H. Nygaard: 3D Geometry and Stress Distribution in Mitral Valve Annuloplasty Rings. *16th annual meeting of The Scandinavian Society for Research in Cardio Thoracic Surgery, February 2006, Geilo, Norway.*

149)     MØ Jensen, SL Nielsen, M Smerup,  P Johansen, AP Yoganathan, JM Hasenkam, H Nygaard:  The Effect of Mitral Annuloplasty Rings on Mitral Valve 3D Geometry and Stress Distribution.  *University of Aarhus Graduate School of Medicine Annual PhD Day, January 16th 2006, Aarhus, Denmark.*


**Seminars / Invited Guest Lecturer & Speaker**

150)     *Invited  Speaker  /  Discussant  in  the  Mitral  Valve session  titled Functional  Mitral Regurgitation: The Ongoing Controversy. Title of talk "Biomechanical Aspects of Functional Mitral Regurgitation",  the Heart Valve Society Annual Scientific Meeting, Sitges, Spain, April 12th, 2019*

151)     Collins RT, Laughlin M, Lang S, Bolin E, Daily J, Jensen H, Jensen M: "Vector Flow Imaging for Surgical Decision-Making in Pediatric Cardiology" *Arkansas Exercise and Nutrition Research Symposium: The Science of Diet and Exercise 2nd Annual Center for Human Nutrition Research Symposium. Feb 22, 2019.*

152)     Invited speaker at the Fayetteville, Arkansas Rotary Club: "Cardiovascular Disease and Research in Arkansas", Fayetteville, Arkansas, February 18th, 2016.

153)     Invited keynote speaker at the Sixth Nanotechnology for Health Care Conference "Nanoscale Materials and Sensors in Cardiovascular Medicine", Winthrop Rockefeller Institute, Morrilton, Arkansas, December 2nd, 2015.

154)     Invited guest lecturer at the National Center for Toxicological Research "A Team of Hearts, Jensen Cardiovascular Research; the Past, the Present and the Future", November 19 h, 2015.

155)     Invited guest lecturer at the Georgia Institute of Technology Biomedical Engineering BMED 6784 Cardiovascular Biomechanics, April 2nd, 2015.

156)     Invited seminar speaker at the University of Texas, Austin ICES Center for Cardiovascular Simulation: "Utilizing Computational and Experimental Tools in Tandem for Development and Evaluation of Cardiovascular Devices" October 27th, 2014.

157)     Invited Panelist at the NIH "Broadening Experiences in Scientific Training" (BEST) Program. Emory University and the Georgia Institute of Technology. July 23rd, 2014.

158)     Invited Speaker at the Department of Engineering, Cambridge University: "The Left Heart Tug of War: Engineering and Medicine Joining Forces, January 21st, 2013, Cambridge, UK.

159)     Invited Speaker at the Department of Bioengineering, Imperial College London: "The Left Heart Tug of War: Engineering and Medicine Joining Forces, December 10th, 2012, London, UK.

160)  Invited Speaker at Imaging Sciences & Biomedical Engineering, Kings College London / St. Thomas Hospital: "The Left Heart Tug of War: Engineering and Medicine Joining Forces, July 31st, 2012, London, UK.

161)  Invited Speaker at the Institute of Biomedical Engineering, University of Oxford: "The Left Heart Tug of War: Engineering and Medicine Joining Forces, February 29th, 2012, Oxford, UK.

162)  Invited Speaker at the Danish Biomechanical Society: "Biomechanical Approaches in Mapping the Left Heart Force Balance", DBS Annual Meeting, October 14th, 2011, Odense, Denmark.

163)  BioPeople Innovation Tour 2011: "Requirements for Design, Function, Materials, and Communication", Invited Speaker for Cluster of Health and Life Sciences companies (Novo Nordisk, Delta, Coloplast etc.) Nov. 29th, 2011.

164)  Invited Speaker at the Danish Engineering Foundation: "Coupling between Research and Industry: Why, How?" Health Technology Potential Workshop, Viborg, Denmark, September 27th, 2011.

165)  2011 Biomedical Engineering Invited Guest Presentation: "The Left Heart Tug of War: Engineering and Medicine Joining Forces", Auspices at the Center for Innovative Cardiovascular Technologies, Atlanta, Georgia, July 28th, 2011.

166)  Morten Jensen: "Experimental Heart Surgery in Denmark", Division of Adult Cardiothoracic Surgery and Cardiac Biomechanics, University of California, San Francisco, CA, USA, August 2nd, 2011.

167)  Morten Jensen: "Experimental Heart Surgery in Denmark", Department of Biomedical Engineering, University of Oulu, Oulu, Finland, August 10th, 2011.

168)  Morten Ø. Jensen: "Engineering in Experimental Heart Surgery", Danish Institute for Study Abroad (DIS, Copenhagen), September 2009.

169)  Morten Ø. Jensen: "Repairing the Heart", The Danish Society of Engineers, (Aarhus, Denmark), October 20th, 2009.

170)  Morten Ø. Jensen: "Repairing the Heart", 19th Danish Biomedical Engineering Society Annual Conference, Denmark September 22nd – 24th, 2009.

171)  Morten Ø. Jensen: "Repairing the Heart", iNANO: The interdisciplinary nanoscience center at Aarhus University, March 10th, 2009.

172)  Guest Lecturer: "Engineering in Experimental Heart Surgery", Technical University of Denmark (DTU, Copenhagen), September 2008.

173)  Guest Lecturer: "Engineering in Experimental Heart Surgery", The Danish Society of Engineers
(Copenhagen), September 2008.

174)  Jensen, M. O: "Mitral Valve Biomechanics and Fluid Dynamics", Department of Cardiology, April 2008, Aarhus University Hospital, Skejby, Aarhus, Denmark.

175)  Jensen, M. O. J., Bering, J., "Vision Analysis: Techniques and Applications", Virtual Instrumentation Seminar,  Engineering College of Aarhus, Denmark, Dec. 6th, 2006.

176)     Jensen, M. O. J.: "Image Acquisition and Analysis", Virtual Instrumentation Seminar, Engineering College of Aarhus, Denmark, April 1st, 2006.

177)     Virtual Bioinstrumentation and Industry Discussion Panelist Partnership for Educational Bioengineering Laboratories (PEBEL), Lansdowne, VA, June 4-6, 2004.

178)     "LabVIEW Control Design and Simulation", NI  Symposium, Cape Town, South Africa, Nov. 24th 2004.

179)     Jensen, Morten: "Microscope Control with LabVIEW and IMAQ Vision" National Instruments Scientific Imaging Symposium, Boston, MA, November 13, 2003.

**Public Media Appearances:**
-   Alliance-recruited researchers doing COVID-19 work in Arkansas, talkbusiness.net, April 30th, 2020
-   UA researchers customize 'aerosol boxes' to protect workers at Washington Regional, www.nwahomepage.com (KNWA/Fox24), newsbreak.com, Aerosol boxes created to protect clinicians from COVID-19, April 17th, 2020
-   Researchers Customize 'Aerosol Boxes' for Washington Regional, news.uark.edu, researchfrontiers.uark.edu, April 17th, 2020
-   NIH Supports Engineering Researchers to Improve Heart Procedures and Surgeries, news.uark.edu, Jan. 24, 2020
-   "Vector Flow Imaging Helps Visualize Blood Flow in Pediatric Hearts", Week in BioE (May 31, 2019), Penn Bioengineering Blog
-   "Researchers Test New Imaging Method for First Time on Human Patients" - Article news story on radiologybusiness.com, www.HealthDataManagement.com, news.uark.edu, www.dotmed.com, www.auntminnie.com  etc.
-    "American Heart Association Heart Hero" – AHA websites, University of Arkansas Websites, November 1st, 2018,
-   "U of A Student Named as 2018 Barry M. Goldwater Scholar", news uark edu April 17th, 2018
-    "UA professors aid medical field", Democrat Gazette front page of Business Section and www.arkansasonline.com
-   "New Biomedical Company Helps Train Clinicians and Test Medical Equipment", news uark edu April 16th, 2018.
-   "UA researchers form new medical testing venture, receive help from Fort Smith company" talkbusiness net, April 16th, 2018. As of April 19th, 2018: 325 views and 56 shares.
-   "Two Biomedical Engineering Faculty Receive Grants from the American Heart Association" news.uark.edu April 5th, 2018
-   "Increasing Numbers of Engineering Students Take Advantage of Semester Study Abroad Opportunities" news.uark.edu  June 7th, 2017
-   "Brazilian Students and Biomedical Engineering Professors Collaborate on Summer Research". news uark edu August 3rd, 2016
-   "Happy, Healthy Heart Advice", KNWA-TV and Fox 24 News, February 10th, 2016
-   "American Heart Awareness Month Heart Health Advice", www.nwahomepage.com, February 10th, 2016
-   "Healthy Heart Tips for Valentine's Day", www.publicnow.com, February 10th, 2016
-   "Healthy Heart Tips for Valentine's Day", news.uark.edu, February 9th, 2016
-   "Alliance recruits 2 more scholars" Front page article of the Business Section of Northwest Arkansas Democrat Gazette and www.arkansasonline.com, Arkansas, August 14th, 2015
-   "Research Alliance Brings Two Bright Minds To Arkansas" UALR Public Radio, News & Culture for Arkansas, August 13th, 2015
-   "ARA Scholars Program Introduces Newest Researchers" Arkansas Business Online, August 13th, 2015

- "Research Alliance Brings Two Bright Minds To State" *Talk Business & Politics, August 13th, 2015*
- "Arkansas Research Alliance Scholars Join University of Arkansas Faculty" *news.uark.edu, August 13th, 2015*
- "ARA Scholars announced" *Article, thecabin.net, August 13th, 2015*
- "ARA Scholars Program Strengthened by New Research Leaders: Scholars drive innovation through research and discovery" *Article, aralliance.org, August 13th, 2015*
- "2 professors joining UA through alliance grant" *Article, thv11.com, August 13th, 2015*
- "Computer heart can save pigs" *Machine Magazine (online), Denmark, April 10th, 2013*
- "Computer model can speed up heart research" *Natural and Technical Science (online), Aarhus University, April 10th, 2013*
- "Danske ingeniørstuderende og forskere bag succesfuld teknik til hjerteoperationer", *Interview, ing.dk, July 5th, 2012*
- "Danske ingeniører bag banebrydende hjerteteknologi" *Interview, teknikogviden.dk, June 8th, 2012*
- "Danske ingeniører bag banebrydende hjerteteknologi" *Altinget / Forskning og Innovation, June 6th, 2012*
- "Danske ingeniører bag banebrydende hjerteteknologi" *Interview, iha.dk, June 6th, 2012*
- "New Danish Invention Limits Turbulence in the Aorta" *Article, ing.dk, December 16th, 2011*
- "Engineering College files for patent on heart canula" *Interview, iha.dk, December 15th, 2011*
- "Aarhus-delegation til international konference om sundhedsteknologi" *Interview, iha.dk, June 14th, 2011*
- "Helping Heart Patients" *GENIUS Issue #3, November 2010*
- "International Collaboration and Student Exchange Agreement Established" *iha.dk, 10th September 2010*
- "Researchers use Pigs" *TV2 Østjylland News, 22nd February 2010*
- "Århus-ingeniører hjælper hjertepatienter" ("Aarhus-Engineers help heart patients") *holme-net.dk, nyheder.tdconline.dk, nyhederne.org, news.dk, jp.dk, iha.dk 31st August 2009*
- "Engineers Strengthen Weak Hearts" *Århus Stiftstidende, 6th July 2009*
- "Århus-studerende vinder pris for hjerteteknologi" *Jyllandsposten, 6th July 2009*
- "Big price to Århus-students for landmark heart technology" *presswire.dk, 6th July 2009*
- "Ingeniørstuderende fra Århus hjælper hjerter" *Lokalavisen/Århus, 6th July 2009*
- "Stor pris til Århus-studerende for skelsættende hjerteteknologi" *iha.dk, 6th July 2009*
- "Heart Valve Research" *NEXT no. 6 Conference, Innovation Lab, Aarhus, Denmark, April 2-3 2009*
- "Ny hjertekanyle reducerer blodpropper" *Ingeniøren, Feb 27th, 2009*
- "Ny hjertekanyle giver færre blodpropper" *www.hjerteforeningen.dk, Feb 2nd, 2009*
- "To unge får pris for kanyle" *Århus Stiftstidende, Feb. 1st, 2009, Pg. 16*
- "Danish discovery could help cardiac patients" *Biotech Scandinavia, www idg se, Dec. 1st, 2009*
- "Studerende får pris for hjertekanyle" *www.tv2oj.dk, January 27th, 2009*
- "Maskiningeniørstuderende udvikler hjertekanyle" *www jernindustri dk , January 27th, 2009*
- "Studerende får pris for kanyle" *www.stiften.dk, January 27th, 2009*
- "Studerende bag banebrydende hjerteteknologi" *www.jp.dk, January 27th, 2009*
- "Ny dansk hjertekanyle skal nedsætte risiko for blodpropper" *www dagensmedicin dk, January 27th 2009*
- "Studerende vandt pris for banebrydende hjertekanyle" *www.iha.dk, January 27th, 2009*
- "Studerende opfinder banebrydende hjertekanyle" *www iha dk, January 22nd 2009*
- "Verdenskendt hjertemediciner besøger Ingeniørhøjskolen" *www.iha.dk, January 16th 2009*
- "Ingeniører og læger udvikler hjertering" *Annual Report, Engineering College of Aarhus, 2008, p 16*
- "Studerende bag banebrydende hjerteteknologi" *Jyllandsposten s. 7, Urban s. 8, January 28th, 2008*
- "The Danish Society of Engineers annual Honorary Award of Excellence, May 2008" *Featured in Århus Stiftstidende (May 7th  2008 p. 22), TV2 Østjylland, Aarhus Universitet (www.au.dk), Dagens Medicin,   www ida dk, Aarhus University Hospital (www sundhed dk), Engineering*

*College of Aarhus (www.iha.dk), Nordjyske Stiftstidende (May 7th  2008 p. 12), Fyns Amts Avis, Fredericia Dagblad, Vejle Amts Folkeblad, Horsens Folkeblad, Stiften.dk, The Danish Heart Foundation (www.hjerteforeningen.dk)*

- "Help to Heart Patients" *Frederiksborg Amts Newspaper, October 17th 2008, 1st section, pg. 5*
- "New Research Helps Heart Patients" *Ritzaus Bureau October 16th, 2008'*
- "Breakthrough in Heart Valve Defect Surgery Research" *October 16th, 2008, TV2 News*
- "Heart valve patients can look forward to better treatment" *October 2008, Denmarks Radio News*
- "New research can improve the treatment for patients with leaking mitral heart valves" *October 2008, www.sundhed.dk*
- "New Research Helps Heart Patients" *October 18th 2008, Aarhus Stiftstidende, section 1, page 5*
- "Ny forskning til hjælp for hjertepatienter" *October 20th 2008, Nordjyske Stiftstidende, page 26*
- "Intelligent hjertering med lang levetid" *Hjertenyt, (Danish Heart Association Magazine), Nov. '08 pg. 12-13*
- "Ny Intelligent Hjertering" *P4 Danmarks Radio, Radioavisen, 3:00PM, December 15th, 2008*
- "Aarhus Engineer and Skejby Professor Invents New Heart Ring" *www.jp.dk, December 15th, 2008*
- "Engineers & Medical Doctors Invents Intelligent Heart Ring" *www.iha.dk, December 15th, 2008*
- "Engineers & Medical Doctors Invents Intelligent Heart Ring" *www.dr.dk, December 15th, 2008*
- "Ingeniører og læger udvikler intelligent hjertering" Radio Interview (in Danish): *http://jp.dk/radio/, Length: 5min 45sec., December 15th, 2008*
- "Flexible Rings Improves Lives for Heart Patients" *Aarhus Stiftstidende, Friday November 28th, 2008, p. 21*
- "Mitral Valve Force Balance: The Left Ventricular Tug of War" Publication of PhD defense, *Jyllandsposten, Friday November 28th, 2008, p. 20*
- "Den intelligente hjertering på størrelse med en køkkenelastik" *24 Timer, December 16th, 2008, pg. 22*
- "Perspectives in Collaboration between Doctors and Engineers, July 2006"  *Featured in TV2 News, Jyllandsposten, Politiken, Hjertenyt, (Danish Heart Association), Urban Newspaper, IHA News, etc.*
- "Eyes for Machines" *Interview in J&M/Industry-Technique, Week 32, 2003, page 30*

## Academic Courses Taught and Developed
- Cardiovascular Biomechanics (graduate level)
- Blood Pressure and Flow Measurement (PhD Level, including course development)
- Hemodynamics (BS, MS, and PhD Level, including course development)
- Biofluids (BS, MS, and PhD Level, including course development)
- Cardiovascular Modelling (MS, and PhD Level, including course development)
- Biomechanics (BS and MS Level, including course development)
- Physics (BS Level)
- Medical Instrumentation (BS Level)
- Medical Research and Presentation Techniques (BS and MS Level, including course development)

## Industry Customer Education Courses Taught and Developed
- Advanced Graphical Programming in LabVIEW
- Virtual Instrumentation, Data Acquisition (DAQ)
- Signal Conditioning
- Machine Vision & Image Processing (including course development)
- Motion Control
- System Identification and Simulation (including course development)
- Control Design (including course development)
- LabVIEW TestStand

**Professional Society Memberships**
- Biomedical Engineering Society (BMES)
- The Danish Heart Foundation
- The Danish Society of Engineers (IDA)
- American Heart Association (AHA)
- Institute of Electrical and Electronics Engineers (IEEE)
- Engineering in Medicine and Biology Society (EMBS)
- U S Association for Computational Mechanics (USACM)
- Danish Society for Biomedical Engineering (DMTS)
- Cardiothoracic Surgery Network (CTSNet)
- Danish Cardiovascular Research Academy (DaCRA)
- The Society for Heart Valve Disease (SHVD)
- The Scandinavian Society for Research in Cardiothoracic Surgery (SSRCTS)
- International Federation for Medical and Biological Engineering (IFMBE) - *affiliated*
- European Alliance for Medical and Biological Engineering & Science (EAMBES) - *affiliated*

# Attachment B



**OCEAN TOMO**®
INTELLECTUAL CAPITAL EQUITY®

# MICHAEL K. MILANI
# CURRICULUM VITAE

**Michael K. Milani** is a Managing Director in the Expert Testimony practice of Ocean Tomo. Ocean Tomo assists clients with the monetization of intellectual property (IP) through service offerings such as expert testimony, valuation, strategy, investments and transactions. He combines close to 25 years of litigation experience with 6 years of corporate strategy expertise, and has been identified by IAM as one of the world's leading IP strategists.

Mr. Milani's litigation experience covers all types of IP matters, as well as other types of complex commercial litigation. He has testified in matters pending in Federal Court, State Court, the Patent Trial and Appeals Board (PTAB) and Alternative Dispute Resolution (ADR) proceedings, offering opinions relating economic damages, commercial success and irreparable harm. Mr. Milani has also testified at the International Trade Commission (ITC), where he has offered opinions relating to domestic industry, remedy, bond, public interest and commercial success.

All combined, Mr. Milani has worked on over 200 assignments, consulting clients in all phases of the litigation process. In addition to his litigation related work, Mr. Milani provides IP related transaction, valuation, and management advice. He also has experience performing intellectual property, business, and product line valuations, inside and outside of litigation.

Mr. Milani's professional experience covers a wide range of industries including consumer products and electronics, medical equipment and devices, pharmaceuticals, semiconductors, computer networking equipment, cellular technologies, avionics, retail security, industrial/building products, lighting products, automotive products and carpeting/flooring products, among others.

Prior to joining Ocean Tomo, Mr. Milani was a Senior Manager with a multi-national consulting firm. In connection with that experience, Mr. Milani spent more than 6 years developing comprehensive business strategies for a wide variety of companies.

In addition to his professional experience, Mr. Milani has served as an Adjunct Professor, spending several years teaching both graduate level business and law school classes related to intellectual property management and monetization. Mr. Milani has also spoken on similar topics at a number of additional law school and business programs, including Northwestern University, University of Notre Dame, New York University, the University of Michigan and the University of Illinois, further reflecting his affinity for teaching. In addition to his teaching and speaking experience, Mr. Milani has also authored several publications which discuss financial, accounting, business, and/or legal issues relating to the work he performs.

Mr. Milani holds a Bachelor of Science degree in Finance from the University of Illinois and a Masters in Business Administration from Northwestern University with concentrations in Finance, Marketing and Strategy. He is also a Certified Licensing Professional and has served as a member of the recertification committee.

| | |
|---|---|
| **EDUCATION/ CERTIFICATIONS** | Northwestern University Kellogg Graduate School of Management.  M.B.A with concentrations in Finance, Marketing and Strategy. |
| | University of Illinois College of Business. B.S. with concentration in Finance.  Graduation with honors. |
| | Certified Licensing Professional (CLP), Licensing Executives Society, Certificate No. 2045 |
| **EXPERIENCE** | Managing Director, Ocean Tomo<br>2007 to present |
| | Director, Ocean Tomo<br>2004 to 2006 |
| | Sr. Manager, BearingPoint (formerly KPMG Consulting)<br>2002 to 2004 |
| | Sr. Manager, Arthur Andersen Business Consulting<br>2001 to 2002 |
| | Manager, Arthur Andersen Business Consulting<br>1998 to 2001 |
| | Associate, IPC Group<br>1994 to 1998 |
| | Staff Consultant, IPC Group<br>1990-1994 |
| **MEMBERSHIPS/ AFFILIATIONS** | Member of the Intellectual Property Owners Association<br>Member of the Licensing Executives Society<br>Member Certified Licensing Professional Re-Certification Committee<br>Associate Member of the American Bar Association: IP Law Section<br>Member of the Board of Editors for Patent Strategy & Management (past)<br>University of Illinois Business Consulting Mentorship Program (past)<br>Chicago-Kent College of Law, Adjunct Professor, IP Financial Markets and Legal Principals (past)<br>Illinois Institute of Technology, Adjunct Professor, Maximizing IP Value (past) |
| **SPEAKING ENGAGEMENTS / PUBLICATIONS** | "Section 337 Exclusion Orders for New Technology and Mock Hearing on Public Interest for Infringing Biologic Product," Practitioners' Think-Tank on ITC Litigation & Enforcement, June 28, 2019. |
| | "Choosing the Right Expert and Demonstration of Expert Testimony," Practicing Law Institute, November 14, 2018. |

**SPEAKING ENGAGEMENTS / PUBLICATIONS Continued…**

"Discussion of the Value Associated with Pharmaceutical Incentives," Global Intellectual Property Committee Meeting, Pharmaceutical Manufacturers and Researchers of America, October 30, 2017.

"Patent Value in Litigation: U.S. - China IP Cooperation Dialogue," Global Intellectual Property Center, U.S. Chamber of Commerce, September 18, 2017.

"The Expert Relationship," Notre Dame Law School Trail Advocacy Program, August 2017.

"Legal and Economic Considerations Associated with Litigating at the ITC," Licensing Executives Society 2017 Spring Meeting, May 2017.

"Valuation of Trade Secrets," AIPLA Trade Secret Law Summit, March 3, 2017.

"Valuing Trade Secrets Under The Defend Trade Secrets Act," 2017 AIPLA Trade Secret Law Summit, March 2-3, 2017.

"IP Valuation and Patent Damages," New York University Law School, April 18, 2016.

"Money Talks: Making Early and Well-Informed Dispute Resolution Decisions Using Damages Valuation Models," GSU Corporate IP Institute, October 28, 2015.

"Additional Guidance from the CAFC on Apportionment," LES Insights, Feature Article for the Week of October 19, 2015.

"Additional Guidance from the CAFC on Reasonable Royalty Damages," LES Insights, Feature Article for the Week of August 17, 2015.

"Additional Guidance from the CAFC on Territorial Restrictions and the Overall Reasonableness of Damage Claims." LES Insights, Feature Article for the Week of July 27, 2015.

"Determining Litigation Royalty Rates for Standard Essential Patents," Licensing Executives Society 2015 Spring Meeting, May 2015.

"Lump Sum Damages Award Relates to Products Not Tried by The Jury," LES Insights, September 2011.

"Hot Topics in Patent Damages," Boston Bar Association, November 15, 2010.

"IP Value and Monetization," Northwestern University Law School, January 15, 2010.

"Lucent v. Gateway: An Overview of the CAFC's Views on Patent Damages," Patent Strategy and Management, December 2009.

**SPEAKING ENGAGEMENTS / PUBLICATIONS Continued…**

"Damage Calculations Post eBay: The Economic Considerations," Patent Strategy and Management, July 2009.

"Bait and Switch: From the Showroom to the Courtroom," Patent Strategy and Management, October 2008.

"Introduction to IP Financial Markets and Legal Principals," Chicago-Kent College of Law, August 2008.

"The Securities Act of 1933, Assessing and Managing IP Liability," Patent Strategy and Management, February 2008.

"Derivative Applications for Patent License Agreements," Patent Strategy and Management, September 2007.

"Benefits of Proactive Damages Planning," Drinker Biddle Gardner Carton, IP Law Practice, June 27, 2007.

"IP Valuation," Corporate Mergers and Acquisitions Graduate Studies Program, The University of Illinois at Urbana Champaign, April 2007.

"Determinants of Patent Value in U.S. Litigation- Part One," Patent Strategy and Management, April 2007.

"Determinants of Patent Value in U.S. Litigation- Part Two," Patent Strategy and Management, March 2007.

"Intellex v. Cranbrooke – Damages Testimony, Presentation and Discussion," Notre Dame Law School Trail Advocacy Program, November 2006.

"What Patent Lawyers Can Learn From Trademark Law: The New Use of Surveys in Patent Litigation," IPL Newsletter, Spring 2006.

"Surveys in Patent Infringement Litigation: The Next Frontier," Patent Strategy and Management, May 2006.

"Intellex v. Cranbrooke – Damages Testimony, Presentation and Discussion," Notre Dame Law School Trail Advocacy Program, March 2006.

"Web Based Patent Marking – A Better Mousetrap," Patent Strategy and Management, February 2006.

"Intellectual Capital Merchant Banking," The University of Michigan-College of Business, September 2005.

"The Emergence of IP Finance," Patent Strategy and Management, July 2005.

"Enabling IP Securitization by Improving Cash Flow Predictability," Patent Strategy and Management, April 2005.

4

| | |
|---|---|
| **SPEAKING ENGAGEMENTS / PUBLICATIONS Continued…** | "Federal Circuit Damages Decision Emphasizes the Importance of Sound Economic Models," IP Review, June 2004.<br><br>"The IP Merchant Banking Model," The OSBI Consulting Group, the University of Illinois at Urbana Champaign, May 2004.<br><br>"Dealing with Intellectual Property in Business Combinations," IP Strategies Report, January 2004. |
| **EXPERT ASSIGNMENTS AND TESTIMONY (Retained on behalf of underlined party)** | <u>Mohawk Industries, Inc.</u> and Shaw Industries, Inc. v. Interface, Inc.<br>Civil Action Number: 4:07-CV-212<br>United States District Court, Northern District of Georgia, Rome Division<br>Expert Report and Deposition Testimony<br>Claim(s): Patent False Marking<br>Filed: November 6, 2007<br><br><u>Lewis J. Borsellino, and I.M. Acquisitions, L.L.C.</u> v. Gerald D. Putman, Marrgwen Townsend, and Chicago Trading & Arbitrage, L.L.C.,<br>Civil Action Number: 00 CH 13958<br>Circuit Court of Cook County<br>Expert Report and Deposition Testimony<br>Claim(s): Fraud, Breach of Contract<br>Filed: December 2, 2011<br><br><u>Se-Kure Controls, Inc.</u> v. Pop Displays, USA, LLC, POP Displays, LLC, POP Displays, Inc., Diam USA, Inc., and Diam International, Inc.<br>Civil Action Number: 1:06-cv-4857<br>United States District Court, Northern District of Illinois, Eastern Division<br>Expert Report<br>Claim(s): Patent Infringement<br>Filed: September 7, 2006<br><br>In the Matter of Certain Short Wavelength Light Emitting Diodes, Laser Diodes and Projects Containing Same, on behalf of <u>Respondents Motorola Solutions, Inc. and Panasonic Corporation</u><br>Investigation No. 337-TA-640<br>United States International Trade Commission<br>Filed: February 19, 2008<br><br><u>Semiconductor Insights Inc.</u> v. Thunderbird Technologies, Inc.<br>AAA Case Number: 50-117-T-00050-09<br>American Arbitration Association<br>Claim(s): Breach of Contract<br><br><u>Sandra K. Zimnicki</u> v. Cinmar, L.P. d/b/a Frontgate, Menard, Inc., Neo-Neon International LTD., and Seasonal Concepts, Inc.<br>Civil Action Number: 1:06-cv-4879<br>United States District Court, Northern District of Illinois, Eastern Division<br>Expert Report<br>Claim(s): Copyright Infringement<br>Filed: September 8, 2006 |

| | |
|---|---|
| **EXPERT ASSIGNMENTS AND TESTIMONY** Continued… **(Retained on behalf of underlined party)** | Affinity Labs of Texas, LLC v. <u>JVC Americas Corp. and Kenwood USA Corporation</u><br>Civil Action Number: 9:08-CV-00171<br>United States District Court, Eastern District of Texas, Lufkin Division<br>Expert Report and Deposition Testimony<br>Claim(s): Patent Infringement<br>Filed: August 29, 2008 |

Inter-Ego Systems, Inc. d/b/a <u>Pinnacle Speakers</u> v. DBL Distributing LLC.
AAA Case Number: 50 133T00316 06
American Arbitration Association
Expert Report and Hearing Testimony
Claim(s): Breach of Contract, Copyright Infringement

Precision Dynamics Corp. v. <u>The Standard Register Co.</u>
Civil Action Number: 2:09-cv-03555
United States District Court for the Central District of California
Claim(s): Patent Infringement
Filed: May 19, 2009

Lighting Ballast Control LLC. v. <u>Universal Lighting Technologies, Inc.</u>
Civil Action Number: 7:09-cv-00029
United States District Court, Northern District of Texas, Wichita Falls
Expert Report and Trial Testimony
Claim(s): Patent Infringement
Filed: February 4, 2009

Lantiq Deutschland GMBH v. <u>Ralink Technology Corporation</u>
Civil Action Number: 5:11-cv-00234
United States District Court for the Northern District of California
Claim(s): Patent Infringement
Filed: January 14, 2011

<u>Ralink Technology Corp.</u> v. Lantiq Deutschland GmbH
Civil Action Number: 11-cv-01549
United States District Court for the Northern District of California
Claim(s): Patent Infringement
Filed: March 30, 2011

XY, LLC v. Matthias J.G. Ottenberg, Propel Labs Inc., <u>SIDIS Corp., Daniel N. Fox, George C. Malachowski and Tidhar Sadeh</u>
Civil Action Number: 11-cv-02920
United States District Court of Colorado
Expert Report and Deposition Testimony
Claim(s): Trade Secret Misappropriation, Patent Infringement
Filed: November 9, 2011

Cree, Inc. v. <u>SemiLEDs, Inc. and Helios Crew Corp.</u>
Civil Action Number: 1:10-cv-00866
United States District Court for the District of Delaware
Claim(s): Patent Infringement
Filed: October 10, 2010

6

**EXPERT ASSIGNMENTS AND TESTIMONY Continued… (Retained on behalf of underlined party)**

AT Engine Controls Ltd. v. Goodrich Corporation and Goodrich Pump & Engine Systems, Inc.
Civil Action Number: 3:10-cv-01539
United States District Court of Connecticut
Expert Report and Deposition Testimony
Claim(s): Trade Secret Misappropriation, Breach of Contract
Filed: September 28, 2010

L'Oréal S.A. and L'Oréal USA, Inc. v. Merck and Co., Inc.
Civil Action Number: 12-99-GMS
United States District Court of Delaware
Expert Report, Deposition Testimony, Hearing Testimony
Claim(s): Patent Infringement
Filed: January 27, 2012

L'Oréal S.A. and L'Oréal USA, Inc. v. Johnson & Johnson, Inc. and Neutrogena Corporation
Civil Action Number: 12-98-GMS
United States District Court of Delaware
Expert Report
Claim(s): Patent Infringement
Filed: January 27, 2012

O.S. Security LLC v. BRK Brands, Inc.
Civil Action Number: SACV 14-00310 AG (DFMx)
United States District Court for the Central District of California
Claim(s): Patent Infringement
Filed: March 3, 2014

Gratz College v. Synergis Education, Inc.
Civil Action Number: 2:14-cv-06966
United States District Court for the Eastern District of Pennsylvania
Expert Report and Deposition Testimony
Claim(s): Breach of Contract
Filed: December 8, 2014

Signal IP, Inc. v. Kia Motors America, Inc.
Civil Action Number: LA CV14-02457 JAK
United States District Court for the Central District of California
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: April 1, 2014

Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Ricoh Company, Ltd., Ricoh Americas Corporation and Ricoh Electronics, Inc.
Civil Action Number: 1:13-CV-00474-SLR-SRF
United States District Court for the District of Delaware
Expert Report and Deposition Testimony
Claim(s): Patent Infringement, Objective Indicia of Non-Obviousness
Filed: March 25, 2013

7

**EXPERT ASSIGNMENTS AND TESTIMONY Continued… (Retained on behalf of underlined party)**

Supermax, Inc., and Glovepaq Manufacturing, LLC., v. Jordan Fund, LLC and Earl Jordan
Civil Action Number: 14 CH 15979
Circuit Court of Cook County
Claim(s): Breach of Contract
Filed: October 3, 2014

In the Matter of Certain Personal Transporters, Components Thereof and Manuals Therefore, on behalf of Complainants Segway Inc., DEKA Products Limited Partnership and Ninebot (Tinjin) Technology Co., Ltd.
Investigation No. 337-TA-1007 / 1021 (Consolidated)
United States International Trade Commission
Expert Reports (2), Deposition Testimony, Declaration Testimony, Hearing Testimony
Claim(s): Patent Infringement, Trademark Infringement
Filed: May 17, 2016

Arroweye Solutions, Inc. v. Harry & David Operations, Inc.
Civil Action No. 1:15-cv-11524
United States District Court for the Northern District of Illinois
Claim(s): Patent Infringement
Filed: December 22, 2015

Got I LLC and Kids II, Inc. v. XRT, Inc. and David Eugene Silverglate
Civil Action No. 1:16-cv-00038-WSD
United States District Court for the Northern District of Georgia
Claim(s): Breach of Contract
Filed: January 6, 2016

Swimways Corporation and Kelsyus LLC v. Bestway (USA), Inc.
Civil Action No. 1:16-cv-608 (LMB/IDD)
United States District Court for the Eastern District of Virginia
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: June 6, 2016

Valencell, Inc. v. Apple, Inc.
Civil Action No. 5:16-cv-00001-D
United States District Court for the Eastern District of North Carolina
Claim(s): Patent Infringement and Unfair Competition
Filed: January 4, 2016

Remote Year, Inc. v. We Roam, LLC
Civil Action No. 1:17-cv-00142-RGA
United States District Court for the District of Delaware
Claim(s): Trade Secret Misappropriation, Fraud, Tortious Interference
Filed: February 9, 2017

**EXPERT ASSIGNMENTS AND TESTIMONY Continued… (Retained on behalf of underlined party)**

Ignite USA, LLC v. Pacific Market International, LLC
Civil Action No. 0:16-cv-01429
United States District Court for the Northern District of Illinois
Expert Report and Deposition Testimony
Claim(s):  Patent Infringement
Filed: February 7, 2014

OptoLum, Inc. v. Cree, Inc.
Civil Action No. 2:16-cv-03828-DLR
United States District Court for the District of Arizona
Transfer to Middle District of North Carolina
Claim(s):  Patent Infringement
Filed: November 3, 2016

Cree, Inc. v. OptoLum, Inc.
Cases IPR2017-01260, IPR2017-01261 and IPR2017-01511
Declarations (3)
Patent Trial and Appeal Board
Filed: April 11, 2017 and May 31, 2017

Riddell, Inc., v. Kranos Corporation, d/b/a Schutt Sports
Civil Action No. 1:16-cv-4496
United States District Court for the Northern District of Illinois
Expert Report, Trial Testimony
Claim(s): Patent Infringement
Filed: April 21, 2016

In the Matter of Certain X-Ray Breast Imaging Devices and Components Thereof, on behalf of Respondents FUJIFILM Corporation, FUJIFILM Medical Systems U.S.A., Inc. and FUJIFILM Techno Products Co., Ltd
Investigation No. 337-TA-1063
United States International Trade Commission
Expert Reports (2), Deposition Testimony, Hearing Testimony
Claim(s): Patent Infringement
Filed: June 28, 2017

Acceleron, LLC v. Dell, Inc.
Civil Action No. 1:12-CV-04123
United States District Court for the Northern District of Georgia
Expert Reports (2), Deposition
Claim(s): Patent Infringement
Filed: November 28, 2012

Team Worldwide Corporation v. Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, Wal-Mart.com USA LLC, Sam's West, Inc. D/B/A Sam's Club and Intervenor Defendant Bestway (USA), Inc.
Civil Action No. 2:17-cv-235
United States District Court for the Eastern District of Texas
Claim(s): Patent Infringement
Filed: March 29, 2017

9

| | |
|---|---|
| **EXPERT ASSIGNMENTS AND TESTIMONY Continued…** (**Retained on behalf of underlined party**) | Serta Simmons Bedding, LLC , and Dreamwell, LTD. v. Casper Sleep Inc. Civil Action No. 17-cv-7468 United States District Court for the Southern District of New York Expert Report and Deposition Testimony Claim(s): Patent Infringement Filed: September 29, 2017 |

TeleCommunications Systems, Inc. and Comtech Telecommunications Corp. v. Information Systems Audit and Control Association, Inc.
AAA Case Number: 01-17-0003-0244
American Arbitration Association
Claim(s): Breach of Contract, Trademark Infringement, Unfair Competition, Fraud, Deceptive Trade Practices, Conversion
Filed: May 23, 2017

Webasto Thermo & Comfort North America, Inc. and Webasto-Edscha Cabrio USA Inc. v. Bestop, Inc.
Civil Action No. 16-13456
United States District Court for the Eastern District of Michigan
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: September 23, 2016

Kranos IP Corporation, Kranos IP II Corporation, Kranos Corporation dba Schutt Sports v. Riddell, Inc.
Civil Action No. 1:17-cv-06802
United States District Court for the Eastern District of Texas
Transfer to Northern District of Illinois
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: May 18, 2017

The Valspar Corporation and Valspar Sourcing, Inc. v. PPG Industries
Civil Action No. 0:16-cv-01429
United States District Court for the District of Minnesota
Claim(s): Patent Infringement
Filed: May 23, 2016

The Sherwin-Williams Company v. PPG Industries, Inc.
Civil Action No. 2:17-cv-01023
United States District Court for the Western District of Pennsylvania
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: August 4, 2017

Fujifilm Corporation and Fujifilm Medical Systems U.S.A., Inc., v. Hologic, Inc.
Civil Action No. 18-343-GMS
United States District Court for the District of Delaware
Claim(s): Patent Infringement, Antitrust, Unfair Competition, Tortious Interference
Filed: March 2, 2018

| | |
|---|---|
| **EXPERT ASSIGNMENTS AND TESTIMONY Continued… (Retained on behalf of underlined party)** | <u>Evoqua Water Technologies, LLC v.</u> M.W. Watermark, LLC; Michael Gethin, Daniel Janisse, Paul Malik, Andrew Hagen, David Higgins and James Driesenga<br>Civil Action No. 17-4997-CB<br>State of Michigan in the Circuit Court for the County of Ottawa<br>Expert Report, Deposition Testimony, Hearing Testimony<br>Claim(s): Trade Secret Misappropriation, Breach of Contract, Conversion, Unfair Competition and Unjust Enrichment<br>Filed: June 26, 2017 |

<u>MLC Intellectual Property, LLC</u> v. Micron Technology, Inc.
Civil Action No. 3:14-cv-03657
United States District Court for the Northern District of California
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: August 12, 2014

<u>Edgewell Personal Care Brands, LLC and International Refills Company Ltd.</u> v. Munchkin, Inc.
Civil Action No. 2:18-cv-03005
United States District Court for the Central District of California
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: April 10, 2018

<u>FMC Corporation and FMC ARGO Singapore PTE. LTD</u>. v. Syngenta Crop Protection AG
CPR Institute for Dispute Resolution Non-Administered Arbitration
Expert Report and Hearing Testimony
Claim(s): Breach of Contract
Filed: December 20, 2018

In the Matter of Certain Pocket Lighters, on behalf of Complainant <u>BIC Corporation</u>
Investigation No. 337-TA-1142
United States International Trade Commission
Expert Report and Deposition Testimony
Claim(s): Trademark Infringement
Filed: December 6, 2018

Infinity Computer Products, Inc. v. <u>Konica Minolta Business Solutions, U.S.A., Inc.</u>
Civil Action No. 2:12-cv-06802
United States District Court for the Eastern District of Pennsylvania
Claim(s): Patent Infringement
Filed: December 5, 2012

| | |
|---|---|
| **EXPERT ASSIGNMENTS AND TESTIMONY Continued…** (**Retained on behalf of underlined party**) | Unicorn Global, Inc., Hangzhou Chic Intelligent Technology Co., Ltd., and Shenzen Uni-Sun Electronic Co., Ltd. v. <u>Golabs, Inc., d/b/a Gotrax, Walmart Inc., Wal-Mart Stores Texas, LLC, and Wal-Mart.com USA LLC</u><br>Civil Action No.  3:19-CV-00754-N<br>United States District Court in the Northern District of Texas<br>Claim(s): Patent Infringement<br>Filed: March 26, 2019 |

<u>Golabs, Inc., d/b/a Gotrax, Walmart Inc., Wal-Mart Stores Texas, LLC, and Wal-Mart.com USA LLC v.</u> Unicorn Global, Inc., Hangzhou Chic Intelligent Technology Co., Ltd., and Shenzen Uni-Sun Electronic Co., Ltd.
Civil Action No.  3:19-CV-00754-N
United States District Court in the Northern District of Texas
Declarations (2) and Deposition Testimony (2)
Claim(s): Unfair Competition, Tortious Interference
Filed: June 27, 2019

Wi-Lan Inc.; Wi-Lan USA, Inc.; and Wi-Lan Labs, Inc. v. <u>LG Electronics, Inc.; LG Electronics U.S.A., Inc.; LG Electronics Mobilecomm U.S.A., Inc.</u>
Civil Action No.  3:18-CV-01577
United States District Court in the Southern District of California
Expert Report
Claim(s): Patent Infringement
Filed: July 11, 2018

<u>Orthopaedic Hospital d/b/a Orthopaedic Institute for Children</u> v. DJO Global, Inc. and DJO Finance LLC
Civil Action No.  3:19-CV-00970
United States District Court in the Southern District of California
Expert Report
Claim(s): Patent Infringement
Filed: May 23, 2019

Fraunhofer – Gesellschaft Zur Forderung Der Angewandten Forschung E.V. v. <u>Sirius XM Radio Inc.</u>
Civil Action No.  1:17-CV-00184
United States District Court in the District of Delaware
Claim(s): Patent Infringement
Filed: February 22, 2017

In the Matter of Certain Audio Players and Controllers, Components Thereof, and Products Containing Same, on behalf of Complainant <u>Sonos Inc.</u>
Investigation No. 337-TA-1191
United States International Trade Commission
Expert Report and Deposition Testimony
Claim(s): Patent Infringement
Filed: January 7, 2020

| | |
|---|---|
| **EXPERT ASSIGNMENTS AND TESTIMONY Continued… (Retained on behalf of underlined party)** | In the Matter of Certain Wearable Monitoring Devices, Systems and Components Thereof, on behalf of Respondents <u>Fitbit Inc. and Garmin Ltd.</u><br>Investigation No. 337-TA-1190<br>United States International Trade Commission<br>Expert Report, Deposition Testimony and Hearing Testimony<br>Claim(s): Patent Infringement<br>Filed: December 10, 2019<br><br>Boston Scientific Corporation and Boston Scientific Scimed, Inc. v. <u>Micro-Tech Endoscopy USA Inc., Micro-Tech (Nanjing ) Co., Ltd. and Henry Schein Inc.</u><br>Civil Action No. 1:18-cv-01869-CFC<br>United States District Court in the District of Delaware<br>Claim(s): Patent Infringement<br>Filed: November 26, 2018<br><br>Ultravision Technologies, LLC v. <u>Yaham Optoelectronics., Ltd., and Yaham U.S.A., Inc.</u><br>Civil Action No. 2:18-cv-00118<br>United States District Court for the Eastern District of Texas, Marshall Division<br>Expert Report<br>Claim(s): Patent Infringement<br>Filed: March 27, 2018<br><br>Ultravision Technologies, LLC v. <u>Yaham Optoelectronics., Ltd.</u><br>Civil Action No. 2:19-cv-00398<br>United States District Court for the Eastern District of Texas, Marshall Division<br>Expert Report<br>Claim(s): Patent Infringement<br>Filed: December 6, 2019<br><br><u>Chervon (HK) Limited, Chervon North America Inc.</u> v. One World Technologies, Inc., Techtronic Industries Co. LTD.<br>Civil Action No. 1:19-cv-01293<br>United States District Court for the District of Delaware<br>Claim(s): Patent Infringement<br>Filed: July 11, 2019 |

---

| | |
|---|---|
| **OTHER REPRESENTATIVE ENGAGEMENT EXPERIENCE, INCLUDING AT LEAST LAST 5 YEARS** (Retained on behalf of underlined party) | **Patent Infringement Matters:**<br><br>▪ Virginia Innovation Sciences, Inc. v. <u>Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Telecommunications America LLC</u><br><br>▪ <u>Radware, Ltd.</u> v. F5 Networks, et al.<br><br>▪ Boston Scientific Corporation and Target Therapeutics, Inc. v. <u>Cordis Corporation</u> |

**OTHER REPRESENTATIVE ENGAGEMENT EXPERIENCE, INCLUDING AT LEAST LAST 5 YEARS Continued…**
(Retained on behalf of underlined party)

- St. Clair Intellectual Property Consultants v. Fuji Photo Film Co., Ltd., Fuji Photo Film U.S.A., Inc., Fujifilm America, Inc., et al.

- St. Clair Intellectual Property Consultants v. Panasonic Corporation

- St. Clair Intellectual Property Consultants v. Victor Company of Japan aka JVC

- St. Clair Intellectual Property Consultants v. High Tech Computer Corp., aka HTC Corp.

- Fujifilm Corporation v. Motorola Mobility LLC

- Forgent Networks v. Digeo, Inc.

- Forgent Networks v. Scientific Atlanta, Inc.

- Forgent Networks v. Motorola, Inc.

- Grand Haven Stamped Products Company v. Dura Automotive Systems, Inc.

- Andrx Pharmaceuticals, LLC. v. Glaxosmithkline, PLC and Smithkline Beecham Corporation D/B/A Glaxosmithkline

- Interface, Inc., et al., v. Mohawk Industries, Inc., et al.

- Power Integrations, Inc. v. Fairchild Semiconductor International, Inc. et al

- Compression Labs, Inc. v. Fuji Photo Film U.S.A.

- Prism Technologies, LLC v. AT&T Mobility, LLC

- Fairchild Semiconductor Corporation and System General Corporation v. Power Integrations, Inc.

- Analog Devices, Inc. v. Knowles Electronics, LLC

- Knowles Electronics, LLC v. Analog Devices, Inc.

- Keurig, Incorporated v. Kraft Foods Global, Inc., Tassimo Corporation, and Kraft Foods, Inc.

- Network-1 Security Solutions, Inc. v. Hewlett Packard Company et al.

- Consumer Satellite Radio, LLC v. Sirius XM Radio, Inc., et al.

- Medgraph, Inc. v. Medtronic, Inc.

- Datalogic Scanning, Inc., v. Metrologic Instruments, Inc.

- Nomadix, Inc. v. Hewlett-Packard Company et al.

- Innovention Toys, LLC v. MGA Entertainment, Inc., Wal-Mart Stores, Inc. and Toys 'R Us, Inc.

- Digital-Vending Services International, Inc. v. The University of Phoenix, Inc. et al.

- Lincoln Electric Company, et al. v. National Standard, LLC

- Callpod, Inc. v. GN Netcom, Inc., A/S, GN Store Nord, A/S (a/k/a GN Great Nordic, Ltd.), and Hello Direct, Inc.

- Fotomedia Technologies, LLC v. AOL, LLC, Photobucket.com, Inc., Shutterfly, Inc., CNET Networks, Inc., and Yahoo!, Inc.

14

**OTHER REPRESENTATIVE ENGAGEMENT EXPERIENCE, INCLUDING AT LEAST LAST 5 YEARS Continued…**
(Retained on behalf of underlined party)

- Bendix Commercial Systems LLC, et al. v. <u>WABCO Automotive Control Systems, Inc. et al.</u>

- <u>Allen J. Rushing, Ph.D.</u> v. NexPress Solutions

- <u>Nissim Corp.</u> v. Clearplay, Inc.

- <u>MEI, Inc</u>. v. JCM American Corp & Japan Cash Machine Co. Ltd.

### International Trade Commission Matters:

- In the Matter of Certain Wiper Blades (Inv. No. 337-TA-816), on behalf of Respondents <u>Corea Autoparts Producing Corp. d/b/a CAP America, CAP America, Inc., PIAA Corp. U.S.A., ADM21 Co., Cequent Consumer Products, Inc., RainEater LLC, and Daewoo International Corp.</u>

- In the Matter of Certain Silicon Microphone Packages and Products Containing Same (Inv. No. 337-TA-888), on behalf of Complainant <u>Knowles Electronics, LLC.</u>

- In the Matter of Certain Electronic Devices Including Handheld Wireless Communication Devices (Inv. No. 337-TA-673), on behalf of Respondent <u>Panasonic Corporation</u>

- In the Matter of Certain Short Wavelength Light Emitting Diodes, Laser Diodes and Projects Containing Same (Inv. No. 337 -TA-640), on behalf of Respondents <u>Panasonic Corporation and Motorola</u>

### Trade Secret Misappropriation Matters:

- <u>Tekmira Pharmaceuticals Corporation and Protiva Pharmaceuticals, Inc.</u> v. Alnylam Pharmaceuticals, Inc. and AlCana Technologies, Inc.

- Gaya Limited v. <u>Applied Medical Resources Corporation</u>

- Netlist, Inc. v. Smart Storage Systems, Inc. and <u>Diablo Technologies, Inc.</u>

- <u>W.C Heraeus GMBH & Co.K.G and Heraeus Incorporated</u> v. Marjorie Joy Lynn, Lynn plasma Inc. and Nxedge, Inc.

### Trademark/Copyright Matters:

- <u>Oracle America Inc</u>. v. Google Inc.

- <u>Rosetta Stone Ltd.</u> v. Google Inc.

- Express, LLC. v. <u>Fetish Group, Inc</u>.

### False Advertising Matters:

- Dyson, Inc. v. <u>Bissell Homecare, Inc.</u>

- <u>Bracco Diagnostics, Inc.</u> v. Amersham Health Inc., Amersham Health AS, Amersham plc and Amersham Health Inc. v. Bracco Diagnostics, Inc.

- Ashley Furniture Industries v. <u>Laura Ashley Holdings Plc and Laura Ashley, Inc.</u>

15

| | |
|---|---|
| **OTHER REPRESENTATIVE ENGAGEMENT EXPERIENCE, INCLUDING AT LEAST LAST 5 YEARS Continued…** <br> **(Retained on behalf of underlined party)** | **Other Commercial Litigation Matters:** <br><br> ▪ <u>W.C Heraeus GMBH & Co.K.G and Heraeus Incorporated</u> v. Marjorie Joy Lynn, Lynn plasma Inc. and Nxedge, Inc. <br><br> ▪ Nomir Medical Technologies, Inc. v. <u>McDermott Will & Emery LLP, Simona Levi-Minzi, Mark Lappin and G. Matthew McCloskey</u> <br><br> ▪ Leclerc & Masselon, et al. v. <u>MGA Entertainment, Inc.</u> <br><br> ▪ Discovision Associates v. <u>Fuji Photo Film Co., Ltd.</u> <br><br> ▪ <u>Boyce Thompson Institute for Plant Research</u> v. Medimmune, Inc. <br><br> ▪ City of Hope v. <u>Juno Therapeutics, Inc.</u> |

# Attachment C

# Michael Plishka | President
# ZenStorming™, LLC

michael@zenstorming.com, Cell: (847)791-3655

---

## *Professional Experience Summary*

Founder and President of ZenStorming™, a Design and Innovation Consultancy.
Twenty-Five+ years designing, developing and launching medical products

### *FOCUS ON THE CUSTOMER*

*Clinical Relationship Builder*
*Extensive experience in Sterile Environments*
*Trained clinicians and sales staff on device use in cadaver and mock labs*
*Established hospital based training programs for engineers*
*Market Research studies*
*Product Research = Product Requirements = New Product Directions*
*Product Complaint Support*
*Assembled Clinical Advisory Boards to guide product portfolio strategy*
*Instructional Videos and Label Copy*

### *APPLIED CREATIVITY*

*Idea Generation*
*Innovator for Next Generation Products*
*Product Platform Development*
*Strategic Technology Planning*
*Technology Assessment*
*Intellectual Property Portfolio Development*
*Expedited Project Feasibility*
*3D Printing and Prototyping*
*Product Problem Solving*

### *REGULATORY SPECIALISMS*

*Presenter at 2017 Midwest Sensors Conference,*
*"Sensor-Driven Healthcare: Innovative Applications Today & Tomorrow"*
*Presenter at 2008 International Silicone Conference,*
*"Working with Medical Device Companies – The Essentials"*
*QSR Procedures (Design Controls, GMP, GLP, etc.)*
*Validation and testing protocols for*
*packaging, new products and processes*
*Risk Assessment Process development*
*Authorship of 510 (k) submissions*
*Engineering Regulatory Compliance*

**PROFESSIONAL EXPERIENCE**

*Expert Witness*
- Purewick – Court Case (Purewick v Sage) – (2020)
- BD– IPR (Baxter v BD) – 2020
- Bard – IPR (Bard v Medline ) – 2019
- Nevro – IPR plus Court Case (Nevro v. Boston Scientific) – 2017; Current/Stayed
- Endoevolution – Arbitration (Endoevolution v Ethicon) – 2017
- Carefusion–  Court Case (Willie Harris v Carefusion) – 2014 (Settled)
- Hologic – Court Case (Ethicon EndoSurgery v. Hologic Inc and Suros Surgical Systems, Case No. 1:07-CV-00834) - 2010

*ZenStorming Solutions, LLC*                                                    *4/08 to Present*
- Carefusion (BD/Bard Partnership) (2010-Present) – New Product Conception/Strategy/Design/Development, Research/Development of Disruptive Innovation Portfolio, Technology Assessment, IP Development, Sales/Clinical Training, Mobile App Story-Boarding
- Albee Systems, LLC 0 (2020) –Systems  to contain aerosolized pathogens during surgical/dental procedures
- Zavation (2019-Present) – Bone Cement Delivery System Development
- Matnovation (2015-Present)- Design and development of a bronchoscope (endoscope) with disposable components
- Surgimatix(2011-Present) – Endoscopic Suture Device Development, Quality System Development, Validation Support
- Hines VA (2009-Present) – Electrode Deployment Device Development, Grant Funding and Engineering Support
- TransMax(2016) – Product Development, Engineering Advisor for CPR Training Device
- Xavier Moreno (2017-Present) – Epidural Catheter Measurement Device, Engineering Design and Development
- AOK Inc. – (2011-Present) New Product Development: Thoracic Access, Toy Robot Development
- 510(k) Authorship and Patent Research for Entrepreneurs (Ongoing)
- King Systems (Ambu) (2011-Present) – Respiratory Products and Emergency Airway Access, New Product Design/Development
- Inventor Anesthesiologist (2015) – Technical Guidance on Development and Licensing of Drug Dispenser Adapter
- Hollister (2010-Present)– New Product Idea Generation - Brainstorming Moderation
- Ferring Pharmaceuticals – (2009-2012)Developed Marketing Awareness Campaign
- Testicular Cancer Society  (2009-10)- Developed Marketing Awareness Campaign
- Baxter Healthcare (2008)– IP Portfolio Development

*Baxter Healthcare*                                                              *6/06 to 4/08*
*Position: Engineering Specialist; Access Systems Business Unit*
- Lead Innovator for generating IP for Next Generation Vascular Access Products such as luer activated devices. resulting in multiple cross platform patent applications in heavily populated patent landscape
- Spearheaded development of resources that enabled manufacture of prototypes in half the time at a cost savings of 50%.
- Determined feasibility of new IV Access product and benchmarked against key competitive products  in six months
- Engineering Lead for Market Research Studies
- Developed relationships with clinicians resulting in six new hospital sites for engineers to study clinician behaviors.
- Led Clinical Advisory Board Meetings in conjunction with Marketing.
- Drafted business unit plan for World Wide Technology/Product Planning Committees
- Mentor for younger engineers
- Company Representative in off-site college recruitment program.
- Direct Supervisory Responsibility for Junior Engineer

*Cardinal Health (Allegiance Healthcare Corporation)*                          *4/99 to 6/06*
*Position: Engineering Specialist; Special Procedures Business Unit*
- Engineering Project Lead driving the development of products from conception through launch while meeting aggressive timelines. Products included drainage catheters, biopsy devices and interventional vertebral repair.
- Physician Advisory Board Team Leader for new product development projects
- Technical Expert assessed and recommended new technologies and/or products for business development
- Developed patented, product platforms/line-extensions that provided 35% of all revenues in the Special Procedures

business unit.
- Developed training materials and trained Sales Staff /Clinicians on new products in cadaver labs and lecture settings
- Developed and updated Quality System/Design Controls, minimizing documentation volume and time without sacrificing safety (Design Controls, Risk Analysis, GMP, GLP, etc.)
- Authored and performed validation and testing protocols for new products and processes
- Supported 510 (k) regulatory submissions
- Developed company-wide Technical Development Career track for non-degreed Designers/Technicians
- Direct supervisory responsibility for Designer and EDP (Engineering Development Program) Engineer
- Mentor for younger engineers
- Indirect managerial responsibility for cross-cultural Project Team
- Company Representative in off-site college recruitment program.

*Manan Medical Products*                                                      *3/95 to 4/99*
*Position: New Product Development Engineer*
- Worked with clinicians to develop novel and patented drainage catheters/accessories and biopsy products
- Managed manufacturing scale-up through product launch.
- Developed advertising, labeling (instructions), packaging and manufacturing procedures for new products.
- Filed and successfully received 510(k) approval on new and modified products.
- Wrote and performed validation and testing protocols for products, packaging and processes.
- Head of Engineering Regulatory Compliance Team achieving ISO registration and passing FDA audit with no corrective action taken
- Developed Design Control and Hazard Analysis procedures as per QSR and ISO

*Hines VA Hospital/Loyola Medical Center*                                     *3/91 to 5/94*
*Position: Biomedical Engineer*
- Developed bi-polar surface electrode for use on perineum.
- Co-developed implantable "mesh" electrode for use on bladder wall.
- Co-designed supra-pubic indwelling catheter for use in bladder studies.
- Generated computer simulation of bladder in cooperation with University of Illinois.
- Co-authored papers which applied research to practical, diagnostic use.

**INVENTIONS (Partial List)**

US5730724 Drainage Catheter Apparatus
US5989241 Drainage Catheter Apparatus
US 7018343 Biopsy Needle and Device Containing the Same
D478987S Biopsy device
CA2413665 Multi-Use Surgical Cement Dispenser Apparatus And Kit For Same
CA2429357 Improved Paracentesis Device Having Multiple Detachable Components
WO03086201 Improved Biopsy Needle And Biopsy Device Containing The Same
WO03000121 Multi-Use Surgical Cement Dispenser Apparatus And Kit For Same
WO03022337 Improved Paracentesis Device Having Multiple Detachable Components
Curable Material Injection Device-Pending
Curable Material Mixing and Delivery Device -Pending
Paracentesis Device - Pending
Luer Activated Device –Three Patents Pending
Biopsy Devices – Two Pending

**EDUCATION**
***Bachelor of Science Mechanical Engineering***
*University of Illinois at Chicago*
*Honors: Phi Eta Sigma for Honor Roll in multiple consecutive semesters*

***Master of Arts***
*Loyola University of Chicago*

**PROFESSIONAL SOCIETIES**
***IDSA – Industrial Design Society of America***
***IEEE - Institute of Electrical and Electronics Engineers***
***EMBS – Engineering in Medicine and Biology Society***
***RSNA – Radiological Society of North America***

**PUBLICATIONS**

"Mind Opening Exercise" Illustration in "Lifespan Human Development" (Sigelman, Rider, De George-Walker, 2013)

Walter, J. S., Wheeler, J. S., Zaszczurynski, P., & Plishka, M. "Urodynamic measure of urethral cross-sectional area: Application for obstructive uropathy." *Neurourology and urodynamics* 13.5 (1994): 571-582.

Damaser, M. S., Walter, J. S., & Plishka, M. "Letter." *International Urogynecology Journal* 5.3 (1994): 191-191.

Walter, J. S., Wheeler, J. S., Morgan, C., Zaszczurynski, P., & Plishka, M. "Measurement of urethral compliance in females with stress incontinence." *Engineering in Medicine and Biology Society, 1992 14th Annual International Conference of the IEEE*. Vol. 4. IEEE, 1992.

Walter, J. S., Wheeler, J. S., Morgan, C., Zaszczurynski, P., & Plishka, M. "Measurement of total urethral compliance in females with stress incontinence." *Neurourology and urodynamics* 12.3 (1993): 273-276.

Walter, J. S., Wheeler, J. S., Cogan, S. F., Plishka, M., Riedy, L. W., & Wurster, R. D. "Evaluation of direct bladder stimulation with stainless steel woven eye electrodes." *The Journal of urology* 150.6 (1993): 1990-1996.

**HONORS/SKILLS**
*Presentations:*
- Presenter at 2017 Midwest Sensors Conference, "Sensor-Driven Healthcare: Innovative Applications Today & Tomorrow"
- Presenter at 2008 International Silicone Conference, "Working with Medical Device Companies – The Essentials"

*Awards:*
- Received Foster G. McGaw Contribution for Ava-Tex ™ Bone Cement Delivery System (2005).
- Received Karl D. Bays New Product Award for development of Temno Evolution Biopsy Device (2004).
- Received Karl D. Bays New Product Award for development of Safe-T-Centesis Drainage System (2003).
- Received Allegiance Innovation Award for development and launch of Ava-Tex ™ Bone Cement Delivery System in nine months (2001).
- Received Technical Excellence Award from Technical Council in 2001 and 2003.

**ITEMIZED PROJECT EXPERIENCE ADDENDUM**

***Innovation***: Worked with clinicians to design the following:

- Biliary Catheters
- General Drainage Catheters
- Nephrostomy Catheters
- Guide Wire Introducers and Introducer sheaths
- MRI Compatible Biopsy Needles
- Vertebroplasty Systems
    - o  Delivery System
    - o  Mixing System
    - o  Access System
- Repositionable Para/thoracentesis Catheters
- Drainage Systems (Bottle and Bag based)
- Fully Automatic Breast Biopsy Device
- Catheter Fixation Disk
- Interventional Drainage Bag
- Laryngoscope
- Anesthesia Filters
- Tissue/Fiduciary Markers
- Surgical Heating Systems
- Thoracic Entry Systems
- Laparoscopic Suturing Device

*Electrodes*

- Perineal
- Implantable Woven Mesh

*Vascular Access*

- Luer Activated Devices

***Clinical Procedural Attendance:***

- Biopsy
- Vertebroplasty
- PICC Placement
- Kyphoplasty
- Angioplasty/Stent Placement
- Interventional Drainage Catheter Placement
- Interventional Diagnostics
- Vascular Access

***Materials Knowledge***: Partial list of materials used in product developed:

- Implant grade steels
- MRI Compatible Materials
- Polycarbonate
- Polyurethane
- PMMA
- ABS
- Polypropylene
- Silicones
- PEEK
- Nylon

***Innovation Process:***

- Improved Brainstorming Processes
- Technical Expert involved in cross-business innovation
- Independent Reviewer of Cross-business products
- IP Generation and Portfolio Management
- Key Opinion/Clinical User Boards

***Process Engineering***: Manufacturing of the following devices:

- Interventional Drainage Catheters
- Needles
- Hand Held Injectors
- Cement Delivery Tubes
- Hot and Cold Pads
- Drainage Bags
- Guide Wire Catheters
- Luer Activated Devices
- Tissue Markers

***Anatomy/Physiology***: Working knowledge in the following areas:

- Human physiology
- Spine Mechanics
- Interventional Visualization Systems
- Vascular Biology
- Modelling of Heat Transfer under Anesthesia

***Coating/Impregnated Materials***: Experience with the following coatings:

- Hydrophilic Coating
- Antimicrobial Silver Coatings
- Parylene & PTFE Coating
- Lubricious materials (Impregnated)
- Antimicrobials (Impregnated)

# Attachment D

# Gary (Taavi) Reiss

639 Esplanade Avenue
New Orleans, LA 70116

e-mail: taavi@stanfordalumni.org         (415) 260-0370 • (504)349-6444 (fax)

## *Education*

| | |
|---|---|
| 2005-2008 | **Tulane University Medical Center**, Gastroenterology fellowship |
| 2002-2005 | **Stanford University Hospital and Clinics**, Internal Medicine residency |
| 1998-2002 | **Louisiana State University Health Science Center**, **MD** May 2002 (with honors) |
| 1998-2002 | **Louisiana State University School of Graduate Studies**, **MPH** May 2002 |
| 1999-2001 | **University of New Orleans**, **MBA** August 2001 |
| 1993-1997 | **Stanford University,** BA in History and Human Biology (dual major) |

## *Employment & Professional Activity*

| | |
|---|---|
| 2008-Present | **Metropolitan Gastroenterology Associates**, Partner.<br>Director / Founder GI oncology specialty clinic<br>Director / Founder therapeutic endoscopy program |
| 2007-2008 | **Chabert Medical Center**, Hospitalist. |
| 2004-2008 | **San Mateo County Medical Center**, Hospitalist. |
| 2004-2006 | **Health Science Center for Continuing Medical Education**. Independent content reviewer for CME symposiums pertaining to gastrointestinal disease. |
| 2004-2005 | **FA Davis Company**. Content reviewer, medical text books. |
| 2002-2005 | **Kaplan Medical, Inc.** Content designer for USMLE II&III review material. |
| Winter, 2004 | **Sujansky & Associates,** Medical informatics consultant. |

## *Academic, Organizational, Administrative Activity*

| | |
|---|---|
| 2013-Present | **West Jefferson Medical Center**, Director of Endoscopy |
| 2010-Present | **Louisiana State University Health Science Center**, Clinical associate professor of medicine, gastroenterology, therapeutic endoscopy.  Train senior fellows in advanced endoscopic technique. |
| 2015-2016 | **Tulane University Medical Center**, Clinical instructor, gastroenterology, therapeutic endoscopy.  Train senior fellows in advanced endoscopic techniques. |
| 2008-2012 | **Louisiana State University Therapeutic Endoscopy Conference**<br>Founded first national conference on ERCP / advanced endoscopy in region.<br>Course director first five years of conference. |
| 2008-Present | **Louisiana Gastroenterology Association**, Member |

# Gary (Taavi) Reiss

639 Esplanade Avenue
New Orleans, LA 70116

e-mail: taavi@stanfordalumni.org          (415) 260-0370 • (504)349-6444 (fax)

| | |
|---|---|
| 2006-Present | **American College of Gastroenterology**, Member<br>Fellowship status awarded 2015 |
| 2006-Present | **American Society Gastrointestinal Endoscopy**, Member |
| 2006-Present | **American Gastroenterology Association**, Member |

## *Research & Publications*

Smith MS,… US Collaborative WATS Study Group (**Reiss G**, et al.)  Wide-Area transepithelial sampling with computer-assisted 3-dimensional analysis (WATS) markedly improves detection of esophageal dysplasia and Barrett's esophagus: analysis from a prospective multicenter community-based study. Dis Esophagus 2019 Mar 1;32(3):1-8.

Spera M., **Reiss G**. Endoscopic Treatment of Reflux-A Review. The Journal of East Jefferson General Hospital October 2017

April 30th, 2015 Interviewed in: Signs You Could Have "Silent Reflux." US News & World Report:
http://health.usnews.com/health-news/patient-advice/articles/2015/04/30/signs-you-could-have-silent-reflux

Stover J, Meltzer S, Haydeck J, Cattau E, **Reiss G**. Comparison of Traditional Histology and Histology with Molecular Diagnostic Testing for Risk Stratification of Barrett's Esophagus: A Multi-Center Study. Gastroenterology 2014;146:5-Sa1082.

Gendusa P, Martinez I, **Reiss G**, Landreneau SW. Management of choledocholithiasis in pregnancy. J La State Med Soc. 2013;165:110.

Martinez I, Gendusa P, Jenkins P, **Reiss G,** Landreneau SW. Pregnancy rocks: management of choledocholithiasis in pregnancy. Poster presented at American College of Gastroenterology Regional Meeting. March 2012, New Orleans, LA.

**Reiss G**, Sickel J, See-Tho K, Ramrakhiani S.  Intrapancreatic splenic cyst mimicking pancreatic cystic neoplasm diagnosed by endoscopic ultrasound guided fine needle aspiration.  Gastrointest. Endosc. 2009;70:557-8.

**Reiss G**, Gopi R, Ramrakhiani S. Unusual cause of colonic obstruction: Gallstone impaction requiring mechanical lithotripsy.  Clin Gastroenterol Hepatol: 2009;7:A20.

**Reiss G**, Ramrakhiani S.  Abnormal pancreatic imaging: ambiguity necessitates endoscopic ultrasound. Gastrointest. Endosc. 2008;68:243-5.

**Reiss G**, Keeffe EB. Vaccination against hepatitis B in patients with chronic liver disease. Year in Hepatitis Vaccines Volume 2. 2008.

**Reiss G**, Keeffe EB. Response letter to Dr. Morrow et al. J Am Geriatr Soc. 2007;55(1):142.

### Gary (Taavi) Reiss

639 Esplanade Avenue
New Orleans, LA 70116

e-mail: taavi@stanfordalumni.org                    (415) 260-0370 • (504)349-6444 (fax)

**Reiss G**, Keeffe EB. Vaccination against hepatitis B in patients with chronic liver disease. Current Hepatitis Reports. 2006; 5:58-62

**Reiss G,** Kunz P, Koin D, Keeffe EB: Escherichia coli O157:H7 Infection in Nursing Homes: Report of Recent Outbreak and Review of Literature. J Am Geriatr Soc.  2006 54(4):680-4. Originally presented in poster format, 2005 American College of Physicians, San Francisco, CA.

Mitiku T, **Reiss G**, Vagelos R:  Capecitabine induced coronary vasospasm: A report of 2 cases. Poster, 2005 American College of Physicians, San Francisco, CA.

**Reiss G**, Keeffe EB: Role of liver biopsy in the management of chronic liver disease: selective rather than routine.  Rev Gastroenterol Disord.  2005;5(4):195-205.

**Reiss G**, Keeffe EB: Hepatitis vaccination in patients with chronic liver disease. Aliment Pharmacol Ther. 2004 Apr;19:715-27.

**Reiss G**, Kopicko J, O'Brien M, Clark RA: Lack of  association between pregnancy and selected gastrointestinal adverse events among women prescribed nelfinavir. J Acquir Immune Def Synd 2001;26:513-6.  Poster, 2000 Infectious Disease Society of America, New Orleans, LA.

Summer, 1998      **Research Assistant**, New Orleans Regional AIDS Planning Council. Special Populations: HIV/AIDS Needs Assessment for the New Orleans EMA.  Found, interviewed, and quantified needs of underserved HIV+ populations.

Spring, 1998      **Research Assistant,** New Orleans Office of Health Policy. "Cost per Unit of Service Assessment of HIV/AID Patients in the New Orleans Area."

## *Clinical Research*

A Phase 3, Multicenter, Randomized, Double-Blind, Placebo-Controlled Study to Evaluate the Efficacy and Safety of XXX for the Treatment of Liver Fibrosis in Adult Subjects with Nonalcoholic Steatohepatitis

A Phase IIb Multicentre, Double-Blind, Dose-Ranging, Randomised, Placebo-Controlled Study Evaluating Safety And Efficacy Of XXX In Male Obese Subjects With Hypogonadotropic Hypogonadism

A 6 Month, Double-Blind Safety Extension Study of XXX Evaluating the Effects of Long Term Treatment with XXX on Bone Mineral Density

A Phase 3 Randomized, Double-Blind, Multi-Dose, Placebo and NSAID-Controlled Study to Evaluate the Efficacy and Safety of XXX in Patients with Pain Due to Osteoarthritis of the Knee or Hip

A Multicenter, Randomized, Double-Blind, Placebo-Controlled Study to Assess the Efficacy of XXX in Relieving Symptoms of Gastroparesis

# Gary (Taavi) Reiss

639 Esplanade Avenue
New Orleans, LA 70116

e-mail: taavi@stanfordalumni.org                    (415) 260-0370 • (504)349-6444 (fax)

A Phase 3, Double-Blind, Randomized, Placebo-Controlled, Multicenter Study to Evaluate the Efficacy and Safety of XXX in Subjects with Compensated Cirrhosis due to Nonalcoholic Steatohepatitis

A Phase 3, Placebo-Controlled, Randomized, Observer-Blinded Study To Evaluate The Efficacy, Safety, And Tolerability Of A *Clostridium Difficile* Vaccine In Adults 50 Years Of Age And Older

A Phase 3, Multicenter, Randomized, Double-Blind, Placebo-controlled, Parallel-group Study to Evaluate the Efficacy, Durability, Safety, and Tolerability of XXX in Patients with Lactose Intolerance

A Phase 3, Randomized, Double-blind, Placebo-controlled, Parallel-group, Multicenter Trial of Oral XXX Administered to Patients with Gastroesophageal Reflux Disease while receiving
Proton Pump Inhibitors

Phase 3, Multicenter, Randomized, Double-Blind, Placebo-Controlled Study of Oral XXX as Induction Therapy for Moderately to Severely Active Crohn's Disease

A 54-Week Treatment, Multicenter, Randomized, Double-Blind, Double-Dummy, Placebo and Active-Controlled, Parallel-Group Phase 2 Study to Assess the Efficacy and Safety of XXX in Participants with Moderately to Severely Active Ulcerative Colitis

A Multicentre, Randomised, Double-Blind (Sponsor-Unblinded), Placebo-Controlled Study With Open Label Extension To Investigate The Safety And Tolerability, Pharmacokinetics, Pharmacodynamics, And Efficacy Of XXX In Subjects With Active Ulcerative Colitis.

Testosterone Replacement Therapy for Assessment of Long-Term Vascular Events and Efficacy ResponSE in Hypogonadal Men (TRAVERSE) Study

Prospective Collection of Colon Fluids for Gastrointestinal Disease Detection. Protocol CRTX1-101

## *Honors and Activities*

| | |
|---|---|
| 2015 – present | **Fellow, American College of Gastroenterology** |
| 2011 - present | **Best Doctors in America, New Orleans Region**; among 5% elected by peers |
| Summer, 2005 | **Franklin G. Ebaugh, Jr. Award** <br> Recognition of outstanding research by a Stanford Internal Medicine resident. |
| Summer, 2002 | **Norma C. Ragland Memorial Award** <br> Recognition of outstanding academic success throughout medical school. |
| Summer, 2002 | **Hull-Akenhead Cardiology Award**; top medical student in cardiology. |

# Gary (Taavi) Reiss

639 Esplanade Avenue
New Orleans, LA 70116

e-mail: taavi@stanfordalumni.org                    (415) 260-0370 • (504)349-6444 (fax)

Winter, 2001        **AOA Honors Society**, junior member signifying class ranking of top 7%.

Fall, 2000         **Assistant Editor, Southern** Medicine; 1 of 2 founding editors, 47 schools

Fall, 1999         **Honors Curriculum & Research Track**: based on grades/research proposal

# SCHEDULE 10P

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-1869-SB-CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' OBJECTIONS TO DEFENDANTS' WITNESS LIST (SCHEDULE 10)

Pursuant to Rule 26(a)(3) of the Federal Rules of Civil Procedure and D. Del. LR 16.3(d), Boston Scientific hereby objects to the Witness List provided by Defendants. Boston Scientific makes these objections without waiving and without prejudice to any motions, arguments, or further objections Boston Scientific may present separately to the Court.

Boston Scientific objects to testimony by "Representatives of Olympus America Inc." as vague and undefined. As a result, Defendants should not be permitted to call such a witness at trial.

Boston Scientific further objects to the unreasonable volume of witnesses Defendants may call by deposition as creating an unduly and unnecessary burden on Boston Scientific to prepare its case, and Boston Scientific reserves its right to provide further specific objections when Defendants have fairly narrowed their designations to a reasonable volume for a one-week jury trial.

# SCHEDULE 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 18-1869-SB-CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' DEPOSITION DESIGNATIONS, DEFENDANTS' OBJECTIONS TO PLAINTIFFS' DEPOSITION DESIGNATIONS, AND DEFENDANTS' COUNTER-DESIGNATIONS (SCHEDULE 11)**

**Boston Scientific's Statement**

Pursuant to Rule 26(a)(3) of the Federal Rules of Civil Procedure and D. Del. LR 16.3(d), Boston Scientific provides this list of deposition designations. Boston Scientific reserves the right to supplement, revise, clarify, withdraw, or otherwise amend these objections, including, but not limited to, based on new information, new positions taken by the parties, future rulings of the Court, including, but not limited to, rulings on the parties' pending motions for summary judgment, Daubert motions, motions *in limine*, and/or evidentiary objections raised by the parties prior to trial. Boston Scientific also incorporates herein its Objections to Defendants' Exhibit List and Objections to Defendants' Witness List.

**Defendants' Statement**

Pursuant to Rule 26(a)(3)(B) of the Federal Rules of Civil Procedure and D. Del. LR 16.3(d), Defendants Micro-Tech Endoscopy USA, Inc., Micro-Tech (Nanjing) Co. Ltd., and Henry Schein, Inc. (collectively, "Defendants") hereby object to Plaintiffs' Deposition

## SCHEDULE 11

Designations. Defendants reserve the right to supplement, revise, correct, clarify, withdraw, or otherwise amend these objections based on new information, new positions taken by the parties, future rulings of the Court, including, but not limited to, rulings on the parties' pending motions for summary judgment, Daubert motions, motions *in limine*, and/or evidentiary objections raised by the parties prior to trial. Defendants make these objections without waiver of, and without prejudice to, any motions, arguments, or evidentiary objections Defendants have presented or may present separately to the Court. Defendants further reserve the right to object to and/or move to strike individual questions asked, testimony given or proffered, and/or documents used in the examination with respect to any witnesses whether presented live or by deposition. Defendants also incorporate herein Defendants' Objections to Plaintiffs' Exhibit List and Objections to Plaintiffs' Witness List.

## SCHEDULE 11


### DEFENDANTS' OBJECTION KEY FOR OBJECTIONS
### TO PLAINTIFFS' DEPOSITION DESIGNATIONS

| CODE | OBJECTION |
| --- | --- |
| 106 | Incomplete. Fed. R. Evid. 106 |
| 402 | Not relevant. Fed. R. Evid. 401, 402 |
| 403 | Unduly prejudicial, confusing, wasteful, or cumulative. FRE 403 |
| 701 | Improper lay opinion. Fed. R. Evid. 701 |
| 802 | Hearsay if offered for the truth of the matter asserted. FRE 802 |
| 1002 | Violates best evidence rule. Fed. R. Evid. 1002 |
| AA | Asked and answered |
| Arg | Argumentative |
| C | Compound |
| F | Lacks foundation/lacks personal knowledge/speculation |
| IH | Incomplete Hypothetical |
| LC | Calls for a legal conclusion |
| Lead | Leading |
| Mis | Misstates prior testimony |
| NT | Not testimony |
| OS | Outside Scope of Rule 30(b)(6) Topic |
| V | Vague and ambiguous |
| X | Calls for expert testimony |
| SJ | Subject to exclusion pending Motion for Summary Judgment |
| Daub | Subject to exclusion pending Daubert Motion |
| MIL | Subject to exclusion pending Motion *in limine* |

SCHEDULE 11

| Li, Christopher July 27, 2020 | | | | |
|---|---|---|---|---|
| **Plaintiffs' Initial Designations** From / To | **Defendants' Objections** | **Defendants' Counter Designations** From / To | **Plaintiffs' Objections** | **Plaintiffs' Counter-Counter Designations** From / To |
| 7:21-8:1 | | 17:2-17:19 | | |
| 8:13-8:15 | | 19:1-19:10 | | |
| 9:1-9:3 | | 19:22-20:2 | | |
| 10:12-10:16 | | 21:15-22:12 | | 22:13-21 |
| 11:13-11:24 | | 25:3-25:7 | | |
| 16:7-17:1 | | 27:2-27:12 | | |
| 17:20-17:22 | | 50:11-50:20 | | |
| 18:9-18:15 | | 51:18-52:9 | | |
| 19:18-19:21 | | 53:5-54:10 | | |
| 20:20-21:10 | 106, V | 61:22-62:15 | | |
| 24:10-25:2 | | 68:18-21 | | 68:5-10 |
| 25:8-25:19 | | 70:4-70:10 | | |
| 27:13-29:6 | | 86:4-86:12 | | |
| 30:11-31:2 | | 87:9-87:16 | | |
| 39:6-39:9 | | | | |
| 43:6-43:9 | | | | |
| 43:19-44:1 | 106, F, V | | | |
| 47:13-47:20 | 402, 403 | | | |
| 50:4-50:10 | | | | |
| 50:21-51:14 | | | | |
| 58:12-58:24 | | | | |
| 60:23-61:3 | 106, V | | | |
| 61:10-61:13 | 106, V | | | |
| 63:1-63:10 | | | | |
| 63:18-63:23 | | | | |
| 66:4-66:8 | | | | |

SCHEDULE 11

| Li, Christopher July 27, 2020 | | | | |
|---|---|---|---|---|
| **Plaintiffs' Initial Designations** **From / To** | **Defendants' Objections** | **Defendants' Counter Designations** **From / To** | **Plaintiffs' Objections** | **Plaintiffs' Counter-Counter Designations** **From / To** |
| 67:12-67:15 | | | | |
| 67:20-67:24 | | | | |
| 69:2-69:14 | | | | |
| 70:21-71:2 | | | | |
| 71:5-72:6 | 106, V | | | |
| 81:17-81:20 | | | | |
| 81:22-82:8 | | | | |
| 84:18-85:22 | | | | |
| 86:1-86:2 | | | | |
| 86:13-87:7 | | | | |
| 87:17-87:23 | | | | |
| 101:13-102:1 | | | | |
| 102:13-103:19 | | | | |
| 107:12-107:18 | | | | |
| 108:16-110:6 | | | | |
| 114:1-114:22 | 106, V | | | |
| 122:11-122:14 | | | | |

SCHEDULE 11

| Jackson, Scott July 15, 2020 | | | | |
|---|---|---|---|---|
| **Plaintiffs' Initial Designations** | **Defendants' Objections** | **Defendants' Counter Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter-Counter Designations** |
| From / To | | From / To | | From/To |
| 9:2-12:10 | | | | |
| 12:22-13:17 | 402, 403, 106 | 14:3-5 | | |
| 14:20-15:5 | F, 106 | 15:7-11 | | |
| 17:15-18:22 | | | | |
| 20:15-21:7 | F, 106 | 21:8-22:8 | | |
| 23:17-23:18 | | | | |
| 24:1-24:7 | F | | | |
| 24:11 | | | | |
| 24:13-24:15 | F, 402 | | | |
| 24:17-24:18 | | | | |
| 24:20-24:24 | F | | | |
| 25:4-25:15 | 403, AA, 106 | 25:16-26:15 | | |
| 26:16-27:13 | F, AA, 403 | | | |
| 27:17-27:24 | F, AA, 403 | | | |
| 29:15-29:17 | | | | |
| 29:21-29:22 | | | | |
| 29:24-30:24 | 106 | 31:1-31:13; 31:16-32:16; 34:12-35:21 | | |
| 36:4-36:24 | | | | |
| 37:2-37:24 | F | | | |
| 38:4-38:6 | 106 | 38:7-8 | | |
| 38:9-38:15 | | | | |
| 38:17-38:23 | Mis, 403 | | | |
| 40:18-40:21 | | | | |
| 41:7-41:15 | | | | |
| 41:22-41:24 | | | | |
| 42:2-42:14 | 106 | 42:15-43:7 | | 32:17-33:4, 33:16-34:10 |

SCHEDULE 11

| Jackson, Scott July 15, 2020 | | | | |
|---|---|---|---|---|
| **Plaintiffs' Initial Designations** | **Defendants' Objections** | **Defendants' Counter Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter-Counter Designations** |
| **From / To** | | **From / To** | | **From/To** |
| 49:8-50:22 | F | | | |
| 52:3-53:3 | F, 402, 403 | | | |
| 53:7-53:13 | | | | |
| 53:15-53:19 | F, AA, 403 | | | |
| 56:9-56:14 | F, NT, 106 | 56:15-16 | | |
| 60:5-60:19 | 106 | 60:20-61:6 | | |
| 61:7-61:22 | 106 | 62:12-63:5 | | |
| 63:22-64:24 | 106 | 63:12-63:21; 65:1-4; 65:8-15 | | 83:13-84:16 |
| 66:6-67:6 | | | | |
| 68:2-68:20 | LC | | | |
| 84:17-84:24 | | | | |
| 85:2-86:6 | | | | |
| 92:23-93:1 | F | | | |
| 93:7-94:20 | 106, F, Mis, AA, 403 | | | |
| 94:22-94:23 | | | | |
| 95:1 | 106, F, Mis, AA, 403 | | | |
| 95:4-95:6 | 106, F, Mis, AA, 403 | | | |
| 95:9-97:16 | | | | |
| 123:12-123:23 | | | | |
| 124:5-137:12 | | | | |
| 139:21-140:5 | | | | |
| 140:9-142:17 | | | | |

SCHEDULE 11

| Perry, Ron July 22, 2020 | | | | |
|---|---|---|---|---|
| **Plaintiffs' Initial Designations** | **Defendants' Objections** | **Defendants' Counter Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter-CounterDesignations** |
| **From / To** | | **From / To** | | **From / To** |
| 9:7-9:23 | 106 | 9:24-10:5 | | |
| 11:7-11:10 | 106 | 11:11 | | |
| 11:17-12:3 | | | | |
| 19:6-21:1 | F, 402, 403 | 21:2-5 | | |
| 21:6-22:13 | | | | |
| 23:2-23:17 | | | | |
| 34:21-35:19 | F, 402, C | | | |
| 36:7-36:18 | 402 | 36:19-37:3 | | |
| 37:4-37:9 | | 37:10-21 | | |
| 39:18-39:21 | 106 | 38:21-39:17, 39:22-40:2 | | |
| 40:3-40:19 | | | | |
| 46:8-48:12 | F, 402, 403, 106 | 44:6-46:7, 48:13-50:15 | | |
| 57:1-58:24 | F, AA, 106 | 52:3-56:23, 59:1-60:5 | | |
| 69:20-70:2 | 106 | 67:4-69:19 | | |
| 84:18-85:1 | | | | |
| 87:15-89:14 | F, 402, 403, 106 | 90:3-91:21 | | 50:16-51:1 |
| 98:10-99:21 | F. 402, 403, 106 | 95:13-96:2 | | 60:6-14 |
| 99:24-100:13 | F, 402, 403, AA, 106 | 100:14-102:14 | | 97:24-98:9 |
| 102:15-102:24 | | | | |
| 103:7-103:22 | | | | |
| 106:5-106:20 | 402, 403, 803, AA | | | |
| 106:24-107:1 | | | | |
| 107:4-107:9 | 402, 403, 803, AA, 106 | 107:10-108:8 | | |
| 115:18-115:24 | | | | |
| 117:9-123:8 | 106, 402, 403 | 116:4-117:4 | | |
| 123:20-124:14 | | | | |
| 124:17-129:24 | | | | |

SCHEDULE 11

| Plaintiffs' Initial Designations | Defendants' Objections | Defendants' Counter Designations | Plaintiffs' Objections | Plaintiffs' Counter-CounterDesignations |
|---|---|---|---|---|
| **Perry, Ron** **July 22, 2020** | | | | |
| From / To | | From / To | | From / To |
| 147:3-148:1 | C, F | | | |
| 148:4 | | | | |
| 148:8-152:2 | C, F, OS | | | |
| 152:18-154:3 | F, 402, 403, OS, Mis | | | |
| 154:18-154:20 | | | | |
| 154:22-154:23 | 106 | | | |
| 158:17-158:24 | | | | |
| 159:18-164:3 | C, F | | | |
| 164:7-165:13 | C, F | | | |
| 166:1-167:7 | F, OS | | | |
| 167:10-167:21 | F, OS, AA | | | |
| 169:11-169:13 | F, V | | | |
| 169:22-173:16 | F, V | | | |
| 173:24-178:1 | F, V | | | |

# SCHEDULE 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 18-1869-CFC-CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' DEPOSITION DESIGNATIONS, PLAINTIFFS' OBJECTIONS TO DEFENDANTS' DEPOSITION DESIGNATIONS, AND PLAINTIFFS' COUNTER-DESIGNATIONS (SCHEDULE 12)

### Defendants' Statement

Pursuant to Rule 26(a)(3) of the Federal Rules of Civil Procedure and D. Del. LR 16.3(d), Defendants Micro-Tech Endoscopy USA Inc., Micro-Tech (Nanjing) Co., Ltd. and Henry Schein Inc. (collectively, "Defendants") provide this list of deposition designations. Defendants reserve the right to supplement, revise, clarify, withdraw, or otherwise amend these objections, including, but not limited to, based on new information, new positions taken by the parties, future rulings of the Court, including, but not limited to, rulings on the parties' pending motions for summary judgment, Daubert motions, motions *in limine*, and/or evidentiary objections raised by the parties prior to trial.  Defendants also incorporate herein its Objections to Plaintiffs' Exhibit List and Objections to Plaintiffs' Witness List.

### Boston Scientific's Statement

Pursuant to Rule 26(a)(3)(B) of the Federal Rules of Civil Procedure and D. Del. L.R. 16.3(d), Boston Scientific hereby objects to Defendants' Deposition Designations and provides

## SCHEDULE 12

its counter-designations.  Boston Scientific objects to the unreasonable volume of deposition designations as creating an unduly and unnecessary burden to specifically object to each of Defendants' voluminous depositions and Boston Scientific reserves its right to provide further specific objections when Defendants have fairly narrowed their designations to a reasonable volume for a one-week jury trial.

As such, Boston Scientific objects to Defendants' designations at least under Federal Rules of Evidence 106, 401, 402, 403, 501, 502, 602, 701, 702, 801, 802, 901, 902, 1002, 1003, and 1006, to all testimony that falls within the scope of any motion *in limine* granted by the Court, and to all testimony of a Rule 30(b)(6) witness that was objected to as being outside the scope of the respective 30(b)(6) notice of deposition.

| Objection Key | |
|---|---|
| Code | Objection |
| 106 | partial document/lacks context (FRE 106) |
| 401/402 | lacks relevance (FRE 401/402) |
| 403 | unduly prejudicial/confusing/waste of time (FRE 403) |
| 501/502 | Privilege/Work Product (FRE 501/502) |
| 602/LOF | lacks foundation/speculative (FRE 602) |
| 701/702 | improper opinion (FRE 701/702) |
| 801-802 | hearsay (FRE 802) |
| 901/902 | lacks authenticity (FRE 901/902) |
| 1002 | original document required (FRE 1002) |
| 1003 | incomplete/illegible (FRE 1003) |
| 1006 | improper summary (FRE 1006) |
| ID | insufficient/incorrect description |
| L | late/not produced |
| AA | attorney argument improperly offered as evidence; contains counsel colloquy or objections |
| C | compound |
| Legal | calls for a legal conclusion |
| Leading | leading question of a non-hostile witness |
| MC | Mischaracterizes/misstates witness's testimony |
| NR | nonresponsive |
| PMIL | Subject of pending motion in limine |
| P | privilege |
| OS | beyond the scope |
| V | Vague and/or ambiguous |

**SCHEDULE 12**

| MARK ADAMS (Deposition taken on Mar. 21, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 6:12-14 | | |
| 21:16-22:13 | 401/402, 403 | |
| 24:18-23 | 401/402, 403, MC | 22:14-24:17 |
| 26:12-27:15 | 401/402, 403, MC | 26:6-11 |
| 28:7-30:12 | 401/402, 403 | 28:5-6 |
| 36:6-20 | 401/402, 403, 701/702, Legal | |
| 37:5-7 | 401/402, 403, 701/702, Legal | 49:14-50:6 |
| 37:9-11 | 401/402, 403, 701/702, Legal | 50:8-18 |
| 37:13-38:15 | 401/402, 403, 701/702, Legal | 53:12-21 |
| 39:7-10 | 401/402, 403, 701/702, Legal | |
| 39:12-40:8 | 401/402, 403, 701/702, Legal | |
| 45:14-23 | 401/402, 403 | |
| 46:14-47:8 | 401/402, 403 | |
| 47:23-49:13 | 401/402, 403 | |
| 51:25-52:23 | 401/402, 403, 701/702, Legal | |
| 53:7-11 | 401/402, 403 | |
| 54:1-10 | 401/402, 403 | |

**SCHEDULE 12**

| NIKLAS ANDERSSON (Deposition taken on Sept. 18, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 6:14-18 | | 6:19-7:3 |
| 11:3-12:9 | 401/402, 403 | |
| 13:1-14:7 | 401/402, 403 | |
| 20:18-21:10 | 401/402, 403, 602/LOF | |
| 22:11-23:4 | 401/402, 403, 602/LOF | |
| 23:22-26:6 | 401/402, 403 | 28:22-30:12 |
| 31:3-32:10 | 401/402, 403, V | |
| 33:15-37:19 | 401/402, 403, 701/702, V | 39:21-42:22 |
| 43:4-45:3 | 401/402, 403 | |
| 46:21-50:12 | 401/402, 403 | |
| 51:11-53:25 | 401/402, 403 | |
| 63:18-65:22 | 401/402, 403, AA | |
| 66:6-67:4 | 401/402, 403 | |
| 79:7-80:2 | 401/402, 403 | 80:3-13 |
| 84:18-86:21 | 401/402, 403 | |
| 94:8-97:7 | 401/402, 403 | 97:8-98:7 |
| 98:8-19 | 401/402, 403 | |
| 102:2-103:10 | 401/402, 403 | 103:11-104:25 |
| 105:1-108:2 | 401/402, 403 | |
| 117:11-119:8 | 401/402, 403 | 119:9-120:14 |

**SCHEDULE 12**

| DANIELLE BOGARTZ (Deposition taken Sept. 11, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 7:4-8 | | |
| 9:21-14:17 | | |
| 16:6-19:8 | 401/402, 403 | |
| 20:11-21:8 | 401/402, 403 | |
| 21:19-23:14 | 401/402, 403 | |
| 24:6-27:4 | 401/402, 403 | |
| 27:16-32:4 | 401/402, 403 | |
| 34:11-35:12 | 401/402, 403 | |
| 36:4-39:1 | 401/402, 403 | |
| 39:2-40:11 | 401/402, 403 | |
| 41:7-42:10 | 401/402, 403 | 42:11-18 |
| 42:19-45:15 | 401/402, 403 | |
| 62:2-10 | 401/402, 403, 602/LOF, MC | |
| 63:15-65:20 | 401/402, 403 | |
| 66:5 | 401/402, 403 | |
| 67:5-69:2 | 401/402, 403, MC | 69:3-17 |
| 69:18-70:12 | 401/402, 403 | |
| 73:3-76:10 | 401/402, 403 | 76:11-77:4 |
| 77:16-19 | 401/402, 403 | |
| 78:1-79:13 | 401/402, 403 | |
| 82:10-84:20 | 401/402, 403 | |
| 85:13-86:1 | 401/402, 403 | |
| 86:4-88:14 | 401/402, 403 | |
| 90:8-19 | 401/402, 403 | |
| 91:17-95:20 | 401/402, 403 | |
| 96:5-97:1 | 401/402, 403 | 98:5-99:16 |
| 99:17-101:5 | 401/402, 403 | |
| 102:10-106:7 | 401/402, 403 | |

**SCHEDULE 12**

| DANIELLE BOGARTZ (Deposition taken Sept. 11, 2020) | | |
| --- | --- | --- |
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 106:13-107:9 | 401/402, 403 | |
| 109:11-112:8 | 401/402, 403 | |
| 113:5-114:7 | 401/402, 403 | |
| 122:6-126:18 | 401/402, 403 | |
| 138:3-9 | 401/402, 403 | |
| 146:13-147:7 | 401/402, 403 | |

## SCHEDULE 12

| VANCE BROWN (Deposition taken Sept. 9, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 7:13-15 | | |
| 8:10-13 | | |
| 8:19-9:17 | 401/402, 403 | 9:18-11:3 |
| 12:1-13:3 | 401/402, 403 | |
| 13:4-13:15 | 401/402, 403 | |
| 13:17-14:2 | 401/402, 403 | |
| 14:3-16:4 | 401/402, 403 | 16:5-12 |
| 16:13-17 | 401/402, 403 | |
| 19:12-20:2 | 401/402, 403 | 18:21-19:11 |
| 23:11-20 | 401/402, 403 | 22:5-23:3 |
| 23:22-25:16 | 401/402, 403 | |
| 25:17-26:14 | 401/402, 403 | |
| 26:16-27:3 | 401/402, 403 | |
| 27:5-27:7 | 401/402, 403 | 27:9-13 |
| 27:14-28:4 | 401/402, 403 | 28:5-8, 28:10-14, 28:16-29:19 |
| 29:20-31:9 | 401/402, 403 | |
| 31:10-33:2 | 401/402, 403 | |
| 33:10-19 | 401/402, 403 | |
| 33:20-21 | 401/402, 403 | |
| 34:1-16 | 401/402, 403 | |
| 35:4-36:21 | 401/402, 403 | |
| 37:2-17 | 401/402, 403 | 37:18-41:10 |
| 43:6-44:17 | 401/402, 403 | 48:10-21, 50:7-51:5, 52:8-53:9 |
| 65:12-66:16 | 401/402, 403 | 67:15-70:20 |
| 70:21-71:6 | 401/402, 403, 801/802, OS | |
| 71:9-13 | 401/402, 403, 801/802, OS | |
| 71:19-72:2 | 401/402, 403, 801/802, OS | |

**SCHEDULE 12**

| VANCE BROWN (Deposition taken Sept. 9, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 74:3-11 | 401/402, 403, 801/802, OS | |
| 74:16-75:15 | 401/402, 403, 801/802, OS | |
| 80:11-81:10 | 401/402, 403, 801/802, OS, V | |
| 88:6-11 | | |

**SCHEDULE 12**

| CHRISTOPHER DAVIS (Deposition taken Apr. 25, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 16:18-19:16 | 401/402, 403 | |
| 19:18-22:18 | 401/402, 403 | |
| 53:1-13 | 401/402, 403 | |
| 53:15-61:18 | 401/402, 403 | |
| 61:20-62:24 | 401/402, 403 | |
| 74:3-75:15 | 401/402, 403 | 75:16-76:4 |
| 76:5-77:21 | 401/402, 403 | |
| 85:17-86:8 | 401/402, 403, MC | |
| 86:11-21 | 401/402, 403, MC | 121:1-20, 127:22-128:13, 136:3-13 |
| 157:2-25 | 401/402, 403 | |
| 175:3-13 | 401/402, 403 | |
| 175:15-176:1 | 401/402, 403 | |
| 176:3-5 | 401/402, 403 | |
| 176:7 | 401/402, 403 | |
| 178:12-179:19 | 401/402, 403 | |
| 179:21-23 | 401/402, 403 | |
| 180:1-5 | 401/402, 403 | |
| 180:7-181:18 | 401/402, 403 | |
| 183:7-184:5 | 401/402, 403 | 198:6-199:17 |
| 219:8-12 | 401/402, 403, 801/802 | |
| 219:15-22 | 401/402, 403, 801/802 | |
| 219:24-220:20 | 401/402, 403, 801/802 | |
| 220:23-221:6 | 401/402, 403, 801/802 | |
| 221:11-15 | 401/402, 403, 801/802 | |

**SCHEDULE 12**

| CHRISTOPHER DAVIS (Deposition taken Apr. 25, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 221:19-21 | 401/402, 403, 801/802 | |
| 225:2-11 | 401/402, 403 | 224:19-21, 224:23-225:1 |
| 225:13-22 | 401/402, 403 | |
| 225:24-226:2 | 401/402, 403 | |
| 227:18-229:17 | 401/402, 403 | |
| 247:5-8 | 401/402, 403, MC, V | |
| 259:2-5 | 401/402, 403 | |
| 259:8-14 | 401/402, 403 | |
| 269:5-25 | 401/402, 403 | |

**SCHEDULE 12**

| ELENA HENNESSEY (Deposition taken Aug. 25, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 7:1-15 | | 6:22-25, 7:16-18 |
| 11:8-14 | | |
| 13:18-21 | | |
| 13:22-14:22 | | 15:2-23 |
| 16:14-22 | | |
| 18:24-19:5 | | |
| 29:21-33:19 | 401/402, 403, PMIL | |
| 36:3-9 | 401/402, 403, PMIL | |
| 36:13-37:15 | 401/402, 403, PMIL | |
| 37:17-38:2 | 401/402, 403 | |
| 38:8-39:4 | 401/402, 403 | |
| 80:15-19 | 401/402, 403 | |
| 81:3-85:18 | 401/402, 403 | |
| 85:23-87:11 | 401/402, 403 | |
| 87:14-88:1 | 401/402, 403 | 89:8-90:24 |
| 126:5-136:22 | 401/402, 403, PMIL | |
| 142:24-143:6 | | |

**SCHEDULE 12**

| JAVIER JIMINEZ (Deposition taken Apr. 21, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 13:15-15:2 | | |
| 24:3-14 | 401/402, 403 | 24:15-17 |
| 40:14-24 | 401/402, 403 | |
| 41:8-16 | 401/402, 403 | |
| 43:3-10 | 401/402, 403 | |
| 61:4-15 | 401/402, 403 | |

12

## SCHEDULE 12

| WILLIAM LAFFERTY (Deposition taken Apr. 27, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 11:11-12 | | |
| 12:22-16:11 | 401/402, 403 | |
| 17:6-24 | 401/402, 403 | |
| 21:7-22:4 | 401/402, 403 | 22:22-25:13 |
| 35:7-19 | 401/402, 403 | |
| 35:21-36:16 | 401/402, 403 | |

**SCHEDULE 12**

| MICHAEL LYNN (Deposition taken June 13, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 20:4-10 | 401/402, 403, V | 53:3-16 |
| 57:16-58:18 | 401/402, 403, MC, V, Legal | 53:18-25 |
| 58:20-59:4 | 401/402, 403, MC, V, Legal | 56:2-24 |
| 99:19-100:16 | 401/402, 403, MC, V, Legal | |
| 107:6-14; | 401/402, 403, MC, V, Legal | |
| 107:16 | 401/402, 403, MC, V, Legal | 108:1-19 |
| 109:5-16 | 401/402, 403, MC, V, Legal | |
| 109:18-110:9 | 401/402, 403, MC, V, Legal, OS | 17:12-20:3 |
| 110:17-22 | 401/402, 403, MC, V, Legal, OS | |
| 110:24-111:7 | 401/402, 403, MC, V, Legal, OS | |
| 111:9-13 | 401/402, 403, MC, V, Legal, OS | |

**SCHEDULE 12**

| LAUREN MOSCATO (Deposition taken Aug. 12, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 14:7-21 | | |
| 15:16-16:3 | | 16:8-13 |
| 18:20-19:20 | | |
| 20:20-24:23 | | |
| 25:5-10 | | 25:11-24 |
| 25:25-26:7 | 401/402, 403 | |
| 26:8-12; | 401/402, 403 | |
| 26:13-27:1 | 401/402, 403 | |
| 27:14-24 | | 27:2-13 |
| 27:25-28:14 | 401/402, 403 | |
| 29:11-25 | 401/402, 403 | 30:1-33:3 |
| 33:4-35:15 | | 35:16-36:1 |
| 39:1-40:3 | | 38:2-25 |
| 40:19-48:9 | | |
| 50:19-51:3 | | 51:4-56:25 |
| 57:1-58:22 | 401/402, 403, 701/702 | |
| 59:21-60:22 | 401/402, 403 | |
| 61:1-4 | 401/402, 403 | |
| 61:6-7 | 401/402, 403 | 61:14-63:8 |
| 63:9-66:2 | 401/402, 403 | |
| 67:1-68:5 | | |
| 68:12-14 | | |
| 68:17-70:5 | | |
| 70:8-23 | | 71:3-73:18 |
| 73:19-76:1 | 401/402, 403, 701/702 | |
| 76:4-81:12 | 401/402, 403, 701/702 | |
| 81:17-83:21 | 401/402, 403, 701/702 | 83:22-88:9 |

**SCHEDULE 12**

| LAUREN MOSCATO (Deposition taken Aug. 12, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 88:10-89:20 | OS, MC | |
| 89:22-91:1 | OS, MC | 91:5-19 |
| 98:6-100:7 | 401/402, 403 | 100:8-101:14 |
| 101:15-102:6 | 401/402, 403 | 102:7-106:4 |
| 106:24-111:11 | 401/402, 403 | |
| 111:21-112:23 | 401/402, 403 | 112:24-114:8 |
| 114:9-114:19 | 401/402, 403 | |
| 115:3-24 | 401/402, 403 | 115:25-117:6 |
| 119:14-123:25 | 401/402, 403 | 124:1-126:15 |
| 127:7-133:6 | 401/402, 403, 701/702 | 133:7-137:4 |
| 137:5-139:6 | 401/402, 403 | |
| 139:9-143:17 | 401/402, 403 | 143:18-150:4 |
| 150:5-16 | | 153:6-154:10, 154:11-180:4 |
| 180:5-186:14 | 401/402, 403, 701/702 | |
| 192:19-193:24 | | |
| 216:2-217:19 | 401/402, 403, 701/702 | 214:21-216:1 |
| 243:1-20 | 401/402, 403, 701/702, OS | 246:4-247:3 |
| 247:16-19 | 401/402, 403, 701/702, OS | |
| 247:22-248:11 | 401/402, 403, 701/702, OS | |
| 248:17-249:8 | 401/402, 403, 701/702, OS | |
| 249:11-14 | 401/402, 403, 701/702, OS | 251:13-253:25 |
| 287:3-23 | | |
| 251:9-12 | | |
| 254:1-257:8 | 401/402, 403, 701/702 | 268:1-271:10 |
| 282:19-285:17 | 401/402, 403 | 278:13-281:4, 287:24-290:3 |
| 290:4-292:16 | 401/402, 403 | 292:17-298:1 |
| 298:2-7 | 401/402, 403, MC | |
| 298:10-299:2 | 401/402, 403 | 299:3-303:4 |

## SCHEDULE 12

| LAUREN MOSCATO (Deposition taken Aug. 12, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 303:5-6 | | |
| 303:12-21 | | 303:22-306:4 |
| 306:5-307:4 | 401/402, 403, 701/702 | 307:5-9 |
| 307:10-308:23 | 401/402, 403, 701/702 | 308:24-311:8 |
| 311:3-8 | 401/402, 403, MC | |
| 311:11-313:24 | 401/402, 403 | 311:25-313:18 |
| 327:10-330:22 | 401/402, 403, 701/702 | |
| 331:1-333:13 | 401/402, 403, AA, NR | 331:14-333:25 |

### SCHEDULE 12

| COLLIN MURRAY (Deposition taken Aug. 6, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 11:4-6; 12:1-8 | | 12:9-13 |
| 15:5-16 | | |
| 23:15-24:14 | 401/402, 403 | |
| 26:16-23 | 401/402, 403, 701/702 | 25:22-26:15 |
| 29:6-13 | | 28:2-6 |
| 33:24-34:19 | 401/402, 403 | 30:17-31:7 |
| 35:7-36:17 | 401/402, 403 | 34:20-35:6 |
| 36:18-37:5 | 401/402, 403 | |
| 37:19-38:22 | 401/402, 403 | |
| 39:9-40:23 | 401/402, 403, 701/702 | 40:24-41:22 |
| 50:21-52:6 | 401/402, 403, 701/702 | |
| 57:6-9 | 401/402, 403, 701/702 | |
| 58:4-9 | 401/402, 403, 701/702 | |
| 59:8-60:4 | 401/402, 403, 701/702 | |
| 88:19-92:19 | | |
| 95:9-19 | | 97:5-13 |
| 151:12-153:2 | 401/402, 403, 701/702, PMIL | |
| 153:4-6 | 401/402, 403, 701/702, PMIL | |
| 153:8-18 | 401/402, 403, 701/702, PMIL | 153:20-154:19 |
| 171:9-20 | 401/402, 403, PMIL | |
| 171:22-172:19 | 401/402, 403, PMIL | |
| 176:24-177:6 | 401/402, 403, 701/702, PMIL | 177:7-178:8 |
| 213:3-6 | 401/402, 403, 701/702, PMIL | 212:8-213:1 |
| 213:14-21 | 401/402, 403, 701/702, PMIL | 213:7-13, 213:22-214:10 |
| 222:6-16 | 401/402, 403, 701/702, PMIL | |
| 223:20-224:9 | 401/402, 403 | |

## SCHEDULE 12

| COLLIN MURRAY (Deposition taken Aug. 6, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 232:20-233:14 | 401/402, 403, 701/702, PMIL | 233:15-234:4 |
| 281:6-282:4 | 401/402, 403, 701/702, PMIL | |
| 282:6-19 | 401/402, 403, 701/702, PMIL | |
| 285:15-19 | 401/402, 403, 701/702, PMIL | |
| 311:9-12 | | |
| 311:16-21 | | |
| 312:21-24 | | |
| 314:17-315:5 | | 315:6-7 |
| 316:1-10 | | |
| 317:5-9 | | |
| 317:15-318:2 | | |
| 318:11-319:12 | | 319:13-320:8 |
| 320:9-12 | | 320:13-321:7, 322:6-323:3 |
| 324:20-325:21 | 401/402, 403 | 323:18-324:19 |

## SCHEDULE 12

| DEMETRIOS (JIM) PETROU (Deposition taken Apr. 19, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 16:18-23 | | |
| 27:4-28:18 | 401/402, 403, MC | 26:21, 26:25-27:3 |
| 35:4-22 | 401/402, 403 | 38:7-39:1, 41:13-44:15 |
| 58:1-59:18 | 401/402, 403 | 47:24-51:11 |
| 91:6-21 | 401/402, 403, MC | 91:22-92:3 |
| 92:13-98:5 | 401/402, 403 | 253:8-18 |
| 98:19-21 | 401/402, 403 | 253:21-255:2 |
| 98:24-99:7 | 401/402, 403 | |
| 99:17-20 | 401/402, 403 | |
| 106:4-107:9 | 401/402, 403 | 107:15-108:11 |
| 167:2-170:22 | 401/402, 403 | |
| 170:24-172:3 | 401/402, 403 | 259:1-11, 259:22-260:1 |
| 172:6-173:9 | 401/402, 403 | 260:3-16, 260:19-261:9 |
| 173:12-174:10 | 401/402, 403 | 262:18-23, 263:3-17 |
| 174:12-180:4 | 401/402, 403 | 267:13-18, 267:21-268:7 |
| 181:1-15 | 401/402, 403, 801/802, V | |
| 185:13-186:1 | 401/402, 403 | |
| 231:1-19 | 401/402, 403 | |

**SCHEDULE 12**

| STEVEN RADERSTORF (Deposition taken Aug. 27, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 3:6-25 | | |
| 4:9-6:10 | | |
| 11:13-18:17 | 401/402, 403 | 19:18-22:25 |
| 24:24-25:10 | 401/402, 403 | 25:24-27:9 |
| 84:21-85:8 | 401/402, 403 | 81:1-84:20 |

**SCHEDULE 12**

| CLAUDIA SCHULZ KENDALL (Deposition taken Aug. 14, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 4:9-13 | | |
| 4:22-9:12 | | |
| 4:18-21 | | |
| 10:4-11:17 | | |
| 11:18-12:2 | 602/LOF, OS | 12:3-10 |
| 12:11-18 | 401/402, NR, OS | 12:19-25 |
| 13:8-14:2 | | 14:3-8 |
| 14:9-16:2 | | |
| 16:3-16 | | |
| 17:12-18:4 | | 18:5-11 |
| 18:12-19:7 | | 19:8-22:5 |
| 22:6-23:8 | 602/LOF | |
| 24:10-26:22 | | 26:23-27:3 |
| 27:15-27:25 | | |
| 28:8-10 | | |
| 28:15-29:7 | | 29:8-30:9 |
| 38:14-20 | 401/402, 403, NR, OS | 37:13-38:13 |
| 39:22-43:22 | 401/402, 403 | |
| 54:15-23 | | |
| 55:11-57:16 | | |
| 57:17-59:19 | | |
| 62:21-63:14 | 401/402, 403 | |
| 63:15-65:24 | 401/402, 403 | |
| 66:20-67:6 | 401/402, 403, OS | 65:25-66:19 |
| 67:7-68:2 | 401/402, 403, OS, 602/LOF | 69:14-70:7 |
| 72:4-75:4 | 401/402, 403, OS, 602/LOF | 70:13-72:3; 75:5-17 |

## SCHEDULE 12

| CLAUDIA SCHULZ KENDALL (Deposition taken Aug. 14, 2020) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 77:8-22 | | 77:23-78:10 |
| 85:25 | | |
| 94:17-95:13 | 401/402, 403, 602/LOF | 95:14-19 |
| 103:3-21 | | |
| 103:22-25 | | |
| 104:21-106:10 | | 104:2-20 |
| 108:25-109:6 | | |
| 111:13-23 | 602/LOF | 109:22-111:12; 113:3-17 |
| 116:10-118:11 | 401/402, 403, V, 602/LOF | |
| 119:10-122:12 | 401/402, 403 | 122:13-20 |
| 127:20-129:9 | 401/402, 403 | |
| 129:10-15 | 401/402, 403 | |
| 131:25-132:13 | 401/402, 403 | 132:14-19 |
| 134:24-138:24 | 401/402, 403, 602/LOF | 133:23-134:23, 138:25-139:3 |
| 139:4-15 | | |
| 140:3-142:6 | 401/402, 403 | |
| 142:13-20 | 401/402, 403 | 142:21-143:2 |
| 143:3-7 | 401/402, 403 | |
| 143:8-145:25 | 401/402, 403, 701/702 | |
| 154:4-155:22 | 401/402, 403, OS, 602/LOF | |
| 157:19-158:2 | 401/402, 403, 701/702 | 156:13-24, 157:14-18 |
| 159:7-160:5 | 401/402, 403 | 58:8-12, 158:24-159:4 |

23

**SCHEDULE 12**

| MATTHEW SPRAGUE (Deposition taken May 9, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 13:16-14:6 | | |
| 127:4-131:11 | 401/402, 403 | |

**SCHEDULE 12**

| VINCENT TURTURRO (Deposition taken Apr. 11, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 27:15-17 | | |
| 27:22-28:25 | | |
| 30:21-31:9 | | |
| 44:8-45:11 | 401/402, 403 | |
| 58:21-23 | 401/402, 403 | |
| 59:1-5 | 401/402, 403 | |
| 59:8 | 401/402, 403 | |
| 38:22-39:5 | 401/402, 403, 602/LOF, 701/702 | 34:3-35:19, 35:22-36:17 |
| 151:21-25 | 401/402, 403, 602/LOF, V | |
| 152:3-17 | 401/402, 403, 602/LOF, V | |
| 61:4-5; | 401/402, 403, 701/702 | |
| 61:9; | 401/402, 403, 701/702 | |
| 61:11-62:22 | 401/402, 403, 701/702 | |
| 62:25-63:6 | 401/402, 403, 701/702 | |
| 63:9-20 | 401/402, 403, 701/702 | |
| 63:22-64:5 | 401/402, 403, 701/702 | |
| 64:8-65:21 | 401/402, 403, 701/702 | |
| 65:24-66:4 | 401/402, 403, 701/702 | |
| 90:4-12 | 401/402, 403, 701/702 | |
| 90:14-21 | 401/402, 403, 701/702 | |
| 90:23-91:3 | 401/402, 403, 701/702 | 91:4-5, 91:7-20 |
| 92:16-17 | 401/402, 403, 701/702 | |
| 92:20-93:2 | 401/402, 403, 701/702 | |
| 93:8-11 | 401/402, 403, 701/702 | |
| 93:13-14 | 401/402, 403, 701/702 | |
| 93:16-23 | 401/402, 403, 701/702 | |

### SCHEDULE 12

| VINCENT TURTURRO (Deposition taken Apr. 11, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 93:25-94:8 | 401/402, 403, 701/702 | |
| 95:10-12 | 401/402, 403, 701/702 | |
| 95:15 | 401/402, 403, 701/702 | |
| 105:21-106:5 | 401/402, 403 | |
| 106:7-12 | 401/402, 403, V | |
| 108:15-16 | 401/402, 403, V | |
| 108:18-109:2 | 401/402, 403, V | |
| 109:4-6 | 401/402, 403, V | |
| 109:15-17 | 401/402, 403, V | |
| 109:19-24 | 401/402, 403, V | |
| 110:1-3 | 401/402, 403, 602/LOF, V | |
| 110:6-14 | 401/402, 403, 602/LOF, V | |
| 110:16 | 401/402, 403, V | |
| 117:15-22 | 401/402, 403, V | |
| 118:5-10 | 401/402, 403, V | |
| 118:12 | 401/402, 403, V | |
| 120:6-10 | 401/402, 403, V | |
| 120:12-17 | 401/402, 403, V | |
| 122:9-11 | 401/402, 403, V, MC | |
| 122:14-18 | 401/402, 403, V, MC | |
| 122:20 | 401/402, 403, V, MC | |
| 123:9-10 | 401/402, 403, V | |
| 123:12-21 | 401/402, 403, V | 123:22-124:6, 124:8-10 |
| 124:12-125:2 | 401/402, 403, V | |
| 125:4-11 | 401/402, 403, V | |
| 125:13-126:10 | 401/402, 403, V | |
| 126:12-127:5 | 401/402, 403, V | |
| 127:7-21 | 401/402, 403, V | 137:1-2, 137:4-20 |

## SCHEDULE 12

| VINCENT TURTURRO (Deposition taken Apr. 11, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 221:9-13 | 401/402, 403, V, MC | |
| 222:17-19 | 401/402, 403 | |
| 222:21-24 | 401/402, 403 | |
| 233:22-23 | 401/402, 403, 701/702, MC | 233:2-4, 233:12-18 |
| 233:25-234:3 | 401/402, 403, 701/702, MC | 234:5-13, 236:4-7, 236:1, 236:12-237:8 |
| 243:24-25 | 401/402, 403, 701/702, MC | 241:4-7, 241:10-19, 241:21-24, 242:2-6 |
| 244:2-3 | 401/402, 403, 701/702, MC | 242:8-10, 242:12-24, 243:14-18, 243:21-22 |

### SCHEDULE 12

| KEVIN WILCOX (Deposition taken Apr. 18, 2017) | | |
|---|---|---|
| **Defendants' Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter Designations** |
| 14:5-13 | | |
| 130:3-4; | 401/402, 403 | |
| 130:6-14 | 401/402, 403 | |
| 158:19-161:4 | 401/402, 403, MC, V | 156:3-157:9 |
| 161:7-18 | 401/402, 403, MC, V | 161:19-162:5, 162:8-20, 163:3-6 |
| 186:4-188:10 | 401/402, 403, V | |
| 188:13-19 | 401/402, 403, V | |

# SCHEDULE 13

SCHEDULE 13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

                 Plaintiffs,

       v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

                 Defendants.

CA. No. 18-1869-SB/CJB

## **STATEMENT OF WHAT PLAINTIFFS INTEND TO PROVE**

SCHEDULE 13

Pursuant to Local Rule 16.3(c)(8), Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively "Boston Scientific" or "Plaintiffs") submit the following brief statement of the principal matters Plaintiffs intend to prove at trial. This statement is not exhaustive, and Plaintiffs reserve the right to prove any matter identified in its pleadings, discovery responses, expert reports, and the accompanying statement of issues of facts and issues of law that remain to be litigated at trial. Plaintiffs may also provide additional proof to rebut any proof offered by Defendants before and during trial, in response to rulings by the Court, or for other good cause. Plaintiffs reserve the right to modify or amend this Statement to the extent necessary to reflect any future rulings by the Court, to supplement or amend this Statement to fairly respond to any new issues that Defendants may raise, or to address any new discovery produced by Defendants. Plaintiffs incorporate by reference their expert reports in support of any proof to be presented by expert testimony.

## I.     INFRINGEMENT

### A.     Literal Infringement

1.     Boston Scientific intends to prove that Defendants are liable for direct infringement of claims 1, 3, 7, and 13 of the '245 Patent.

SCHEDULE 13

2.      Boston Scientific intends to prove that Defendants are liable for indirect infringement of claim 15 of the '245 Patent.

3.      Boston Scientific intends to prove that Defendants are liable for direct infringement of claims 8 and 9 of the '371 Patent.

4.      Boston Scientific intends to prove that Defendants are liable for direct infringement of claims 1-3, 6, and 8-12 of the '725 Patent.

**B.      Doctrine of Equivalents**

5.      Boston Scientific intends to prove that, to the extent Defendants do not literally infringe claims 1 and 3 of the '245 patent, claim 1 of the '371 patent, and claims 1 and 12 of the '725 patent either directly or indirectly, they are liable for infringement of those claims under the doctrine of equivalents.

## II.    WILLFULNESS

6.      Boston Scientific intends to prove that Defendants' infringement of the Asserted Claims of the Patents-in-Suit has been willful.

## III.   REMEDIES

7.      Boston Scientific intends to prove the amount of past damages to which it is entitled in the form of lost profits due to lost sales relating to Defendants' infringement of the Patents-in-Suit, beginning as of November 26, 2018.

SCHEDULE 13

8. Boston Scientific intends to prove the amount of past damages to which it is entitled in the form of a reasonable royalty relating to the portion of Defendants' infringing U.S. sales, beginning as of November 26, 2018, for which lost profits due to lost sales are not awarded.

9. Boston Scientific intends to prove that it is entitled to enhanced damages pursuant to 35 U.S.C. § 284, including, but not limited to, as a result of Defendants' willful infringement of one or more of the Asserted Claims of the Patents-in-Suit.

10. Boston Scientific intends to prove that it is entitled to a permanent injunction pursuant to 35 US.C. § 283, enjoining each Defendant, its officers, agents, servants, employees, and those persons acting in active concert or participation with all or any of them from making, using, offering to sell, or selling the Accused Devices within the United States, or importing the Accused Devices into the United States, or contributing to or inducing such activities by another, prior to the expiration of the Asserted Claims of the Patents-in-Suit.

## IV.   EXCEPTIONAL CASE

11. Boston Scientific intends to prove that this is an exceptional case under 35 U.S.C. § 285, and that Boston Scientific should be awarded attorneys' fees and costs.

SCHEDULE 13

## V.    VALIDITY

12.    Boston Scientific will show that Defendants have failed to prove by clear and convincing evidence that any Asserted Claim of the '245 Patent, '371 Patent, or '725 Patent is invalid as anticipated.

13.    Boston Scientific will show that Defendants have failed to prove by clear and convincing evidence that any Asserted Claim of the '245 Patent, '371 Patent, or '725 Patent is invalid as obvious.

14.    Boston Scientific will show that Defendants have failed to prove that collateral estoppel renders any Asserted Claim of the '371 Patent or '725 Patent invalid.

15.    Boston Scientific will show that Defendants have failed to prove by clear and convincing evidence that Claim 3 of the '245 Patent or any Asserted Claim of the '371 Patent or '725 Patent is invalid as indefinite.

16.    Boston Scientific will show that Defendants have failed to prove by clear and convincing evidence that any Asserted Claim of the '245 Patent, '371 Patent, or '725 Patent is invalid as lacking written description.

17.    Boston Scientific will show that Defendants have failed to prove by clear and convincing evidence that any Asserted Claim of the '245 Patent, '371 Patent, or '725 Patent is invalid as not enabled.

SCHEDULE 13

## VI.   PATENT MISUSE

18.     Boston Scientific will show that Defendants have failed to prove that Boston Scientific has pursued this litigation in the interest of impermissibly restraining trade or by pursuing infringement for patent claims that it knows or reasonably should know are not infringed and/or are invalid or unenforceable, or by seeking damages or other relief beyond what is supported by law.

19.     Boston Scientific objects to Defendants' assertion of this defense and the allegations in support of this defense set forth in Defendants' portions of this Order.  To the extent Defendants are permitted to introduce such evidence, Boston Scientific intends to rebut the substance of those allegations.

# SCHEDULE 14

SCHEDULE 14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

Plaintiffs,

v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

Defendants.

CA. No. 18-1869-SB/CJB

## <u>STATEMENT OF WHAT DEFENDANTS INTEND TO PROVE</u>

SCHEDULE 14

## TABLE OF CONTENTS

A.   No Infringement of Any Asserted Patent Claim ................................... 3

B.   Invalidity of All Asserted Patent Claims ............................................ 4

C.   Unenforceability .............................................................................. 5

D.   Patent Misuse .................................................................................. 6

E.   Alleged Damages / Relief / Willful Infringement ................................ 8

Defendants respectfully submit this summary of the principal points we intend to prove at trial. This summary provides a high-level overview of Defendants' case, as opposed to an exhaustive or detailed statement of points Defendants intend to prove at trial. Defendants further refer to and incorporate herein their Statements of the Issues of Fact and Law that remain to be litigated, which further identify matters Defendants may prove at trial. Defendants reserve the right to supplement or amend this Statement, including in response to Court rulings on pending motions and Plaintiffs' further pretrial disclosures, and to offer additional proof in response to evidence or argument presented at trial.

Nothing in this statement is intended to admit or suggest the existence of any genuine issue of material fact that might preclude summary judgment or any other ruling by the Court as a matter of law. Defendants further address herein certain issues reserved for resolution by the Court, if necessary, in post-trial proceedings, including issues under 35 U.S.C. § 285 and relating to injunctive relief.

### SUMMARY OF WHAT DEFENDANTS INTEND TO PROVE

1.     Plaintiffs have characterized themselves in this action as the "innovation leader" in the field of hemostasis clips ("hemoclips") in an effort to promote patent infringement and damages claims that are without merit and to impugn the good faith and reasonableness of Defendants' business practices. Defendants will prove at trial that Plaintiffs' self-characterization is false.

SCHEDULE 14

2.      Defendants will prove that Plaintiffs have in fact been slow in bringing new hemoclip devices and technologies to the market, and even their belated development efforts have been marked by repeated failures, device recalls, and products that have failed to adequately meet physician and patient needs. Plaintiffs routinely have responded to competitors' improvements in hemoclip device performance with aggressive business tactics and unfounded legal threats.

3.      Defendants further will prove that Plaintiffs built a dominant market position in the U.S. largely by use of intricate group contracts and pricing programs, which have had the effect of compelling institutions to purchase Plaintiffs' hemoclip products at excessive prices.

4.      Using Plaintiffs' own internal documents and employee testimony, Defendants will prove that Plaintiffs have sought to exclude Defendants from the U.S. market because Defendants offer hemoclip products with new features that benefit physicians and patients at reasonable prices, thereby posing a perceived threat to Plaintiffs' dominant market position and high profit margins.

5.      Relevant to the above points, and also for purposes of responding to any lost profits damages claim that remains in the case, Defendants will offer evidence regarding certain non-party medical device manufacturers and marketers of hemoclip devices, including but not limited to Olympus Corporation ("Olympus") and Cook Medical ("Cook"). Such evidence is important to

2

SCHEDULE 14

explaining the parties' conduct and market positions and to evaluating the truth of

Plaintiffs' claims about their role in inventing and developing hemoclip devices.

Defendants will also offer evidence regarding other non-parties that manufacture

and/or market hemoclip devices to explain that Plaintiffs' claims for damages and

other relief are baseless.

### A.   No Infringement of Any Asserted Patent Claim

6.     Defendants will present evidence that Micro-Tech has sold three

different device types relevant to this action: (1) SureClip® devices with the

"Original" or "J-Hook" configuration, which were sold in the United States from

2015 through 2019; (2) SureClip® devices with the "Buckle" configuration, which

have been sold in the United States beginning in 2019, and (3) Lockado® devices,

which have been sold in the United States beginning in 2020. Micro-Tech also

manufactures hemoclip devices for ConMed Corporation, a medical technology

company based in New York State, that has sold those products in the United States

since 2016 under the DuraClip™ name. ConMed is not a party to this action.

7.     There are multiple differences between the SureClip Original, SureClip

Buckle, Lockado, and DuraClip devices, many of which are relevant to the jury's

consideration of disputed issues in the case, including infringement issues. In

particular, Lockado Devices differ substantially from the SureClip Devices in a

number of respects material to this action, including because Lockado Devices use

3

SCHEDULE 14

an attachment configuration that is completely different from any other Accused Devices, which significantly affects the nature of Plaintiffs' infringement claims and the evidence that will be presented at trial on those claims.

8.    Defendants will present evidence sufficient to rebut any allegation by Plaintiffs that any of Defendants' products directly infringe, literally or under the doctrine of equivalents, any of claims 1, 3, 7, and 13 of the '245 Patent.

9.    Defendants will present evidence sufficient to rebut any allegation by Plaintiffs that any of Defendants' products directly infringe, literally or under the doctrine of equivalents, any of claims 8 and 9 of the '371 Patent.

10.    Defendants will present evidence sufficient to rebut any allegation by Plaintiffs that any of Defendants products directly infringe, literally or under the doctrine of equivalents, any of claims 1-3, 6, and 8-12 of the '725 Patent.

11.    Defendants will present evidence sufficient to rebut any allegation by Plaintiffs that Defendants have induced infringement of claim 15 of the '245 Patent

**B.    Invalidity of All Asserted Patent Claims**

12.    Defendants will prove that each asserted claim of the '245 Patent, '371 Patent, and '725 Patent is invalid as anticipated.

13.    Defendants will prove that each asserted claim of the '245 Patent, '371 Patent, and '725 Patent is invalid as obvious.

4

SCHEDULE 14

14.     Defendants will prove that the final decision of the Federal Circuit in the '371 Patent IPR proceedings has collateral estoppel effect and that, as a consequence, Plaintiffs are estopped from taking positions with respect to the invalidity of the '371 Patent and '725 Patent contrary to the Federal Circuit's decision, and as a further consequence, that the asserted claims of the '371 Patent are invalid.

15.     Defendants will prove that claim 3 of the '245 Patent, and all asserted claims of the '371 Patent and '725 Patent are invalid as indefinite.

16.     Defendants will prove that the asserted claims of the '371 Patent and '725 Patent are invalid as lacking written description.

17.     Defendants will prove that the asserted claims of the '371 Patent and '725 Patent are invalid as not enabled.

### C.     Unenforceability

18.     Defendants will prove that the '245 Patent, the '371 Patent, and the '725 Patent are unenforceable due to inequitable conduct.

19.     As part of their proof of inequitable conduct, Defendants will prove that Olympus was among the first medical device manufacturers to seek FDA clearance to market a hemoclip device in the United States, which it did by filing the following 510(k) submissions with the FDA between 1996 and 2001: K013066 (filed 9/12/2001), K990687 (filed 3/1/1999), and K963160 (filed 8/14/1996). In

5

connection with its initial FDA 510(k) submission for the BSC Resolution I Device, Boston Scientific referred to and described the devices of the above Olympus 510(k) filings as the "Olympus Clip Fixing Devices," thereby reflecting Boston Scientific's knowledge of those Olympus devices. The "Olympus Clip Fixing Devices" described in those Olympus 510(k) filings were known or used in the United States prior to October 5, 2001.

### D.    Patent Misuse

20.    Defendants will prove that Plaintiffs have sought to exclude Defendants from the U.S. hemoclip market and to impermissibly restrain trade and competition in that market by asserting against Defendants and other competitors patent claims that Plaintiffs knew were not infringed and/or were invalid or unenforceable and by seeking damages and other relief beyond what is supported by law.

21.    To support their Patent Misuse defense, as well as to provide context for their invalidity case (discussed above) and rebut Plaintiffs's claims for lost profits damages (discussed further below), Defendants will introduce evidence of BSC's efforts to dominate the U.S. hemoclip market and to exclude competitors from that market, including by asserting patents that Plaintiffs knew or should have known were not infringed and/or invalid, and by attempting to disparage and unreasonably inhibit adoption of improved hemoclip products that better served physicians and patients than the products BSC marketed in the U.S.

22.     Defendants' proof will include evidence regarding BSC's three generations of Resolution Clips, beginning in 2005 with the first version, known as the "Resolution I" or "Resolution Legacy" Clips. BSC continues to sell and derive substantial profit margins from these clips today, despite their outdated technology and lack of features. BSC next began marketing Resolution II Clips in early 2011, but that product was removed from the U.S. market in July 2011 pursuant to an FDA-required recall due to safety issues and risk to patient health. The third BSC Resolution Clip devices marketed in the US are referred to in this action as the "Resolution 360 Clips," which BSC first marketed in the U.S. in 2016. More recently, in late 2020, BSC introduced a new version of the Resolution 360 Clip that sought to add features to the clip that had been available for years in hemoclip products marketed in the U.S. by Defendants and other competitors.

23.     Defendants will introduce evidence that the recall of the Resolution II Clip, coupled with Cook's introduction of more advanced products with features not available in the Resolution I products, caused BSC to lose substantial market share from 2012 to 2015 (from over 90% to less than 70%), *before* Defendants' entered the U.S. hemoclip market.

24.     Defendants will show that the above decline in Plaintiffs' U.S. market share, which resulted from Plaintiffs' own failure to develop products that met the needs of physicians and patients, motivated Plaintiffs to file lawsuits against Cook

and later Defendants asserting claims Plaintiffs knew to be without merit and making claims for excessive and enhanced damages beyond what could be supported by a reasonable or good faith application of governing law in an effort to maintain a dominant market position and exclude Defendants from the U.S. market.

### E.   Alleged Damages / Relief / Willful Infringement

25.   Defendants will present sufficient evidence to rebut any showing by Plaintiffs that Plaintiff Boston Scientific Corporation is an exclusive licensee or has standing to sue.

26.   To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, Defendants will present evidence sufficient to rebut any showing by Plaintiffs that they are entitled to lost profits damages under 35 U.S.C. § 284 for some or all of the period of time after the date Plaintiffs filed this action (November 26, 2018), which is the earliest date from which Plaintiffs have sought such damages.

27.   To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, Defendants will prove that the only appropriate form of damages in this action is a reasonable royalty, and they further will provide the jury with an appropriate method for determining such damages.

28.   Defendants further will show that the amount of any damages requested by Plaintiffs is excessive and fails to take account of a number of factors, including

the ready availability to Defendants of non-infringing alternatives and the existence of many alternative suppliers of hemoclip products for hemoclip distributors and purchasers. In addition to Defendants, Olympus and Cook, other non-party companies that manufacture and market hemoclip products include Diversatek, Med Nova (Zhejiang Chuangxiang Medical Technology Co. Ltd.), Anrei Medical, Finemedix, AGS Medtech, Key Surgical, Inc., Nova LightSystems, Zhuji Pengtian Medical Equipment Co., Ltd., Endo-Therapeutics, and Ovesco.

29.     To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, Defendants will present evidence sufficient to rebut any showing by Plaintiffs that any of Defendants' infringement has been willful after the date Plaintiffs filed this action (November 26, 2018) which is the earliest date from which Plaintiffs may argue any infringement was willful.

30.     To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, Defendants will present evidence sufficient to rebut any showing by Plaintiffs that Plaintiffs are entitled to enhanced damages, exceptional case treatment, or attorneys' fees.

31.     To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, Defendants will present evidence sufficient to rebut any showing by Plaintiffs that Plaintiffs are entitled to costs or pre- or post-judgment interest.

SCHEDULE 14

32.    To the extent Plaintiffs prove Defendants are liable for any infringement of the '245, '371, or '725 Patents, Defendants will present evidence sufficient to rebut any showing by Plaintiffs that Plaintiffs are entitled to an injunction.

33.    Defendants will prove that this is an exceptional case for which the Court may award Defendants attorneys' fees and the amount of attorneys' fees and other relief that should be awarded to Defendants.

34.    Defendants will prove the amount of costs that should be awarded to Defendants.

# SCHEDULE 15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

                Plaintiffs,

    v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

CA. No. 18-1869-SB-CJB

### BOSTON SCIENTIFIC'S MIL #1 TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO COMPARISONS OF BOSTON SCIENTIFIC'S DEVICES TO DEFENDANTS' DEVICES OR PRIOR ART DEVICES FOR PURPOSES OF NON-INFRINGEMENT OR INVALIDITY

Infringement requires comparing the Accused Devices to the asserted patent claims.  Invalidity requires comparing the asserted patent claims to the prior art.  Neither involve comparing the patent holders' device to the accused device or the prior art, much less an FDA submission.  Accordingly, under F.R.E. 401 and 403, Defendants should be barred from making any such improper comparisons in attempting to prove non-infringement or invalidity.

**Infringement**:  For purposes of infringement, it is error to compare "the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent." *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423

(Fed. Cir. 1994) (citing *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985)

("Infringement … is determined by comparing the accused device with the claims

in suit, not with a preferred or commercial embodiment of the patentee's claimed

invention."). But that is exactly what Defendants intend to do at trial.

 Such comparisons are

irrelevant, prejudicial, and regularly excluded in patent cases. *See Clintec*

*Nutrition Co. v. Baxa Corp.*, 1998 WL 560284, at *8 (N.D. Ill. Aug. 26, 1998)

("[The disputed] evidence is not relevant to infringement since [plaintiff]'s actual

[device] may not be compared with [defendant's device]. It is [plaintiff]'s claims

that count. The possible prejudicial effect is obvious."); *Smartflash LLC v. Apple*

*Inc.*, 2015 WL 11089593, at *1 (E.D. Tex. Jan. 29, 2015) (precluding defendant

from "presenting arguments or opinions that compare or contrast the accused

products to smart cards or commercial embodiments"); *EcoServices, LLC v.*

2

*Certified Aviation Servs., LLC*, 2018 WL 3090013, at *3 (C.D. Cal. June 19, 2018); *GenSci OrthoBiologics v. Osteotech, Inc.*, 2001 WL 36239743, at *7 (C.D. Cal. Oct. 18, 2001).

**Invalidity**:  Establishing invalidity requires comparison of the asserted claims to the prior art, not the patentee's commercial embodiment of the patent.  It is hornbook law that the proper comparison for invalidity purposes is of the "properly construed claim to the prior art."  *See Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003).

3

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

The argument is a legal non-sequitur and would create substantial risk of jury confusion.  The regulatory definition of "substantial equivalence" and patent law framework for obviousness are wholly different.  Whether there is "substantial equivalence" in safety between two medical devices says nothing about whether they are the same for purposes of validity.  As a result, the Federal Circuit has emphasized that "FDA equivalence is irrelevant to patent law because it involves fundamentally different inquiries."  *The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348 n.3 (Fed. Cir. 2008).

Defendants intend to argue that Boston Scientific's claim in the Res-Clip 510(k) of "substantial equivalence" to the prior art Olympus device is evidence of obviousness.  It is not.  The potential for jury confusion on this issue is real, and Defendants should be precluded from introducing evidence or argument in support of such theories at trial under F.R.E. 401 and 403.

4

Dated: May 28, 2021

Of Counsel:

Kevin M. Flannery
Daniel Roberts
DECHERT LLP
Cira Centre, 2929 Arch St.
Philadelphia, PA 19104
(215) 994-2000
kevin.flannery@dechert.com
daniel.roberts@dechert.com

Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel. (302) 777-0300
Fax (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 750 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: May 28, 2021

# EXHIBIT A

**REDACTED**

# EXHIBIT B

**REDACTED**

# EXHIBIT C

**REDACTED**

# EXHIBIT D

# REDACTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) ) | C.A. No. 18-1869-CFC-CJB |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE #1 TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO COMPARISONS OF BOSTON SCIENTIFIC'S DEVICES TO DEFENDANTS' DEVICES OR PRIOR ART DEVICES FOR PURPOSES OF NON-INFRINGMENT OR INVALIDITY**

Plaintiffs' MIL #1 should be denied because it seeks a categorical or blanket exclusion of evidence that *plainly is admissible* based on an unfounded hypothesis that Defendants' might try to use it at trial for some improper purpose. Any such objection is at best premature and not proper grounds for a motion *in limine*.

## ARGUMENT

1.     As to infringement, Plaintiffs fail to point to any specific instance of *Defendants* comparing accused products to Boston Scientific's Resolution clips to prove non-infringement.  Plaintiffs instead cite to the following:



█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████

Finally, contrary to Plaintiffs' Motion, Federal Circuit case law "does not contain a blanket prohibition against comparing the accused product to a commercial embodiment." *Adams Respir. Ther., Inc. v. Perrigo Co*., 616 F.3d 1283, 1288-89 (Fed. Cir. 2010); *accord, e.g.*, *Almirall LLC v. Taro Pharm. Indus. Ltd*., No. 17-cv-663, 2019 WL 316742, at *4 (D. Del. Jan. 24, 2019) (denying motion *in limine* to exclude evidence that compares the accused ANDA product to the patentee's NDA).

2.     As to invalidity, it is unclear what Plaintiffs' motion seeks to exclude, which itself is grounds to deny the motion. ████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████ Plaintiffs' sole legal support, *Johns Hopkins Univ. v. Datascope Corp*., 543 F.3d 1342, 1348 n.3 (Fed. Cir. 2008), merely holds that a 510(k) "substantial equivalence" determination does not establish infringement; it does not support a blanket *in limine* exclusion of 510(k) submissions.

2



Additionally, comparisons between the Olympus clips and Resolution clips are highly probative of the nexus requirement in secondary considerations. Boston Scientific alleges secondary considerations such as commercial success and industry praise based on its Resolution device. A comparison of prior art Olympus clips and Resolution clips shows that to the extent the Resolution clips have been commercially successful and praised, it is attributed to features that had already been in prior art Olympus clips. *Ormco Corp. v. Align Tech., Inc*., 463 F.3d 1299, 1312 (Fed. Cir. 2006) ("if the feature that creates the commercial success was known in the prior art, the success is not pertinent").

For the foregoing reasons, the Court should deny Plaintiffs' MIL #1.

ASHBY & GEDDES

*Of Counsel:*                                          */s/ John G. Day*

Steven J. Routh                                       _____
T. Vann Pearce, Jr.                                   John G. Day (#2403)
Christopher Higgins                                   Andrew C. Mayo (#5207)
ORRICK, HERRINGTON & SUTCLIFFE LLP                    500 Delaware Avenue, 8th Floor
Columbia Center                                       P.O. Box 1150
1152 15th Street, N.W.                                Wilmington, DE  19899
Washington, DC  20005-1706                            (302) 654-1888
(202) 339-8400                                        jday@ashbygeddes.com
                                                      amayo@ashbygeddes.com

Yufeng (Ethan) Ma                                     *Attorneys for Defendants*
ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 7, 2021

# Exhibit A

**REDACTED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | |
| Plaintiffs, | CA. No. 18-1869-SB-CJB |
| v. | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | |

**BOSTON SCIENTIFIC'S REPLY IN SUPPORT OF MIL #1 TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO COMPARISONS OF BOSTON SCIENTIFIC'S DEVICES TO DEFENDANTS' DEVICES OR PRIOR ART DEVICES FOR PURPOSES OF NON-INFRINGEMENT OR INVALIDITY**

Defendants try to justify improper comparison evidence under Rule 801(d)(2), but that Rule makes corporate testimony not hearsay; it doesn't make it relevant or admissible consistent with Rule 403, issues which Defendants ignore. Testimony about irrelevant/prejudicial topics does not become admissible simply because Defendants elicit it at corporate depositions.

Defendants' cases—*Adams* and *Almirall*—were narrow holdings in ANDA cases permitting comparisons only when commercial products are limited to and coextensive with "all of the claim limitations." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1288-89 (Fed. Cir. 2010); *Almirall LLC v. Taro Pharm. Indus. Ltd.*, 2019 WL 316742, at *4 (D. Del. Jan. 24, 2019). That narrow

1

exception is inapplicable here, where the "commercial embodiment includes

several features not found in the asserted claims, including features from

dependent, unasserted claims." *Gillette Co. LLC v. Dollar Shave Club, Inc.*, 2019

WL 1254773, at *1-2 (D. Del. Mar. 19, 2019).

Further, Defendants are wrong that the inventors' knowledge of Olympus

clips is relevant to obviousness, because "[p]atentability shall not be negatived by

the manner in which the invention was made."[1]  35 U.S.C. § 103.

Finally, the relevant prior art inquiry concerning secondary

indicia/considerations of non-obviousness is whether a particular "claimed feature"

was known—which involves comparing prior art to patent claims, not commercial

embodiments. *Ormo Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir.

2006).

| | |
|---|---|
| Dated: June 11, 2021 | Respectfully submitted, |
| Of Counsel: | FARNAN LLP |
| Kevin M. Flannery | /s/ Brian E. Farnan |
| Daniel Roberts | Brian E. Farnan (#4089) |
| DECHERT LLP | Michael J. Farnan (#5165) |
| Cira Centre, 2929 Arch St. | 919 North Market Street, 12th Floor |
| Philadelphia, PA 19104 | Wilmington, DE 19801 |
| (215) 994-2000 | Tel. (302) 777-0300 |
| kevin.flannery@dechert.com | Fax (302) 777-0301 |

---

[1] To the extent the inventors' knowledge of Olympus is relevant to unenforceability, that issue will not be tried to the jury.

daniel.roberts@dechert.com

bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 249 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: June 11, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,<br><br>                              Plaintiffs,<br><br>         v.<br><br>MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | CA. No. 18-1869-SB-CJB |

## BOSTON SCIENTIFIC'S MIL #2 TO EXCLUDE EVIDENCE RELATED TO PTAB PROCEEDINGS REGARDING THE '371 PATENT

Boston Scientific moves to preclude evidence or argument at trial concerning *inter partes* review (IPR) proceedings before the PTAB regarding patent claims not asserted in this case.[1]  Rulings in those proceedings are not proper evidence for a jury to consider and would cause juror confusion, unfairly prejudice Boston Scientific, and waste time.  Accordingly, such evidence should be excluded under F.R.E. 403.

Federal courts in this District and elsewhere routinely exclude evidence of factual findings, decisions, and legal conclusions from IPR and other PTAB proceedings as having minimal probative that is substantially outweighed by the unfair prejudice and confusion that would be sowed if such evidence were

---

[1] *See Cook Grp. Inc. v. Bos. Sci. Scimed, Inc.*, 809 F. App'x 977 (Fed. Cir. 2020).

1

admitted.  *See, e.g.*, *Interdigital Commc'ns Inc. v. Nokia Corp.*, 2014 WL 8104167, at *1 (D. Del. Sept 18, 2014); *Personalized User Model, L.L.P. v. Google Inc.*, 2014 WL 807736, at *3 (D. Del. Feb. 27, 2014); *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, 2016 WL 4238769, at *2-3 (W.D. Mich. Jan. 28, 2016); *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 978731, at *8 (C.D. Cal. Feb. 28, 2020); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 2017 WL 4570787, at *6 (E.D. Wis. Oct. 12, 2017).  Indeed, in *Reckitt Benckiser Pharm. Inc. v. Watson Labs., Inc.*, 2015 U.S. Dist. LEXIS 167982, at *2 (D. Del. Dec. 16, 2015), this Court excluded such evidence in a bench trial, where potential jury confusion was not an issue.

The evidence has little probative value, given that Boston Scientific only asserts '371 patent claims 8 and 9, which the PTAB did not address.  Each patent claim stands on its own, is entitled to the statutory presumption of validity, and can be proven invalid only by clear and convincing evidence.  *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1309-10 (Fed. Cir. 2011).

Moreover, problems arise because the PTAB applies "different standards, procedures and presumptions" than the jury must apply.  *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2014 WL 5023098, at *2 (W.D. Wis. Oct. 8, 2014).  Here, the PTAB applied a lesser burden of proof (preponderance of the evidence) and different claim construction standard (broadest reasonable interpretation), and it

construed the claims differently than this Court has.[2]  Ex. A (PTAB Decision) at 4,

10-14.  Accordingly, "evidence concerning the [PTAB's] proceedings is irrelevant

and highly prejudicial to the jury's determination of the validity of the patents."

*Ultratec*, 2014 WL 5023098, at *2; *IA Labs CA, LLC v. Nintendo Co.,* 857 F.

Supp. 2d 550, 552 (D. Md. 2012) ("[T]he Court agrees with the vast majority of

courts that [] evidence [of IPR proceedings] has little relevance to the jury's

independent deliberations on the factual issues underlying the question of

obviousness").

　　　"[T]he complexity involved in giving the full context" of the PTAB's

decision would confuse jurors and prejudice Boston Scientific.  *Interdigital*, 2014

WL 8104167, at *1; *Vaporstream*, 2020 WL 978731, at *8.  Jurors are unlikely to

understand the differences between their role and the standards they apply, and

those of the PTAB.  *Magna*, 2016 WL 4238769, at *2-3 (explaining the difference

between district court litigation and related IPR proceedings would create

"needless jury confusion").  Moreover, "taking the time to explain to the jury the

difference between the proceedings and how the standards differ with respect to

_____

[2] For example, the PTAB construed "coupled to the sheath" as "linked together, connected, or joined to the sheath" (Ex. A at 11), whereas the Court construed it as "linked together, connected, or joined but not slidable within to the sheath" (D.I. 140).  In addition, the PTAB construed some terms the Court has not construed, and vice-versa.

invalidity, and so forth, would [] waste time." *Interdigital*, 2014 WL 8104167, at *1; *Magna*, 2016 WL 4238769, at *2-3; *see also Milwaukee Elec.*, 2017 WL 4570787, at *6 (properly orienting jurors "will consume enormous amounts of time").

These concerns are particularly acute here because the asserted patent claims were not addressed by the PTAB, adding an additional layer of complexity and confusion for the jury, and because the PTAB construed the claims differently than the Court has here (*see* fn 2 *supra*). *See Prisua Eng'g Corp. v. Samsung Elecs. Co., Ltd.*, No. 16-21761, ECF No. 268 at 5 (S.D. Fla. Feb. 13, 2018) (excluding PTAB evidence because it "employed a different standard of review, considered different evidence, and made conclusions regarding an unasserted claim").

## CONCLUSION

The Court should exclude all evidence and argument concerning the rulings and outcome of the IPR proceedings.

Dated: May 28, 2021                     Respectfully submitted,

Of Counsel:                             FARNAN LLP

Kevin M. Flannery                       /s/ Brian E. Farnan
Daniel Roberts                          Brian E. Farnan (#4089)
DECHERT LLP                             Michael J. Farnan (#5165)
Cira Centre, 2929 Arch St.              919 North Market Street, 12th Floor
Philadelphia, PA 19104                  Wilmington, DE 19801
(215) 994-2000                          Tel. (302) 777-0300
kevin.flannery@dechert.com              Fax (302) 777-0301

4

daniel.roberts@dechert.com

bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 750 words, excluding the case caption, signature block, table of contents and table of authorities.


/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: May 28, 2021

# EXHIBIT A

Trials@uspto.gov                                                    Paper: 82
Tel: 571-272-7822                                    Entered: November 15, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

COOK GROUP INCORPORATED
and
COOK MEDICAL LLC,
Petitioner,

v.

BOSTON SCIENTIFIC SCIMED, INC.,
Patent Owner.

————————————

Case IPR2017-00135
Patent 8,974,371 B2

————————————

Before JAMES T. MOORE, JAMES A. TARTAL,
and ROBERT L. KINDER, *Administrative Patent Judges.*

KINDER, *Administrative Patent Judge.*

FINAL WRITTEN DECISION
*Inter Partes* Review
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2017-00135
Patent 8,974,371 B2

filed an additional Motion to Exclude Evidence.  Paper 71.  Supplemental oral argument was held before the Board on September 17, 2018.  Paper 80 ("Sep. Tr.").

We have jurisdiction under 35 U.S.C. § 6.  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a).  For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1, 3–5, and 10 are unpatentable.  Petitioner has not shown by a preponderance of the evidence that claims 7, 11–15 and 17 are unpatentable.  Additionally, we address the Parties' Motions to Exclude as set forth below.

## I.  BACKGROUND

*A.  The '371 Patent (Ex. 1027)*

The '371 patent is titled "Through the Scope Tension Member Release Clip," and claims "[a]n apparatus for applying clips to tissue[.]"  Ex. 1027, [54], 16:59.  The claimed invention relates to devices for causing hemostasis of a blood vessel through an endoscope.  *Id.* at 1:17–28.  As explained by the '371 patent, "[h]emostatic clipping tools have been inserted through endoscopes to deploy hemostatic clips which stop internal bleeding by clamping together the edges of a wound."  *Id.* at 1:21–23.

The Specification describes an assembly designed to provide multiple stages of "feedback" to the physician during such a procedure.  *Id.* at 1:44–62, 9:43–64.  This feedback allows the user, *inter alia*, to be "certain of the status of" the clip assembly during the deployment operation, reducing the likelihood of deployment of a clip at an incorrect location.  *Id.* at 1:33–35, 9:37–39.  For example, a control element is described as "frangible" such

4

IPR2017-00135
Patent 8,974,371 B2

## II.    CLAIM CONSTRUCTION

Petitioner identifies several terms for construction.  Pet. 8–10.  Claim construction is a legal determination based on a hierarchy of evidence – intrinsic evidence, including the claim language, the specification, and the prosecution history will direct our analysis.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).  Claims in an *inter partes* review are presently given the "broadest reasonable construction in light of the specification of the patent in which [they] appear[]."  37 C.F.R. § 42.100(b) (2016); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2136 (2016).  Below we construe terms that are necessary to resolve the controversy before us.

### A.  Bushing "Coupled to the Sheath"

Relying only on Patent Owner's litigation position from the related district court proceeding, Petitioner contends that "coupled to the sheath" means "slideable inside the sheath" and "the sheath confines the bushing." Pet. 9.  Petitioner provides no additional support.  The district court tentatively rejected this broad interpretation.  *See* Ex. 2003, 27–28 ("[T]he Court recommends that 'coupled to the sheath' be construed as 'linked together, connected, or joined, but not slidable inside the sheath.'").

Patent Owner contends that Petitioner's proposed construction of "coupled to the sheath" is "unreasonably broad," but provides little citation to the intrinsic record before us.  Prelim. Resp. 13–14.  Instead, Patent Owner notes that the plain and ordinary meaning of coupled is "linked together, connected, or joined," citing to an unrelated Federal Circuit decision as well as the related district court determination.  *Id.* at 14; Ex. 2003, 28.

10

IPR2017-00135
Patent 8,974,371 B2

In our proceeding, Petitioner has not provided persuasive evidence or argument to support its claim interpretation by merely pointing to what Patent Owner purportedly argued in district court. Based on the final record before us, "coupled to the sheath" means "linked together, connected, or joined" to the sheath. Our construction is consistent with the district court's analysis and reflects the common understanding of the term "coupled" in the mechanical arts to require more than simply abutting or contacting. *See generally Ex Parte Paul Robert Homrich*, Appeal 2014-005786, 2016 WL 3541285, at \*3 (PTAB, June 27, 2016) ("When used in mechanical systems, the plain and ordinary meaning of 'coupled' means to link together or connect," and coupled requires more than contact or abut.).

B.   *"Releasably Coupled" and "Removably Connected"*

Patent Owner contends that "the BRI of 'releasably coupled' and 'removably connected' is "coupled and capable of being released/removed within the body.'" PO Resp. 7 (citing Ex. 2029 ¶¶ 40–46). According to Patent Owner, "each of claims 1 and 11, by their express terms, require the capability to release or remove the 'bushing' and 'control member' (claim 1), or a 'control element' and a 'sheath' (claim 11), *within the body.*" *Id.*

Patent Owner notes that "[c]laim 1 is directed to '[a]n apparatus for applying clips to tissue' and includes a 'flexible sheath' that, 'in an *operative configuration*,' must 'extend[ ] *into a living body* to a target portion of tissue to be clipped' (emphasis added)." *Id.* Patent Owner points to two reasons why "the claims describe that, in the operative configuration, the bushing is within a living body." *Id.* First, the claim "further includes a 'bushing extending between a proximal end coupled to the sheath and a distal end releasably coupled to the capsule." *Id.* Secondly, "[b]ecause the distal end

IPR2017-00135
Patent 8,974,371 B2

of the flexible sheath extends into a living body, and the proximal end of the bushing is coupled to the sheath," then the claims require the bushing to also be within a living body. *Id.*

Likewise, Patent Owner contends that "the 'control member' must be 'releasably coupled' to the clip assembly while the 'control member' and the 'clip assembly' are within a living body in an operative configuration." *Id.* at 8.

After examining the relevant language of claim 11, Patent Owner similarly argues that "claim 11 requires: (1) a releasable connection between the distal end of the sheath and the capsule; and (2) a removable connection between the control element and the clip assembly, housed within the capsule, when both are within a living body for applying clips to tissue." *Id.* Patent Owner argues that the express language of claims 1 and 11 "requires the capability to release the capsule from the sheath and remove the connector element from the clip assembly *within the body*." *Id.*

Patent Owner points out that its interpretation is supported by "the specification, which uses the word 'release' consistently to refer to decoupling after the clip has been deployed while inside the body." *Id.* at 8–10 (citing Ex. 1027, 1:35–40, 3:46–50, 3:56–59, 5:3–7, 6:55–59, 9:28–31). Patent Owner also points out that the Specification warns of the importance of ensuring that the capsule and clip are released within the patient's body. *Id.* at 10 (citing Ex. 1027, 10:5–8 ("If this condition is not satisfied, a situation may occur where the clip assembly 106 is locked in place on the patient's tissue, but cannot be released from the clipping device 100. It will be apparent that this situation should be avoided.")). Thus, Patent Owner concludes that "the broadest reasonable interpretation of 'releasably

IPR2017-00135
Patent 8,974,371 B2

coupled' and 'removably connected' is 'coupled and capable of being released/removed within the body.'" *Id.* at 10.

Petitioner responds that "claim 1 does not require the 'control member' (or 'bushing') to be releasably coupled *while the sheath is in the 'operative configuration.'*" Pet. Reply 3–4. Instead, Petitioner argues that "[c]laim 1 is silent as to when, and under what conditions, these components decouple." *Id.* at 4. According to Petitioner, "claim 11 does not require that the 'control element' decouple from the 'connector element' (or the 'sheath' from the 'capsule') within the body." *Id.*

Reading both independent claims as a whole, we agree with Patent Owner that each of claims 1 and 11, by their express terms, require the capability to release or remove the 'bushing' and 'control member' (claim 1), or a 'control element' and a 'sheath' (claim 11), within the body. Claim 1 is directed to an "apparatus for applying clips to tissue" that further requires "in an operative configuration," must "extend[ ] into a living body to a target portion of tissue to be clipped."

The claim further includes a "bushing extending between a proximal end coupled to the sheath and a distal end releasably coupled to the capsule." We determine that because the distal end of the flexible sheath extends into a living body, and the proximal end of the bushing is coupled to the sheath, the most logical interpretation is that the claims require, in the operative configuration, the bushing to be within a living body. Further, the specification consistently uses the word "release" to refer to decoupling after the clip has been deployed while inside the body, as set forth by Patent Owner above.

Although we find Patent Owner's position more persuasive on the

13

IPR2017-00135
Patent 8,974,371 B2

final record, as explained below, our ultimate decision related to Sackier would not be materially impacted if we were to adopt Petitioner's interpretations.

### C. "Frangible Link"

Petitioner contends "that the term 'frangible link' means 'a link between at least two components that become unlinked when a tensile load is applied.'" Pet. 10. Petitioner's only supporting evidence is citation to Patent Owner's litigation position in district court. Patent Owner agrees with Petitioner's proposed construction. *See* PO Resp. 12.

Based on the final trial record, we agree that "frangible link" means "a link between at least two components that become unlinked when a tensile load is applied."

## III.    ANALYSIS

A petition must show how the construed claims are unpatentable under the statutory ground it identifies. 37 C.F.R. § 42.104(b)(4). Petitioner bears the burden of demonstrating a reasonable likelihood that Petitioner would prevail with respect to at least one challenged claim for a petition to be granted. 35 U.S.C. § 314(a).

### A. Principles of Law

#### 1. Anticipation

To establish anticipation, each and every element in a claim, arranged as recited in the claim, must be found in a single prior art reference. *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). "To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber*, 128 F.3d

14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BOSTON SCIENTIFIC CORPORA-TION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-1869-CFC-CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) ) | |
| Defendants. | | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE #2 TO EXCLUDE EVIDENCE RELATED TO PTAB PROCEEDINGS REGARDING THE '371 PATENT

## I.     INTRODUCTION

The Federal Circuit has entered final judgment on an appeal from an IPR of the '371 patent invalidating all but two of the claims asserted against Defendants in this action, neither of which were ruled on in the IPR. That judgment and its underlying rulings are binding and dispositive on most if not all validity issues regarding the two remaining '371 patent claims. They also directly rebut Plaintiffs' allegations of willful infringement. The Court and jury must consider those rulings.

## II.    BACKGROUND

The PTAB issued a Final Written Decision ("FWD") on November 15, 2018 that claims 1, 3-5, and 10 of the '371 patent were unpatentable.  Plaintiffs filed this action *after* the FWD issued, and yet Plaintiffs still accused Defendants of infringing '371 patent claims that the PTAB had ruled unpatentable. Ex. A.

The Federal Circuit affirmed the unpatentability of claims 1, 3-5, and 10, and it further reversed the PTAB and held claims 11, 15, and 17 also unpatentable.  *Cook Grp. Inc. v. Bos. Sci. Scimed, Inc.*, 809 F. App'x 977 (Fed. Cir. 2020).  As a result, *all '371 patent claims* asserted against Defendants in this action (claims 1, 3, 11, and 15) that were addressed in the IPR were ruled unpatentable.

Only claims 8 and 9 remain here. Those claims depend from claim 1, and thus include all the limitations of that unpatentable claim. Defendants have moved for summary judgment on claims 8 and 9 based on collateral estoppel.  D.I. 235, 236.

## III.   ARGUMENT

1.     The '371 IPR proceedings are highly probative—and in some respects dispositive—evidence of invalidity. Defendants' pending summary judgment motion shows that '371 patent claims 8 and 9 are not materially different from invalid claim 1. But even if, as Plaintiffs argue, disputed factual issues were to preclude summary judgment (D.I. 288 at 6-9), and claims 8 and 9 were to remain in this case, then the jury must receive evidence of the IPR proceedings and Federal Circuit judgment—e.g., that all limitations of claim 1 have been ruled obvious over prior art—to discharge its duties consistent with prior binding rulings. So too for the jury's consideration of the asserted '725 patent, which is related to the '371 patent and has asserted claims that significantly overlap with the invalid '371 patent claims.

The cases Plaintiffs cite are inapposite, as none concerned a PTAB proceeding resulting in a final judgment of invalidity through appeals. Indeed, some expressly relied on the non-final status of PTAB proceedings as a basis for excluding evidence. *E.g., Personalized User Model, LLP v. Google Inc.,* 2014 WL 807736, at *3 (D. Del. Feb. 27, 2014). All the cases are otherwise factually distinct, for example, because the IPRs involved prior art and arguments not at issue at trial. *E.g.*, *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 978731, at *7 (C.D. Cal. Feb. 28, 2020). Beside citing inapposite cases, Plaintiffs merely rehash arguments made in opposing summary judgment, which Defendants already have addressed. D.I. 236, 324.

2.    Plaintiffs' claim of willful infringement is an independent reason to deny Plaintiffs' motion. *See* D.I. 141, ¶¶ 20, 50. Willful infringement turns on Defendants' state of mind during the period of challenged conduct; here, *after* Plaintiffs filed this lawsuit. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-35 (2016). During that entire period, Defendants knew that the Patent Office already had invalidated claim 1—which is almost identical to remaining claims 8 and 9, and which Defendants believe is not materially different for invalidity purposes. It would be manifestly unjust to allow Plaintiffs to argue that Defendants' conduct was so "wanton, malicious, [and] bad-faith" that it constituted willful infringement (*see Halo*, 136 S. Ct. at 1932), while not allowing Defendants to rebut that argument with evidence showing that, at minimum, Defendants had good reason to believe that claims 8 and 9 also are invalid, in addition to the claims of the related '725 patent.

Plaintiffs' own cited case law supports admitting the '371 IPR evidence. In *Ultratec Inc. v. Sorenson Commc'ns, Inc.*, the court ruled that "should the question of subjective willfulness be presented to the jury, defendants may introduce the [PTAB's] decision as evidence showing their good faith belief in invalidity." 2014 WL 5023098, at *2 (W.D. Wis. Oct. 8, 2014); *see also Hillman Grp., Inc. v. KeyMe, LLC,* 2021 WL 1248180, at *3 (E.D. Tex. Mar. 30, 2021) (materials from IPR proceeding may be introduced in "defense against willfulness").

ASHBY & GEDDES

*Of Counsel:*

Steven J. Routh
T. Vann Pearce, Jr.
Christopher Higgins
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC  20005-1706
(202) 339-8400

Yufeng (Ethan) Ma
ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 7, 2021

*/s/ John G. Day*

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

# Exhibit A

**REDACTED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

      Plaintiffs,

  v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

CA. No. 18-1869-SB-CJB

## BOSTON SCIENTIFIC'S REPLY IN SUPPORT OF MIL #2 TO EXCLUDE EVIDENCE RELATED TO PTAB PROCEEDINGS REGARDING THE '371 PATENT

While criticizing Boston Scientific for "merely rehash[ing]" summary judgment arguments, Defendants do just that. They repeat their incorrect argument that Claims 8 and 9 of the '371 patent are not materially different from Claim 1, which they say makes the '371 IPR proceedings "highly probative." Opp. 2. They are wrong: Defendants have never rebutted Boston Scientific's showing that Claims 8 and 9 are materially different from Claim 1 (D.I. 288 at 6-9), so the '371 IPR proceedings are irrelevant.

Next, Defendants insist the jury "must" hear about the '371 IPR proceedings, but they cite no supporting case law. Opp. 2. Though Defendants try to distinguish the many contrary decisions by pointing to the Federal Circuit's affirmance of the PTAB decision, they make no showing that this affirmance

1

makes the IPR proceedings relevant to any disputed issue, nor do they show that the probative value of this affirmance outweighs the overwhelming concerns over juror confusion, waste of time, and prejudice that courts routinely invoke to exclude evidence of IPR proceedings, including PTAB final decisions.

Finally, the proffered evidence is irrelevant to Defendants' willful infringement of Claims 8 and 9 for a simple reason: the IPR did not address those claims. Accordingly, Defendants' purported knowledge that the PTAB invalidated certain claims of the '371 patent is irrelevant to their belief as to whether they were infringing Claims 8 and 9—two materially different, presumptively valid claims that the PTAB did not address, let alone invalidate.

Dated: June 11, 2021                                  Respectfully submitted,

Of Counsel:                                               FARNAN LLP

Kevin M. Flannery                                    /s/ Brian E. Farnan
Daniel Roberts                                           Brian E. Farnan (#4089)
DECHERT LLP                                          Michael J. Farnan (#5165)
Cira Centre, 2929 Arch St.                       919 North Market Street, 12th Floor
Philadelphia, PA 19104                            Wilmington, DE 19801
(215) 994-2000                                          Tel. (302) 777-0300
kevin.flannery@dechert.com                   Fax (302) 777-0301
daniel.roberts@dechert.com                    bfarnan@farnanlaw.com
                                                                mfarnan@farnanlaw.com
Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200

robert.rhoad@dechert.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 243 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: June 11, 2021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | |
| Plaintiffs, | CA. No. 18-1869-SB-CJB |
| v. | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | |

## BOSTON SCIENTIFIC'S MIL #3 TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO BOSTON SCIENTIFIC'S SIZE, WEALTH, OR TOTAL REVENUES

The Court should exclude any evidence or argument related to Boston Scientific's size, wealth, or total revenues, particularly as it relates to any disparities between Boston Scientific and Defendants. This information is irrelevant to any issue in this case and would prejudice the jury.

## ARGUMENT

### A.   Boston Scientific's Size, Wealth, and Overall Revenues Are Irrelevant

The size of Boston Scientific has nothing to do with any party's claim or defense in this case. Defendants have not offered any legal or factual conclusion that depends on this information, and this information is therefore irrelevant and inadmissible under F.R.E. 401. *See Biomerieux, S.A. v. Hologic, Inc.*, 2020 WL 583917, at *2 (D. Del. Feb. 6, 2020) (excluding evidence of movant's "overall

1

financial state or revenues not tied to the accused products and not tied to [] expert opinion regarding a reasonable royalty calculation"); *Inventio AG v. Thyssenkrupp Elevator Corp.*, No. 08-874, 2014 WL 554853, at *3 (D. Del. Feb. 6, 2014) (excluding evidence of company size and overall revenues because the non-movant "fails to point the Court to any conclusion that actually uses this information. Therefore the Court finds that the overall revenues are irrelevant to the expert's conclusion and is therefore inadmissible for the purposes of this trial.").

Further, it is not relevant to damages. *See Am. Tech. Ceramics Corp., v. Presidio Components, Inc.*, No. 14-6544, 2019 WL 2330885, at *6 (E.D.N.Y. May 31, 2019) ("[N]either party will be permitted to refer to the parties' wealth, size, or finances to the extent it is irrelevant . . .[f]or instance, a comparison of the relative ownership structure and wealth of the parties would not be relevant to a determination of a reasonable royalty"); Order at 11, *HTC Corp. v. Tech. Props. Ltd.*, No. 08-00882 (N.D. Cal. Sept. 9, 2013), ECF No. 564 ("Federal Circuit case law does not permit the use of a company's overall size or revenue as a check to confirm the reasonableness of a jury award") (citing *Uniloc v. USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011)).

Accordingly, the Court should exclude any such evidence or argument.

**B.      References To Boston Scientific's Size, Wealth, and Overall Revenues Should Be Excluded Under Rule 403**

Additionally, the Court should exclude evidence or argument about Boston's Scientific's size or overall revenues under F.R.E. 403.  As a mountain of case law shows, permitting this information would unfairly prejudice the jury.  *See Inventio AG*, 2014 WL 554853, at *3 (D. Del. Feb. 6, 2014) ("[C]onsistent with Federal Circuit decisions in various cases, the evidence [of size and overall revenues] would be excluded under Rule 403 as the prejudice to [movant] substantially outweighs its probative value"); *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.*, No. 15-1067, 2019 WL 1098925, at *3 (N.D. Ill. Mar. 8, 2019) (excluding evidence or argument that movant was "large company" or "large multinational corporation" because it "runs the risk of unfairly prejudicing the jury"); *Wielgus v. Ryobi Techs., Inc.*, No. 08-1597, 2012 WL 1853090, at *6 (N.D. Ill. May 21, 2012) ("[W]hat little probative value the evidence of the defendant's bottom-line financial status has is substantially outweighed by the danger of unfair prejudice it might cause in coloring the jury's perception of the relevant issues."); *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 09-135, 2010 WL 11451797, at *7 (E.D. Tex. Mar. 31, 2010) (excluding evidence that movant was "large" such that "no pejorative remarks will be made based on [] corporate size").  The Court should follow this case law and exclude any such evidence or argument.

3

In particular, the Court should exclude any reference to financial disparities between Boston Scientific and Micro-Tech.  It is well-established that "it is improperly prejudicial for counsel to appeal to financial disparity between parties before the jury."  *Greenleaf v. Garlock, Inc.*, 174 F.3d 353, 364 n.9 (3d Cir. 1999). As a result, courts routinely exclude arguments that draw attention to differences in the size, wealth, and power of the parties.  *Am. Tech. Ceramics*, 2019 WL 2330885, at *6; *Bausch & Lomb Inc. v. Vitamin Health, Inc.*, No. 13-6498, 2016 WL 3742156, at *2 (W.D.N.Y. July 7, 2016); *Advanced Tech. Incubator*, 2010 WL 11451797, at *7.  To prevent unfair prejudice to Boston Scientific, the Court should do the same here.

## CONCLUSION

For the foregoing reasons, the Court should exclude any evidence or argument related to Boston Scientific's size, wealth, or overall revenues.

Dated: May 28, 2021                       Respectfully submitted,

Of Counsel:                                       FARNAN LLP

Kevin M. Flannery                          /s/ Brian E. Farnan
Daniel Roberts                                Brian E. Farnan (#4089)
DECHERT LLP                               Michael J. Farnan (#5165)
Cira Centre, 2929 Arch St.             919 North Market Street, 12th Floor
Philadelphia, PA 19104                   Wilmington, DE 19801
(215) 994-2000                              Tel. (302) 777-0300
kevin.flannery@dechert.com          Fax (302) 777-0301
daniel.roberts@dechert.com           bfarnan@farnanlaw.com
                                                       mfarnan@farnanlaw.com

4

Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

*Attorneys for Plaintiffs*

## CERTIFICATION OF COMPLIANCE

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 732 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: May 28, 2021

Case 1:18-cv-01869-SB-CJB   Document 359-1   Filed 06/28/21   Page 459 of 542 PageID #: 21323

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) ) | |
| | ) | C.A. No. 18-1869-CFC-CJB |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE #3 TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO BOSTON SCIENTIFIC'S SIZE, WEALTH, OR TOTAL REVENUES</u>

Plaintiffs' MIL #3 would improperly exclude evidence and argument that are highly probative of issues the jury would need to resolve if this case were to go to trial. A blanket exclusion of references to a party's size, wealth, or total revenues is impermissibly vague and would encompass information required to understand and determine damages, Plaintiffs' standing, and Defendant's patent misuse defense. The motion is also premature, as Plaintiffs have not identified or limited the motion to a context where such evidence or argument could be unduly prejudicial.

## ARGUMENT

Boston Scientific's size, wealth, and revenues are plainly relevant to its lost profits claims. The *Panduit* factors for establishing lost profits broadly include plaintiff's "but-for" profits absent the alleged infringement as well as manufacturing and marketing capabilities; evidence on these subjects inevitably would involve the parties' size, wealth, and revenue. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

██████  *See ABS Global, Inc. v. Inguran, LLC*, No, 14-cv-503-wmc, 2016 WL 3996167, at *2 (W.D. Wis. July 22, 2016) (allowing evidence of the relative size of the parties in the relevant market because it is relevant to certain claims).

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████

The case law cited by Plaintiffs is inapposite. In the *Biomerieux* and *Inventio* cases, evidence was excluded because it was not tied to any specific issues or expert opinions to be presented at trial. *Biomerieux, S.A. v. Hologic, Inc*., No. 18-21-LPS, 2020 WL 583917, at *2 (D. Del. Feb. 6, 2020) (ruling that evidence was "not tied to Plaintiffs' expert opinion regarding a reasonable royalty calculation"); *Inventio AG v. Thyssenkrupp Elev. Corp*., No. 08-874, 2014 WL 554853, at *3 (D. Del. Feb. 6, 2014) (excluding evidence where party "fails to point the court to any conclusion that actually uses this information"). Here, Defendants have tied the evidence and argument in question to specific damages, standing, and patent misuse issues for

trial. Any further consideration of probative value or potential prejudice should await trial, when evidence or argument is offered in the context of a specific issue.

Plaintiffs also err in their blanket assertion that a company's size, wealth, and revenue "is not relevant to damages." In *Am. Tech. Ceramics Corp. v. Presidio Components, Inc*., No. 14-6544, 2019 WL 2330855, at *6 (E.D.N.Y. May 31, 2019), the court actually permitted evidence such as "financial and production capacity" and "relative market positions" because they are relevant to damages determination.

Finally, Plaintiffs are wrong to suggest that any reference to their size, wealth, and revenue would violate Rule 403 by "unfairly prejudice[ing] the jury." Mot. at 4. Plaintiffs' case law involves improper appeals to juror sympathies by characterizing the dispute as one of "David versus Goliath." *E.g*., *Am. Tech. Ceramics*, 2019 WL 2330855, at *5. This is not the case here. Plaintiffs have not provided any evidentiary context to justify an overbroad exclusion based on prejudice and jury confusion. Plaintiffs can object at trial if they perceive any remarks to be improper. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, the issue in Plaintiffs' MIL #3 is better suited for ruling during trial on a case-by-case basis, rather than *in limine*, and the Court should deny Plaintiffs' MIL #3.

ASHBY & GEDDES

*Of Counsel:*                                          */s/ John G. Day*

Steven J. Routh                                       _____
T. Vann Pearce, Jr.                                   John G. Day (#2403)
Christopher Higgins                                   Andrew C. Mayo (#5207)
ORRICK, HERRINGTON & SUTCLIFFE LLP                    500 Delaware Avenue, 8th Floor
Columbia Center                                       P.O. Box 1150
1152 15th Street, N.W.                                Wilmington, DE  19899
Washington, DC  20005-1706                            (302) 654-1888
(202) 339-8400                                        jday@ashbygeddes.com
                                                      amayo@ashbygeddes.com

Yufeng (Ethan) Ma                                     *Attorneys for Defendants*
ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 7, 2021

# Exhibit A

# REDACTED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

                    Plaintiffs,

          v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

CA. No. 18-1869-SB-CJB

## BOSTON SCIENTIFIC'S REPLY IN SUPPORT OF MIL #3 TO EXCLUDE EVIDENCE OR ARGUMENT RELATED TO BOSTON SCIENTIFIC'S SIZE, WEALTH, OR TOTAL REVENUES

**Damages:** Defendants insist that the lost profits analysis "inevitably" involves evidence of size, wealth, and revenues, but fail to cite any decision where courts have permitted such evidence for that purpose. *ABS Global* is inapplicable as it relates to niche issues arising from the Sherman Act and contract negotiations, both irrelevant here. *ABS Global, Inc. v. Inguran, LLC*, 2016 WL 3996167, at *2 (W.D. Wis. July 22, 2016). Though the *Panduit* factors require a showing that Plaintiff had the marketing capacity to meet lost sales demand, Defendants have not explained how **Micro-Tech's relative size** is relevant to this inquiry, nor have they identified any related evidence in their expert reports. Opp. 1-2; *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, at *6 (E.D.N.Y.

1

May 31, 2019) (permitting "financial and production capacity evidence," not comparative size, and only if "properly disclosed in an expert report").

**Standing & Patent Misuse:**  First, Defendants have not shown how the "financial relationship" between the Boston Scientific entities is relevant to standing.  Second, the patent misuse doctrine has a "narrow scope" and Defendants have not explained how "evidence of BSC's size" is relevant to "one of the specific ways . . .  outside the otherwise broad scope of the patent grant."  *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1329 (Fed. Cir. 2010).

Dated: June 11, 2021                             Respectfully submitted,

Of Counsel:                                      FARNAN LLP

Kevin M. Flannery                                /s/ Brian E. Farnan
Daniel Roberts                                   Brian E. Farnan (#4089)
DECHERT LLP                                      Michael J. Farnan (#5165)
Cira Centre, 2929 Arch St.                       919 North Market Street, 12th Floor
Philadelphia, PA 19104                           Wilmington, DE 19801
(215) 994-2000                                   Tel. (302) 777-0300
kevin.flannery@dechert.com                       Fax (302) 777-0301
daniel.roberts@dechert.com                       bfarnan@farnanlaw.com
                                                 mfarnan@farnanlaw.com
Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

*Attorneys for Plaintiffs*

2

# CERTIFICATION OF COMPLIANCE

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 221 words, excluding the case caption, signature block, table of contents and table of authorities.


/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: June 11, 2021

# SCHEDULE 16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORA-TION
and BOSTON SCIENTIFIC SCIMED, INC.,

               Plaintiffs,

      v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD., and
HENRY SCHEIN INC.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 18-1869-CFC-CJB

# DEFENDANTS' MOTION IN LIMINE NO. 1 RE EVIDENCE OR ARGUMENT REGARDING EUROPEAN LITIGATION BETWEEN MICRO-TECH AND BOSTON SCIENTIFIC

## I.   INTRODUCTION

Defendants respectfully move *in limine* to exclude any evidence or argument regarding related parties' litigation in Europe over certain European patents.

## II.   BACKGROUND

Boston Scientific and Micro-Tech entities are engaged in patent litigation in Europe. Boston Scientific Limited ("BSL"), which is related to the Plaintiffs in this action, filed litigation in Germany against Micro-Tech (Nanjing) Co., Ltd. ("MTN"), a Defendant in this action, and Micro-Tech Europe GmbH ("MTE"). MTN and MTE in turn filed opposition proceedings in Europe against BSL's patents. Those European proceedings are ongoing.

## III.   ARGUMENTS

The Court should exclude any evidence or argument regarding the existence of, or any rulings in, the European litigation. The evidence should be excluded under FRE 401-403, as it would not be relevant to the claims or defenses of any party, would cause jury confusion, and could unfairly prejudice Defendants.

Judges in this district and other district courts routinely exclude evidence of other litigations under FRE 401-403. In *Johns Hopkins Univ. v. Alcon Labs Inc*., C.A. No. 15-525-MSG-SRF, 2018 WL 4178159 at *21 (D. Del. Aug. 30, 2018), for example, the court precluded the plaintiff from referencing prior litigation involving the defendant, unless the evidence was otherwise specially allowed under FRE 613 or 801(d)(1) (concerning prior statements). The court reasoned that "[p]rior lawsuits

against a defendant are 'generally inadmissible,'" and rejected the plaintiff's proposal that the prior litigation could be broadly used as impeachment evidence regarding topics such as the defendant's corporate policies and practices. *Id*; *accord, e.g., Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp*., C.A. No. 16-284-LPS, 2019 WL 77046 at *1 (D. Del. 2019) (excluding evidence or argument about "other litigations between the parties"); *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, Case No. 12-cv-00196, 2014 WL 289446 at *1-3 (W.D. Pa. Jan. 12, 2014) (ruling that "the probative value of the existence of other litigation and disputes is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay").

When the other litigation is in a foreign country, the risk of prejudice and jury confusion is even higher. *Wasica Finance GmBH v. Schrader Int'l, Inc*., C.A. No. 13-1353-LPS, 2020 WL 509182 at *1 (D. Del. Jan. 31, 2020) ("reference to foreign patent litigation … is appropriately excluded pursuant to [FRE 403] as the risks of confusion, waste of time, and unfair prejudice far outweigh whatever minimal probative value such evidence may have"); *In re Biogen '755 Patent Litig*., Case No. 10-cv-02734-CCC-JBC, 2018 WL 3613162 at *3 (D.N.J. Jul. 26, 2018) ("informing the jury of the outcomes of foreign legal proceedings involving, and determinations reached by foreign tribunals regarding, [party's] other patents and patent applications would risk unduly prejudicing [party]").

While the existence of foreign litigation and rulings should be excluded, the exclusion should not extend to admissions, evidence, or statements from such litigation, if they are relevant and otherwise admissible. *Siemens Mobility*, 2019 WL 77046 at \*1 ("evidence that has been developed in an IPR or other litigation … may be used at trial, provided that it is done without referring the IPR or other litigation … and subject to the Federal Rules of Evidence and the Court's procedures"). For example, a party admission made in a foreign proceeding can be admissible under FRE 801(d)(2). *Ferring B.V. v. Serenity Pharms., LLC*, Case No. 17-cv-09922-CM, 2020 WL 1164700 at \*5 (S.D.N.Y. Mar. 11, 2020) (allowing a party to introduce arguments made in a European Patent Office proceeding).

## IV.   CONCLUSION

For the foregoing reasons, the Court should exclude any evidence or argument regarding or reference to litigation proceedings in Europe.

ASHBY & GEDDES

*Of Counsel:*

*/s/ John G. Day*
_____

| | |
|---|---|
| Steven J. Routh | John G. Day (#2403) |
| T. Vann Pearce, Jr. | Andrew C. Mayo (#5207) |
| Christopher Higgins | 500 Delaware Avenue, 8th Floor |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | P.O. Box 1150 |
| Columbia Center | Wilmington, DE  19899 |
| 1152 15th Street, N.W. | (302) 654-1888 |
| Washington, DC  20005-1706 | jday@ashbygeddes.com |
| (202) 339-8400 | amayo@ashbygeddes.com |
| | |
| Yufeng (Ethan) Ma | *Attorneys for Defendants* |

ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 11, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br>       Plaintiffs, <br><br>    v. <br><br> MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | CA. No. 18-1869-SB-CJB |

## BOSTON SCIENTIFIC'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE NO. 1 RE EVIDENCE OR ARGUMENT REGARDING EUROPEAN LITIGATION BETWEEN MICRO-TECH AND BOSTON SCIENTIFIC

Defendants are trying to have it both ways. While they ask the Court to exclude "any evidence or argument" related to Boston Scientific's successful European litigation against Defendants, they will attempt to prove non-infringement by introducing a statement that Boston Scientific made during those proceedings. The Court should not grant Defendants' motion unless this additional evidence is excluded as well.

## ARGUMENT

As an initial matter, Defendants do not identify any specific document, ruling, or argument from the foreign proceedings they seek to exclude. But they likely seek to exclude any reference to findings by the German court that

1

Defendants' devices infringe Boston Scientific's European patents (Ex. A at 6-10, 16) and the court-appointed expert's finding that the devices include links (hooks) that break (Ex. B at 8).  Any ruling excluding evidence concerning the EPO proceedings from the jury should apply to both sides—such that Defendants are likewise precluded from introducing evidence they seek to use.

In particular, Defendants intend to introduce statements Boston Scientific made to the European Patent Office ("EPO") regarding the meaning of terms in one of its European patents.  *See* Ex. C (EPO Proceeding) at -9145; Ex. D (Plishka Rebuttal) at ¶ 40.  Defendants cited this statement during claim construction, and the Court relied on it in construing the "breakable link" limitation in claim 1 of the '245 patent.  Ex. E (Markman Transcript) at 33-34.  During the meet-and-confer process, Defendants acknowledged they intend to introduce this evidence, notwithstanding the present motion.

The Court should exclude this evidence, as allowing Defendants to introduce the statement would confuse the jury, unduly prejudice Boston Scientific, and require the parties to waste time explaining the differences between this litigation and the EPO proceedings.  *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 2015 WL 7709855, at *1 (D. Del. Nov. 24, 2015) (excluding evidence and argument related to EPO proceedings due to "serious risk of unfair prejudice and confusion of the

2

jury"); *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 2020 WL 509182, at *1 (D. Del. Jan. 31, 2020).

Moreover, this evidence is irrelevant to any disputed issue at trial. Generally, "[t]here is little if any probative value to [] EPO evidence, as it concerns a different patent evaluated according to different standards by a non U.S. agency." *See W.L. Gore*, 2015 WL 7709855, at *1; *Edwards Lifesciences LLC v. Medtronic CoreValve LLC*, 2014 WL 12927825, at *1 (D. Del. Jan. 2, 2014). Here, the relevance of Boston Scientific's statement to the EPO relates to the proper construction of the "breakable link" limitation, a legal issue for the Court, not the jury, to decide. Indeed, the Court has already construed that limitation (D.I. 140), and the jury's task will be to apply that construction in deciding infringement.[1] Defendants seek to use the evidence to invade the province of the Court and re-argue claim construction to the jury. That should not be permitted. *See CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *EMC Corp. v. Pure Storage, Inc.*, 2016 WL 775742, at *3 (D. Del. Feb. 25, 2016) (excluding evidence that amounted to "impermissible claim construction").

---

[1] Specifically, the jury will have to decide, *inter alia*, whether the accused products "mechanically fail by fracturing" in accordance with the Court's construction of "breakable link."

*Ferring B.V. v. Serenity Pharm., LLC*, 2020 WL 1164700 (S.D.N.Y. Mar. 11, 2020), does not hold otherwise.  There, the court denied a motion to exclude evidence of statements the defendant/counterclaimant made to the EPO that the patent-in-suit was not enabled, which were directly relevant to a disputed fact issue in the case—i.e., whether that patent was invalid for lack of enablement.  *Id.* at *5.[2] Thus, the statement addressed the very patent at issue and was directly relevant as an admission against interest regarding a disputed fact issue in that case.  By contrast, Boston Scientific's statement to the EPO addressed a European patent not at issue here and is irrelevant to any issue that the jury will decide.

## CONCLUSION

Defendants cannot have it both ways—excluding evidence from the EPO proceedings that hurts its case, while seeking to use evidence it likes.  If the Court were to grant the motion, it should exclude all evidence and argument concerning the EPO proceedings, including the statement cited by Defendants' infringement expert.

---

[2] The patent-in-suit was cited as prior art to a European patent, and the defendant/counterclaimant argued to the EPO that it was not enabled and therefore could not qualify as proper prior art.  *Id.*

4

Dated: June 7, 2021

Of Counsel:

Kevin M. Flannery
Daniel Roberts
DECHERT LLP
Cira Centre, 2929 Arch St.
Philadelphia, PA 19104
(215) 994-2000
kevin.flannery@dechert.com
daniel.roberts@dechert.com

Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel. (302) 777-0300
Fax (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATION OF COMPLIANCE

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 749 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: June 7, 2021

# EXHIBIT A

**I-15 U 4/20**
4c O 94/18
RC Düsseldorf



Delivered on 29.04.2021
Paulowitz, Judicial
Employee as Clerk of the
Court office

# DÜSSELDORF HIGHER REGIONAL COURT

## ON BEHALF OF THE PEOPLE

## DECISION

In the matter

1.  **Micro-Tech Europe GmbH**, represented by the Managing Director Daniel Kuhn, Mündelheimer Weg 48, 40472 Düsseldorf,

2.  **Shanghai International Holding Corporation GmbH (Europe)**, represented by Managing Director Liang Jin, Eiffestraße 80, 20537 Hamburg, Germany,

Defendants and Appellants,

Attorneys to 1, 2:           Attorneys at law HOYNG ROKH MONEGIER
                             Partnerschaftsgesellschaft, Steinstraße 20,
                             40212 Düsseldorf,

versus

**Boston Scientific Limited**, represented by Douglas John Cronin and Daniel J. Brennan, Directors, Clarendon House, 2 Church Street, Hamilton HM11, Bermuda, United States,

Plaintiff and Appellee,

Attorneys at law Kather Augenstein,
Bahnstraße 16, 40212 Düsseldorf,

1







Accordingly, a guide rails is formed in the proximal base of each clip arm and oval protrusions are provided. The distal pin is located in the guide rails and is fixed to the distal end of the capsule, which has two corresponding holes for this purpose. The oval holes accommodate the shorter proximal pin. This connects the two clip legs and is connected via two J-hooks to the control wire, which is sheathed in a helically wound, axially expandable wire (coil shaft).

Pulling the control wire causes the proximal pin to be pulled proximally, causing the base of each clip arm to be pulled into the capsule. The guide rails in the base of the clip legs are guided along the fixed distal pin and the baffle shape causes the legs to close in the clipping area. The sleeve ("capsule") is provided with slots in the area where the base of the arms is accommodated. By moving the control wire proximally or distally, the clip legs can be opened and closed several times.

If the control wire is moved in the proximal direction with a certain force, the J-hooks detach from the proximal pin. The control wire together with the coil shaft can be removed from the body. The clip and the capsule remain in the patient's body.

The Plaintiff considers the offer and distribution of the attacked embodiments in the Federal Republic of Germany to be a literal use of the claim 9 asserted in a limited version and therefore claims injunctive relief, information and rendering account, recall and destruction as well as a declaration of liability for damages on the merits against the Defendants.

In the first instance, the Defendants denied use and took the view that the attacked embodiments had neither a clip nor a lock sleeve nor a retainer release arrangement and also no axially rigid sheath. Moreover, information and rendering account in electronic form could not be demanded if their cost would increase. In any case, the legal dispute had to be suspended, since the patent in suit would not prove to be legally valid in the opposition proceedings due to lack of novelty and inadmissible extension.

In its decision of January 16, 2020 (pp. 214 et seq. Court file), as amended by the corrective order of February 6, 2020 (pp. 285 et seq. Court file), the Regional Court sentenced the Defendants in accordance with the most recent motions and refrained from staying the litigation. In its reasoning, it essentially stated:

Apart from the requirement that the clip must have at least two clip legs, the skilled person could not find any further information on the detailed design of the clip, neither in the claim itself nor in the patent specification. In particular, the necessity of the design as a structural unit was not apparent. The two clip legs do not always have to be able to be opened and closed in dependence on each other and/or the two clip legs do not have to be (spring) pretensioned. The skilled person could only take an indication from the term clamp or clip that the device had to be suitable for clipping, but not how or in what way the clipping function had to be ensured, whether by pretensioning in one of the directions of movement or in some other way. Accordingly, it could not be determined from the excerpts from dictionaries submitted by the parties that the skilled person assigns a certain function and/or design to a clip, in particular that he translates the English term clip with spring clip. The system of claims and the technical-functional approach did not lead to any other understanding. The invention is aimed at a clip which - unlike the prior art clips - is at least partially reversible. In this respect, the skilled person also recognizes that the two clip legs must not only be closed, but also - at least to a certain extent - be able to be opened again and should only be secured at the end of the setting process, when no further correction is required, and the endoscope is removed again. The patent in suit leaves open how the arms are to be secured at

8

the end of the setting process when no further correction is required, and the endoscope is removed again. Nor does anything else follow from the description and the preferred embodiments shown. On the contrary, from the mention of a pretension with regard to some embodiments in figures 14A-14C, 18A-18E it is clear that a pretension is only an option. Based on this, the attacked embodiments had two clip legs, whereby these even appeared as a structural unit due to the connection via the "distal pin" and the "proximal pin".

The patent in suit defines an axially stiff sheath for the control wire as a sheath which is suitable for counteracting the (tensile and compressive) forces occurring when the control wire is actuated. The sheath must therefore be so rigid that it can withstand these forces. At the same time, the skilled person recognizes that the sheath must not be too stiff or rigid since the entire device is inserted into the patient's body and therefore a certain flexibility is required for adaptation to the place of use. It was already clear from para. [0023] et seq. that it was not necessary that the sheath should neither be able to be compressed nor to be pulled apart. Deformation did not have to be excluded.

The attacked embodiments have a lock sleeve according to the claim. As the wording already makes clear, the lock sleeve should secure (lock) the clip or clip legs after their final closure in such a way that the rest of the device can be removed from the patient's body without the clip opening unintentionally. In addition, the sleeve must be designed in such a way that the clip can be - at least partially - pulled through it. The skilled person could not infer any further requirements or specifications for the spatial and physical design of the sleeve either from the wording of the claim or from the other components of the patent application. The process of pulling through must be in connection with the closing of the clip legs, whereby this is not only to be understood as a temporal connection. Rather, the patent in suit requires an actual correlation. On the other hand, the claim does not require that the pulling through the sleeve may be the only cause or the only mechanism for the closing of the arms. In the attacked embodiments, the component referred to as the "capsule" constitutes a lock sleeve and not, as the Defendants contended, only the lower distal portion of the sleeve with the annular web. This is because the extensions (with slot) facing the clip are integrally connected to the sleeve and, in interaction with the components of the clip, contribute to the clip ultimately remaining locked.

9

The sleeve also makes a decisive causal contribution to the closing of the clip.

A retainer release arrangement in the sense of the patent in suit is a component or a device which is designed to ensure, in interaction with the retainer that the clip remaining in the body together with the lock sleeve is uncoupled from the rest of the device so that it can be pulled out of the patient's body. The spatial and physical design of the retainer release arrangement is at the discretion of the person skilled in the art. In the attacked embodiments, the component referred to as the "hypotube" is a retainer release arrangement.

Because of the further factual findings and the reasoning, reference is made to the judgment of the Regional Court of January 16, 2020 (sheet 214 et seq. Court file), in the version of the rectification order of February 6, 2020 (sheet 285 et seq. Court file), § 540 ZPO [German Code of Civil Procedure].

The Defendants appealed against this judgment, which was served on January 16, 2020, in a written statement dated January 28, 2020, received by the Higher Regional Court on January 29, 2020. The Defendants continue to seek dismissal of the action. Repeating and supplementing their submissions at first instance, they essentially justify the appeal as follows:

The Regional Court erred in law in deriving the task from para. [0016]. In this paragraph, only particular advantages were mentioned. Based on the generic prior art, US 3 958 576 A (Exhibit KAP II 2, hereinafter: US '576), the remaining task was to further develop the aforementioned medical device and to further simplify this handling.

The skilled person translates the term "clip" used in the language of the process in the claim as clip and understands this to mean a construction consisting of at least two clip legs which are preformed but deformable. Clip is a clamp which is capable of exerting a force with the aid of a pretension. This also follows from the prior art, which differentiates between "clip" and "clamp" or between "clip" and other means with a clamping effect and discloses only clips with pretension. The clip legs would be pressed together in each case by a pressure from the outside. On the priority date, there were no endoscope-guided, detachable hemostasis clips that did not require pretensioning of the clip legs. Such clips had only been developed well after the priority date of the patent in suit, as evidenced by the grant of EP '174. Also all technical embodiments described in the patent in suit exclusively showed solutions with pretensioned clamping legs,

For further details of the facts of the case and of the dispute, reference is made to the pleadings of the parties on file together with the exhibits thereto.

**B.**

The admissible appeal of the Defendant is unfounded. The attacked embodiments make use of the technical teaching of the asserted restricted claim 9 of the patent in suit. The Plaintiff is therefore entitled to the claims awarded by the Regional Court for injunctive relief, provision of information and rendering of accounts, recall, destruction and a declaration of liability for damages on the merits under Article 64 EPC in conjunction with Sections 139 (1) and (2), 140a (3), 140b (1) and (3) PatG [German Patent Act], Sections 242, 259 BGB [German Civil Code].

**I.**

The patent in suit relates to a hemostatic clamping device. Such devices are used in particular in endoscopic procedures to actively and/or prophylactically stop bleeding inside the body. The usual field of application are diseases of the gastrointestinal tract.

Gastrointestinal bleeding poses a significant risk to patients, and treatment of such bleeding is extremely time critical. Diagnosis and treatment of the bleeding can be done either surgically or by endoscopy.

According to the patent in suit, surgical interventions lead to safe stopping of bleeding, but they cause higher costs and higher morbidity and mortality rates than endoscopy (para. [0003]). Therefore, from the perspective of the patent in suit, endoscopic treatments are to be preferred.

In the prior art, two common endoscopic treatment options are known, thermotherapy and injection therapy, as well as some less frequently used therapies. The patent in suit considers these to be disadvantageous for various reasons: although thermotherapy is quite successful in stopping bleeding, it often requires more than one attempt and more frequent

# EXHIBIT B

## Transcript

**Public hearing**                                                    Düsseldorf, 27.04.2021
**of the 4 c. Civil Chamber of the**
**Regional Court**

Docket no.:
4c O 89/18

**Present:**

Presiding Judge at the Regional Court Klepsch
as Presiding Judge
Judge at the Regional Court Dr. Schmitz
Judge at the Regional Court Wimmers
as associate judges

- Without secretary § 159 ZPO / minutes were recorded provisionally on sound carrier –

In the civil case

Boston Scientific Limited v. Micro-Tech Europe GmbH, et al.

appeared at the calling of the case

for Plaintiff by videoconference Attorney Kiefer, Attorney Dr. Kather, Attorney Dr. Pesch, Patent Attorneys Asmussen and Salzer all together in Düsseldorf, Ms. Lane in the USA and the interpreters Ms. Meier and Ms. Sasse in Munich

for Defendants Attorney Dr. Weinert and Patent Attorney Albrecht

as well as by video conference Attorney Dr. Metelski in Düsseldorf, Attorney Gspandl in Düsseldorf, the managing director of the Defendant 1 Mr. Kuhn in Düsseldorf, Mr. Weinhold, Patent Attorney trainee with Patent Attorney Albrecht in Neuss.

Furthermore, the court appointed expert Prof. Dr. Hammer in Regensburg is connected via video conference.

Parties' representatives refer to the motions in the oral hearing of December 12, 2019 (sheet 192 of the A.).

Thereupon, Expert replied:

I can't see a breaking. However, the quality of the illustrations is not very good either. With the right bracket, you could imagine something like that. However, the resolution is not very good that you cannot see it exactly.

In response to further questioning by the Defendant's representative with regard to the hook with the number 22:

Professor Hammer, can you see a break here?

To this the expert replied:

The left of the two hooks is completely breakd and broken off. Concerning the right hook, I can see a crack. This should be similar to the picture number 1.

The parties stated that they had no further questions for the expert.

Thereupon, Expert still stated in addition:

The materials have not been specified. However, for medical use, it is high-alloy steel. This has both very good plastic deformability to brittle properties. The force that has to be applied when using the devices; does not so much lead to plastic deformation, but rather to brittle break. This is also due to the surface quality of the materials, which is not good. It can also be seen in the high hardness indicated in the expert opinion. However, predetermined breaking points are certainly introduced. The hardness values indicate highresistance.

In response to a question from Plaintiff's representative about this addition: did we understand you correctly that the material properties cause the hooks to break, the expert replied:

Yes.

In response to a question from Defendants' representative:

I did not address these test reports in the expert opinion but have now included them.

In response to further questioning by Defendant's representative as to whether Expert had analyzed the surface quality, Expert replied:

We could not make any analyses because we did not have any material. I could only refer to the photographs in the test reports. These showed a material quality that was not very good or left much to be desired.

In response to further questioning by Defendants' representative as to whether Expert meant by test reports also Exhibit KAP 29, Expert replied:

# EXHIBIT C

EPO - Munich
100

3 0. Sep. 2019

EP 02 77 5909.1 / 1328199
Patentee: Boston Scientific Limited
Opposition by: MTW Endoskopie W. Haag KG; Cook Medical
Technologies LLC; Micro-Tech Europe GmbH
Our Ref.: X1901 OPP(EP) S5

# Observations

# – COVER PAGE –

## Please note that this petition contains **coloured images**.

MT00009140

not satisfactory – reopen and reposition the clip until the desired tissue pinching is accomplished. The device's ability to repeatedly open and close the clip by the reversible operation of the control wire leads to quicker procedures, requiring less clips to be deployed (see paragraph [0015]). In addition, by providing a link that is broken in order to uncouple the control wire from the clip, the device of the contested patent allows for a better adjustment of the desired release point and force.

## II.    Interpretation of Claim 1

1.    Features 10 and 11 of claim 1 specify that "the frangible link is adapted to be **broken** by a first predetermined tensile force" and that "when the frangible link is **broken**, the control wire uncouples from the clip". Claim 1 thus requires the link to be broken, wherein "to break" is clearly given the meaning and scope which the term normally has in the art, *i.e.* that a fracture of the link into two or more pieces takes place (cf. GL, F-4.2).

2.    This is also (i) what the patent itself understands the term "breakable link" to mean and (ii) how the claim was understood by the Examining Division and, subsequently, by the Board of Appeal in T 639/13.

2.1   More specifically, it will be appreciated by the Opposition Division that the patent (as well as the application as originally filed) uses the term "frangible link" for referring to a link that may **either** deform **or** break upon application of a first predetermined tensile force. In contrast, the term "breakable link" refers to a particular type of "frangible link" which indeed breaks.

2.1.1  This understanding of the term is clear, for example, from claim 40 of the application as originally filed, which specifies (emphasis added):

> "40.  The medical device of claim 1, wherein a distal termination of the control wire comprises: **a frangible link, <u>wherein the frangible link is at least one of</u> a wire reversibly deformed into a j-hook and a <u>breakable link</u>**, wherein the j-hook is able to be straightened by a first predetermined tensile force; and **wherein the breakable link is able to be broken by the first predetermined tensile force.**"

The term "frangible link" clearly encompasses both, the reversibly deformable j-hook that is straightened by the first predetermined tensile force **and** the breakable link that is

MT00009145

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **BOSTON SCIENTIFIC CORPORATION AND BOSTON SCIENTIFIC SCIMED, INC.,** | |
| **PLAINTIFFS,** | |
| **V.** | **C.A. NO. 18-1869-CFC/CJB** |
| **MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., AND HENRY SCHEIN INC.,** | |
| **DEFENDANTS.** | |

## REBUTTAL EXPERT REPORT OF MICHAEL PLISHKA REGARDING NONINFRINGEMENT

41. 

# EXHIBIT E

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4
       BOSTON SCIENTIFIC              :   CIVIL ACTION
 5     CORPORATION and BOSTON         :
       SCIENTIFIC SCIMED, INC.,       :
 6                                    :
                      Plaintiffs,     :
 7                                    :
            vs.                       :
 8                                    :
       MICRO-TECH ENDOSCOPY USA       :
 9     INC., MICRO-TECH (NANJING)     :
       CO., LTD., and HENRY SCHEIN    :
10     INC.,                          :
                                      :
11                    Defendants.     :   NO. 18-1869-CFC-CJB

12
                              - - -
13
                              Wilmington, Delaware
14                            Wednesday, June 24, 2020
                              9:00 o'clock, a.m.
15                            ***Telephone conference

16                            - - -

17     BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

18                            - - -

19
       APPEARANCES:
20

21             YOUNG CONAWAY STARGATT & TAYLOR, LLP
               BY:  PILAR G. KRAMAN, ESQ. and
22                  KAREN L. PASCALE, ESQ.

23
                         -and-
24

25                            Valerie J. Gunning
                              Official Court Reporter
```

30

1   that caveat, that as well as extrinsic, it is important to
2   be clear.
3         THE COURT:  Okay.  All right.  So let me hear
4   from the plaintiff on this, this question of whether, you
5   know, what is the status of the statements made during the
6   prosecution of the foreign counterpart.
7         Boston Scientific, you agree.  It's appropriate
8   for me to consider that.  Right?  I mean, the Federal
9   Circuit has done that in a number of cases, including Apple
10   against Motorola.
11         MR. FLANNERY:  I think it would be inappropriate
12   in these circumstances, respectfully, Your Honor, because
13   I think the intrinsic record teaches us more, or teaches
14   one of ordinary skill in the art about what a breakable
15   link is.
16         And if I could refer to slide 17, the Examiner,
17   when examining the claims over the Gourlay reference, found
18   that this opening and closing of these arms 20 was
19   inherently a breakable link.  That's what the U.S. Examiner,
20   that's what the U.S. Examiner said here, so that's something
21   more than just a fracturing.
22         And Boston Scientific -- and this is even in
23   plaintiffs' slides and in their brief -- Boston Scientific
24   took the position, okay.  Even if those moveable arms are
25   inherently breakable, we've got another way to distinguish

31

1   the Gourlay reference.  That's acquiescence.  That language,
2   Your Honor, even if, that's a statement of acquiescence.
3   That's not a statement of accepting a disclaimer.  The
4   Patent Office said that those arms 20 are inherently
5   breakable and Boston Scientific said, okay.  Well, even if
6   that's the case, we're going to distinguish the Gourlay
7   reference based upon the link being broken by a first
8   predetermined tensile force.
9         So there we have a statement from the -- this is
10   what the public can rely on, a statement from the Examiner
11   that that type of link is inherently breakable, and Boston
12   Scientific, using language even if, acquiesced in that.
13         So right there we have intrinsic evidence that
14   is teaching us or teaching one of ordinary skill in the art
15   in the context here that a breakable link can be something
16   more than fracturing.  That's the U.S. evidence and the
17   foreign prosecution cannot trump that, Your Honor.  It's a
18   single statement from the foreign prosecution.
19         I have the binder in front of me and the
20   appendix is many pages long, double-sided.  We don't need to
21   consider that when U.S. intrinsic evidence tells the scope
22   of what a breakable link is and it does not limit it to
23   something that fractures.
24         THE COURT:  Okay.  I'm going to construe the
25   term breakable link adapted to be broken as "a component of

32

1   the device designed to mechanically fail by fracturing at a
2   predetermined tensile load."
3         Boston Scientific argues that breaking the link
4   does not necessarily require fracturing the link.  The link
5   could instead break through deformation.  As evidence that
6   the breakable link can break by deforming, Boston Scientific
7   cites embodiments in the written description that include a
8   link called the J-hook that can release from the clip by
9   deforming to a straightened position at a predetermined
10   tensile load.  And Boston Scientific asserts that the
11   breakable link claimed in dependent claim 3 is the
12   deformable J-hook.
13         I find, however, that the specification does not
14   establish that the breakable link can break through
15   deformation.  The claims reveal that the patent
16   differentiates between the deformable J-hook and the
17   breakable link claimed in claim 1.
18         Claim 12 of the '245 patent differentiates
19   between the breakable link and the J-hook when it recites
20   "a frangible link wherein the frangible link is at least
21   one of wire reversibly deformed into a J-hook and the
22   breakable link, wherein the J-hook is able to be
23   straightened by the first predetermined tensile force, and
24   wherein the breakable link is able to be broken by the first
25   predetermined tensile force."

33

1         Moreover, the specification never describes the
2   J-hook as breaking, only as deforming or straightening.
3   Boston Scientific also argues that the breakable link term
4   should receive the same construction that this Court gave
5   the term frangible link as used in the '371 patent in the
6   Cook litigation.
7         So Boston Scientific does not persuasively
8   explain why I should construe breakable link as having the
9   same construction as a different term in a different patent.
10   Also, the patent frequently calls the J-hook a frangible
11   link, and as disclaimed above, the patent treats the J-hook
12   and the breakable link as discernibly different components.
13   I refer you specifically to column 7, lines 24 through 25 of
14   the '245 patent.
15         Although the term frangible link may include the
16   breakable link, a frangible link is not equivalent to the
17   breakable link because the frangible link clearly includes
18   the J-hook.
19         Now, I will limit the term breakable to breaking
20   via fracture because Boston Scientific disclaimed the scope
21   of the term during prosecution of the '245 patent's foreign
22   counterpart, which is at EP199.  And as far as whether it is
23   appropriate to consider that, I do so based on the Federal
24   Circuit's decision in Apple against Motorola, 737 F3d.,
25   1286.  And I think there's other case law incidentally in

34

1 which the Federal Circuit has considered and found it to be
2 important, disclaimers and statements made during the course
3 of the prosecution of a foreign counterpart to the U.S.
4 patent that has been asserted in the litigation.
5         During the prosecution of the EP199, Boston
6 Scientific distinguished the invention from prior art on the
7 grounds that the prior art did not discuss or even suggest a
8 breakable link adapted to be broken, but instead disclosed a
9 deformable link in the form of a hook 51, but not a
10 breakable one.
11         The European Patent Office accepted the
12 argument, stating that claim 1 is characterized over the
13 prior art by the presence of the breakable link, which
14 breaks under a predetermined tensile force of a frangible
15 (weakened, brittle) portion instead of a bendable in (or
16 rather straightenable) engaging portion.
17         Moreover, in an opposition proceeding against
18 the '199 European patent, Boston Scientific asserted that
19 the claim thus requires the link to be broken wherein to
20 break is clearly given the meaning and scope, which the term
21 normally takes in the art, i.e., that fracture of a link into
22 two or more pieces takes place.
23         Finally, I will construe the term adapted to be
24 broken as designed to be broken rather than capable of being
25 broken.  Claim language establishes that the breaking

35

1 results from a design choice because it explains that the
2 breaking occurs at a predetermined tensile load.  I refer
3 the parties to the In re: Man Machine Interface case at 822
4 F3d., 1282, in which the Federal Circuit construed adapted
5 to as "made or designed to. "
6         All right.  The next term is sheath.  And you
7 all can't agree to just let the jury have this and just
8 leave it as plain and ordinary meaning.  Is that right,
9 plaintiffs?
10         MR. RHOAD:  I think we would be -- we would be
11 fine with plain and ordinary meaning.  We think that's -- we
12 simply proposed the -- oh, I'm sorry.
13         Let me just state for the record, this is Bob
14 Rhoad.  Good morning, Your Honor.  And, you know, we simply
15 proposed the construction that the Court gave this term in
16 the Cook case, and we think the Court gave the ordinary
17 meaning construction, and we are certainly, I think, happy
18 to just leave it as the plain and ordinary meaning of the
19 term sheath.
20         THE COURT:  How about the defendants?
21         MR. HIGGINS:  Your Honor, for the '245 patent
22 alone, we are fine with plain and ordinary meaning on sheath
23 and will address it separately for the other patent.
24         THE COURT:  Okay.  Well, that was an agreement,
25 so there's no need for me to explain a ruling.  And so the

36

1 parties have agreed that for the '245 patent, I'm going to
2 give sheath its plain and ordinary meaning.
3         All right.  I think the next disputed term is
4 coupled to the sheath in claim 1 of the '371 patent.  Is
5 that correct?
6         MR. RHOAD:  Yes, Your Honor.
7         THE COURT:  Okay.  Let me hear from Boston
8 Scientific first.
9         MR. RHOAD:  Certainly, Your Honor.  Again, this
10 is Bob Rhoad.
11         So this is a term -- for the term sheath, we
12 argued that, proposed that the Court adopt the same
13 construction that it did in the Cook case, and here we are
14 arguing for a different construction than what the Court had
15 adopted in that case, and it's really -- we respectfully
16 submit that the Court found the disavowal that was not clear
17 and unequivocal and that the patentees, in fact, never did
18 disavow the ordinary meaning of the term coupled to the
19 sheath.
20         We look at the claim term in context, and if
21 Your Honor has our slides available, on slide 24, we show
22 the term in context.  It's referring to a bushing being
23 coupled to the sheath, and I don't think there's any dispute
24 that our construction, proposed construction, reflects the
25 ordinary meaning of the term coupled to being linked

37

1 together, connected, or joined to the sheath.  And, in fact,
2 defendants' construction includes that same language.
3         So the dispute really here is whether or not
4 there's anything to limit that ordinary meaning, and their
5 argument is based on a disavowal.
6         So the question is:  Is the prosecution, was
7 there any disavowal of claim scope that would result in a
8 disavowal of not slidable within the sheath.  And on slide
9 25, I think we have the key issues here.  And so on the top
10 of 25, we see the figure showing the Kimura device and the
11 alleged disavowal occurred in connection with the patentee
12 distinguishing that Kimura device.
13         And so if we look at that figure, we've
14 highlighted the relevant components.  What the Examiner said
15 was, the "bushing" was the No. 12, the hooked section of No.
16 12 highlighted in blue there.  And we see the sheath is
17 sheath 8 that's highlighted and sort of reddish, pinkish,
18 and in yellow we have the control wire.
19         So, again, the claim language is the bushing
20 coupled to the sheath.  And so the Examiner said that the --
21 what he was calling the bushing, the blue, hook Section 12,
22 is coupled to the sheath 8, the red section.  And we see in
23 the figure what it is, what it is clearly connected to,
24 joined to, is the control wire 7 in yellow.  We have an
25 arrow pointing that out for Your Honor.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORA-TION<br>and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 18-1869-CFC-CJB |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC.,<br>MICRO-TECH (NANJING) CO., LTD., and<br>HENRY SCHEIN INC., | ) ) ) ) | |
| Defendants. | | |

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE NO. 1 RE EVIDENCE OR ARGUMENT REGARDING EUROPEAN LITIGATION BETWEEN MICRO-TECH AND BOSTON SCIENTIFIC

Plaintiffs are wrong, Defendants are not "trying to have it both ways." We ask the Court to apply the same standard to both sides. The existence of and rulings in the European litigation should be excluded because they are irrelevant to this action. But admissions, evidence, and statements from that litigation should be allowed *from either side*, if relevant and admissible for the purposes offered at trial. Plaintiffs admit that standard is proper in their discussion of the *Ferring* case and agree that the German court's rulings should not be admitted.

Plaintiffs argue that the Court should exclude Boston Scientific's statements about how one of ordinary skill in the art would understand "break" and "fracture," even though they directly contradict the position taken by Plaintiffs and endorsed by their expert in this case. Introducing evidence of those statements would not "re-argue claim construction to the jury" – Plaintiffs already lost that issue at claim construction, which is one reason why the Court should grant summary judgment on the '245 patent, or at least exclude the contradictory testimony of Plaintiff's expert. *See* D.I. 252, 260. But if the '245 patent remains in the case, Boston Scientific's statements from the European litigation are *non-hearsay* party admissions under Fed. R. Evid. 801(d)(2), and Defendants should be permitted to introduce them to rebut and impeach Plaintiffs' evidence and argument.[1]

---

[1] Plaintiffs also raise statements of a court-appointed expert. His statements support Micro-Tech's position in many respects. Regardless, they are hearsay and should be excluded, unless offered at trial under a specific exclusion to Rule 801.

ASHBY & GEDDES

*Of Counsel:*                                                */s/ John G. Day*

Steven J. Routh                             _____
T. Vann Pearce, Jr.                         John G. Day (#2403)
Christopher Higgins                         Andrew C. Mayo (#5207)
ORRICK, HERRINGTON & SUTCLIFFE LLP          500 Delaware Avenue, 8th Floor
Columbia Center                             P.O. Box 1150
1152 15th Street, N.W.                      Wilmington, DE  19899
Washington, DC  20005-1706                  (302) 654-1888
(202) 339-8400                              jday@ashbygeddes.com
                                            amayo@ashbygeddes.com

Yufeng (Ethan) Ma                           *Attorneys for Defendants*
ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 11, 2021

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORA-TION
and BOSTON SCIENTIFIC SCIMED, INC.,

               Plaintiffs,

      v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD., and
HENRY SCHEIN INC.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 18-1869-CFC-CJB

## DEFENDANTS' MOTION IN LIMINE NO. 2 RE EVIDENCE OR ARGUMENTS AS TO THE DECISION AGAINST INSTITUTION IN IPR2020-00185

## I.   INTRODUCTION

Defendants respectfully move *in limine* to exclude any evidence or argument regarding the Patent Trial and Appeal Board's ("PTAB's) Decision Denying Institution of *Inter Partes* Review ("IPR") in IPR2020-00185. A PTAB non-institution decision lacks probative value to the issues in suit and would pose a substantial risk of prejudice and jury confusion.

## II.   BACKGROUND

On May 4, 2020, the PTAB denied institution of IPR2020-00185, filed by Micro-Tech Endoscopy USA Inc. and Micro-Tech (Nanjing) Co., Ltd., to challenge claims 1-15 of U.S. Patent No. 7,094,245 (the "'245 Patent"), one of the patents in suit in this action. IPR2020-00185, Paper No. 11 ("the PTAB '245 Decision").

## III.   ARGUMENT

Judges in this district have consistently held that PTAB decisions denying IPR institutions should be excluded under Federal Rules of Evidence 401-403 because they are not decisions on the merits, lack probative value, and pose significant risk of prejudicing a party and confusing the jury. For example, in *Evolved Wireless, LLC v. Apple Inc.*, C.A. No. 15-542-JFB-SRF, 2019 WL 1100471 at *3 (D. Del. Mar. 7, 2019), the court granted the defendant's motion *in limine* because "[t]he denial to institute proceedings has no estoppel effect and the minimal probative value it may have to the validity issue is substantially outweighed by the potential for prejudice

and confusion to the jury." *Accord, e.g., Alarm.com Inc. v. SecureNet Techs. LLC*, C.A. No. 15-807, D.I. 253 (D. Del. Jan. 23, 2019) (excluding IPR non-institution decision because "PTAB's decisions denying institution are not decisions on the merits and were decided under a different standard of proof"); *Bio-Rad Labs, Inc. v. 10x Genomics, Inc.*, C.A. No. 15-152-RGA, 2018 WL 6629705 at *1 (D. Del. Oct. 12, 2018) (same); *Nox Medical Ehf v. Natus Neurology Inc.*, Case No. 15-cv-00709-RGA, 2018 WL 6629704 at *1 (D. Del. Apr. 12, 2018) (same).[1]

This motion is limited to referencing the '245 Patent IPR or the PTAB '245 Decision. Statements made in the '245 Patent IPR proceeding would not be excluded if relevant to positions of the party or witness in this action and otherwise admissible. *See Bio-Rad*, 2018 WL 6628705 at *1 (allowing use of expert testimony from IPR proceedings for impeachment purposes); *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, 2019 WL 77046 at *1 (D. Del. Jan. 2, 2019) (allowing evidence developed in IPR proceeding "provided that it is done without referencing the IPR").

This motion also does not seek to limit use of evidence relating to the IPR proceedings involving U.S. Patent No. 8,974,371 (the "'371 Patent"). That IPR

---

[1] Other courts have adopted the same approach. *Plexxikon Inc. v. Novartis Pharm. Corp.*, Case No. 17-cv-04405-HSG, 2021 WL 1164749 at *1 (N.D. Cal. Mar. 26, 2021); *Acantha, LLC v. DePuy Orthopaedics, Inc.*, Case No. 15-cv-01257, 2018 WL 2431852 at *2-3 (E.D. Wis. May 30, 2018).

resulted in a final decision of the Federal Circuit that certain claims were invalid as obvious, including independent claim 1, on which asserted claims 8 and 9 depend. The Federal Circuit's final decision has collateral estoppel effect that is not only relevant to but also binding in this action, as explained in Defendants' pending Motion for Summary Judgment of Invalidity and Motion to Exclude Opinions of Plaintiffs' Expert Witness Karl Leinsing. *See* D.I. 235, 236, 259, 260, 324, 326. If dependent claims 8 and 9 were to remain in this case, then the jury may need to be informed of certain aspects of the '371 Patent IPR proceedings—e.g., that all limitations of independent claim 1 have already been ruled obvious over prior art— to discharge its duties consistent with prior binding PTAB and court rulings.

## IV.    CONCLUSION

The Court should grant Defendants' Motion *in limine* to exclude any evidence or argument regarding the PTAB '245 Decision.

|  | ASHBY & GEDDES |
|---|---|
| *Of Counsel:* | */s/ John G. Day* |
|  | _____ |
| Steven J. Routh | John G. Day (#2403) |
| T. Vann Pearce, Jr. | Andrew C. Mayo (#5207) |
| Christopher Higgins | 500 Delaware Avenue, 8th Floor |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | P.O. Box 1150 |
| Columbia Center | Wilmington, DE  19899 |
| 1152 15th Street, N.W. | (302) 654-1888 |
| Washington, DC  20005-1706 | jday@ashbygeddes.com |
| (202) 339-8400 | amayo@ashbygeddes.com |
|  |  |
| Yufeng (Ethan) Ma | *Attorneys for Defendants* |

ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 11, 2021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION
and BOSTON SCIENTIFIC SCIMED,
INC.,

                    Plaintiffs,

      v.

MICRO-TECH ENDOSCOPY USA INC.,
MICRO-TECH (NANJING) CO., LTD.,
and HENRY SCHEIN INC.,

CA. No. 18-1869-SB-CJB

### BOSTON SCIENTIFIC'S RESPONSE TO DEFENDANTS'
### MOTION IN LIMINE NO. 2 RE EVIDENCE OR ARGUMENTS AS TO
### THE DECISION AGAINST INSTITUTION IN IPR2020-00185

Boston Scientific agrees that evidence of IPR proceedings lacks probative

value and poses a substantial risk of prejudice and jury confusion.  To that end,

Boston Scientific proposed that the parties exclude evidence related to **all** IPR

proceedings involving the asserted patents (i.e., '371 and '245 Patent IPR

proceedings).  Defendants refused.  They now argue that the Court should exclude

evidence related to the '245 Patent IPR proceedings (in which the PTAB found that

Defendants failed to demonstrate invalidity, even under the lesser burden of proof

that applies in such proceedings), but allow evidence related to the '371 Patent IPR

proceedings.  This position is contrary to the law; Defendants cannot have it both

ways.  The jury should either hear about both IPR proceedings or neither.  It would

be highly prejudicial and grossly unfair if Defendants were able to present the jury

1

with evidence concerning IPR proceedings that favors them, but Boston Scientific were precluded from doing the same.  The Court should either allow or exclude evidence and argument concerning the factual findings, decisions, and legal conclusions from IPR proceedings equally across the board.

## ARGUMENT

Boston Scientific agrees, based on the great weight of the case law, that the Court should exclude from the jury all evidence and argument concerning *all* IPR proceedings, *including* the PTAB's non-institution decision finding no "reasonable likelihood" that Micro-Tech would prevail in demonstrating invalidity of the '245 Patent claims.  Ex. A at 2, 7-8.  As Boston Scientific argued in its MIL #2, such evidence is not proper for a jury to consider and would waste time at trial.[1] Defendants, however, wish to cherry-pick which IPR proceedings should be excluded, so they can present evidence from the proceedings with results they like, but preclude evidence from those they don't like.  MT MIL #2 at 2-3.  Allowing Defendants to do so would be highly prejudicial.  Although Boston Scientific believes the Court should exclude evidence related to *both* the '245 and '371

---

[1] Boston Scientific agrees that an expert's prior statements made in an IPR proceeding are admissible for impeaching that expert "so long as this is done without referencing either the [IPR] or the [outcome]."  *Personalized User Model, L.L.P. v. Google Inc.*, 2014 WL 807736, at *3 (D. Del. Feb. 27, 2014).

Patent IPR proceedings, if the Court opts to deny Boston Scientific's MIL #2, it should also deny Defendants' related MIL.

In support of their MIL, Defendants rehash their erroneous summary judgment argument that the '371 Patent IPR proceedings are relevant because the outcome of those proceedings has "collateral estoppel effect" on patent claims not addressed therein.  *Id*. at 3.  However, neither the Federal Circuit nor PTAB discussed, let alone adjudicated, whether the '371 Patent claims asserted here— claims 8 and 9—are patentable.  Claims 8 and 9 recite additional limitations not present in claim 1, and thus require a different validity analysis than claim 1. Ex. B ('371 patent) at 17:28-33; D.I. 288 at 6-9.  Moreover, the PTAB employed a lesser burden of proof and different claim construction standard, and it construed the claims differently than this Court has, rendering those proceedings irrelevant and highly prejudicial.  BSC MIL #2 at 2-3.  Indeed, PTAB decisions on different claims that use different legal standards do not have collateral estoppel effect.  *See* D.I. 288 at 3-5; *Papst Licensing GmbH & Co., KG v. Samsung Elecs.*, 403 F.Supp. 3d 571, 602 (E.D. Tex. 2019).

Equally important, collateral estoppel is an issue of law for the Court, not the jury, to decide.  Defendants argue that "the jury may need to be informed of certain aspects of the '371 Patent IPR Proceedings," but cite no case law, provide no justifiable reason why that is so, and fail to address the multi-faceted concerns

3

associated with doing so.  Nor can they, because courts overwhelmingly exclude such evidence—including evidence from both non-institution and PTAB final decisions—due to its tendency to create "needless jury confusion" and waste trial time.  *See, e.g.*, *Magna Elecs. v. TRW Automotive Holdings Corp.*, 2016 WL 4238769, at *2-3 (W.D. Mich. Jan. 28, 2016) (excluding evidence of PTAB final obviousness decision); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 2017 WL 4570787, at *6 (E.D. Wisc. Oct. 12, 2007).  Accordingly, the Court should exclude all evidence related to the '371 Patent IPR proceedings.

## <u>CONCLUSION</u>

This MIL and Boston Scientific's MIL #2 seek similar relief relating to IPR proceedings related to the patents-in-suit.  The Court should either grant them both or deny them both; it should not grant Defendants' MIL if it denies Boston Scientific's.

Dated: June 7, 2021

Of Counsel:

Kevin M. Flannery
Daniel Roberts
DECHERT LLP
Cira Centre, 2929 Arch St.
Philadelphia, PA 19104
(215) 994-2000
kevin.flannery@dechert.com
daniel.roberts@dechert.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel. (302) 777-0300
Fax (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

4

Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 750 words, excluding the case caption, signature block, table of contents and table of authorities.


/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: June 7, 2021

# EXHIBIT A

Trials@uspto.gov
571-272-7822

Paper No. 11
Entered: May 4, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

MICRO-TECH (NANJING) CO., LTD. AND MICRO-TECH
ENDOSCOPY USA, INC.,
Petitioner,

v.

BOSTON SCIENTIFIC SCIMED, INC.,
Patent Owner.

_____

IPR2020-00185
Patent 7,094,245 B2

_____

Before JAMES A. TARTAL, MICHAEL L. WOODS, and
AMANDA F. WIEKER, *Administrative Patent Judges*.

WIEKER, *Administrative Patent Judge*.

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2020-00185
Patent 7,094,245 B2

# I.   INTRODUCTION

## A.   Background

Micro-Tech (Nanjing) Co., Ltd and Micro-Tech Endoscopy USA, Inc. ("Petitioner") filed a Petition requesting an *inter partes* review of claims 1–15 ("challenged claims") of U.S. Patent No. 7,094,245 B2 (Ex. 1001, "the '245 patent").  Paper 1 ("Pet.").  Boston Scientific Scimed, Inc. ("Patent Owner") filed a Preliminary Response.  Paper 10 ("Prelim. Resp.").

We have authority to determine whether to institute an *inter partes* review, under 35 U.S.C. § 314 and 37 C.F.R. § 42.4.  An *inter partes* review may not be instituted unless it is determined that "the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314; *see also* 37 C.F.R § 42.4(a) ("The Board institutes the trial on behalf of the Director.").

For the reasons provided below and based on the record before us, we determine that Petitioner has not demonstrated a reasonable likelihood that Petitioner would prevail in showing the unpatentability of at least one of the challenged claims.  Accordingly, we do not institute an *inter partes* review.

## B.   Related Proceedings

The parties state that the '245 patent is at issue in a district court proceeding in the U.S. District Court for the District of Delaware, Case No. 1:18-cv01869-CFC.  Pet. 1; Paper 5, 2.

Patent Owner also states:

A number of patents and pending applications claim priority to the '245 Patent.  Several related patents were involved in proceedings before the Board (see, e.g., IPR2017-00131, 132,

2

IPR2020-00185
Patent 7,094,245 B2

### E.    Applied References

Petitioner relies upon the following references:

Kortenbach et al., U.S. Patent No. 6,808,491 B2, filed May 20, 2002, issued October 26, 2004 (Ex. 1004, "Kortenbach I");

Kortenbach et al., U.S. Patent No. 6,569,085 B2, filed August 16, 2001, issued Mat 27, 2003 (Ex. 1006, "Kortenbach II");

Matsuno et al. U.S. Patent No. 5,766,184, filed Nov. 2, 1995, issued June 16, 1998 (Ex. 1007, "Matsuno");

Rapacki et al., U.S. Patent No. 5,569,274, filed June 24, 1994, issued October 29, 1996 (Ex. 1008, "Rapacki");

Kirsch et al., U.S. Patent No. 4,733,664, filed October 15, 1985, issued March 29, 1988 (Ex. 1009, "Kirsch").

Pet. 3.  Petitioner also submits the Declaration of Dr. Morton O. Jensen (Ex. 1002).  Patent Owner does not offer declarant testimony at this stage of the proceeding.

### F.    Asserted Grounds of Unpatentability

Petitioner challenges claims 1–15 of the '245 patent based on the following asserted grounds of unpatentability.  Pet. 4–5.

| Claim(s) Challenged | 35 U.S.C. §[1] | Reference(s)/Basis |
|---|---|---|
| 1, 4, 5, 7, 8, 10, 12, 13, 15 | 102(e) | Kortenbach I |
| 1, 3–5, 7, 9, 10, 12, 13, 15 | 103 | Kortenbach I |
| 1, 7, 9, 12, 13, 15 | 102(e) | Kortenbach II |
| 1, 7, 9, 12, 13, 15 | 103 | Kortenbach II |

---

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 287–88 (2011), amended 35 U.S.C. §§ 102, 103.  Because the application from which the '245 patent issued was filed before March 16, 2013, the effective date of the relevant amendment, the pre-AIA versions of §§ 102, 103 apply.

IPR2020-00185
Patent 7,094,245 B2

| Claim(s) Challenged | 35 U.S.C. §[1] | Reference(s)/Basis |
|---|---|---|
| 1, 3–7, 9–15 | 102(b) | Matsuno |
| 1, 3–7, 9–15 | 103 | Matsuno, Kirsch[2] |
| 1, 3–13, 15 | 103 | Matsuno, Rapacki[3] |
| 2 | 103 | Kortenbach I, Kirsch |

II.   DISCUSSION

*A.   Claim Construction*

For petitions filed on or after November 13, 2018, a claim shall be construed using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. § 282(b), including construing the claim in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent.  37 C.F.R. § 42.100(b) (2019).  The Petition was filed November 26, 2019.  Thus, we apply the claim construction standard as set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

Accordingly, claim terms are generally given their ordinary and customary meaning as would have been understood by one with ordinary skill in the art in the context of the specification, the prosecution history, other claims, and even extrinsic evidence including expert and inventor testimony, dictionaries, and learned treatises, although extrinsic evidence is less significant than the intrinsic record.  *Phillips*, 415 F.3d at 1312–1317.

---

[2] Petitioner identifies this ground as based on "Matsuno in view of the knowledge of a POSITA and/or Kirsch."  Pet. 4.

[3] Petitioner identifies this ground as based on "Matsuno in view of the knowledge of a POSITA and/or Rapacki."  *Id.*

# EXHIBIT B

US008974371B2

(12) **United States Patent**
Durgin et al.

(10) **Patent No.:** **US 8,974,371 B2**
(45) **Date of Patent:** *Mar. 10, 2015

(54) **THROUGH THE SCOPE TENSION MEMBER RELEASE CLIP**

(75) Inventors: **Russell F. Durgin**, Attleboro, MA (US); **William C. Mers Kelly**, Crestwood, KY (US); **Lance Alan Wolf**, Floyds Knobs, IN (US); **Brian Keith Wells**, LaGrange, KY (US); **Vasily P. Abramov**, Louisville, KY (US); **Gregory R. Furnish**, Louisville, KY (US)

(73) Assignee: **Boston Scientific Scimed, Inc.**, Maple Grove, MN (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 549 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **13/328,171**

(22) Filed: **Dec. 16, 2011**

(65) **Prior Publication Data**

US 2012/0109162 A1      May 3, 2012

**Related U.S. Application Data**

(60) Continuation of application No. 12/252,630, filed on Oct. 16, 2008, now Pat. No. 8,083,668, which is a division of application No. 10/955,624, filed on Sep. 30, 2004, now Pat. No. 7,452,327, which is a continuation-in-part of application No. 10/674,512, filed on Sep. 30, 2003, now Pat. No. 7,494,461.

(60) Provisional application No. 60/568,418, filed on May 5, 2004.

(51) **Int. Cl.**
*A61B 1/00* (2006.01)
*A61B 17/122* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ........... *A61B 17/122* (2013.01); *A61B 17/1285* (2013.01); *A61B 17/1227* (2013.01); *A61B*

*2017/003* (2013.01); *A61B 2017/00845* (2013.01); *A61B 2017/00849* (2013.01); *A61B 2017/12004* (2013.01); *A61B 2017/292* (2013.01); *A61B 2019/2242* (2013.01); *A61B 2019/2246* (2013.01); *A61B 2019/2292* (2013.01); *A61B 2019/304* (2013.01); *A61B 2019/307* (2013.01); *A61B 2019/308* (2013.01)
USPC ............. **600/104**; 600/106; 600/129; 606/45; 606/139; 606/142; 606/161; 606/167; 606/158

(58) **Field of Classification Search**
USPC ........... 600/104; 606/139, 142, 151, 157–158
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,882,854 A * 5/1975 Hulka et al. .................. 600/104
4,627,444 A 12/1986 Brooker
(Continued)

*Primary Examiner* — Matthew J Kasztejna
(74) *Attorney, Agent, or Firm* — Fay Kaplun & Marcin, LLP

(57) **ABSTRACT**

Apparatus includes Flexible Sheath extending from a proximal end which extends into living body; Capsule extending from a proximal to a distal end and having an opening formed in a proximal end thereof; Clip Assembly provided in Capsule and configured to be operably movable between a closed configuration in which first and second arms of Clip Assembly are drawn toward one another and an expanded configuration in which the first and second arms are separated from one another to receive target tissue therebetween; Bushing extending between a proximal end coupled to Sheath and a distal end releasably coupled to Capsule via a tab on the distal end of Bushing engaging the opening of Capsule; and Control Member a distal end of which is releasably coupled to Clip Assembly to transmit to Clip Assembly forces applied thereto to move Clip Assembly between the insertion and expanded configurations.

**17 Claims, 28 Drawing Sheets**



US 8,974,371 B2

17

18

drawn toward one another and an expanded configuration in which the first and second arms are separated from one another to receive target tissue therebetween;

a bushing extending between a proximal end coupled to the sheath and a distal end releasably coupled to the capsule via a tab on the distal end of the bushing engaging the opening of the capsule; and

a control member a distal end of which is releasably coupled to the clip assembly to transmit to the clip assembly forces applied thereto to move the clip assembly between the insertion and expanded configurations.

**2**. The apparatus of claim **1**, wherein the opening is substantially A-shaped.

**3**. The apparatus of claim **1**, wherein a proximal end of the control member is coupled to a control handle which, when the apparatus is in an operative position, remains outside the body accessible to a user.

**4**. The apparatus of claim **3**, wherein the clip assembly further comprises a yoke slidably received in the capsule and releasably coupled to the control member.

**5**. The apparatus of claim **3**, wherein the control member is coupled to the yoke via a frangible link.

**6**. The apparatus of claim **5**, wherein the frangible link is formed as a reduced strength portion of the control member.

**7**. The apparatus of claim **5**, wherein the distal end of the control member comprises a ball received in a socket in the yoke.

**8**. The apparatus of claim **1**, wherein the proximal end of the capsule comprises a keyed portion aligning the capsule in a desired rotational orientation with respect to the bushing.

**9**. The apparatus of claim **8**, wherein the distal end of the bushing comprises a feature configured to mate with the keyed portion of the capsule.

**10**. The apparatus of claim **1**, further comprising a tension member slidably received in the capsule and configured to bias the first and second arms to the expanded configuration.

**11**. An apparatus for applying clips to tissue within a living body, comprising:

a capsule;

a clip assembly housed within the capsule for movement between an insertion configuration in which first and second arms of the clip assembly are drawn toward one another and an expanded configuration in which the first and second arms are separated from one another to receive tissue therebetween;

a control element including a connector element, extending between a proximal end which, during use, remains outside the body accessible to a user and a distal end removably connected to the clip assembly via the connector element, wherein the control element detaches from the connector element via a frangible link; and

a sheath extending from a proximal to a distal end and covering a portion of the control element, wherein the distal end of the sheath is releasably coupled to the capsule.

**12**. The apparatus of claim **11**, wherein the frangible link is formed as a reduced diameter portion of the control element.

**13**. The apparatus of claim **11**, wherein the clip assembly includes a yoke slidably received in the capsule and removably coupled to the control element.

**14**. The apparatus of claim **13**, wherein the yoke is connected to the control element via a ball and socket joint.

**15**. The apparatus of claim **11**, wherein the sheath is coupled to the capsule via a bushing including a tab on a distal end thereof received in an opening at a proximal end of the capsule.

**16**. The apparatus of claim **15**, wherein the opening is substantially A-shaped.

**17**. The apparatus of claim **11**, further comprising a tension member slidably received in the capsule and configured to bias the first and second arms to the expanded configuration.

\* \* \* \* \*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORA- )
TION )
and BOSTON SCIENTIFIC SCIMED, )
INC., )
　 ) C.A. No. 18-1869-CFC-CJB
Plaintiffs, )
　 )
v. )
　 )
MICRO-TECH ENDOSCOPY USA )
INC., )
MICRO-TECH (NANJING) CO., )
LTD., and
HENRY SCHEIN INC.,

Defendants.

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE NO. 2 RE EVIDENCE OR ARGUMENTS AS TO THE DECISION AGAINST INSTITUTION IN IPR2020-00185

Plaintiffs agree with Defendants that the PTAB's non-institution decision in the '245 Patent IPR should be excluded. As Plaintiffs have presented no evidence or argument opposing Defendants' MIL #2 on this point, it should be granted.

Plaintiffs entire response is an attempt to tie this MIL to Plaintiffs' own MIL #2, seeking to exclude the final invalidity ruling in the '371 Patent IPR, but the law and proper analysis governing the '371 Patent IPR differ in two crucial respects, as further explained in our opposition to Plaintiffs' MIL #2 and Defendants' pending summary judgment motion on '371 Patent invalidity. *First*, the '371 Patent IPR resulted in a final Federal Circuit judgement of invalidity on the merits, which has collateral estoppel effect, whereas the '245 Patent IPR non-institution decision has no such effect. *Second*, the '371 Patent IPR and Federal Circuit affirmance provide highly probative evidence rebutting Plaintiffs' willful infringement allegation—a point Plaintiffs have not even acknowledged, much less rebutted.

The cases cited by Plaintiffs are distinguishable. *Milwaukee Elec. Tool. Corp. v. Snap-On Inc*., 2017 WL 4570787 at *6 (E.D. Wisc. Oct. 12, 2007) addressed the opposite situation in which a patentee sought to use the survival of patent claims in IPRs to show the claims' strength; moreover, the court already had ruled that prior art used in the IPR could not be used at trial. And *Magna Elecs., Inc. v. TRW Automotive Holdings Corp*., 2016 WL 4238769 at *2 (W.D. Mich. Jan. 28, 2016) did not address willful infringement or collateral estoppel.

ASHBY & GEDDES

*Of Counsel:*

*/s/ John G. Day*

Steven J. Routh
T. Vann Pearce, Jr.
Christopher Higgins
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC  20005-1706
(202) 339-8400

Yufeng (Ethan) Ma
ORRICK, HERRINGTON & SUTCLIFFE LLP
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 11, 2021

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) | |
| | ) | C.A. No. 18-1869-CFC-CJB |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) ) ) | |
| Defendants. | | |

## DEFENDANTS' MOTION IN LIMINE NO. 3 RE EVIDENCE OR ARGUMENTS AS TO STATEMENTS CONCERNING PREDICATE DEVICES IN MICRO-TECH'S FDA 510(K) SUBMISSIONS

## I.      INTRODUCTION

Defendants respectfully move *in limine* to preclude Plaintiffs from offering

evidence or argument that Micro-Tech's 510(k) submissions, which

provide any

evidence or inference that the accused Micro-Tech products infringe the asserted

patents or copy BSC's products. The FDA requirement that a 510(k) submission

demonstrate "substantial equivalence" to a previously cleared predicate device

involves fundamentally different issues and inquiries than those involved in

determining patent infringement or copying and therefore is of no probative value

to such a determination.

## II.     BACKGROUND

FDA "510(k) notifications are submittals of engineering and clinical

information which are provided to the FDA to permit that agency to assess the

safety and effectiveness of a new product with regard to a predicate product which

is already on the market." *Sunrise Med. HHG Inc., v. AirSep Corp.*, 95 F. Supp. 2d

348, 405 (W.D. Pa. 2000). In 510(k) submissions, the FDA requires applicants to

demonstrate "substantial equivalence" to a predicate device. 21 C.F.R. § 807.92.

Certain of Micro-Tech's 510(k) submissions

. This is standard industry practice: for example, past BSC 510(k)

submissions for certain of its Resolution devices listed the prior art Olympus clip

"fixing devices" as a predicate devices, and more recent BSC 510(k) submissions for Resolution devices list a Micro-Tech device as a predicate device.

## III.   ARGUMENT

The identification of a predicate device in a 510(k) submission should be excluded under Fed. R. Evid. 401-403 if offered to prove infringement or copying. The Federal Circuit has held that, in an infringement inquiry, FDA equivalence to a predicate device "is irrelevant to patent law because it involves fundamentally different inquiries." *The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1349 n. 3 (Fed. Cir. 2008). Therefore, a statement of "substantial equivalence" to a predicate device in 510(k) submissions is not admissible to prove patent law claims such as infringement. *See e.g. Abbott Point of Care, Inc. v. Epocal, Inc.*, Case No. 08-cv-00543-NE, 2012 WL 13162732 at *3-5 (N.D. Ala. Apr. 18, 2012) (excluding under FRE 403 all evidence of the accused infringer's 510(k) submission because "the standard for 'substantial equivalence' in the FDA-approval context is so different from the standards for evaluating the similarity of inventions in the patent infringement context that the jury could easily be confused about the significance of statements made to the FDA."); *Ethicon Endo-Surgery, Inc. v. Hologic, Inc.* 689 F. Supp. 2d, 929, 935-36 (S.D. Ohio 2010) (same). Similarly, courts have excluded evidence of "substantial equivalency" in 510(k) submissions as irrelevant to copying.  *Optivus Tech., Inc. v. Ion Beam Applications*

*S.A.*, Case No. 03-cv-02052-SJO, 2005 WL 6070811 at *17 (C.D. Cal. Mar. 14, 2005) (noting that "the precise similarities between the accused device and the patents at issue are not discussed in the 510(k) report").

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion *in limine* to exclude any evidence or argument offered to show that a party's identification of a device as a "predicate device" in any way supports infringement or copying by the party.[1]

ASHBY & GEDDES

*Of Counsel:*                                          */s/ John G. Day*

Steven J. Routh                                        John G. Day (#2403)
T. Vann Pearce, Jr.                                    Andrew C. Mayo (#5207)
Christopher Higgins                                    500 Delaware Avenue, 8th Floor
ORRICK, HERRINGTON & SUTCLIFFE LLP                     P.O. Box 1150
Columbia Center                                        Wilmington, DE  19899
1152 15th Street, N.W.                                 (302) 654-1888
Washington, DC  20005-1706                             jday@ashbygeddes.com
(202) 339-8400                                         amayo@ashbygeddes.com

Yufeng (Ethan) Ma                                      *Attorneys for Defendants*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China                             Dated:  May 28, 2021
86-21-6109-7108

---

[1] The *in limine* ruling requested in this motion would not preclude the use of a 510(k) submission as evidence offered for other purposes, such as to show a person's or party's knowledge of a predicate device at the time of the submission.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | |
| Plaintiffs, | CA. No. 18-1869-SB-CJB |
| v. | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | |

## BOSTON SCIENTIFIC'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE NO. 3 RE EVIDENCE OR ARGUMENTS AS TO STATEMENTS CONCERNING PREDICATE DEVICES IN MICRO-TECH'S FDA 510(K) SUBMISSIONS

The regulatory framework for clearing medical devices through the FDA 510(k) process is straightforward as it applies here: the inquiry is whether a proposed device is "substantially equivalent" for safety purposes to a "predicate" device on the market. As prescribed in its regulations, the FDA considers certain comparisons between the proposed device and the predicate device that has already been shown to be safe. Boston Scientific agrees that, as federal courts have repeatedly held, this "substantial equivalence" framework based on "predicate" device comparisons is irrelevant to patent law. To that end, Boston Scientific suggested that the parties could agree to exclude any argument or evidence related to it. Defendants refused, and now seek to exclude any references to "substantial

1

equivalence" for the purpose of proving infringement, even as they plan to invoke such evidence to argue non-infringement and invalidity.  Defendants cannot have it both ways.  The Court should exclude *any* argument related to 510(k) "substantial equivalence," including those related to invalidity and the product comparisons that are the subject of Plaintiffs' MIL #1.

## **ARGUMENT**

Boston Scientific agrees with Defendants that "FDA equivalence is irrelevant to patent law because it involves fundamentally different inquiries."  *The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348 n.3 (Fed. Cir. 2008).  But, Defendants state the well-settled law only to suit their purpose while ignoring the full implications of it.  The predicate device comparisons have no place for any of the inquiries in a patent jury trial, not just infringement or copying.

Defendants' plans to improperly use Boston Scientific's 510(k)s are described in Plaintiffs' MIL #1, but one example bears repeating here for context. Defendants seek to argue that statements in Boston Scientific's 510(k) for its Resolution™ clip regarding "substantial equivalence" to a prior art Olympus clip as the "predicate device" show that the asserted patent claims, which cover the Resolution™ clip, were obvious in light of the Olympus clip.  *See* BSC MIL 1 at 3-4.  But, the Federal Circuit has emphasized that any such argument is "irrelevant to patent law," because "substantial equivalence" is equally irrelevant to both the

2

infringement and obviousness inquiries.  *Johns Hopkins*, 543 F.3d at 1348 n.3;

*Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*, 2020 WL 7040643, at *6 (S.D.

Ohio Dec. 1, 2020) (FDA "substantial equivalence" evidence was irrelevant to

proving a "copying" secondary consideration of non-obviousness).  The Court

should therefore grant Defendants MIL only to the extent it is applies equally to all

parties, and to issues of infringement/non-infringement and validity/invalidity.

It must be further noted, however, that Boston Scientific agrees with

Defendants' comment in footnote 1 that the Court should not exclude ***all***

***statements*** made in 510(k) submissions, as they may include other statements that

are relevant and admissible for other purposes.  Indeed, Defendants' motion seeks

only to exclude those statements in 510(k) submissions that relate to "substantial

equivalence."  In ruling on the motion, the Court should be careful not to exclude

other statements in 510(k) submissions unrelated to such equivalence, to the extent

they are relevant to disputed issues in the case, including any Defendants might

seek to add in reply.  *See, e.g., Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 2004

WL 2496459, at *3-*4 (N.D. Ill. November 3, 2004) (distinguishing cases where

510(k) statements were excluded, and admitting statements to the FDA that "relate

directly to the infringement inquiry"); *Covidien*, 2020 WL 7040643, at *7 (denying

motion to exclude all evidence relating to 510(k) submission because "there may be statements in the 510(k) materials that are relevant to the trial issues").[1]

Here, for example, Micro-Tech's 510(k) submissions include factual statements regarding the design and operation of its product that are directly relevant to issues before the jury.  These include, among other things, statements about how the accused devices are intended to be used, features and functionality the accused devices have, and statements about the

.  *See, e.g.*, Ex. A at -924.  This evidence is directly relevant to the infringement analysis and should not be swept into any MIL the Court may grant.

## CONCLUSION

The Court should exclude all evidence or argument regarding the FDA's "substantial equivalence" framework and any statements in 510(k) submissions about a proposed product being "substantially equivalent" to a predicate device, including the use of any such evidence or arguments to support alleged invalidity.

---

[1] *See also Cirba Inc. v. VMware, Inc.*, 2020 WL 1316464, at *2 n.2 (D. Del. Jan. 6, 2020) (declining to address request to exclude evidence "raised only in [a] reply brief").

Dated: June 7, 2021

Of Counsel:

Kevin M. Flannery
Daniel Roberts
DECHERT LLP
Cira Centre, 2929 Arch St.
Philadelphia, PA 19104
(215) 994-2000
kevin.flannery@dechert.com
daniel.roberts@dechert.com

Robert D. Rhoad
DECHERT LLP
502 Carnegie Center Drive, Suite #104
Princeton, New Jersey 08549
(609) 955-3200
robert.rhoad@dechert.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel. (302) 777-0300
Fax (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order.  The text of this motion, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 750 words, excluding the case caption, signature block, table of contents and table of authorities.


/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)

Dated: June 7, 2021

# EXHIBIT A

CONFIDENTIAL

MT00000923

**EXHIBIT**

41

CONFIDENTIAL

MT00000924

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORA-TION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) ) | |
| | ) | C.A. No. 18-1869-CFC-CJB |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MICRO-TECH ENDOSCOPY USA INC., MICRO-TECH (NANJING) CO., LTD., and HENRY SCHEIN INC., | ) ) ) | |
| Defendants. | | |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE NO. 3 RE EVIDENCE OR ARGUMENTS AS TO STATEMENTS CONCERNING PREDICATE DEVICES IN MICRO-TECH'S FDA 510(K) SUBMISSIONS

Plaintiffs concede and agree with Defendants' position that statements in Micro-Tech's 510(k) submissions on "substantial equivalence" to a predicate device should be excluded from evidence and argument on infringement and copying. Accordingly, Defendants' MIL #3 should be granted.

Plaintiffs' Response goes on to argue any statements about "substantial equivalency" to a predicate device should be subject to a *blanket* exclusion. That is both incorrect and beyond the scope of the Motion. As Defendants explained in responding to Plaintiffs' MIL #1, Defendants are entitled to rely on Boston Scientific's 510(k) submissions that use a prior art Olympus clip as a predicate device to show an inventor's knowledge of the prior art, which is relevant to obviousness and inequitable conduct defenses. Defs.' Opp. to Pls.' MIL #1 at 3.

Plaintiffs also argue that "factual statements" in Micro-Tech's 510(k) submissions "regarding the design and operation of its product" should be admissible as they are not related to substantial equivalency. Response at 4.  In their own MIL #1, however, Plaintiffs seek to exclude statements in Boston Scientific's 510(k) submission even though they are unrelated to substantial equivalency, such as statements about Boston Scientific's understanding of "fracturing" and testimony of Plaintiffs' Rule 30(b)(6) deponent about the 510(k) filings.  Pls.' MIL #1 at 2.  Applying Plaintiffs' own reasoning, this evidence should be allowed as well.

ASHBY & GEDDES

*Of Counsel:*                                     */s/ John G. Day*

Steven J. Routh                                  _____
T. Vann Pearce, Jr.                              John G. Day (#2403)
Christopher Higgins                              Andrew C. Mayo (#5207)
ORRICK, HERRINGTON & SUTCLIFFE LLP               500 Delaware Avenue, 8th Floor
Columbia Center                                  P.O. Box 1150
1152 15th Street, N.W.                           Wilmington, DE  19899
Washington, DC  20005-1706                       (302) 654-1888
(202) 339-8400                                   jday@ashbygeddes.com
                                                 amayo@ashbygeddes.com
Yufeng (Ethan) Ma
ORRICK, HERRINGTON & SUTCLIFFE LLP               *Attorneys for Defendants*
47/F Park Place
1601 Nanjing Road West
Shanghai, 200040
People's Republic of China
86-21-6109-7108

Dated:  June 11, 2021